IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION | No. M:07-cv-01819 CW<br>MDL No. 1819<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND DEFERRING RULING ON DEFENDANT MOSEL VITELIC'S MOTION TO DISMISS |
|---|---|

_____/

All Defendants have moved to dismiss both the Direct Purchasers' consolidated amended complaint (DPC) and the Indirect Purchasers' consolidated amended complaint (IPC).[1] As directed by the Court the Direct-Purchaser Defendants (DP Defendants) and Indirect-Purchaser Defendants (IP Defendants) have each filed a motion that addresses all of the issues common to the respective group of Defendants. In addition, several Defendants have filed supplemental motions, addressing issues particular to themselves. Both the DP Plaintiffs and IP Plaintiffs oppose the motions. The

---

[1]Defendants argue that the Court should sua sponte dismiss Plaintiffs' claims against nine foreign companies that were not served before the October 1, 2007 deadline. However, Plaintiffs indicate that they have made good faith efforts to effectuate service. The Court acknowledged that service might not be possible by October 1, 2007. As discussed at the hearing, the deadline for service on foreign defendants is extended to March 21, 2008.

Left margin: United States District Court For the Northern District of California

motions were heard on December 20, 2007. Having considered the parties' papers and oral argument on the motions, the Court grants the motions in part, denies them in part and defers ruling on Defendant Mosel Vitelic's motion to dismiss the DP Complaint against it.

BACKGROUND

According to Plaintiffs' complaints, Defendants are various corporations that sold Static Random Access Memory (SRAM) to customers throughout the United States.[2] DP Plaintiffs are individuals and companies that purchased SRAM directly from one or more Defendants. DPC ¶¶ 19-21. IP Plaintiffs are individuals and companies that indirectly purchased SRAM from one or more Defendants, for end use and not for resale. IPC ¶¶ 8-101. SRAM is a type of "memory device[]" used in products "ranging from computer electronics to supercomputers." DPC ¶ 70. SRAM was developed "to fill two needs: (1) to provide a direct interface with the CPU (central processing unit) at speeds not attainable by DRAMs[3]; and (2) to replace DRAMs in systems that require very low battery

---

[2] Both sets of Plaintiffs bring claims against Cypress Semiconductor, Inc., Etron Technology, Inc., Etron Technology America, Inc., Hynix Semiconductor, Inc., Hynix Semiconductor America, Inc., Micron Technology, Inc., Micron Semiconductor Products, Inc., Mitsubishi Electric Corporation, Mitsubishi Electric & Electronics USA, Inc., NEC Electronics Corporation, NEC Electronics, America, Inc., Renesas Technology Corporation, Renesas Technology America, Inc., Samsung Electronics Company, Ltd., Samsung Electronics America, Samsung Semiconductor, Inc., Toshiba Corporation, Toshiba America, Inc. and Toshiba America Electronic Components, Inc. In addition, DP Plaintiffs bring claims against Hitachi, Ltd., Hitachi America, Ltd., Integrated Silicon Solution, Inc., Mosel Vitelic, Inc. and Mosel Vitelic Corporation.

[3] DRAM stands for Dynamic Random Access Memory.

2

United States District Court
For the Northern District of California

consumption." Id. Plaintiffs further allege that SRAM is particularly susceptible to price-fixing because it is "a homogenous product sold . . . primarily on the basis of price;" the "market is highly concentrated;" and there are "high manufacturing and technological barriers to entry" into the SRAM market. Id. at ¶ 71. Plaintiffs further allege that Defendants have created two trade organizations to develop specific types of SRAM, Quad Data Rate (QDR) SRAM and high-speed synchronous SRAMs (SigmaRAM). Id. at ¶ 73. Plaintiffs allege that between 1998 and 2004, the top nine producers of SRAM controlled between seventy-nine and eighty-four percent of the market for SRAM. IPC ¶ 132.

Plaintiffs allege that between 1996 and 2006[4], Defendants conspired to fix and maintain artificially high prices for SRAM. See, e.g., DPC at ¶¶ 1, 5. According to Plaintiffs, Defendants carried out this conspiracy through in-person, telephone and email communications regarding pricing to customers and market conditions. Id. at ¶ 7. Defendants exchanged product roadmaps, agreed to limit the supply of SRAM entering the market and communicated to "insure compliance with and enforce the agreement." Id. In addition, Defendants "made affirmative misrepresentations that conditions in the SRAM market were to due to competitive factors." Id. at ¶ 6.

In October, 2006, several companies announced that they had received grand jury subpoenas related to a United States Department

---

[4]The DP Plaintiffs bring claims based on conduct occurring through 2005 and the IP Plaintiffs bring claims based on conduct through 2006.

of Justice criminal investigation into the SRAM industry. According to Defendants, Plaintiffs' complaints were filed in response to these announcements and are based on speculation rather than any evidence to support their allegations.  On February 12, 2007, the Judicial Panel on Multi-District Litigation entered an order consolidating a number of these actions for pretrial purposes.  Since that time, many other tag-along actions have been transferred and consolidated into this multi-district case.

