1  FRANCIS O. SCARPULLA (41059)
   CRAIG C. CORBITT (83251)
2  PAMELA E. WOODSIDE (226212)
   TRAVISS GALLOWAY (234678)
3  QIANWEI FU (242669)
   ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP
4  44 Montgomery Street, Suite 3400
   San Francisco, CA 94104
5  Telephone:    (415) 693-0700
   Facsimile:    (415) 693-0770
6  fscarpulla@zelle.com
   ccorbitt@zelle.com
7
8  *Interim Lead and Liaison Counsel for*
   *Indirect Purchaser Class*

9  (Additional Counsel listed on signature page)

10
11              **UNITED STATES DISTRICT COURT**
12              **NORTHERN DISTRICT OF CALIFORNIA**
13                    **OAKLAND DIVISION**

| | |
|---|---|
| IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION | Case No. M:07-CV-01819-CW |
| | MDL No. 1819 |
| | **THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL AND STATE ANTITRUST LAWS, STATE CONSUMER PROTECTION LAWS AND STATE COMMON LAW OF UNJUST ENRICHMENT** |
| This Document Relates to: | |
| ALL INDIRECT PURCHASER ACTIONS | |
| | **JURY TRIAL DEMANDED** |

                          **PREAMBLE**

      Pursuant to the Court's February 14, 2008 Order, this Third Consolidated Amended

Complaint amends and includes herein claims the Court dismissed but gave Indirect-Purchaser

Plaintiffs leave to amend. Indirect-Purchaser Plaintiffs did not replead any claims dismissed without

leave to amend. However, by failing to replead these claims, Indirect-Purchaser Plaintiffs do not

waive their right to appeal this Court's dismissal with prejudice of those claims.

      Plaintiffs, by their attorneys, bring this civil action for damages and injunctive relief on

behalf of themselves and all others similarly situated against the Defendants named herein, and

demanding a trial by jury, complain and allege as follows:

## JURISDICTION AND VENUE

1.      This complaint is filed under Section 16 of the Clayton Act, 15 U.S.C. §26, to obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. §1, to recover damages or restitution under state antitrust and consumer protection laws, and to recover the costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiffs and all others similarly situated sustained as a result of the Defendants' violations of those laws.

2.      The Court has jurisdiction over the federal claim under 28 U.S.C. §§1331 and 1337. The Court has jurisdiction over the state law claims under 28 U.S.C. §1367 because those claims are so related to the federal claim that they form part of the same case or controversy.  The Court also has jurisdiction over the state law claims under 28 U.S.C. §1332 because the amount in controversy for the Class exceeds $5,000,000, and there are members of the Class who are citizens of a different state than the Defendants.

3.      Venue is proper in this District under 15 U.S.C. §22 and 28 U.S.C. §1391 because Defendants reside, transact business, or are found within this District, and a substantial part of the events giving rise to the claims arose in this District.

4.      The activities of the Defendants and their co-conspirators, as described herein, were within the flow of, were intended to, and did have a substantial effect on the foreign and interstate commerce of the United States.  Defendants' conspiracy further substantially affected commerce in California, and accordingly, Defendants and their co-conspirators have purportedly availed themselves of California's laws.

## DEFINITIONS

5.      As used herein, the term "Static Random Access Memory" ("SRAM") includes all types of static random access memory sold during the Class Period.  SRAM is a type of memory that is faster and more reliable than dynamic random access memory ("DRAM").  The term "static" is derived from the fact that SRAM does not need to be refreshed like DRAM.  While DRAM supports access times of about 60 nanoseconds, SRAM can give access times of 10 nanoseconds.  In addition, its cycle time is much shorter than that of DRAM because it does not need to pause between

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

accesses.

6.     As used herein, the term "computer" refers to both desktop and mobile computers (primarily laptop computers), workstations and servers.

7.     As used herein, the term "Class Period" means the time period November 1, 1996 through at least December 31, 2006.

### THE PARTIES

**A.     The Plaintiffs.**

8.     Plaintiff Javier Oyola Alemany is a resident of Puerto Rico who indirectly purchased SRAM manufactured and/or sold by one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

9.     Plaintiff James Allen is a resident of Massachusetts who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.  Pursuant to Mass. Gen. L. 93A, §9, Plaintiff mailed a written demand for relief to Defendants at least 30 days prior to filing his initial complaint.  No Defendant responded with a reasonable tender of settlement.

10.     Plaintiff Justus Austin III is a resident of Michigan who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

11.     Plaintiff Renae Awakuni is a resident of Hawaii who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale and primarily for personal, household, or family purposes, and was injured as a result of Defendants' illegal conduct.  Pursuant to Hawaii Rev. Stat. §480-13.3, Plaintiff filed her initial Complaint under seal and served a copy on Hawaii's Attorney General within seven days. Following expiration of the statutory review period, the Hawaii Attorney General informed the United States District Court for the District of Hawaii that it would not proceed with the action or file its own action involving the same or similar claims as set forth in Plaintiff's initial Complaint.

12.     Plaintiff Michael Francis Ayers is a resident of Massachusetts who indirectly

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

13.     Plaintiff Kenneth Bagwell is a resident of Michigan who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

14.     Plaintiff Michael Baranic is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

15.     Plaintiff James W. Barnes is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

16.     Plaintiff Ronnie Barnes is a resident of Florida who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

17.     Plaintiff Robert C. Bedore, Jr. is a resident of Maine who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale and primarily for personal, family, or household purposes, and was injured as a result of Defendants' illegal conduct.

18.     Plaintiff Joshua A. Belke is a resident of Wisconsin who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

19.     Plaintiff Todd Berg is a California resident who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

20.     Plaintiff Ron Birdsong, individually, and on behalf of Birdsong Air Conditioning and Heating Services, is a resident of Tennessee who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

21. Plaintiff Terry Bisel is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

22. Plaintiff Rebecca Bly is a resident of the District of Columbia who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale and primarily for personal, family, or household use, and was injured as a result of Defendants' illegal conduct.

23. Plaintiff Michael Brooks is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

24. Plaintiff Carlos R. Carrillo is a resident of Puerto Rico who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

25. Plaintiff Ward Cater is a resident of North Dakota who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for the end use and not for resale, and was injured as a result of Defendants' illegal conduct.

26. Plaintiff Scott L. Clarke is a resident of Maine who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale and primarily for personal, family, or household purposes, and was injured as a result of Defendants' illegal conduct.

27. Plaintiff Culinary Workers Union Local 226 is a resident of Nevada that indirectly purchased SRAM from one or more Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

28. Plaintiff Dona Culver is a resident of the District of Columbia who indirectly purchased SRAM from one or more Defendants or their co-conspirators during the Class Period, primarily for personal, family or household purposes, and was injured as a result of Defendants' illegal conduct.

29. Plaintiff Christopher C. Crawford is a resident of South Dakota who indirectly

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

purchased SRAM from one or more of the Defendants or their co-conspirators during the Class

Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

30.    Plaintiff Romney Darkins is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

31.    Plaintiff Ryan Edwards is a resident of Florida who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

32.    Plaintiff Judd Eliasoph is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

33.    Plaintiff Fairmont Orthopedics & Sports Medicine, P.A. is a Minnesota company that indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

34.    Plaintiff Cristi Ferguson is a resident of Kansas who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale and primarily for personal, family, household, business or agricultural purposes, and was injured as a result of Defendants' illegal conduct.

35.    Plaintiff Patricia Fitzsimmons is a resident of Minnesota who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

36.    Plaintiff Alicia Foley is a resident of Massachusetts who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.  Pursuant to Mass. Gen. L. 93A, §9, Plaintiff mailed a written demand for relief to Defendants at least 30 days prior to filing her initial complaint.  No Defendant responded with a reasonable tender of settlement.

37.    Plaintiff Craig Friedson is a resident of the District of Columbia who indirectly

purchased SRAM in Maryland from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale and primarily for personal, household, or family use, and was injured as a result of Defendants' illegal conduct.

38.     Plaintiff Scott Friedson is an resident of Arizona who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

39.     Plaintiff Frank Gertzen is a resident of Pennsylvania who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, primarily for personal, family or household purposes, and was injured as a result of Defendants' illegal conduct.

40.     Plaintiff Chris Giauque is a resident of Utah who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

41.     Plaintiff Jacob Greenwell is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

42.     Plaintiff Janet Hall is a resident of Alaska who indirectly purchased SRAM from one or more of the Defendants and their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

43.     Plaintiffs Thomas and Donna Hark are residents of West Virginia who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and were injured as a result of Defendants' illegal conduct.

44.     Plaintiff Robert S. Harmon is a resident of Arkansas who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

45.     Plaintiff Joseph Hastings is a resident of Mississippi who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

46.     Plaintiff Heather Hawk is a resident of New Mexico who indirectly purchased SRAM

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

47. Plaintiff Kenneth W. Hebert is a resident of Idaho who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

48. Plaintiff Paul Hickman is a resident of Montana who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

49. Plaintiff Penny Hochstein is a South Dakota resident who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

50. Plaintiff Curtis Hogue is a resident of North Carolina who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

51. Plaintiff Rhonda L. Jacobs is a resident of West Virginia who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

52. Plaintiff Karl Johnson is a resident of West Virginia who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

53. Plaintiff Susan Juliffs is a resident of Iowa who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

54. Plaintiff Karol Juskiewicz is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

55. Plaintiff Nicolas Kane is a resident of Wisconsin who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

not for resale, and was injured as a result of Defendants' illegal conduct.

56.   Plaintiff Michael Katz is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

57.   Plaintiff Allen Robert Kelley is a resident of Nevada who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

58.   Plaintiff Kevin Kicia is a resident of Rhode Island who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, primarily for personal, family or household purposes and was injured as a result of Defendants' illegal conduct.

59.   Plaintiff Sean Koch is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

60.   Plaintiff Henry Kornegay is a resident of Montana who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

61.   Plaintiff Ronald A. Kramer is a resident of Maine who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale and primarily for personal, family, or household purposes, and was injured as a result of Defendants' illegal conduct.

62.   Plaintiff Mark Lambert is a resident of West Virginia who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

63.   Plaintiff Paul Lauttamus is a resident of West Virginia who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

64.   Plaintiff Alfred Livingston is a resident of Mississippi who indirectly purchased

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

65.     Plaintiff David Loomis is a resident of West Virginia who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

66.     Plaintiff Stephanie Luekel is a resident of Massachusetts who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.  Pursuant to Mass. Gen. L. 93A, §9, Plaintiff mailed a written demand for relief to Defendants at least 30 days prior to filing her initial complaint.  No Defendant responded with a reasonable tender of settlement.

67.     Plaintiff Laura Magnuson is a resident of New York who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

68.     Plaintiff Lawrence Markey is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

69.     Plaintiff Terrence Martin is a resident of Michigan who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

70.     Plaintiff Kym Masters, a California resident, indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

71.     Plaintiff Mark Miles is a resident of Arkansas who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

72.     Plaintiff Roman Muñoz is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

73.     Plaintiff Allen Nassiff is a resident of Vermont who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

74.     Plaintiff Jo Nash is a California resident who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

75.     Troung Nguyen is a Washington resident who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

76.     Plaintiff Blaine Olson is a Montana resident who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

77.     Plaintiff Cade Oyadomori is a resident of Hawaii who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale and primarily for personal, family, or household purposes, and was injured as a result of Defendants' illegal conduct.  Pursuant to Hawaii Rev. Stat. §480-13.3, Plaintiff filed his initial Complaint under seal and served a copy on Hawaii's Attorney General within seven days. Following expiration of the statutory review period, the Hawaii Attorney General informed the United States District Court for the District of Hawaii that it would not proceed with the action or file its own action involving the same or similar claims as set forth in Plaintiff's initial Complaint.

78.     Plaintiff Jai Paguirigan is a resident of Wisconsin who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

79.     Plaintiff Penobscot Eye Care is Maine company that indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

80.     Plaintiff David Perez is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

for resale, and was injured as a result of Defendants' illegal conduct.

81.    Plaintiff John Pharr d/b/a JP Micro is a resident of Florida who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

82.    Plaintiff Suzanna Purdy is a resident of Nevada who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

83.    Plaintiff Mark Pierce is a New Hampshire resident who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

84.    Plaintiff Daniel Price is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

85.    Plaintiff Greg Proiette is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

86.    Plaintiff Reclaim Center, Inc. is a Minnesota corporation that indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

87.    Plaintiff David Reedy is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

88.    Plaintiff Richard Romero is a resident of New Mexico who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

89.    Plaintiff Candace Rowlette is a resident of Florida who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

90.     Plaintiff Frederick Rozo is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

91.     Plaintiffs Stacy Salzman and Mitchell Salzman are residents of Florida who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and were injured as a result of Defendants' illegal conduct.

92.     Plaintiffs Timothy Show and Nuja Show are residents of Arizona who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and were injured as a result of Defendants' illegal conduct.

93.     Plaintiff Jason Smith is a resident of Pennsylvania who indirectly purchased SRAM from one or more the Defendants or their co-conspirators during the Class Period, primarily for personal, family or household purposes, and was injured as a result of Defendants' illegal conduct.

