1

2

3

4

5

6

7

8

**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE: STATIC RANDOM ACCESS (SRAM) ANTITRUST LITIGATION | No. C 07-01819 CW |
|  | ORDER (1) SUBSTITUTING REAL PARTY IN INTEREST AND (2) FINDING PSRAM CLAIMS WITHIN THE SCOPE OF PLAINTIFFS' CLAIMS |

_____/

     Direct Purchaser Plaintiff and, by joinder, Indirect Purchaser Plaintiffs move the Court to hold that PSRAM claims are within the scope of their claims, or, alternatively, to amend their complaints to clarify that PSRAM claims are included. Defendants oppose this motion. Direct Purchaser Plaintiff also moves to substitute Westell, Inc. for Westell Technologies, Inc. as the real party in interest. Defendants do not oppose this motion. The matter was heard on September 18, 2008. Having considered oral argument and all of the papers filed by the parties, the Court grants Plaintiffs' motions.

                              BACKGROUND

     The facts of this case were laid out in greater detail in the Court's order on the initial motion to dismiss. In brief,

1    Defendants are various corporations that sold SRAM to customers

2    throughout the United States.  Direct Purchaser Plaintiff wishes to

3    represent a proposed class of individuals and companies that

4    purchased Static Random Access Memory (SRAM) directly from one or

5    more Defendants.  Indirect Purchaser Plaintiffs wish to represent a

6    proposed class of individuals and companies that indirectly

7    purchased SRAM from one or more Defendants, for end use and not for

8    resale.  Both Direct Purchaser Plaintiff and Indirect Purchaser

9    Plaintiffs state causes of action under Section 1 of the Sherman

10   Act for price-fixing in the SRAM market.

11        Direct Purchaser Plaintiff filed a consolidated class action

12   complaint on August 31, 2007.  In the complaint Direct Purchaser

13   Plaintiff defines SRAM as a "type of volatile semiconductor memory

14   chip that retains its contents as long as power remains applied."

15   Complaint ¶ 18.  "As used herein, the term SRAM includes all types

16   of static random access memory sold during the Class Period.  For

17   purposes of this Complaint, SRAM excludes all types of DRAM sold

18   during the Class Period, including SDRAM."  Id.

19        Indirect Purchaser Plaintiffs' complaint similarly defines

20   SRAM as "all types of static random access memory sold during the

21   Class Period.  SRAM is a type of memory that is faster and more

22   reliable than dynamic random access memory.  The term 'static' is

23   derived from the fact that SRAM does not need to be refreshed like

24   DRAM."  Third Consolidated Amended Class Action Complaint ¶ 5.

25   Direct and Indirect Purchaser Plaintiffs now seek to include PSRAM

26   as within the definition of SRAM.

27

28

**United States District Court**
For the Northern District of California

DISCUSSION

I.   Inclusion of PSRAM Purchases

Federal Rule of Civil Procedure 15(a) provides that leave of the court allowing a party to amend its pleading "shall be freely given when justice so requires."  Leave to amend lies within the sound discretion of the trial court, and that discretion "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981) (citations omitted).  Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality." Webb, 655 F.2d at 979; DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (citations omitted).

Because Rule 15 favors a liberal policy towards amendment, the non-moving party bears the burden of demonstrating why leave to amend should be denied. See, e.g., DCD Programs, 833 F.2d at 186; Genentech, Inc. v. Abbott Lab., 127 F.R.D. 529, 530-31 (N.D. Cal. 1989).  The Supreme Court has identified four factors relevant to whether a motion for leave to amend should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party. Foman v. Davis, 371 U.S. 178, 182 (1962). "These factors, however, are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend." DCD Programs, 833 F.2d at 186.

Defendants argue that Plaintiffs cannot amend their claim to include PSRAM because (1) PSRAM is not a type of SRAM, (2) doing so would encroach upon claims being pursued simultaneously in litigation concerning DRAM, (3) all claims for PSRAM sales have

3

been released, and (4) amending the complaint would cause undue delay in the case and prejudice Defendants.

A.   PSRAM

Plaintiffs assert that PSRAM is a type of SRAM, whereas Defendants claim PSRAM is a type of DRAM.  For support, Plaintiffs point to an earlier complaint filed in this case before it was consolidated into multi-district litigation.  In that complaint, the term SRAM was defined as "all types of static random access memory sold during the class period, including, without limitation, psuedo SRAM (also known as 'PSRAM' or mobile PSRAM')."  Williams Dec., Ex. E (Excerpts of October 25, 2006 Westell Technologies, Inc. complaint, ¶ 5).  Plaintiffs also note that some of Defendants' marketing materials group PSRAM with SRAM.  Williams Dec. Ex. D.

