IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION, _____/ | No. C 07-01819 CW<br><br>ORDER DENYING INTEL CORPORATION'S MOTION FOR AN ENLARGEMENT OF TIME TO OPT OUT OF CLASS |

Intel Corporation moves for an order enlarging the time within which it may opt out of the certified class in this action. The Court established an opt-out deadline of April 6, 2009. Intel argues that it intended to opt out of the class but, through inadvertence, missed the deadline. Defendants have filed a joint statement of non-opposition to Intel's motion. Plaintiffs, through the law firm of Cotchett, Pitre & McCarthy, their lead counsel, filed a brief in opposition to Intel's motion. Having considered the papers filed by the parties, the Court denies Intel's motion.

BACKGROUND

On September 29, 2008, the Court certified the class of direct purchasers of SRAM. In order to exclude itself from the class, a party was to have done so in writing by April 6, 2009. Intel is a class member and is one of the largest purchasers of SRAM from

Defendants.[1]  Intel claims that it intended to opt out of any certified SRAM class pursuant to an agreement it had made with one its suppliers, whom Intel does not identify.  The claims administrator, Rust Consulting, Inc., mailed seventy-two class action notices to Intel at various addresses, including five to Intel's corporate headquarters in Santa Clara, California.  As of June 25, 2009, the United States Postal Service had returned seven of these direct mail notices as undeliverable without a forwarding address.  Rust was able to update six of those addresses, to which it subsequently mailed notices.  Two of those notices were again returned as undeliverable.  Thus, Plaintiffs' counsel asserts that sixty-nine of the direct mail notices were actually received by Intel.

Rust also sent thirty-one email notices to Intel at various email addresses.  Of those, four bounced back as undeliverable.  Thus, Plaintiffs' counsel asserts that twenty-seven of the email notices sent to Intel were successfully delivered.  Plaintiffs' counsel also caused the Wall Street Journal to publish a notice about the class action in its national edition on January 30, 2009.

Approximately forty-five individuals or entities timely excluded themselves from the class.  No other individual or entity has requested an enlargement of the time to file a request for exclusion.

Intel claims that its Santa Clara headquarters office received only thirteen notices.  According to Intel, the only notice that

---

[1] Intel excluded itself from the class in the preceding DRAM litigation.  In re Dynamic Random Access Memory (DRAM) Antitrust Litig., No. M 02-1486 PJH (N.D. Cal.).

2

arrived prior to the opt-out deadline was forwarded from an Intel branch in Malaysia. The other twelve notices were forwarded from Intel branches in Oregon, but those notices did not arrive until May 28, 2009, after the opt-out deadline had already passed. Intel claims that it did not receive any of the other mailed notices, or any of the emailed notices.[2]

When the Malaysia notice arrived in the legal department in Santa Clara, "through miscommunications, the deadline for opting-out was not calendared." Motion at 2; see also Craycroft Decl., ¶ 5. Intel discovered this error on April 29, 2009, when the unidentified supplier mentioned above notified Intel that it missed the deadline. Craycroft Decl. ¶ 3. Intel then contacted outside counsel and several Defendants to inform them of its intent to opt out and to find the most efficient remedy. On June 19, 2009, Intel contacted Plaintiffs' lead counsel to discuss the issue. Intel then concluded that the instant motion was the best route. On June 22, 2009, two and one-half months after the exclusion date, Intel filed its motion to enlarge the time to be excluded from the class.

DISCUSSION

The standard for determining whether Intel should be allowed to opt out of the class after the applicable deadline is whether its failure to comply with the deadline is the result of "excusable neglect." Fed. R. Civ. P. 6(b)(2). This standard allows courts, "where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances

---

[2] Intel does not state whether it saw the notice in the Wall Street Journal.

3

beyond the party's control." Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 388 (1993). It is appropriate for courts to accept such late filings when the party's neglect can be considered "excusable," a determination that is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Id. at 395. The relevant circumstances include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was in reasonable control of the movant, and whether the movant acted in good faith." Id. Pioneer instructs courts to determine the issue of excusable neglect within the context of the particular case. Pincay v. Andrews, 389 F.3d 853, 859 (9th Cir. 2004).

Intel argues that it made an "honest mistake" due to human error. Reply at 1. Because of "some miscommunications," the deadline to opt out of the class was not calendared, and it missed an unambiguous deadline. Craycroft Decl., ¶ 5. Intel provides no supporting declarations describing these miscommunications or why the deadline was not calendared. Further, if the Court were to accept Intel's vague assertion that deadlines were missed because of "miscommunications," there would be no rational way to draw the line between excusable and non-excusable neglect if other class members in the case sought to opt out.

Intel argues that there is no evidence that its tardiness was part of a strategy to gain a tactical advantage in the case. However, Intel fails to explain why it wants to opt out of the class action, other than because of an agreement it has with an unidentified supplier. Intel also argues that no member of the

4

class will suffer any prejudice or impairment of its claims if Intel is allowed to opt out because there has been no settlement, court ruling or any other development that would be disturbed by Intel opting out.  However, the class will suffer prejudice because, since April 6, 2009, Plaintiffs' lead counsel conducted discovery under the assumption that Intel would be a member of the class.  For instance, in reviewing Defendants' production of more than 11 million pages of documents, Plaintiffs' lead counsel focused its efforts on locating evidence relating to major purchasers, such as Intel.  Plaintiffs' lead counsel has taken approximately one-third of its allotted seventy-five depositions, and has given notice to almost all of the seventy-five witnesses it intends to depose.  Plaintiffs' lead counsel has a limited number of depositions that it may take and it has chosen those depositions based upon Intel's membership in the class.  Further, the focus of the depositions taken thus far have been on obtaining testimony relating to major purchasers, such as Intel.  Plaintiffs' lead counsel has expended significant resources and limited discovery devices pursuing information related to Intel and counsel has made strategic decisions based on the assumption that Intel would remain in the class.  Further, fact discovery is scheduled to close in less than two months, on September 4, 2009.  Allowing Intel to opt out now would prejudice Plaintiffs.

    Intel also argues that it acted reasonably and diligently to correct its mistake.  After Intel discovered its error on April 29, 2009, it retained outside counsel and met and conferred with Defendants to determine if there would be opposition to a delayed opt out.  However, Intel waited until June 19, 2009, almost two

5

months, before contacting Plaintiffs' lead counsel about the issue. Further, Intel waited until June 22, 2009 to file this motion -- the only obvious solution short of a stipulation of <u>all</u> parties. Overall, Intel's delay belies its argument that it acted reasonably and diligently.

The Court notes that, although Intel implies that the class notice was not properly distributed, it does not assert that the notice failed to comply with Federal Rule of Civil Procedure 23 or Due Process.  After reviewing the procedures used by Rust and the sample notices submitted to the Court, nothing appears amiss in the notice process.

Weighing all of these relevant circumstances, the Court will therefore not allow Intel to enlarge the time to file and serve its written notice of intent to opt out of the certified class.

## CONCLUSION

For the foregoing reasons, Intel's motion for an enlargement of time to opt out of the certified class is DENIED (Docket No. 733).

IT IS SO ORDERED.

Dated: 08/07/09

CLAUDIA WILKEN
United States District Judge