Robert B. Pringle (CA Bar No. 051365)
Paul R. Griffin (CA Bar No. 083541)
Patrick M. Ryan (CA Bar No. 203215)
Jonathan E. Swartz (CA Bar No. 203624)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA  94111-5894
Telephone:     415-591-1000
Facsimile:      415-591-1400
rpringle@winston.com
pgriffin@winston.com
pryan@winston.com
jswartz@winston.com

Attorneys for Defendants
NEC ELECTRONICS CORPORATION and
NEC ELECTRONICS AMERICA, INC.

[*Other Counsel and Defendants Appear on Signature Page*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION | Case No.:  M:07-cv-1819 CW <br><br> MDL No. 1819 |
| This Document Relates To: <br><br> All Indirect Purchaser Actions | **DEFENDANTS' OPPOSITION TO INDIRECT PURCHASER PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT OPINION OF MICHELLE M. BURTIS** <br><br> Date:          September 3, 2009 <br> Time:          2:00 p.m. <br> Location:    Courtroom 2, 4th Floor <br> Judge:        Hon. Claudia Wilken |

# **TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF OPPOSITION ........................................................... 1

II. PLAINTIFFS FAILED TO DEMONSTRATE ANY BASIS TO EXCLUDE THE TESTIMONY OF DR. BURTIS ........................................................................................ 4

    A. Dr. Burtis's Expert Opinions on Pass-Through Are Relevant and Reliable. ................ 4

        1. Dr. Burtis's Expert Opinion Regarding Dr. Harris's Theory of Pass-Through is Relevant and Reliable. ........................................................... 4

        2. Dr. Burtis's Expert Opinion Regarding Plaintiffs' Experts' Proposed Reduced-Form Regression Model is Relevant and Reliable. ............................................................................................................ 7

            (a) Dr. Dwyer's Proposed Reduced-Form Regression Fails to Account for Actual SRAM Cost Data and Ignores the Distribution Chains for SRAM-Containing Products. ........................... 7

            (b) Plaintiffs Cannot Shift Their Burden to Dr. Burtis to Propose a Plausible Methodology to Determine Impact on a Class-Wide Basis. ................................................................................................. 8

            (c) Dr. Burtis Does Not Dispute the Viability of Regression Modeling in General and Has Successfully Constructed Regression Models Herself. .................................................................. 8

            (d) Dr. Burtis's Expert Opinion is Supported by Case Law and Economic Literature ....................................................................... 9

        3. Dr. Burtis's Expert Opinion Regarding Plaintiffs' Experts' Proposed Structural Model is Relevant and Reliable. .................................... 11

        4. Dr. Burtis's Expert Opinion Regarding Plaintiffs' Experts' Improper Reliance on Averaging is Relevant and Reliable. ............................ 12

    B. Dr. Burtis's Expert Opinion on Plaintiffs' Proposed Damages Model is Relevant and Reliable. ........................................................................................ 13

III. CONCLUSION .......................................................................................................... 14

-i-

DEFENDANTS' OPPOSITION TO INDIRECT PURCHASER
PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT OPINION OF MICHELLE M. BURTIS
(M:07-cv-1819 CW)

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*California v. Infineon Tech. AG*,
   No. C06-4333 PJH, 2008 WL 4155665 (N.D. Cal. Sept. 5, 2008)..........................................1

*City of St. Paul v. FMC Corp.*,
   WL 259683 (D. Minn. 1990) ...............................................................................................10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)................................................................................................1, 2, 3, 11

*Fagan v. Honeywell Int'l, Inc.*,
   No. 04-4903-BLS2, 2008 WL 4106393 (Mass. Super. Ct. Feb. 5, 2008) ..............................5

*Gordon v. Microsoft Corp.*,
   2001 WL 366432 (Minn. Dist. Ct. Mar. 30, 2001)............................................................9, 10

*Hangarter v. Provident Life and Acc. Inc. Co.*,
   373 F.3d 998 (9th Cir.2004) ...................................................................................................2

*Hodges v. Secretary of Health and Human Services*,
   No. 07-472V, 2009 WL 2135758 (Fed. Cl. June 26, 2009) ...................................................2

*Holscher v. Olson*,
   No. CV-07-3023-EFS, 2008 WL 2645484 (E.D. Wash. June 30, 2008)................................2

*Ill. Brick Co. v. State of Illinois*,
   431 U.S. 720 (1977)................................................................................................................5

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   No. 94 C 897, MDL 997, 1994 WL 663590 (N.D. Ill. Nov. 18, 1994) ..................................5

*In re Graphics Processing Units Antitrust Litig.*,
   253 F.R.D. 478 (N.D. Cal. 2008) ........................................................................1, 6, 10, 13

*In re Methionine Antitrust Litig.*,
   204 F.R.D. 161 (N.D. Cal. 2001)..........................................................................................10

*In re Methionine Antitrust Litig.*,
   No. 00-1311, 2003 WL 22048232 (N.D. Cal. Aug. 26, 2003) ..............................................10

*In re OSB Antitrust Litig.*,
   No. 06-826, 2007 WL 2253425 (E.D. Pa. Aug. 3, 2007) .....................................................10

*In re Rubber Chems. Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005)............................................................................................1

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

*Karofsky v. Abbot Laboratories*,
    No. CV-95-1009, 1997 WL 34504652 ........................................................................5

