# Exhibit A [Proposed] Supplemental Brief

1   Robert B. Pringle (CA Bar No. 051365)
    Paul R. Griffin (CA Bar No. 083541)
2   Patrick M. Ryan (CA Bar No. 203215)
    Jonathan E. Swartz (CA Bar No. 203624)
3   Sean D. Meenan (CA Bar No. 260466)
    WINSTON & STRAWN LLP
4   101 California Street
    San Francisco, CA 94111-5894
5   Telephone:     415-591-1000
    Facsimile:      415-591-1400
6   rpringle@winston.com
    pgriffin@winston.com
7   pryan@winston.com
    jswartz@winston.com
8   smeenan@winston.com

9   Attorneys for Defendants
    NEC ELECTRONICS CORPORATION and
10  NEC ELECTRONICS AMERICA, INC.

11  [*Other Counsel and Defendants Appear on Signature Page*]

12                    **UNITED STATES DISTRICT COURT**

13                   **NORTHERN DISTRICT OF CALIFORNIA**

14                           **OAKLAND DIVISION**

15  IN RE STATIC RANDOM ACCESS          )   Case No.:  M:07-cv-1819 CW
    MEMORY (SRAM) ANTITRUST             )
16  LITIGATION                          )   MDL No. 1819
                                        )
17  ───────────────────────────────     )   **[PROPOSED] DEFENDANTS'**
                                        )   **SUPPLEMENTAL BRIEF REGARDING**
18  This Document Relates To:           )   **INACCURATE STATEMENTS AND NEW**
                                        )   **ISSUES RAISED AT THE HEARING ON**
19      All Indirect Purchaser Actions  )   **CLASS CERTIFICATION**
                                        )
20                                      )
                                        )   Judge:          Hon. Claudia Wilken
21                                      )
                                        )
22  ───────────────────────────────     )

23

24

25

26

27

28

*Winston & Strawn LLP*
*101 California Street*
*San Francisco, CA 94111-5894*

# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF SUPPLEMENTAL BRIEF ...................................1

II.  SUPPLEMENTAL AUTHORITY ................................................................................2

    A.   Is the Court Required To Consider Plaintiffs' Article III Standing at This
        Stage of the Proceedings?  Yes, it is Mandatory in the Ninth Circuit. .........................2

    B.   Do Plaintiffs Satisfy Article III's Standing Requirements?  No...................................3

    C.   Are Plaintiffs Required To Show Injury for Certification of an Injunctive
        Class Under Rule 23(b)(2)?  Yes. ................................................................................7

    D.   Can Plaintiffs Satisfy the Injury Requirement for Certification of an Injunctive
        Class Under Rule 23(b)(2)?  No. ..................................................................................8

    E.   Are Plaintiffs Required To Show Injury for Certification of a Restitutionary
        Class Under Rule 23(b)(3)?  Yes. ................................................................................9

    F.   Can Plaintiffs Satisfy the Injury Requirement for Certification of a Damages
        or Restitutionary Class Under Rule 23(b)(3)?  No. ....................................................13

    G.   Does the *B.W.I.* Presumption Apply When the Case Involves Components
        Which Are Added to or Altered in the Distribution Chain?  No. ................................14

    H.   Should the Court Bifurcate the Issue of Conspiracy from Injury?  No. ......................14

III. CONCLUSION....................................................................................................15

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alber v. Ill. Dep't. of Mental Health and Dev. Disabilities*,
    786 F. Supp. 1340 (N.D. Ill. 1992) .......................................................................................6, 9

*Alch v. Sup. Ct.*,
    122 Cal. App. 4th 339 (2004) ...................................................................................................11

*B.C. v. Plumas Unified Sch. Dist.*,
    192 F.3d 1260 (9th Cir. 1999) ...................................................................................................3

*B.W.I. Custom Kitchen v. Owens-Ill., Inc.*,
    191 Cal. App. 3d 1341 (1987) .................................................................................................14

*Baker v. Carr*,
    369 U.S. 186 (1962) ...................................................................................................................4

*Bashkin v. Hickman*,
    No. 07cv0995-LAB (CAB), 2008 WL 183696 (S.D. Cal. Jan. 17, 2008) ...............................3

*Bender v. Williamsport Area Sch. Dist.*,
    475 U.S. 534 (1986) ...................................................................................................................3

*Bertulli v. Indep. Ass'n of Cont'l Pilots*,
    242 F.3d 290 (5th Cir. 2001) .....................................................................................................2

*Brosnan v. Alki Mortgage, LLC*,
    No. C 07 4339 JL, 2008 WL 413732 (N.D. Cal. Feb. 13, 2008) ..............................................3

*Cady v. Anthem Blue Cross Life and Health Ins. Co.*,
    583 F. Supp. 2d 1102 (N.D. Cal. 2008) ...............................................................................1, 2

*California v. Infineon Techs. AG*,
    No. C06-4333 PJH, 2008 WL 4155665 (N.D. Cal. Sept. 5, 2008).........................................14

*Chamberlan v. Ford Motor Co.*,
    No. C:03-2628 CW, 2003 WL 25751413 (N.D. Cal. Aug. 6, 2003) ...............................10, 11

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983).......................................................................................................... *passim*

*D.C. Common Cause v. Dist. of Columbia*,
    858 F.2d 1 (D.C. Cir. 1988) .......................................................................................................5

*Davis v. Astrue*,
    250 F.R.D. 476 (N.D. Cal. 2008) ............................................................................................12

*Day v. AT&T Corp.*,
    63 Cal. App. 4th 325 (1998) ....................................................................................................10

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

*Doe v. Unocal Corp.*,
    67 F. Supp. 2d 1140 (C.D. Cal. 1999) ...........................................................2, 3, 4, 5

*Does I Through III v. District of Columbia*,
    216 F.R.D. 5 (D.D.C. 2003)...........................................................................2, 3, 5

*Easter v. Am. W. Fin.*,
    381 F.3d 948 (9th Cir. 2004) ................................................................................3

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
    92 F.3d 1486 (9th Cir. 1996) ................................................................................8

*Feitelberg v. Credit Suisse First Boston LLC*,
    134 Cal. App. 4th 997 (2005) ..............................................................................11

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990)..............................................................................................3

*G&C Auto Body v. GEICO Gen. Ins. Co.*,
    No. C06-04898 MJJ, 2007 WL 4350907 (N.D. Cal. Dec. 12, 2007) .....................11

*Griffin v. Dugger*,
    823 F.2d 1476 (11th Cir. 1987) ............................................................................2

*Hall v. Time, Inc.*,
    158 Cal. App. 4th 847 (2008) ..............................................................................13

*Hillside Dairy, Inc. v A.G. Kawamura*,
    317 F. Supp. 2d 1194 (2004) ................................................................................8

*Hirsch v. Bank of Am.*,
    107 Cal. App. 4th 708 (2003) ..............................................................................13

*Hodgers-Durgin v. De La Vina*,
    199 F.3d 1037 (9th Cir. 1999) (en banc) ..............................................................4

*In re Ditropan Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ..............................................................13

*In re Eaton Vance Corp. Sec. Litig.*,
    220 F.R.D. 162 (D. Mass 2004)............................................................................3

*In re First Alliance Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ..............................................................................10

*In re Graphics Processing Units Antitrust Litig.*,
    253 F.R.D. 478 (N.D. Cal. 2008)........................................................................14

*In re New Motor Vehicles Can. Export Antitrust Litig.*,
    522 F.3d (1st Cir. 2008)........................................................................................8

-iii-

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

*In re Nifedipine Antitrust Litig.*,
   335 F. Supp. 2d 6 (2004) ...................................................................................6, 7

*Kolender v. Lawson*,
   461 U.S. 352 (1983)............................................................................................6

*Keating v. Philip Morris, Inc.*,
   417 N.W.2d 132 (Minn. Ct. App. 1987) ........................................................15

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003)...............................................................................10, 11

*LaDuke v. Nelson*,
   762 F.2d 1318 (9th Cir. 1985) ..................................................................1, 2, 9

*Lee v. Oregon*,
   107 F.3d 1382 (9th Cir. 1997) .......................................................................1, 2

*Lewis v. Casey*,
   518 U.S. 343 (1996).......................................................................................3, 4

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)............................................................................................3

*Madrid v. Perot Sys. Corp.*,
   130 Cal. App. 4th 440 (2005) ....................................................................10, 11

*McCarter v. Abbott Labs.*,
   No. Civ.A. 91-050.1993, 1993 WL 13011463 (Ala. Cir. Ct. April 9, 1993)..........................15

*Murphy v. Hunt*,
   455 U.S. 478 (1982)............................................................................................6

*Nelsen v. King County*,
   895 F.2d 1248 (9th Cir. 1990) ................................................................ *passim*

*O'Connor v. Boeing N. Am., Inc.*,
   184 F.R.D. 311 (C.D. Cal. 1998) ....................................................................12

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)................................................................................4, 5, 7, 8

*Ortiz v. Fireboard Corp.*,
   527 U.S. 815 (1999).......................................................................................2, 3

*Prado-Steiman v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) .........................................................................3

*Rivera v. Wyeth-Ayerst Labs.*,
   283 F.3d 315 (5th Cir. 2002) .............................................................................3

DEFENDANTS' SUPPLEMENTAL BRIEF (M:07-cv-1819 CW)

*Sample v. Johnson*,
  771 F.2d 1335 (9th Cir. 1995) ...........................................................................5, 6

*Shersher v. Sup. Ct.*,
  154 Cal. App. 4th 1491 (2007) ..............................................................................11

*Siemers v. Wells Fargo & Co.*,
  No. C 05-04518 WHA, 2006 WL 3041090 (N.D. Cal. Oct. 24, 2006) ....................3

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976)....................................................................................................4

*Slowiak v. Land O'Lakes, Inc.*,
  987 F.2d 1293 (7th Cir. 1993) ......................................................................2, 5, 7

*Sosna v. Iowa*,
  419 U.S. 393 (1975)..................................................................................................4

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)....................................................................................................2

*Stevens v. Harper*,
  213 F.R.D. 358 (E.D. Cal. 2002) ............................................................................2

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
  546 F. 3d 991 (9th Cir. 2008) ................................................................................10

*United States v. Hays*,
  515 U.S. 737 (1995)..................................................................................................3

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000)..................................................................................................2

*Walker v. Geico Gen. Ins. Co.*,
  558 F.3d 1025 (9th Cir. 2009) ..............................................................................11

*Walker v. USAA Cas. Ins. Co.*,
  474 F. Supp. 2d 1168 (E.D. Cal. 2007)..................................................................11

*Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*,
  No. C 05-2320 SBA, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006)....................12

**STATUTES**

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ...................................................................10

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

## I.    INTRODUCTION AND SUMMARY OF SUPPLEMENTAL BRIEF

It is black-letter law that class action claims for injunctive[1] and monetary relief, including restitution, require proof of actual injury under Article III by the class representatives, prior to certification being granted.[2]  "If the named plaintiff fails to establish standing, he may not seek relief on behalf of himself or any other member of the class."[3]  Moreover, for injunctive claims, prior to certification, the class representatives themselves must prove, with individualized proof, that they personally are threatened with real and immediate, non-speculative, future repeated harm from the alleged unlawful conduct.[4]  Absent such proof, the Ninth Circuit mandates that the Court *sua sponte* dismiss the claim and deny class certification.  (*Nelsen*, 895 F.2d at 1254–55 ("Because [Plaintiffs] did not possess the requisite standing to assert a claim of injunctive relief, the district court did not abuse its discretion in denying their motion for class certification and properly dismissed their equitable claim.").)

Yet, instead of attempting to satisfy their burden to establish standing, Plaintiffs claim that they "don't have to prove ***anything***," and that any proof that they might need regarding injury can wait until the claims process.  (Hearing Tr. 32:22–34:6 (emphasis added).)  Plaintiffs' assertion that injury issues can wait until the claims process not only ignores Article III's requirements, it also violates the black-letter rule that a class must be ascertainable at the time of certification.  (*See* n.19.)

Plaintiffs would have this Court — under the guise of "do[ing] rough justice" (Hearing Tr. 16:17:21) — find that Plaintiffs don't need to prove any injury, past or present, for their monetary claims, and further that they don't need to prove a threat of real and immediate future harm to seek injunctive relief.  But a showing of injury is required not only to establish standing under Article III (and thus the court's jurisdiction), but also to justify monetary or injunctive relief under Rule 23.

---

[1]    Plaintiffs' motion for class certification seeks injunctive relief under federal law ***only***, not under state laws.  (Motion 2:8-11; Memo 1:15-19, 2:8-11.)  At the hearing, Plaintiffs created the impression that they were only seeking restitution under California law, which would be tried to the Court.  (Ex. 1 to this brief, 9/3/2009 Class Cert. Hearing Transcript ("Hearing Tr.") 10:3–23.)  But Plaintiffs have alleged a Cartwright Act claim for damages, which would require a jury trial.

[2]    *Nelsen v. King County*, 895 F.2d 1248, 1249-50 (9th Cir. 1990) (citing *LaDuke v. Nelson*, 762 F.2d 1318, 1322 (9th Cir. 1985)).

[3]    *Cady v. Anthem Blue Cross Life and Health Ins. Co.*, 583 F. Supp. 2d 1102, 1106 (N.D. Cal. 2008) (internal quotation marks omitted) (quoting *Lee v. Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997) (quoting *Nelsen*, 895 F.2d at 1250)).

[4]    *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   The Court is therefore not at liberty to dish out "rough justice." Rather, the Court should dismiss

2   Plaintiffs' claims with prejudice for lack of standing and deny class certification.

3   ## II.    SUPPLEMENTAL AUTHORITY

4   **A.    Is the Court Required To Consider Plaintiffs' Article III Standing at This Stage of the**

5   **Proceedings? Yes, it is Mandatory in the Ninth Circuit.**

6       Plaintiffs seek to certify a nationwide class under Federal Rule of Civil Procedure 23(b)(2)

7   for injunctive relief of those persons who "from November 1, 1996 through December 31, 2006,

8   purchased SRAM in the United States indirectly from the Defendants . . .." Plaintiffs, however, lack

9   standing to represent an equitable class of any kind, including one for injunctive relief, as they have

10  not and cannot satisfy the requirement imposed by Article III of the Constitution that they show an

11  actual case or controversy exists.[5]

12      As this Court recognized in *Cady v. Anthem Blue Cross Life and Health Ins. Co.*, 583

13  F. Supp. 2d 1102, 1106 (N.D. Cal. 2008), standing "is a jurisdictional element that must be satisfied

14  prior to class certification."[6] "If the named plaintiff fails to establish standing, "he may not 'seek

15  relief on behalf of himself or any other member of the class.'"[7] For "if there is no jurisdiction[,]

16  there is no authority to sit in judgment of anything else."[8] This threshold requirement has been

17  described as "inflexible and without exception."[9] (*Steel Co. v. Citizens for a Better Env't*, 523 U.S.

18  83, 94 (1998).) Thus, "[a]ny analysis of class certification ***must*** begin with the issue of standing." [10]

19  ---

20  [5]    "In order to have standing in federal court, a party must satisfy the case or controversy
    requirement imposed by Article III of the Constitution." (*Slowiak v. Land O'Lakes, Inc.*, 987 F.2d
    1293, 1296 (7th Cir. 1993) (internal citations omitted).)

21  [6]    *See also Nelsen*, 895 F.2d at 1249-50 (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1322 (9th
    Cir. 1985)); *Does I Through III v. District of Columbia*, 216 F.R.D. 5, 9 (D.D.C. 2003) (citing
    *Stevens v. Harper*, 213 F.R.D. 358, 366 (E.D. Cal. 2002)); *Bertulli v. Indep. Ass'n of Cont'l Pilots*,

22  242 F.3d 290, 294 (5th Cir. 2001) ("Standing is an inherent prerequisite to the class certification
    inquiry."); *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987); *Doe v. Unocal Corp.*, 67 F.

23  Supp. 2d 1140, 1141-42 (C.D. Cal. 1999).

    [7]    *Cady*, 583 F. Supp. at 1106 (quoting *Lee v. Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997)

24  (quoting *Nelsen*, 895 F.2d at 1250).

    [8]    *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778 (2000).

25  [9]    Notwithstanding this pronouncement, ***one*** limited exception to this rule was laid out in *Ortiz
    v. Fireboard Corp.*, 527 U.S. 815, 831 (1999). There, a unique factual record and procedural

26  posture, involving a settlement class procedure under Rule 23.1 (requiring special notice by plaintiff
    to maintain a derivative action), made consideration of Rule 23 requirements "logically antecedent"

27  to the standing question; thus, the court addressed class certification prior to standing. *See Unocal*,
    67 F. Supp. 2d at 1141 (distinguishing *Ortiz*). "*Ortiz*, however, has been narrowly construed by the

28  Ninth Circuit only to apply 'in the very specific situation of a mandatory global settlement class.'"
    (*Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 3041090, 5–6 (N.D. Cal. Oct. 24,

Further, as defense counsel alluded to during the recent hearing before this Court, since the question of standing is jurisdictional in nature, federal courts are not just at liberty to, but in fact are *required* to, examine the standing issue *sua sponte*[11] even if the question has been "inadequately explored by the parties."[12]  (*Does I Through III*, 216 F.R.D. at 9 (citing *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996)); *United States v. Hays*, 515 U.S. 737, 742 (1995); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230–31 (1990); and *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) ("federal courts are required *sua sponte* to examine jurisdictional issues such as standing" (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986))).)

Thus, it is black-letter law that the Court must address Plaintiffs' lack of evidence regarding injury at this stage of the proceedings.

**B.    Do Plaintiffs Satisfy Article III's Standing Requirements?  No.**

To establish standing under the actual case and controversy requirement of Article III, plaintiffs must prove certain distinct elements:  First, a plaintiff must have suffered an "injury in fact" — an invasion of a legally protected interest which is (a) "concrete and particularized" and (b) "actual or imminent," not conjectural or hypothetical.[13]  Second, there must be a ***causal connection*** between the injury and the conduct complained of — ***the injury has to be fairly traceable to the challenged action of the defendant***, and not the result of the independent action of

---

2006) (quoting *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004)); *see also In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 165-66 (D. Mass 2004) (recognizing *Ortiz* as a limited exception based upon "extremely unique and complex problems" which "defie[d] customary judicial arbitration" (citations omitted)).  Further, the class certification issues here are not "logically antecedent" to the standing question (actual or impending injury), which would exist regardless of whether the case was brought as a class action.  *Doe v. Unocal*, 67 F. Supp. 2d 1140, 1142 (C.D. Cal. 1999) (addressing "standing concerns first because the Rule 23 requirements are not logically antecedent to the standing question"); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319, n.6 (5th Cir. 2002) (finding class certification issues not logically antecedent where "the standing question would exist whether [class representative] filed her claim alone or as part of a class; [and thus] class certification did not create the jurisdictional issue.")

