1  FRANCIS O. SCARPULLA (41059)
   CRAIG C. CORBITT (83251)
2  CHRISTOPHER T. MICHELETTI (136446)
   JANE YI (257893)
3  ZELLE HOFMANN VOELBEL & MASON LLP
   44 Montgomery Street, Suite 3400
4  San Francisco, CA 94104
   Telephone:    (415) 693-0700
5  Facsimile:    (415) 693-0770
   fscarpulla@zelle.com
6  ccorbitt@zelle.com

7  *Interim Lead and Liaison Counsel for
   Indirect Purchaser Class*
8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11                   **OAKLAND DIVISION**

| | |
|---|---|
| 12 IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST 13 LITIGATION | Case No. M:07-CV-01819-CW |
| | MDL No. 1819 |
| 14 | **INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS' POST-** |
| 15 This Document Relates to: | **CLASS CERTIFICATION HEARING MEMORANDUM** |
| 16 ALL INDIRECT PURCHASER ACTIONS | **(REDACTED PUBLIC VERSION)** |
| 17 | |

18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Plaintiffs Have Met the Article III Standing Requirements Imposed at the Class Certification Stage .......... 1

B. Plaintiffs Have Met All Requirements for An Injunctive Relief Class Under 23(b)(2) .......... 7

C. Plaintiffs Have Met All Requirements for Certification of State Unjust Enrichment Claims .......... 8

D. Presumption of Impact Applies To Component Cases .......... 11

E. The Court May Certify Nationwide and California Classes, and Remand The Other State Cases, As Well As Bifurcate Issues, If Desired. .......... 13

III. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Federal Cases**

*Belcher v. LILCO*,
164 F.R.D. 144 (E.D.N.Y. 1996) .... 11

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) .... 8

*Chamberlan v. Ford Motor Co.*,
No. C03-2628 CW, 2003 WL 25751413 (N.D. Cal. Aug. 6, 2003) .... 9

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons*,
502 F.3d 91 (2d Cir. 2007) .... 15

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
92 F.3d 1486 (9th Cir. 1986) .... 8

*Federal Trade Comm'n v. Affordable Media, LLC*,
179 F.3d 1228 (9th Cir. 1999) .... 5

*Feldman v. Allstate Ins. Co.*,
322 F.3d 660 (9th Cir. 2003) .... 12

*Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .... 5

*Grays Harbor Adventist Christian School v. Bogdanovich*,
242 F.R.D. 568 (W.D. Wash. 2007) .... 11

*Holmes v. Continental Can Co.*,
706 F.2d 1144 (11th Cir. 1983) .... 7

*In re Abbott Labs. Norvir Antitrust Litig.*,
No. C04-1511 CW, 2007 WL 1689899 (N.D. Cal. June 11, 2007) .... 2, 3, 5, 10

*In re Cardizem CD Antitrust Litig.*,
200 F.R.D. 297 (E.D. Mich. 2001) .... 15

*In re Ditropan XL Antitrust Litig.*,
529 F. Supp. 2d 1098 (N.D. Cal. 2007) .... 10

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
256 F.R.D. 82 (D. Conn. 2009) .... 8

*In re First Am. Corp. ERISA Litig.*, No. SACV 07-1357 JVS (RNBx), 2009 WL 2430879 (N.D. Cal. July 27, 2009) .......... 2

*In re Methionine Antitrust Litig.*, No. 00-1311, 2003 WL 22048232 (N.D. Cal. Aug. 22, 2003) .......... 13

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008) .......... 8

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C07-1819 CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) .......... 2, 3

*In re Sugar Indus. Antitrust Litig.*, No. C750 2562 GHB, 1976 WL 1374 (N.D. Cal. May 21, 1976) .......... 13

*In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672 (S.D. Fla. 2004) .......... 11, 13

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001), *cert. denied*, 536 U.S. 917 (2002) .......... 14

*In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395 (3d Cir. 2000) .......... 2

*Jaffe v. Morgan Stanley & Co.*, No. 06-3903, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) .......... 6

*Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D.N.Y. 2009) .......... 7, 11

*Kohen v. Pacific Investment Management Co.*, 571 F.3d 672 (7th Cir. 2009) .......... 3, 4, 5

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) .......... 14

*Nelsen v. King County*, 895 F.2d 1248 (9th Cir. 1990) .......... 2, 6

*New Eng. Carpenters Health Benefits Fund v. First Databank, Inc.*, 248 F.R.D. 363 (D. Mass. 2008) .......... 6

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001), *cert. denied*, 535 U.S. 951 (2002) .......... 14

*Rodriguez v. Hayes*, __ F.3d __, No. 08-56156, 2009 WL 2526622 (9th Cir. Aug. 20, 2009) .......... 7

*Schumacher v. Tyson Fresh Meats, Inc.*,
221 F.R.D. 605 (D.S.D 2004) ........ 11

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
506 F.3d 832 (9th Cir. 2007) ........ 2

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ........ 15

*Westways World Travel, Inc. v. AMR Corp.*,
218 F.R.D. 223 (C.D. Cal. 2003) ........ 11

*Whiteway v. FedEx Kinko's Office and Print Services*,
No. C 05-2320 SBA, 2006 WL 2642528 (N.D. Cal. Sep. 14, 2006) ........ 5

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
__F.3d__, No. 07-16825, 2009 WL 2634770 (9th Cir. Aug. 28, 2009) ........ 12

