United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT

10

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                                    No. C 07-01819 CW

13  IN RE: STATIC RANDOM ACCESS MEMORY
    (SRAM) ANTITRUST LITIGATION,       ORDER GRANTING IP
14                                      PLAINTIFFS' MOTION
                                        FOR CLASS
15                                      CERTIFICATION AND
                                        DENYING MOTIONS TO
16                                      EXCLUDE EXPERT
                                        OPINIONS
17

18

19

20  _____/

21

22      In this antitrust multi-district litigation, Indirect

23  Purchaser Plaintiffs (IP Plaintiffs) move for class certification

24  pursuant to Rule 23 of the Federal Rules of Civil Procedure.

25  Defendants[1] oppose the motion.  Having considered oral argument and

26  _____

27      [1]Defendants are Samsung Electronics Company, Ltd., Samsung
    Electronics America, Inc., Samsung Semiconductor, Inc., Hynix
28  Semiconductor, Inc., Hynix Semiconductor America, Inc., Micron
                                                    (continued...)

all of the papers filed by the parties, the Court grants IP

Plaintiffs' motion for class certification and denies the parties'

motions to exclude expert opinions.

BACKGROUND

The facts of this case were laid out in greater detail in the

Court's order on the initial motions to dismiss.  In brief, IP

Plaintiffs are a group of individuals and companies that purchased

Static Random Access Memory (SRAM) indirectly from one or more

Defendants, for end use and not for resale.  Defendants are various

corporations that sold SRAM to customers throughout the United

States.

SRAM is a type of memory device that cannot retain stored data

absent a source of power.  SRAM is used in a variety of product

markets, including: (1) the communications market in cell phones

and Voice Over Internet Protocol (VOIP) technology; (2) the

computer market in servers, mainframes, high-end computer

workstations, and personal digital assistants (PDAs) and smart

phones; and (3) the networking communications market in routers,

switches, proxy and gateway devices, modems, storage area networks

and firewalls.  Michael Harris Decl. ¶¶ 14-17.  There are three

general types of SRAM: (1) asynchronous SRAM (typically called slow

or low power), which is used in mobile phones and other hand-held

devices that contain a central processor, (2) synchronous SRAM

<sub>1</sub>(...continued)
Technology, Inc., Micron Semicondcutor Products, Inc., NEC
Electronics Corp., NEC Electronics America, Inc., Cypress
Semiconductor, Inc., Mitsubishi Electric Corp., Mitsubishi Electric
& Electronics USA, Inc., Renesas Technology Corp., Renesas
Technology America, Inc., Toshiba Corp., Toshiba America Electronic
Components, Inc. and Etron Technology America, Inc.

2

United States District Court
For the Northern District of California

(typically called fast or high power), which is generally found in computers and networking equipment and (3) pseudo SRAM (PSRAM), which is found in smart phones and other devices that require low power consumption and fast memory.  Id. at ¶¶ 8-13.

During the class period, Defendants possessed sixty to seventy percent of the market share of total SRAM sales.  Defendants sell SRAM to various customers, both large and small scale, through a variety of distribution paths.  SRAM manufactured by Defendants can be purchased by an SRAM distributor and resold to an original equipment manufacturer (OEM) or purchased by a contract manufacturer.  Contract manufacturers create individual SRAM components and finished products containing SRAM for OEMs.  Thus, OEMs purchase SRAM directly from SRAM manufacturers, distributors and contract manufacturers.  OEMs then sell SRAM directly to consumers or to consumers through a reseller, distributor or retailer.  Id. ¶¶ 41-47.

IP Plaintiffs allege that, between 1996 and 2006, Defendants conspired to fix and maintain artificially high prices for SRAM.  According to IP Plaintiffs, Defendants carried out this conspiracy through in-person, telephone and email communications regarding pricing to customers and market conditions.  IP Plaintiffs allege violations of Section 1 of the Sherman Act, California's Cartwright Act, California Business and Professions Code §§ 16720 and 17200, and numerous other states' antitrust, unfair competition and consumer protection laws.  They seek disgorgement of profits and unjust enrichment.

IP Plaintiffs seek certification of a nation-wide class for injunctive relief defined as follows:

> All persons and entities residing in the United
> States who, from November 1, 1996 through at least
> December 31, 2006, purchased SRAM in the United
> States indirectly from the Defendants for their
> own use and not for resale.  Specifically excluded
> from this class are the Defendants; the officers,
> directors or employees of any Defendant; any
> entity in which any Defendant has a controlling
> interest; and any affiliate, legal representative,
> heir or assign of any Defendant.  Also excluded
> are any federal, state or local governmental
> entities, any judicial officer presiding over this
> action and the members of his/her immediate family
> and judicial staff, and any juror assigned to this
> action.

IP Plaintiffs also move to certify twenty-seven separate classes pursuant to Fed. R. Civ. P. 23(b)(3).[2]  Those classes represent residents of Arizona, Arkansas, California, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Washington, West Virginia, Wisconsin, Puerto Rico and the District of Columbia.

                              LEGAL STANDARD

     Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b).  Rule 23(a) provides that a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

---

     [2]IP Plaintiffs note that their classes are "not meant to and do not include purchasers of used or refurbished products containing SRAM."  Reply at 18 n.17.  Their use of the phrase "not for resale" in the class definition "is meant to limit the class to persons who purchased new products (and not products that were refurbished and bought from E-bay or elsewhere) and to eliminate retailers, wholesalers, distributors and other resellers."  Reply at 21 n.21.

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Rule 23(b) further provides that a case may be certified as a class action only if one of the following is true:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

Plaintiffs seeking class certification bear the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that plaintiffs have borne their burden. General Tel. Co. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977). In making this determination, the court may not consider the merits of plaintiffs' claims. Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144, 152 (N.D. Cal. 1991). Rather, the court must take the substantive allegations of the complaint as true. Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975). Nevertheless, the court need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action. Burkhalter, 141 F.R.D. at 152. In addition, the court may consider supplemental evidentiary submissions of the parties. In re Methionine Antitrust Litig., 204 F.R.D. 161, 163 (N.D. Cal. 2001) (Methionine I); see also Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983) (noting that "some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a)"; however, "it is improper to advance a decision on the merits at the class certification stage"). Ultimately, it is in the district court's discretion whether a class should be certified. Burkhalter, 141 F.R.D. at 152.