On May 3, 2007, the Court heard argument on various Plaintiffs' motions to appoint interim lead counsel and appointed such for each group of Plaintiffs.  An initial case management conference was held on June 1, 2007.  At that conference, Defendants argued that discovery should be stayed pending an opportunity to move to dismiss the complaints pursuant to the Supreme Court's decision in <u>Bell Atl. Corp. v. Twombly</u>, __ U.S. __, 127 S.Ct. 1955, 1964 (2007).  Plaintiffs stated their intent to file consolidated amended complaints.

On June 21, 2007, the Court entered a supplemental case management order, limiting discovery to the documents already being provided to the Department of Justice for purposes of the grand jury investigation, postponing initial disclosures and deeming all documents already produced in the DRAM litigation[5] to be produced in this case.  The DPC and IPC were filed on August 31, 2007.  The DPC alleges a violation of § 1 of the Sherman Act, 15 U.S.C. § 1.

---

[5]As discussed below, the Department of Justice brought criminal charges against several manufacturers in the DRAM market. Some Defendants in this case have entered guilty pleas in the DRAM litigation.

4

The IPC alleges a violation of § 1 of the Sherman Act, violation of California's Cartwright Act, California Business and Professions Code § 16720, violation of California Business and Professions Code § 17200, violations of numerous other States' antitrust and unfair competition laws, violations of numerous other States' consumer protection and unfair competition laws, and unjust enrichment and disgorgement of profits.

Defendants now move to dismiss both complaints, arguing that they do not meet the legal standard set out in <u>Twombly</u> and that they are time-barred. IP Defendants also move to dismiss a variety of the IP Plaintiffs' state law causes of action for failure to state a claim.

LEGAL STANDARD

Dismissal of a complaint can be based on either the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a). "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Fed. R. Civ. P. 8(e). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which it bases its claim. See <u>Twombly</u>, 127 S. Ct. at 1964. To the contrary, all the Rules require is that the plaintiff "give the defendant fair notice of what the [plaintiff's] claim is and the grounds on which it rests." <u>Id.</u> (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> The complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level." <u>Id.</u> at 1965.

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged

pleading.  <u>Id.</u> at 296-97.

                              DISCUSSION

I.   <u>Twombly</u>[6]

     In <u>Twombly</u>, the Supreme Court addressed the "question of what

a plaintiff must plead in order to state a claim under § 1 of the

Sherman Act."  127 S. Ct. at 1964.  The Court held that a § 1

complaint that alleges "certain parallel conduct unfavorable to

competition, absent some factual context suggesting agreement, as

distinct from identical, independent action" should be dismissed.

<u>Id.</u> at 1961.  In reaching that decision, the Court held, "Without

more, parallel conduct does not suggest conspiracy, and a

conclusory allegation of agreement at some unidentified point does

not supply facts adequate to show illegality."  <u>Id.</u> at 1966.

     Defendants argue that the complaints do not contain any non-

conclusory allegations to support a claim that two or more

Defendants agreed on prices for any SRAM product.  Therefore,

Defendants contend that Plaintiffs' complaints should be dismissed

for failure to make "allegations plausibly suggesting (not merely

consistent with) agreement."  <u>Id.</u>

     Plaintiffs counter that Defendants overstate the requirements

of <u>Twombly</u> and that their allegations are sufficient to support

_____

     [6]Although there are two separate complaints, IP Defendants
rely almost exclusively on DP Defendants' motion to dismiss for
their argument that the IPC should be dismissed pursuant to
<u>Twombly</u>, apparently reserving their allotted pages for other
arguments related to the IP Plaintiffs' state law claims. DP
Defendants' motion to dismiss the DPC states that it "treats the
IPC's additional allegations as if they were also alleged in the
DPC."  DP Defendants' Motion at 3 n.1.  For purposes of analyzing
the sufficiency of Plaintiffs' allegations of § 1 violations, the
Court does the same.

their claims.  First, Plaintiffs argue that <u>Twombly</u> should only

apply in parallel pricing cases and that where, as here, "a claim

is expressly predicated on the existence of a conspiratorial

agreement, a motion to dismiss must be denied where the complaint

contains even minimal allegations of the agreement's existence."

DP Plaintiffs' Opposition at 7.  In other words, Plaintiffs argue,

because their complaints contain allegations of facially anti-

competitive acts, they need not allege the factual context required

by <u>Twombly</u>.  Plaintiffs next argue that even if <u>Twombly</u> applies

they have plead sufficient facts to "nudge[] their claims across

the line from conceivable to plausible." 127 S. Ct. at 1974.  The

Court addresses the latter argument and does not need to reach the

former.

In addition to general allegations of a conspiracy, price

fixing and the susceptibility of the SRAM market to such

violations, Plaintiffs include in their complaints a number of

specific allegations of communications.  As noted below, many of

those communications are contained in emails, which are quoted in

both complaints and appended to the DPC.