94.     Plaintiff Joe Solo is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

95.     Plaintiff Craig Sparks is a resident of Iowa who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

96.     Plaintiff Stargate Films is a California corporation that indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

97.     Plaintiff Christopher J. Stawski is a resident of Wisconsin who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

98.     Plaintiff Lara Sterenberg is a resident of Arizona who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

99.     Plaintiff Aaron Stobbe is a Utah resident who indirectly purchased SRAM from one

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

100.   Plaintiff David Takeda is a California resident who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

101.   Plaintiff Don Thompson is a resident of California who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

102.   Plaintiffs E. Carol Vinson and Robert Vinson are residents of Arizona who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and were injured as a result of Defendants' illegal conduct.

103.   Plaintiff Robert Schulyer Watson is a resident of Vermont who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

104.   Plaintiff UFCW 8 – Golden State is a resident of California that indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

105.   Plaintiff United Food & Commercial Workers Local 99 is a resident of Arizona that indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

106.   Plaintiff United Food & Commercial Workers Local 711 is a resident of Nevada that indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

107.   Plaintiff Daniel Yohalem is a resident of New Mexico who indirectly purchased SRAM from one or more of the Defendants or their co-conspirators during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1    108.    Plaintiff Rachael Zaas is a resident of Michigan who indirectly purchased SRAM

2    from one or more of the Defendants or their co-conspirators during the Class Period, for end use and

3    not for resale, and was injured as a result of Defendants' illegal conduct.

4    109.    Plaintiff Bekah Zietz is a resident of Washington who indirectly purchased SRAM

5    from one or more of the Defendants or their co-conspirators during the Class Period, for end use and

6    not for resale, and was injured as a result of Defendants' illegal conduct.

7    **B.    The Defendants.**

8    110.    Defendant Samsung Electronics Company, Ltd. is a business entity organized under

9    the laws of South Korea, with its principal place of business at Samsung Main Building 250-

10   Taepyungro-2 ka, Chung-gu, Seoul, Korea.  During the time period covered by this Complaint,

11   Defendant Samsung Electronics Company, Ltd. manufactured, sold and distributed SRAM to

12   customers throughout the United States.

13   111.    Defendant Samsung Electronics America, Inc. is a wholly owned and controlled

14   subsidiary of Defendant Samsung Electronic Company, Ltd. with its principal place of business at

15   105 Challenger Road, Ridgefield Park, New Jersey.  During the time period covered by this

16   Complaint, Defendant Samsung Electronics America, Inc. sold SRAM to customers throughout the

17   United States.

18   112.    Defendant Samsung Semiconductor, Inc. is a wholly owned and controlled subsidiary

19   of defendant Samsung Electronics Company, Ltd. with its principal place of business at 3655 North

20   First Street, San Jose, California.  During the time period covered by this Complaint, Defendant

21   Samsung Semiconductor, Inc. sold and distributed SRAM to customers throughout the United

22   States.  Samsung Electronics Company, Ltd. and Samsung Semiconductor, Inc. are referred to

23   collectively herein as "Samsung."

24   113.    Defendant Hynix Semiconductor, Inc. is a business entity organized under the laws of

25   South Korea, with its principal place of business at SAN 163-1, Ami-Ri Bubal-Up, Ichon-City,

26   Korea.  During the time period covered by this Complaint, Defendant Hynix Semiconductor, Inc.

27   manufactured, sold and distributed SRAM to customers throughout the United States.

28   114.    Defendant Hynix Semiconductor America, Inc. is a wholly owned and controlled

-15-

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

subsidiary of defendant Hynix Semiconductor, Inc. with its principal place of business at 3101 North First Street, San Jose, California.  During the time period covered by this Complaint, Defendant Hynix Semiconductor America, Inc. sold and distributed SRAM to customers throughout the United States.  Hynix Semiconductor, Inc. and Hynix Semiconductor America, Inc. are referred to collectively herein as "Hynix."

115.    Defendant Micron Technology, Inc. is a Delaware Corporation with its principal place of business at 8000 South Federal Way, Boise, Idaho.  During the time period covered by this Complaint, Defendant Micron Technology, Inc. manufactured, sold and distributed SRAM throughout the United States.

116.    Defendant Micron Semiconductor Products, Inc. is a wholly owned and controlled subsidiary of defendant Micron Technology, Inc. with its principal place of business at 8000 South Federal Way, Boise, Idaho.  During the time period covered by this Complaint, Defendant Micron Semiconductor Products, Inc. sold and distributed SRAM to customers throughout the United States.  Micron Technology, Inc. and Micron Semiconductor Products, Inc. are referred to collectively herein as "Micron."

117.    Defendant NEC Electronics Corporation is a business entity organized under the laws of Japan, with its principal place of business at 1753 Shimonumabe, Nakahara-Ku, Kawasaki, Kanagawa, Japan.  During the time period covered by this Complaint, Defendant NEC Electronics Corporation sold SRAM to customers throughout the United States.

118.    Defendant NEC Electronics America, Inc. is a wholly owned and controlled subsidiary of NEC Electronics Corporation, with its principal place of business at 2880 Scott Boulevard, Santa Clara, California and its manufacturing plant in Roseville, California.  During the time period covered by this Complaint, Defendant NEC Electronics America, Inc. sold and distributed SRAM to customers throughout the United States.  NEC Electronics Corporation and NEC Electronics America, Inc. are referred to collectively herein as "NEC."

119.    Defendant Cypress Semiconductor, Inc. ("Cypress") is a business entity organized under the laws of California, with its principal place of business at 3939 North First Street, San Jose, California.  During the time period covered by this Complaint, Defendant Cypress Semiconductor,

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

Inc. sold and distributed SRAM to customers throughout the United States.

120.    Defendant Mitsubishi Electric Corporation is a business entity organized under the laws of Japan, with its principal place of business at Tokyo Building 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310, Japan.  During the time period covered by this Complaint, Defendant Mitsubishi Electric Corporation, Inc. manufactured, sold and distributed SRAM to customers throughout the United States.

121.    Defendant Mitsubishi Electric & Electronics USA, Inc. is a wholly owned and controlled subsidiary of defendant Mitsubishi Electric Corporation.  Defendant Mitsubishi Electric & Electronics USA, Inc. is a business entity organized under the laws of Delaware, with its principal place of business at 500 Corporate Woods Parkway, Vernon Hills, IL 60061.  During the time period covered by this Complaint, Defendant Mitsubishi Electric & Electronics USA, Inc. manufactured, sold and distributed SRAM to customers throughout the United States.  Mitsubishi Electric Corporation and Mitsubishi Electric & Electronics USA, Inc. are referred to collectively herein as "Mitsubishi."

122.    Defendant Renesas Technology Corporation is a business entity organized under the laws of Japan with its principal place of business at Nippon Bldg., 2-6-2, Ote-machi, Chiyoda-ku, Tokyo 100-0004, Japan.  Renesas Technology Corporation was established in April 2003 as a joint venture between Defendants Hitachi, Ltd. and Mitsubishi Electric Corp.  During the time period covered by this Complaint, Defendant Renesas Technology Corporation sold SRAM to customers throughout the United States.

123.    Defendant Renesas Technology America, Inc. is a wholly owned and controlled subsidiary of Renesas Technology Corporation with its principal place of business at 450 Holger Way, San Jose, California, 95134-1368.  During the time period covered by this Complaint, Defendant Renesas Technology America, Inc. sold and distributed SRAM to customers throughout the United States.  Renesas Technology America, Inc. and Renesas Technology Corporation are referred to collectively herein as "Renesas."

124.    Defendant Toshiba Corporation is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001,

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

Japan.  During the time period covered by this Complaint, Defendant Toshiba Corporation

manufactured, sold and distributed SRAM to customers throughout the United States.

125.   Defendant Toshiba America, Inc. is a wholly owned and controlled subsidiary of

Toshiba Corporation with its principal place of business at 1251 Avenue of the Americas, Suite 4110

New York, NY 10020.  During the time period covered by this Complaint, Defendant Toshiba

America, Inc. manufactured, sold and distributed SRAM to customers throughout the United States.

126.   Defendant Toshiba America Electronic Components, Inc. is a wholly owned and

controlled subsidiary of Toshiba Corporation with its principal place of business located at

19900 MacArthur Boulevard, Suite 400, Irvine, CA 92612.  During the time covered by this

Complaint, Defendant Toshiba America Electronic Components, Inc. sold and distributed SRAM to

customers throughout the United States.  Toshiba Corporation, Toshiba America Corporation, and

Toshiba America Electronic Components, Inc. are referred to collectively herein as "Toshiba."

127.   Defendant Etron Technology America, Inc. is a wholly owned and controlled

subsidiary of Etron Technology, Inc. with its principal place of business at 3375 Scott Blvd., Suite

128, Santa Clara, California.  During the time period covered by this Complaint, Defendant Etron

Technology America, Inc. sold SRAM to customers throughout the United States.

128.   Each of the Defendants named herein acted as the agent or joint venturer of or for the

other Defendants with respect to the acts, violations and common course of conduct alleged herein.

Each Defendant which is a subsidiary of a foreign parent acts as the sole United States agent for

SRAM made by its parent company.

**C.**     **Co-Conspirators.**

129.   Various other firms, corporations, partnerships and/or individuals, domestic and/or

foreign, who are presently unknown to Plaintiffs, participated as co-conspirators with the Defendants

in the violations of law alleged in this Complaint and have engaged in conduct and made statements

in furtherance thereof.

130.   The acts charged in this Complaint have been done by some or all of Defendants and

their co-conspirators, or were authorized, ordered or done by their respective officers, agents,

employees or representatives while actively engaged in the management of each Defendant's

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1   business or affairs.

2        131.    Defendants are also liable for acts done in furtherance of the alleged conspiracy by

3   companies they acquired through merger or acquisition.

4                **EFFECTS ON INTERSTATE AND INTRASTATE COMMERCE**

5        132.    Defendants conduct business throughout the United States, including in the State of

6   California, and they have purposefully availed themselves of the laws of the United States.

7   Defendants' products are sold in the flow of interstate commerce and Defendants' activities had a

8   direct, substantial and reasonably foreseeable effect on such commerce.

9        133.    Defendants' conspiracy further substantially affected commerce in each of the states

10  identified herein.  Defendants have purposefully availed themselves of the laws of each of the states

11  identified herein in connection with their activities relating to the pricing of SRAM.  Defendants

12  produced, promoted, sold, marketed, and/or distributed SRAM in each of the states identified herein,

13  thereby purposefully profiting from access to indirect purchasers in each such state.  As a result of

14  the activities described herein, Defendants:

15        a.    Caused tortious damage to the residents of the states identified herein;

16        b.    Caused tortious damage in each of the states identified herein by acts or

17              omissions committed outside each such state by regularly doing or soliciting

18              business in each such state;

19        c.    Engaged in persistent courses of conduct within each such state and/or derived

20              substantial revenue from the marketing of SRAM in each such state (and

21              services relating to such marketing); and

22        d.    Committed acts or omissions that they knew or should have known would

23              cause damage (and did, in fact, cause such damage) in each such state while

24              regularly doing or soliciting business in each such state, engaging in other

25              persistent courses of conduct in each such state and/or deriving substantial

26              revenue from the marketing of SRAM (and services relating to such

27              marketing) in each such state.

28        134.    The conspiracy described herein affected adversely every person in each of the states

-19-
THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

identified in this Complaint who indirectly bought SRAM for end use and not for resale.

Defendants' conspiracy has lasted for many years and resulted in monetary damages to purchasers in

each state identified herein.

135.    Prices of SRAM in each state can be manipulated by conspirators within that state,

outside of it, or both.  Without enforcing the antitrust and/or consumer protection laws of each of the

states identified herein, companies that break the law will go unpunished.  Defendants knew that

commerce in each of the states identified herein would have to be adversely affected in order to

implement their conspiracy.

## CLASS ACTION ALLEGATIONS

136.    Plaintiffs bring this suit as a class action pursuant to Rules 23(b)(2) and 23(b)(3) of

the Federal Rules of Civil Procedure, on behalf of themselves and a Plaintiff Class ("the Class")

composed of and defined as follows:

> All persons and entities residing in the United States who, from November 1,
> 1996 through at least December 31, 2006, purchased SRAM in the United
> States indirectly from the Defendants for their own use and not for resale.
> Specifically excluded from this Class are the Defendants; the officers,
> directors or employees of any Defendant; any entity in which any Defendant
> has a controlling interest; and any affiliate, legal representative, heir or assign
> of any Defendant.  Also excluded are any federal, state or local governmental
> entities, any judicial officer presiding over this action and the members of
> his/her immediate family and judicial staff, and any juror assigned to this
> action.

137.    Plaintiffs also bring this action on their own behalf and as a class action pursuant to

Rules 23 of the Federal Rules of Civil Procedure and/or respective state statute(s), on behalf of all

members of the following classes (collectively, the "Indirect-Purchaser State Classes") with respect

to claims under the antitrust and/or consumer protection statutes of each of those jurisdictions and

under common law principles of unjust enrichment recognized in each of those jurisdictions:

> a.    **ARIZONA**: All persons and entities in Arizona who indirectly purchased
>
> SRAM and/or products containing SRAM, for end use and not for resale, that
>
> was manufactured and/or sold by one or more of the Defendants during the
>
> Class Period.  Specifically excluded from this Class are the Defendants, the
>
> officers, directors or employees of any Defendant; any entity in which any
>
> Defendant has a controlling interest; and any affiliate, legal representative,

-20-

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1    heir or assign of any Defendant. Also excluded are any federal, state or local

2    governmental entities, any judicial officer presiding over this action and the

3    members of his/her immediate family and judicial staff, and any juror

4    assigned to this action (the "Arizona Indirect Purchaser Class").