Defendants point to the Dictionary of Terms for Solid State Technology, produced by the Joint Electron Devices Engineering Council (JEDEC), to counter that PSRAM is a type of DRAM, and therefore should not be considered part of this litigation.  Defendants assert that JEDEC is "the organization that sets standards for the semiconductor industry."  Opposition at 5.  The dictionary states that "PSRAM is a combinational form of a dynamic RAM that incorporates various refresh and control circuits on-chip.  These circuits allow the PSRAM operating characteristics to closely resemble those of an SRAM."  Hess Dec. Ex. 1.  The definition also states that a unique characteristic of PSRAM is that its "internal structure is a dynamic memory with refresh control signals generated internally, in the standby mode, so that it can mimic the function of a static memory."  Id.  The definition notes that, in

4

practice, "unlike so-called self-refresh DRAMs, PSRAMs have nonmultiplexed address lines and pinouts similar to those of SRAM." Id.

Based on the information presented, this Court concludes that PSRAM does not fit neatly under either the SRAM or DRAM category. PSRAM has many characteristics of both SRAM and DRAM; it acts like a hybrid of the two. JEDEC's dictionary uses the words static and dynamic throughout its definition of PSRAM. While PSRAM has elements of dynamic memory, it also can "mimic the function of static memory." Id.

B.   Encroachment

Defendants argue that including PSRAM in this case would encroach upon claims in simultaneous litigation about antitrust violations in the DRAM market before the Honorable Phyllis J. Hamilton in this District. (Case No. 02-1486). Defendants note that four PSRAM producers, Hynix, Micron, NEC, and Samsung, are also defendants in the DRAM litigation.

Defendants rely primarily on In re Urethane Antitrust Litig. I and In re Urethane Antitrust Litig. II in which the same judge managed two related price-fixing cases about plastics. The plaintiffs sought to amend their complaint to change the product definition of a type of plastic. In re Urethane Antitrust Litig. I, 232 F.R.D. 681, 683-84 (D. Kan. 2005). The court denied the plaintiffs' motion to amend their complaint to expand the product definition because doing so would encroach on the plaintiffs' claim in the other price-fixing case about a different type of plastic. Id. at 685. In re Urethane Antitrust Litig. II, the plaintiffs were allowed to amend their complaint to change the product

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

definition of a type of plastic because the new definition did not
include any plastic types that would encroach upon the other
plastics price-fixing case.  *In re Urethane Antitrust Litig. II*,
235 F.$.D. 507, 514 (D. Kan. 2006).

Here, Defendants have not shown how including PSRAM in the
instant antitrust claim about SRAM would encroach on the DRAM
litigation before Judge Hamilton.  Neither the complaint nor the
order certifying the class action in the DRAM case mentions that
PSRAM is included as a type of DRAM.  *See In re DRAM Antitrust*
*Litig.*, No. 02-1486 (Corrected Third Amended Class Action Complaint
(Doc. 1307)); *In re DRAM Antitrust Litig.*, 2006 WL 1530166 (N.D.
Cal. 2006).  Nor do the settlement agreements in the DRAM case make
any mention of PSRAM.  *See* Hess Dec. Ex. 2-5.  Therefore, the Court
concludes that including PSRAM claims in this case would not
encroach upon the DRAM litigation.

C.   Releases

Defendants also argue that PSRAM, as a DRAM product, is
covered by the releases in the DRAM litigation.  Four Defendants,
Hynix, Micron, NEC, and Samsung, have obtained releases from the
DRAM direct purchaser class as part of a settlement.  Each release
relies on the identical definition of DRAM: "DRAM is defined to
mean dynamic random access memory components, including without
limitation, synchronous dynamic random access memory ('DSRAM')
Rambus dynamic access memory ('RDRAM'), asynchronous dynamic random
access memory ('ASYNC') and double data rate dynamic random access
memory ('DDR') semiconductor devices and modules."  Hess Dec. Ex. 2
at 2; Ex. 3 at 2; Ex. 4 at 2; Ex. 5 at 2.  Though this definition
includes the phrase "including without limitation," the Court is

**United States District Court**
For the Northern District of California

1  not convinced that PSRAM claims were intended to be released in

2  these settlement agreements.   Further, Plaintiffs claim that "at no

3  time during [these settlement] negotiations was any mention made of

4  PSRAM."   Saveri Dec. ¶ 5.   Therefore, at this juncture in the

5  litigation, the Court does not read the releases to exclude claims

6  based on PSRAM sales.