*Kerr v. Abbott Labs.*,
    No. 96-002837, 1997 WL 314419 (Minn. Dist. Ct. Feb. 14, 1997) ..........................6

*Somers v Apple, Inc.*,
    No. C 07-06507 JW, 2009 WL 2137148 (N.D. Cal. July 17, 2009) .............................2, 5, 6, 9

*Thomas v. Newton Int'l Enters.*,
    42 F.3d 1266 (9th Cir.1996) ......................................................................................2

*United States v. Prime*,
    431 F.3d 1147 (9th Cir.2005) ....................................................................................3

*Weir v. Crown Equipment Corp.*,
    217 F.3d 453 (7th Cir. 2000) .....................................................................................2

*Weisgram v. Marley Co.*,
    528 U.S. 440 (2000)...................................................................................................2

**STATUTES**

Fed. R. Evid. 702 ...............................................................................................1, 11, 12, 13

Fed. R. Evid. 703 .........................................................................................................................3

**OTHER AUTHORITIES**

Monopoly Overcharge: A Comprehensive Policy Analysis, Robert G. Harris, Lawrence A.
    Sullivan, University of Pennsylvania Law Review, vol. 128, No. 2 (1979)..............................4

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

### I. INTRODUCTION AND SUMMARY OF OPPOSITION

Plaintiffs do not and cannot identify any reason that the testimony of Michelle M. Burtis Ph.D. ("Dr. Burtis") should be excluded under Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), or any other authority. Though they cite the *Daubert* standard, Plaintiffs never actually perform a *Daubert* analysis in their motion.[1] Instead, Plaintiffs simply make numerous ad hominem attacks against Dr. Burtis, state their disagreement with her opinions, and remarkably attempt to shift their burden to her to develop a methodology to show pass-through based on common proof in this case.

For example, Plaintiffs accuse Dr. Burtis of producing "thinly disguised advocacy" and then mischaracterize her opinions, claiming that she believes that no alleged overcharge could have been passed through to any class member. (Plaintiffs' Motion at 1:25–2:1.) But this is not her opinion. Instead, Dr. Burtis identifies examples where alleged overcharges could not be passed through, which contradicts Dr. Harris's opinion that pass-through is the rule and not the exception and that pass-through can be shown with common proof despite the divergent distribution chains at issue in this case. Dr. Burtis does this to illustrate Plaintiffs' experts' failure to meet their obligation as to impact, but not once does she opine that no alleged overcharge could ever reach any indirect purchaser.

Plaintiffs also criticize Dr. Burtis for failing to construct an econometric model of her own to illustrate pass-through. (Plaintiffs' Motion at 8:4–5.) In doing so, they blur the important distinction between what a plaintiff must do to obtain certification — propose a realistic and sufficiently plausible methodology of showing impact (pass-through) using common proof that takes into account all variables that may impact the accuracy of the results[2] — with what a defendant can do to

---

[1]  DE 799, Indirect-Purchaser Plaintiffs' Notice of Motion and Motion to Exclude the Expert Opinion of Michelle M. Burtis; Memorandum of Points and Authorities ("Plaintiffs' Motion").

[2]  *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 353–54 (N.D. Cal. 2005) (requiring plaintiffs to show that their proposed method is realistic)); *California v. Infineon Tech. AG*, No. C06-4333 PJH, 2008 WL 4155665, at *9 (N.D. Cal. Sept. 5, 2008) (class certification denied where "plaintiffs' expert . . . failed to come forward with a sufficiently plausible methodology"); *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 496 (N.D. Cal. 2008) ("*GPU*") (plaintiffs fail in their common-impact burden if they fail to account for relevant variables).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

defeat certification.[3]  Put simply, ***it is not Dr. Burtis's job*** to come up with a methodology for Plaintiffs; her role is to evaluate Plaintiffs' experts' opinions.

As explained in her declaration,[4] Dr. Burtis was asked to review Plaintiffs' allegations and to review and opine on Dr. Harris's and Dr. Dwyer's opinions.  (Burtis Decl. ¶ 4, 5.)  In pursuing her analysis, Dr. Burtis reviewed and analyzed third-party data related to sales and purchases of the relevant products, and she concluded that Plaintiffs' experts fall short of meeting their obligation in regard to their proposed methodologies.  For example, the Burtis Declaration contains numerous exhibits illustrating the inaccuracy of Dr. Harris's opinion that "pass-through is the rule not the exception."  (Burtis Decl. ¶ 11, Exs. 26–29, 31, 32, 34, 39, 42, *see generally* ¶ 104–120 ("VI. Empirical Evidence Relevant to the Determination of Any Pass-Through That Contradicts Plaintiffs' Experts Claims").)

Dr. Burtis's testimony illustrates that Plaintiffs' experts' testimony "is not supported by sufficient facts" and in so opining she analyzed the overwhelming amount of "indisputable record facts [that] contradict [and] otherwise render the[ir] opinion[s] unreasonable." (*Weisgram v. Marley Co.*, 528 U.S. 440, 454 (2000) (citations omitted).)  And, contrary to Plaintiffs' assertions, Dr. Burtis's expert opinions are supported by academic and economic literature.[5]  This literature was

---

[3]  *Somers v Apple, Inc.*, No. C 07-06507 JW, 2009 WL 2137148, at *7 (N.D. Cal. July 17, 2009) ("*Apple*") ("[Plaintiff's expert] failed to propose a model that could adequately account for the *morass of variables that make up the iPod pricing dynamic*. [¶] The Court also finds the overall testimony of *Dr. Burtis far more persuasive than that of [plaintiff's expert]* . . . Dr. Burtis's testimony showed the significant challenges that [plaintiff's expert] would face in carrying out his proposals.").