[10]    *Prado-Steiman v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) (emphasis added).

[11]    Hearing Tr. 20:20–22:16.

[12]    The Court's duty to examine the issue of standing *sua sponte* exists on an ongoing basis throughout all stages of the litigation.  *Bashkin v. Hickman*, No. 07cv0995-LAB (CAB), 2008 WL 183696, at *7 (S.D. Cal. Jan. 17, 2008) ("[A] court has a continuing duty to examine its own jurisdiction to grant relief." (citation omitted)); *Brosnan v. Alki Mortgage, LLC*, No. C 07 4339 JL, 2008 WL 413732, at *1 (N.D. Cal. Feb. 13, 2008) ("Without standing, the court lacks subject matter jurisdiction."); Fed. R. Civ. P. 12(h)(3) ("If the court determines *at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action." (emphasis added)).

[13]    *Unocal*, 67 F. Supp. 2d at 1142 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

---

-3-

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

some third party not before the court.[14]  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[15]

And here, as Plaintiffs are seeking injunctive relief on behalf of themselves and the purported class, Plaintiffs must prove a fourth element: Plaintiffs must establish a "real and immediate threat of *repeated* injury" demonstrated by more than just "past exposure to illegal conduct."[16]  "A federal court cannot ignore this [standing] requirement without overstepping its assigned role in our system of adjudicating only actual cases and controversies."[17]

Before turning to the class as a whole, the Court's jurisdictional inquiry must focus on the named plaintiffs themselves, for ***"[a] litigant must be a member of the class he or she seeks to represent at the time the class action is certified by the district court***."[18]  Further, a putative class representative cannot bootstrap alleged class-wide injury as a basis to satisfy his own standing, because the fact "[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even ***named plaintiffs*** who represent a class ***'must*** allege and ***show that they personally have been injured***, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"[19]  This is so, because "[p]laintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues . . . .'"[20]  Thus, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."  (*Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (en banc); *see Nelsen*, 895 F.2d at 1250 ("If the litigant fails to establish standing, he may not 'seek relief on behalf of himself or any other member of the class.'" (quoting *O'Shea*, 414 U.S. at 494)).)

In deciding whether a class representative has standing to seek certification of an injunctive class, the court "must" look beyond conclusory allegations and "***make an individualized inquiry***

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

---

[14]  *Id.*

[15]  *Id.*

[16]  *City of Los Angeles*, 461 U.S. at 102 (emphasis added) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

[17]  *Unocal*, 67 F. Supp. 2d at 1142 (C.D. Cal. 1999) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 39 (1976)).

[18]  *Nelsen*, 895 F.2d at 1250 (emphasis added) (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)).

[19]  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (emphasis added) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. at 40, n.20.)

[20]  *City of Los Angeles*, 461 U.S. at 101 (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

-4-

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

*into whether there is a credible threat" of repeated harm to the named plaintiffs*.[21]  Indeed, the "question . . . is whether the practices to which the plaintiffs object are capable of repetition *as to them*."[22]  Accordingly, Plaintiffs must demonstrate not only that they have been harmed in the past (as a result of Defendants' actions) but also that they, themselves, are "realistically threatened by a repetition of [the violation]."[23]  Such risk of repeated harm must be "real and immediate."[24]  As such, abstract, hypothetical, or "rough justice" theories of injury are not sufficient, because Plaintiffs must show that they have "sustained or are immediately in danger of sustaining some direct injury" as a result of the alleged conduct.[25]

As Defendants have already shown, the named Plaintiffs are unable to establish the necessary elements to prove standing in federal court.  The class representatives cannot establish the first three elements of standing required for any type of case — "injury in fact" that is "fairly traceable" to the challenged actions of the defendants, which will be redressed by a favorable decision by the Court.[26]  This is so, because Plaintiffs cannot establish ***any*** of the following matters, all of which are required to show causation and injury: that (1) they purchased products containing SRAM; (2) the SRAM contained within their purchased products was manufactured by Defendants; (3) the particular SRAM was subject to an overcharge to a direct purchaser; (4) the direct purchaser passed through the overcharge; and finally (5) the overcharge was passed through the entire distribution chain all the way down to the class representatives.  Given these shortcomings, Plaintiffs do not have standing to pursue their damages and restitution claims, let alone a sweeping national injunctive claim.[27]

Neither can Plaintiffs establish the demanding fourth element of standing, required for injunctive claims.  As recognized by the Ninth Circuit, there are even "tighter restrictions on claims

---

[21]    *Nelsen*, 895 F.2d at 1251-52 (emphasis added).
[22]    *Sample v. Johnson*, 771 F.2d 1335, 1339 (9th Cir. 1995) (emphasis in original).
[23]    *Does I Through III*, 216 F.R.D. at 10 (citing *City of Los Angeles*, 461 U.S. at 109).
[24]    *D.C. Common Cause v. Dist. of Columbia*, 858 F.2d 1, 8 (D.C. Cir. 1988) (quoting *O'Shea*, 414 U.S. at 496).
[25]    *City of Los Angeles*, 461 U.S. at  101-02 ("Abstract injury is not enough.").
[26]     *Unocal*, 67 F. Supp. 2d at 1142.
[27]    *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1297 (7th Cir. 1993) (antitrust action for damages dismissed for lack of Article III standing where plaintiff "at most" could show only a "hypothetical or conjectural injury"); *City of Los Angeles*, 461 U.S. at 101 ("[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." (citations omitted)).

of standing for injunctive claims predicated upon allegedly recurrent injuries."[28]  "[No] matter how important the issue or how likely that a similar action will be brought, a court is without jurisdiction if there is not a sufficient likelihood of recurrence with respect to the party now before it."[29]  The "burden of showing [this] likelihood of recurrence is firmly on the plaintiff."[30]  And to meet their burden, plaintiffs must present credible facts, rather than conclusory allegations and inferences, showing that there is a "real and immediate," rather than a "conjectural" or "hypothetical," threat of future harm.  (*In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6, 16, 18 (2004) (antitrust suit dismissed for lack of jurisdiction where plaintiffs alleged "without providing any factual basis, that the defendants have continued their allegedly unlawful conduct.").)  There, as here, the defendants argued that there was nothing to enjoin, and that any future hypothetical injury was redressable by monetary damages and not injunctive relief.[31]  The court agreed and found that plaintiffs lacked standing to seek injunctive relief, explaining "[t]he Court is not required to accept the plaintiffs' conclusions and inferences if they are unsupported by facts, and indeed, the plaintiffs have provided no factual basis for their claims that there is any kind of continuing violation on the part of the defendants."[32]  And this concrete evidentiary showing must be made as to the named plaintiffs themselves, because "the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."[33]  Thus, to establish standing, there must be an "***individualized showing***" of "a very significant possibility" ***that the alleged future harm will fall upon the class representatives themselves***.[34]

The facts here are analogous to *In re Nifedipine*.  Plaintiffs argue that they have a right to seek injunctive relief on behalf of the proposed class because the alleged conspiracy may be ongoing

---

[28]     *Nelsen*, 895 F.2d at 1251.
[29]     *Id.* (quoting *Sample*, 771 F.2d at 1342).
[30]     *Id.*
[31]     *Id.* at 16.
[32]     *Id.* at 18; *see also City of Los Angeles*, 461 U.S. 95 at 101-02; *Nelsen*, 895 F.2d at 1250 ("The 'mere physical or theoretical possibility' of a challenged action again affecting the plaintiff is not sufficient.") (citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)); *Id.* (plaintiffs must demonstrate a "credible threat" that they will again be the subject of the specific injury for which they seek injunctive relief) (citing *Kolender v. Lawson*, 461 U.S. 352, 355, n.3 (1983)); *Alber v. Ill. Dep't. of Mental Health and Dev. Disabilities*, 786 F. Supp. 1340, 1353-54 (N.D. Ill. 1992) ("Mere conjecture of future injury will not do the trick.").
[33]     *Nelsen*, 895 F.2d at 1250 (internal quotation marks and citations omitted).
[34]     *Id.* (emphasis added).

-6-

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   or that, without court intervention, it may begin again.  But Plaintiffs have no actual evidence to

2   support this assertion.  In fact, Plaintiffs' Third Amended Complaint does not specifically allege an

3   ongoing conspiracy; rather, it alleges only that Defendants' alleged illegal activities continued

4   through "at least" December 31, 2006.  Moreover, Plaintiffs' own expert, Dr. Noll, testified that the

5   conspiracy, if one existed, ended prior to 2006.[35]  Thus, just like *In re Nifedipine*, there is no

6   evidence of ongoing anti-competitive behavior and absolutely nothing to enjoin.  Bereft of evidence

7   to support their claim, Plaintiffs can only point the Court to the alleged past wrongs of Defendants.

8   But the Supreme Court sounded the death knell on Plaintiffs' theory long ago, holding that past

9   exposure to illegal conduct "is largely irrelevant when analyzing claims of standing for injunctive

10  relief that are predicated upon threats of future harm."[36]  "Past exposure to illegal conduct does not

11  in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any

12  continuing, present adverse effects."[37]  Plaintiffs' unsupported assertions, therefore, fall far short of

13  meeting their burden and constitute no more than mere speculation about a hypothetical future

14  injury.[38]  Without proof of "real and immediate" "threatened conduct that will cause loss or damage"

15  to the named plaintiffs, Plaintiffs lack standing, and the Court therefore lacks jurisdiction over their

16  claims for injunctive relief.[39]  Accordingly, under Ninth Circuit precedent, the Court must *sua sponte*

17  dismiss Plaintiffs' injunctive relief claims for lack of standing and deny Plaintiffs' motion for an

18  injunctive class.  It really is that simple.

19  **C.      Are Plaintiffs Required To Show Injury for Certification of an Injunctive Class Under**

20  **Rule 23(b)(2)?  Yes.**

21          At the hearing, Plaintiffs contended that they need only show that there was a conspiracy in

22  order to obtain injunctive relief:

23                  Mr. Scarpulla: The nationwide equitable claims, if you — if we prove that the

24                  Defendants engaged in a horizontal conspiracy, the purpose and effect of

---

25  [35]     Ex. RR, Noll Dep. 116:10-117:21 ("As I said in my report, it may well have ended when the
26  DRAM conspiracy ended [2001].  Since it's some of the same people at the high levels of the
    company . . . Did it really end in 2005, or did it end in 2002?"); Ex. QQ, Noll Report ¶ 88.
27  [36]     *Nelsen*, 895 F.2d at 1251.
    [37]     *City of Los Angeles*, 461 U.S. 95, 102 (citing *O'Shea*, 414 U.S. at 495-96).
28  [38]     *Slowiak*, 987 F.2d at 1297 ("hypothetical or conjectural injury . . . does not confer standing");
    *see also City of Los Angeles*, 461 U.S. at 101-02; *In re Nifedipine*, 335 F. Supp. 2d at 16.
    [39]     *In re Nifedipine*, 335 F. Supp. 2d at 19.

DEFENDANTS' SUPPLEMENTAL BRIEF (M:07-cv-1819 CW)

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

which was to raise the prices of SRAM in the United States, that in and of itself is sufficient . . . .

(Hearing Tr. 12:12–12:23.)

Much like the standing requirement, plaintiffs must establish a "real and immediate" threat that they will again be subject to the complained-of wrong and suffer an irreparable injury as a result thereof to justify injunctive relief and certification under Rule 23(b)(2).[40]  Failure to do so is fatal to any motion seeking class certification under Rule 23(b)(2).  (*Easyriders*, 92 F.3d 1486; *Nelsen*, 895 F.2d at 1248 (affirming denial of class certification under Rule 23(b)(2) because representative plaintiffs failed to prove that they had been injured and that there was a real and immediate danger of repeated injury); *City of Los Angeles*, 461 U.S. 95 (holding that even if the complaint had presented an existing case or controversy, an adequate basis for equitable relief had not been demonstrated where future harm could not be shown); *see also In re New Motor Vehicles Can. Export Antitrust Litig.*, 522 F.3d at 6 (reversing the district court's certification of a nationwide injunctive class where there was ***no evidence of a threatened recurrence of the overcharge conspiracy and dismissing the claim for injunctive relief***).)

**D.      Can Plaintiffs Satisfy the Injury Requirement for Certification of an Injunctive Class Under Rule 23(b)(2)?  No.**

To justify injunctive relief, plaintiffs must demonstrate the "likelihood of substantial and immediate irreparable injury" and the inadequacy of a remedy at law.[41]  Plaintiffs contend that there is a threat of ***potential*** price-fixing by the Defendants in the future, but fail to present any evidence that this purported future price-fixing will indeed occur, let alone any evidence that it will cause injury to *them*.  Such speculation, without evidentiary support, is wholly insufficient to satisfy the

---

[40]      *City of Los Angeles*, 461 U.S. at 110 ("The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again . . . ."); *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1496 (9th Cir. 1996) ("Many of the considerations involved in determining the propriety of issuing an injunction often overlap with the considerations used in determining whether there is an Article III case or controversy.") (citations omitted); *In re New Motor Vehicles Can. Export Antitrust Litig.*, 522 F.3d at 13 (1st Cir. 2008) ("The requisite showing of a 'threatened injury' under Section 16 dovetails with Article III's requirement that in order to obtain forward-looking relief, a plaintiff must face a threat of injury that is both 'real and immediate,' not 'conjectural' or 'hypothetical.'") (citing *O'Shea*, 414 U.S. at 494).

[41]      *Easyriders.*, 92 F.3d at 1495; *Hillside Dairy, Inc. v A.G. Kawamura*, 317 F. Supp. 2d 1194, 1196 (2004).

-8-

requirements of Rule 23(b)(2).  As such, even if Plaintiffs were able to "climb the cliff" erected by *City of Los Angeles* (*Alber*, 786 F. Supp. at 1353) and establish standing, they are simply unable to present facts sufficient to justify permanent injunctive relief under Rule 23(b)(2).

Moreover, Plaintiffs mischaracterize what they would have to prove at trial in the unlikely event that this Court finds that the individual class representatives have standing and also certifies a class.  (Hearing Tr. 12:12–12:23 ("if we prove that the Defendants engaged in a horizontal conspiracy, the purpose and effect of which was to raise the prices of SRAM in the United States, that in and of itself is sufficient . . . .").)  If the Court were to certify the class, the evidentiary focus regarding injury would simply shift from an analysis of the class representatives to an analysis of the class.[42]  Thus, at trial, in order to issue an injunction in a Rule 23(b)(2) class action, the Court would need to find all of the following: (1)  a conspiracy to fix prices is currently active; (2) a conspiracy will continue to be active in the future; and (3) the class is subject to a real and immediate threat of future injury from the conspiracy.[43]

Yet, Plaintiffs have presented no credible evidence that the alleged conspiracy continues and is likely to continue in the future.  Indeed, Plaintiffs have not even attempted to do so.  Nor have Plaintiffs even proposed a method by which they would be able to show at trial that the class "faces a credible threat of recurring injury."  Thus, Plaintiffs have not and cannot justify injunctive relief under Rule 23(b)(2).

**E.      Are Plaintiffs Required To Show Injury for Certification of a Restitutionary Class Under Rule 23(b)(3)?  Yes.**

At the hearing on class certification, regarding state claims seeking restitution, Plaintiffs' counsel incorrectly represented that there would be no individualized issues with respect to pass-through in assessing restitution, and that all Plaintiffs need to do is figure out how much profit the Defendants made on SRAM, and that such profit would be disgorged:

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5894

---

[42]      *LaDuke*, 762 F.2d at 1325–26.
[43]      *See LaDuke*, 762 F.2d at 1326 (in addition to proving the substantive violation, at trial plaintiffs have the burden to prove "that the plaintiff class faces a credible threat of recurring injury").

Statewide classes do not have the necessity to show pass-on. That is not an element. The only element is how much money did the defendants take that does not belong to them. It has nothing to do [sic] whether it was passed on.

***

All you need is an accountant to go to each defendant's books, find out how much profit they made on SRAM sales in the United States, billed to, shipped to U.S., that's it. They have to give it back if they are guilty of fixing prices . . . [i]n California, they have to disgorge the entire sale price, so all you have to do is send an accountant over there and find out how much.

(Hearing Tr. 10:12-15, 32:22-34:6.)

Plaintiffs are gravely mistaken. The exclusive monetary remedy available to private plaintiffs under the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) is restitution.[44] Restitution is limited to the return of money or property in which a plaintiff has an ownership interest.[45] And the UCL "operates only to return to a person those measurable amounts which are wrongfully taken by means of an unfair business practice."[46]

Any recovery in this case would be limited to the return of any alleged overcharge paid by a Plaintiff indirectly to a Defendant. (*In re First Alliance Mortg. Co.*, 471 F.3d 977, 997 (9th Cir. 2006) (finding that plaintiffs could not recover all moneys obtained by defendants, where only a small percentage of the moneys received by defendants came as a result of the allegedly exorbitant fees; explaining that "there is no basis to conclude that every single dollar that ultimately flowed to Lehman was 'ill-gotten'").) Contrary to Plaintiffs' contentions, disgorgement of neither non-restitutionary profits nor the entire sales price is available under the UCL.[47] This rule applies equally to individual cases and to class actions. As this Court explained in *Chamberlan v. Ford*

---

[44] Cal. Bus. & Prof. Code § 17203; *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003); *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440 (2005).

[45] *Korea Supply*, 29 Cal. 4th at 1146–47; *Madrid*, 130 Cal. App. 4th at 453, 455.

[46] *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 338–39 (1998).

[47] *Korea Supply*, 29 Cal. 4th at 1147 (rejecting plaintiffs' contention that the equitable powers afforded a court under the UCL were broad enough to encompass non-restitutionary disgorgement of profits); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F. 3d 991, 1009 (9th Cir. 2008) (rejecting argument that defendant's profits constitute property taken from plaintiff and affirming the judgment finding evidence insufficient to support restitution award).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-10-

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   *Motor Co.*, the *Korea Supply* holding precluding recovery of non-restitutionary disgorgement is not

2   limited to "direct victims in representative actions."[48]  Indeed, under *Korea Supply*, a class action

3   plaintiff, even in the rare situation where a court orders disgorgement into a fluid recovery fund,

4   "may recover money . . . only to the extent that the recovery is restitutionary."[49]  Thus, Plaintiffs'

5   claim that they can simply have an accountant look at Defendants' profits and ignore whether the

6   Plaintiffs actually paid an overcharge is directly contrary to the holdings of the California Supreme

7   Court and this Court.

8        Moreover, the class representatives lack standing to seek restitutionary or injunctive relief[50]

9   because they have failed to show that they purchased products containing Defendants' SRAM that

10  was subject to an alleged overcharge, which was passed through to them, and therefore, have failed

11  to show that they have an ownership interest in the relief sought.[51]  In their Complaint, Plaintiffs

12  proposed identifying class members who purchased products containing Defendants' SRAM by

---

[48]    No. C:03-2628 CW, 2003 WL 25751413, at *9 (N.D. Cal. Aug. 6, 2003); *see also Madrid*, 130 Cal. App. 4th at 461 (court rejected argument that restitution may be measured by defendant's gain rather than by plaintiff's loss); *Feitelberg v. Credit Suisse First Boston LLC*, 134 Cal. App. 4th 997, 1016 (2005) ("[T]he nonrestitutionary remedy that plaintiff seeks is not available under the UCL, regardless of whether the claim is prosecuted as a class action.").