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
395 U.S. 100 (1969) ........ 7

**State Cases**

*B.W.I. Custom Kitchen v. Owens-Illinois, Inc.*,
191 Cal. App. 3d 1341 (1987) ........ 11, 12

*In re Cipro Cases I and II*,
121 Cal. App. 4th 402 (2004) ........ 12

*In re Tobacco II Cases*,
46 Cal.4th 298 (2009) ........ 8, 9

*Keating v. Philip Morris, Inc.*,
417 N.W.2d 132 (Minn. Ct. App. 1987) ........ 15

*Kidd v. Delta Funding Corp.*,
734 N.Y.S.2d 848 (N.Y. Ct. App. 2001) ........ 11

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal.4th 1134 (2003) ........ 9

*Kraus v. Trinity Mgmt. Serv.*,
23 Cal.4th 116 (2000) ........ 9

*McCarter v. Abbott Labs. Inc.*,
No. CIV.A. 91-050, 1993 WL 13011463 (Ala. Cir. Ct. April 9, 1993) ........ 15

*Microsoft I-V Cases*,
No. J.C.C.P. 4106, 2000 WL 35568182 (Cal. Super. Ct. Aug. 29, 2000) ..........................12, 13

*Richmond v. Dart Indus., Inc.*,
29 Cal.3d 462 (1981).............................................................................................................. 12

*Shersher v. Superior Court*,
154 Cal. App. 4th 1491 (2007) ........................................................................................... 9, 10

*Troyk v. Farmers Group Inc.*,
171 Cal. App. 4th 1305 (2009) ............................................................................................... 10

*Village Auto Ins. Co. v. Rush*,
649 S.E.2d 862 (Ga. Ct. App. 2007) ........................................................................................ 11

**Federal Rules**

Fed. R. Civ. P. 23 ................................................................................................................*passim*

**State Statutes**

Cal. Bus. & Prof. Code §17200 .................................................................................................. 8
Cal. Bus. & Prof. Code §17203 ............................................................................................... 8, 9
Cal. Bus. & Prof. Code §17204 ............................................................................................... 8, 9

**Other Authorities**

Newberg on Class Actions § 9.53 .............................................................................................. 14

# I. INTRODUCTION

During the hearing on class certification, the Court indicated that it was considering, among other things, certification of a California class on all California claims, a nationwide injunctive relief class under Rule 23(b)(2), and deferring the question of certification of other state classes following pretrial proceedings and a bifurcated trial of certain issues here. September 3, 2009 Hearing Transcript ("Tr."), p. 11:8-13). In their post-hearing memorandum, Defendants seek to derail such considerations by asserting a newly-minted standing argument that the class representatives must prove impact and damages at the class certification stage; by ignoring controlling California Supreme Court authority addressing proof required for restitution under the California Unfair Competition Law ("UCL"); and, by regurgitating arguments already repeated multiple times in their lengthy briefings. But these arguments fail, as Defendants cannot advance a decision on the merits of the class representatives' claims by requiring them to "prove" impact at this stage; the California Supreme Court has ruled that classwide proof of injury is not required under the UCL; and mere repetition of arguments already refuted by Plaintiffs should not carry the day. Plaintiffs respectfully submit that certification of a nationwide injunctive relief class, and all of the state damages and unjust enrichment classes, is warranted; nevertheless, the above-described approach suggested by the Court is fully justified on the record and well within the Court's broad Rule 23 discretion.[1]

# II. ARGUMENT

## A. Plaintiffs Have Met the Article III Standing Requirements Imposed at the Class Certification Stage

To prove standing under Article III, a plaintiff must show: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) redressability. *In re First Am.*

---

[1] Defendants' post-hearing memorandum ("PH Memo") employed an attention-grabbing title of "inaccurate statements" in a hyperbolic effort to justify its submission. As detailed herein, however, it is Defendants who fail to accurately state the law and facts. For example, Defendants claim Plaintiffs "created the impression that they were seeking only restitution under California law." PH Memo., p. 1 n.1. But a review of transcript cites tendered by Defendants, plus the preceding discussion omitted by Defendants (Hearing Tr., p. 9:9-17), makes it clear that the cited exchange was predicated on the Court's question regarding a nationwide equitable relief class and 27 state classes. Plaintiffs' counsel's agreement with the Court's reference to "whatever you can get in California" (*id.*, p. 11:10) included both relief under the Cartwright Act and the UCL. As such, there

*Corp. ERISA Litig.*, No. SACV 07-1357 JVS (RNBx), 2009 WL 2430879, at *3 (N.D. Cal. July 27, 2009) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In addition, a plaintiff may establish standing for equitable relief by showing a threat of future harm. *Nelsen v. King County*, 895 F.2d 1248, 1250 (9th Cir. 1990). Plaintiff need only make a "reasonable showing" of a "sufficient likelihood" that the plaintiff will be injured again. *Id.*

"'Each element [of standing] must be supported . . . with the manner and degree of evidence required at the successive stages of litigation.'" *In re First Am. Corp.*, 2009 WL 2430879, at *3 (*quoting Lujan*, 504 U.S. at 561). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* (*quoting Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007)). Similarly, at the class certification stage, plaintiffs "may show standing through the allegations in their consolidated complaint." *Id.* This approach is consistent with the well-established rules that the court "must take the substantive allegations of the complaint as true," "may not consider the merits of the plaintiffs' claims," and any doubts should be resolved "in favor of certifying the class." *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C07-1819 CW, 2008 WL 4447592, at *2 (N.D. Cal. Sept. 29, 2008); *In re Abbott Labs. Norvir Antitrust Litig.*, No. C04-1511 CW, 2007 WL 1689899, at *2 (N.D. Cal. June 11, 2007).