"Class actions play an important role in the private enforcement of antitrust actions. For this reason courts resolve doubts in these actions in favor of certifying the class." In re Rubber Chemicals Antitrust Litig., 232 F.R.D. 346, 350 (N.D. Cal

1   2005).

2                                DISCUSSION

3   I.   Class Definitions

4        Defendants first argue that class certification must be denied

5   because IP Plaintiffs' proposed class definitions are not precise

6   and the identity of the class members is not objectively

7   ascertainable.  "An adequate class definition specifies 'a distinct

8   group of plaintiffs whose members [can] be identified with

9   particularity.'"  Campbell v. PricewaterhouseCoopers, LLP, 253

10  F.R.D. 586, 593 (E.D. Cal. 2008) (quoting Lerwill v. Inflight

11  Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).  "The

12  identity of class members must be ascertainable by reference to

13  objective criteria."  5 James W. Moore, Moore's Federal Practice,

14  § 23.21[1] (2001).  Thus, a class definition is sufficient if the

15  description of the class is "definite enough so that it is

16  administratively feasible for the court to ascertain whether an

17  individual is a member."  O'Connor v. Boeing N. Am., Inc., 184

18  F.R.D. 311, 319 (C.D. Cal. 1998).

19       Here, the class definitions meet this standard.  The

20  definitions of the classes are relatively straightforward.  Class

21  members (1) must live in a particular state, (2) cannot be a direct

22  purchaser, (3) cannot be a reseller, (4) must have made a purchase

23  within the relevant time period and (5) must have purchased a

24  product containing SRAM made by a Defendant.  These definitions are

25  not subjective or imprecise.  IP Plaintiffs will be able to

26  identify all products that contain Defendants' SRAM by analyzing

27  Defendants' documents, testimony from Defendants' personnel, third

28  party transactional data, third party discovery responses that

United States District Court
For the Northern District of California

                                    7

United States District Court
For the Northern District of California

state whether their products contain SRAM, BoMs[3] from OEMs and
contract manufacturers, and publicly available information.  Thus,
absent class members will easily be able to identify themselves.

## II.   Class Certification Under Rule 23(a)

To certify a class, IP Plaintiffs must satisfy Rule 23(a).  As
noted above, Rule 23(a) provides that a case is appropriate for
certification as a class action if: "(1) the class is so numerous
that joinder of all members is impracticable; (2) there are
questions of law or fact common to the class; (3) the claims or
defenses of the representative parties are typical of the claims or
defenses of the class; and (4) the representative parties will
fairly and adequately protect the interests of the class."

Defendants do not dispute IP Plaintiffs' assertion that this
action satisfies the numerosity and commonality requirements of
Rule 23(a)(1) and (2), and the Court finds that it does.  See 1
Alba Cone & Herbert B. Newberg, Newberg on Class Actions § 3.3 (4th
ed. 2002) (where "the exact size of the class is unknown, but
general knowledge and common sense indicate that it is large, the
numerosity requirement is satisfied"); Hanlon v. Chrysler Corp.,
150 F.3d 1011, 1019 (9th Cir. 1998) ("All questions of fact and law
need not be common to satisfy [Rule 23(a)(2)].  The existence of
shared legal issues with divergent factual predicates is
sufficient, as is a common core of salient facts coupled with
disparate legal remedies within the class.")

Defendants assert that class certification must fail because
(1) IP Plaintiffs cannot meet the typicality requirement of Rule

---

[3]BoM is the acronym for Bill of Materials.

8

23(a)(3) and (2) IP Plaintiffs cannot protect the interests of all class members as required by Rule 23(a)(4).

A.   Typicality

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.  "The typicality requirement does not mandate that products purchased, methods of purchase, or even damages of the named plaintiffs must be the same as those of the absent class members." In re Vitamins Antitrust Litig., 209 F.R.D. 251, 261 (D.D.C. 2002).

Here, all of the IP Plaintiffs are indirect purchasers of SRAM who allege that Defendants engaged in a price-fixing conspiracy. As the Court noted when it certified the DP Plaintiff class, "the overarching price fixing scheme is the linchpin of [IP] Plaintiff's complaint, 'regardless of the product purchased, the market involved or the price ultimately paid.'" In re Static Random Access Memory (SRAM) Litig., 2008 WL 4447592, *3 (quoting In re Flat Glass Antitrust Litig., 191 F.R.D. 472, 480 (W.D. Pa 1999)).

Thus, IP Plaintiffs' claims are typical even though they may have used different purchasing procedures, purchased different quantities or a different mix of products, or received different prices than other class members.  Accordingly, Rule 23(a)(3)'s typicality requirement is met.

B.   Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement consists of two inquiries: "(1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Staton v. Boeing Co., 327 F.3d 938, 958 (9th Cir. 2003).  Defendants challenge IP Plaintiffs as to both requirements of the rule.

The mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical.  See Cummings v. Connell, 316 F.3d 886, 896 (9th Cir. 2003) ("[T]his circuit does not favor denial of class certification on the basis of speculative conflicts."); Soc. Servs. Union, Local 535 v. County of Santa Clara, 609 F.2d 944, 948 (9th Cir. 1979) ("Mere speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of initial class certification."); Blackie v. Barrack, 524 F.2d 891, 909 (9th Cir. 1975) (noting that class members might have differing interests at later stages of litigation, but that "potential conflicts" do not present a valid reason for refusing to certify a class).  Defendants argue that several proposed representatives are not

United States District Court
For the Northern District of California

adequate because they have business or personal relationships with the attorneys who represent them in this case.  For instance, one representative Plaintiff is the uncle of one of Plaintiffs' attorneys and some of the other representative Plaintiffs know some of Plaintiffs' attorneys socially or have had prior business dealings with them.  However, Defendants have not shown how any of these relationships have manifested a conflict nor have they provided legal authority that establishes that these relationships establish conflicts.  To the contrary, it "would seem a bit anomalous that an individual whose [relative or friend] has developed a reputation as a competent [] lawyer should be prohibited from turning to his [relative or friend] for assistance if he has a legitimate legal claim."  Lewis v. Goldsmith, 95 F.R.D. 15, 20 (D.N.J. 1982).