Construed in the light most favorable to Plaintiffs, these

communications support an inference of a conspiracy.  For example,

Plaintiffs cite an email from a Hitachi employee to a Samsung

employee asking, "Are you willing to exchange product roadmaps

again?" as evidence that they "had a standing agreement to exchange

their companies' 'highly confidential' SRAM product roadmaps." DP

Plaintiffs' Opposition at 14, citing DPC ¶¶ 11, 80.  Defendants

argue that the fact that Hitachi was asking Samsung whether it

8

would exchange the roadmaps undermines any inference that there was a standing agreement. However, another plausible inference is that the companies had an agreement to exchange the information from time to time and Hitachi was inquiring whether it was time for the next exchange. See United States v. Container Corp. of Am., 393 U.S. 333, 335 (1969) (holding § 1 claim based on information exchange was adequately plead even where there was "an infrequency and irregularity of price exchanges between the defendants" but where "the essence of the agreement was to furnish price information whenever requested").

Similarly, Plaintiffs cite various emails in which individual Defendants consider information obtained from other Defendants. See, e.g., IPC, Ex. J. (Samsung considering information obtained from Etron). Defendants fault Plaintiffs for relying upon internal emails, which do not demonstrate discussion of the prices among the Defendant companies. However, as Defendants acknowledge, the exchange of price information alone can be "sufficient to establish the combination or conspiracy, the initial ingredient of a violation of § 1 of the Sherman Act." Container Corp., 393 U.S. at 335. Plaintiffs need not allege that Defendants actually discussed the prices they exchanged. These emails support Plaintiffs' allegation that Defendants had an ongoing agreement to exchange price and demand information for SRAM and that Defendants were aware that the purpose of sharing this information was "to stabilize or raise the price of SRAM sold in the United States and elsewhere." DPC ¶ 10.

Plaintiffs have further supported those allegations with

9

evidence of communications between Defendant companies.  For
example, Plaintiffs cite a 1998 email chain between Hitachi and
Samsung discussing monthly updates of revenue and ASP for specific
products.  DPC ¶ 11.  While acknowledging that such allegations are
sufficient to support a finding of conspiracy in certain
circumstances, Defendants fault Plaintiffs for failing to allege
the manner in which these information exchanges actually impacted
the SRAM market.  DP Defendants' Motion at 10, citing <u>Container</u>
<u>Corp. of Am.</u>, 393 U.S. at 337.  Although the "exchange of price
data and other information among competitors does not invariably
have anti-competitive effects," <u>United States v. United States</u>
<u>Gypsum Co.</u>, 438 U.S. 422, 443 n.16 (1978), "a civil violation can
be established by proof of either an unlawful purpose or an
anticompetitive effect."  <u>Id.</u> at 436 n.13.

     In <u>Container Corp.</u>, the Supreme Court recognized that "[p]rice
information exchanged in some markets may have no effect on a truly
competitive price."  393 U.S. at 337.  But, the Court found that
the market for corrugated containers was one in which the "exchange
of price data tends toward price uniformity" because the industry
is "dominated by relatively few sellers . . . [t]he product is
fungible . . ., the competition for sales is price [and] demand is
inelastic."  <u>Id.</u>  Therefore, in the corrugated container market, "a
lower price does not mean a larger share of the available business
but a sharing of the existing business at a lower return."  <u>Id.</u>  As
described above, Plaintiffs allege that Defendants shared the
information to stabilize or raise the price of SRAM.  Further,
Plaintiffs allege that the market for SRAM is conducive to price-

fixing because

> SRAM is a homogenous product sold by Defendants and
> purchased by Plaintiffs and members of the class
> primarily on the basis of price.  The SRAM market is
> highly concentrated with Defendants accounting for a
> large portion of all SRAM sales in the United States.
> Moreover, the market for the manufacture and sale of
> SRAM is subject to high manufacturing and technological
> barriers to entry.

DP Complaint ¶ 71.  Plaintiffs also allege, "Beginning in 1998 and

continuing through much of 2001, SRAM prices rose, due to the

effects of the industry-wide collusion alleged herein . . . During

2000 alone, the average selling price of SRAM in the United States

increased by 35%."  IP Complaint ¶ 146.  These allegations are

sufficient to support an inference that the market for SRAM is also

one in which exchanging price information can lead to "interference

with the setting of price by free market forces."  Container Corp.,

393 U.S. at 337.

Defendants criticize Plaintiffs' allegations on several other

bases.  First, Defendants argue that Plaintiffs may not rely upon

the guilty pleas entered by various Defendants in the DRAM

litigation because any such reliance is necessarily based upon an

impermissible inference that "the existence of a DRAM price-fixing

conspiracy plausibly implies that such a conspiracy exists for

SRAM."  DP Defendants' Motion at 16.  However, Plaintiffs allege

that the same actors associated with certain Defendants were

responsible for marketing both SRAM and DRAM.  Although the

allegations regarding the DRAM guilty pleas are not sufficient to

support Plaintiffs' claims standing on their own, they do support

an inference of a conspiracy in the SRAM industry.

1    Next, Defendants argue that the Department of Justice grand

2  jury investigation into the SRAM industry and related subpoenas

3  served on various Defendants are not relevant to Plaintiffs'

4  claims.  The Court agrees that the existence of the investigation

5  does not support Plaintiffs' antitrust conspiracy claims.  As the

6  court found in <u>In re Graphics Processing Units Antitrust</u>

7  <u>Litigation</u>,

> It is unknown whether the investigation will result in
> indictments or nothing at all.  Because of the grand
> jury's secrecy requirement, the scope of the
> investigation is pure speculation. . . . The grand jury
> investigation is a non-factor.