5    b.    **ARKANSAS**: All persons and entities in Arkansas who indirectly purchased

6    SRAM and/or products containing SRAM, for end use and not for resale, that

7    was manufactured and/or sold by one or more of the Defendants during the

8    Class Period.  Specifically excluded from this Class are the Defendants, the

9    officers, directors or employees of any Defendant; any entity in which any

10   Defendant has a controlling interest; and any affiliate, legal representative,

11   heir or assign of any Defendant. Also excluded are any federal, state or local

12   governmental entities, any judicial officer presiding over this action and the

13   members of his/her immediate family and judicial staff, and any juror

14   assigned to this action (the "Arkansas Indirect Purchaser Class").

15   c.    **CALIFORNIA**: All persons and entities in California who indirectly

16   purchased SRAM and/or products containing SRAM, for end use and not for

17   resale, that was manufactured and/or sold by one or more of the Defendants

18   during the Class Period.  Specifically excluded from this Class are the

19   Defendants, the officers, directors or employees of any Defendant; any entity

20   in which any Defendant has a controlling interest; and any affiliate, legal

21   representative, heir or assign of any Defendant. Also excluded are any federal,

22   state or local governmental entities, any judicial officer presiding over this

23   action and the members of his/her immediate family and judicial staff, and

24   any juror assigned to this action (the "California Indirect Purchaser Class").

25   d.    **FLORIDA**: All persons and entities in Florida who indirectly purchased

26   SRAM and/or products containing SRAM, for end use and not for resale, that

27   was manufactured and/or sold by one or more of the Defendants during the

28   Class Period.  Specifically excluded from this Class are the Defendants, the

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

officers, directors or employees of any Defendant; any entity in which any
Defendant has a controlling interest; and any affiliate, legal representative,
heir or assign of any Defendant. Also excluded are any federal, state or local
governmental entities, any judicial officer presiding over this action and the
members of his/her immediate family and judicial staff, and any juror
assigned to this action (the "Florida Indirect Purchaser Class").

e.   **HAWAII**: All persons and entities in Hawaii who indirectly purchased
SRAM and/or products containing SRAM, for personal, family or household
use, that was manufactured and/or sold by one or more of the Defendants
during the Class Period.  Specifically excluded from this Class are the
Defendants, the officers, directors or employees of any Defendant; any entity
in which any Defendant has a controlling interest; and any affiliate, legal
representative, heir or assign of any Defendant. Also excluded are any federal,
state or local governmental entities, any judicial officer presiding over this
action and the members of his/her immediate family and judicial staff, and
any juror assigned to this action (the "Hawaii Indirect Purchaser Class").

f.   **IOWA**: All persons and entities in Iowa who indirectly purchased SRAM
and/or products containing SRAM, for end use and not for resale, that was
manufactured and/or sold by one or more of the Defendants during the Class
Period.  Specifically excluded from this Class are the Defendants, the officers,
directors or employees of any Defendant; any entity in which any Defendant
has a controlling interest; and any affiliate, legal representative, heir or assign
of any Defendant. Also excluded are any federal, state or local governmental
entities, any judicial officer presiding over this action and the members of
his/her immediate family and judicial staff, and any juror assigned to this
action (the "Iowa Indirect Purchaser Class").

g.   **KANSAS**: All persons and entities in Kansas who indirectly purchased
SRAM and/or products containing SRAM, for personal, family or household

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

use, that was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Kansas Indirect Purchaser Class").

h.   **MAINE**: All persons and entities in Maine who indirectly purchased SRAM and/or products containing SRAM, for personal family or household use, that was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Maine Indirect Purchaser Class").

i.   **MASSACHUSETTS**: All persons and entities in Massachusetts who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Massachusetts Indirect Purchaser

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1      Class").

2      j.      **MICHIGAN**: All persons and entities in Michigan who indirectly purchased

3              SRAM and/or products containing SRAM, for end use and not for resale, that

4              was manufactured and/or sold by one or more of the Defendants during the

5              Class Period.  Specifically excluded from this Class are the Defendants, the

6              officers, directors or employees of any Defendant; any entity in which any

7              Defendant has a controlling interest; and any affiliate, legal representative,

8              heir or assign of any Defendant. Also excluded are any federal, state or local

9              governmental entities, any judicial officer presiding over this action and the

10             members of his/her immediate family and judicial staff, and any juror

11             assigned to this action (the "Michigan Indirect Purchaser Class").

12     k.      **MINNESOTA**: All persons and entities in Minnesota who indirectly

13             purchased SRAM and/or products containing SRAM, for end use and not for

14             resale, that was manufactured and/or sold by one or more of the Defendants

15             during the Class Period.  Specifically excluded from this Class are the

16             Defendants, the officers, directors or employees of any Defendant; any entity

17             in which any Defendant has a controlling interest; and any affiliate, legal

18             representative, heir or assign of any Defendant. Also excluded are any federal,

19             state or local governmental entities, any judicial officer presiding over this

20             action and the members of his/her immediate family and judicial staff, and

21             any juror assigned to this action (the "Minnesota Indirect Purchaser Class").

22     l.      **MISSISSIPPI**: All persons and entities in Mississippi who indirectly

23             purchased SRAM and/or products containing SRAM, for end use and not for

24             resale, that was manufactured and/or sold by one or more of the Defendants

25             during the Class Period.  Specifically excluded from this Class are the

26             Defendants, the officers, directors or employees of any Defendant; any entity

27             in which any Defendant has a controlling interest; and any affiliate, legal

28             representative, heir or assign of any Defendant. Also excluded are any federal,

-24-

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Mississippi Indirect Purchaser Class").

m.   **MONTANA**: All persons and entities in Montana who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Montana Indirect Purchaser Class").

n.   **NEBRASKA**: All persons and entities in Nebraska who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Nebraska Indirect Purchaser Class").

o.   **NEVADA**: All persons and entities in Nevada who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1    Defendant has a controlling interest; and any affiliate, legal representative,

2    heir or assign of any Defendant. Also excluded are any federal, state or local

3    governmental entities, any judicial officer presiding over this action and the

4    members of his/her immediate family and judicial staff, and any juror

5    assigned to this action (the "Nevada Indirect Purchaser Class").

6    p.    **NEW HAMPSHIRE**: All persons and entities in New Hampshire who

7    indirectly purchased SRAM and/or products containing SRAM, for end use

8    and not for resale, that was manufactured and/or sold by one or more of the

9    Defendants during the Class Period.  Specifically excluded from this Class are

10   the Defendants, the officers, directors or employees of any Defendant; any

11   entity in which any Defendant has a controlling interest; and any affiliate,

12   legal representative, heir or assign of any Defendant. Also excluded are any

13   federal, state or local governmental entities, any judicial officer presiding over

14   this action and the members of his/her immediate family and judicial staff,

15   and any juror assigned to this action (the "New Hampshire Indirect Purchaser

16   Class").,

17   q.    **NEW MEXICO**: All persons and entities in New Mexico who indirectly

18   purchased SRAM and/or products containing SRAM, for end use and not for

19   resale, that was manufactured and/or sold by one or more of the Defendants

20   during the Class Period.  Specifically excluded from this Class are the

21   Defendants, the officers, directors or employees of any Defendant; any entity

22   in which any Defendant has a controlling interest; and any affiliate, legal

23   representative, heir or assign of any Defendant. Also excluded are any federal,

24   state or local governmental entities, any judicial officer presiding over this

25   action and the members of his/her immediate family and judicial staff, and

26   any juror assigned to this action (the "New Mexico Indirect Purchaser Class").

27   r.    **NEW YORK**: All persons and entities in New York who indirectly purchased

28   SRAM and/or products containing SRAM, for end use and not for resale, that

-26-

was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "New York Indirect Purchaser Class").

s.    **NORTH CAROLINA**: All persons and entities in North Carolina who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "North Carolina Indirect Purchaser Class").

t.    **PENNSYLVANIA**: All persons and entities in Pennsylvania who indirectly purchased SRAM and/or products containing SRAM, for personal, family or household use, that was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff,

1   and any juror assigned to this action (the "Pennsylvania Indirect Purchaser

2   Class").,

3   u.   **RHODE ISLAND**: All persons and entities in Rhode Island who indirectly

4   purchased SRAM and/or products containing SRAM, for personal, family or

5   household use, that was manufactured and/or sold by one or more of the

6   Defendants during the Class Period.  Specifically excluded from this Class are

7   the Defendants, the officers, directors or employees of any Defendant; any

8   entity in which any Defendant has a controlling interest; and any affiliate,

9   legal representative, heir or assign of any Defendant. Also excluded are any

10   federal, state or local governmental entities, any judicial officer presiding over

11   this action and the members of his/her immediate family and judicial staff,

12   and any juror assigned to this action (the "Rhode Island Indirect Purchaser

13   Class").,

14   v.   **SOUTH DAKOTA**: All persons and entities in South Dakota who indirectly

15   purchased SRAM and/or products containing SRAM, for end use and not for

16   resale, that was manufactured and/or sold by one or more of the Defendants

17   during the Class Period.  Specifically excluded from this Class are the

18   Defendants, the officers, directors or employees of any Defendant; any entity

19   in which any Defendant has a controlling interest; and any affiliate, legal

20   representative, heir or assign of any Defendant. Also excluded are any federal,

21   state or local governmental entities, any judicial officer presiding over this

22   action and the members of his/her immediate family and judicial staff, and

23   any juror assigned to this action (the "South Dakota Indirect Purchaser

24   Class").

25   w.   **TENNESSEE**: All persons and entities in Tennessee who indirectly

26   purchased SRAM and/or products containing SRAM, for end use and not for

27   resale, that was manufactured and/or sold by one or more of the Defendants

28   during the Class Period.  Specifically excluded from this Class are the

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1    Defendants, the officers, directors or employees of any Defendant; any entity

2    in which any Defendant has a controlling interest; and any affiliate, legal

3    representative, heir or assign of any Defendant. Also excluded are any federal,

4    state or local governmental entities, any judicial officer presiding over this

5    action and the members of his/her immediate family and judicial staff, and

6    any juror assigned to this action (the "Tennessee Indirect Purchaser Class").,

7    x.    **UTAH**: All persons and entities in Utah who indirectly purchased SRAM

8    and/or products containing SRAM, for end use and not for resale, that was

9    manufactured and/or sold by one or more of the Defendants during the Class

10    Period.  Specifically excluded from this Class are the Defendants, the officers,

11    directors or employees of any Defendant; any entity in which any Defendant

12    has a controlling interest; and any affiliate, legal representative, heir or assign

13    of any Defendant. Also excluded are any federal, state or local governmental

14    entities, any judicial officer presiding over this action and the members of

15    his/her immediate family and judicial staff, and any juror assigned to this

16    action (the "New Hampshire Indirect Purchaser Class").,

17    y.    **WEST VIRGINIA**: All persons and entities in West Virginia who indirectly

18    purchased SRAM and/or products containing SRAM, for end use and not for

19    resale, that was manufactured and/or sold by one or more of the Defendants

20    during the Class Period.  Specifically excluded from this Class are the

21    Defendants, the officers, directors or employees of any Defendant; any entity

22    in which any Defendant has a controlling interest; and any affiliate, legal

23    representative, heir or assign of any Defendant. Also excluded are any federal,

24    state or local governmental entities, any judicial officer presiding over this

25    action and the members of his/her immediate family and judicial staff, and

26    any juror assigned to this action (the "West Virginia Indirect Purchaser

27    Class").,

28    z.    **WISCONSIN**: All persons and entities in Wisconsin who indirectly

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Wisconsin Indirect Purchaser Class"). and

aa.     **DISTRICT OF COLUMBIA**: All persons and entities in the District of Columbia who indirectly purchased SRAM and/or products containing SRAM, for personal, family or household use, that was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "District of Columbia Indirect Purchaser Class").

138.    This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a.     The Class is ascertainable and there is a well-defined community of interest among the members of the Class;

b.     Based upon the nature of the trade and commerce involved and the number of indirect purchasers of SRAM, Plaintiffs believe that the members of the Class number in the thousands, and therefore is sufficiently numerous that joinder of

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1                 all Class members is not practicable;

2        c.      Plaintiffs' claims are typical of the claims of the members of the Class

3                because Plaintiffs indirectly purchased SRAM from one or more of the

4                Defendants or their co-conspirators, and therefore Plaintiffs' claims arise from

5                the same common course of conduct giving rise to the claims of the members

6                of the Class and the relief sought is common to the Class;

7        d.      The following common questions of law or fact, among others, exist as to the

8                members of the Class:

9              i.     whether Defendants formed and operated a combination or conspiracy

10                   to fix, raise, maintain or stabilize the prices of, or allocate the market

11                   for, SRAM;

12              ii.    whether the combination or conspiracy caused SRAM prices to be

13                   higher than they would have been in the absence of Defendants'

14                   conduct;

15              iii.   the operative time period of Defendants' combination or conspiracy;

16              iv.   whether Defendants' conduct caused injury to the business or property

17                   of Plaintiffs and the members of the Class;

18              v.    the appropriate measure of the amount of damages suffered by the

19                   Class;

20              vi.   whether Defendants' conduct violates Section 1 of the Sherman Act;

21              vii.  whether Defendants' conduct violates Sections 16720 and 17200 of

22                   the California Business and Professions Code;

23              viii.  whether Defendants' conduct violates the antitrust, unfair competition,

24                   and consumer protection laws of the other states as alleged below; and

25              ix.   the appropriate nature of class-wide equitable relief.