7        D.   Undue Delay

8        "To show undue delay, the opposing party must at least show

9  delay past the point of initiation of discovery; even after that

10  time, courts will permit amendment provided the moving party has a

11  reasonable explanation for the delay."  Saes Getters S.P.A. v.

12  Aeronex, Inc., 219 F. Supp. 2d 1081, 1086 (S.D. Cal 2002).

13  However, such amendment "must not cause the opposing party undue

14  prejudice."  DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th

15  Cir. 1987).

16        Defendants argue that amending the complaint to include PSRAM

17  claims would cause prejudicial undue delay.   Defendants assert that

18  adding PSRAM to the complaint will force the Court to reopen class

19  certification discovery.   Defendants claim that they will need to

20  search for and provide new documents, amend class certification

21  briefing and expert reports, and retake class certification expert

22  depositions.

23        The Court has no trouble concluding that amending the

24  complaint to include PSRAM claims would create more work for

25  Defendants, but such an amendment will not cause undue delay.

26  Plaintiffs' request does not violate the deadlines set out in the

27  Case Management Orders for both Direct and Indirect Purchaser

28  Plaintiffs' cases.   In those Orders, the Court did not set a

7

deadline to add additional parties or claims. See Amended Minute
Order and Case Management Order (docket no. 206). Beginning June
21, 2007, Defendants were entitled to take limited discovery from
Plaintiffs in preparation for drafting their opposition to
Plaintiffs' motions for class certification. See Supplemental Case
Management Order No. 1 (docket no. 217). Full document discovery
did not begin until after the Court ruled on Defendants' motion to
dismiss, on February 14, 2008; and full fact discovery began on
June 8, 2008. See id. The deadline for the completion of fact
discovery is December 31, 2008.

Further, Plaintiffs made efforts to resolve this dispute with
Defendants and the Discovery Master several months before filing
the motion to amend. On February 27, 2008, Plaintiffs asked
Defendants to include PSRAM information in response to Plaintiffs'
discovery requests because Plaintiffs believed PSRAM was a type of
SRAM. See Saveri Reply Dec. Ex. B (SRAM Direct & Indirect
Purchaser Plaintiffs' Joint Request for Production No. 1 and
Definition No. 6). Defendants rejected this request, and on May 6,
2008, the parties argued the issue before the Discovery Master.
See Williams Dec. Ex. D (May 6, 2008 Joint Letter Brief) at 9-11,
13-15. On June 6, 2008, the parties stipulated that the issue "is
one which must be resolved by the District Court Judge in this
case." See Williams Dec. Ex. F (Stipulation and Proposed Order
Modifying May 20, 2008 Discovery Order). Thus, for some time,
Defendants have known that inclusion of PSRAM claims in the
complaint was a distinct possibility. Nevertheless, Defendants, at
least on one occasion, instructed their expert not to consider
PSRAM in his analysis of the SRAM market. See Saveri Reply Dec.

United States District Court
For the Northern District of California

8

United States District Court
For the Northern District of California

Ex. C (Leonard Depo. at 155:16-156:3, July 25, 2008)

In sum, the Court concludes that the complaints should fairly be read to include PSRAM products.  In the alternative, Plaintiffs seek to amend the complaints to clarify this point.  The Court concludes that Plaintiffs are seeking in good faith to amend the complaints, and that such an amendment would not be futile or cause Defendants undue delay or prejudice.  However, the Court does not find it necessary to require Plaintiffs formally to amend the complaints in light of its reading of the existing complaints.

II.   Real Party in Interest

Defendants do not oppose Direct Purchaser Plaintiff's motion to substitute Westell, Inc. for Westell Technologies, Inc.  The Court grants Plaintiff's unopposed motion.

CONCLUSION

For the foregoing reasons, the Court GRANTS Direct Purchaser Plaintiff's motion (Docket No. 497) to substitute in the real party in interest and to find PSRAM claims within the scope of Direct and Indirect Purchaser Plaintiffs' claims.

IT IS SO ORDERED.

Dated: 9/29/08

_____
CLAUDIA WILKEN
United States District Judge

9