[4]  DE 683, Declaration of Michelle M. Burtis, Ph.D. in Support of Defendants' Opposition to Indirect Purchaser Plaintiffs' Motion for Class Certification ("Burtis Declaration" or "Burtis Decl.").

[5]  Even if Dr. Burtis had not cited to any academic or economic literature, such an omission would not be fatal under *Daubert*.  *Hodges v. Secretary of Health and Human Services*, No. 07-472V, 2009 WL 2135758, at *6 (Fed. Cl. June 26, 2009) ("An expert is not required to cite any literature supporting his theory."); *Weir v. Crown Equipment Corp.*, 217 F.3d 453, 465 (7th Cir. 2000) ("Crown focuses on the fact that Pacheco did not cite any articles supporting his position or address contrary authority stating that doors are unnecessary on forklifts. In a *Daubert* analysis, it helps to have cited articles; it is not, however, required."); *Holscher v. Olson*, No. CV-07-3023-EFS, 2008 WL 2645484, at *7 (E.D. Wash. June 30, 2008) ("While Plaintiff does not cite to treatises or peer-reviewed articles that back Mr. Moss' methodologies, this shortcoming is not fatal because reliability may be demonstrated through other methods, including experience.") (citing *Hangarter v. Provident Life and Acc. Inc. Co.*, 373 F.3d 998, 1015–16 (9th Cir.2004) and *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269–70 (9th Cir.1996)).

cited by Dr. Burtis in her declarations and identified by her in Exhibit 2 to her first Declaration and Exhibit 112 to her Surrebuttal Declaration. Exhibit 2, for example, is a 47-page document that lists the materials Dr. Burtis considered in forming her expert opinion. Such materials include not only academic and economic articles, but also legal pleadings, other experts' reports and materials, depositions transcripts, interviews Dr. Burtis conducted, other public information (including numerous websites), research reports, defendant data, and ***data from 57 third-parties***. The third-party data alone supports, and indeed corroborates, Dr. Burtis's expert opinion that Plaintiffs' experts' proposed methodologies are fatally flawed.

An expert may rely on facts or data "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703. Dr. Burtis relies on third-party data in this case to demonstrate, for example, the lack of correlation between cost changes and price changes to identify instances of no pass-through. (See Burtis Decl. ¶¶ 104–123 (discussing Dr. Burtis's empirical analysis of third-party data); Burtis Ex.27 (reflecting no pass-through by an SRAM distributor).) Plaintiffs cannot dispute that economists can and do reasonably rely on data reflecting actual cost and price information in forming opinions or inferences on whether there is a correlation between the data and its impact on the analysis of pass-through. And Plaintiffs certainly cannot argue that it is unreasonable for Dr. Burtis to rely on data reflecting instances of no pass-through in forming her expert opinion that Plaintiffs' experts' methodologies, which would find pass-through for the same products notwithstanding the indisputable data to the contrary, are unreliable.

The overarching theme of Plaintiffs' motion is not that Dr. Burtis's testimony falls short of any legal standard; rather; it is that Plaintiffs disagree with Dr. Burtis's opinions and want her opinions and the evidence in the record stricken. But this disagreement does not warrant the exclusion sought by Plaintiffs.[6]

---

[6] See *United States v. Prime*, 431 F.3d 1147, 1153 (9th Cir.2005) (in considering a *Daubert* motion, the court's inquiry must "focus[ ] solely on [the] principles and methodology, not on the conclusions that they generate.") (citing *Daubert*, 509 U.S. at 593).

-3-
DEFENDANTS' OPPOSITION TO INDIRECT PURCHASER
PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT OPINION OF MICHELLE M. BURTIS
(M:07-cv-1819 CW)

## II. PLAINTIFFS FAILED TO DEMONSTRATE ANY BASIS TO EXCLUDE THE TESTIMONY OF DR. BURTIS

**A.   Dr. Burtis's Expert Opinions on Pass-Through Are Relevant and Reliable.**

**1.   Dr. Burtis's Expert Opinion Regarding Dr. Harris's Theory of Pass-Through is Relevant and Reliable.**

Plaintiffs opaquely contend that Dr. Burtis's "theory" of pass-through is unreliable, but nowhere do Plaintiffs explain which aspect of her opinion is unreliable or why it is supposedly unreliable. In fact, throughout the Motion to Exclude, Plaintiffs fail to articulate what opinions they are actually asking the Court to exclude. As discussed above, Plaintiffs — not Dr. Burtis — have the burden of proposing a realistic and sufficiently plausible methodology of showing impact (pass-through) using common proof that takes into account all variables that may impact the accuracy of the results. Dr. Burtis reviewed and analyzed third-party data, concluded that Plaintiffs' experts failed to propose a realistic and plausible methodology regarding pass-through, and identified indisputable real-world evidence highlighting the flaws in their methodologies. Indeed, her opinions caused Plaintiffs' experts to alter their opinions to try and avoid Dr. Burtis's devastating critique. Plaintiffs' failure to support their position with citation to any authority highlights the fact that Plaintiffs are asking the Court to exclude Dr. Burtis's opinion on Dr. Harris's theory merely because they do not agree with it, and because they want the indisputable evidence contradicting Plaintiffs' experts' testimony stricken from the record.