[49]    *Chamberlan*, 2003 WL 25751413, at *9; *Alch v. Sup. Ct.*, 122 Cal. App. 4th 339, 408 (2004) ("The question is not whether the trial court could order fluid class recovery of a damages award; it is whether the trial court has the authority to award non-restitutionary backpay under the UCL in the first instance.  It does not."); *Madrid*, 130 Cal. App. 4th at 455 (holding that nonrestitutionary disgorgement into a fluid recovery fund is not an available remedy in a UCL class action); *Feitelberg*, 134 Cal. App. 4th 997, 1015 (2005) (a fluid recovery fund "does not enlarge the remedies available under the applicable substantive law").

[50]    Until recently, there was a split among district courts within the Ninth Circuit regarding whether a plaintiff may have standing to seek injunctive relief under section 17200 even though the plaintiff had no claim for restitution under *Korea Supply*.  (Compare *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1172-74 (E.D. Cal. 2007) (holding that such a plaintiff does not have standing to pursue a claim for injunctive relief) with *G&C Auto Body v. GEICO Gen. Ins. Co.*, No. C06-04898 MJJ, 2007 WL 4350907, at *3–4 (N.D. Cal. Dec. 12, 2007) (declining to follow *Walker* and holding that such a plaintiff does have standing to pursue a claim for injunctive relief)).  But in *Walker v. Geico Gen. Ins. Co.*, the Ninth Circuit held that the same standards that apply to restitutionary standing under the UCL apply to standing for injunctive relief.  (558 F.3d 1025, 1027 (9th Cir. 2009) ("Because remedies for individuals under the UCL are restricted to injunctive relief and restitution, the import of the requirement is to limit standing to individuals who suffer losses of money or property that are eligible for restitution." (internal quotation marks omitted).)  Thus, even if Plaintiffs had sought injunctive relief under the UCL, which they did not, they would lack standing to seek such relief for the same reasons they lack standing to seek restitution.

[51]    *See Shersher v. Sup. Ct.*, 154 Cal. App. 4th 1491 (2007) (holding restitution under UCL available when indirect purchasers "had an ownership interest in the restitutionary relief sought because they purchased [the product at issue]," but distinguishing *Alch*, *Madrid*, and *Feitelberg* as cases in which restitutionary relief was unavailable because "plaintiffs never had any interest in the money they sought to recover").

-11-

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    looking at identifying information on SRAM contained in class members' products.[52]  But each and

2    every class representative objected to Defendants' request to inspect their end-use products,[53]

3    thereby precluding Defendants and the Court from determining whether any class representative can

4    even begin to attempt to show they have standing to bring a UCL claim.  Moreover, even if the class

5    representatives could produce their products for inspection and show that the products do in fact

6    contain SRAM manufactured by a Defendant, that would not establish standing.  They would still

7    need to show that the SRAM contained in their product was subject to an overcharge to a direct

8    purchaser and that the overcharge was passed through the distribution chain to them.

9            Instead of attempting to satisfy their burden of proof of injury, Plaintiffs claim that they

10   "don't have to prove ***anything***"[54] and that the evidentiary showing regarding whether their products

11   contain Defendants' SRAM can wait until the end of the case during the claims process.  Plaintiffs'

12   contend that they need not make any evidentiary showing of causation and injury until the claims

13   process, but this assertion does not comport with their burden of proof under the UCL.  Nor is it

14   consistent with black-letter law requiring the class to be ascertainable at the time of certification.[55]

15   Indeed, courts recognize that it would be folly to certify an unascertainable class based on the hollow

16   promise, such as Plaintiffs' here, that problems in identifying class members can be pushed off to the

17   claims process: "The problems inherent in ascertaining and distributing a damage award to countless

18   consumers will make it impossible to administer the action and thereby negate any advantages

19   gained by allowing the class allegations to stand. . . . [N]o matter how easy it is to establish damages

20   on a class level, if it is extremely difficult or almost impossible to distribute these sums to their

21   rightful recipients, the class is unmanageable."[56]

22

23   [52]    Indirect Purchasers' Third Consolidated Amended Class Action Complaint ¶ 147.
      [53]    The objections and the futility of any inspection is set forth in detail in Defendants' papers.
24   [54]    Hearing Tr. at 33:4–6 (emphasis added).
      [55]    *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (Rule 23 requires a
25   class be defined, and "[a] class definition should be precise, objective, and presently ascertainable.")
      (internal quotation marks and citations omitted); *Davis v. Astrue*, 250 F.R.D. 476, 484 (N.D. Cal.
26   2008) ("[A]n implied prerequisite to certification is that the class must be sufficiently definite[, and
      a] defined class should be precise, objective, and presently ascertainable" (internal quotation marks
27   and citations omitted)); *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, No. C 05-2320 SBA,
      2006 WL 2642528, at *3 (N.D. Cal. Sept. 14, 2006) ("The Court must be able to determine class
28   members without having to answer numerous fact-intensive questions.").
      [56]    *In re Fresh Del Monte Pineapples Antitrust Litig.*, No. 1:04-md-1628 (RMB), 2008 WL
      5661873, at *10 (S.D.N.Y. Feb. 20, 2008) (internal quotation marks and citations omitted) (finding

-12-

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    Additionally, just as with legal damages claims, Plaintiffs seeking restitution have the burden

2  to come forward with a realistic and sufficiently plausible methodology for showing pass-through on

3  a class-wide basis using common proof.  Restitution under the UCL or under unjust enrichment

4  claims is only appropriate where a plaintiff shows that a defendant has received a benefit at the

5  expense of the plaintiff.[57]  In order to do that, Plaintiffs must show that they purchased products

6  containing Defendants' SRAM, that such SRAM was subject to an alleged overcharge, and that such

7  overcharge was "passed-through to them."[58]  As Judge White explained in *In re Ditropan XL*

8  *Antitrust Litig.*, indirect purchaser class action plaintiffs can only recover restitution under the UCL

9  if they "are ultimately able to prove traceability."[59]  But, as discussed in detail in Defendants'

10 papers, Plaintiffs have failed to provide a realistic or sufficiently plausible methodology for tracing

11 pass-through of any alleged overcharge throughout the chains of distribution.  The failings of

12 Plaintiffs' methodologies are even more stark with respect to a restitutionary claim, since Plaintiffs'

13 current theory is that an overcharge will reappear at the consumer level even if it has been fully

14 absorbed in a distribution chain.  With such a theory, it is impossible to show that Plaintiffs' money

15 ever actually reached a Defendant, either directly or indirectly.  Given this, it would be improper to

16 certify a class in California for legal damages or equitable restitution.

17 **F.   Can Plaintiffs Satisfy the Injury Requirement for Certification of a Damages or**

18 **Restitutionary Class Under Rule 23(b)(3)?  No.**

19     For the reasons discussed in Defendants' other papers, Plaintiffs have not put forward a

20 realistic nor sufficiently plausible methodology for showing pass-through with common proof on a

21 class-wide basis.  Moreover, Plaintiffs have not even been able to show that the individual putative

22 class representatives suffered injury as a result of the alleged overcharge.  As discussed above,

23

24 class unmanageable where proposed formal claims procedure was not reliable method of distributing
   damages because, among other things, many claims were "not likely to be accurate or verifiable.")
25 [57]   *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 721–22 (2003) ("An individual is required to
   make restitution when he or she has been unjustly enriched at the expense of another.").
26 [58]   *Id.* at 722 (finding that appellants stated valid cause of action for unjust enrichment where
   excessive fees were passed-through and absorbed by appellants); *see also In re Ditropan Antitrust*
27 *Litig.*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007).
   [59]   529 F. Supp. 2d 1098; *see also Hall v. Time, Inc.*, 158 Cal. App. 4th  847, 849 (2008) ("A
28 plaintiff must have suffered an 'injury in fact' and 'lost money or property as a result of such unfair
   competition' to have standing to pursue either an individual or a representative claim under the
   [UCL].").

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   Plaintiffs have not and cannot establish **any** of the following: that (1) they purchased products

2   containing SRAM; (2) the SRAM contained within their purchased products was manufactured by

3   Defendants; (3) the particular SRAM was subject to an overcharge to a direct purchaser; (4) the

4   direct purchaser passed through the overcharge; and finally (5) the overcharge was passed through

5   the entire distribution chain all the way down to the class representatives.

6   **G.    Does the *B.W.I.* Presumption Apply When the Case Involves Components Which Are**

7   **Added to or Altered in the Distribution Chain?  No.**

8           At the hearing, Plaintiffs' counsel, presumably arguing that this Court should apply a

9   presumption of impact in order to certify a California class, noted that in *B.W.I. Custom Kitchen v.*

10  *Owens-Ill., Inc.*,[60] all of the resellers admitted at deposition that they passed through the overcharge.

11  (Hearing Tr. 18:3-4.)  Thus, it is not surprising that *B.W.I.* applied a presumption of impact given

12  that the fact of pass-through was not disputed.  On the other hand, *B.W.I.* and its progeny make clear

13  that a presumption of impact should **not** be applied in cases where component products are at issue

14  that travel through multiple distribution chains and are altered or added to along the way.  (*See*

15  Surreply at 6:16-7:1 & n.26.)  Here, the data and testimony show that many intermediaries absorbed

16  alleged overcharges and did not pass them through.  And SRAM, like DRAM in *Infineon*,[61] and like

17  graphics processing units in *GPU*,[62] is a component that is sold in diverse distribution chains and is

18  altered and added to in myriad ways as it travels through those distribution chains.  Plaintiffs have

19  cited **no** case, in **any** jurisdiction, where a court certified a class involving a component part that was

20  altered or added to in diverse distribution chains.  For these and numerous other reasons that have

21  been fully briefed in Defendants' papers and at the hearing, a presumption of impact, as a matter of

22  law, cannot be applied in this case under any state's laws.

23  **H.    Should the Court Bifurcate the Issue of Conspiracy from Injury?  No.**

24          Because conspiracy and fact of injury (impact) are both elements of liability, courts are

25  disinclined to bifurcate these issues from one another, as there would be no judicial-economy benefit

26  of doing so.  Defendants could find no case where a court certified only one element of liability.

27  [60]  191 Cal. App. 3d 1341 (1987).

28  [61]  *California v. Infineon Techs. AG*, No. C06-4333 PJH, 2008 WL 4155665 (N.D. Cal. Sept. 5, 2008).

[62]  *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478 (N.D. Cal. 2008).

-14-

This is not surprising because a finding of conspiracy alone would accomplish nothing because it would not be enough to justify certifying a class or proceeding with the lawsuit.  "Proof of an alleged conspiracy alone is not enough to establish antitrust liability."  (*McCarter v. Abbott Labs.*, No. Civ.A. 91-050.1993, 1993 WL 13011463, at *6 (Ala. Cir. Ct. April 9, 1993).)  Bifurcation therefore would not alleviate manageability problems, because impact must in any case be addressed at the class certification stage.  (*See Keating v. Philip Morris, Inc.*, 417 N.W.2d 132, 138 (Minn. Ct. App. 1987) (declining to bifurcate trial between conspiracy and damages, because even with fact of conspiracy established, "the case would remain unmanageable").)

### III.    CONCLUSION

Plaintiffs fail to demonstrate the requisite actual case and controversy under Article III of the Constitution necessary to establish this Court's jurisdiction to hear their claims.  Without such jurisdiction, the Court must *sua sponte* dismiss Plaintiffs' claims with prejudice.  Moreover, this Court should do actual justice, not "rough justice," and deny class certification for failure to make a sufficient evidentiary showing of injury.  The powerful class-action mechanism should be reserved for cases, unlike this one, where there is actual evidence that Plaintiffs have suffered an injury[63] and where the class-certification claims are based on realistic and sufficiently plausible methods of establishing class-wide injury.

Dated:  September 16, 2009                                    Respectfully submitted,

WINSTON & STRAWN LLP


By      /s/ Sean D. Meenan
            SEAN D. MEENAN
         Attorneys for Defendants
     NEC ELECTRONICS CORPORATION
      and NEC ELECTRONICS AMERICA, INC.


I, Sean D. Meenan, hereby attest, pursuant to N.D. Cal. General Order No. 45, that the concurrence to the filing of this document has been obtained from each signatory hereto.

            /s/ Sean D. Meenan
              Sean D. Meenan

---

[63]      Actual, and also imminent in the case of an injunction.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-15-

*Additional Defendants and Counsel:*

**LATHAM & WATKINS LLP**

By  */s/ Belinda Lee*
    Belinda Lee
    Attorneys for Defendants
    Toshiba Corporation and Toshiba
    America Electronic Components, Inc.

**MAYER BROWN LLP**

By  */s/ Robert E. Bloch*
    Robert E. Bloch *(pro hac vice)*
    Attorneys for Defendant
    Cypress Semiconductor, Inc.

**McDERMOTT WILL & EMERY LLP**

By  */s/ Craig P. Seebald*
    Craig P. Seebald *(pro hac vice)*
    Vincent van Panhuys *(pro hac vice)*
    Attorneys for Defendants Renesas
    Technology Corp., Renesas Technology
    America, Inc., Mitsubishi Electric
    Corporation, and Mitsubishi Electric &
    Electronics USA, Inc.

**WHITE & CASE LLP**

By  */s/ Matthew S. Leddicotte*
    Matthew S. Leddicotte *(pro hac vice)*
    Attorneys for Defendant Etron Technology
    America, Inc.

**O'MELVENY & MYERS LLP**

By  */s/ Michael F. Tubach*
    Michael F. Tubach
    Attorneys for Defendants
    Hynix Semiconductor Inc., and
    Hynix Semiconductor America Inc.

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

By  */s/ James L. McGinnis*
    James L. McGinnis
    Attorneys for Defendants
    Samsung Electronics America, Inc.,
    Samsung Electronics Company, Ltd., and
    Samsung Semiconductor, Inc.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

# Exhibit 1
# September 3, 2009
# Class Certification
# Hearing Transcript

090309-5.txt

PAGES 1 - 45

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CLAUDIA WILKEN, JUDGE

IN RE STATIC RANDOM ACCESS  )   MDL C-07-1819 CW
(SRAM) ANTITRUST LITIGATION,)
                                THURSDAY, SEPTEMBER 9, 2009

                                OAKLAND, CALIFORNIA

REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR THE DIRECT-                 COTCHETT, PITRE & MCCARTHY
PURCHASER PLAINTIFFS:           840 MALCOLM ROAD
                                BURLINGAME, CALIFORNIA 94010
                          BY:   STEVEN N. WILLIAMS, ESQUIRE
                                NEIL SWARTZBERG, ESQUIRE

                                SAVERI & SAVERI
                                111 PINE STREET, SUITE 1700
                                SAN FRANCISCO, CALIFORNIA 94111
                          BY:   GUIDO SAVERI, ESQIURE

FOR THE INDIRECT-               ZELLE HOFMANN VOELBEL & MASON
PURCHASER PLAINTIFFS:           44 MONTGOMERY STREET, SUTIE 3400
                                SAN FRANCISCO, CALIFORNIA 94104
                          BY:   FRANCIS O. SCARPULLA, ESQUIRE
                                CHRISTOPHER T. MICHELETTI, ESQ.
                                JANE N. YI, ESQUIRE

                    (APPEARANCES CONTINUED)

REPORTED BY:                    DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                                OFFICIAL COURT REPORTER

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

                                                              2

1

090309-5.txt

2     APPEARANCES CONTINUED:

3

4     FOR THE INDIRECT-              LIEFF, CABRASER, HEIMANN
      PURCHASER PLAITNIFFS:          & BERNSTEIN
5                                    275 BATTERY STREET, 28TH FLOOR
                                     SAN FRANCISCO, CALIFORNIA 94111
6                               BY:  MICHELE C. JACKSON, ESQUIRE

7
                                     MINAMI TAMAKI LLP
8                                    360 POST STREET, 8TH FLOOR
                                     SAN FRANCISCO, CALIFORNIA 94108
9                               BY:  JACK W. LEE, ESQUIRE

10

11                                   SHEPHERD, FINKELMAN, MILLER &
                                     SHAH, LLC
12                                   36 E. STATE STREET
                                     MEDIA, PENNSYLVANIA 19063
13                              BY:  NATALIE FINKELMAN BENNETT, ESQ.