Plaintiffs have clearly alleged sufficient facts to establish Article III standing. With regard to injury and causation, Plaintiffs allege that Defendants and their co-conspirators entered into a continuing conspiracy in restraint of trade to artificially raise prices for SRAM in the United States. See Third. Am. Compl. ("Third CAC") (Dkt. 507) ¶¶160-186, 196-219. Plaintiffs allege that Defendants' conspiracy resulted in market-wide overcharges to direct purchasers, which were then passed-through the chains of distribution (*id.* ¶¶150-55, 193-95), and that Plaintiffs were injured by paying supracompetitive prices when they indirectly purchased Defendants' SRAM in end-use products (*id.* ¶¶189-95). Payment of supra-competitive prices for products subject to a price-fixing

---

was no inaccurate impression created by Plaintiffs, and as detailed in the discussions below, Defendants' other challenges to Plaintiffs' arguments are wrong on the facts and law.

conspiracy clearly satisfies Article III standing.[2] Plaintiffs satisfy the standing requirement for injunctive relief by alleging both "continuing, present adverse effects" of Defendants' anticompetitive conduct, as well as Defendants' "systematic" illegal price-fixing behavior.[3]

Throughout their post-hearing memorandum, Defendants repeatedly misstate Plaintiffs' burden by arguing that, on this class certification motion, the proposed class representatives "must prove" an injury in fact and causation (*see* PH Memo., pp. 3-4), and that Plaintiffs must make a "concrete evidentiary showing" to obtain certification of an injunctive relief class (*id.* p. 6). This effort to "advance a decision on the merits" contravenes well-settled Ninth Circuit law, and should be rejected. *SRAM*, 2008 WL 4447592, *2. Indeed, it is only at a later stage of litigation, such as a motion for summary judgment, that a plaintiff defending standing "can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' ... which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561. Judge Posner's recent decision in *Kohen v. Pacific Investment Management Co.*, 571 F.3d 672, 676 (7th Cir. 2009), is also instructive:

> [Defendant] argues that before certifying a class the district judge was required to determine which class members had suffered damages. But putting the cart before the horse in that way would vitiate the economies of class action procedure; in effect the trial would precede the certification. It is true that injury is a prerequisite to standing. But as long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied.

Defendants' similar effort to have the trial precede certification here should also be rejected. In any event, Plaintiffs have presented evidentiary proof of impact to all class members—including the proposed class representatives—through the market analysis and testimony of Dr. Harris and Dr. Dwyer, both of whom opine that the SRAM end-product markets at issue should "exhibit a high degree of pass-through." *See* Harris Decl. ¶67 (Dkt. 780); Dwyer Decl. ¶30 (Dkt. 645).

---

[2] *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 400-01 (3d Cir. 2000) (reversing dismissal of plaintiff's claims for lack of antitrust standing where plaintiffs, consumers of Coumadin drugs, alleged injury by paying inflated prices for drugs due to defendant's efforts to thwart a generic drug's entry into market).

[3] Third CAC ¶200 ("Plaintiffs have been injured *and will continue to be injured* in their business and property by paying more for SRAM purchased indirectly from the Defendants . . .") (emphasis

In support of their new standing arguments, Defendants also argue—for the first time—that none of the proposed class representatives purchased products containing Defendants' SRAM. In so doing, they simply ignore the record. While Plaintiffs need only rely on their Complaint allegations to establish the Article III standing elements at this stage of the litigation, they have presented far more than that here. For example, Plaintiffs have shown that proposed class representatives from California, Arizona, Florida, Michigan, New York, Pennsylvania and Rhode Island, purchased Research In Motion, Ltd.'s ("RIM") Blackberry Smartphones during the class period.[4] Plaintiffs submitted RIM's product manuals for each model purchased, all of which showed that the model contained SRAM. *See* Micheletti Class Decl. (Dkt. 752) Ex. 46. In addition, Plaintiffs submitted SRAM purchase records from RIM which showed that during the class period, See Micheletti Class Decl. Exh. 45 (RIM00003).

Similarly, router manufacturer D-Link acknowledged that "all, or nearly all, of the products sold by D-Link Systems contain SRAM" (*id.* Ex. 59), and Plaintiffs showed that [5] Thus, proposed class representatives from Nevada, Utah and West Virginia purchased products containing Defendants' SRAM. See Reply App. A, pp. 8, 12 and exhibits cited for those representatives) As another example, router and switch manufacturer ; Defendants' documents list ; and Defendants' witnesses testified

---

supplied); ¶162 ("the SRAM manufacturers engaged in a *systematic and continuous* exchange of confidential pricing, quantity and other business information…") (emphasis supplied).

[4] *See* Plaintiffs' Class Certification Reply Memo. ("Reply"), App. A (Dkt. 749) (CA - Lawrence Markey, Roman Munoz, UFCW Local 8; AZ – Lara Sterenberg; FL – Ronnie Barnes, Ryan Edwards; MI – Matthew Frank; NY – Rodrigo Bazan Gatti; PA – Beth O'Donnell; RI – Kevin Kicia).