Defendants also challenge representative Plaintiffs' level of participation in the case.  While class representatives must be familiar with the basics of, and "understand the gravamen" of, their claims, it is not necessary that they be "intimately familiar with every factual and legal issue in the case." Moeller v. Taco Bell Corp., 220 F.R.D. 604, 611 (N.D. Cal. 2004).  A class representative "will be deemed inadequate only if she is 'startlingly unfamiliar' with the case." Id. (quoting Greenspan v. Brassler, 78 F.R.D. 130, 133-34 (S.D.N.Y. 1978).  Here, IP Plaintiffs have been involved in providing answers to written discovery and giving depositions and have shown that they can carry out the duties of class representatives.  Thus, IP Plaintiffs meet the requirements of Rule 23(a)(4).

III. Class Certification Under Rule 23(b)(2)

IP Plaintiffs move for certification of a nation-wide injunctive relief class under Rule 23(b)(2). The class "seeks to enjoin Defendants from engaging in conduct that continues to cause prices for SRAM to be fixed at supracompetitive levels." Motion at 40.

Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Federal R. Civ. P. 23(b). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1195 (9th Cir. 2001). A class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where such relief is "merely incidental to [the] primary claim for injunctive relief." Probe v. State Teachers' Retirement Sys., 780 F.2d 776, 780 (9th Cir. 1986).[4]

Here, the primary relief sought is an injunction. The first paragraph of the complaint states: "This complaint is filed under Section 16 of the Clayton Act, 15 U.S.C. § 26, to obtain injunctive relief . . . ." Further, members of the nation-wide class are far more numerous than the members of the Indirect State Classes. The nation-wide class includes persons in all fifty states, the

---

[4]IP Plaintiffs erroneously cite Dukes v. Wal-Mart, Inc., 509 F.3d 1168 (9th Cir. 2007). However, by order of the Ninth Circuit, that opinion "shall not be cited as precedent by or to any court of the Ninth Circuit." Dukes v. Wal-Mart, Inc., 556 F.3d 919 (9th Cir. 2009).

12

District of Columbia, and Puerto Rico who indirectly purchased SRAM.  Moreover, the long-lasting effect of an injunction would likely be greater than a damages award.  See <u>Ellis v. Costco Wholesale Corp.</u>, 240 F.R.D. 627, 643 (N.D. Cal. 2007) (certifying Rule 23(b)(2) class where injunction would have "far-reaching" effects on defendant's promotion practices and would "benefit class members in the same way").

Defendants argue that IP Plaintiffs do not have standing to assert their claim for injunctive relief.  The Court disagrees.  Article III limits the jurisdiction of the federal courts to "cases" and "controversies."  In order to satisfy the "case or controversy" requirement, a plaintiff must show that: "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." <u>Salmon Spawning & Recovery Alliance v. Gutierrez</u>, 545 F.3d 1220, 1225 (9th Cir. 2008).  "Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical." <u>Cole v. Oroville Union High Sch. Dist.</u>, 228 F.3d 1092, 1100 (9th Cir. 2000) (internal quotation marks omitted).  A plaintiff seeking declaratory and injunctive relief cannot rely solely on a past injury; instead, he or she must demonstrate a "very significant possibility of future harm" to warrant the requested relief.  <u>San Diego County Gun Rights Comm. v. Reno</u>, 98 F.3d 1121, 1126 (9th Cir. 1996).

At this stage in the proceedings, IP Plaintiffs have alleged sufficient facts to establish Article III standing for their nation-wide injunctive relief class.  IP Plaintiffs allege that

Defendants and their co-conspirators entered into a continuing
conspiracy in restraint of trade artificially to raise prices for
SRAM in the United States.  They further allege that these market-
wide overcharges were then passed through the chains of
distribution, and that they were injured by paying supra-
competitive prices when they indirectly purchased Defendants'
products.

Finally, Defendants argue that, because IP Plaintiffs seek to
certify a nation-wide injunctive class from November 1, 1996
through December 31, 2006, they have impliedly alleged that the
conspiracy ended in 2006.  However, a finite proposed class period
does not defeat certification of a class under Rule 23(b)(2).  See,
e.g., Jaffe v. Morgan Stanley & Co., 2008 WL 346417, at *3 (N.D.
Cal.) (certifying injunctive-relief class for settlement affecting
persons employed by the defendants "at any time between October 12,
2002 and December 3, 2007).  Further, IP Plaintiffs allege that the
same market conditions that facilitated the conspiracy from 1996 to
2006 continue today.  They allege that Defendants' price-fixing
resulted from a systematic, repeated pattern of sharing sensitive
competitive information which was greatly facilitated by the cross-
competitor business relationships that still exist.  Thus, there is
alleged a significant risk that the conspiracy will persist or re-
form in the future.  Therefore, the Court certifies a nation-wide
class under Rule 23(b)(2).

IV.  Class Certification Under Rule 23(b)(3)

A.  Predominance

IP Plaintiffs' motion for certification under Rule 23(b)(3)
centers around the issue of predominance.  "The Rule 23(b)(3)

14

predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." Hanlon, 150 F.3d at 1022 (internal quotation marks omitted). "The common issues must only predominate; they do not have to be dispositive of the litigation." In re Lorazepam & Clorazepate Antitrust Litig., 202 F.R.D. 12, 29 (D.D.C. 2001).

To determine whether the predominance requirement is satisfied, "courts must identify the issues involved in the case and determine which are subject to 'generalized proof,' and which must be the subject of individualized proof." In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 2006 WL 1530166, at *6 (N.D. Cal.).