11  2007 WL 2875686, * 12 (N.D. Cal.).  Allegations regarding the SRAM

12  investigation do not support Plaintiffs' antitrust claims.

13    Defendants also argue that Plaintiffs' allegations regarding

14  Defendants' participation in various trade organizations cannot

15  properly be viewed as support for their antitrust conspiracy

16  claims.  Again, these allegations cannot alone support Plaintiffs'

17  claims, but such participation demonstrates how and when Defendants

18  had opportunities to exchange information or make agreements.

19    Finally, Defendants argue that Plaintiffs' reliance on an SRAM

20  antidumping proceeding before the International Trade Commission

21  (ITC) regarding SRAM imports from Korea and Taiwan is

22  impermissible.  As Defendants point out, Micron's decision to

23  challenge its competitors' pricing for SRAM undermines any

24  inference that a conspiracy existed.  The Court agrees that, as

25  currently plead, the 1997 antidumping proceeding does not tend to

26  support a finding of an antitrust conspiracy.

27    Nonetheless, the Court finds that Plaintiffs have plead

28                                    12

sufficient facts plausibly to suggest a § 1 price-fixing conspiracy. They have plead that Defendants had an ongoing agreement to exchange price information and intended that this exchange would lead to price stabilization or increases. Further, Plaintiffs have alleged that the SRAM market was one in which such information exchanges would lead to price stabilization or increases.

II. Sufficiency of Allegations Against Particular Defendants

DP Defendants also argue that, even if Plaintiffs' overall allegations are sufficient to survive a motion to dismiss, the complaint should be dismissed because Plaintiffs have failed to allege how each individual Defendant participated in the alleged conspiracy. In particular, DP Defendants argue that Plaintiffs have failed to allege sufficient facts with respect to DP Defendants Cypress Semiconductor, Hitachi America, Hynix Semiconductor America, Micron Technology, Micron Semiconductor Products, Mitsubishi Electric & Electronics USA, Inc., NEC Electronics America, Inc., Renesas Technology American, Inc., Toshiba America, Inc. and Toshiba America Electronic Components, Inc. See DP Defendants' Motion, Att. A.

Defendants' arguments fail because they rely upon the standard for a motion for summary judgment. Although Plaintiffs will need to provide evidence of each Defendants' participation in any conspiracy, they now only need to make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy. Further, Defendants' arguments tend to repeat the issues already discussed regarding the sufficiency of Plaintiffs' allegations

13

1   under <u>Twombly</u>.

2         Defendants Mosel Vitelic and Integrated Silicon Solution, Inc.

3   have each filed a supplemental motion to dismiss the DPC; Defendant

4   Mitsubishi Electric & Electronics USA, Inc. has filed a

5   supplemental motion to dismiss the IPC; and Defendant Etron

6   Technology America, Inc. has filed a supplemental motion to dismiss

7   the DPC and the IPC.  To the extent these parties' supplemental

8   motions are based on issues that have already been addressed, the

9   Court does not address them separately.  For example, the Court

10   does not address these Defendants' arguments that Plaintiffs have

11   alleged only that they were involved in information exchanges.  As

12   discussed above, the information exchanges are, in this case,

13   sufficient to raise a plausible inference of an antitrust

14   conspiracy.  Therefore, the Court does not address separately

15   Integrated Silicon Solution's, Mitsubishi's or Etron's motion.

16         Mosel argues that Plaintiffs' claims against it are time-

17   barred.  According to Mosel, it stopped producing SRAM by May, 2001

18   and sold off its entire inventory by January, 2003.  Further, the

19   only communication in which Mosel participated that is cited in the

20   complaint occurred in 2001.  Therefore, the Court is inclined to

21   find that Plaintiffs' claims against Mosel are time-barred.

22   However, to do so, the Court must rely upon the declaration of

23   Michael Li filed in support of Mosel's supplemental motion.  As

24   Plaintiffs note, the documents supporting Mosel's allegation that

25   it ceased producing SRAM in 2001 constitute extrinsic evidence,

26

27

28                                     14

which the Court may not consider in deciding a motion to dismiss.[7]

Nonetheless, Plaintiffs should not be allowed to pursue their claims against Mosel, particularly in light of Mosel's minimal participation in the SRAM market, if they can easily be proved to be time-barred. Therefore, the Court defers ruling on Mosel's separate motion to dismiss in order to allow DP Plaintiffs to depose Li regarding the information in his declaration and to produce any evidence that they have in support of an argument that their claims against Mosel are not time-barred. DP Plaintiffs shall file a supplemental opposition to Mosel's motion of no more than seven pages within one month of the date of this order. Mosel may file a response of no more than three pages one week thereafter.

III. Time Bar

Defendants argue that Plaintiffs' claims are time-barred by the four-year statute of limitations for antitrust claims. 15 U.S.C. § 15(b). As Defendants note, such consideration is only appropriate on a motion to dismiss if the time bar "is apparent on the face of the complaint." DP Defendants' Motion at 22, quoting Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).