26        e.      These and other questions of law or fact which are common to the members of

27                the Class predominate over any questions affecting only individual members

28                of the Class;

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1   f.  After determination of the predominate common issues identified above, if

2      necessary or appropriate, the Class can be divided into logical and manageable

3      subclasses;

4   g.  Plaintiffs will fairly and adequately protect the interests of the Class in that

5      Plaintiffs have no interests that are antagonistic to other members of the Class

6      and have retained counsel competent and experienced in the prosecution of

7      class actions and antitrust litigation to represent themselves and the Class;

8   h.  A class action is superior to other available methods for the fair and efficient

9      adjudication of this litigation since individual joinder of all damaged Class

10      Members is impractical; the damages suffered by individual Class Members

11      are relatively small, thus, absent the availability of class action procedures, it

12      would not be feasible for Class Members to redress the wrongs done to them;

13   i.  Defendants have acted, and refused to act, on grounds generally applicable to

14      the Class, thereby making appropriate final injunctive relief with respect to the

15      Class as a whole; and

16   j.  In the absence of a class action, Defendants would be unjustly enriched

17      because they would be able to retain the benefits and fruits of their wrongful

18      conduct.

19  139.  The Claims in this case are also properly certifiable under the laws of the State of

20 California, and of the other individual states identified below in the Fourth and Fifth Claims for

21 Relief.

22          **NATURE OF THE MARKET**

23  140.  Throughout the period of time covered by this Complaint, Defendants and their co-

24 conspirators engaged in the business of manufacturing, marketing and selling SRAM throughout the

25 United States.  The sale of SRAM constituted a multi-billion dollar business on an annual basis.  For

26 example, worldwide SRAM sales were estimated at approximately $3.3 billion in 2003, and at

27 approximately $4.1 billion in 2004, 50% of which were in the United States.

28  141.  In 1998, the top six manufacturers accounted for approximately 63% of SRAM sales,

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

and the top nine manufacturers accounted for approximately 79% of such sales.  In both 2003 and 2004, the top six manufacturers accounted for approximately 75% of SRAM sales; the top eight manufacturers accounted for approximately 82% of SRAM sales.  In 2004, the top nine manufacturers sold approximately 84% of all SRAM.  The Defendants are the largest manufacturers and sellers of SRAM in the United States.

142.    The shares of the leading SRAM manufacturers in 2003 were as follows:  Samsung: 32.5%; Renesas  15.0%; Cypress  11.6%; Toshiba  7.9%; NEC  7.2%; Hynix   3.7%.

143.    The SRAM industry has been subject to consolidation during the Class Period.  For example, on December 26, 2002, Hitachi, Ltd. and Mitsubishi Electric Corporation announced an agreement to combine their semiconductor operations into a new company, Renesas Technology Corp., by April 1, 2003.  In the Spring of 2003, Micron announced that it was exiting the SRAM market and agreed to sell its synchronous SRAM product inventory to Cypress.

144.    Defendants operate manufacturing factories called fabrication plants or "fabs."  These fabrication plants make "wafers" that are cut into individual chips, called "dies."  Once the dies have electronics printed on them, the chip is complete.

145.    SRAM has no free-standing use; it must be inserted into a device, such as a computer, to serve any function.  Because SRAM has no independent utility, the value of, and thus demand for, SRAM is derived through its storage capabilities for products that need volatile memory.

146.    SRAM is a commodity, with commodity margins.  The SRAM market is characterized by price inelasticity.  In fact, Defendants refer to "commodity SRAM" to mean a common memory type of SRAM.

147.    When SRAM is purchased by consumers as part of an electronic device, it is a distinct, physically-discrete, hardware element of the end-use product and is traceable throughout the chain of distribution to the end user.  SRAM does not undergo any alterations as it moves through the chain of distribution.  SRAM is identifiable by a part number, and bears a unique serial number that would permit tracing.  Manufacturers such as Cypress, Hynix, Micron, NEC, Renesas, Samsung, and Toshiba manufacture SRAM that is clearly identifiable by a specific, discrete part or model number, and that bears a unique serial number that is directly traceable to the specific manufacturing

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1   defendant.  Photos of samples of SRAM from Samsung, NEC and Micron are depicted below.
2
3
4
5
6
7
8
9
10



11
12
13
14
15



16
17
18
19
20
21
22
23          148.    The SRAM manufacturing market is dominated by a handful of leading
24   manufacturers – the Defendants in this case.  The market for the manufacture and sale of SRAM is
25   subject to high manufacturing and technological barriers to entry.  Efficient fabrication plants are
26   large and costly.
27          149.    Defendants' direct-purchaser customers include the world's largest computer
28   manufacturers, such as Hewlett Packard, IBM, Apple, Dell and Sun Microsystems; microprocessor

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1 | manufacturers, such as Intel; computer equipment manufacturers such as Cisco; and cellular phone

2 | manufacturers such as Motorola and Ericsson.

3 | 150. During the Class Period, the markets for the manufacture of the end-use products in

4 | which SRAM is incorporated were subject to vigorous price competition. The SRAM and end-use

5 | markets are therefore inextricably linked, and cannot be considered separately. Participants in the

6 | SRAM industry were well aware of this intimate relationship, and utilized end-use industry forecasts

7 | to predict sales of their own products.

8 | 151. The end-use industries were all subject to vigorous price competition during the Class

9 | Period. The SRAM direct purchasers had very thin net margins. They were therefore at the mercy

10 | of their component costs, so that increases in component costs, such as the price of SRAM, lead to

11 | quick, corresponding price increases in the end-use products.

12 | 152. SRAM is a significant cost component of end-use electronic products using memory

13 | chips. Because of the thin margins for those electronic products, the original equipment

14 | manufacturers ("OEM") could not absorb any part of the increased cost of SRAM.

15 | 153. The cost of memory chips, including SRAM, to direct-purchaser OEMs is an

16 | important component in the selling price of that OEM's electronic products. If the cost that an OEM

17 | pays for SRAM increases, that directly affects the prices of the products sold by the OEM.

18 | 154. As the market for computers, system servers, and other electronic devices was highly

19 | competitive during the Class Period, whenever an OEM paid more for memory chips, including

20 | SRAM, that OEM passed on 100% of that increased cost to its customers, who, in turn, passed on at

21 | least 100% of the increased SRAM costs to the end-user consumers, such as the Indirect-Purchaser

22 | Plaintiffs and the Class Members.

23 | 155. Beginning in 1998 and continuing through much of 2001, SRAM prices rose, due to

24 | the effects of the industry-wide collusion alleged herein and which is being investigated by the DOJ.

25 | During 2000 alone, the average selling price of SRAM in the United States increased by 35%—from

26 | $3.93 in 1999 to approximately $5.31 in 2000. SRAM prices experienced an increase in 2002, and

27 | again in 2003 and subsequent years, which was the result of the Defendants' and their co-

28 | conspirators' price-fixing conspiracy.

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

156.     California is the largest market in the United States for SRAM and is the world-wide center of the computer industry and other industries that depend upon the SRAM markets. Statements concerning the prices and market conditions for SRAM were disseminated by Defendants from and into California on a regular and continuous basis.

### DEFENDANTS' ILLEGAL CONDUCT

157.     In October of 2006, the DOJ subpoenaed several companies in connection with an investigation of cartel activity in the SRAM industry, which included:  Samsung, Cypress, Hynix, Micron, Mitsubishi, NEC, Renesas, and Toshiba.  Several of the companies being investigated— Hynix, Micron and Samsung—pled guilty to price-fixing in the DRAM industry and paid substantial fines to the DOJ for those unlawful activities ($300 million for Samsung and $185 million for Hynix).  Micron, another major SRAM manufacturer, was the amnesty applicant in the DRAM price-fixing investigation and paid a substantial fine.

158.     The DOJ's SRAM investigation is a criminal one.  This fact is significant because, according to Chapter III, Section C.5 of the DOJ's Antitrust Division Manual, "[c]urrent Division policy is to proceed by criminal investigation and prosecution in cases involving horizontal, per se unlawful agreements such as price-fixing, bid rigging and horizontal customer and territorial allocations."

159.     Several of the individuals employed by Defendants who pled guilty to criminal felonies in the DRAM criminal case investigation also had pricing responsibility for SRAM.  For Defendant Samsung, these include:  (1) Tom Quinn, Vice-President of Marketing for Memory Products; (2) Y. H. Park, Vice-President of Sales who had responsibility for U.S. memory pricing; and (3) I. U. Kim, Vice-President of Marketing.  Those from Defendant Hynix who pled guilty to felony price-fixing violations in DRAM and who also had responsibility for SRAM pricing included its Senior Vice President and General Manager of Worldwide Sales and Marketing, D.S. Kim; its Director of Global Strategic Accounts, C.K. Chung; and its Senior Manager and Vice President for Product Marketing and Vice President for Operations, C.Y. Choi.

160.     Beginning at a date unknown to the Plaintiffs, but at least as early as November 1, 1996, and continuing thereafter to at least October 15, 2006, Defendants and their co-conspirators

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1   engaged in a contract, combination, or conspiracy, the effect of which was to raise the prices at

2   which they sold SRAM to artificially-inflated and supra-competitive levels.

3        161.   Defendants, through their officers, directors and employees, effectuated the aforesaid

4   contract, combination, or conspiracy between themselves and their co-conspirators by, among other

5   things:

6          a.   participating in meetings and conversations, including through various trade

7            associations consortiums, and working groups, to discuss the prices of SRAM

8            in the United States;

9          b.   agreeing, during those meetings and conversations, to charge prices at

10           specified levels and otherwise to increase and maintain prices of SRAM sold

11           in the United States;

12         c.   issuing price announcements and quotations in accordance with the

13           agreements reached; and

14         d.   selling SRAM in the United States at non-competitive prices.

15       162.   In furtherance of this conspiracy to fix prices, the SRAM manufacturers engaged in a

16  systematic and continuous exchange of confidential pricing, quantity and other business information.

17  Defendants and their co-conspirators communicated extensively with one another to discuss and

18  exchange information about SRAM, including the market and prices for SRAM in general, as well

19  as related to specific OEMs.

20       163.   Throughout the class period, representatives of the defendants communicated

21  personally or over the telephone or in writing in the United States to discuss SRAM business,

22  including SRAM pricing.  Such communications occurred in or about:  March 1997; May 1998;

23  December 1998; August 1999; October 1999; November 1999; December 1999; March 2000; April

24  2000; July 2000; August 2000; October 2000; November 2000; March 2001; April 2001; May 2001;

25  June 2001; July 2001; October 2001; November 2001; January 2002; February 2002; March 2002;

26  April 2002; June 2002; July 2002; November 2002; February 2003; April 2003; May 2003; June

27  2003; July 2003; December 2003; during 2004 (the exact months being unknown to Plaintiffs) and

28  September 2005.

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

164.   More specifically, representatives of one or more Defendants communicated on the following dates about the subjects stated:

a.   Ken Yap of Samsung had direct contact with Cypress.  In a May 1998 email to his colleague, he asked, "I wonder if you have a wish list as we discussed in the previous meeting.  I'll have lunch with my buddy at Cypress on Thursday."  Il Ung Kim responds, "I am open to talk about anything related to SRAM business.  One curious topic could be mini-BGA cost, capacity and ramp-up plan."

b.   In September 1999, CK Chung sent an e-mail to Gary Swanson and others at Hynix regarding October pricing for Strategic Accounts and stated that he had "chatted with Samsung guys this morning"  and learned about Samsung's memory prices to certain OEMs.  Regarding the price increases contemplated by the e-mail, he says, "Hopefully [sic] this price increases have our strategic customers reduce their purchases, we can move more products in the spot, spot market price down reducing the gap with contract price, etc, etc.  Let's hope the best."

c.   John Bugee of Samsung had direct contact with Cypress as well.  He sent an e-mail to his colleagues in October 1999 which contained LPSRAM pricing to Intel he received from Cypress.  He spoke to Cypress again and in March 13, 2000 reported on information, including pricing, he learned when he "spoke to Cypress today regarding their LPSRAM program with Intel."  He spoke to Cypress again on April 28, 2000 and reported that he "encouraged Cypress to significantly increase (not decrease) their price" to Intel.  Bugee also shared pricing information he received concerning Micron, NEC, and Toshiba.  Mr. Bugee again spoke to Cypress on October 2, 1999 regarding pricing to Intel, and reported back to Samsung that Cypress' "[c]urrent pricing is in the $6.00 range."  On October 21, 1999, Mr. Bugee again spoke to Cypress, and reported to Samsung that "Cypress has quoted Y2K pricing of:  2M:

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1   Presently very low $3.00 range, and sub-$2.00 in Q400.  4M:  $6.00."  Mr.