Also, the few specific arguments that Plaintiffs do make in their motion are without merit. For example, Plaintiffs state that Dr. Burtis "cites no contrary academic sources refuting the opinions of Plaintiffs' expert." (Plaintiffs' Motion 5:19–6:1.) But immediately thereafter, Plaintiffs critique Dr. Burtis's references to the H&S article,[7] which she cites as a "contrary source" against Dr. Harris (*Id.* at 6:1–6.) Plaintiffs base their claim that Dr. Burtis's opinion "is not credible" on the "detail[s of] Dr. Harris's reply declaration." (*Id.* 6:2–6) Effectively, Plaintiffs are asking the Court to exclude Dr. Burtis's testimony because Dr. Harris does not agree with it based on his claims that she has

---

[7] Passing on the Monopoly Overcharge: A Comprehensive Policy Analysis, Robert G. Harris, Lawrence A. Sullivan, University of Pennsylvania Law Review, Vol. 128, No. 2 ("H&S article").

-4-

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

misquoted the H&S article. Dr. Harris's disagreement, however, is not a reason to exclude Dr. Burtis's testimony, and moreover, his contention that Dr. Burtis misquoted the H&S article is wrong.

Dr. Burtis cites the H&S article, which "makes it clear that tracing the overcharge is essential to any analysis of pass-through." (Burtis Decl. ¶ 135.) In his reply report, Dr. Harris claims that the article's "use of the term 'trace' refers to being able to identify who was harmed by the overcharge." (Harris Reply Report ¶ 42 (emphasis omitted.).) But the plain language of the H&S article, which Dr. Harris himself cites, speaks for itself: "***Before the incidence of an overcharge can be traced***, one must be able to identify the distribution chain and follow transactions down the chain." (Harris Reply Report ¶ 106.)

Further, as discussed in detail in Defendants' Surreply to Indirect Purchaser Plaintiffs' Motion for Class Certification, courts throughout the country, including the Supreme Court of the United States, have held that Plaintiffs bear the burden of showing that an overcharge passed-through the levels of the distribution chains,[8] and that such a showing requires tracing of any overcharge.[9] This requirement was recently noted by Judge Ware when he recognized that "***tracing** the alleged overcharges from manufacturers, to wholesalers, to retailers, to consumers presents individualized issues which would dominate this litigation and preclude certification under rule 23(b)(3).*"[10] And "[w]ithout a reliable method for proving common impact on all purchasers of

---

[8] *Ill. Brick Co. v. State of Illinois*, 431 U.S. 720, 732-33 (1977) ("[t]he demonstration of how much of the overcharge was ***passed on*** by the first purchaser ***must be repeated at each point at which the price-fixed goods changed hands before they reached the plaintiff***.") (emphasis added); *Apple*, 2009 WL 2137148, at *4 (experts in indirect-purchaser cases "***must account for*** the actions of innocent ***intermediaries*** who allegedly ***passed on*** the overcharge.") (emphasis added); *Fagan v. Honeywell Int'l, Inc.*, No. 04-4903-BLS2, 2008 WL 4106393, at *8 (Mass. Super. Ct. Feb. 5, 2008) ("[T]o prove that all members of the proposed class have been injured, the ***plaintiffs will be required to show that*** [Defendant's sales] to all direct purchasers though all channels, included an overcharge, and also that ***all intermediaries in all channels at all levels***, in all transactions, throughout the class period, ***passed on at least some part of the overcharge***, so that every consumer paid more than he or she would have….") (emphasis added)).

[9] *Ill. Brick*, 431 U.S. at 733 n.13 ("the final purchaser still will have to ***trace*** the overcharge through each step in the distribution chain . . . [effectively] reconstructing the pricing decisions of intermediate purchasers at each step in the chain beyond the direct purchaser.") (emphasis added).

[10] *Apple*, 2009 WL 2137148, at *8 n.3 (quoting *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, MDL 997, 1994 WL 663590, at *7 (N.D. Ill. Nov. 18, 1994)) (emphasis added); *see also Karofsky v. Abbot Laboratories*, No. CV-95-1009, 1997 WL 34504652, at *11 (Super. Ct. Me. Oct. 16, 1997 ("No such conclusion [of impact] logically follows without specific proof ***tracing*** that overcharge on to consumers. It is this additional level of proof, added to the already extraordinary level of complexity of market issues, that has been the focus of all courts

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

defendants' products throughout the chain of distribution, indirect-purchaser plaintiffs cannot proceed as a class."[11]