14
                                     LAW OFFICES OF LINGEL H. WINTERS
15                                   ONE MARITIME PLAZA, SUITE 400
                                     SAN FRANCISCO, CALIFORNIA 94111
16                              BY:  LINGEL H. WINTERS, ESQUIRE

17
                                     GLANCY BINKOW & GOLDBERG
18                                   ONE EMBARCADERO CENTER, SUITE 760
                                     SAN FRANCISCO, CALIFORNIA 94111
19                              BY:  SUSAN G. KUPFER, ESQUIRE

20
                                     GROSS BELSKY ALONSO LLP
21                                   180 MONTGOMERY STREET, SUITE 2200
                                     SAN FRANCISCO, CALIFORNIA 94104
22                              BY:  ADAM C. BELSKY, ESQUIRE

23

24

25


      DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

                                                                  3


1

2     FOR DEFENDANT                  WINSTON & STRAWN
      NEC (LIAISON):                 101 CALIFORNIA STREET
3                                    SAN FRANCISCO, CALIFORNIA 94111
                                BY:  PAUL R. GRIFFIN, ESQUIRE
4                                    PATRICK M. RYAN, ESQUIRE
                              Page 2

090309-5.txt

```
                              ROBERT B. PRINGLE, ESQUIRE
     5                        LAURA A. GUILLEN, ESQUIRE

     6   FOR DEFENDANT        MAYER BROWN
         CYPRESS:             1999 K STREET, N.W.
     7                        WASHINGTON, D.C. 20006
                        BY:   ROBERT E. BLOCH, ESQUIRE
     8

     9   FOR DEFENDANT        SHEPPARD MULLIN RICHTER & HAMPTON
         SAMSUNG:             FOUR EMBARCADERO CENTER, 17TH FL.
    10                        SAN FRANCISCO, CALIFORNIA 94111
                        BY:   JOHN S. WHITTAKER, ESQUIRE
    11

    12   FOR DEFENDANT        LATHAM & WATKINS
         TOSHIBA:             355 SOUTH GRAND AVENUE
    13                        LOS ANGELES, CALIFORNIA 90071
                        BY:   CASANDRA L. THOMSON, ESQUIRE
    14

    15   FOR DEFENDANT        MCDERMOTT WILL & EMERY
         HITACHI AND          600 THIRTEENTH STREET, N.W.
    16   RENESAS:             WASHINGTON, D.C. 20005
                        BY:   CRAIG P. SEEBALD, ESQUIRE
    17

    18   FOR DEFENDANT        O'MELVENY & MYERS
         HYNIX:               TWO EMBARCADERO CENTER, 28TH FL.
    19                        SAN FRANCISCO, CALIFORNIA 94111
                        BY:   KATHERINE M. ROBISON, ESQUIRE
    20

    21

    22

    23

    24

    25


         DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                             4


     1   THURSDAY, SEPTEMBER 3, 2009                    2:00 P.M.

     2

     3              THE CLERK:  CALLING THE MATTER OF IN RE SRAM, CIVIL

     4   ACTION NUMBER C-07-1819.

     5              COUNSEL, PLEASE COME FORWARD.

     6              THE COURT:  WHAT WE WILL DO IS, THEY HAVE YOUR CARDS

     7   AND EVERYTHING.  WE WILL JUST WRITE YOUR APPEARANCES DOWN IN
```
                                Page 3

090309-5.txt

8      THE RECORD.   WE DON'T NEED YOU ALL TO SAY WHO YOU ARE.

9                IF YOU COULD SAY WHO YOU ARE WHEN YOU SPEAK SO THE

10     COURT REPORTER CAN GET WHO IS SPEAKING.

11                I DON'T KNOW IF WE HAVE DIRECT PURCHASER PEOPLE

12     HERE, TOO, WHO WANT TO WEIGH IN ON ANYTHING OR IF WE ARE JUST

13     WITH DEALING WITH INDIRECT PURCHASER PEOPLE.

14                IS THERE ANYONE HERE FROM DIRECT PURCHASER?

15                MR. SCARPULLA:   MAY IT PLEASE THE COURT, FRANCIS

16     SCARPULLA, YOUR HONOR, FOR THE INDIRECTS, BUT I BELIEVE YOUR

17     HONOR SCHEDULED A CASE MANAGEMENT CONFERENCE FOR BOTH OF US

18     AFTER THIS.

19                THE COURT:   OKAY.   SO SOMEBODY IS HERE FROM --

20                MR. WILLIAMS:   STEVE WILLIAMS ON BEHALF OF THE

21     DIRECT PURCHASERS.

22                THE COURT:   OKAY.

23                MR. GRIFFIN:   YOUR HONOR, PAUL GRIFFIN FOR NEC AND

24     DEFENSE LIAISON COUNSEL.

25                WITH ME IS MY PARTNER.   I WOULD LIKE TO INTRODUCE

       DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

                                                                  5


1      PATRICK RYAN WHO WILL ADDRESS FOR ALL DEFENDANTS THE CLASS

2      CERTIFICATION MOTION.

3                THE COURT:   OKAY.

4                MR. RYAN:   GOOD AFTERNOON, YOUR HONOR.   PLEASURE TO

5      BE BEFORE YOU AGAIN.

6                THE COURT:   WHO IS ARGUING ON YOUR SIDE ABOUT CLASS

7      CERTIFICATION?   I JUST HAVE SOME QUESTIONS.   I THINK THE

8      EASIEST WOULD BE IF I CAN GET WHOEVER IS ARGUING FOR EACH SIDE

9      TO COME UP.

10                MR. SCARPULLA:   YOUR HONOR, THERE ARE TWO OF US

090309-5.txt

11  BECAUSE OF THE NUMBER OF ISSUES INVOLVED I CAN HANDLE SOME OF
12  THEM, THE GENERAL KINDS OF THINGS, BUT MORE SPECIFICALLY FOR
13  TYPICALITY, FOR THE EXPERT REPORTS ISSUES FOR BOTH THE CLASS
14  CERTIFICATION AND THE TWO MOTIONS REGARDING THE EXPERTS, IT'S
15  MR. MICHELETTI FROM MY OFFICE.
16          THE COURT:  HE CAN STAND UP THERE, TOO.
17          SO, WHAT WOULD HAPPEN IF I DIDN'T CERTIFY THE CLASS
18  AT ALL?  I STILL HAVE ALL THESE CASES, I AM THE MDL JUDGE, WHAT
19  WOULD I DO?
20          I GUESS THAT SHOULD BE ADDRESSED TO THE DEFENDANT.
21          MR. RYAN:  WELL, IN THEORY, WE WOULD BE TRYING 47 --
22          THE COURT:  I WOULDN'T TRY ANY OF THEM BECAUSE I
23  WOULD BE THE MDL JUDGE AND I WOULD HAVE TO DO THE PRETRIAL
24  PROCEEDINGS.  ISN'T THAT RIGHT, I WOULD HAVE TO SEND ALL THE
25  TRIALS BACK TO WHENCE THEY CAME?

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                          6

1           MR. RYAN:  I BELIEVE THAT'S CORRECT.
2           THE COURT:  SO, BUT I WOULD HAVE TO DO ALL THE
3   MOTIONS, ALL THE SUMMARY JUDGMENT MOTIONS AND EVERYTHING ELSE.
4           HOW MANY LAWSUITS ARE THERE WITH INDIRECT PURCHASER
5   PLAINTIFFS IN THEM?  80?  ALL THE CASES?
6           MR. RYAN:  YES.
7           THE COURT:  HAVE IP'S IN THEM, YES?
8           MR. RYAN:  I THINK SO.
9           THE COURT:  I WOULD THEN -- WE WOULD LITIGATE EACH
10  OF THOSE 80 CASES SEPARATELY ON THE INDIRECT PURCHASERS, ALL
11  THE MOTIONS AND EVERYTHING, AND THEN WE WOULD SEND THEM BACK
12  FOR TRIAL?
13          MR. RYAN:  THAT'S CORRECT, YOUR HONOR.
                    Page 5

090309-5.txt

14          THE COURT:   TO 80 DIFFERENT PLACES.

15          MR. RYAN:  IF THEY SURVIVED.

16          THE COURT:   COULD I -- I MEAN AT THE VERY LEAST IT

17   SEEMS AS THOUGH THE ISSUE OF THE CONSPIRACY TO PRICE FIX IS THE

18   SAME, NOT ONLY IN THIS CASE, BUT FOR THAT MATTER IN THE DIRECT

19   PURCHASER CASE.   I AM WONDERING WHETHER THERE COULD BE A WAY I

20   CAN CERTIFY THE INDIRECT PURCHASERS FOR THE PURPOSE OF

21   DETERMINING A CONSPIRACY TO PRICE FIX.   AND I GUESS YOU ALL

22   MIGHT WANT TO WEIGH IN ON THIS FOR THE DIRECT PURCHASERS, BUT

23   COULD WE NOT HAVE FOR THE INDIRECTS BIFURCATE THAT ISSUE, AND

24   COMBINE THE BIFURCATED ISSUE WITH THE FIRST PHASE OF THE TRIAL

25   WITH THE DIRECT PURCHASERS AND HAVE A TRIAL IN WHICH WE

        DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

                                                            7

1    DETERMINE WHETHER THERE WAS A PRICE-FIXING CONSPIRACY.   AND

2    THEN THE INDIRECT PURCHASERS WOULD DROP OUT, AND THEY -- THE

3    BIFURCATED PORTION OF THEIR CASE WOULD GO SOMEWHERE ELSE,

4    WHETHER IT WOULD BE TO ANOTHER TRIAL OR BACK TO THEIR OWN

5    DISTRICTS, MEANWHILE WE WOULD PROCEED WITH THE NEXT PHASE OF

6    THE DIRECT PURCHASER CASE IN WHICH WE WOULD DO IMPACT AND

7    DAMAGES.

8           MR. SCARPULLA:   YOUR HONOR, FRANCIS SCARPULLA FOR

9    THE INDIRECTS.

10          YOU DEFINITELY CAN BIFURCATE.   YOU ARE PERMITTED TO

11   DO THAT.  IN FACT, SOME CASES HAVE DONE THAT.

12          THE COURT:   THE DIRECT PURCHASER PLAINTIFFS, WOULD

13   YOU HAVE A PROBLEM WITH THAT?

14          MR. WILLIAMS:  NO, YOUR HONOR.  I AGREE WITH

15   MR. SCARPULLA.  YOU HAVE THE DISCRETION TO DO THAT, AND I THINK

16   THE ISSUES WOULD BE THE SAME.

                        Page 6

090309-5.txt

17            THE COURT:  OKAY.

18            SO HOW WOULD THAT WORK?

19            MR. RYAN:  DEFENDANTS' POSITION IS, YOUR HONOR, YOU

20  COULDN'T CERTIFY THE CLASS OF INDIRECTS FOR THAT PURPOSE, BUT

21  YOU COULD CONSOLIDATE THE CASES FOR THAT ISSUE, THE INDIVIDUAL

22  CASES.  BECAUSE THE CRUX OF THE MATTER FOR INDIRECT PURCHASER

23  CLASS AS WE'VE SHOWN IN THOSE CASES IS WHETHER THERE IS IMPACT,

24  PASS THROUGH.

25            THE COURT:  THEN I HAVE ANOTHER QUESTION ABOUT THAT.

         DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                               8


1   I AM AFRAID I WILL GET OFF TRACK, BUT IS IT IMPACT OF EACH

2   INDIVIDUAL OR IS IT WHETHER THERE IS A GENERAL MARKET IMPACT?

3            IN OTHER WORDS, I RECOGNIZE FOR DAMAGES WE WOULD

4   HAVE TO LOOK AT EACH INDIVIDUAL AND SAY, YOU KNOW, WHAT'S IN

5   YOUR CELL PHONE AND ALL OF THAT, BUT FOR MARKET IMPACT, WOULD

6   THAT NOT BE A QUESTION OF MARKET-WIDE IMPACT AND NOT A QUESTION

7   OF INDIVIDUAL IMPACT FOR EACH INDIVIDUAL PERSON.

8            MR. RYAN:  I THINK THE ANSWER IS NEITHER OF WHAT YOU

9   SAID.  THE STANDARD IS HAVE PLAINTIFFS PUT FORTH A REALISTIC

10  AND SUFFICIENT AND PLAUSIBLE METHODOLOGY FOR SHOWING IMPACT

11  USING COMMON PROOF ON A CLASS-WIDE BASIS.

12            THE COURT:  I AM NOT ASKING THAT.  I AM ASKING WHAT

13  DOES THE ELEMENT OF THE CAUSE OF ACTION REQUIRE THEM TO SHOW?

14  FORGET WHETHER IT'S A CLASS OR NOT A CLASS, WHAT DO THEY HAVE

15  TO SHOW ABOUT IMPACT IN ORDER TO MAINTAIN THEIR CAUSE OF

16  ACTION?

17            MR. RYAN:  PLAINTIFF IS REQUIRED TO SHOW INJURY.

18  THAT'S AN ELEMENT OF THE CLAIM FOR RELIEF.

19            THE COURT:  THAT'S DAMAGES -- INJURY AND THEN
                            Page 7

090309-5.txt

20   DAMAGES.
21              MR. RYAN:   YES.   INJURY IS IMPACT.   THAT'S AN
22   ELEMENT OF THE CLAIM FOR RELIEF, AND THAT CANNOT BE DONE ON A
23   MARKET-WIDE BASIS.
24              THE COURT:   AND YOU'RE SAYING THAT IS INDIVIDUAL
25   INJURY, NOT IMPACT ON THE MARKET.

     DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                             9


1               MR. RYAN:   THAT'S CORRECT, YOUR HONOR.
2               THE COURT:   WHAT WOULD BE A GOOD CASE THAT WOULD SAY
3    THAT?   JUST SORT OF DUMMY LEVEL, BLACK LETTER LAW CASE THAT
4    WOULD SAY THAT'S WHAT IT IS?
5               MR. RYAN:   HOW ABOUT ILLINOIS BRICK?   ILLINOIS BRICK
6    SAYS YOU HAVE TO DO IT ON A POINT BY POINT ALL THE WAY DOWN TO
7    THE INDIVIDUAL PLAINTIFF.   1977.
8               THE COURT:   OKAY.
9               NOW WHAT IF WE CERTIFIED A CLASS -- WELL, LET ME ASK
10   YOU, WHAT IS YOUR IDEA HERE?   ARE YOU THINKING WE CERTIFY A
11   NATIONWIDE CLASS JUST FOR PURPOSES OF EQUITABLE RELIEF AND THAT
12   PROVIDES A VEHICLE FOR NO DAMAGES AT ALL, IT PROVIDES A VEHICLE
13   ONLY FOR AN INJUNCTION?   AND THEN IN ADDITION TO THAT, WE
14   CERTIFY 27 DIFFERENT STATE CLASSES PURSUANT TO WHICH
15   INDIVIDUALS CAN SEEK DAMAGES?   IS THAT YOUR CONCEPT?
16              MR. SCARPULLA:   THAT IS EXACTLY WHAT WE ASKED FOR,
17   YOUR HONOR, YES.
18              THE COURT:   YOU WOULDN'T BE SEEKING ANY DAMAGES IN
19   THE INJUNCTIVE CLASS.
20              MR. SCARPULLA:   NO, WE WOULDN'T BE ENTITLED TO
21   DAMAGES UNDER SECTION 15 OF THE CLAYTON ACT FOR VIOLATIONS OF
22   SECTION 1 OF THE SHERMAN ACT WHICH INDIRECT PURCHASERS ARE
                           Page 8

O90309-5.txt

23    PERMITTED TO BRING INITIALLY IN FEDERAL DISTRICT COURTS.

24              HOWEVER, A NUMBER OF THE STATES FOR WHICH WE HAVE

25    REQUESTED STATEWIDE CLASSES BASED ONLY ON THAT PARTICULAR

      DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

                                                                      10


1     STATE'S LAWS PERMIT INJUNCTIVE CASES WHICH INCLUDE RESTITUTION

2     OR DISGORGEMENT.  FOR EXAMPLE --

3              THE COURT:  RIGHT.  SOME OF THE INDIVIDUAL STATES

4     YOU CAN CERTIFY A CLASS FOR THAT STATE THAT WOULD GET DAMAGES

5     OR RESTITUTION.

6              MR. SCARPULLA:  NO DAMAGES.  THAT'S THE DIFFERENCE.

7              THE COURT:  EVEN RESTITUTION PURSUANT TO VARIOUS

8     STATES.  SO THAT'S WHAT YOU ARE PROPOSING THEN.

9              MR. SCARPULLA:  YES.  BUT IN THOSE STATES, YOUR

10    HONOR, THE DIFFERENCE IS THAT IF YOU VIEW IT ONLY AS AN

11    EQUITABLE REMEDY AND, THEREFORE, NO DAMAGES, THE PLAINTIFFS IN

12    THOSE STATEWIDE CLASSES DO NOT HAVE THE NECESSITY TO SHOW

13    PASS-ON.  THAT IS NOT AN ELEMENT.  THE ONLY ELEMENT IS HOW MUCH

14    MONEY DID THE DEFENDANTS TAKE THAT DOES NOT BELONG TO THEM.  IT

15    HAS NOTHING TO DO WHETHER IT WAS PASSED ON --

16             THE COURT:  IF THESE ARE JUST EQUITABLE, IS THERE A

17    JURY TRIAL RIGHT?

18             MR. SCARPULLA:  NO.  WE TRY THAT TO YOU.

19             THE COURT:  EVEN THE NATIONWIDE CLASS FOR EQUITABLE

20    RELIEF, I GUESS.

21             MR. SCARPULLA:  CORRECT, YOUR HONOR.  IF WE DO IT IN

22    CONJUNCTION WITH THE DIRECTS, THEN YOU DO EVERYTHING IN ONE --

23    THERE ISN'T A JURY FOR US.

24             THE COURT:  I DECIDE THE CONSPIRACY QUESTION.

25             MR. SCARPULLA:  YOU WOULD TRY THE CONSPIRACY --
                            Page 9

090309-5.txt

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

11

1           THE COURT:  FOR YOUR CASE --
2           MR. SCARPULLA:  FOR MY CASE.
3           THE COURT:  -- WHILE A JURY WAS DECIDING THE
4  CONSPIRACY QUESTION FOR DIRECT PURCHASERS.
5           MR. SCARPULLA:  MY RECOLLECTION IS, YOUR HONOR, THAT
6  YOU ARE PERMITTED TO ASK THEM FOR AN ADVISORY OPINION.
7           THE COURT:  I COULD.  OKAY.  THAT IS INTERESTING.
8           SO WHAT IF I CERTIFIED A NATIONWIDE CLASS FOR
9  EQUITABLE RELIEF AND CERTIFIED ONLY A CALIFORNIA CLASS FOR
10 WHATEVER YOU CAN GET IN CALIFORNIA, AND DIDN'T CERTIFY ALL THE
11 OTHER STATES, BUT DID THEIR PRETRIAL WORK AND THEN SENT THEM
12 BACK TO THEIR RESPECTIVE STATES TO SEE IF THE JUDGES IN THOSE
13 STATES WANTED TO CERTIFY AN IN-STATE CLASS FOR THEM OR NOT?
14          MR. SCARPULLA:  THAT'S FINE.
15          THE COURT:  BUT YOU WOULD RATHER HAVE ME CERTIFY ALL
16 OF THEM, I GUESS.
17          MR. SCARPULLA:  WELL, YOUR HONOR, IT WOULD MAKE IT A
18 NICE -- IT WOULD MAKE IT AN EASIER PACKAGE TO DEAL WITH.  BUT,
19 YOU KNOW, PRIOR TO CAFA, YOUR HONOR, WE USED TO DO THIS ALL THE
20 TIME.  WE FLEW ALL OVER THIS COUNTRY.  WENT TO ALL THESE LITTLE
21 SMALL TOWNS WHERE THESE CASES WERE PENDING.
22          THE COURT:  YOU WOULD BE IN FEDERAL COURT.  YOU
23 WOULD BE IN FEDERAL COURT IN EACH OF THE STATES.
24          MR. SCARPULLA:  UNLESS YOU DIDN'T MEET THE
25 JURISDICTIONAL REQUIREMENTS OF CAFA, THEN YOU WOULD GO BACK TO