[5] *See, e.g.*, Micheletti Class Decl. Ex. 47 (eCYP0482644-46 – ); Ex. 60 (CYP060175 – ); Ex. 64 (CYP050990 – "). *See also id.* Exs. 65-68, 76 ().

[redacted].[6] This and other evidence established that the [redacted] products purchased by the Arizona, Minnesota and Nevada proposed class representatives contained Defendants' SRAM. *See* Reply App. A, pp. 1, 7, 9 and exhibits cited for those representatives).

Plaintiffs presented similar evidence for all of the proposed class representatives. *See generally* Reply App. A. Defendants do not discuss or otherwise refute this evidence in any of their many class certification filings. As such, it is uncontroverted that the proposed class representatives—including those from California—purchased Defendants' SRAM.[7] Having *alleged and established* that they purchased products in the class definition containing SRAM sold by Defendants, the proposed class representatives have shown all that they need to establish at this stage of the proceedings. *See Norvir*, 2007 WL 1689899, at **3-5 (rejecting standing challenge upon showing that class representatives were class members).[8]

Defendants' challenges to Plaintiffs' standing to pursue injunctive relief fare no better. First, Defendants bear the burden of establishing that the conspiracy cannot be expected to recur—Plaintiffs do not bear the burden of showing the opposite: "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*

---

[6] *See, e.g.*, Micheletti Class Decl. Ex. 48 (CIS0052 - [redacted] purchased by Minnesota class representative Fairmont Orthopedics and showing [redacted]); *id.* Ex. 58 ([redacted]); *id.* Ex. 105 (Kwon Depo, pp. 218-19 and 243 (Samsung witness testimony that Samsung SRAM used in Cisco routers and 50% of said SRAM revenue derived from sales to Cisco).

[7] Regarding Linksys, Defendants's assertion that those products do not contain their SRAM is wrong. Defendants' documents show [redacted] (Micheletti Class Decl. Ex. 47, eCYP0482641, eCYP0482644-46, eCYP0482663), [redacted] (*id.* Ex. 70), and [redacted] (*id.* Ex. 72, p. 2).

[8] Defendants' repeat their ascertainability arguments (PH Memo., p. 12), and again ignore the fact that the classes are defined using "objective criteria," which is the primary requirement for ascertainability. *See, e.g., Whiteway v. FedEx Kinko's Office and Print Services*, No. C 05-2320 SBA, 2006 WL 2642528 (N.D. Cal. Sep. 14, 2006). Plaintiffs are not required to identify every class member that purchased a relevant SRAM-containing product at this time (see *Kohen*, 571 F.3d at 677 ( "at the outset of the case many of the members of the class may be unknown, [but] . . . [s]uch a possibility or indeed inevitability does not preclude class certification"). But when necessary, Plaintiffs will be able to identify products containing Defendants' SRAM through the same methods utilized for the proposed representatives outlined above.

*v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). *See also Federal Trade Comm'n v. Affordable Media, LLC*, 179 F.3d 1228, 1237 (9th Cir. 1999) (injunctive relief is not rendered moot by defendants' voluntary cessation of allegedly unlawful conduct unless it is "absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur") (citation omitted).

Accordingly, Defendants cannot simply hypothesize that the conspiracy ended in 2006. The same market conditions that facilitated the conspiracy in from 1996 - 2006[9] persist today: the market remains highly concentrated; barriers to entry remain high; and Defendants continue to attend trade association meetings. Also, as noted above, Defendants' price-fixing resulted from a systematic, repeated pattern of sharing sensitive competitive information which was greatly facilitated by cross-competitor business relationships that still exist. Thus, there is a significant risk that the conspiracy will persist or re-form in the future. Although it is not their burden at this juncture, Plaintiffs have shown that Defendants' SRAM is ubiquitous in the marketplace (*see* Class Cert. Memo., p. 43 (Dkt. 645)), so class members are highly likely to purchase it again, and are likely to be injured again by a future SRAM conspiracy.

Defendants' cited cases are inapposite. In *Nelsen*, for example, the Ninth Circuit considered an appeal from the district court's denial of class certification and injunctive relief by plaintiffs, former residents of an alcoholic treatment center. *Nelsen*, 895 F.2d at 1249. Significantly, named plaintiffs' allegations of threat of future harm failed to support standing because the claim was "based upon an extended chain of highly speculative contingencies," not the least of which was "the violation of an unchallenged law." *Id.* at 1252. The Ninth Circuit distinguished *Lyons* and *O'Shea*, two cases cited by Defendants, along the same reasoning: "The Court's holdings in *Lyons* and *O'Shea* plainly demonstrate that a claim of standing which is not only speculative, but is *predicated*

[9] The proposed class period does not defeat certification of a class under Rule 23(b)(2). *See, e.g., Jaffe v. Morgan Stanley & Co.*, No. 06-3903, 2008 WL 346417, at *3 (N.D. Cal. Feb. 7, 2008) (Henderson, J.) (certifying injunctive-relief class for settlement affecting persons employed by defendants "at any time between October 12, 2002 and December 3, 2007"); *New Eng. Carpenters Health Benefits Fund v. First Databank, Inc.*, 248 F.R.D. 363, 371 (D. Mass. 2008) (certifying class "for a period beginning August 1, 2001 and ending on May 15, 2005 for purposes of liability and equitable relief").