Liability in an antitrust case is based on: (1) whether there was a conspiracy to fix prices in violation of the antitrust laws; (2) whether the plaintiffs sustained an antitrust injury, or the "impact" of the defendants' unlawful activity; and (3) the amount of damages sustained as a result of the antitrust violations. In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 2006 WL 1530166, at *7 (N.D. Cal.).

IP Plaintiffs need not show that there will be common proof on each element of the claim. "In price-fixing cases, courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant

15

individual issues are present."    Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc., 209 F.R.D. 159, 167 (C.D. Cal. 2002).    "[C]ommon liability issues such as conspiracy or monopolization have, almost invariably, been held to predominate over individual issues."    6 Newberg on Class Actions, at § 18.25.

Here, the central issue in the case is the existence of Defendants' price-fixing conspiracy.    IP Plaintiffs allege that Defendants engaged in illicit communications with each other to share pricing and other sensitive competitive information related to SRAM, and that they set common minimum prices of SRAM based on this information.    Differences among class members regarding the SRAM products they purchased, from whom they purchased the products and the price at which they purchased them relate primarily to the amount of damages and not the common issue of Defendants' conduct.

Defendants focus their arguments on the second element of the antitrust claim; they assert that IP Plaintiffs have failed to demonstrate that common proof can be used to show class-wide impact.    As the court in DRAM stated:

> [D]uring the class certification stage, the court must simply determine whether plaintiffs have made a sufficient showing that the evidence they intend to present concerning antitrust impact will be made using generalized proof common to the class and that these common issues will predominate.    The court cannot weigh in on the merits of plaintiffs' substantive arguments, and must avoid engaging in a battle of expert testimony. Plaintiffs need only advance a plausible methodology to demonstrate that antitrust injury can be proven on a class-wide basis.

Id. at *9 (citations and internal quotation marks omitted).    "On a motion for class certification, the Court only evaluates whether the method by which plaintiffs propose to prove class-wide impact could prove such impact, not whether plaintiffs in fact can prove

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

class-wide impact." In re Magnetic Audiotape Antitrust Litig.,
2001 WL 619305, at *4 (S.D.N.Y. 2001); See In re Flat Glass
Antitrust Litig., 191 F.R.D. 472, 485-88 (W.D. Pa. 1999); In re
Polypropelene Carpet Antitrust Litig., 178 F.R.D. 603, 620-23 (N.D.
Ga. 1997).

Many courts have recognized a presumption of class-wide
antitrust impact.[5]  For instance, California courts routinely
recognize a presumption of class-wide impact for indirect purchaser
antitrust price-fixing claims.  See B.W.I. Custom Kitchen v. Owens-
Illinois, Inc., 191 Cal. App. 3d 1341, 1351-52 (1987) ("courts have
assumed consumers were injured when they purchased products in an
anticompetitive market" even when the market is "characterized by
individually negotiated prices, varying profit margins, and intense
competition"); Hopkins v. De Beers Centenary AG, 2005 WL 1020868,
at *4 (Cal. Super.) ("fact-of-injury is assumed for class
certification purposes"); Microsoft I-V Cases, 2000 WL 35568182, at
88,563-64 (Cal. Super.) ("A per se violation raises a presumption
of harm because conduct such as a conspiracy to fix prices has the
sole purpose of artificially raising the price of the item.  It
follows that consumers of the product pay more than they would in a
competitive market even if the prices charged to direct purchasers
vary.").

The presumption of impact is not necessarily rebutted even if
an intermediary has altered the product.  In re Cipro Cases I and
II, 121 Cal App. 4th 402, 416 (2004).  Impact "is ordinarily a

---

[5]The existence of a presumption of antitrust impact is a
matter of substantive law.  Computer Economics, Inc. v. Gartner
Group, Inc., 50 F. Supp. 2d 980, 990 (S.D. Cal. 1999); In re
Relafen Antitrust Litig., 221 F.R.D. 260, 288 (D. Mass. 2004).

United States District Court
For the Northern District of California

permissible assumption in cases where consumers have purchased products in an anticompetitive market, even if some consumers did not actually have to pay the overcharge because of their individual circumstances." Id. at 413.

Some federal courts recognize the same presumption. See In re Potash Antitrust Litig., 159 F.R.D. 682, 693 (D. Minn. 1995) ("[A]s a general rule in antitrust price-fixing cases, questions common to the members of the class will predominate over questions affecting only individual members."); In re Catfish Antitrust Litig., 826 F. Supp. 1019, 1041 (N.D. Miss. 1993) ("[I]n an illegal price-fixing scheme, there is a presumption that all purchasers will be impacted/injured by having to pay the higher price."); In re Cement and Concrete Antitrust Litig., 1979 WL 1595, at *3 (D. Ariz. 1979) ("Courts have consistently held that an illegal price fixing scheme presumptively impacts upon all purchasers of a price fixed product in a conspiratorially affected market.").

Notwithstanding this presumption, IP Plaintiffs cannot demonstrate common impact by simply alleging a price-fixing conspiracy. The "problem of proof in an indirect purchaser case is intrinsically more complex [than in a direct purchaser case], because the damage model must account for the actions of innocent intermediaries who allegedly passed on the overcharge." William H. Page, The Limits of State Indirect Purchaser Suits: Class Certification in the Shadow of Illinois Brick, 67 Antitrust L.J. 4, 12 (1999).