However, as Plaintiffs note, they have alleged communications within the statute of limitations. See DPC ¶¶ 107-114; IPC ¶¶ 155r-155u. Further, Plaintiffs allege that Defendants fraudulently concealed the conspiracy. See DPC ¶¶ 170-74; IPC

---

[7]The email attached as exhibit 3 to the declaration is properly submitted. Plaintiffs quote the email in the complaint. Therefore, the Court may consider the remainder of the email chain as submitted by Mosel.

15

¶¶ 160-61. Defendants argue that Plaintiffs cannot claim fraudulent concealment and also rely on allegations concerning the DRAM investigation and guilty pleas. However, as Plaintiffs point out, the fact that they might have been aware of a potential price-fixing conspiracy in the DRAM market in 2002 is not enough to support a finding that they were on notice of a potential conspiracy in the SRAM market at that time. Defendants' motions to dismiss on these grounds are denied.

IV. California State Claims on Behalf of Non-California Residents

IP Defendants next argue that IP Plaintiffs' California law claims on behalf of all non-California IP class members should be dismissed.[8] Plaintiffs counter that it is premature to address choice of law issues at this stage because resolution of such issues will require rigorous factual analysis.

Plaintiffs may not bring California claims on behalf of non-California residents whose claims do not arise out of conduct that took place in California. Plaintiffs argue that all Plaintiffs' claims are based on conduct that took place in California, but Plaintiffs have not alleged specific conduct that occurred in California. These claims are dismissed with leave to amend. If Plaintiffs can allege specific California conduct underlying out-of-state Plaintiffs' claims, they may continue to assert California state law claims on behalf of those Plaintiffs. Even if Plaintiffs are able to make these allegations, Defendants will have an

---

[8]Because the remaining sections apply only to IP Plaintiffs' claims, all further references to the parties and the complaint refer only to the IP parties and the IP claims.

1  opportunity to raise this issue again when Plaintiffs move for

2  class certification.

3  V.    State Antitrust and Consumer Protection Claims

4      IP Defendants also argue that various state law antitrust and

5  consumer protection claims fail as a matter of law.[9]

6      A.    Pennsylvania Claims

7      First, Defendants argue that Plaintiffs' claim that Defendants

8  have violated "Pennsylvania common law" must fail because

9  Pennsylvania does not have an antitrust statute and its law does

10  not allow for recovery of damages for antitrust violations.

11  Plaintiffs counter that the Pennsylvania Supreme Court has stated

12  that conduct such as price-fixing is "unlawful at common law" as

13  well as a violation of the Sherman Act.  Shuman v. Bernie's Drug

14  Concessions, Inc., 409 Pa. 539, 544 (1963); Schwartz v. Laundry &

15  Linen Supply Driver's Union, 339 Pa. 353, 359 (1940).

16      However, Defendants cite two more recent Pennsylvania

17  decisions that expressly state that neither statutory nor common

18  law antitrust actions for money damages exist in Pennsylvania.

19  See, e.g., XF Enters. v. BASF Corp., 47 Pa. D. & C. 4th 147, 150-51

20  (Pa. Comm. Pl. 2000) ("No court to date has held that a private

21  remedy is available for damages under Pennsylvania's common law on

22  antitrust violations"); Stutzle v. Rhone-Poulenc S.A., 2003 WL

23  22250424, *2 (Pa. Comm. Pl. 2003)(same).

24      Plaintiffs further argue that the availability of antitrust

25  ───────────

26      [9]As stated above, this section applies only to the IP
   Plaintiffs and Defendants.  Therefore, all further references to
   Plaintiffs and Defendants in this section apply only to the IP
27  parties.

28                                17

United States District Court
For the Northern District of California

damages is "strongly suggested" by <u>Collins v. Main Line Bd. of</u>

<u>Realtors</u>, 452 Pa. 342 (1973). There, the Pennsylvania court held,

> The appellants are entitled to the equitable remedy of
> injunction to prevent the carrying out of the illegal
> contract or combination. The record, however, does not
> provide any legal basis for an award of damages.

<u>Id.</u> at 352 (plurality opinion) (internal citation omitted).

Plaintiffs argue that this quote demonstrates that the

<u>Collins</u> plaintiffs "had simply not presented sufficient evidence to

establish damages, not that they lacked a legal ground to obtain

them." IP Plaintiffs' Opposition at 18. However, as Defendants

point out, the case states that the plaintiffs lacked a legal

rather than an evidentiary basis for their claims. Further, in

more recent cases, lower courts in Pennsylvania have rejected

Plaintiffs' interpretation of <u>Collins</u>. <u>See, e.g.</u>, <u>XF Enters.</u>, 47

Pa. D. & C. 4th at 149-50 (noting, "No court to date has held that

a private remedy is available for damages under Pennsylvania's

common law on antitrust violations. . . . There have been 13

antitrust bills introduced in the General Assembly since 1987. Any

one of these bills, if made law, would have provided the private

right of action which plaintiff now suggests this court should

recognize.").

The Court grants Defendants' motion to dismiss the

Pennsylvania common law claim.