2   Bugee further reported that "Cypress acknowledged that the market is

3   tightening, and that customers are requesting upsides.  This might cause them

4   to re-adjust their forward pricing upwards, as well as continue to minimize

5   capacity commitments to Intel."  Bugee also spoke directly to Cypress in

6   August 2000 about prices to Intel and others.  His direct communications

7   continued into 2001.  In March 2001, HD Park asked Bugee and Steve

8   Wienger to let him know how much the competition sold in January and

9   February since they had "whole competition information."

10   d.   In November 1999, a new Samsung employee traveled to the United States

11       and met with representatives of Micron and Cypress.  J.H. Ko, wrote that he,

12       "met to discuss the Sync SRAM market."

13   e.   Bugee spoke directly to his contacts at Etron in December 1999 regarding

14       LPSRAM pricing.  He spoke to his contacts again in July 2000, when he

15       e-mailed, "I spoke to Etron this morning.  I am pleased to report the following

16       …" and provided intelligence about Etron's LPSRAM products and pricing to

17       Intel.  Bugee spoke again to his contact at Etron in October of that year.

18       Bugee spoke to his Etron contact in November 2000, regarding among other

19       things, prices to Intel.  Based on the information he received directly from

20       Etron about pricing to Intel, he suggests that the Etron "price" that Intel will

21       try to use to get Samsung to move its price is meaningless and that Samsung

22       should stay firm at its higher price. Bugee's communications continued to

23       2001.  In addition,  Woung Moo Lee, Senior Manager, Worldwide SRAM

24       Marketing,  also had direct communications with Etron regarding pricing.

25   f.   In July 2000, Bagbee of Samsung sent around competitive information.  Upon

26       receiving it, his colleague, H.D. Park, Manager SRAM Marketing,  replied,

27       "can we share this kind of competitive info, with price info, once per month at

28       least!!!"

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

g.     Mike Black of Micron Marketing had good friends at all of  Micron's so-
called competitors.  For example, in May 2001, Micron was looking for
information on Samsung and Cypress' datasheets for various SRAM.  Mike
Black was asked to get some information by Tom Pawlowski, another Micron
employee.  Another of Black's co-workers reported that Black was "pinging
his contacts for information" but it was not being received quickly enough for
Pawlowski, who directed Black to "please get the Cypress and Samsung info
directly from our contacts there?  Looks like this is a real hot potato now."
On October 26, 2001, Micron's Black reported to Micron and David Carr of
Silicon Access regarding discussions with Samsung, and wrote that "[m]y
conversations with them would put their road map similar to ours.  Pricing for
18M parts out in 2004 around $20 for a 400MHz and in 2005 would move to
$15 range…" [ellipsis in original].

h.     On June 15, 2001, Hee Sang Yoon, a Hynix employee in charge of SRAM
Strategic Marketing, sent an e-mail to SRAM Manufacturers, including
among others, Micron, suggesting that they meet for an "SRAM Manufacturer
Meeting" on a regular basis.  Hynix states that "suppliers can control the
market situation if they have accurate information on customer and market
demand in general."  According to Hynix, it "would be a golden opportunity
for us (SRAM vendors) since we could discuss how we could manage the ever
changing market situation by exchanging our views on Today's SRAM
Market."  The proposed meeting agenda included: SRAM Market Analysis by
Application, Sales Performance and Forecast, Production Volume by Density,
world wide supply forecasts by manufacturer and product roadmaps.

i.     Tom Pawlowski of Micron sent a Hynix e-mail to Jerry Johnson and Mike
Black with the following note:  "Hmmm.  Interesting", Black's response to the
request to have an official meeting to discuss SRAM prices was "Wow".

j.     Tom Pawlowski must have replied to Yoon at Hynix, who sent Pawlowski an

-40-

1    e-mail on June 25, 2001, "I think we can make good time to get suppliers'

2    status which you wanted it.  In my mind, someone who is in charge of

3    marketing, they need two information one is demand forecast and the other

4    one is supplier forecast…"  He suggests that Hynix can get "a lot of demand

5    information"  and proposes a private SRAM meeting between the two

6    companies.  The next day, June 26, Pawlowski responds to Hee Sang

7    suggesting that he contact Mike Black.  On June 27, 2001, Micron's Black

8    confirmed to Hynix' Yoon that "I would like to have an opportunity to meet

9    with you and discuss this SRAM market."  That same day, Yoon wrote back

10   and suggested that they meet in Korea.

11   k.    In October 2001, J. M. Sung of Hynix met with a Cypress employee, Mario

12         Martinez in California about "SRAM product development & Market."

13   l.    Similarly, Mike Black sent an email in January 2002 to Jerry Johnson of

14        Micron containing information that he had received on Samsung's worldwide

15        synchronous SRAM sales and promised to send the Cypress data and GSI

16        Technology, Inc. ("GSI") information "when they get back from Japan …"

17        Jerry Johnson asked Black to put the information into a chart and Black

18        replied, "I will, but I want to wait until my Samsung buddy gets back, he has

19        the numbers for everybody!"

20   m.    On January 17, 2002, Mike Black (Micron Marketing) provided detailed

21        information regarding Samsung's "worldwide sync SRAM sales" to Jerry

22        Nalywajko (Micron Tactical Marketing Mgr.) and other Micron employees.

23   n.    Jack Truong of Samsung wrote to Mark D'Arcangelo, Product Marketing

24        Manager for SRAM at Hitachi, in February 2002 providing Samsung's SRAM

25        revenue numbers for low power, async fast and sync, and asking for Hitachi's

26        revenue numbers.  In response,  D'Arcangelo asked why Samsung's async

27        number was down from previous month and the sync number doubled and

28        Truong provided an explanation involving who the buyer was and other

-41-

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

1    information.  D'Arcangelo responded with Hitachi's numbers, and again

2    asked Truong about the Samsung numbers.  Truong provided additional

3    explanations.  They also asked one another about exchanging the competitors'

4    latest roadmaps, which, they both did.  On June 18, 2002, Hitachi's

5    D'Arcangelo emailed Hitachi's "SRAM numbers" to Truong as follows:

6    "Low Power:  $435k  Async:  $628k  Sync:  $17k * Sun problem."  On

7    September 6, 2002, Hitachi's Toshihiko Seki wrote to Samsung's Truong

8    regarding Low Power SRAM, and asked "Are you able to share with me some

9    of the low power SRAM revenue number?" and "Can you share some data?"

10   and shared that "we do roughly 7M$/mo in worldwide right now and wafer

11   business is about 2M$ . . . "

12   o.    David Bagby, Samsung's Director of SRAM Sales, had lunch with "the NEC

13         America guys" in March 2002 regarding, among other things, the SRAM

14         prices to Intel.  Bagby provided "key" information from the lunch to his

15         colleague Woung Moo Lee (Senior Manager, Worldwide SRAM and MCP

16         Marketing, Semiconductor Sales Division, Samsung Electronics Company,

17         Ltd.), who thanked him for the "valuable" information.  After his conversation

18         with the "NEC guys," Bagby was able to tell Lee that with respect to 2M low

19         power SRAM, "I think we have a chance to raise this price come April 1.  My

20         feeling [is] a small increase will trigger the thought that maybe things will get

21         tight and they better be careful."  NEC also reported to Bagby in that

22         conversation that NEC had excess 4M low power SRAM that Intel did not

23         want, and the parties discussed the TAM.  Bagby concluded "Keep price at

24         $1.80."  On April 17, 2002, Samsung's Bagby wrote to Takahiro Kambe of

25         Hitachi and stated "I would like to give you WW [world-wide] data on SRAM

26         from all competitors would you like that."

27   p.    In April 2002, Micron's Jerry Nalywajko sent an e-mail around Micron with

28         SRAM competitor ASP ("average selling price") and other data as well as

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1    data on the low power SRAM market.  He told his colleagues that while the

2    data seemed reliable, "Mike Black will double ck on this with his sources."

3    q.    In July 2002, Black reached out to Mike Pearson at Samsung to see whether

4          Samsung would answer a number of questions about its SRAM manufacturing

5          processes and told Pearson that  "this may seem too sensitive, but we would

6          be willing to exchange this level of information."  At first, Samsung "politely

7          decline[d] … [the] offer to share data" but two days later had a "change of

8          heart" and let Black know that he would have his competitor's sensitive data

9          in a few days.

10   r.    In a November 21, 2002 e-mail to Jan Dupreez (Micron), Mike Black

11         (Micron) provided comparative SSRAM specifications for Micron's top two

12         competitors, Samsung and Cypress.

13   s.    In February 2003, Truong (Samsung) sent an e-mail to Goto at NEC thanking

14         him for their conversation and attaching PSRAM roadmaps.  Goto responded

15         in kind with NEC's latest roadmaps.  Both asked the other to keep the

16         information confidential.   On May 1, 2003, Samsung's Truong asked NEC's

17         Goto "Would you like to exchange sync SRAM & Low power SRAM

18         presentation between NEC and Samsung," and NEC's Goto responded that

19         same day that "I have absolutely no problem to exchange an [updated]

20         roadmap . . ."

21   t.    Samsung's Jack Truong met with Rob Sloan of Cypress on June 11, 2003

22         regarding SRAM.  After that meeting, Sloan sent an e-mail to Truong

23         attaching Cypress's current SRAM presentation and requesting that Truong

24         forward Samsung's to him.

25   u.    In September 2005, Y. S. Lee of Samsung wrote to Hiroyuki Goto of NEC

26         and Clint Min of Renesas following up on their conversation during a

27         "cigarette break" at a trade association meeting earlier in the day, and seeking

28         a private dinner to discuss QDR II (SRAM).  The dinner was set up for

-43-

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1    September 23, 2005.  Before the dinner, Goto of NEC e-mailed his colleague

2    at NEC to see what specific information was needed from Renesas, "I am

3    having informal dinner with John and Clint tonight.  Is there anything you

4    want me to hear from them?"  S. J. Han of NEC asked Goto to get some

5    information about Samsung and Renesas SRAM QDR II+ and S3 and "run

6    rates."

7    165.    In addition to the communications among the Defendants listed above, Defendants

8    distributed various press releases and public statements designed to mislead the public about the

9    reasons for SRAM price increases of SRAM.  For example on October 11, 1999, Electronic Buyers

10   News reported:

11       a.    "[D]uring a conference call last week to financial analysts to report its

12            quarterly earnings, Don Baldwin, vice president of Micron Technology,

13            Boise, Idaho, said the company 'is on allocation across the board on all its

14            memory products-128-Mbit and 64-Mbit DRAMs, flash, and SRAMs. We're

15            forced to turn away a large amount of business, and most of the other DRAM

16            manufacturers are doing the same.'"

17   166.    On January 13, 2000, Purchasing Magazine, quoted Avo Kanadjian, vice president of

18   memory marketing for Samsung Electronics, as follows:     "Samsung's capacity utilization is at an

19   all-time high, . . . All of my product lines are fighting for capacity allocation. Flash would kill for

20   additional capacity. SRAM we can't supply enough of because of cell phones."

21   167.    The Defendants' earnings conference calls, transcripts of which are available online

22   in written and audio form, also revealed many misleading public statements about the pricing of

23   SRAM.  For example:

24       a.    On July 18, 2002 Cypress Semiconductor Corp. Q2 2002 Earnings Call:

25            "Follow Up: Samsung is shifting production from older DRAM to SRAM,

26            thoughts? . . .

27            Answer: . . .  Right now, relationships, products are what's required to hang in

28            there until capacity, supply and demand are equal, it's a non-event. It won't

-44-

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1    change pricing, the customer is driving pricing." Cypres participants on the

2    call were T.J. Rodgers (President and CEO), Emmanuel Hernandez (VP,

3    Finance & Administration, and CFO), and Ralph Schmitt (EVP, Sales and

4    Marketing.)

5    b.    During the July 15, 2004 <u>Cypress Semiconductor Corp. Q2 2004 Earnings</u>

6          <u>Call</u>: Ralph Schmitt (Cypress EVP, Sales and Marketing) stated: "Our SRAM

7          pricing in Q3 will be up, primarily due to the fact that we've negotiated that

8          pricing with major contracts at our customers back in the May and June

9          timeframe. . .T. J. Rodgers (Cypress President and CEO) stated: "On pricing,

10         our average selling price last quarter was $1.38, up from $1.36 the quarter

11         before that, $1.33 the quarter before, $1.28 a quarter before that and that was

12         the bottom of the recession. So we've been actively raising prices. Right now

13         we are not actively raising prices, but many of the price raises we've done

14         have yet to really show up in revenue, so we still expect favorable news on

15         ASPs going forward, although we're not, as I said, currently raising prices

16         more."

17   c.    On a January 26, 2006 <u>Cypress Semiconductor Corp. Q4 2005 Earnings Call</u>:

18         T.J. Rodgers (President, CEO and Director) noted: "What's happened is the

19         way we run our fabs, the value added products always get everything they

20         need and then we fill up the rest of our fabs to their capability to make with

21         SRAMs and right now we're 33% short, or 25% short on an $80mm demand

22         and it's only the third week of the quarter. So we're booked up, we're in the

23         process of pushing out some deliveries to the least profitable segments of the

24         SRAM business. So we're going through the standard up turn maneuver of

25         focusing on the best of our SRAM business to try to raise margins. So your

26         question about double ordering is something we don't consider right now,

27         what the mode we're in right now is we're calling our strategic accounts, we're

28         telling them about the issues with SRAMs and we're asking them to tell us

-45-

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1    exactly what they need to stay alive and we are scheduling less than what they

2    have ordered and we're making sure that their lines stay up and we don't

3    contribute to a lines down situation. With regard to new business, we are

4    raising our prices so that demand and supply will come into equilibrium.