Finally, Plaintiffs contend that Dr. Burtis did not "adequately analyze the competitiveness of the markets for SRAM-containing products." (*Id.* 6:7–8.) This accusation is false and represents another attempt to transfer Plaintiffs' burden to Defendants. It was Dr. Harris — not Dr. Burtis — who proposed a methodology based on an opinion that competition will result in automatic pass-through. Dr. Burtis's role is to review and opine on this opinion, which she did by pointing to indisputable contradictory evidence and Dr. Harris's own admissions. For example, Dr. Harris admitted that he did not actually perform any empirical analysis of competition at the various levels in the distribution chains, but instead relied on a couple of general news articles on competition. (DE 684–3, Harris Dep. 23:15–2416.) In her declaration, Dr. Burtis pointed out that neither Dr. Harris nor Dr. Dwyer examined the empirical data upon which their opinion of pass-through depends. (Burtis Decl. ¶ 139.) And Dr. Burtis, unlike Drs. Harris and Dwyer, performed actual empirical analysis of that data,[12] and concluded that the data did not support the automatic pass-through conclusion that Dr. Harris drew from his speculative academic theory of competition. Indeed, the evidence showed that competition, in fact, can reduce the chance of pass-through occurring. Plaintiffs simply disagree with Dr. Burtis's conclusions. This is not a basis for exclusion.

---

asked to certify classes similar to the one pending before this court.") (emphasis added); *Kerr v. Abbott Labs.*, No. 96-002837, 1997 WL 314419, at *2 (Minn. Dist. Ct. Feb. 14, 1997) ("***Tracing*** individualized transactions through the complex distribution network of the brand-name prescription drug industry would clearly cause individual questions of fact to predominate over questions common to the proposed class.") (emphasis added).

[11] *GPU*, 253 F.R.D. at 507; *Apple*, 2009 WL 2137148, at *4 n.3 (citation omitted) (Plaintiffs must provide a "method for proving common impact on all purchasers of the defendant's products ***throughout the chain of distribution***.") (emphasis added).

[12] *E.g.* Burtis Decl. ¶ 139 ("As described and shown above, I examined the data and it is consistent with a complicated and diverse marketplace in which costs can change, substantially or numerous times, without changes in price, which means there may have been an increase in the price of SRAM without a consequent change in the price of an SRAM containing product. In those cases, there would be no pass through of an overcharge and no injury to proposed class members."); *Id.* ¶ 140 ("In what follows I show that the evidence presented by Dr. Harris . . . does not support his conclusion of 'widespread and intense competition . . ."); *Id.* ¶ 104–120 ("VI. Empirical Evidence Relevant to the Determination of Any Pass-Through That Contradicts Plaintiffs' Experts Claims).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

**2.    Dr. Burtis's Expert Opinion Regarding Plaintiffs' Experts' Proposed Reduced-Form Regression Model is Relevant and Reliable.**

**(a)    Dr. Dwyer's Proposed Reduced-Form Regression Fails to Account for Actual SRAM Cost Data and Ignores the Distribution Chains for SRAM-Containing Products.**

Plaintiffs argue that Dr. Burtis's expert opinion should be excluded because her opinions that Dr. Dwyer's methods "fail to take into account actual SRAM cost data" and "ignore entire distribution chains" (Plaintiffs' Motion 7:4–5) "are based upon purportedly false assumptions as to how Dr. Dwyer will use the data being collected." (*Id.* 7:16–17.) What Plaintiffs label as "false assumptions" have been confirmed by Dr. Dwyer's and Dr. Harris's Reply Reports.[13] First, Dr. Dwyer concedes that he does not use the actual cost of SRAM to the OEM in the sole regression model he performed. Instead, he employs weighted averages. (Dwyer Reply ¶ 29; DE 806, Surrebuttal Declaration of Michelle M. Burtis Ph.D. ("Burtis Surrebuttal") ¶ 16 n.17.) Second, both Dr. Dwyer and Dr. Harris admit that their models do not account for the myriad distribution chains and variables within them, such as different pricing strategies for SRAM-containing products. (See Dwyer Reply Ex. 3 (individualized analysis of pass-through); Harris Reply ¶ 46 ("Dr. Burtis claims that I have ignored the complexities of distribution. She is correct . . . .").) Finally, Dr. Dwyer's test regression model does not look at the cost to a firm and compare that to the prices that firm sets to its customers. Instead, Dr. Dwyer compares averaged OEM cost to a retail price set by an OEM's customer. And, as Dr. Burtis shows, by skipping a level and ignoring the cost to the retailer, Dr. Dwyer manufactures a false positive pass-through result.

Because the deficiencies Dr. Burtis criticized have been proven correct, there is no basis to exclude her opinions based on these criticisms.

---

[13]    DE 747, Reply Declaration of Mark Dwyer, Ph.D. in Support of Plaintiffs' Motion for Class Certification ("Dwyer Reply"); DE 748, Reply Declaration of Michael J. Harris, Ph.D. ("Harris Reply").

-7-

DEFENDANTS' OPPOSITION TO INDIRECT PURCHASER
PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT OPINION OF MICHELLE M. BURTIS
(M:07-cv-1819 CW)

### (b) Plaintiffs Cannot Shift Their Burden to Dr. Burtis to Propose a Plausible Methodology to Determine Impact on a Class-Wide Basis.