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

12

O90309-5.txt

1    THE STATE COURTS.

2              THE COURT:  NOW WHAT'S YOUR VIEW ABOUT WHAT I WAS

3    SPEAKING WITH COUNSEL ABOUT IN TERMS OF THE -- WHAT ARE THE

4    ELEMENTS OF THE -- WHAT IS NECESSARY TO PROVE THE IMPACT

5    ELEMENT?  IS THAT REALLY INDIVIDUAL INJURY OR IS IT MARKET-WIDE

6    IMPACT?

7              MR. SCARPULLA:  MOST OF THE -- AGAIN, IF WE ARE

8    TALKING ABOUT THE STATE LAW CLAIMS THAT ARE HERE

9    INDIVIDUALLY --

10             THE COURT:  LET'S START BY TALKING ABOUT THE

11   NATIONWIDE EQUITABLE CLAIM.

12             MR. SCARPULLA:  THE NATIONWIDE EQUITABLE CLAIMS, IF

13   YOU -- IF WE PROVE THAT THE DEFENDANTS ENGAGED IN A HORIZONTAL

14   CONSPIRACY, THE PURPOSE AND EFFECT OF WHICH WAS TO RAISE THE

15   PRICES OF SRAM IN THE UNITED STATES, THAT IN AND OF ITSELF IS

16   SUFFICIENT BECAUSE WE ARE NOT CLAIMING DAMAGES IN THAT CASE.

17             THE COURT:  YOU DON'T HAVE TO PROVE IMPACT?

18             MR. SCARPULLA:  BUT THERE IS IMPACT.  BECAUSE ONCE

19   YOU FIX PRICES, IF ANYBODY BUYS IT, THERE'S AN IMPACT AND YOU

20   CAN ENJOIN THEM.

21             THE COURT:  DO YOU HAVE TO PROVE THAT IN ORDER TO

22   PREVAIL ON THAT CAUSE OF ACTION?

23             MR. SCARPULLA:  NO, I THINK -- WE ARE TALKING ONLY

24   INJUNCTIVE RELIEF.  WE ONLY HAVE TO PROVE THE SAME THING THE

25   GOVERNMENT HAS TO PROVE IN AN INJUNCTIVE RELIEF CLAIM, AND THE

         DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

                                                            13

1    GOVERNMENT CAN NEVER CLAIM DAMAGES.

2              THE COURT:  NO, NO, BUT IMPACT, DO YOU HAVE TO PROVE

090309-5.txt

3    IMPACT?

4              MR. SCARPULLA:  THAT IS IMPACT.  ONCE YOU PROVE A

5    HORIZONTAL PRICE-FIXING CONSPIRACY THAT EFFECTED COMMERCE AND

6    THAT THAT ITEM WAS SOLD TO SOMEONE, THERE IS IMPACT.

7              THE COURT:  BUT FOR THE INDIVIDUAL STATES, I GUESS,

8    IT WOULD DEPEND ON LAW OF EACH PARTICULAR STATE AS TO WHETHER

9    YOU DID HAVE TO PROVE IMPACT.

10             MR. SCARPULLA:  CORRECT.

11             THE COURT:  AND WHETHER THAT IMPACT WAS NECESSARILY

12   AN INDIVIDUAL IMPACT OR COULD IT BE A BROADER MARKET IMPACT.

13             MR. SCARPULLA:  THAT'S CORRECT, YOUR HONOR.  AND A

14   LOT OF THE STATES THAT HAVE CONSIDERED IT HAVE SAID THAT

15   IT'S -- THAT YOU GET THE PRESUMPTION OF IMPACT.  NOT

16   NECESSARILY AMOUNT OF DAMAGE, BUT YOU GET THE PRESUMPTION OF

17   IMPACT.

18             THE COURT:  NOW, BACK TO THE QUESTION OF WHETHER THE

19   FIRST PART COULD BE TRIED TOGETHER, IS THERE A DIFFERENCE IN

20   THE DEFENDANTS SOMEHOW?  ARE THERE DIFFERENT DEFENDANTS IN THE

21   IP VERSUS UP?

22             MR. SCARPULLA:  I DON'T THINK SO.

23             THE COURT:  WE WERE TRYING TO MATCH EVERYBODY UP AND

24   IT DIDN'T MATCH.

25             MR. SCARPULLA:  I THINK THERE IS ONLY ONE THAT WE DO

         DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

                                                           14


1    NOT HAVE, AND I THINK IT IS ISSI, BUT I AM NOT POSITIVE.  MAYBE

2    MR. GRIFFIN.

3              MR. GRIFFIN:  YOUR HONOR, PAUL GRIFFIN FOR NEC.  I

4    BELIEVE THERE ARE A COUPLE OF DEFENDANTS THAT DIFFER BETWEEN

5    THE TWO CASES.  I THINK ONE IS ISSI AND ONE MIGHT BE HITACHI OR

                              Page 12

090309-5.txt
6    RENESAS.

7              THE COURT:  IT'S NOT A TERRIBLE HURDLE.

8              MR. SCARPULLA:  NO.

9              THE COURT:  IT'S NOT LIKE SOME HUGE DIFFERENCE.

10             MR. SCARPULLA:  NO.

11             THE COURT:  OKAY.

12             NOW, WHAT ABOUT THIS PROBLEM THAT THE DEFENDANTS

13   RAISE, AND I GUESS IT WOULD GO -- UNDER THEIR THEORY IT GOES TO

14   IMPACT, BUT AT LEAST UNDER EVERYBODY'S THEORY IT GOES TO, WELL,

15   NOT DAMAGES, BUT I GUESS RESTITUTION, AND THAT IS THE PROBLEM

16   WITH IDENTIFYING WHETHER ANY PARTICULAR PERSON GOT SRAM AT ALL.

17   AND IF THEY DID, DID THEY GET IT FROM A DEFENDANT.

18             MR. SCARPULLA:  WELL, YOUR HONOR, YOU KNOW, I READ

19   THESE -- I READ THE DEFENDANTS' PAPERS ON THAT POINT.  AND I

20   HAVE BEEN AT DEPOSITIONS WHERE DEFENSE WITNESSES HAVE TESTIFIED

21   ABOUT THAT VERY ISSUE.  AND, IN FACT, WE TOOK A DEPOSITION OF

22   SOME FELLOW FROM SAMSUNG WHO SPECIFIC JOB WAS TO CONTACT

23   COMPETITORS AND FIND OUT WHAT MARKET SHARES WERE.  AND HE USED

24   TO DO IT ON A REGULAR BASIS TO KEEP MARKET SHARE ANALYSIS.  AND

25   HE TESTIFIED THAT THE ONLY TWO PEOPLE THAT MAKE ANY DIFFERENCE

     DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                              15


1    IN THIS CASE IS SAMSUNG AND CYPRESS.  THEY ARE THE TWO BIG

2    GUYS.  EVERYBODY ELSE IS SMALL.  WE'RE TALKING ABOUT NICKELS

3    AND DIMES.

4              THE COURT:  YOU'VE ONLY GOT 60 TO 70 PERCENT OF THE

5    MARKET SHARE.

6              MR. SCARPULLA:  PARDON ME?

7              THE COURT:  THE DEFENDANTS ONLY HAVE 60 TO

8    70 PERCENT OF MARKET SHARE I AM TOLD.

                            Page 13

090309-5.txt
9            MR. SCARPULLA:  WELL, YOU KNOW, THAT'S WHAT THEY
10   SAY.  I DON'T THINK THAT'S CORRECT.
11            THE COURT:  OH.
12            MR. SCARPULLA:  I THINK THEY HAVE A LOT MORE MARKET
13   SHARE, YOUR HONOR.
14            THE COURT:  EVEN IF THEY HAVE 99.9 PERCENT, THERE IS
15   STILL SOME GUY OUT THERE WHO HAS A CELL PHONE THAT GOT THE SRAM
16   SOMEWHERE ELSE.  WHAT DO WE DO ABOUT THAT GUY?
17            MR. SCARPULLA:  YOUR HONOR, THAT'S WHAT HAPPENS
18   WITH -- THAT WAS THE OTHER ENIGMA WHICH I HAD TO PONDER WHEN I
19   WAS READING ALL OF THIS.
20            BECAUSE FOR 3O YEARS STATE COURT JUDGES HAVE DEALT
21   WITH INDIRECT PURCHASER CASES EXACTLY LIKE THIS.  THIS COMES UP
22   EVERY TIME THERE IS AN INDIRECT PURCHASER CASE IN A STATE
23   COURT.  BUT YOUR HONOR'S EXPERIENCE HAS NOT BEEN THAT BECAUSE
24   SINCE 1977 WE COULDN'T BE HERE.  SO --
25            THE COURT:  I WASN'T ON THE BENCH THEN, SO I DIDN'T

     DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (5lO) 451-293O
                                                                  16


1    HAVE THAT PROBLEM.
2            MR. SCARPULLA:  -- AS THE LAW WAS BEING DEVELOPED AS
3    STATE COURT JUDGES DID.
4            DIRECT PURCHASER CASES ARE FAIRLY EASY.  THEY'RE
5    NICE LITTLE PACKAGES.  YOU HAVE A GROUP OF DEFENDANTS.  THEY
6    SELL TO A SMALLER GROUP OF LARGE COMPANIES, AND THAT'S IT.  YOU
7    DON'T GO BELOW THEM IN THE FEDERAL DISTRICT COURTS UNTIL
8    RECENTLY WITH CAFA.  SO THAT'S IS NICE LITTLE PACKAGE.  IT'S A
9    LITTLE TIFFANY BLUE BOX WITH A RED RIBBON AROUND IT IS.
10            THE COURT:  WHITE.
11            MR. SCARPULLA:  WHITE, EXCEPT AT CHRISTMASTIME.
                          Page 14

090309-5.txt
12              (LAUGHTER.)
13              MR. SCARPULLA:  AND THEN AS YOU GO BELOW THEM AND
14  GET INTO STATE COURT ISSUES, IT GETS A LITTLE MESSY.  YOU CAN'T
15  HELP IT, THEY ARE CONSUMERS.  AND THEY DON'T --
16              THE COURT:  WHAT DO YOU DO ABOUT IT?
17              MR. SCARPULLA:  YOU TRY AND DO ROUGH JUSTICE.  THAT
18  IS -- WHAT DO YOU DO ABOUT IT?  YOU CAN'T LET -- IF WE ARE
19  CORRECT THAT THERE IS THIS PRICE-FIXING GOING ON, THEN THE
20  DEFENDANTS HAVE TAKEN SOMETHING ILLEGALLY FROM US, AND WE ARE
21  ENTITLED TO GET IT BACK.
22              AND THE DIFFICULTIES OF PROOF ARE NOT THE PLAINTIFFS
23  DOING, IT'S THE NATURE, SCOPE, EXTENT AND DURATION OF THE
24  CONSPIRACY.  IF YOU ONLY HAVE TWO PEOPLE CONSPIRING TO FIX A
25  PRICE TO A THIRD PARTY ON A VERY LIMITED COMMERCE, THAT'S AN

        DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                              17


1   EASY ONE.  IT'S WHEN YOU HAVE A NUMBER OF DEFENDANTS FIXING A
2   LOT OF PRICES ON A LOT OF THEIR PRODUCTS TO A LOT OF PEOPLE WHO
3   THEN RESELL IT ON DOWN THE CHAIN, SO THAT THOSE DEFENDANTS CAN
4   MAKE MORE MONEY, THAT'S WHAT WE ARE TALKING ABOUT HERE.  THEY
5   MAKE MORE MONEY BY FIXING PRICES THAN COMPETING.  SO YOU CAN'T
6   LET THEM KEEP IT.
7               AND I RESPECTFULLY SUGGEST THAT IT'S EITHER THROUGH
8   EQUITABLE RESTITUTIONARY PROCEDURES THAT YOU GIVE IT BACK TO US
9   OR THROUGH DAMAGE ACTION.
10              I AM NOT TELLING YOU THAT I AM GOING TO WIN THIS
11  CASE AT TRIAL, BUT THESE ARE ALL COMMON ISSUES.  THEY ARE
12  COMMON QUESTIONS.  THEY SHOULD BE DECIDED ONCE.  AND IT DOESN'T
13  MATTER WHETHER YOU HAVE 47 OR 80 PLAINTIFFS OR THE MILLIONS IN
14  BACK OF THEM.  IT'S GOING TO BE THE SAME EVIDENCE, THE SAME
                            Page 15

090309-5.txt
15   PEOPLE ON THAT STAND, THE SAME PEOPLE IN THAT BOX.

16          THIS IS -- I HAVE DONE THIS BEFORE.  I HAVE DONE IT

17   FOR 42 YEARS, YOUR HONOR.

18          THE COURT:  SO WHY DID YOU GO TO ALL THE TROUBLE OF

19   HIRING THESE ECONOMISTS TO TELL US ABOUT THE IMPACT IF YOU

20   REALLY DIDN'T HAVE TO?

21          MR. SCARPULLA:  YOU WANT ME TO TELL YOU WHY?

22          BECAUSE OF THE NINTH CIRCUIT.  BECAUSE IF YOU DON'T

23   WATCH OUT AND YOU TRY SOMETHING HERE, YOU DON'T PUT ALL THAT

24   STUFF IN THE RECORD, YOU GO UP THERE, SOMEBODY WILL SAY TO YOU,

25   WHY DIDN'T YOU HAVE AN ECONOMIST?  AND YOU WILL GET REVERSED.

       DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                              18

1           SO YOU COVER YOURSELF.  THAT'S WHY YOU DO IT.

2           IN BWI I HAD -- THAT WAS MY CASE.  I HAD NO

3    ECONOMIST.  NONE.  I TOOK THE DEPOSITIONS OF THE RESELLERS AND

4    THEY TOLD ME, I PASS EVERYTHING ON.  THEY CAN'T NOT PASS IT ON,

5    YOUR HONOR.  I DON'T CARE WHAT PEOPLE ARE TELLING YOU, BECAUSE

6    IF THEY DIDN'T SELL GOODS AT THE COST OF GOODS, THEY WOULD BE

7    BROKE IN A WEEK AND A HALF.

8           THE COURT:  WELL, IN GENERAL THAT'S TRUE.  THERE ARE

9    ALL THESE CIRCUMSTANCES WHERE SOMETIMES MAYBE THEY DON'T.  IF

10   THEY ARE DOING A PROMOTION, THEY'RE DOING SOME KIND OF LOSS

11   LEADER, SELLING --

12          MR. SCARPULLA:  THAT MAY BE SELLING BELOW THEIR

13   INCREMENTAL COST, BUT WE ARE TALKING ABOUT SALES BELOW COST OF

14   GOODS.  THAT'S DIFFERENT.

15          NOW, THAT CAN OCCUR MAYBE ON THE EDGES FOR A LITTLE

16   BIT OF TIME.  IT HAS NO IMPACT ON THE CASE.  IT'S IRRELEVANT.

17   IT JUST DOESN'T HAPPEN.

                              Page 16

090309-5.txt
18            THE COURT:   WHAT ABOUT THE PERSON WHO GOT THEIR

19    PHONE THAT WAY?

20            MR. SCARPULLA:   YEAH, BUT HOW MANY OF THEM ARE

21    THERE?

22            THE COURT:   I DON'T KNOW, BUT IF I HAVE A CLASS OF

23    MILLIONS OF PEOPLE, I GUESS I HAVE TO FIND THEM.

24            MR. SCARPULLA:   KYOCERA, WHATEVER THE NAME OF THAT

25    TINY COMPANY, AND YOU NOTICE, DON'T YOU, THAT THEY DIDN'T START

          DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                          19


1    DOING ALL THOSE LITTLE DOTS UNTIL FEBRUARY 2003.  THIS CASE

2    GOES BACK TO '96.  WE DON'T KNOW ANYTHING ABOUT THAT FROM THEM

3    DIRECTLY.  AND THEN YOU SEE ALL THOSE LITTLE DOTS.  YOU KNOW, I

4    TRIED TO FIND OUT --

5            THE COURT:   I LOST YOU ON THE LITTLE DOTS.

6            MR. SCARPULLA:   THEY HAVE THIS GRAPH WHICH SHOWS

7    SALES AND THEY HAVE COST.  OKAY?  AND THEN SO YOU HAVE A LOT OF

8    DOTS ABOVE AND SOME DOTS BELOW, AND YOU HAVE ONE DOT AT ZERO.

9            SO THAT MEANS THEY DIDN'T MAKE ANYTHING ON THAT AT

10    ALL.  BUT YOU DON'T -- WE DON'T KNOW WHETHER THEY GAVE THAT TO

11    SOMEBODY A -- YOU DON'T KNOW WHETHER IT IS ONE PHONE, WHETHER

12    EACH DOT IS ONE PHONE OR EACH DOT IS A THOUSAND PHONES.  I

13    COULDN'T FIND IT ANYWHERE.

14            SO, WHEN YOU ARE TALKING ABOUT THIS AMOUNT OF

15    COMMERCE IN A CONSUMER CASE, THOSE KINDS OF OUTLIER LITTLE

16    ANOMALIES, IF YOU WILL, DOES NOT NEGATE THE COMMON QUESTIONS

17    THAT PREDOMINATE.

18            THE COURT:   AND IN TERMS OF THE INDIVIDUAL STATES,

19    YOU REALLY DON'T CARE WHETHER I CERTIFY CALIFORNIA AND KEEP IT

20    AND SEND ALL THE OTHERS BACK?

090309-5.txt

21          MR. SCARPULLA:  NO, I DON'T CARE.  BECAUSE I AM USED
22   TO THAT.  BUT WHAT I AM ASSUME YOUR HONOR WOULD DO, IF YOUR
23   HONOR DID ANYTHING, YOU WOULD CERTIFY AN INJUNCTIVE RELIEF
24   CLASS BECAUSE THAT'S NO DAMAGES.  THEN YOUR HONOR WOULD CERTIFY
25   CALIFORNIA, WHICH WE COULD THEN TRY TO YOUR HONOR.  AND THEN AT

          DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                              20


 1   LEAST FOR LIABILITY, WE WOULD TRY THE OTHER CASES HERE IN
 2   CONJUNCTION WITH THE DIRECTS AND THEN YOU WOULD SEND THOSE
 3   BACK.
 4          THE COURT:  OKAY.  DID YOU WANT TO RESPOND?
 5          MR. RYAN:  CAN I ADDRESS THOSE POINTS?
 6          THE ELEMENT OF THE INJURY IS IN EVERY CLAIM FOR
 7   RELIEF I KNOW OF IN EVERY SINGLE STATE AND IT'S A REQUIREMENT
 8   FOR YOUR HONOR'S JURISDICTION, THAT THE PLAINTIFFS SHOW INJURY.
 9   INJURY IN THIS KIND OF CASE IS IMPACT.  SO --
10          THE COURT:  THEY ARE SAYING IN ORDER TO SHOW THE
11   CONSPIRACY ELEMENT, THAT THAT INCLUDES AN INJURY COMPONENT
12   WHICH SAYS THEY HAVE TO CONSPIRE TO FIX PRICES TO -- IN A WAY
13   THAT EFFECTS THE MARKET.  SO THAT HAS TO BE SHOWN IN SORT OF IN
14   THE FIRST ELEMENT.  AND IF THEY ARE ONLY SEEKING AN INJUNCTION,
15   THAT'S ALL THEY HAVE TO SHOW.
16          MR. RYAN:  I UNDERSTAND THAT'S WHAT HE IS SAYING,
17   BUT THE ELEMENT IS INJURY, AND IT IS A SEPARATE ELEMENT.  IT IS
18   NOT SUBSUMED IN THE CONSPIRACY ELEMENT.  AND EACH ONE OF THESE
19   STATES, THEY DIDN'T PUT THE LAW OF THESE VARIOUS STATES --
20          THE COURT:  LET'S START FIRST BY TALKING ABOUT THE
21   EQUITABLE, THE NATIONWIDE EQUITABLE CLASS.
22          MR. RYAN:  ABSOLUTELY, YOUR HONOR.
23          INJURY IS REQUIRED FOR YOUR HONOR TO HAVE
                        Page 18

090309-5.txt
24   JURISDICTION TO ENTER AN INJUNCTION.