*upon the violation of an unchallenged law* is insufficient." *Id.* at 1253 (emphasis added). Plaintiffs' request for injunctive relief relies on no such "highly speculative" contingency. Rather, Defendants—several of which are recidivist violators of U.S. antitrust laws—have already effectuated a conspiracy to fix prices of SRAM, the effects of which continue to harm Plaintiffs.

### B. Plaintiffs Have Met All Requirements for An Injunctive Relief Class Under 23(b)(2)

Contrary to Defendants' assertions, Rule 23(b)(2) does not require a showing of prior injury. Instead, its purpose is to halt ongoing and future violations: "Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Rule 23(b)(2) Advisory Committee Notes (1966 Amendment). *See Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 n.8 (11th Cir. 1983) ("Injuries remedied through [Rule 23](b)(2) actions are really group, as opposed to individual injuries."); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 433 (S.D.N.Y. 2009) (certifying injunctive relief class on consumer claims). Indeed, injunctive relief under the Clayton Act, section 16, is "available even though the plaintiff has not yet suffered actual injury" (*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969)), and indirect purchaser status does not bar Section 16 relief (*see Warfarin*, 214 F.3d at 399-402).

As recently as last month, the Ninth Circuit reaffirmed the applicable standards in *Rodriguez v. Hayes*, __ F.3d __, No. 08-56156, 2009 WL 2526622 (9th Cir. Aug. 20, 2009). The proposed class consisted of aliens detained for over six months without a bond hearing. Reversing the district court, the Ninth Circuit held that the proposed class met the requirements of Rule 23(b)(2), despite the government's objections that the class members were not similarly situated because some were being held "pursuant to different statutes" while others "may not ultimately be entitled to a bond hearing because they are properly subject to mandatory detention." *Id.* at *12. As the court found, "[r]espondents' contentions miss the point of Rule 23(b)(2)."

> [Rule 23(b)(2)] does not require us to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them. As we have previously stated, "it is sufficient" to meet the requirements of Rule 23(b)(2) that "class members complain of a pattern or practice that is generally

> applicable to the class as a whole." . . . The fact that some class members may have suffered *no injury* or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2). . . ."

*Id.* at *13 (citations omitted) (emphasis added). Thus, Defendants are wrong that a showing of injury is required for injunctive relief under Rule 23.[10]

Here, Plaintiffs unambiguously allege that Defendants acted on grounds generally applicable to the entire Class through their price-fixing, which affected the products containing SRAM that all the Class members purchased. Third CAC ¶138i. The Court "is bound to take the substantive allegations of the complaint as true" at the class certification stage. *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). The Complaint seeks an injunction preventing Defendants "from in any manner continuing, maintaining, or renewing" their collusive behavior. Third CAC, Prayer for Relief, ¶H. It is for the trier of fact to determine whether the SRAM conspiracy continues to exist or whether there is a threat of its recurrence, warranting injunctive relief. *See, e.g., In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 94 (D. Conn. 2009) (at class certification, the issue "is not whether the conspiracy actually occurred—that is . . . for the fact finder to decide at the merits stage."). In sum, Plaintiffs satisfy all the requirements of Rule 23(b)(2).

### C. Plaintiffs Have Met All Requirements for Certification of State Unjust Enrichment Claims

Defendants assert that Plaintiffs are "gravely mistaken" in their contention that under California law, there are no individualized issues with respect to class wide restitution or disgorgement of profits. PH Memo., p. 10. But it is Defendants who are wrong. The California Supreme Court in *In re Tobacco II Cases*, 46 Cal.4th 298, 324 (2009) expressly held that under the *substantive* provisions of California's UCL, Cal. Bus. & Prof. Code §17200 *et seq.*, absent class members need not prove that they suffered injury in fact or lost money or property as a result of

---

[10] Defendants' cited cases are inapposite. *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486 (9th Cir. 1986) did not involve class certification, but rather an arguably vague and overbroad permanent injunction based on California's motorcycle helmet law. In *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008), the court deemed the likelihood of recurrence too "speculative" where a "perfect storm" of factors, unlike this straightforward price-fixing conspiracy, caused the plaintiffs' injury. *Id.* at 14-15.

unfair competition. Specifically, while the representative plaintiff must meet Section 17204's standing requirements, under Section 17203, the remaining members of the class need not. *See In re Tobacco II Cases*, 46 Cal. 4th at 315-16, 320. Thus, although Plaintiffs are entitled to a presumption of impact under California antitrust law, and although Plaintiffs have nevertheless presented plausible methods of determining impact on a class-wide basis, no class-wide proof of *any injury* need be shown to obtain class-wide restitution under Section 17203.[11]

Moreover, as this Court acknowledged in *Chamberlan v. Ford Motor Co.*, No. C03-2628 CW, 2003 WL 25751413, at *9 (N.D. Cal. Aug. 6, 2003), the California legislature "has 'authorized disgorgement into a fluid recovery fund in class actions.'" (*quoting Kraus v. Trinity Mgmt. Serv.*, 23 Cal.4th 116, 138 (2000)). Under *Tobacco II*, *Kraus* and this Court's decision in *Chamberlan*, therefore, Plaintiffs are correct in asserting that under the UCL, upon proof of a price fixing conspiracy, Defendants must pay their SRAM profits into a class fund, individual class members are afforded an opportunity to collect their individual shares by proving—"under a lowered standard of proof"—they "lost money," and any residue is distributed by procedures developed by the courts.[12]