The Court granted class certification in the Direct Purchaser (DP) Plaintiffs' class action. There, despite customer, pricing and product differences, the Court held that the methodologies

18

advanced by DP Plaintiffs' expert would allow impact to be demonstrated with generalized proof. However, here, the issue is "from one to several steps removed from the inquiry in the direct purchaser class action." Methionine I, 204 F.R.D. at 164. IP Plaintiffs must "show that there is a reasonable method for determining on a class-wide basis whether and to what extent that overcharge was passed on to each of the [IP Plaintiffs] at all levels of the distribution chain." Id.; see also, Robert Harris & Lawrence A. Sullivan, Passing on the Monopoly Overcharge: A Comprehensive Policy Analysis, 128 U. Pa. L. Rev. 269, 315 (1979) (H&S Article) ("Before the incidence of an overcharge can be traced, one must be able to identify the distribution chain and follow transactions down the chain."). IP Plaintiffs must find a way to account for the decision-making of a variety of resellers and manufacturers in an intricate distribution chan. In evaluating a method to prove injury to all IP Plaintiffs, it is important to note that SRAM is but one component of an end-product and that it was sold to some indirect purchasers as a stand-alone product but to others bundled with other products. "Each divergent factor -- customer size, type, procurement channel, product, distribution step -- is a factor that increases the likelihood that proof of pass-through can only be shown with resort to individualized proof." California v. Infineon Technologies AG, 2008 WL 4155665, at *11 (N.D. Cal.).

Here, IP Plaintiffs' method of proving injury on a class-wide basis is based on the declarations of their experts, economists Drs. Michael J. Harris and Mark Dwyer. Dr. Harris explains that, according to the H&S article, there are five classes of factors

that should be considered in evaluating whether generalized evidence can be used to determine the rate of pass-through. These include temporal relationships, pricing practices, directness of affected costs, supply and demand.

Temporal factors relate to the frequency of price changes and the duration of anti-competitive overcharge. Pricing practices relate to the consistency and basis of pricing policy. The directness of affected costs refers to whether an overcharge affects a direct (i.e. variable) cost or an indirect (i.e. overhead) cost. Because SRAM is a direct cost, Dr. Harris claims that overcharges will be passed through sooner and at a higher rate. The more elastic the supply-curve of an individual intermediary the higher is the rate of pass-through. A less elastic demand-curve will increase the rate of pass-through. Dr. Harris concludes, "Taken together, the theoretical issues discussed above as applied to the SRAM product markets indicate that, a-priori, one fully expects that these markets would exhibit a high degree of pass through." Harris Decl. ¶ 67. This economic evidence would be offered by the proposed class representatives and by every single individual class member if their claims were separately tried to a jury to prove impact and the amount of damages suffered. Thus, this evidence is common to all class members for class certification purposes.

Dr. Dwyer proposes two different types of regression models that will establish that the fact of injury can be shown on a class-wide basis using common proof: a reduced form model and a structural model. A reduced form model can be used when component cost information is provided. This model measures the extent of

pass-through of component costs and the prices paid for end-use products. The structural model can be used regardless of whether component cost information is available. This model uses end-use purchase price information and analyzes market supply and demand to determine the presence of pass-through.

Defendants argue that the reduced form model fails to take into account actual SRAM cost data and that the model ignores entire distribution chains. However, Dr. Dwyer states that the "data provided by the OEMs specify SRAM cost components themselves, and allow for a further statistical test, precisely, whether the SRAM cost pass-through differs from the overall BoM (i.e., component cost) pass-through rate." Dwyer Decl. ¶ 38. In fact, Dr. Dywer performed a preliminary reduced form analysis utilizing both total BoM costs and SRAM component costs for a router that contains SRAM and found a 103 percent pass-through rate on sales to end-users. Dwyer Reply Decl. ¶¶ 30-32. Defendants assert that relying on BoM data is improper because it is not an accurate source of costs; however, BoMs are commonly used by OEMs and contract manufacturers in the electronics industry to monitor input costs and adjust pricing.

Defendants also argue that the structural model is flawed because it assumes pass-through without actually testing for it. However, the structural model derives a pass-through rate from many economic variables, such as the price elasticity of end-use products, the structure of competition among product suppliers and the degree to which cost changes are common across end-use products. Dr. Dwyer notes that pass-through rates vary significantly depending on the values of these variables.

United States District Court
For the Northern District of California

Defendants also criticize IP Plaintiffs for using aggregated and averaged data in their structural model because such data could yield "false-positive pass-through." Opposition at 31. However, this criticism is not well taken. In the context of an IP antitrust case against Microsoft, a district court in Minnesota held,

> The damages question for trial is presumably not about whether a specific Microsoft price increase found its way through the distribution chain and resulted in an increase in the price paid by a specific class member. Rather, the question is how a series of Microsoft price increases, and/or a series of Microsoft failures to reduce prices, impacted the price each consumer paid. The question of what would have happened but for Microsoft's monopoly overcharge is a hypothetical, and a hypothetical question generally cannot be answered by historical data about what actually happened, but must often be answered by general principles about what generally tends to happen. Thus, average pass through rates appear reasonable and even necessary to prove damages here.

Gordon v. Microsoft Corp., 2003 WL 23105550, at *3 (D. Minn.); see also In re Cardizem CD Antitrust Litig., 200 F.R.D. 326, 345, 350 (E.D. Mich. 2001); In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 523 (S.D.N.Y. 1996); Presidio Golf Club of San Francisco v. National Linen Supply Corp., 1976 WL 1359, at *5 (N.D. Cal.). Thus, the use of averaged and aggregated data is not fatal to IP Plaintiffs' econometric models.

Defendants argue that the SRAM distribution chain is too complex from which to discern evidence of pass-through. However, these complexities do not preclude an estimation of whether an SRAM overcharge impacted end purchasers of SRAM-containing products. Dr. Harris has noted that many other markets have the same features as the markets at issue here, and those markets are routinely tested for relationships among variables of interest. Harris Reply

22

Decl. ¶¶ 44-48.  Moreover, divergent pricing and sales practices are not necessarily an impediment to measuring pass-through. Courts have held that "'contentions of infinite diversity of product, marketing practices, and pricing have been made in numerous cases and rejected.'" Rosack v. Volvo of America Corp., 131 Cal. App. 3d 741, 755 (1982) (quoting In re Folding Carton Antitrust Litig., 75 F.R.D. 727, 734 (N.D. Ill. 1977).  Courts may look past "surface distinctions" in "marketing mechanisms" when analyzing whether to certify indirect purchaser classes; "[i]dentical products, uniform prices, and unitary distribution patterns are not indispensable for class certification in this context.'" B.W.I., 191 Cal. App. 3d at 1350 (quoting Shelter Realty Corp. v. Allied Maintenance Corp., 75 F.R.D. 34, 37 (S.D.N.Y. 1977)).