B.    South Dakota Antitrust Claims

Defendants next move to dismiss Plaintiffs' claim based on a

violation of South Dakota's antitrust statute. S.D. Codified Laws

§ 37-1-3.1. Defendants argue that the South Dakota antitrust

18

statute only applies to activities that "affect trade or commerce wholly within the state." <u>State v. Fullerton Lumber</u>, 35 S.D. 410, 422 (1915). However, as Plaintiffs point out, <u>Fullerton Lumber</u> was decided well before 1977, when the statute was revised to prohibit a "contract, combination or conspiracy between two or more persons in restraint of trade or commerce <u>any part of which is within this state</u> is unlawful." S.D. Codified Laws § 37-1-3.1 (emphasis added).

Defendants respond that, despite the intervening change in law, no South Dakota court has overruled the holding in <u>Fullerton Lumber</u>. However, Defendants cite no case holding that the limitations of <u>Fullerton Lumber</u> survived the statutory amendment. The Court finds that the language in the operative statute directly contradicts <u>Fullerton Lumber</u> and therefore controls.

Defendants also argue that, even if Plaintiffs' claim is not barred by <u>Fullerton Lumber</u>, Plaintiffs have not alleged facts sufficient to make the claim. Defendants argue that the operative statutory language is ambiguous because it is not clear whether the "any part" requirement refers to the conspiracy or to the affected trade or commerce. Because the earlier South Dakota antitrust statute limited its application to conspiracies that impacted intrastate trade or commerce, it makes sense that the legislature's intention was to alter that limitation with the 1977 revision. <u>Cf. In re New Motor Vehicles Cd'n Exp. Antitrust Litig.</u>, 350 F. Supp. 2d 160, 172 (D. Me. 2004 ) (finding that "it is logical to assume that the state intended its antitrust coverage to be as broad as possible"). Further, the South Dakota legislature has an interest

19

1  in protecting its residents from paying supra-competitive prices.

2  Therefore, the Court interprets the current version of the statute

3  to require that part of the affected trade or commerce take place

4  within South Dakota.

5       Defendants argue that Plaintiffs have not plead that trade or

6  commerce in South Dakota was impacted by the alleged conspiracy.

7  However, Plaintiffs have alleged that Defendants "produced,

8  promoted, sold, marketed, and/or distributed SRAM in each of the

9  states identified herein," which includes South Dakota.  IPC ¶ 125.

10  Plaintiffs also allege that the conspiracy "substantially affected

11  commerce in each of the states identified herein" and bring claims

12  on behalf of two South Dakota residents.  Id. at ¶¶ 28, 47, 125.

13  This is sufficient to support a claim that the conspiracy affected

14  commerce, at least part of which was within South Dakota.

15       Defendants' motion to dismiss the South Dakota antitrust claim

16  is denied.

17       C.   Alaska Consumer Protection Claims

18       Defendants argue that Plaintiffs' claim under the Alaska

19  Unfair Trade Practices and Consumer Protection Act (AUTPCPA) must

20  be dismissed because the Alaska antitrust statute expressly

21  provides that only the state attorney general may bring indirect

22  purchaser actions for monetary damages.  Plaintiffs counter that

23  the Alaska Supreme Court has held that private parties may sue

24  under AUTPCPA for conduct that also violates the Alaska antitrust

25  statue and that no court has held that the antitrust statute's

26  standing restriction should be applied to the AUTPCPA, which

27  clearly provides that any "person" who has been injured may bring a

28                                  20

1  suit.

2      As the DRAM court noted, there is no authority directly on

3  point.  Therefore, the DRAM court elected "to adopt the

4  interpretation that will wreak the least amount of havoc on the

5  existing law in Alaska."  2007 U.S. Dist. LEXIS 44354, *112 (N.D.

6  Cal.).  This Court also recognizes that the Alaska legislature has

7  chosen to allow only the attorney general to sue for money damages

8  based on indirect purchaser antitrust claims.  Therefore, the

9  result that appears most consistent with existing Alaska law is

10  that the AUTPCPA does not provide a provide a basis on which

11  Plaintiffs may bring a suit for money damages under Alaska law.

12  Defendants' motion to dismiss the AUTPCPA claim is granted.

13  Because Plaintiffs' claims are barred as a matter of law, this

14  claim is dismissed without leave to amend.

15      D.   Idaho Consumer Protection Claims

16      Defendants argue that in State ex rel. Wasden v. Daicel Chem.

17  Indus., Ltd., 141 Idaho 102, 108-09 (2005), the Idaho Supreme Court

18  expressly held that indirect purchasers may not bring suit under

19  the Idaho Consumer Protection Act.  Plaintiffs do not oppose this

20  argument.  Based on the Idaho Supreme Court's clear holding, the

21  Court grants Defendants' motion to dismiss Plaintiffs' Idaho

22  Consumer Protection Act claim.  Because Plaintiffs' Idaho claim is

23  barred as a matter of law, dismissal of this claim is without leave

24  to amend.