5    Double ordering always happens. I always say I don't think we have it because

6    we have visibility. We really don't and I am sure we have it right now, but for

7    right now what we ship is more of a negotiation with our customers than what

8    the backlog is."

9        d.    Additionally, during a July 20, 2006 Cypress Semiconductor Corp. Q2 2006

10   Earnings Call:  T.J. Rodgers (Cypress President and CEO) stated: "Pricing did

11   go up for SRAM last quarter. We have an active price raising program going

12   on. . . . If you look at some of the more popular products, our 16 megabit

13   SRAM, which is a high profit margin generator for us, went up to 931 from

14   915. So we drove that set (inaudible) faster (multiple speakers). Okay, let me

15   give you a different number. That's a kind of aggregate number, which is not

16   as good. Our fast SRAMs -- those are high-speed 10 nanoseconds

17   asynchronous RAMs -- the 16-meg is up to $15.25 for an ASP. In

18   micropower, we raised the ASP in our 16-meg there, we raised the ASP in the

19   4-meg, which has been a commodity product to $1.40 from $1.04. So across

20   the board, when we are allocating, one of the things we say is -- how many

21   would you like and how much are you willing to pay? So we have been asked

22   to sell SRAMs below our cost to stay alive in the past and we're not hesitating

23   now to take whatever profit the market will bear when we have SRAMs that

24   are needed and there aren't enough of in the world."

25       e.    On a January 25, 2007 Q4 2006 Cypress Semiconductor Earnings Conference

26   Call – Final, Chris Seams, (EVP, Marketing, Sales and Manufacturing,

27   Cypress Semiconductor) stated: " . . . Let me cover a few of the usual indices

28   for the fourth quarter. Revenue splits by geography were not changed

-46-
THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

significantly, Asia remained number one at 38% of sales, followed by North America at 31%, Europe at 23%, and Japan at 9% of sales. No single customer was greater than 10% of sales. Units for the quarter were 158 million, down slightly, mostly from the PC Clock divestiture and shipping more high density synchronous static RAMs. ASP was a high point for the quarter. We enjoyed a continued strong pricing environment. ASP was $1.22, up significantly from the third quarter ASP of $1.13. This is due to the SRAM market consolidation and a larger percent of our revenue coming from proprietary parts where customers price on value."

168.    In reality, price increases in the SRAM market were the result of careful collaboration and manipulation by the SRAM manufacturers in order to raise market prices.

169.    In addition to the communications listed above, Defendants attended various trade associations meetings in the state of California, at which meetings they discussed SRAM pricing with the purpose and effect of raising, fixing and stabilizing SRAM prices.  Defendants' participation in the trade associations, industry consortiums, and working groups was recognized as a way to communicate with so-called competitors. Such meetings occurred at the following trade associations:

a.    The JEDEC Solid State Technology Association ("JEDEC") (formerly the Joint Electron Device Engineering Council) is the semiconductor engineering standardization body of the Electronic Industries Alliance, a trade association representing segments of the electronic industry.  All Defendants are members of this group and have representatives on various of its committees and subcommittees, which meet regularly.  The JEDEC touts the benefits of membership in the organization as including the ability to "take advantage of networking opportunities" and "make valuable contacts throughout the industry."  The activities of the JEDEC provided the Defendants with opportunities to conspire on the pricing of SRAM.  The defendants participated in JEDEC committee and board meetings in California on the

-47-

1          following dates:  11/5/01; 11/6/01; 11/7/01; and 11/8/01.;

2     b.    The QDR (Quad Data Rate) Consortium ("QDRC") was formed in February

3          of 1999 to jointly develop QDR SRAM, a type of high speed SRAM.  Initial

4          members included, on information and belief, Defendants Cypress, Micron,

5          NEC and IDT.  In March 2001, Samsung joined the consortium and in

6          September 2001, Hitachi joined as well.  The nature of the market and the

7          relationships of the Defendants create the likelihood that there were other

8          Defendants, not yet known to Plaintiffs, who were members of the

9          consortium. The QDRC held regular meetings both in person and

10         telephonically, at which members, and perhaps others, attended.  The

11         activities of the QDRC provided the Defendants with opportunities to conspire

12         on the pricing of SRAM.  The defendants participated in QDRC meetings in

13         California on the following dates: 4/21/01; 6/5/01; 7/19/01; 9/27/01; 11/8/01;

14         5/14/02; 4/3/03;  6/10/03; 10/28/03; 11/20/03; 12/16/03; 10/15/04; 12/13/04;

15         1/28/05; 2/24/05; 3/24/05; 4/28/05; 5/20/05; 6/29/05; 8/2/05; 9/05; 11/15/05;

16         1/19/06;

17    c.    The SigmaRAM Consortium was founded in July of 1999 to jointly develop

18         high-speed asynchronous SRAM for networking and telecommunications

19         applications.  By 2003, its members included Sony, Mitsubishi and Toshiba

20         amd Alliance Semiconductor, GSI, and ISSI.  The activities of the

21         SigmaRAM Consortium provided the Defendants with opportunities to

22         conspire on the pricing of SRAM;

23    d.    The Common Specifications for Mobile RAM (COSMORAM) Group,

24         consisting of Fujitsu, NEC and Toshiba, was formed in 2002 to jointly

25         examine common specifications for mobile RAM.  The activities of the

26         COSMORAM Group provided the Defendants with opportunities to conspire

27         on the pricing of SRAM:

28    e.    The CellularRAM Working Group ("CWG") was initially formed by

-48-
THE THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1    Defendants Cypress, Micron and one of the guilty parties in the DOJ's DRAM

2    investigation, Infineon Technologies, Inc., to jointly work on development of

3    CellularRAM technology.  Defendant Hynix joined in 2005.  The activities of

4    the CWG provided the Defendants with opportunities to conspire on the

5    pricing of SRAM;

6    f.    The Die Products Consortium ("DPC")  is an organization dealing with, *inter*

7    *alia*, development of strategies to enlarge the market for memory die products.

8    Samsung, Hynix, Infineon and IBM were members at times between 2002 and

9    2004.  Micron employees discussed joining the DPC in April 2003 to among

10   other reasons "track" Samsung.  The memory suppliers met at Hynix in

11   California on June 25, 2003 to develop standards for packing die, and agreed

12   to meet again on August 12, 2003 in San Jose, California. The activities of the

13   DPC provided the Defendants with opportunities to conspire on the pricing of

14   SRAM;

15   g.    The Multi Chip Package (MCP) Consortium was formed to handle issues

16   regarding die products and MCP issues.  The group held a meeting in

17   California on June 25, 2003, apparently in conjunction with the DPC meeting,

18   and again in August 4, 2004 in California.  The members included Micron,

19   Samsung, Hynix, Infineon, Intel, AMD, Sharp, and Qualcom, and Elpida and

20   Toshiba were invited to join.  The activities of the MPC Consortium provided

21   the Defendants with opportunities to conspire on the pricing of SRAM;

22   h.    The Council on Computing Power (CoCP) is an industry group dedicated to

23   maximizing computer performance by increasing awareness of RAM by joint

24   marketing.  It was created in 1999 by Hyundai, NEC, Samsung, Infineon, and

25   Micron.  TAEC was added in 2000 and the defendants participated in CoCP

26   meetings in California on the following dates: 3/3/00; 3/7/00; 6/12/00;

27   6/13/00.  The activities of the CoCP provided the Defendants with

28   opportunities to conspire on the pricing of SRAM;

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1     i.  The World Semiconductor Trade Statistcs Industry Association was formed to

2        provide timely, accurate and authentic semiconductor market date on industry

3        product shipments in a product line format.  Cypress, Micron, NEC, Renesas,

4        Seiko Epson, Sony and Toshiba are members; and

5     j.  The MultiMediaCard Association (MMCA) is an industry group

6        headquartered in Cupertino, California and promotes standards for a variety of

7        memory products.  In April 2003, Defendants Samsung, Micron, Renesas,

8        among others, attended meetings together.  The activities of the MMCA

9        provided the Defendants with opportunities to conspire on the pricing of

10        SRAM.

11   170.  The conduct of the "business" of these organizations gave Defendants and their co-

12 conspirators the cover needed to contact one another with impunity and to communicate competitive

13 information, including SRAM pricing.  For example, after a QDRC meeting in 2001, as the

14 Defendants began to exchange competitive information, including pricing information, they

15 designated the documents "QDR" as opposed to specific company names, in order to hide the

16 identity of the company providing that information so that their price-fixing activities would not

17 disclose the participants.  These "consortium" meetings often led to separate and more private

18 meetings at which SRAM prices and markets were discussed.  This is exemplified by an e-mail sent

19 by NEC to Micron seeking "the opportunity to shoot the breeze with you guys outside of the

20 [February 8, 2002] consortium meeting."

21   171.  In a January 11, 2001 e-mail regarding the provision of pricing information on QDRC

22 presentation materials, Jerry Johnson (Micron) states "now that we've beaten Sigma the pricing is

23 going up."

24   172.  In addition to these trade associations, Defendants also participated in many working

25 groups and attended conferences, in California, all of which provided Defendants with opportunities

26 to conspire on the pricing of SRAM.  For example:

27   173.  On November 14, 1997, Rahman of Hynix met with a Samsung employee in

28 California to discuss SRAM business.

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

174.   On May 28, 1998, Ken Yap of Samsung had lunch in California with a Cypress employee.

175.   In December 6, 1999, Jay Ko from Samsung in Korea met with Cypress and IDT in San Jose, California.

176.   On June 12-13, 2000, a number of Defendants participated in an "exchange" meeting in San Jose, California.

177.   In March 2001, J. M. Sung of Hynix met with Infineon and ISSI (Jung Chang) in California about SRAM Business and Hynix met with ISSI again in April about SRAM business.

178.   On May 14 and 15, 2001, representatives of Micron attended a Network Processor Forum ("NPF") in Ottawa, Canada, that was also attended by representatives of Cypress and IDT. Among the issues under consideration was whether the QDR Consortium SRAM specifications or those of Sigma RAM should be adopted as the industry standard.  A follow-up meeting of the NPF was scheduled for June 26 and 27, 2001 in Cypress' San Jose offices.

179.   In October 2001, J. M. Sung of Hynix met separately with both Cypress (Mario Martinez) and ISSI, in California, about "SRAM product development & Market."

180.   On July 24, 2002, Mike Pearson (Samsung) e-mailed the other members of the QDRC suggesting a meeting at Samsung on August 21, 2002—"prior to our QDR face-to-face"— with members of Sigma RAM to discuss the "standardization of timings."  Pearson indicates that this suggestion was prompted by discussions with members of the Sigma RAM group at the "NPF Look Aside Task Group."

181.   On January 28-29, 2003, a number of defendants had a platform conference in San Jose, California.

182.   On July 28, 2003, Samsung and Cypress employees met in San Jose, California regarding SRAM market and technology.

183.   In February, 2005, NEC and Cypress met in California to exchange sample memory devices

184.   On May 19, 2005, QDRC members met with Marvel in California to discuss SRAM issues.

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

185.    Defendants subscribed to the NECX, an online market exchange for electronic components and computer systems, and the American Integrated Chip Exchange ("AICE"), a real-time commodity chip exchange, based in California, that published lists of spot prices, including for SRAM.  In July 2000, NECX purchased the AICE and its RAMDEX website.  Thereafter, in 2001, NECX was acquired by Converge, a California exchange founded by a group of manufacturers including HP, Agilent Technologies, Compaq, Gateway, Hitachi, NEC and Samsung.  The stated goal of Converge was to reduce members' material costs.  In addition, the Defendants participated in surveys from, for example, Gartner/Dataquest's Monthly Pricing and Procurement Project.  These exchanges provided Defendants with additional outlets for shared pricing to use in their SRAM conspiracy.

186.    The predominant locus of Defendants' actions in the United States which formed a contract, combination, trust or conspiracy was the State of California.  Therefore, all members of the Class, whether or not California residents, are entitled to recover under California law, as well as the laws of their own states.

## ACTIVE CONCEALMENT

187.    Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiffs.  Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives.  Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases.  Defendants and their co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection.  Plaintiffs did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until shortly before this class action litigation was commenced.

188.    As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1

**PLAINTIFFS' INJURIES**

2          189.    Plaintiffs and the Class members as defined below have been damaged as a direct,

3   foreseeable, and proximate result of Defendants' misconduct.  Plaintiffs and the Class members

4   participate in the market for the sale of SRAM.  To the extent Plaintiffs and Class members purchase

5   SRAM as part of a computer or other equipment purchase, Defendants' unlawful conspiracy and

6   unfair, deceptive and unconscionable practices have caused the prices at which OEMs sell such

7   SRAM to increase to supra-competitive levels.

8          190.    Defendants have extinguished the market forces of competition to their mutual

9   benefit.  Consumers, including Plaintiffs and Class members, are injured by paying supra-

10  competitive prices for SRAM.

11         191.    Because Defendants control the market for SRAM, there are virtually no choices for

12  consumers who require such a memory product other than buying one from entities that pay supra-

13  competitive prices to Defendants because of Defendants' unlawful agreement alleged herein.