Plaintiffs apparently are looking to Dr. Burtis to construct an econometric model that their own experts have failed to construct. They state that Dr. Burtis's "failure" to construct a regression model in this case "is telling and is evidence of the unreliability of her conclusions." (Plaintiffs' Motion 8:4–5.) Of course, it is Plaintiffs' burden to propose a plausible methodology to determine impact on a class-wide basis. And they cannot evade this burden by saying that Dr. Burtis did not do their job for them. Dr. Burtis did not need to construct a regression model in order to critique Plaintiffs' experts' failures. For example, some failings speak for themselves, as with Dr. Dwyer's proposed model, which is nothing more than an individualized inquiry. The sole regression model Dr. Dwyer performed in his reply report is a single regression equation designed to determine impact to purchasers of one particular router from one particular retailer, who purchased the router from one particular OEM, during one particular period of time. (Dwyer Reply Ex. 3; Burtis Surrebuttal ¶¶ 11–12.) Such a model says nothing about what might or might not be common to the class and cannot be used to determine impact on a class-wide basis. It is also "telling" that Dr. Dwyer, the expert with the obligation to show that pass-through can be proven on a class-wide basis, himself failed to construct a regression model in his original report.

### (c) Dr. Burtis Does Not Dispute the Viability of Regression Modeling in General and Has Successfully Constructed Regression Models Herself.

Plaintiffs once again confuse Dr. Burtis's criticism of Plaintiffs' experts' proposed reduced-form regression model with criticism of regression modeling in general. It is Dr. Burtis's task to opine on whether Plaintiffs' experts' proposed models, including the variables the models account for and the assumptions upon which they are based, are appropriate in this case. And that is precisely what she has done. Whether different reduced-form or other regressions are appropriate in another case or in general is not the issue, and Dr. Burtis's specific criticisms of Plaintiffs' experts' proposed model are well-founded, reliable, and relevant to this case.

Since Plaintiffs cannot defeat Dr. Burtis on the strong merits of her opinions, they are hoping

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

to inflame the Court against Dr. Burtis by using her statements, out of context, to try and paint her as a zealot. Plaintiffs claim that Dr. Burtis thinks all regressions are unreliable. But nothing could be further from the truth. For example, what Plaintiffs omitted from their motion is Dr. Burtis's testimony where she made clear that her critiques of reduced-form and structural regression models were directed to the failings of Dr. Dwyer's specific proposed models and not to such models in general. (Burtis Dep. 199:9–200:9 ("So when I'm answering reduced form or structural, just so that I make sure that I'm communicating correctly, I'm talking about what Dr. Dwyer's doing.").)

Further, her statements in this and other cases show that she does not believe that all regression modeling is unreliable, and, in fact, she herself has successfully constructed regression models. (*E.g.* Burtis Surrebuttal ¶ 10; *Apple*, 2009 WL 2137148, at *7.) As Judge Ware recently stated:

> In contrast [to plaintiff's expert], Dr. Burtis gave specific testimony about how regression models work, and testified about the difficulties of constructing such a model to deal with the complex multi-variable situation underlying iPod pricing. ***Dr. Burtis contrasted the situation in this case with a successful regression model she constructed to deal with crude oil prices in the aftermath of Hurricane Katrina***.

(*Apple*, 2009 WL 2137148, at *7 (emphasis added).)

### (d) Dr. Burtis's Expert Opinion is Supported by Case Law and Economic Literature.

Plaintiffs rely on the *Microsoft* state litigation to argue for the exclusion of Dr. Burtis's expert opinion regarding the myriad variables Plaintiffs' experts must account for in assessing pass-through. But the *Microsoft* line of cases is inapposite. The *Microsoft* litigation involved (1) state class action standards, which differ from Rule 23; (2) one seller; (3) only one or two basic products; and (4) relatively few purchases of software by class members. (*See e.g. Gordon v. Microsoft Corp.*, 2001 WL 366432 at *6 (Minn. Dist. Ct. Mar. 30, 2001) (distinguishing *Microsoft* from cases with more complexities such as multiple manufacturers and secondary products).)

This case, on the other hand, involves (1) analysis under Rule 23 standards; (2) multiple SRAM manufacturers, some of which are not named as defendants; (3) multiple types of SRAM and secondary products, as well third and fourth level products (*i.e.* SRAM incorporated into a multi-chip package incorporated into a motherboard incorporated into another product); and (4) putative class members who made multiple purchases. Further emphasizing the inapplicability of the *Microsoft* cases, one court distinguished a denial of class certification in a conspiracy to fix the price of chlorine products (which, like SRAM, can be incorporated into many products) involving 11 chemical companies with a long chain of distribution. (*Gordon v. Microsoft Corp.*, 2001 WL 366432 at \*5 (distinguishing *City of St. Paul v. FMC Corp.*, WL 259683 (D. Minn. 1990).) SRAM is far more analogous to the chlorine products case than the *Microsoft* litigation.

Further as explained in *GPU*, "the fact that there had been a prior government adjudication against Microsoft-which served as extrinsic evidence of harm-makes the *Microsoft* line of cases *sui generis.*" (253 F.R.D. at 500.) Here, unlike in those cases, the government has dropped its SRAM investigation.

What is notably absent from Plaintiffs' motion is citation to a single case where any court has certified an indirect purchaser class where there are numerous manufacturers, numerous second, third, and fourth tier products, and numerous distribution chains with numerous intermediaries. Moreover, Plaintiffs fail to discuss the numerous cases that support Dr. Burtis's expert opinions and deny certification based on plaintiffs' failure to account for the complex variables found here that affect pass-through. (*Eg. In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253425, at \*11 (E.D. Pa. Aug. 3, 2007); *GPU*, 253 F.R.D. at 496; *In re Methionine Antitrust Litig.*, 204 F.R.D. 161, 165 (N.D. Cal. 2001) ("*Methionine I*"); *In re Methionine Antitrust Litig.*, No. 00-1311, 2003 WL 22048232, at \*4–5 (N.D. Cal. Aug. 26, 2003) ("*Methionine II*").)