25          THE COURT:  TO WHAT INJUNCTION?

        DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                        21


1          MR. RYAN:  TO HAVE JURISDICTION TO ENTER AN

2    INJUNCTION.

3          THE COURT:  TO ENTER AN.  OKAY.

4          MR. RYAN:  AND HERE, THE CLASS PERIOD ENDED IN 2006.

5    THERE IS NO PROOF THAT THERE ARE PEOPLE BEING INJURED TODAY BY

6    A CONSPIRACY.

7          IN FACT, DR. NOLAN, THE DIRECT CASE, SAID WHEN THE

8    CRIMINAL INVESTIGATION BEGAN IN DRAM, THE SRAM CONSPIRACY, IF

9    IT EXISTED, PRESUMABLY STOPPED.  SO WHAT IS THERE TO ENJOIN?

10   WHAT GIVES YOUR HONOR JURISDICTION?  NOTHING.  THERE IS NO

11   JURISDICTION TO ENTER AN INJUNCTION IN THIS CASE.  THAT'S THE

12   FIRST POINT.

13          THE COURT:  SO I SHOULD JUST DISMISS IT?

14          MR. RYAN:  YOU SHOULD GET RID OF IT.  YOU DON'T HAVE

15   JURISDICTION.

16          THE COURT:  WE ARE NOT TALKING ABOUT CLASS

17   CERTIFICATION, YOU'RE MOVING TO DISMISS IT.  I SHOULD JUST

18   DISMISS IT OUTRIGHT RIGHT NOW?

19          MR. RYAN:  ABSOLUTELY.  YOUR HONOR DOESN'T HAVE

20   JURISDICTION.

21          THE COURT:  DID YOU MAKE A MOTION TO THAT EFFECT?

22          MR. RYAN:  SUA SPONTE BUT WE'RE GETTING TO THE ISSUE

23   RIGHT NOW OF CLASS CERTIFICATION.  I WOULD BE HAPPY TO HAVE

24   YOUR HONOR GET --

25          THE COURT:  I JUST WONDER, IF IT IS SO EASY, WHY

        DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                Page 19

090309-5.txt

22

1    SOMEONE DIDN'T MAKE THAT MOTION A LONG TIME AGO.

2              MR. RYAN:  WELL, IT IS THAT EASY AND WE HAVE MADE

3    THE POINTS, AND CERTIFICATION CANNOT BE GRANTED WHEN THERE IS

4    NO SHOWING OF CURRENT RISK OF INJURY.

5              THE PLAINTIFFS IN AN INJUNCTIVE CASE HAVE TO SHOW

6    THAT THEY ARE IN DANGER OF BEING INJURED.  WHEN THE CLASS

7    PERIOD IS OVER IN 2006, HOW CAN THEY SHOW THAT?  THEY CAN'T.

8              THE COURT:  IF YOU ARE STILL DOING IT, I SUPPOSE.

9              MR. RYAN:  WELL, DR. NOLAN SAID IT ENDED WHEN THE

10   CRIMINAL INVESTIGATION BEGAN BECAUSE APPARENTLY EVERYBODY, EVEN

11   IF THERE WAS A CONSPIRACY, PEOPLE WERE AFRAID TO CONSPIRE.

12             SO THEY CAN'T HAVE IT BOTH WAYS.  AND IF THEY REALLY

13   THOUGHT THAT THERE WAS AN ONGOING CONSPIRACY RIGHT NOW, WHY

14   DIDN'T THEY HAVE THE CLASS PERIOD BE LONGER?  BECAUSE THEY

15   DON'T BELIEVE THAT IT IS ONGOING RIGHT NOW.  THEY BELIEVE IT

16   ENDED IN 2006.  THAT'S WHY THEY PLED THAT.

17             SO, IF I CAN MOVE ON TO A COUPLE OF OTHER OF

18   MR. SCARPULLA'S POINT.

19             THE COURT:  OKAY.

20             MR. RYAN:  MR. SCARPULLA SAYS THAT WE'RE JUST

21   TALKING ABOUT OUTLIERS HERE, AND REALLY YOU SHOULD JUST DO

22   ROUGH JUSTICE AND IGNORE THE PROBLEMS OF ASCERTAINABILITY AND

23   PASS THROUGH.  WE ARE NOT TALKING ABOUT OUTLIERS.  WE ARE

24   TALKING ABOUT -- HE SAID -- HE COULDN'T REMEMBER THE NAME OF

25   KYOCERA, K-Y-O-S-E-R-A.  DURING THE CLASS PERIOD --

     DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

23

1              THE COURT:  C-E-R.
                         Page 20

O90309-5.txt

2          MR. RYAN:  C-E-R, EXCUSE ME.  THANK YOU.

3          KYOCERA SOLD 6O TO 8O MILLION DEVICES DURING THE

4     CLASS PERIOD THAT MEET DR. HARRIS' DEFINITION OF SMART PHONE.

5          FUTURE ELECTRONICS, WHICH A DISTRIBUTOR OF SRAM,

6     DID, DURING THE CLASS PERIOD, $93 MILLION WORTH OF BUSINESS

7     SELLING SRAM.  AND WE HAVE CHART AFTER CHART SHOWING REPEATED

8     SALES WHERE NO PASS THROUGH COULD HAPPEN; WHERE YOU'VE GOT

9     PRICES GOING LIKE THIS, (INDICATING), AND YOU'VE GOT COSTS

10    GOING LIKE THIS, (INDICATING), PASS THROUGH IMPOSSIBLE FOR

11    TRANSACTION AFTER TRANSACTION AFTER TRANSACTION.  $93 MILLION

12    IN SALES IS NOT AN OUTLIER.  WE PROVIDED NUMEROUS EXAMPLES

13    WHERE PASS THROUGH WAS IMPOSSIBLE FOR MANY, MANY SALES.  WE ARE

14    TALKING ABOUT MILLIONS AND MILLIONS OF DEVICES SOLD WHERE PASS

15    THROUGH WAS IMPOSSIBLE, YOUR HONOR.  THAT -- THOSE ARE NOT

16    OUTLIER ISSUES.

17          AND THE IDEA THAT THEY CAN ALL OF A SUDDEN SAY, WHAT

18    WE SAID IN OUR COMPLAINT ABOUT HOW WE ARE GOING TO IDENTIFY

19    THESE CLASS MEMBERS IS WE WILL JUST INSPECT THE PRODUCTS AND

20    SEE IF THEY HAVE DEFENDANTS' SRAM IN IT.  THAT'S WHAT THEY SAID

21    THEY ARE GOING TO DO IN THEIR THIRD AMENDED COMPLAINT.

22          WE KNOW THEY CAN'T DO THAT.  WE KNOW THEY CAN'T DO

23    THAT BECAUSE THEIR OWN OBJECTIONS SAID WE WON'T LET YOU SEE OUR

24    PRODUCTS.  THESE ARE THE CLASS REPRESENTATIVES.  WE WON'T LET

25    YOU SEE OUR PRODUCTS TO SEE IF THERE ARE DEFENDANTS' SRAM IN

      DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (51O) 451-293O
                                                              24

1     THEM, BECAUSE IF YOU LOOK, YOU WILL EITHER DESTROY THE PRODUCE

2     OR YOU'RE GOING TO VOID ITS WARRANTY.  OH, AND BY THE WAY,

3     WE'VE LOST A BUNCH OF THEM.  THEY CAN'T EVEN DO IT WITH THE

4     CLASS REPRESENTATIVES.

                         Page 21

090309-5.txt

5            AND IN THEIR COMPLAINT THEY SHOW US PICTURES OF WHAT

6    THEY SAY IS SRAM.  WELL, TWO OF THESE THINGS THEY PICTURED ARE

7    DRAM.  OKAY?

8            SO, THIS IS NOT EASY AND, IN FACT, THE EVIDENCE IS

9    THAT A LOT OF THESE SRAM CHIPS, EVEN IF THEY ARE SRAM, HAVE NO

10   IDENTIFYING MARKINGS ON THEM TO SAY WHO THEY ARE.  AS YOUR

11   HONOR CORRECTLY POINTED OUT, 3O TO 4O PERCENT OF THE MARKET ARE

12   NONDEFENDANTS.  THAT IS A LOT OF PRODUCTS.  THAT IS A LOT OF

13   SUBPRODUCTS.

14           NOW MR. SCARPULLA SAID THIS HAS BEEN GOING ON FOR

15   YEARS AND YEARS AND I HAVE BEEN IN THE TRENCHES.  YES, HE HAS.

16   HE'S A FINE LAWYER.  HE HAS BEEN IN THE TRENCHES.  IT'S

17   TELLING, MR. SCARPULLA, WHO KNOWS THIS LAW BACKWARDS AND

18   FORWARDS IN THESE TRENCH CASES, HASN'T CITED A SINGLE CASE TO

19   YOUR HONOR THAT IS FACTUALLY AND LEGALLY SIMILAR TO THIS ONE.

20   IF THEY ARE OUT THERE, THEY ARE NOT IN THEIR BRIEFS.  WE

21   HAVEN'T SEEN THEM.

22           THIS IS A UNIQUE SITUATION, YOUR HONOR, PARTICULARLY

23   GIVEN THE TYPE OF PRODUCT AT ISSUE.  ON THE CONTRARY,

24   DEFENDANTS HAVE CITED SEVERAL CASES TO YOUR HONOR THAT ARE VERY

25   SIMILAR TO THIS ONE, FACTUALLY AND LEGALLY.

     DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                                   25

1            LET'S LOOK AT INFINEON.  IN INFINEON, WE ARE TALKING

2    ABOUT DRAM.  WHAT COULD BE MORE SIMILAR TO SRAM THAN DRAM?

3            JUDGE HAMILTON RAISED NUMEROUS CONCERNS THAT APPLY

4    EQUALLY HERE.  INDEED, THOSE SAME CONCERNS APPLY WITH GREATER

5    FORCE WITH SRAM.

6            LET ME GIVE YOU AN EXAMPLE.  DRAM IS LESS DE MINIMIS

7    AS FAR THE OVERALL SUBPRODUCTS THAN SRAM.  DRAM, FOR EXAMPLE,

O90309-5.txt

8    MAY RUN $50, SRAM MAY BE A TENTH OF THAT PRICE.   AND AS WE
9    LEARN --
10                THE COURT:   SHE DIDN'T CERTIFY THE IP'S?
11                MR. RYAN:   SHE DID NOT.   SHE CERTIFIED THE DIRECTS.
12                THE COURT:   AND THEN THE WHOLE THING HAS SETTLED OR
13   IS IT STILL GOING ON?
14                MR. RYAN:   THE INDIRECTS?
15                THE COURT:   EITHER ONE.
16                MR. GRIFFIN:   IT'S STILL PENDING, YOUR HONOR.
17                THE COURT:   THE DIRECTS AND INDIRECTS?
18                MR. GRIFFIN:   THE DIRECTS HAVE SETTLED.   THE
19   INDIRECTS ARE UP ON THE NINTH CIRCUIT.
20                THE COURT:   THE INDIRECTS.
21                MR. GRIFFIN:   THE INDIRECTS.
22                THE COURT:   FOR APPEALING THE FAILURE TO CERTIFY THE
23   CLASS?
24                MR. SCARPULLA:   NO.
25                THE COURT:   WHAT'S GOING ON?

         DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                                    26


1                I AM WONDERING WHAT HAPPENS TO YOU IF YOU DON'T
2    CERTIFY THE CLASS?
3                MR. SCARPULLA:   WE NEVER HAD A HEARING ON CLASS
4    CERTIFICATION IN DRAM YET.   THERE WAS A PORTION OF THE CASE THE
5    JUDGE RULED ON IN TERMS OF A DIFFERENT ISSUE, WHICH SHE THEN
6    CERTIFIED TO THE NINTH CIRCUIT, AND THEY ACCEPTED IT, AND SO WE
7    ARE UP THERE BRIEFING IT, AND DURING THAT PERIOD JUDGE HAMILTON
8    HAS STAYED THE REST OF THE CASE.
9                THE COURT:   I SEE.
10                MR. GRIFFIN:   I'M SORRY, YOUR HONOR.   IT'S AT THE
                              Page 23

O90309-5.txt

11      NINTH CIRCUIT, BUT WE HADN'T GOTTEN TO THE INDIRECTS' CASE.

12              MR. SAVERI:  YOUR HONOR, IF I MAY FOR A MINUTE.  I'M

13      GUIDO SAVERI AND REPRESENTED DRAM.  I WAS LEAD COUNSEL.  THE

14      DIRECT CASE IS OVER AND WE ARE IN THE PROCESS OF DISTRIBUTING

15      THE MONEY.  IT'S OVER.

16              MR. RYAN:  YOUR HONOR, I WOULD LIKE TO GO TO NOW TO

17      JUDGE ALSUP DECISION IS GPU, GRAPHIC PROCESSING UNITS.  IT'S

18      ANOTHER COMPONENT PART.  IT IS ALSO A MORE EXPENSIVE COMPONENT

19      PART.  AND WHEN YOU ARE LOOKING AT AN INDIRECT PURCHASER

20      CASE --

21              THE COURT:  WAS THAT AN MDL?

22              MR. RYAN:  I BELIEVE IT WAS.  YES, I BELIEVE IT WAS.

23              WHEN YOU ARE LOOKING AT A COMPONENT CASE LIKE THIS,

24      AND THIS IS WHY I SAY THIS ISN'T LIKE THESE OTHER CASES, WHEN

25      YOU ARE LOOKING AT A COMPONENT CASE, WHAT'S IMPORTANT AT THE

        DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

                                                                    27

1       INDIRECT LEVEL IS TO LOOK AT THE MYRIAD OF POTENTIAL

2       SUBPRODUCTS THAT THE COMPONENT CAN GO INTO BECAUSE EACH NEW

3       SUBPRODUCT RESULTS IN VARIOUS NEW PATTERNS OF COMPLEX

4       DISTRIBUTION CHANNELS.

5               IN THIS CASE, DR. HARRIS IDENTIFIED 14 SUBPRODUCTS

6       THAT SRAM CAN GO INTO.  UNLIKE -- BUT IN GPU, THERE WERE ONLY,

7       I BELIEVE FIVE SUBPRODUCTS THAT GPU'S GO INTO.  SO HERE, AS IN

8       GPU, HE SAID WE HAVE GOT THESE DIVERGE AND DISTRIBUTION

9       CHANNELS, IT MAKES IT TOO COMPLEX TO FIGURE OUT IMPACT.  WE ARE

10      GOING TO HAVE TO GO WHOLESALE OR RETAILER BY RETAILER TO FIGURE

11      OUT IF PLAINTIFFS HAVE BEEN INJURED BECAUSE THERE IS ALL THIS

12      COMPLEX ACTIVITY GOING ON.  THERE IS NO WAY TO MODEL THIS.  IT

13      IS IMPOSSIBLE TO MODEL.

                            Page 24

090309-5.txt

14          BUT WE HAVE MORE THAN DOUBLE THE SUBPRODUCTS IN THIS

15     KIND OF CASE.  WE ARE TALKING ABOUT ROUTERS, MAIN FRAMES,

16     SWITCHES, COMPUTERS, SMART PHONES.  WE HAVE GOT INDIRECT

17     PURCHASERS LIKE CISCO AND WE'VE GOT MOM AND POP ELECTRICAL

18     STORES.  IT IS -- THAT'S ANOTHER PROBLEM.  WE HAVE NO MAJOR

19     LARGE ENTERPRISE CLASS REPRESENTATIVES.  AND JUDGE ALSUP SAID,

20     THAT'S A PROBLEM.  HOW CAN YOU HAVE SMALL LITTLE COMPANIES OR

21     INDIVIDUALS REPRESENTING THE INTERESTS OF THE GOOGLES, THE

22     CISCOS OF THE WORLD BECAUSE THEY ARE ALSO INDIRECT PURCHASERS.

23     ALL THOSE SERVER FARMS AT GOOGLE'S HEADQUARTERS, THEIR SERVER

24     FARM, THEY ARE FILLED WITH SRAM.  THEY ARE FILLED WITH SRAM.

25     THEY ARE AN INDIRECT PURCHASER.

       DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                              28

 1          AND YOU'VE GOT ALL OF THESE INDICATIONS -- AND IF

 2     YOU LOOK AT EXHIBIT 13 WE PROVIDED, THAT IS A SIMPLIFIED

 3     DISTRIBUTION CHART.  WE PUT IT IN OUR OMNIBUS REPLY BRIEF.

 4          IT SHOWS HOW TRULY COMPLEX THIS IS.  AND LET ME GIVE

 5     YOU ONE EXAMPLE, YOUR HONOR.  FUTURE ELECTRONICS THAT WE TALKED

 6     ABOUT.  IT IS A DISTRIBUTOR.  OKAY?  IT IS A DISTRIBUTOR THAT

 7     HAS THOUSANDS OF CUSTOMERS.  JUST ONE DISTRIBUTOR HAS THOUSANDS

 8     OF CUSTOMERS.  $92 MILLION IN SALES.

 9          AND IF WE TAKE A DOLLAR, AND WE ASSUME THAT THAT'S

10     AN OVERCHARGE, WE ASSUME A DOLLAR IS AN OVERCHARGE.  OKAY?  AND

11     I AM FUTURE.  PRETEND I AM FUTURE AND I HAVE THIS OVERCHARGE

12     THAT I RECEIVED WHEN I PURCHASED A PRODUCT FROM DEFENDANT.

13          WHAT AM I GOING TO DO WITH IT?  AM I GOING TO ABSORB

14     IT, PUT IT IN MY POCKET, OR AM I GOING TO PASS IT THROUGH?

15     OKAY?

16          WELL, IF I AM GOING TO PASS IT THROUGH, I WILL HAND
                              Page 25

O90309-5.txt

17   IT TO MS. GUILLEN HERE, AND SHE'S A RETAILER.  DR. HARRIS TALKS

18   ABOUT FUTURE SELLING TO A RETAILER.  THAT'S WHY I AM USING THIS

19   EXAMPLE.  MS. GUILLEN GIVES IT TO MR. GRIFFIN, HER CUSTOMER, A

20   CONSUMER.  THAT'S PASS THROUGH.

21            THE COURT:  I GET IT.

22            (LAUGHTER.)