Defendants' arguments regarding the proposed class representatives' standing fare no better. A class representative pursuing a claim under section 17204 of the UCL is required to allege and ultimately prove *at trial* that he or she "has suffered injury in fact and has lost money or property as a result of such unfair competition." *Tobacco II*, 46 Cal.4th at 314. In *Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1498-99 (2007), the court held that consumers that indirectly purchased Microsoft products from retailers had an "ownership interest" in and standing to pursue restitution

---

[11] Defendants cite *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003) for the proposition that disgorgement is not available under the UCL. PH Memo., p. 10 n.47. But the Court in *Korea Supply* expressly limited its decision to "to individual private actions brought under the UCL." 29 Cal.4th at 1148. *Korea Supply*, therefore, imposes no limit on disgorgement in UCL class actions. Indeed, as the Court noted in *Tobacco II*, restitution under the UCL may be ordered "without individualized proof of deception, reliance, and injury if necessary to prevent the use or employment of an unfair practice." 46 Cal.4th at 320 n.14.

[12] "[A] court may order disgorgement into a fluid recovery fund under the UCL for a class action . . ." *Chamberlan*, 2003 WL 25751413 at *9. In *Chamberlan*, the Court held that the plaintiffs did not allege that they paid any money to the defendants. Here, Plaintiffs do so allege, and while class members who want to share in the disgorgement fund must later come forward and establish their "recovery is restitutionary" (*id.* at *9), under *Tobacco II*, such a showing is not necessary to obtain a class recovery, and any unclaimed funds may distributed *cy pres* (*see id.* at *8, n.5).

from Microsoft for misrepresentations regarding those products. Here, like the plaintiffs in *Shersher,* the proposed California class representatives have not only alleged, but have also presented uncontroverted evidence establishing that they indirectly purchased end-products (*e.g.*, RIM Blackberrys) that contain Defendants' SRAM. *See* §II.A, *supra*. Monetary payments such as this clearly constitute "injury in fact" and "lost money" under section 17204. *See Troyk v. Farmers Group Inc.*, 171 Cal. App. 4th 1305, 1347-48 (2009) (payment of monthly service charge constitutes "injury in fact" and "lost money").

Plaintiffs' Complaint allegations, the applicable presumptions and evidentiary proof submitted also sufficiently show money lost "as a result of [Defendants'] unfair competition." First, as noted above, Plaintiffs have alleged that they paid more for Defendants' SRAM than they should have as a result of Defendants' price fixing conspiracy. Third CAC ¶¶189-95. Second, in a price-fixing case such as this, California courts presume that the proposed California class representatives were impacted by Defendants' price-fixing conspiracy. *See* §II.D, *infra*. Third, Plaintiffs have presented expert opinions of Dr. Harris and Dr. Dwyer that pass-through of any conspiracy overcharges is probable. *See* Plaintiffs' Opposition to Motion to Exclude (Dkt. 817), pp. 1-6 (detailing Plaintiffs' experts' opinions on impact to class members). Fourth, Plaintiffs have alleged, and Dr. Harris' and Dr. Dwyer's expert testimony shows, that they will be able to determine quantitatively whether or not Defendants' overcharges were passed through to end-purchasers. *See id.*, pp. 5-9 (detailing econometric methods of determining pass-through).[13] On this record, and at this preliminary stage of the proceedings, the proposed California class representatives easily meet the standing requirements of Section 17204 of the UCL.

Not only is certification of a California class for unjust enrichment warranted, but Plaintiffs have met all requirements for certification of all of the 23 other states for which certification is sought under state unjust enrichment claims. In *Norvir*, 2007 WL 1689899, at *8, this Court

---

[13] *See e.g.*. *In re Ditropan XL Antitrust Litig*. 529 F. Supp. 2d 1098, 1105 (N.D. Cal. 2007) (allegations of pass-through of overcharges sufficient to establish standing under UCL). It is well-settled that Plaintiffs are not required to actually prove that pass-through has occurred at the class certification stage. *See Norvir*, 2007 WL 1689899, at *5 (rejecting standing challenge asserted at the class certification stage as an improper attempt to "advance a decision on the merits").

certified a nationwide class for unjust enrichment (with the exception of Ohio and Indiana). In so holding, this Court recognized that variations in some state unjust enrichment claims do not significantly alter the central issue or proof of an unjust enrichment claim. At its essence unjust enrichment attempts to return to victims wealth improperly acquired by wrongdoers, the contours of which is normally measured in terms of the defendants' gain, and therefore is subject to nationwide class treatment: "Common to all class members and provable on a class-wide basis is whether Defendant unjustly acquired additional revenue or profits by virtue of an anti-competitive premium on the price of Norvir." *Id.* at *9. Numerous other courts are in accord with this Court's holding in *Norvir.*[14] Additionally, contrary to Defendants' assertions, courts around the country have certified unjust enrichment classes without a showing of impact or damages from the wrongful conduct and/or without a showing of predominantly common issues on injury or damages.[15] Thus, in addition to certifying a California state class asserting UCL unjust enrichment claims (and Cartwright Act claims), the Court properly may certify the other 23 state classes asserting equitable unjust enrichment claims.