Defendants also argue that, because SRAM is a relatively small portion of the price of an overall product, any price increase in SRAM will have a de minimis effect.  This argument has no merit. Defendants may not shield themselves from liability by fixing prices on a relatively inexpensive item.  See Free v. Abbott Laboratories, 982 F. Supp. 1211, 1217 (M.D. La. 1997) (stating that "a price fixing scheme at the top of the distribution chain" would be actionable if it only "increased the retail price of the product by a few cents per unit").

In sum, IP Plaintiffs have presented plausible methodologies that will be used to perform quantitative analyses to demonstrate class-wide injury.

As to the third element of an anti-trust claim, damages, "[a]ntitrust plaintiffs have a limited burden with respect to

23

showing that individual damages issues do not predominate." <u>In re</u>
<u>Potash Antitrust Litig.</u>, 159 F.R.D. at 697.   IP Plaintiffs are not
required to "supply a 'precise damage formula' at the certification
stage of an antitrust action.   Instead, in assessing whether to
certify a class, the Court's inquiry is limited to whether or not
the proposed methods are so insubstantial as to amount to no method
at all." <u>Id.</u>

IP Plaintiffs have proffered three methodologies for
calculating damages on a class-wide basis: the first compares SRAM
prices before and after the period of the price-fixing conspiracy;
the second compares SRAM prices during the class period with prices
for comparable products; and the third uses Defendants' cost data
to estimate what competitive prices for SRAM should have been.   Dr.
Dwyer concludes that these methods will "allow direct computation
of per-unit overcharges to indirect SRAM purchasers." Dwyer Decl.
¶ 63.   The validity of those methods "will be adjudicated at trial
based upon economic theory, data sources, and statistical
techniques that are entirely common to the class." <u>In re Market-</u>
<u>Makers Antitrust Litig.</u>, 169 F.R.D. at 521.

Defendants have not shown that the methods are "so
insubstantial as to amount to no method at all." <u>Potash</u>, 159
F.R.D. at 697.   Therefore, the Court concludes that common issues
predominate with respect to IP Plaintiffs' proof of the damages
element of the antitrust conspiracy claim, as well as the
conspiracy and impact elements.

B.   Superiority

Rule 23(b)(3) also requires that class resolution must be
"superior to other available methods for the fair and efficient

24

United States District Court
For the Northern District of California

adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."  Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 617 (1997).  In antitrust cases such as this, the damages of individual indirect purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress.

Certifying the IP national injunctive relief class and state classes is superior to, and more manageable than, any other procedure available for the treatment of factual and legal issues raised by IP Plaintiffs' claims.  What would be unmanageable is the institution of countless individual lawsuits with the same facts and legal issues.  See In re Terazosin Hydrochloride Antitrust Litig., 220 F.R.D. 672, 700 (S.D. Fla. 2004) ("Multiple lawsuits brought by thousands of consumers and third-party payors in seventeen different states would be costly, inefficient, and would burden the court system."); See In re Cardizem, 200 F.R.D. at 351.

Defendants are also concerned that this Court will be unable to manage state-law claims from twenty-seven state classes. However, there is no qualitative difference between a federal district court considering class certification of state claims under that state law and a federal court serving as a multi-district litigation forum performing the same task for many federal courts.  Moreover, courts frequently certify classes under the laws of multiple jurisdictions.  See, e.g., Norvir Anti-Trust Litig., 2007 WL 1689899, at *8 (N.D. Cal.) (certifying class under the

common law of forty-eight states); In re Pharm. Indus. Average Wholesale Price Litig., 233 F.R.D. 229, 230-31 (D. Mass. 2006) (certifying multi-state defendant subclasses under the consumer protection laws of forty-one states). Thus, a class action is the superior method of resolving this controversy.

## V.    Expert Evidence

To support their motion for class certification, IP Plaintiffs rely on the declarations of experts Drs. Mark Dwyer and Michael Harris. To support their opposition to IP Plaintiffs' motion, Defendants rely on the declarations of expert Dr. Michelle Burtis. Each party moves to exclude the other's expert declarations under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under the Federal Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589. At the class certification stage of the proceedings, "robust gatekeeping" of expert evidence is not required; rather, the court must assess only whether expert evidence is useful in evaluating whether class certification requirements have been met. Kurihara v. Best Buy Co., 2007 WL 2501698, at *5 (N.D. Cal.) Daubert's

relevance and reliability requirements serve as "useful guideposts" but the court retains discretion in determining how to test reliability as well as whether an expert's testimony is both relevant and reliable.  _Id._; _see also_ _Kumho Tire Co. v. Carmichael_, 526 U.S. 137, 152 (1999).  Although this standard is "more lenient," the court "'must ensure that the basis of the expert opinion is not so flawed that it would be inadmissible as a matter of law.'"  _Sepulveda v. Wal-Mart Stores, Inc._, 237 F.R.D. 229, 235 (C.D. Cal. 2006) (quoting _In re Visa Check/MasterMoney Antitrust Litig._, 280 F.3d 124, 135 (2d Cir. 2001)).

The question for the court is whether the expert evidence is sufficiently probative to be useful in evaluating whether class certification requirements have been met.  _See_ _In re Polypropylene Carpet Antitrust Litigation_, 996 F. Supp. 18, 26 (N.D. Ga. 1997) (at class certification stage court only examined whether the expert's methodology will (a) comport with basic principles, (b) have any probative value and (c) primarily use evidence that is common to all members of the proposed class); _Bacon v. Honda of America Mfg., Inc._, 205 F.R.D. 466, 470-71 (S.D. Ohio 2001) ("'For common questions to exist, plaintiffs' statistical evidence must logically support the inference of discrimination against the class asserted.'") (citation omitted).