25      E.   Montana Consumer Protection Claims

26      Plaintiffs allege that "Defendants have engaged in unfair

27  competition or unfair or deceptive acts or practices in violation

28                              21

of Montana Code § 30-14-101 et seq.". IPC ¶ 229. Defendants argue that this claim should be dismissed because Montana does not allow private consumer protection claims to be brought as class actions and because such claims are limited to purchases made for personal, family or household purposes. See id. Plaintiffs counter that Defendants only address the requirements of Title 30, Chapter 14, Part 1 of the Montana Code and that they also bring claims under Title 30, Chapter 14, Part 2, which does not contain those limitations. However, as Defendants point out, Plaintiffs' complaint tracks the language of Part 1, which prohibits "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Id. at 30-14-103. In contrast, Part 2 prohibits specific activities, similar to federal anti-trust violations. See, e.g., id. at 30-14-205(1) ("It is unlawful for a person or group of persons, directly or indirectly: (1) to enter an agreement for the purpose of fixing the price or regulating the production of an article of commerce"). Further, Parts 1 and 2 are separate statutes that were enacted at different times, have different titles and different legislative histories.

The Court grants Defendants' motion to dismiss the Montana claim as currently plead. Plaintiffs may plead a claim under Part 2 in their amended complaint.

F.   New York Consumer Protection Claims

Defendants argue that Plaintiffs' claims under New York's General Business Law § 349 must be dismissed because New York courts require that conduct be "consumer-oriented" to be actionable under that statute. For example, in Paltre v. Gen'l Motors Corp.,

22

810 N.Y.S.2d 496, 498 (2006), the court held that consumers who purchased or leased vehicles "failed to set forth a viable cause of action to recover damages for deceptive business practices" based on allegations of price-fixing among automobile manufacturers "because the alleged misrepresentations were either not directed at consumers or were not materially deceptive."

Plaintiffs argue that these cases do not preclude their claims because Plaintiffs allege specific deceptive conduct by Defendants. Plaintiffs allege that Defendants concealed the conspiracy and "publicly provided pre-textual and false justifications regarding their price increases."  IPC ¶ 160.  However, there is nothing to suggest that Defendants must have provided false justifications for price increases to the IP Plaintiffs.  Rather, any such justifications would have been directed at the DP Plaintiffs.

The Court grants Defendants' motion to dismiss claims brought under § 349.  If Plaintiffs are able to allege any misrepresentations directed at Indirect Purchasers, they may re-plead this claim.

G.    Pennsylvania Consumer Protection Claims

Defendants argue that Plaintiffs' Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) claims must be dismissed for two reasons.  First, Defendants argue that the UTPCPL does not apply to price fixing.  In addition to twenty enumerated acts prohibited by the UTPCPL, the statute has a catch-all provision which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  73 P.S. § 201-2(4)(xxi).  Plaintiffs contend

23

that their allegations are covered by this catch-all because they
have alleged deceptive conduct.  Defendants argue that the catch-
all requires a plaintiff to allege the elements of common law
fraud.  However, the provision was amended in 1996 to cover
deceptive conduct.  See Christopher v. First Mutual Corp., 2006 WL
166566, *3 (E.D. Pa).  Although the Pennsylvania courts are divided
on whether a plaintiff must meet the heightened pleading standard
for fraud following the 1996 amendment and the Pennsylvania Supreme
Court has not addressed the issue, the Court notes that the
amendment would have been without meaning if the catch-all still
covered only fraudulent conduct.

Nonetheless, Plaintiffs have not plead any conduct by
Defendants which can be interpreted as deceptive conduct creating a
likelihood of confusion or of misunderstanding on Plaintiffs' part.
See id. (finding no actionable deceptive conduct where "[t]here
were no representations and no contact between" the parties).

Further, Defendants note that the UTPCPL limits the class of
plaintiffs who may pursue private actions to those who purchased or
leased "goods or services primarily for personal, family or
household purposes."  73 P.S. § 201-9.2.  Plaintiffs do not respond
to this argument and the Court notes that Plaintiffs' complaint
contains no allegations regarding the purposes for which Plaintiffs
purchased products containing SRAM.

Defendants' motion to dismiss the Pennsylvania UTPCPL claims
is granted with leave to amend.  Plaintiffs may re-plead these
claims if they can allege deceptive conduct creating a likelihood
of confusion or misunderstanding and that they purchased the

24

products containing SRAM for personal, family or household purposes.

H.    Rhode Island Consumer Protection Claims

Defendants move to dismiss Plaintiffs' claims under the Rhode Island Unfair Trade Practices and Consumer Protection Act arguing first that Plaintiffs' allegations do not constitute "[u]nfair methods of competition and unfair or deceptive acts or practices" as defined by the act.  See R.I. Gen. Laws §§ 6-13.1-1(5). Plaintiffs counter that their claims are covered by provisions in the statute similar to the catch-all in the Pennsylvania UTPCPL. The Rhode Island statute enumerates specific types of unfair practices and goes on to prohibit "[e]ngaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding" and "[e]ngaging in any act or practice that is unfair or deceptive to the consumer."  R.I. Gen. Laws § 6-13.1-1(xii), (xiii).  However, as discussed in the section regarding the Pennsylvania statute's catch-all provision, Plaintiffs have not plead any conduct that creates a likelihood of confusion or misunderstanding for indirect purchasers.  See George v. George F. Berkander, Inc., 92 R.I. 426, 429 (1961) ("It is our well-settled law that a finding of unfair competition must be predicated upon conduct on the part of the respondent that reasonably tended to confuse and mislead the general public into purchasing his product when the actual intent of the purchaser was to buy the product of the complainant.").