14         192.    The market for SRAM and the markets for Computers and mobile phones are

15  intertwined because the SRAM market exists to serve the Computer and mobile phone markets.

16  SRAM and Computer and mobile phone markets are united in that one cannot exist without the

17  other.

18         193.    The conspiratorial conduct of the Defendants and their co-conspirators, the purpose of

19  which is to raise the price of SRAM, would, on information and belief, directly increase the price of

20  the Computers and mobile telecommunications devices.  The economic and legal literature has

21  recognized that unlawful overcharges on a component normally resulted in higher prices for

22  products that contained that price-fixed component.   As two noted antitrust scholars – Professors

23  Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at

24  the Haas School of Business at the University of California at Berkeley) and Lawrence A. Sullivan

25  (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of

26  Antitrust) – have observed, "in a multiple-level chain of distribution, passing on monopoly

27  overcharges is not the exception: it is the rule."

28         194.    Where as here, there are few products whose price is dependent on only one factor or

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

variable, economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when the dependent variable is explained by a multitude of variables—when all such variables may be changing simultaneously. That analysis—called regression analysis—is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs. Thus, it will be possible to isolate and identify the impact of increases in the price of SRAM on computer and mobile telecommunication equipment prices even though these products contain a numbers of other components whose prices may be changing over time.

195. During the Class Period, Plaintiffs and the Class Members paid supra-competitive prices for SRAM. These inflated prices were passed on to them by manufacturers, distributors, and retailers. Those overcharges have unjustly enriched Defendants.

## VIOLATIONS ALLEGED

### First Claim for Relief

### (Violation of Section 1 of the Sherman Act)

196. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

197. Beginning at a time presently unknown to Plaintiffs, but at least as early as November 1, 1996 and continuing through at least December 31, 2006, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for SRAM in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

198. In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

    a.    To fix, raise, maintain and stabilize the price of SRAM;

    b.    To allocate markets for SRAM among themselves;

    c.    To submit rigged bids for the award and performance of certain SRAM

1          contracts; and

2          d.       To allocate among themselves the production of SRAM.

3     199.   The combination and conspiracy alleged herein has had the following effects, among

4   others:

5          a.       Price competition in the sale of SRAM has been restrained, suppressed, and/or

6                   eliminated in the United States;

7          b.       Prices for SRAM sold by Defendants and their co-conspirators have been

8                   fixed, raised, maintained and stabilized at artificially high, non-competitive

9                   levels throughout the United States; and

10         c.       Those who purchased SRAM directly or indirectly from Defendants and their

11                  co-conspirators have been deprived of the benefits of free and open

12                  competition.

13    200.   Plaintiffs have been injured and will continue to be injured in their business and

14   property by paying more for SRAM purchased indirectly from the Defendants and their co-

15   conspirators than they would have paid and will pay in the absence of the combination and

16   conspiracy, including paying more for personal computers and other products in which SRAM is a

17   component as a result of higher prices paid for SRAM by the manufacturers of those products.

18    201.   Plaintiffs and the class are entitled to an injunction against Defendants, preventing

19   and restraining the violations alleged herein.

20                          **Second Claim for Relief**

21                     **(Violation of the California Cartwright Act)**

22    202.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

23   allegation set forth in the preceding paragraphs of this Complaint.

24    203.   Defendants' contract, combination, trust or conspiracy was centered in, carried out,

25   effectuated and perfected mainly within the State of California, and Defendant's conduct within

26   California injured all members of the Class throughout the United States.  Therefore, this claim for

27   relief under California law is brought on behalf of all members of the Class, whether or not they are

28   California residents.

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

204.    Beginning at a time presently unknown to Plaintiffs, but at least as early as November 1, 1996, and continuing thereafter at least up to and including at least December 31, 2006, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professional Code.  Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of, and allocate markets for, SRAM at supra-competitive levels.

205.    The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for, SRAM.

206.    For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and the following:

    a.    to fix, raise, maintain and stabilize the price of SRAM;

    b.    to allocate markets for SRAM amongst themselves;

    c.    to submit rigged bids for the award and performance of certain SRAM contracts; and

    d.    to allocate among themselves the production of SRAM.

207.    The combination and conspiracy alleged herein has had, inter alia, the following effects:

    a.    price competition in the sale of SRAM has been restrained, suppressed and/or eliminated in the State of California and throughout the United States;

    b.    prices for SRAM sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels in the State of California and throughout the United States; and

    c.    those who purchased SRAM from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

208.   Plaintiffs and the other members of the Class paid supra-competitive, artificially inflated prices for SRAM.

209.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the members of the Class have been injured in their business and property in that they paid more for SRAM than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs seek treble damages and the costs of suit, including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and Professions Code.

### Third Claim for Relief

### (Violation of the California Unfair Competition Law)

210.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

211.   Defendants' business acts and practices were centered in, carried out, effectuated and perfected mainly within the State of California, and Defendant's conduct within California injured all members of the Class throughout the United States.  Therefore, this claim for relief under California law is brought on behalf of all members of the Class, whether or not they are California residents.

212.   Beginning on a date unknown to Plaintiffs, but at least as early as November 1, 1996, and continuing thereafter at least up through and including December 31, 2006, Defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

213.   This Claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

214.   The Defendants' conduct as alleged herein violated Section 17200.  The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein,

constituted a common continuous and continuing course of conduct of unfair competition by means

of unfair, unlawful and/or fraudulent business acts or practices within the meaning of California

Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following:

      a.    The violations of Section 1 of the Sherman Act, as set forth above;

      b.    The violations of Section 16720, *et seq.*, of the California Business and Professions Code, set above;

      c.    Defendants' acts, omissions, misrepresentations, practices and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

      d.    Defendants' act and practices are unfair to consumers of SRAM in the State of California and throughout the United States, within the meaning of Section 17200, California Business and Professions Code; and

      e.    Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

215.    Plaintiffs and each of the Class members are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business acts or practices.

216.    The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

217.    The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Class to pay supra-competitive and artificially-inflated prices for SRAM.  Plaintiffs and the members of the class suffered injury in fact and lost money or property as a result of such unfair competition.

218.    The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

219.    As alleged in this Complaint, Defendants and their co-conspirators have been unjustly

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1   enriched as a result of their wrongful conduct and by Defendants' unfair competition.  Plaintiff and

2   the members of the Class are accordingly entitled to equitable relief including restitution and/or

3   disgorgement of all revenues, earnings, profits, compensation and benefits which may have been

4   obtained by Defendants as a result of such business practices, pursuant to the California Business

5   and Professions Code, Sections 17203 and 17204.

6                          **Fourth Claim for Relief**

7             **(Violation of State Antitrust and Unfair Competition Laws)**

8            220.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

9    allegation set forth in the preceding paragraphs of this Complaint.

10           221.    By reason of the foregoing, Defendants have entered into agreements in restraint of

11   trade in violation of Arizona Revised Stat. §§44-1401 *et seq.*

12           222.    By reason of the foregoing, Defendants have entered into agreements in restraint of

13   trade in violation of California Bus. & Prof. Code §§16700 *et seq.* and Cal. Bus. & Prof. Code

14   §§17200 *et seq.*

15           223.    By reason of the foregoing, Defendants have entered into agreements in restraint of

16   trade in violation of District of Columbia Code Ann. §§28-4503 *et seq.*

17           224.    By reason of the foregoing, Defendants have entered into agreements in restraint of

18   trade in violation of Hawaii Code, H.R.S. §§ 480-1, *et seq.*

19           225.    By reason of the foregoing, Defendants have entered into agreements in restraint of

20   trade in violation of Iowa Code §§553.1 *et seq.*

21           226.    By reason of the foregoing, Defendants have entered into agreements in restraint of

22   trade in violation of Kansas Stat. Ann. §§50-101 *et seq.*

23           227.    By reason of the foregoing, Defendants have entered into agreements in restraint of

24   trade in violation of Maine Rev. Stat. Ann. 10, §§1101 *et seq.*

25           228.    By reason of the foregoing, Defendants have entered into agreements in restraint of

26   trade in violation of Michigan Comp. Laws. Ann. §§445.773 *et seq.*

27           229.    By reason of the foregoing, Defendants have entered into agreements in restraint of

28   trade in violation of Minnesota Stat. §§325D.52 *et seq.*

230.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §75-21-1 *et seq.*

231.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Rev. Stat. §§59-801 *et seq.*

232.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§598A *et seq.*

233.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§57-1-1 *et seq.*

234.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §75-1 *et seq.*

235.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§51-08.1-01 *et seq.*

236.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the Puerto Rico Code 10 LPRA §251, *et seq.* and 31 LPRA §5141.

237.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§37-1 *et seq.*

238.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§47-25-101 *et seq.*

239.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§2453 *et seq*

240.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Stat. §§ 76-10-919 *et seq.*

241.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§47-18-1 *et seq.*

242.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§133.01 *et seq.*

243.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Wyoming Stat. §40-12-105.

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

244.    Class Members in each of the states listed above paid supra-competitive, artificially inflated prices for SRAM.  As a direct and proximate result of Defendants' unlawful conduct, such members of the Class have been injured in their business and property in that they paid more for SRAM than they otherwise would have paid in the absence of Defendants' unlawful conduct.

245.    As a result of Defendants' violations of the statutes set forth, Class members seek damages and costs of suit, including reasonable attorneys' fees.

### Fifth Claim for Relief

### (Violation of State Consumer Protection and Unfair Competition Laws)

246.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

247.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

248.    Defendants have engaged in unfair competition or unconscionable, unfair or deceptive acts or practices in violation of Arkansas Code §4-88-101 *et seq.*

249.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of California Bus. & Prof. Code §17200 *et seq.*

250.    Defendants have engaged in unfair competition or unconscionable, unfair or deceptive acts or practices in violation of District of Columbia Code §28-3901 *et seq.*

251.    Defendants have engaged in unfair competition or unconscionable, unfair or deceptive acts or practices in violation of Florida Stat. §501.201 *et seq.*

252.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kansas Stat. §50-623 *et seq.*

253.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices that were indirectly purchased primarily for personal, family, or household purposes in violation of 5 Maine Rev. Stat. §207 *et seq.*

254.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Massachusetts General Laws, Chapter 93A, §1 *et seq.*

255.   Defendants have engaged in unfair  competition or unfair or deceptive acts or practices in violation of Montana Code § 30-14-201 *et seq.*

256.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nebraska Rev. Stat. §59-1601 *et seq.*

257.   Defendants have engaged in unfair competition or unconscionable, unfair or deceptive acts or practices in violation of New Mexico Stat. §57-12-1 *et seq.*

258.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New York Gen. Bus. Law §349 *et seq.*  Specifically:

     a.    Defendants engaged in commerce in New York;

     b.    Defendants and their co-conspirators secretly agreed to raise prices by direct agreement on bids to customers located in New York and through artificial supply restraints on the entire SRAM market;

     c.    New York consumers were targets of the conspiracy;

     d.    The secret agreements were not known to New York consumers;

     e.    Defendants made public statements about the price of SRAM and products containing SRAM that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for SRAM and products containing SRAM; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information;

     f.    Because of Defendants' unlawful trade practices in the State of New York, there was a broad impact on New York consumer class members who indirectly purchased SRAM; and consumer class members have been injured because they have paid more for SRAM than they would have paid in the absence of Defendants' unlawful trade acts and practices

     g.    Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased SRAM were

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

misled to believe that they were paying a fair price for SRAM or the price increases for SRAM were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conduct;

h.    Defendants knew that their unlawful trade practices with respect to pricing SRAM would have an impact on New York consumers and not just the Defendants' direct customers;

i.    Defendants knew that their unlawful trade practices with respect to pricing SRAM would have a broad impact, causing consumer class members who indirectly purchased SRAM to be injured by paying more for SRAM than they would have paid in the absence of Defendants' unlawful trade acts and practices;

j.    Defendants' consumer-oriented violations adversely affected the public interest in the State of New York..

259.    Defendants have engaged in unfair competition or unconscionable, unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. §75-1 *et seq.*

260.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. Section 201-1 *et seq.*   Specifically:

a.    Defendants engaged in commerce in Pennsylvania;

b.    As alleged herein, Defendants engaged in acts or practices that were unfair or deceptive to natural persons creating a likelihood of confusion or misunderstanding on Plaintiffs' part;

c.    As alleged herein, Defendants used methods, acts or practices which mislead or deceive members of the public in a material respect about the true reasons for the price of SRAM;

d.    Pennsylvania consumers  purchased products primarily for personal, family or household purposes that contained SRAM manufactured by one or more of the Defendants;

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1       e.      The price of SRAM incorporated into those products was artificially inflated

2           due to the illegal price-fixing practices of the Defendants described above;

3       f.      The purchase price of the products bought by the Pennsylvania consumers

4           which contained price inflated SRAM was thus, itself, artificially inflated;

5       g.      Pennsylvania consumers reasonably believed they were purchasing SRAM-

6           containing products at a fair and competitive price, and reasonably relied on

7           their respective purchasing prices being established honestly by the free

8           market, but were deceived by the inclusion of illegally priced SRAM, which

9           was artificially inflated the price of the products they bought;

10      h.      Pennsylvania consumers were injured by Defendants' actions.