Also absent from Plaintiff's motion is any discussion of the wealth of economic literature which supports Dr. Burtis's expert opinions on pass-through and her criticism of Plaintiffs' experts' opinions. (See Burtis Surrebuttal ¶6 ("In his Reply Report, Dr. Harris has made strong statements that there is no economic theory or economic literature that would contradict his opinions. This is

-10-
DEFENDANTS' OPPOSITION TO INDIRECT PURCHASER
PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT OPINION OF MICHELLE M. BURTIS
(M:07-cv-1819 CW)

false and I include many references to show that Dr. Harris is either unaware of or has neglected to mention a well developed economic literature that discounts the simple models he attempts to describe."); Burtis Exs. 117–118, 120–125.)

In sum, Plaintiffs present no viable argument to exclude the expert opinion of Dr. Burtis regarding Plaintiffs' experts' failure to propose a plausible methodology for determining impact on a class-wide basis. Each of Plaintiffs' arguments is without merit and fails to identify failings under Rule 702 or *Daubert*.

### 3. Dr. Burtis's Expert Opinion Regarding Plaintiffs' Experts' Proposed Structural Model is Relevant and Reliable.

Throughout the motion, including in their brief discussion of Plaintiffs' experts' proposed structural model, Plaintiffs argue that Dr. Burtis is "wrong." But they do not articulate what, exactly, should be excluded or why. Because Plaintiffs fail to address the *Daubert* standard or Rule 702, their motion should be denied. So too should the Court disregard the brief discussion in Plaintiffs' motion of the proposed structural model. As Dr. Burtis has explained, "Dr. Dwyer has not produced any empirical example related to his proposed 'structural model.'" This purported model continues to be largely undefined, with no data, equations, or any other basis to support Dr. Dwyer's claim that such a model could be used to show impact to proposed class members." (Burtis Surrebuttal ¶18.) One need not cite to academic literature to point out that Dr. Dwyer's model is largely undefined. And, the very literature Dr. Dwyer relies upon does not support his opinion, but rather supports Dr. Burtis's opinion that the proposed structural model is not a plausible methodology *in this case*. There can be no disagreement that the SRAM-containing product markets are not vertically integrated; thus, since the "[Cheese] article Dr. Dwyer relies on for the foundation of his proposed model openly states that it assumes a vertically integrated distribution chain, the structural model he proposes is not applicable to this case." (*Id*.)

While Plaintiffs argue that Dr. Burtis's expert opinion in this case contradicts her opinion in a different case (*Smokeless Tobacco*) regarding whether analysis of distribution chains is necessary, this is not so. Dr. Burtis's testimony in that case related to an observed lack of relationship between

-11-
DEFENDANTS' OPPOSITION TO INDIRECT PURCHASER
PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT OPINION OF MICHELLE M. BURTIS
(M:07-cv-1819 CW)

list prices for smokeless tobacco and certain retail prices to rebut the plaintiffs' theory in that case of class-wide impact from changes in list prices. (*Id.* ¶ 30.)  There, Dr. Burtis opined that she need not review every level of the distribution chain if the data shows that pass-through did not occur at the wholesale or retail stage.  Dr. Burtis opined in that case that pass-through was being absorbed by a firm on the lower end of the distribution chain, and there was therefore no need to look further.  And there, like here, it was not Dr. Burtis's job to analyze pass-through at each stage of distribution.  She is not opining certification should be granted, that is Plaintiffs' experts' task.

### 4. Dr. Burtis's Expert Opinion Regarding Plaintiffs' Experts' Improper Reliance on Averaging is Relevant and Reliable.

Plaintiffs concede that the reduced-form regression model Dr. Dwyer originally proposed in his opening report to measure impact on a class-wide basis is designed to measure the average amount of impact across groups of individuals.  Dr. Burtis opined that this method, and its reliance on averaging, is fatally flawed because the proposed model can indicate significant pass-through even when pass-through was absorbed at some level of the distribution chain. (Burtis Decl. ¶¶ 178–180.)  Faced with the undisputed, real-world evidence that pass-through absorption occurs in the distribution channels for SRAM-containing products, Dr. Dwyer then proposed in his Reply Report a reduced-form regression model that measures the average amount of impact on an individual basis, that is, it measures the average amount that a change in one individual OEM's BoM affected the price to consumers who purchased that particular OEM's router from one individual retailer over a seven month period. (Burtis Surrebuttal ¶ 11–12.)  This average pass-through measurement is not an accurate measurement, even for those consumers who purchased those particular routers from that particular retailer during that particular period, due to the omission of critical variables (namely the OEM's cost of SRAM and the retailers' cost).  Further, the measurement certainly cannot be applied to any other products purchased by any other class members, or during any other period.

Dr. Harris also averages individual transaction prices in an effort to rebut Dr. Burtis's findings of a lack of correlation between SRAM prices and costs.  While Dr. Burtis bases her findings on actual transaction costs to third parties, Dr. Harris attempts to rebut her findings using

1  weighted averages.  (Harris Reply ¶¶ 90-93, Exs. 3-6.)