23            MR. RYAN:  ALL RIGHT.  BUT IF I AM FUTURE AND I

24   DECIDE TO KEEP THIS DOLLAR, I PUT IT IN MY POCKET, I ABSORB

25   THAT OVERCHARGE, AND I REACH OUT TO MS. CAHILL AND SELL HER A

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

29

1   PRODUCT.  MS. CAHILL HAS NOT RECEIVED AN OVERCHARGE.  SHE'S GOT

2   NO OVERCHARGE TO PASS THROUGH TO YOUR HONOR IF YOU'RE HER

3   CONSUMER CUSTOMER.

4            WHAT PLAINTIFFS ARE TELLING YOU, YOUR HONOR, IS THAT

5   ANOTHER DOLLAR HAS JUST REAPPEARED AT YOUR DESK.  THERE IS A

6   DOLLAR HERE AND THERE IS A DOLLAR THERE.  THAT'S THEIR THEORY.

7   THAT'S THEIR THEORY.  THAT'S DOUBLE COUNTING.  THAT'S DOUBLE

8   DAMAGES.  THAT DOLLAR IS STILL HERE BECAUSE FUTURE, THE CHART

9   SAY, ABSORBED A LOT OF THOSE PASS THROUGHS, IT'S STILL THE

10  FUTURE, IT CAN'T BE AT YOUR HONOR'S DESK.  THAT'S WHY THEIR

11  THEORY IS NOT REALISTIC OR SUFFICIENTLY POSSIBLE ON PASS

12  THROUGH.

13            THE COURT:  SO WHAT IS YOUR VIEW IF I WERE TO

14  CERTIFY A NATIONWIDE CLASS FOR EQUITABLE RELIEF AND A

15  CALIFORNIA CLASS FOR THE CALIFORNIA CAUSES OF ACTION AND

16  LEAVING ME 26 OTHER STATES WORTH OF CASES, WHAT IS YOUR VIEW

17  ABOUT WHAT I SHOULD DO WITH THOSE?  CERTIFY 26 MORE CLASSES OR

18  SEND THEM ALL BACK AFTER DOING ALL OF THE PRETRIAL WORK?

19            MR. RYAN:  EXCUSE ME, YOUR HONOR, THAT'S OVER MY PAY

O90309-5.txt

20    GRADE.

21              (PAUSE IN THE PROCEEDINGS.)

22              MR. RYAN:  OUR POSITION IS YOU SHOULDN'T CERTIFY ANY

23    CLASS.

24              THE COURT:  OKAY.

25              SO YOU WILL LEAVE IT TO ME ABOUT WHAT TO DO WITH THE

      DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                                    30


1     OTHERS?

2               MR. RYAN:  (NODS HEAD.)

3               THE COURT:  OKAY.

4               DID YOU HAVE ANY RESPONSE YOU WANT TO GIVE TO

5     ANYTHING HE SAID?

6               ACTUALLY, I AM SORRY, LET ME ASK YOU ONE OTHER

7     QUESTION.  WHEN I ASKED YOU FOR A CASE THAT TOLD ME I NEEDED TO

8     FIND INDIVIDUALIZED IMPACTS, YOU GAVE ME ILLINOIS BRICK.  AND

9     THAT CASE SAID THAT YOU CAN'T -- THAT INDIRECT PURCHASERS CAN'T

10    RECOVER DAMAGES.  DOES THAT CASE SAY THAT FOR INJUNCTIVE RELIEF

11    THAT INDIVIDUALIZED IMPACT MUST BE SHOWN?

12              MR. RYAN:  I CAN'T RECALL.

13              WHAT I CAN SAY IS WHAT ILLINOIS BRICK DOES DEFINE

14    WHAT INJURY IS IN THESE CASES, AND WHAT IT SAYS IS --

15              THE COURT:  RIGHT.  BUT IT SAYS THAT THEY CAN'T GET

16    DAMAGES, BUT THEY ARE NOT SEEKING DAMAGES.

17              MR. RYAN:  THAT'S RIGHT.  WHAT THEY SAY PASS THROUGH

18    IS, WHAT INJURY IS, IS THE DEMONSTRATION OF HOW MUCH OF THE

19    OVERCHARGE WAS PASSED ON BY THE FIRST PURCHASER MUST BE

20    REPEATED AT EACH POINT AT WHICH THE PRICE FIX GOODS CHANGED

21    HANDS BEFORE THEY REACHED THE PLAINTIFF.

22              THE COURT:  OKAY.
                        Page 27

090309-5.txt

23    MR. SCARPULLA:  YOUR HONOR, MY RECOLLECTION -- ON

24 THAT ISSUE, MY RECOLLECTION IS THERE IS A SUBSEQUENT OPINION

25 FROM A FEDERAL DISTRICT COURT.  I BELIEVE EITHER CIRCUIT COURT

    DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

                 31

1 OF APPEALS OR MAYBE EVEN THE SUPREME COURT WHICH PERMITTED

2 INDIRECT PURCHASERS TO BRING INJUNCTIVE RELIEF CASES IN

3 ANTITRUST CASES.  AND I THINK THAT THAT ISSUE WAS IN THERE.

4 AND I AM SORRY I'VE FORGOTTEN THE NAME OF IT.  SO IF I MAY,

5 YOUR HONOR, WE WILL GET IT FOR YOU --

6    THE COURT:  IT MUST ME BE IN THE BRIEFS SOMEWHERE.

7    MR. SCARPULLA:  IT MAY BE SOMEWHERE IN THERE, YOUR

8 HONOR.  I'M SORRY, THERE WERE SO MANY PIECES OF PAPER THAT I

9 CAN'T REMEMBER THAT RIGHT NOW.

10    IN ANY EVENT, I KNOW THERE IS A SUBSEQUENT CASE TO

11 ILLINOIS BRICK ON THAT VERY ISSUE.

12    THE COURT:  OKAY.

13    MR. SCARPULLA:  IF I CAN SAY ONE THING ABOUT THAT

14 DOLLAR PASSING AROUND, OKAY?  AS LONG AS THE COST OF GOODS GOES

15 DOWN THROUGH THE CHAIN, THERE MAY BE ABSORPTION BY OTHERS IN

16 THE CHAIN, BUT THAT IS A DIFFERENT CLAIM.  THOSE ARE LOST

17 PROFIT CLAIMS.  THAT'S NOT A CLAIM I PAID MORE FOR THIS PRODUCT

18 BECAUSE YOU, DEFENDANTS, FIXED THE PRICE.  IT IS A DIFFERENT

19 ANALYSIS.  IT'S A DIFFERENT CLAIM.  THAT'S THE DISTINCTION

20 HERE.

21    LOST PROFITS FOR THE INTERMEDIARIES, BECAUSE THERE

22 MAY BE SOME ABSORPTION, ALTHOUGH THE GRAFTS DON'T SHOW IT, OUR

23 ECONOMIST DOESN'T SHOW ANY ABSORPTION DOWN THROUGH THE CHAIN IN

24 GROSS NUMBERS.  NOW, THAT DOESN'T MEAN THAT ON THE EDGES THERE

25 ISN'T, BUT I AM JUST SUGGESTING THAT.

090309-5.txt

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

32

1           IF YOUR HONOR PLEASE, I JUST WANT -- EXHIBIT 3 TO

2      THE -- I THINK IT IS HARRIS' OR DWYER'S DECLARATION, IS A

3      COMPELLING PICTURE OF FUTURE ELECTRONICS.  THIS IS THE ONE THEY

4      ARE TELLING YOU ABOUT.

5           WHAT WE DID IS WE TOOK THEIR ECONOMISTS' DATA, WHICH

6      IS ON THE LEFT SIDE, AND WE DID IT AS A BAR GRAPH -- AS A

7      GRAPH.  YOU CAN TAKE A LOOK AT IT.

8           THE BLUE IS WHAT THEY SOLD IT FOR AND THE RED IS

9      WHAT THEY PAID FOR IT.  IT IS ALL ABOVE THE COST.  I MEAN, THIS

10     IS THE WHOLE CASE RIGHT THERE (INDICATING).  THAT'S IT RIGHT

11     THERE.  AND YOU CAN TELL FROM IT, FROM JUST THIS ONE -- FOR

12     JUST THIS ONE, THEY SOLD EVERYTHING MORE THAN WHAT THEY PAID

13     FOR.  SO YOU HAVE IMPACT.  JUDGE, SUPPOSE --

14          MR. RYAN:  YOUR HONOR.

15          MR. SCARPULLA:  SUPPOSE SOMEBODY IS FIXING PRICES ON

16     THESE CUPS.  AND YOU, YOUR HONOR, BUYS IT, AND YOU PAY THAT

17     FIXED PRICE.  WHAT ELSE DO I HAVE TO SHOW THAT YOU HAVE

18     SUFFERED AN ANTITRUST INJURY?  FORGET ABOUT THE DAMAGE.  WHAT

19     ELSE DO I HAVE TO SHOW THAT YOU SUFFERED ANTITRUST INJURY?

20          NOTHING.  ALL I HAVE TO SHOW IS THE PRICE OF THIS

21     CUP WAS FIXED AND THAT YOU BOUGHT IT.

22          THE COURT:  GETTING BACK TO THE INDIVIDUALIZED -- I

23     GUESS NOT DAMAGES, YOU'D HAVE TO CALL IT RESTITUTION IN YOUR

24     EQUITABLE CLAIM, INDIVIDUALIZED PROOF OF RESTITUTION, HOW WOULD

25     WE GO ABOUT DOING THAT?  WHAT, EVERYBODY COMES IN AND EACH

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

33

090309-5.txt

1    PLAINTIFF HAS TO PROVE THEIR DAMAGES SO THEY HAVE TO COME IN --
2              MR. SCARPULLA:   NO, NO, NO.
3              THE COURT:   -- OPEN UP THEIR CELL PHONE?
4              MR. SCARPULLA:   THE PLAINTIFFS DON'T HAVE TO PROVE
5    ANYTHING.   THE PLAINTIFFS DON'T HAVE TO PROVE INDIVIDUAL
6    DAMAGES.
7              THE COURT:   RESTITUTION, ELIGIBILITY FOR
8    RESTITUTION.
9              MR. SCARPULLA:   THAT'S CLAIMS PROCEDURE.   THAT'S
10   DIFFERENT.   ALL WE HAVE TO DO IS GET AN ACCOUNTANT.   FORGET ALL
11   THE EXPERTS.   ALL YOU NEED IS AN ACCOUNTANT TO GO TO EACH
12   DEFENDANT'S BOOKS, FIND OUT HOW MUCH PROFIT THEY MADE ON SRAM
13   SALES IN THE UNITED STATES, BILLED TO, SHIPPED TO U.S., THAT'S
14   IT.   THEY HAVE TO GIVE IT BACK IF THEY ARE GUILTY OF FIXING
15   PRICES.   IF THEY ARE NOT, I LOSE.
16             IF THE JURY SAYS, MR. SCARPULLA, PLAINTIFFS, YOU
17   LOSE, THEN THAT'S THE END OF IT.   ONCE THEY FIND THAT THERE
18   IS -- OR YOUR HONOR, BECAUSE IT'S TRIED TO YOUR HONOR, ONCE
19   YOUR HONOR FINDS THAT THERE'S A HORIZONTAL CONSPIRACY TO RAISE
20   PRICES AND THEN THE DEFENDANTS MUST MAKE RESTITUTION OF THAT
21   AMOUNT, OR IN CALIFORNIA, THEY HAVE TO DISGORGE THE ENTIRE SALE
22   PRICE, SO ALL YOU HAVE TO DO IS SEND AN ACCOUNTANT OVER THERE
23   AND FIND OUT HOW MUCH.
24             NOW, IF YOU ARE GOING TO GIVE IT BACK TO THE
25   PLAINTIFFS, THEN YOU HAVE TO HAVE A CLAIMS PROCEDURE.   AND

     DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                              34


1    THAT'S DIFFERENT.   THAT HAS NOTHING TO DO WITH YOUR HONOR.
2    THAT'S NOTHING TO DO WITH THE DEFENDANTS.   IT HAS TO DO WITH A

090309-5.txt

3   SPECIAL MASTER, AND PEOPLE COME IN AND THEY MAKE CLAIMS.

4   THAT'S THE WAY YOU DO IT IN ALL THESE CASES, EVEN IF YOU HAVE A

5   DAMAGE VERDICT.  YOU HAVE TO HAVE SOME CLAIMS PROCEDURE AT THE

6   END OF THESE.  IT'S NOT JUST LIKE --

7           THE COURT:  IF THERE WERE A JURY RIGHT AND IT WAS

8   DAMAGES, THEY WOULD HAVE A SEVENTH AMENDMENT RIGHT TO HAVE

9   THEIR DAMAGE CLAIMS HEARD BY A JURY.  BUT GIVEN THAT IT WAS AN

10  EQUITABLE CASE, I SUPPOSE YOU CAN USE A SPECIAL MASTER.

11          MR. SCARPULLA:  BUT, YOUR HONOR, THEY WOULDN'T FIND

12  THAT A SUFFERED $10 AND B SUFFERED $12 AND CLASS MEMBER 165,OOO

13  SUFFERED A BUCK AND A HALF.  THEY WOULD SAY THE PRICE OF SRAM

14  WAS RAISED BY 1O PERCENT.  OKAY?  NOW YOU KNOW.  AND YOU CAN

15  FIGURE OUT THEY SOLD A MILLION DOLLARS WORTH OF SRAM DURING THE

16  PERIOD, 1O PERCENT OVERCHARGE, HUNDRED THOUSAND DOLLARS GOES

17  BACK.

18          WHO DOES IT GO TO?  IT JUST DOESN'T SIT THERE IN A

19  BANK ACCOUNT, YOU HAVE TO GIVE IT TO SOMEBODY.

20          THE COURT:  BESIDES THE LAWYERS, YOU MEAN?

21          MR. SCARPULLA:  YES, THAT'S TRUE, BUT YOU HAVE TO

22  HAVE A CLAIMS PROCEDURE.  THAT'S WHERE -- SEE --

23          THE COURT:  WHAT DO THEY PROVE HOW MUCH THEY SPENT

24  ON THEIR CELL PHONE, OR SOMETHING LIKE THAT?

25          MR. SCARPULLA:  YOU HAVE TO COME IN AND SHOW -- YOU

        DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-293O
                                                                    35

1   HAVE TO COME IN AND PROVE IT, AND THEN YOU GET PAID.  IF YOU

2   DON'T --

3           THE COURT:  YOU DO HAVE TO COME IN AND SHOW YOUR

4   CELL PHONE.

5           MR. SCARPULLA:  BUT YOU DON'T DO IT HERE.

090309-5.txt
```
 6                    THE COURT:   OKAY.

 7                    MR. SCARPULLA:   BECAUSE WE KNOW, YOUR HONOR, THAT

 8     MOTOROLA -- FIRST OF ALL, CELL PHONES AREN'T IN OUR CASE, BUT

 9     PUT THAT ASIDE.  PC'S, YOU COME IN WITH A PC, AND WE KNOW HOW

10     MUCH SRAM IS IN A PC.  AND BASICALLY IT'S SAMSUNG AND CYPRESS.

11                    THE COURT:   WHY DON'T WE TURN TO THE CASE MANAGEMENT

12     CONFERENCE.

13                    I WILL TAKE IT UNDER SUBMISSION.

14                    MR. SCARPULLA:   THANK YOU, YOUR HONOR.

15                    MR. RYAN:   THERE WAS A SPECIFIC EVIDENTIARY POINT

16     MADE THAT WITH YOUR PERMISSION, I WOULD LIKE TO RESPOND TO.

17                    THE COURT:   OKAY.

18                    MR. RYAN:   HE SAID EXHIBIT 3 REFERS TO FUTURE DATA.

19                    THE REAL FUTURE DATA, EXHIBIT 27, DEFENDANTS, LOOKS

20     LIKE THIS (INDICATING).  THAT'S -- THE BLUE LINE IS PRICE, THE

21     RED LINE IS COST.  YOU WILL SEE COST ALL OVER THE PLACE, PRICE

22     STAYED CONSTANT.  THAT'S REAL ACTUAL DATA.  THOSE ARE REAL

23     ACTUAL PURCHASES AND SALES.

24                    WHAT THEY DID TO GET THOSE NUMBERS WAS THEY USED

25     SOME KIND OF BIZARRE AVERAGING FORMULA.  THEY AVERAGED DATA.

       DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                                      36


 1     NOBODY IS GOING TO SAY REAL DATA IS WORSE THAN AVERAGE DATA.

 2     THIS IS THE REAL DATA.  WHAT THEY DID WAS THEY AVERAGED IT TO

 3     GET TO THAT POINT.

 4                    AND THE BOTTOM LINE IN THIS CASE, NO MATTER WHAT

 5     KIND OF CASE IT IS, THEY HAVE TO PROVE IMPACT ON A CLASS-WIDE

 6     BASIS.  THEY HAVEN'T DONE IT AND THEY CAN'T DO IT.

 7                    CLASS CERTIFICATION SHOULD BE DENIED ACROSS THE

 8     BOARD.
```