### D. Presumption of Impact Applies To Component Cases

The presumption of impact in California applies to all horizontal price-fixing cases irrespective of whether the product is a component or a stand-alone product. First, the presumption articulated in *B.W.I.* is not limited to the facts of that case. To the contrary, it is settled that "impact will be presumed once a plaintiff demonstrates the existence of an unlawful conspiracy that had the

---

[14] *See generally Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612-13 (D.S.D 2004) ("In looking at claims for unjust enrichment, we must keep in mind that the very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs. That is a universal thread throughout all common law causes of action for unjust enrichment."); *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 239-40 (C.D. Cal. 2003) (the determination of defendant's liability on the unjust enrichment claim can be made from common class-wide proof); *see also In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004) (the standards for evaluating unjust enrichment under the laws of the multiple states at issue were "virtually identical").

[15] *See, e.g., Cartwright v. Viking Indus., Inc.*, 2009 U.S. Dist. LEXIS 83286 (E.D. Cal. September 14, 2009); *Jermyn*, 256 F.R.D. at 433; *Grays Harbor Adventist Christian School v. Bogdanovich*, 242 F.R.D. 568 (W.D. Wash. 2007); *Siemer v. Associates First Capital Corp.*, 2001 U.S. Dist. LEXIS 12810 (D. Ariz. March 30, 2001); *Belcher v. LILCO*, 164 F.R.D. 144 (E.D.N.Y. 1996); *Kidd v. Delta Funding Corp.*, 734 N.Y.S.2d 848 (N.Y. Ct. App. 2001); *Village Auto Ins. Co. v. Rush*, 649 S.E.2d 862 (Ga. Ct. App. 2007).

effect of stabilizing, maintaining or establishing product prices beyond competitive levels." *B.W.I. Custom Kitchen v. Owens-Illinois, Inc.*, 191 Cal.App.3d 1341, 1351 (1987) (citation omitted). This presumption of impact follows logically from evidence of a horizontal, market-wide restraint and applies even when the market is "characterized by individually negotiated prices, varying profit margins, and intense competition." *Id.* Indeed, the presumption applies "even if some consumers did not actually have to pay the overcharge because of their individual circumstances." *In re Cipro Cases I and II*, 121 Cal. App. 4th 402, 413 (2004).

Second, the presumption of impact in Cartwright Act cases is a clearly defined state policy that fits hand in glove with general policy in California favoring class actions to redress and deter corporate wrongdoing. *See, e.g., Richmond v. Dart Indus., Inc.*, 29 Cal.3d 462, 472-74 (1981). Indeed, the Ninth Circuit recently reiterated that federal courts *must* apply substantive state law, such as the presumptions here regarding antitrust injury (or impact), especially when making a certification determination for a consumer class under Rule 23. *See Yokoyama v. Midland Nat'l Life Ins. Co.*, __F.3d__, No. 07-16825, 2009 WL 2634770 (9th Cir. Aug. 28, 2009).[16]

Third, Plaintiffs have cited numerous cases applying the presumption of impact, including several that involved components which traveled through multiple distribution chains or were altered or added to along the way. *See generally* Class Certification Memo. pp. 20-21 and App. B thereto (Dkt 645); Class Certification Reply Memo., pp 3-6 (Dkt 749). For example, in *Microsoft I-V Cases*, 2000 WL 35568182 (Cal. Super. Ct. Aug. 29, 2000), Microsoft advanced the same exact arguments as Defendants here: "the complexity and changing nature of the software markets over the past six years have been so great as to render classwide analysis 'impossible' in this case." *Id.* The purported factors precluding certification were:

> the number of software programs [Microsoft] has marketed over the purported class period, the pricing differences that have existed over this period of more than six years, the rapid pace of change in the computer industry over this period, the varied channels through which its software has been distributed, *and the critical fact that its software was frequently incorporated into personal computers and represented only a*

---

[16] *See also Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (holding that state presumptions and rules of evidence that are intimately bound up with a substantive state policy, like this one, must be given effect by federal courts sitting in diversity to ensure the consistent application of the law).

*small fraction of the consumers' purchase price.*

*Id.* (emphasis added). Based on these factors, Microsoft's economist contended—much like Defendants' economist—that "any analysis of whether an overcharge may have been passed on to an eventual final purchaser would require an evaluation of a large number of individual-specific facts that essentially will amount to an individualized inquiry for each final purchaser." *Id.* The court rejected these arguments, noting that "[s]uch a broad statement proves too much." *Id.* In certifying two classes of indirect purchasers, the court applied the rule that speculative difficulties in "tracing the pass-through of artificially inflated prices do not necessarily create insuperable obstacles to classwide analysis and to class certification." *Id. See also In re Sugar Indus. Antitrust Litig.*, MDL No. 201, 1976 WL 1374, at *5 (N.D. Cal. May 21, 1976) (certifying multiple classes of indirect purchasers consisting of consumers of "different sugar products, which vary as to price and marketing channels and are consumed in different fashions, and, while fungible, often are not easily interchangeable").

Similarly, in *In re Methionine Antitrust Litig.*, 2003 WL 22048232, at *3 (N.D. Cal. Aug. 22, 2003), Judge Breyer certified a class of indirect purchasers of a chemical additive used in animal feed, a product far more amorphous than the SRAM chips incorporated into products here. Judge Breyer certified the indirect purchaser class even though the methionine market "involves multiple sellers, a myriad of distribution channels and hundreds of different products," and even though many "end users . . . purchased products containing very little methionine." 2003 WL 22048232, at *5.[17] These and other cases cited by Plaintiffs support certification of this component case.