Although each side presents myriad valid challenges to the other's expert, the Court concludes that these challenges are of the type that go to the weight of the evidence, not the admissibility.  The economic principles and regression models relied upon by IP Plaintiffs' experts, Drs. Harris and Dwyer, are solidly grounded in the academic literature.  They cite extensive

27

facts and data from this case that they reviewed and relied upon in rendering their opinions.  The Court concludes that their opinions are reliable and admissible.

Similarly, Dr. Burtis' expert opinions are also supported by academic and economic literature.  She reviewed IP Plaintiffs' allegations, Drs. Harris' and Dwyer's opinions and third-party data related to sales and purchases of the relevant products. Therefore, the Court concludes that her opinions are also reliable and admissible.  The parties' motions to exclude reflect disagreement with the opposing parties' position; however, this disagreement does not warrant exclusion.[6]

CONCLUSION

For the foregoing reasons, the Court grants IP Plaintiffs' motion (Docket No. 645) for class certification.

The following nation-wide plaintiff class is hereby certified pursuant to Fed. R. Civ. P. 23(a) and (b)(2) for injunctive and declaratory relief:

> All persons and entities residing in the United States who, from November 1, 1996 through at least December 31, 2006, purchased SRAM in the United States indirectly from the Defendants for their own use and not for resale. Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

---

[6]The Court notes that IP Plaintiffs did not violate the Court's May 21, 2009 Discovery Order.  IP Plaintiffs' experts were permitted to analyze and opine on third party information they possessed at the time that they filed their initial declarations to the extent that information was "referred to and analyzed" by Dr. Burtis.

United States District Court
For the Northern District of California

1    In addition, the following state plaintiff classes are hereby

2  certified pursuant to Fed. R. Civ. P. 23(a) and (b)(3):

3  Arizona:

4        All persons and entities in Arizona who indirectly
        purchased SRAM and/or products containing SRAM, for end

5      use and not for resale, that was manufactured and/or sold
        by one or more of the Defendants during the Class Period.

6      Specifically excluded from this Class are the Defendants,
        the officers, directors or employees of any Defendant; any

7      entity in which any Defendant has a controlling interest;
        and any affiliate, legal representative, heir or assign of

8      any Defendant.  Also excluded are any federal, state or
        local governmental entities, any judicial officer

9      presiding over this action and the members of his/her
        immediate family and judicial staff, and any juror

10     assigned to this action.

11 Arkansas:

12       All persons and entities in Arkansas who indirectly
        purchased SRAM and/or products containing SRAM, for end

13     use and not for resale, that was manufactured and/or sold
        by one or more of the Defendants during the Class Period.

14     Specifically excluded from this Class are the Defendants,
        the officers, directors or employees of any Defendant; any

15     entity in which any Defendant has a controlling interest;
        and any affiliate, legal representative, heir or assign of

16     any Defendant.  Also excluded are any federal, state or
        local governmental entities, any judicial officer

17     presiding over this action and the members of his/her
        immediate family and judicial staff, and any juror

18     assigned to this action.

19 California:

20       All persons and entities in California who indirectly
        purchased SRAM and/or products containing SRAM, for end

21     use and not for resale, that was manufactured and/or sold
        by one or more of the Defendants during the Class Period.

22     Specifically excluded from this Class are the Defendants,
        the officers, directors or employees of any Defendant; any

23     entity in which any Defendant has a controlling interest;
        and any affiliate, legal representative, heir or assign of

24     any Defendant.  Also excluded are any federal, state or
        local governmental entities, any judicial officer

25     presiding over this action and the members of his/her
        immediate family and judicial staff, and any juror

26     assigned to this action.

27 Florida:

28       All persons and entities in Florida who indirectly

purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Hawaii:

All persons and entities in Hawaii who indirectly purchased SRAM and/or products containing SRAM, for personal, family or household use, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Iowa:

All persons and entities in Iowa who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Kansas:

All persons and entities in Kansas who indirectly purchased SRAM and/or products containing SRAM, for personal, family or household use, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of

United States District Court
For the Northern District of California

1   any Defendant.  Also excluded are any federal, state or
    local governmental entities, any judicial officer presiding
2   over this action and the members of his/her immediate
    family and judicial staff, and any juror assigned to this
3   action.

4   Maine:

5   All persons and entities in Maine who indirectly purchased
    SRAM and/or products containing SRAM, for personal family
6   or household use, that was manufactured and/or sold by one
    or more of the Defendants during the Class Period.
7   Specifically excluded from this Class are the Defendants,
    the officers, directors or employees of any Defendant; any
8   entity in which any Defendant has a controlling interest;
    and any affiliate, legal representative, heir or assign of
9   any Defendant.  Also excluded are any federal, state or
    local governmental entities, any judicial officer presiding
10  over this action and the members of his/her immediate
    family and judicial staff, and any juror assigned to this
11  action.

12  Massachusetts:

13  All persons and entities in Massachusetts who indirectly
    purchased SRAM and/or products containing SRAM, for end use
14  and not for resale, that was manufactured and/or sold by
    one or more of the Defendants during the Class Period.
15  Specifically excluded from this Class are the Defendants,
    the officers, directors or employees of any Defendant; any
16  entity in which any Defendant has a controlling interest;
    and any affiliate, legal representative, heir or assign of
17  any Defendant.  Also excluded are any federal, state or
    local governmental entities, any judicial officer presiding
18  over this action and the members of his/her immediate
    family and judicial staff, and any juror assigned to this
19  action.

20  Michigan:

21  All persons and entities in Michigan who indirectly
    purchased SRAM and/or products containing SRAM, for end use
22  and not for resale, that was manufactured and/or sold by
    one or more of the Defendants during the Class Period.
23  Specifically excluded from this Class are the Defendants,
    the officers, directors or employees of any Defendant; any
24  entity in which any Defendant has a controlling interest;
    and any affiliate, legal representative, heir or assign of
25  any Defendant.  Also excluded are any federal, state or
    local governmental entities, any judicial officer presiding
26  over this action and the members of his/her immediate
    family and judicial staff, and any juror assigned to this
27  action.