Further, the remedy in the Rhode Island statute is limited to those who purchase or lease "goods primarily for personal, family

25

or household purposes."  R.I. Gen. Laws § 6-13.1-5.2(a).  As
discussed above, Plaintiffs have made no such allegations.

Defendants' motion to dismiss the Rhode Island claims is
granted with leave to amend.  Plaintiffs may re-plead these claims
if they can allege deceptive conduct creating a likelihood of
confusion or misunderstanding and that they purchased the products
containing SRAM for personal, family or household purposes.

I.   Wyoming Consumer Protection Claims

Defendants next argue that Plaintiffs' claims under the
Wyoming Consumer Protection Act (WCPA) must be dismissed because
the act does not extend to antitrust violations.  In particular,
Defendants note that the enumerated prohibitions in the WCPA
concern fraudulent marketing practices such as false designation of
origin or false representations about the quality of goods.
Plaintiffs counter that the WCPA contains general language
prohibiting "unfair" or "deceptive" trade practices.  Wyo. Stat.
§ 40-12-105(a)(xv).

However, as Defendants point out, the Wyoming Supreme Court
held that the WCPA "was drafted primarily to protect consumers from
unscrupulous and fraudulent marketing practices" and declined to
extend the reach of the WCPA where the legislature has elsewhere
addressed the problems identified by a plaintiff.  Herrig v.
Herrig, 844 P.2d 487, 495 (Wyo. 1992).  Here, Plaintiffs make no
allegations about Defendants' marketing practices.  Further,
Wyoming has an antitrust statute that allows indirect purchasers to
seek injunctive relief but not money damages.  See Wyo. Stat. § 40-
4-114.

26

1    Because the Court finds that Plaintiffs' WCPA claims are

2    deficient as a matter of law, it dismisses them with prejudice and

3    does not reach the other grounds on which Defendants challenge

4    them.

5    VI.    Unjust Enrichment Claims

6        Plaintiffs bring a claim for unjust enrichment on behalf of a

7    nation-wide class.  Defendants argue that this claim must be

8    dismissed because unjust enrichment law varies widely from State to

9    State.[10]  Further, Defendants argue that allowing this claim would

10   circumvent the Supreme Court's holding in <u>Illinois Brick Co. v.</u>

11   <u>Illinois</u>, 431 U.S. 720 (1977), by allowing all Plaintiffs to

12   recover money damages, regardless of whether the States in which

13   they live allow such recovery for antitrust violations.

14       Although Defendants' arguments demonstrate that Plaintiffs

15   from certain States might be precluded from recovering damages on

16   an unjust enrichment theory, they do not provide grounds for

17   dismissing the claim for all Plaintiffs.  Defendants also argue

18   that Plaintiffs' failure to identify which States' common law

19   supports their claims deprives Defendants of adequate notice of the

20   claims.  Indeed, until Plaintiffs indicate which States' laws

21   support their claim, the Court cannot assess whether the claim has

22   been adequately plead.  Therefore, the Court dismisses Plaintiffs'

23   unjust enrichment claim with leave to amend.  If Plaintiffs re-

24   plead this claim, they must identify which State's or States' law

25   they rely upon.

26   _____

27       [10]As discussed above, all references to Plaintiffs and
     Defendants in this section concern only the IP parties.

28                                  27

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in part and DENIED in part (Docket Nos. 309, 310, 311, 314, 315). The Court DEFERS RULING on Defendant Mosel Vitelic's motion to dismiss (Docket No. 307). Plaintiffs may file amended complaints within twenty-one days of the date of this order.[11] As discussed at the hearing, the parties shall meet and confer to discuss any necessary modification to the currently scheduled date for a hearing on Plaintiffs' motions for class certification and a further case management conference.

The parties' requests for judicial notice are GRANTED (Docket Nos. 315-2, 319-3). Judicial notice of the documents attached to those requests is proper because they are easily verifiable. See Fed. R. Evid. 201.

DP Plaintiffs' objection to the declaration of Michael Li filed in support of Defendant Mosel Vitelic, Inc. and Mosel Vitelic Corporation's supplemental motion to dismiss is SUSTAINED in part and OVERRULED in part (Docket No. 318). To the extent Plaintiffs' objections are based on the email attached as exhibit 3 to the declaration, the objections are overruled. Because Plaintiffs quote the email in their complaint, the Court considers the remainder of the email chain as submitted by Mosel Vitelic. To the extent Plaintiffs object to the remainder of the exhibits as the

---

[11]DP Plaintiffs shall not include any claims against Defendant Mosel Vitelic in their amended complaint. If necessary after ruling on Mosel's motion to dismiss, the Court will grant DP Plaintiffs leave to amend their complaint to re-allege such claims.

28

improper introduction of extrinsic evidence on a motion to dismiss, the objections are sustained.

IT IS SO ORDERED.


2/14/08

Dated: _____

CLAUDIA WILKEN
United States District Judge