11     261.    Defendants have engaged in unfair competition or unfair or deceptive acts or

12 practices that were indirectly purchased primarily for personal, family, or household purposes in

13 violation of Rhode Island Gen. Laws. §6-13.1-1 *et seq.*  Specifically:

14       a.      Defendants engaged in commerce in Rhode Island;

15       b.      Defendants and their co-conspirators unscrupulously and secretly agreed to

16           raise SRAM prices by direct agreement on prices Defendants charged

17           Defendants' customers located in Rhode Island and through artificial supply

18           restraints on the entire SRAM market;

19       c.      The secret agreements were not known to Rhode Island natural persons who

20           indirectly purchased SRAM primarily for personal, family or household

21           purposes;

22       d.      Defendants made public statements that Defendants knew would be seen by

23           Rhode Island natural persons who indirectly purchased SRAM primarily for

24           personal, family or household purposes; such statements created a likelihood

25           of confusion or misunderstanding with respect to the real reasons that the

26           prices of SRAM and products containing SRAM were rising; and such

27           statements either omitted material information that rendered the statements

28           that they made materially misleading and confusing, or affirmatively deceived

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1    such consumers about the real cause of price increases for SRAM and

2    products containing SRAM;

3        e.    Because of Defendants' unlawful and unscrupulous trade practices in Rhode

4        Island, natural persons in Rhode Island who indirectly purchased SRAM

5        primarily for personal, family or household purposes were misled or deceived

6        to believe that they were paying a fair price for SRAM or the price increases

7        for SRAM were for valid business reasons;

8        f.    Natural persons who indirectly purchased SRAM primarily for personal,

9        family or household purposes have been injured because they have paid more

10       for SRAM than they would have paid in the absence of Defendants' unlawful

11       and unscrupulous trade acts and practices;

12       g.    Defendants knew that their unscrupulous and unlawful trade practices with

13       respect to pricing SRAM would have an impact on Rhode Island natural

14       persons who indirectly purchased SRAM primarily for personal, family or

15       household purposes and not just the Defendants' direct customers;

16       h.    Defendants knew that their violations with respect to pricing SRAM would

17       have a broad impact, causing natural persons who indirectly purchased SRAM

18       primarily for personal, family or household purposes to be injured by paying

19       more for SRAM than they would have paid in the absence of Defendants'

20       unlawful trade acts and practices;

21       i.    Defendants' violations adversely affected public policy in Rhode Island..

22   262.   Defendants have engaged in unfair competition or unfair or deceptive acts or

23   practices in violation of 9 Vermont §2451 *et seq.*

24   263.   Class Members in the states listed above paid supra-competitive, artificially inflated

25   prices for SRAM.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

26   the members of the Class have been injured in their business and property in that they paid more for

27   SRAM than they otherwise would have paid in the absence of Defendants' unlawful conduct.

28   264.   As a result of Defendants' violations of the laws listed above, the members of the

1  Class in the states listed above are entitled to equitable relief including restitution and/or

2  disgorgement of all revenues, earnings, profits, compensation and benefits which may have been

3  obtained by Defendants as a result of such business practices, including compensable damages under

4  New York law, and damages wherever else allowed by law.

5  ### **Sixth Claim for Relief**

6  **(Unjust Enrichment and Disgorgement of Profits)**

7       265.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

8  allegation set forth in the preceding paragraphs of this Complaint.

9       266.   Defendants have been unjustly enriched through overpayments by Plaintiffs and Class

10  members and the resulting profits enjoyed by Defendants as a direct result of such overpayments.

11  Plaintiffs' detriment and Defendants' enrichment were related to and flowed from the conduct

12  challenged in this Complaint.

13       267.   Under common law principles of unjust enrichment, Defendants should not be

14  permitted to retain the benefits conferred via overpayments by Plaintiffs and Class members.

15       268.   Plaintiffs and members of the following Indirect-Purchaser State Classes seek

16  disgorgement of all profits resulting from such overpayments and establishment of a constructive

17  trust from which Plaintiffs and Class members may seek restitution:

18            a.   Arizona Indirect-Purchaser Class;

19            b.   Arkansas Indirect-Purchaser Class;

20            c.   California Indirect-Purchaser Class;

21            d.   District of Columbia Indirect-Purchaser Class;

22            e.   Florida Indirect-Purchaser Class;

23            f.   Hawaii Indirect-Purchaser Class;

24            g.   Iowa Indirect-Purchaser Class;

25            h.   Kansas Indirect-Purchaser Class;

26            i.   Maine Indirect-Purchaser Class;

27            j.   Massachusetts Indirect-Purchaser Class;

28            k.   Michigan Indirect-Purchaser Class;

| | |
|---|---|
| 1 | l.      Minnesota Indirect-Purchaser Class; |
| 2 | m.     Mississippi Indirect-Purchaser Class; |
| 3 | n.      Montana Indirect-Purchaser Class: |
| 4 | o.      Nebraska Indirect-Purchaser Class: |
| 5 | p.      Nevada Indirect-Purchaser Class; |
| 6 | q.      New Hampshire Indirect-Purchaser Class; |
| 7 | r.      New Mexico Indirect-Purchaser Class; |
| 8 | s.      New York Indirect-Purchaser Class; |
| 9 | t.      North Carolina Indirect-Purchaser Class; |
| 10 | u.      Pennsylvania Indirect-Purchaser Class; |
| 11 | v.      Rhode Island Indirect-Purchaser Class; |
| 12 | w.     South Dakota Indirect-Purchaser Class; |
| 13 | x.      Tennessee Indirect-Purchaser Class; |
| 14 | y.      Vermont Indirect-Purchaser Class; |
| 15 | z.      Washington Indirect-Purchaser Class: |
| 16 | aa.     West Virginia Indirect-Purchaser Class; and |
| 17 | bb.     Wisconsin Indirect-Purchaser Class. |

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

A.      That the Court determine that the claims alleged herein under the Sherman Act, state antitrust laws, and state consumer protection and/or unfair competition laws may be maintained as a Class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

B.      That the unlawful agreement, conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

1.      A restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Claim for Relief;

2.      An unlawful combination, trust, agreement, understanding, and/or concert of

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

action in violation of the state antitrust laws identified in the Second and

Fourth Claims for Relief herein;

3.      Violations of the state consumer protection and unfair competition laws

identified in the Third and Fifth Claims for Relief herein; and

4.      Acts of unjust enrichment as set forth in the Sixth Claim for Relief herein.

C.      That Plaintiffs and the Class members recover damages, as provided by

federal and state antitrust laws, and that a judgment be entered in favor of Plaintiffs and the relevant

Class members against the Defendants, jointly and severally, in an amount to be trebled in

accordance with such laws (except as to New York Gen. Bus. Law §349 *et seq.* for which Plaintiffs

do not seek discretionary trebling).

D.      That Plaintiffs and the relevant Class members obtain any penalties, punitive

or exemplary damages, and/or full consideration, where the laws of the respective states identified

herein so permit;

E.      That Plaintiffs and the relevant Class members recover damages and/or all

other available monetary and equitable remedies under the state unfair competition laws identified

above;

F.      That Defendants, their affiliates, successors, transferees, assignees, and the

officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming

to act on their behalf, be permanently enjoined and restrained from in any manner continuing,

maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein, or from

entering into any other conspiracy alleged herein, or from entering into any other contract,

conspiracy or combination having a similar purpose or effect, and from adopting or following any

practice, plan, program, or device having a similar purpose or effect;

G.      That Plaintiffs and members of the Class be awarded restitution, including

disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and

acts of unjust enrichment;

H.      That Plaintiffs and members of the Class be awarded pre- and post-judgment

interest, and that that interest be awarded at the highest legal rate from and after the date of service

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1  of the initial complaint in this action;

2        I.      That Plaintiffs and members of the Class recover their costs of this suit,

3  including reasonable attorneys' fees as provided by law; and

4        J.      That Plaintiffs and members of the Class have such other, further, and

5  different relief as the case may require and the Court may deem just and proper under the

6  circumstances.

7  Dated:  August 1, 2008                    Respectfully submitted

8                                            _____/s/ Pamela E. Woodside_____
9                                            Pamela E. Woodside

10                                           Francis O. Scarpulla (41059)
                                             Craig C. Corbitt (83251)
11                                           Pamela E. Woodside (226212)
                                             Traviss Galloway (234678)
12                                           Qianwei Fu (242669)
                                             ZELLE, HOFMANN, VOELBEL, MASON & GETTE,
13                                           LLP
                                             44 Montgomery Street, Suite 3400
14                                           San Francisco, CA  94104
                                             Telephone:    (415)639-0700
15                                           Facsimile:    (415) 693-0770
                                             fscarpulla@zelle.com
16                                           ccorbitt@zelle.com

17                                           *Interim Lead and Liaison Counsel for Indirect-
                                             Purchaser Class*
18

19
   Steering Committee For Indirect-Purchaser Plaintiffs:
20 Wyatt B. Durrette, Jr.
   Christine A. Williams
21 **DURRETTEBRADSHAW PLC**
   Main Street Centre, 20th Floor
22 600 East Main Street
   Richmond, VA  23219
23 Telephone:    (804) 775-6900
   Facsimile:    (804) 775-6911
24

25

26

27

28

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

1   Michele C. Jackson (SB No. 90807)
    Joseph R. Saveri (SB No. 130064)
2   **LIEFF CABRASER HEIMANN**
    **& BERNSTEIN, LLP**
3   Embarcadero Center West
    275 Battery Street, Suite 3000
4   San Francisco, CA 94111
    Telephone:     (415) 956-1000
5   Facsimile:     (415) 956-1008

6   Natalie Finkelman Bennett
    **SHEPHERD FINKELMAN MILLER & SHAH, LLC**
7   35 East State Street
    Media, PA 19063
8   Telephone:     (610) 891-9880
    Facsimile:     (610) 891-9883
9

10                      **JURY TRIAL DEMAND**

11          Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by
    jury for all issues so triable.
12
    Dated: August 1, 2008                  ____/s/ Pamela E. Woodside_____
13
                                           Francis O. Scarpulla (41059)
14                                         Craig C. Corbitt (83251)
                                           Pamela E. Woodside (226212)
15                                         Traviss Galloway (234678)
                                           Qianwei Fu (242669)
16                                         ZELLE, HOFMANN, VOELBEL, MASON & GETTE,
                                           LLP
17                                         44 Montgomery Street, Suite 3400
                                           San Francisco, CA  94104
18                                         Telephone:     (415)639-0700
                                           Facsimile:     (415) 693-0770
19                                         fscarpulla@zelle.com
                                           ccorbitt@zelle.com
20
                                           *Interim Lead and Liaison Counsel for Indirect*
21                                         *Purchaser Class*

22  Steering Committee For Indirect-Purchaser Plaintiffs:
    Wyatt B. Durrette, Jr.
23  Christine A. Williams
    **DURRETTEBRADSHAW PLC**
24  Main Street Centre, 20th Floor
    600 East Main Street
25  Richmond, VA  23219
    Telephone:     (804) 775-6900
26  Facsimile:     (804) 775-6911

27

28

                                    -70-

1 │ Michele C. Jackson (SB No. 90807)
│ Joseph R. Saveri (SB No. 130064)
2 │ **LIEFF CABRASER HEIMANN**
│ **& BERNSTEIN, LLP**
3 │ Embarcadero Center West
│ 275 Battery Street, Suite 3000
4 │ San Francisco, CA 94111
│ Telephone:     (415) 956-1000
5 │ Facsimile:     (415) 956-1008

6 │ Natalie Finkelman Bennett
│ **SHEPHERD FINKELMAN MILLER & SHAH, LLC**
7 │ 35 East State Street
│ Media, PA 19063
8 │ Telephone:     (610) 891-9880
│ Facsimile:     (610) 891-9883

9

10

11

12

13 │ 321356v1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
Case No. M:07-CV-1819-CW

**IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION**
**Case No. M:07-cv-01819-CW**
**MDL No. 1819**

**CERTIFICATE OF SERVICE**

I, Rita Mehler, certify and declare under penalty of perjury that I: am a citizen of the United States; am over the age of 18 years; am employed by Zelle, Hofmann, Voelbel, Mason & Gette LLP, at the address indicated, whose members are members of the State Bar of California and at least one of whose members is a member of the Bar of each Federal District Court within California; am not a party to or interested in the cause entitled upon the document to which this Proof of Service is affixed; and that I served a true and correct copy of the following document(s) in the manner indicated below:

1. **THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL AND STATE ANTITRUST LAWS, STATE CONSUMER PROTECTION LAWS AND STATE COMMON LAW OF UNJUST ENRICHMENT**

☐ by today depositing, at San Francisco, California, the said document(s) in the United States mail in a sealed envelope, with first-class postage thereon fully prepaid; (and/or)

☐ by facsimile transmission to the parties listed below;

☐ by overnight mail to the parties listed below;

☐ by today personally delivering the said document(s) to the person(s) indicated below in a manner provided by law, by handing them the documents or by leaving the said document(s) at the office(s) or usual place(s) of business, during usual business hours, of the said person(s) with a clerk or other person who was apparently in charge thereof and at least 18 years of age, whom I informed of the contents.

☐ (BY ELECTRONIC MAIL) I caused such document(s) to be emailed to the offices and/or to attorneys of offices of the above named addressee(s).

☒ **By USDC Live System-Document Filing System:** on all interested parties registered for e-filing.

Dated: August 1, 2008

Signed  _/s/ Rita Mehler_
Rita Mehler