2  Contrary to Plaintiffs' assertion, Dr. Burtis's criticism of Plaintiffs' experts' reliance on
3  averaging is consistent with case law and economic literature. (See *GPU*, 253 F.R.D. at 493–94
4  ("[i]f data points are lumped together and averaged before the analyses, the averaging compromises
5  the ability to tease meaningful relationships out of the data"; by failing to establish a "correlation
6  between prices paid by individual consumers for a particular [product] and prices paid for the
7  product . . . [an expert] evade[s] the very burden that he [is] supposed to shoulder – i.e., that there is
8  a common methodology to measure impact across individual products and specific direct
9  purchasers."); ABA Section of Antitrust Law, Econometrics:  Legal, Practical, and Technical Issues
10 195-96 (2005) at 220: "[s]ometimes the prices used by economists are averages of a number of
11 different prices charged to different customers or for somewhat different products.  Using such
12 averages can lead to serious analytical problems.  For example, averages can hide substantial
13 variation across individual cases, which may be key to determining whether there is common impact.
14 In addition, average prices may combine the prices of different package sizes of the same product or
15 of somewhat different products.  When this happens, the average price paid by a customer can
16 change when the mix of products that the customer buys changes – even if the price of no single
17 product changed.")

18 In Dr. Burtis's expert opinion, a correlation of averages, as opposed to a correlation of
19 disaggregated transactional data for individual price series, compromises the analysis.  That is, if the
20 input is an average, the output will also be an average, and this will mask price and cost variations.
21 Her expert opinion is reliable and is well-supported by case law and economic literature.

22 **B.    Dr. Burtis's Expert Opinion on Plaintiffs' Proposed Damages Model is Relevant and
23         Reliable.**

24 Finally, Plaintiffs ask the Court to exclude "Dr. Burtis' doubts about Plaintiffs' experts'
25 models" because purportedly similar models have been sufficient in other cases.  Because, once
26 again, Plaintiffs fail to identify any reason why this portion of Dr. Burtis's opinion should be
27 excluded under Federal Rule of Evidence 702 or any case law, and because Plaintiffs fail to show

28

-13-
DEFENDANTS' OPPOSITION TO INDIRECT PURCHASER
PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT OPINION OF MICHELLE M. BURTIS
(M:07-cv-1819 CW)

why any of the models used in other cases are similar to the ones here and how the facts and the evidence in those cases are analogous to here, the Court should deny Plaintiffs' Motion.

### III.  CONCLUSION

Plaintiffs' motion — a transparent effort to avoid the facts, the data, and the substance of Dr. Burtis's opinions — should be denied because it (1) fails to analyze any of the *Daubert* factors; (2) simply illustrates a difference of opinion with Dr. Burtis; and (3) is nothing more than an appeal to emotion that attempts to paint Dr. Burtis as a zealot, which she clearly is not, as evidently recognized by Judges Alsup and Ware.

Dated:  August 13, 2009

Respectfully submitted,

WINSTON & STRAWN LLP

By   */s/ Patrick M. Ryan*
PATRICK M. RYAN
Attorneys for Defendants
NEC ELECTRONICS CORPORATION
AND NEC ELECTRONICS AMERICA, INC.

I, Patrick M. Ryan, hereby attest, pursuant to N.D. Cal. General Order No. 45, that the concurrence to the filing of this document has been obtained from each signatory hereto.

*/s/ Patrick M. Ryan*
Patrick M. Ryan

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

*Additional Defendants and Counsel:*

| **LATHAM & WATKINS LLP** | **WHITE & CASE LLP** |

By */s/ Belinda Lee*
   Belinda Lee
   Attorneys for Defendants
   Toshiba Corporation and Toshiba
   America Electronic Components, Inc.

By */s/ Matthew S. Leddicotte*
   Matthew S. Leddicotte (*pro hac vice*)
   Attorneys for Defendant Etron Technology
   America, Inc.

**MAYER BROWN LLP**    **O'MELVENY & MYERS LLP**

By */s/ Robert E. Bloch*
   Robert E. Bloch (*pro hac vice*)
   Attorneys for Defendant
   Cypress Semiconductor, Inc.

By */s/ Michael F. Tubach*
   Michael F. Tubach
   Attorneys for Defendants
   Hynix Semiconductor Inc., and
   Hynix Semiconductor America Inc.

**McDERMOTT WILL & EMERY LLP**    **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

By */s/ Craig P. Seebald*
   Craig P. Seebald (*pro hac vice*)
   Vincent van Panhuys (*pro hac vice*)
   Attorneys for Defendants Renesas
   Technology Corp., Renesas Technology
   America, Inc., Mitsubishi Electric
   Corporation, and Mitsubishi Electric &
   Electronics USA, Inc.

By */s/ James L. McGinnis*
   James L. McGinnis
   Attorneys for Defendants
   Samsung Electronics America, Inc.,
   Samsung Electronics Company, Ltd., and
   Samsung Semiconductor, Inc

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-15-
DEFENDANTS' OPPOSITION TO INDIRECT PURCHASER
PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT OPINION OF MICHELLE M. BURTIS
(M:07-cv-1819 CW)