090309-5.txt

```
 9                    THANK YOU VERY MUCH.

10          MR. SCARPULLA:  CASE MANAGEMENT, YOUR HONOR?

11          THE COURT:  YES, PLEASE.

12          YOU ARE FROM THE COTCHETT FIRM?

13          MR. WILLIAMS:  FROM THE COTCHETT FIRM, YOUR HONOR.

14          THE COURT:  WE HAVE IT SCHEDULED FOR THE DIRECT

15  PURCHASERS.  I GUESS WHAT I WOULD LIKE YOU ALL TO START DEALING

16  WITH IS IF I DO CERTIFY A NATIONWIDE CLASS OF INDIRECT

17  PURCHASERS THAT WE WOULD TRY THE FIRST ELEMENT WITH THE DIRECT

18  PURCHASER CASE.

19          SO, JUST SO THE DEFENDANTS START THINKING ABOUT THAT

20  BECAUSE THAT IS SET FOR -- I KNOW YOU HAVE MOVED IT, IT IS NOW

21  SET FOR JANUARY OF 2011.

22          MR. GRIFFIN:  JANUARY 10, I BELIEVE, YOUR HONOR.  WE

23  SUGGESTED THE 11TH, AND I THINK YOUR HONOR CHANGED IT IN THE

24  ATTACHMENT TO THE 10TH.

25          THE COURT:  JANUARY 10TH OF 2011.


        DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                              37


 1          MR. WILLIAMS:  THAT IS CORRECT.

 2          THE COURT:  WE HAVE A PRETRIAL CONFERENCE OF

 3  NOVEMBER 30TH OF 2010, AND A MOTIONS CUTOFF OF SEPTEMBER 9TH OF

 4  2010.  SO I GUESS TO THE EXTENT THERE WERE MOTIONS IN THE

 5  INDIRECT CASE, IF IT'S CERTIFIED -- EVEN IF IT IS NOT

 6  CERTIFIED, I STILL HAVE TO RULE ON THEM ALL.

 7          MR. GRIFFIN:  THE SCHEDULE, AS I UNDERSTAND IT,

 8  APPLIES TO BOTH DIRECTS AND INDIRECTS.

 9          MR. SCARPULLA:  THAT'S WHAT I THOUGHT, TOO, YOUR

10  HONOR.

11          THE COURT:  I SEE.  I THOUGHT THAT WAS JUST FOR THE
```

090309-5.txt

```
12   DIRECTS.  YOU ALREADY KNEW THAT.  OKAY.
13           BUT EVEN IF I DON'T CERTIFY, THEN I STILL HAVE TO
14   DEAL WITH ALL THE PRETRIAL RULINGS ON ALL 80 CASES OF INDIRECT
15   PURCHASERS WORTH OF PEOPLE, SO I GUESS THAT WILL HAPPEN EITHER
16   WAY.
17           MR. GRIFFIN:  CORRECT, YOUR HONOR.
18           THE COURT:  THERE'S 46 OPT-OUTS, I THINK YOU SAID?
19           MR. WILLIAMS:  IN THE DIRECT PURCHASER CLASS 46
20   CLASS MEMBERS HAVE OPTED OUT.
21           THE COURT:  WE BETTER MAKE SURE THAT WE GET -- WE
22   HAVE TO DO THE OPT-OUT, IF WE ARE GOING TO CERTIFY THE CLASS
23   EVEN FOR THE EQUITABLE RELIEF, WE WOULD NEED TO DO THE OPT-OUT
24   PROCEDURE BEFORE THE TRIAL.  SO WE NEED TO MOVE THAT ALONG.
25           THIS SOMEHOW GOT OFF TRACK IN THE CLASS
```

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

38

```
1    CERTIFICATION, AT LEAST, FROM THE DIRECT PURCHASER BY ABOUT A
2    YEAR, SO WE ARE GOING TO NEED TO CATCH UP IF WE GO THAT ROUTE.
3            BUT ANYWAY, WHAT ARE WE GOING TO DO ABOUT THE
4    OPT-OUTS?  ARE THEY -- DO THEY HAVE TO FILE THEIR OWN LAWSUIT
5    WITHIN THE STATUTE OF LIMITATIONS?  I AM WORRIED ABOUT GOING
6    ALONG WITH THIS CASE AND THEN HAVING TO DEAL WITH CASES OF A
7    BUNCH OF OPT-OUTS THAT I WOULD HAVE TO START OVER WITH.
8            MR. WILLIAMS:  YOUR HONOR, THE OPT-OUTS HAVE
9    EXCLUDED THEMSELVES FROM THE CLASS.  THEY ARE FREE TO MAKE
10   THEIR OWN DECISIONS AS TO WHAT THEY CHOOSE TO DO.
11           THE COURT:  BY WHEN DO THEY HAVE TO FILE A LAWSUIT
12   IF THAT'S WHAT THEY WANT TO DO?
13           MR. WILLIAMS:  UNDER THE AMERICAN PIPE CASE, YOUR
14   HONOR, IF MY INTERPRETATION IS RIGHT, THEIR CLOCK BEGAN TO TICK
```

Page 34

090309-5.txt
15  WHEN THEY OPTED OUT.  I DON'T KNOW THAT THAT IS DEFINITIVE

16  BLACK AND WHITE.  I THINK DIFFERENT CIRCUITS HAVE LOOKED AT IT

17  DIFFERENTLY.  THAT'S HOW I READ THAT DECISION.

18          THE COURT:  HOW LONG OF A STATUTE DO THEY HAVE AND

19  WHEN DID THEY OPT OUT?

20          MR. WILLIAMS:  THERE OPT-OUT DATE WOULD HAVE BEEN

21  BY, I BELIEVE IT IS APRIL.  I AM TRYING TO RECALL THE SPECIFIC

22  DATE.  APRIL --

23          THE COURT:  THAT SOUNDS RIGHT.

24          MR. WILLIAMS:  -- 6TH, 2009.

25          THE COURT:  DOES THE STATUTE START TO RUN AT ALL

    DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                              39


1   BEFORE YOU SUED OR DO THEY GET A BRAND NEW STATUTE STARTING

2   FROM THE OPT-OUT?

3           MR. WILLIAMS:  I DON'T WANT TO SPEAK FOR THE

4   DEFENDANTS, I ANTICIPATE THEY MIGHT ARGUE THAT THE STATUTE WAS

5   RUNNING BEFORE AND THAT THERE WILL BE INDIVIDUALIZED ISSUES AS

6   TO THOSE CLASS MEMBERS, BUT I BELIEVE AS TO THOSE WHO OPTED

7   OUT, IT BEGINS TO COMMENCE AGAIN ON THE DATE THEY OPTED OUT.

8           THE COURT:  HOW LONG IS IT?

9           MR. WILLIAMS:  THE STATUTE FOR THE ANTITRUST CLAIMS?

10  FOUR YEARS.

11          THE COURT:  FOUR MORE YEARS?

12          MR. WILLIAMS:  WELL, DEPENDING UPON THE ARGUMENTS

13  DEFENDANTS MAKE ABOUT FRAUDULENT CONCEALMENT.

14          MR. GRIFFIN:  YES, YOUR HONOR.

15          THE COURT:  I GUESS I WILL BE RETIRED BY THEN, SO IT

16  WON'T MATTER.

17          MR. GRIFFIN:  WE LIKELY WOULD MAKE DIFFERENT STATUTE

                        Page 35

090309-5.txt
18   OF LIMITATIONS ARGUMENT DEPENDING ON THE PARTICULAR PLAINTIFF,

19   BUT SUFFICE IT TO SAY THUS FAR THERE HAVE BEEN NO OPT-OUT SUITS

20   TO OUR KNOWLEDGE.

21          THE COURT:  OKAY.  AND THEN WHAT ARE YOU TRYING TO

22   DO TO SETTLE THE CASE?  I AM SURE WE TALKED ABOUT THIS BEFORE.

23          MR. WILLIAMS:  YOUR HONOR, WE HAVE A COUPLE OF

24   THINGS.  JUDGE WEINSTEIN IS APPOINTED SETTLEMENT MASTER IN THIS

25   CASE AND WE HAVE HAD MEETINGS WITH JUDGE WEINSTEIN.


     DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                              40


1           WE HAVE ENTERED INTO SEVERAL SETTLEMENTS WHICH WE

2    ANTICIPATE BRINGING BEFORE YOUR HONOR FOR PRELIMINARY APPROVAL,

3    AT LEAST FILING A NOTICED MOTION WITHIN THE NEXT 45 DAYS FOR

4    APPROVAL OF THOSE HOPING TO HAVE PRELIMINARY APPROVAL BY THE

5    END OF THIS YEAR, AND COMMENCE THE NOTICE PROGRAM AS TO THOSE

6    SETTLEMENTS WORKING TOWARDS FINAL APPROVAL.

7           WE ARE IN DISCUSSIONS WITH MOST OF THE OTHER

8    DEFENDANTS IN THE ACTION, AND WE ARE HOPEFUL WE CAN BRING MORE

9    SETTLEMENTS TO THE COURT.

10          THE COURT:  WHAT ABOUT THE INDIRECT PURCHASERS?

11          MR. SCARPULLA:  WE ARE THE SAME, YOUR HONOR, EXCEPT

12   THERE ARE, I BELIEVE, FOUR DEFENDANTS LEFT FOR US.  THREE OF

13   THEM HAVE TOLD US THEY HAVE ESSENTIALLY NO INTEREST, AND ONE WE

14   ARE CONTINUING -- WELL, THREE OF THEM TOLD US THEY HAVE NO

15   INTEREST UNTIL THEY HEARD -- THAT WENT THROUGH TODAY.

16          THE COURT:  I DON'T UNDERSTAND.  YOU HAVE FOUR LEFT,

17   WHAT, TO TALK TO, TO SETTLE WITH?

18          MR. SCARPULLA:  FOUR DEFENDANTS LEFT TO SETTLE WITH.

19          THE COURT:  YOU HAVE SETTLED WITH EVERYONE ELSE?

20          MR. SCARPULLA:  I HAVE, YOUR HONOR.

                              Page 36

090309-5.txt
21          THE COURT:   YOU ONLY HAVE FOUR LEFT?

22          MR. SCARPULLA:   YES, YOUR HONOR.

23          THE COURT:   HOW MANY DO YOU HAVE?  I THOUGHT THERE

24   WERE A LOT OF THEM.

25          MR. WILLIAMS:   WE HAD EIGHT IN OUR CASE.  I THINK WE

        DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                                                                    41


 1   HAVE FIVE LEFT, BUT I THINK THAT MIGHT BE A SMALLER NUMBER IN

 2   THE NEAR FUTURE.

 3          THE COURT:   OKAY.  ARE YOU USING JUDGE WEINSTEIN AS

 4   WELL OR ARE YOU DOING IT ON YOUR OWN?

 5          MR. SCARPULLA:   RIGHT NOW I AM DOING IT ON MY OWN,

 6   YOUR HONOR.  WE WENT -- WE HAD ONE MEETING WITH JUDGE WEINSTEIN

 7   AND IT DID NOT -- IT DIDN'T RESULT IN ANY SETTLEMENTS.

 8          SO, I MEAN, I HAVE BEEN AROUND LONG ENOUGH, SO, YOU

 9   KNOW, I KNOW MOST OF THESE PEOPLE ON THE OTHER SIDE FOR ALMOST

10   40 YEARS.  SO I CALLED THEM AND SAID, YOU GUYS WANT TO TALK OR

11   NOT?  IF YOU DO, I'LL WORK WITH YOU.  FOUR OF THEM SAID YES AND

12   WE DID IT.

13          THE COURT:   SO DO YOU THINK WE SHOULD GET A

14   SETTLEMENT MASTER OF SOME SORT FOR THE REST OF THEM OR GO BACK

15   TO JUDGE WEINSTEIN?

16          MR. GRIFFIN:   YOUR HONOR, I THINK IT IS FAIR TO SAY

17   WE HAVE HAD -- A NUMBER OF US HAVE HAD MORE THAN ONE SESSION

18   WITH JUDGE WEINSTEIN.

19          THE COURT:   WITH THE DP'S.

20          MR. GRIFFIN:   AND I THINK THE INDIRECTS, MAYBE NOT

21   MR. SCARPULLA.

22          MR. SCARPULLA:   I THOUGHT WE HAD ONE.  BUT,

23   WHATEVER.  I WILL DO --

                              Page 37

090309-5.txt
24          MR. GRIFFIN:  IT HAS BEEN HELPFUL IN FITS AND

25  STARTS, AND IT MAY BE HELPFUL TO GO BACK AGAIN AFTER THE CLOSE

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

                                                    42


1   OF DISCOVERY, BUT AS THEY HAVE INDICATED, THEY ARE REACHING

2   SOME RESOLUTION ON THEIR OWN.  AND I THINK FOR NOW, I DON'T SEE

3   THE NEED TO SCHEDULE ANOTHER DATE WITH JUDGE WEINSTEIN IN THE

4   NEAR FUTURE, BUT PERHAPS TOWARD THE CLOSE OF DISCOVERY.

5          THE COURT:  CAN I JUST LEAVE YOU ALL TO YOUR OWN

6   DEVICES ON THAT AND TRUST THAT WHEN ANYBODY THINKS IT IS A

7   REASONABLE TIME TO GO BACK TO HIM, THE OTHERS WILL AGREE AND GO

8   BACK TO HIM?  OR COME AND TELL ME IF SOMEBODY WON'T?

9          MR. SCARPULLA:  I THINK THAT MAKES SENSE.

10          MR. WILLIAMS:  I THINK THAT'S A GOOD IDEA.

11          THE COURT:  IS THERE ANYTHING ELSE WE NEED TO DEAL

12  WITH AT THIS POINT?

13          MR. SCARPULLA:  I DO WANT TO SAY ONE THING.  MY

14  RECOLLECTION IS THAT THERE ARE A NUMBER OF NONSETTLING

15  DEFENDANTS WHO HAVE WITNESSES STILL TO BE DEPOSED.  SOME OF

16  THEM ARE IN FOREIGN COUNTRIES.  THAT MAKES IT A LITTLE -- IF

17  YOU DON'T SET SCHEDULES EARLY, ESPECIALLY IF YOU HAVE TO GO USE

18  AN EMBASSY, IT TAKES SIX MONTHS TO GET A ROOM IN AN EMBASSY.

19  AND OUR CUT-OFF, MY RECOLLECTION, IS DECEMBER 10TH OF THIS

20  YEAR.

21          THE COURT:  OF '09?

22          MR. SCARPULLA:  '09.

23          MR. WILLIAMS:  FACT DISCOVERY CUTOFF.

24          MR. SCARPULLA:  CURRENTLY THAT'S DISCOVERY CUTOFF,

25  EVEN THOUGH THE TRIAL IS NOT UNTIL JANUARY OF '11.

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930
                        Page 38

090309-5.txt

1               IF THERE IS THAT KIND OF PROBLEM WITH SCHEDULING

2       DEPOSITIONS, THROUGH NO FAULT OF ANYBODY'S IN THIS COURTROOM,

3       WE MAY HAVE TO RESPECTFULLY ASK YOUR HONOR TO GIVE US A LITTLE

4       BIT MORE TIME TO COMPLETE THAT.

5               THE COURT:   TO COMPLETE THE DISCOVERY?

6               MR. SCARPULLA:   YES.   WE MAY HAVE TO ASK YOU TO MOVE

7       THE DECEMBER '09 DATE.

8               THE COURT:   OKAY.

9               MR. SCARPULLA:   I DON'T WANT TO DO THAT NOW.

10              THE COURT:   ALL RIGHT.

11              MR. SCARPULLA:   I JUST WANTED TO LET YOUR HONOR KNOW

12      THAT SO IF IT CAME UP IN THE FUTURE.

13              THE COURT:   I AM GOING TO NEED A HECK OF LOT OF TIME

14      ON THESE DISPOSITIVE MOTIONS.   SO DON'T MAKE IT SO THAT THE

15      MOTIONS GETS TOO CLOSE TO THE TRIAL BECAUSE I DON'T KNOW HOW I

16      AM GOING TO RULE ON THESE MOTIONS AS IT IS.

17              MR. GRIFFIN:   THE DEFENDANTS, YOUR HONOR, AGREED TO

18      MOVE THE SCHEDULE SEVERAL TIMES, AND THE CASE HAS BEEN PENDING

19      NOW FOR THREE YEARS, SO WE THINK THAT WHATEVER DISCOVERY SHOULD

20      BE TAKEN SHOULD BE GOING ON NOW AND --

21              THE COURT:   OKAY.

22              MR. GRIFFIN:   -- WE DON'T THINK THERE SHOULD BE

23      ANOTHER EXTENSION.

24              MR. SCARPULLA:   THAT'S FINE WITH ME.   THEY CAN BRING

25      EVERYBODY TO SAN FRANCISCO AND I'LL DO IT IN THREE WEEKS.

        DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

1               THE COURT:   YOU JUST NEED TO PURSUE IT AS QUICKLY AS

O90309-5.txt

2     YOU CAN.   AND IF YOU ANY PROBLEM, DON'T YOU HAVE JUDGE SMITH AS

3     DISCOVERY MASTER?

4                  MR. WILLIAMS:   YES.

5                  THE COURT:   GO TO HER AND TELL HER THAT I AM GOING

6     TO NEED -- IT'S HARD TO SCHEDULE A TRIAL OF THIS LENGTH.   WE

7     MOVED IT ONCE, BUT I DON'T KNOW HOW MANY TIMES WE CAN MOVE IT.

8     AND I NEED A LOT OF TIME TO DO ALL THESE DISPOSITIVE MOTIONS.

9                  MR. SCARPULLA:   I DON'T KNOW, YOUR HONOR, I WOULD BE

10    SURPRISED IF THEY EVEN FILED ANY.

11                 THEY HAVE BEEN LISTENING TO THE TESTIMONY.

12                 THE COURT:   OKAY.   WELL, MY EXPERIENCE IS THAT I

13    WILL GET THEM.   BUT WE'LL SEE.

14                 OKAY.   ANYTHING ELSE THEN?

15                 MR. RYAN:   NO, YOUR HONOR.

16                 MR. WILLIAMS:   NO YOUR HONOR.

17                 THE COURT:   OKAY.   THANK YOU.

18                 MR. SCARPULLA:   THANK YOU VERY MUCH.

19                 MR. RYAN:   HAVE A GOOD AFTERNOON.

20

21                 (PROCEEDINGS CONCLUDED AT 4:O5 P.M.)

22

23

24

25


        DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (51O) 451-2930
                                                                      45



                            CERTIFICATE OF REPORTER
               I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE UNITED
        STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY

O90309-5.txt

THAT THE FOREGOING PROCEEDINGS IN MDL C-O7-1819 CW, IN RE SRAM

ANTITRUST LITIGATION, PAGES NUMBERED 1 THROUGH 45, WERE

REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE

THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING;

THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID

PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

    THE INTEGRITY OF THE REPORTER'S CERTIFICATION OF

SAID TRANSCRIPT MAY BE VOID UPON REMOVAL FROM THE COURT

FILE.


_____

DIANE E. SKILLMAN, CSR 49O9, RPR, FCRR


DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (51O) 451-293O


Page 41