**E. The Court May Certify Nationwide and California Classes, and Remand The Other State Cases, As Well As Bifurcate Issues, If Desired.**

At the hearing, the Court indicated that it was considering certification of a nationwide class for equitable relief, and California class for the California causes of action (presumably a Cartwright

[17] Judge Breyer later decertified that class, but his decision was not based on what defendants characterized as complexities of the methionine market. Indeed, it is evident that Judge Breyer was prepared to accept plaintiffs' methodologies that took such complexities into account, including use of representative consumers and some price averaging. *Id.* at **2-3, 5. *See also Terazosin* 220 F.R.D. at 691 (rejecting defendants' argument that special purchase deals, differing prices paid by class members and distribution channel complexities created unmanageable individualized issues).

Act damages claim and a UCL claim for restitution), and deferring a ruling on certification of the remaining 26 state indirect classes. Hearing Tr., pp. 11, 29. Under such an approach, the Court could try liability and damages for the certified Direct Purchaser class and the certified Indirect Purchaser nationwide and California classes, as well as restitution for the California class. Under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998), the Court could then remand the certification, damages and/or restitution claims to the originating courts outside California. Such an approach would be permissible and efficient. First, courts and commentators recognize that a court may certify a Rule 23(b)(3) class for certain claims, while creating a non-opt-out Rule 23(b)(1) or (b)(2) class for other claims.[18] Second, significant efficiencies could be obtained through the use of *res judicata* (to the extent the nationwide class litigates conspiracy issues) and collateral estoppel (to the extent the California class litigates impact, damages and restitution). Under the Court's broad discretion under Rule 23, such an approach would be appropriate.

At the September 3, 2009 hearing, the Court also asked whether it could bifurcate the issue of the conspiracy, and conduct a joint trial with the Direct Purchaser Class on that common issue. Having found their voice, Defendants, relying on a decision from Minnesota's intermediate appellate court and an unreported Alabama decision, argue that the Court cannot. However, the issue is not, as Defendants contend, whether a court may certify separate elements of a common claim, but rather whether a court is bound to certify all claims or none at all. Clearly, Rule 23 affords the Court sufficient discretion to certify even elements of a claim.

Initially, Defendants' are incorrect when they assert that the Court may not certify the issue of whether Defendants conspired to fix prices. Federal Rule of Civil Procedure 23(c)(4) provides that, "[w]hen appropriate, an action may be ... maintained as a class action with respect to particular issues." Pursuant to this Rule (and its predecessor, 23(c)(4)(A)), courts in this Circuit and others

---

[18] *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 147 (2d Cir.2001), *cert. denied*, 536 U.S.917 (2002) (footnote omitted), superseded by rule on other grounds, *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 167-168 (2d Cir. 2001), *cert. denied*, 535 U.S. 951 (2002); Manual for Complex Litigation, Fourth, §21.24; Newberg on Class Actions § 9.53 (4th ed.) (bifurcated trials commonly endorsed in antitrust actions).

have held that "[e]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues."[19] Thus, in *Cordes*, the Second Circuit directed that, on remand, the district court could properly certify the issue of the existence of a price-fixing conspiracy (*i.e.*, "the first element of their antitrust claim"), independent of other elements of the antitrust claim, such as injury and causation. 502 F.3d at 109. Thus, Defendants' assertion that "a finding of conspiracy alone ... would not be enough to justify certifying a class" is contrary to the foregoing authorities.[20]

Finally, courts have routinely certified actions with respect to liability, leaving damages to be determined later or on an individual basis. *See, e.g., In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 326 (E.D. Mich. 2001) (certifying class and noting that, to the extent damages' calculation became unwieldy, court had "the option of bifurcating the liability and damage phases of the litigation or appointing a special master or magistrate judge to assist in calculating damages") (citation omitted).

Therefore, in stark contrast to Defendants' contention, bifurcation of one element of a claim, such as damages, and the use of a nationwide class for injunctive relief and selected state classes on damages and/or unjust enrichment, is not only well within this Court's discretion, but would further the overall manageability of this action.

## III. <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs' class certification motion should be granted.

---

[19] *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons*, 502 F.3d 91, 109 (2d Cir. 2007).

[20] *McCarter v. Abbott Labs. Inc.*, No. CIV.A. 91-050, 1993 WL 13011463, at *6 (Ala. Cir. Ct. April 9, 1993) and *Keating v. Philip Morris, Inc.*, 417 N.W.2d 132, 138 (Minn. Ct. App. 1987) are distinguishable on their facts because plaintiffs in those cases sought monetary damages (not injunctive relief as here), and the products at issue (baby formula and cigarettes), were not components, like SRAM, but consumables. Thus, unlike here, where Defendants know the products in which their SRAM may be found and a class composed of purchasers of those products can be readily identified, evidence of purchase of baby formula or cigarettes, including packaging, is most often discarded.

Dated: September 28, 2009

Respectfully submitted,
/s/Francis O. Scarpulla
Francis O. Scarpulla

FRANCIS O. SCARPULLA (41059)
CRAIG C. CORBITT (83251)
CHRISTOPHER T. MICHELETTI (136446)
JANE YI (257893)
ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
fscarpulla@zelle.com
ccorbitt@zelle.com

*Interim Lead and Liaison Counsel for Indirect-Purchaser Class*

#3218930