28

**United States District Court**
For the Northern District of California

Minnesota:

All persons and entities in Minnesota who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Montana:

All persons and entities in Montana who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Nevada:

All persons and entities in Nevada who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

New Mexico:

All persons and entities in New Mexico who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants,

the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

New York:

All persons and entities in New York who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

North Carolina:

All persons and entities in North Carolina who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

North Dakota:

All persons and entities in North Dakota who indirectly purchased products containing SRAM, for end use and not for resale, that were manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

United States District Court
For the Northern District of California

Pennsylvania:

All persons and entities in Pennsylvania who indirectly purchased SRAM and/or products containing SRAM, for personal, family or household use, that was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Puerto Rico:

All persons and entities in Puerto Rico who indirectly purchased products containing SRAM, for end use and not for resale, that were manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Rhode Island:

All persons and entities in Rhode Island who indirectly purchased SRAM and/or products containing SRAM, for personal, family or household use, that was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

South Dakota:

All persons and entities in South Dakota who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any

entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Tennessee:

All persons and entities in Tennessee who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Utah:

All persons and entities in Utah who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Washington:

All persons and entities in Washington who indirectly purchased SRAM and/or products containing SRAM, for end use and not for resale, that was manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

West Virginia:

All persons and entities in West Virginia who indirectly

United States District Court
For the Northern District of California

purchased SRAM and/or products containing SRAM, for end use
and not for resale, that was manufactured and/or sold by one
or more of the Defendants during the Class Period.
Specifically excluded from this Class are the Defendants,
the officers, directors or employees of any Defendant; any
entity in which any Defendant has a controlling interest;
and any affiliate, legal representative, heir or assign of
any Defendant.  Also excluded are any federal, state or
local governmental entities, any judicial officer presiding
over this action and the members of his/her immediate family
and judicial staff, and any juror assigned to this action.

Wisconsin:

All persons and entities in Wisconsin who indirectly
purchased SRAM and/or products containing SRAM, for end use
and not for resale, that was manufactured and/or sold by one
or more of the Defendants during the Class Period.
Specifically excluded from this Class are the Defendants,
the officers, directors or employees of any Defendant; any
entity in which any Defendant has a controlling interest;
and any affiliate, legal representative, heir or assign of
any Defendant.  Also excluded are any federal, state or
local governmental entities, any judicial officer presiding
over this action and the members of his/her immediate family
and judicial staff, and any juror assigned to this action.

District of Columbia:

All persons and entities in the District of Columbia who
indirectly purchased SRAM and/or products containing SRAM,
for personal, family or household use, that was manufactured
and/or sold by one or more of the Defendants during the
Class Period.  Specifically excluded from this Class are the
Defendants, the officers, directors or employees of any
Defendant; any entity in which any Defendant has a
controlling interest; and any affiliate, legal
representative, heir or assign of any Defendant.  Also
excluded are any federal, state or local governmental
entities, any judicial officer presiding over this action
and the members of his/her immediate family and judicial
staff, and any juror assigned to this action.

The following Plaintiffs are appointed as class
representatives:

| State | Plaintiff |
|---|---|
| Arizona | Lara Sterenberg |
| Arizona | United Food & Commercial Workers Local 99 |
| Arkansas | Robert Harmon |

**United States District Court**
For the Northern District of California

| | |
|---|---|
| California | Michael Brooks |
| California | Lawrence Markey |
| California | Roman J. Munoz |
| California | Joseph Solo |
| California | Stargate Films |
| California | United Food & Commercial Workers Local 8 |
| District of Columbia | Dona Culver |
| Florida | Ronnie Barnes |
| Florida | Ryan Edwards |
| Florida | John Pharr d/b/a JP Micro |
| Hawaii | Ramon Oyadomari |
| Hawaii | Unite Here Local 5 |
| Iowa | Herbert Harmison |
| Iowa | David Sly |
| Kansas | nXio, LLC |
| Maine | Penobscot Eye Care |
| Massachusetts | James W. Allen |
| Michigan | Matthew Frank |
| Minnesota | Fairmont Orthopedics & Sports Medicine, P.A. |
| Minnesota | Reclaim Center, Inc. |
| Montana | Henry Kornegay |
| Montana | Our Montana, Inc. |
| Nevada | Culinary Workers Union Local 226 |
| Nevada | Allen Robert Kelley |
| New Mexico | Daniel Yohalem |
| New York | Rodrigo Bazan Gatti |
| New York | CHP Media, Inc. |

**United States District Court**
For the Northern District of California

| | |
|---|---|
| North Carolina | Curtis Hogue, Jr. |
| North Dakota | Ward Cater |
| Pennsylvania | Beth O'Donnell |
| Puerto Rico | Carlos R. Carrillo |
| Puerto Rico | Javier Oyola-Alemany |
| Rhode Island | Kevin Kicia |
| South Dakota | Mitch Mudlin |
| Tennessee | Frank C. Warner |
| Utah | Christopher K. Giauque |
| Washington | Christopher Smith |
| West Virginia | Donna Hark |
| West Virginia | David Loomis |
| Wisconsin | Mark and Shannon Schneider |
| Wisconsin | Christopher J. Stawski |

The Court appoints Zelle Hofmann Voelbel & Mason LLP as class counsel for IP Plaintiffs. Class counsel for IP Plaintiffs shall prepare and submit within thirty days from the date of this Order a proposed form of notice to be sent to members of the Class. Defendants may file any comments to the notice within fifteen days and IP Plaintiffs may reply fifteen days thereafter. Defendants shall prepare and submit to the Court and to counsel for IP Plaintiffs within thirty days from the date of this Order a list of names and addresses of all Class Members who can be identified with diligent effort.

The Court denies Defendants' motions to exclude the expert opinions and rebuttal opinions of Drs. Mark Dwyer and Michael Harris (Docket Nos. 706 and 797); and denies IP Plaintiffs' motion to exclude the expert opinion of Dr. Michelle Burtis (Docket No.

38

799).

    IT IS SO ORDERED.


Dated: 11/25/09

_____
CLAUDIA WILKEN
United States District Judge