Lee H. Rubin (State Bar #141331)
MAYER BROWN LLP
Two Palo Alto Square
Suite 300
Palo Alto, CA 94306-2000
(650) 331-2000
lrubin@mayerbrown.com

Robert E. Bloch (*pro hac vice*)
Gary A. Winters (*pro hac vice*)
Aimée D. Latimer-Zayets (*pro hac vice*)
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006-1001
(202) 263-3000
rbloch@mayerbrown.com
gwinters@mayerbrown.com
alatimer-zayets@mayerbrown.com

*Counsel for Defendant Cypress Semiconductor Corporation*

[Additional Moving Counsel and Defendant Listed on Signature Page]

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| **IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION** | Master File 4:07-md-1819-CW<br><br>MDL No. 1819 |
| **This Document Relates To:**<br><br>**ALL DIRECT AND INDIRECT PURCHASER ACTIONS** | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE DIRECT AND INDIRECT PURCHASER CLASSES OR IN THE ALTERNATIVE TO STAY THE ACTIONS PENDING IDENTIFICATION OF APPROPRIATE CLASS REPRESENTATIVES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:      October 14, 2010<br>Time:     2:00 p.m.<br>Place:    Courtroom 2, 4th Floor<br>Judge:   Hon. Claudia Wilken |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

STATEMENT OF ISSUES TO BE DECIDED ........................................................................ 1

INTRODUCTION .................................................................................................................... 2

FACTUAL BACKGROUND ................................................................................................... 3

    A.    The Class Representatives ......................................................................... 4

        1.    Direct Purchasers ......................................................................... 4

        2.    Indirect Purchasers ...................................................................... 4

    B.    The Damages Claims ................................................................................ 5

        1.    Direct Purchasers ......................................................................... 5

        2.    Indirect Purchasers ...................................................................... 5

    C.    The Named Class Representatives' Purchases of SRAM ......................... 6

        1.    Direct Purchaser Plaintiffs: Westell ........................................... 6

        2.    Indirect Purchaser Plaintiffs ....................................................... 7

        a.    Arkansas, District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Dakota, Utah, Wisconsin ........................................................................ 8

            b.    Montana and Washington ............................................. 8

            c.    Arizona, California, Hawaii, Nevada, Puerto Rico, Tennessee, West Virginia ................................................ 9

            d.    California and Pennsylvania ......................................... 10

ARGUMENT ........................................................................................................................... 11

I.    WESTELL AND ALL NAMED PLAINTIFFS IN 17 STATES LACK STANDING BECAUSE THEY DID NOT PURCHASE SRAM OR SRAM-CONTAINING PRODUCTS DURING THE DAMAGES PERIODS ......................... 11

II.    NAMED PLAINTIFFS IN MONTANA AND WASHINGTON LACK STANDING BECAUSE THEY CANNOT SHOW THAT THEY PURCHASED PRODUCTS CONTAINING DEFENDANTS' SRAM ............................................ 13

III.    NAMED PLAINTIFFS IN ARIZONA, CALIFORNIA, HAWAII, NEVADA, PUERTO RICO, TENNESSEE, AND WEST VIRGINIA LACK STANDING BECAUSE THEY CANNOT SHOW THAT THEY PURCHASED PRODUCTS WITH THE DEFENDANTS' SRAM ............................................................... 13

IV.    NAMED PLAINTIFFS IN CALIFORNIA AND PENNSYLVANIA LACK STANDING BECAUSE THEY CANNOT SHOW THAT THE PRODUCTS THEY PURCHASED CONTAINED PSRAM ............................................... 16

V.    BECAUSE WESTELL AND THE NAMED IP PLAINTIFFS LACK STANDING, THEY CANNOT SERVE AS CLASS REPRESENTATIVES AND THE CLASSES SHOULD BE DECERTIFIED .................................................. 16

CONCLUSION ......................................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. Wright*, 468 U.S. 737 (1984) ..................................................................................... 11

*Amarel v. Connell*, 102 F.3d 1494 (9th Cir. 1996) ......................................................... 12, 13, 14

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ................................................................. 18

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) ........................................ 11, 17

*Casey v. Lewis*, 4 F.3d 1516 (9th Cir. 1993) .......................................................................... 12

*East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395 (1977)..................................... 17

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*, 528 U.S. 167 (2000) .................................. 11

*Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982)......................................................................... 18

*Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253 (9th Cir. 2008).................................................. 12

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)................................................................... 12

*Johnson v. Bd. of Regents*, 263 F.3d 1234 (11th Cir. 2001)............................................... 17, 19

*Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003) ............................... 18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................. 11, 12, 15

*Nelsen v. King County*, 895 F.2d 1248 (9th Cir. 1990) ............................................................ 17

*O'Shea v. Littleton*, 414 U.S. 488 (1974).......................................................................... 12, 17

*Pence v. Andrus*, 586 F.2d 733 (9th Cir. 1978)....................................................................... 17

*Prado-Steiman v. Bush*, 221 F.3d 1266 (11th Cir. 2000)......................................................... 17

*Rector v. City & County of Denver*, 348 F.3d 935 (10th Cir. 2003)..................................... 17, 18

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009).................................................. 18

*United States v. Viltrakis*, 108 F.3d 1159 (9th Cir. 1997)......................................................... 11

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers
    Int'l Union AFL-CIO, CLC v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ....................................................................................... 18

ii

## TABLE OF AUTHORITIES(cont'd)

**Page(s)**

*Warth v. Seldin*, 422 U.S. 490 (1975) ........................................................................... 17

*Williams v. Boeing Co.*, 2005 WL 2921960 (W.D. Wash. Nov. 4, 2005) ..................................... 18

*Williams v. Boeing Co.*, 517 F.3d 1120 (9th Cir. 2008).............................................11, 12, 15 17

**CONSTITUTIONAL PROVISIONS AND RULES**

U.S. Const., Art. III..............................................................................11, 12, 13, 17

Fed. R. Civ. P. 23 ........................................................................................ 17, 18

Fed. R. Civ. P. 23(a)(3) .................................................................................. 3, 17

Fed. R. Civ. P. 23(a)(4) .................................................................................. 3, 17

Fed. R. Civ. P. 23(c)(1)(C) ...................................................................................1

Fed. R. Civ. P. 23(b)(3)........................................................................................3

Fed. R. Civ. P. 30(b)(6)........................................................................................7

1

**NOTICE OF MOTION AND MOTION TO DECERTIFY**

2

**THE DIRECT AND INDIRECT PURCHASER CLASSES**

3

**OR IN THE ALTERNATIVE TO STAY THE ACTIONS**

4

**PENDING IDENTIFICATION OF APPROPRIATE CLASS REPRESENTATIVES**

5

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

6

**PLEASE TAKE NOTICE** that on October 14, 2010, at 2:00 p.m., or as soon thereafter

7

as the matter may be heard, in the United States District Court for the Northern District of

8

California, Courtroom 2, Fourth Floor, 1301 Clay Street, Oakland, California, before the

9

Honorable Claudia Wilken, defendants Cypress Semiconductor Corporation ("Cypress"),

10

Samsung Electronics Company, Ltd., Samsung Semiconductor, Inc., and Samsung Electronics

11

America, Inc. ("Samsung") will and hereby do move the Court, pursuant to Federal Rule of Civil

12

Procedure 23(c)(1)(C), for an Order decertifying the Direct and Indirect Purchaser classes, or, in

13

the alternative, to stay the actions pending the identification of appropriate class representatives.

14

This motion is based upon this Notice of Motion; the Memorandum of Points and

15

Authorities; the Declaration of Gary A. Winters in Support of Cypress and Samsung Defendants'

16

July 15, 2010 Motions and the exhibits thereto; the complete files in this consolidated action;

17

argument of counsel; and other further matters as this Court may consider.

18

**STATEMENT OF ISSUES TO BE DECIDED**

19

1.      Whether the Direct Purchaser ("DP") class should be decertified, or in the

20

alternative stayed pending the identification of appropriate class representatives, because the sole

21

named plaintiff, Westell Technologies, Inc. ("Westell"), having made no direct purchases of

22

SRAM during the period in which DP Plaintiffs contend that SRAM prices were inflated due to

23

the alleged price-fixing conspiracy, has no injury and therefore lacks standing to sue on behalf of

24

the class.

25

2.      Whether the Indirect Purchaser ("IP") classes in all 27 states should be

26

decertified, or in the alternative stayed pending the identification of appropriate class

27

representatives, because (a) in 17 states, the named plaintiffs made no indirect purchases of

28

1  SRAM-containing products during the periods in which the IP Plaintiffs contend that those

2  products' prices were inflated due to the alleged price-fixing conspiracy, and (b) in the remaining

3  10 states, the named plaintiffs cannot demonstrate that they purchased products containing

4  Defendants' SRAM when prices allegedly were inflated, and therefore all named plaintiffs lack

5  standing to sue on behalf of their respective classes.

6  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

7  **INTRODUCTION**

8          With the filing of their last expert report on June 24, 2010, DP Plaintiffs have made it

9  clear that their sole named class representative, Westell, suffered no injury as a result of the

10  price-fixing conspiracy alleged in this case.  DP Plaintiffs' expert claims that the alleged

11  conspiracy caused damages to direct purchasers of SRAM only during the 27-month period from

12  October 1999 to December 2001.  Yet Westell made no direct purchases of SRAM from

13  Samsung, Cypress, or their alleged co-conspirators that have settled (collectively, "Defendants")

14  during that period.  DP Plaintiffs therefore have acknowledged — more than six months before

15  trial — that if they were to succeed in proving damages, Westell would walk away with nothing.

16  Having thus conceded that it incurred no injury, Westell lacks standing to sue.  And a party that

17  lacks standing cannot serve as the representative of a class.  Because Westell is the only named

18  representative of the DP class, the class should be decertified, or, in the alternative, the action

19  should be stayed pending the identification of an appropriate class representative.

20          The IP Plaintiffs face the same problem in 17 states.  Their expert, in his final report

21  submitted on June 24, 2010, claims that the alleged conspiracy caused damages to indirect

22  purchasers of seven products containing "fast" and "slow" SRAM from 1998 to 2001, and to

23  indirect purchasers of two products containing PSRAM from 2003 to September 2005.  Yet in 17

24  states, none of the named plaintiffs purchased any of these products during these two periods of

25  time.  As with Westell, these named plaintiffs have conceded that they have no injury.

26  Consequently, they lack standing, and cannot represent a class of other indirect purchasers of

27  SRAM-containing products in their respective states.

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE DIRECT AND INDIRECT PURCHASER CLASSES OR TO STAY;
MEMORANDUM OF POINTS AND AUTHORITIES (4:07-md-1819 CW)

1    In the remaining 10 states, there are other reasons why the named plaintiffs lack standing.

2   In two states, they cannot identify when during the class period they purchased SRAM-

3   containing products.  Because injury occurs only if a purchase was made during the 1998-2001

4   or 2003-2005 damage periods, any injury to these plaintiffs is speculative.  In seven states,

5   although there are named plaintiffs who purchased SRAM-containing products during the

6   damage periods, they cannot show that these products contained SRAM manufactured by one of

7   the Defendants.  Because injury occurs only if a product was purchased containing the

8   Defendants' SRAM, these plaintiffs cannot establish standing.  Relatedly, in two states, where

9   the relevant purchases by the named plaintiffs were made only during the time when PSRAM

10   prices were elevated, those plaintiffs cannot establish that the product they bought contained

11   PSRAM.[1]

12    In sum, because there is no state in which a named plaintiff has standing to sue, the IP

13   classes should be decertified, or in the alternative stayed pending the identification of appropriate

14   class representatives.[2]

15                              **FACTUAL BACKGROUND**

16    This case involves allegations by direct and indirect purchasers of SRAM that Defendants

17   engaged in a conspiracy to fix the price of SRAM from November 1996 to December 2005 or

18   2006.[3]  Both groups of purchasers seek damages for allegedly inflated prices — DP Plaintiffs for

19

20   _____

21    [1] California falls into two categories, hence it is counted twice.

22    [2] Defendants recognize that an absence of standing by the named class representatives
     that arises after certification of the classes does not divest the Court of jurisdiction (although it
23   does merit summary judgment on the individual named plaintiffs' claims, as Samsung argues in
     its motions for summary judgment).  Thus, Defendants submit that the appropriate remedy is to
24   decertify the classes, or stay the actions until both DP and IP Plaintiffs can identify appropriate
     class representatives with standing.  In the event the classes are decertified, it is *not* Defendants'
25   position that full-blown class certification proceedings must be repeated.  Instead, so long as the
     new named class representatives have standing, plaintiffs must demonstrate that the claims of
26   these new representatives are typical of those of the class, and that they can fairly and adequately
     protect the interests of the class.  Fed. R. Civ. P. 23(a)(3), (4).

27    [3] Direct purchasers allege that the conspiracy lasted until 2005 (First Am. Cplt. (Dkt.
     270), at ¶1), while indirect purchasers allege that it lasted until 2006 (Fourth Am. Cplt. (Dkt.
28   902), at ¶199).  The difference is not material to this motion.

1   SRAM purchased directly from Defendants, and IP Plaintiffs for purchases of seven products

2   containing SRAM that were bought for end use and not for resale.  DP Plaintiffs pursue their

3   claims under § 1 of the Sherman Act, while IP Plaintiffs pursue their damages claims under the

4   antitrust, consumer protection and common law of 27 states.[4]

5             **A.**      **The Class Representatives**

6                   **1.**      **Direct Purchasers**

7         The DP Plaintiffs' Consolidated Amended Complaint named three representative

8   plaintiffs: Alexander Ma d/b/a Network Systems Engineering Consulting, Alec Berezin, and

9   Westell.  First. Am. Cplt (Dkt. 270), at ¶¶19-21.  In their Motion for Class Certification, DP

10  Plaintiffs asserted that Westell "is the most appropriate class representative."  Dkt. 437, at 2 n.2.

11  Among other things, DP Plaintiffs represented that Westell, "like each class member, is a direct

12  purchaser of SRAM who was overcharged as a result of Defendants' price-fixing conspiracy, and

13  has a mutual interest in establishing Defendants' liability and recovering damages." *Id.* at 14.

14  Westell's injuries, DP Plaintiffs alleged, "were incurred in the same manner" as those of other

15  class members, and Westell seeks "relief that is substantially identical to the relief that would be

16  sought by all class members." *Id.* at 15.  Based on these and other representations, this Court

17  certified a class of direct purchasers of SRAM from November 1996 to December 2005, with

18  Westell as the sole class representative.   Order Granting Plaintiffs' Motion for Class

19  Certification (Dkt. 566), at 13-14.

20                  **2.**      **Indirect Purchasers**

21        The IP Plaintiffs' Fourth Amended Complaint (Dkt. 902) named, as plaintiffs, various

22  individuals and businesses in the states in which IP Plaintiffs sought damages. *Id*. ¶¶8-109.[5]

23  _____

24       [4] Classes were certified in 25 states, the District of Columbia, and Puerto Rico.  For the

25  sake of simplicity, we refer to all 27 jurisdictions as "states."

26       [5] For reasons unknown, IP Plaintiffs named in the Fourth Amended Complaint some
    plaintiffs that had not been proffered as representative plaintiffs in the earlier-filed motion for
    class certification.  They also named plaintiffs in states for which they did not even seek

27  damages.  Given the Court's Order Granting Class Certification in the indirect purchaser action
    (Dkt. 903), which identified the representative plaintiffs in each of the 27 states, these additional

28  allegations in the complaint are irrelevant to the present motion.  Samsung's motion for summary

1    Each of these named plaintiffs allegedly purchased an SRAM-containing product for end use.

2    *Id*.  In their Motion for Class Certification, IP Plaintiffs requested that one or more of these

3    individuals or businesses serve as the class representative in each state.  Dkt. 645, at 9-11.  Like

4    the DP Plaintiffs, the IP Plaintiffs alleged that the class representatives "share a strong and

5    identical interest in establishing liability and impact" with the rest of the class members.  *Id*. at 9.

6    The Court certified indirect purchaser damages classes in each of the 27 states, and appointed

7    between one and six representative plaintiffs in each state.  Order Granting IP Plaintiffs' Motion

8    for Class Certification (Dkt. 903), at 36-38.  The Court subsequently amended the Order

9    Granting Class Certification to define "SRAM-containing products" as a set of specific products

10   that contain SRAM.  Order of April 5, 2010 (Dkt. 981).

11         **B.**     **The Damages Claims**

12               **1.**     **Direct Purchasers**

13         DP Plaintiffs submitted the report of their damages expert, Dr. Armando Levy, on

14   January 25, 2010.  Ex. 1.[6]  Dr. Levy stated that, while he was made aware of evidence that the

15   conspiracy lasted from November 1996 to at least March 2005, he found that the conspiracy was

16   "most effective" in the 27-month period from October 1999 to December 2001.  *Id*. at 12.  He

17   therefore focused only on that time period in calculating damages.  Using regression analysis,

18   Dr. Levy purported to isolate the effect of the conspiracy from other economic factors that could

19   affect price levels, and found that prices were artificially elevated by varying percentages for fast

20   and slow SRAMs.  *Id*. at 16-17.  Dr. Levy calculated damages to class members by applying the

21   overcharge percentages to the alleged conspirators' sales during the October 1999-December

22   2001 time period.  *Id*. at 18, Table 3.  In his reply report submitted on June 24, 2010, he

23   confirmed that the damage period is October 1999 to December 2001.  Ex. 2, ¶4.  DP Plaintiffs

24   have submitted no other evidence of injury or damages flowing from the alleged conspiracy apart

25   from Dr. Levy's expert opinion.

26   _____

     judgment in the IP action addresses those claims.

27

        [6] Cites to "Ex. __" are exhibits to the Declaration of Gary A. Winters in Support of

28   Cypress and Samsung Defendants' July 15, 2010 Motions.

**2.      Indirect Purchasers**

IP Plaintiffs submitted the corrected report of their damages expert, Dr. Mark Dwyer, on May 5, 2010.  Ex. 3.  Like Dr. Levy, Dr. Dwyer was made aware of evidence purportedly showing a conspiracy from November 1996 to at least March 2005, but evaluated impact only in a subset of that period.  *Id.* ¶18.  For fast and slow SRAM, Dr. Dwyer focused on the period January 1998-December 2001, *id.*, while for PSRAM he focused on the period January 2003 to September 2005.[7]  *Id.* ¶22.

Using the same general type of regression analysis as Dr. Levy (though specifying it differently), Dr. Dwyer found artificially elevated prices to direct purchasers during both periods.  Ex. 3 (Dwyer Report ¶¶25-27).  He then purported to determine the rate at which the overcharge would be passed through the chain of distribution to end users.  Plaintiffs' other damages expert, Dr. Michael Harris, then combined the overcharge amounts to direct purchasers with pass-through rates to calculate damages.  Ex. 4 (Harris Report ¶¶119-127).  IP Plaintiffs sought damages for seven of the SRAM-containing products defined by the Court: desktop computers, modems, PDAs, routers, servers, smartphones and switches.  For the 1998-2001 period, IP Plaintiffs sought damages for all seven of these products, whereas for the 2003-2005 period they sought damages only for the two products that used PSRAM, PDAs and smartphones.  Dr. Dwyer confirmed in his reply report of June 28, 2010, that these were the proper time periods for measuring overcharges in order to calculate damages to end users (Ex. 5 (Dwyer Reply Report ¶¶42, 50), and Dr. Harris, in his reply report submitted on June 24, 2010, did not calculate damages to IP Plaintiffs outside these two time periods.  IP Plaintiffs have submitted no other evidence of injury or damages flowing from the alleged conspiracy apart from Dr. Dwyer's and Dr. Harris' expert opinions.

**C.      The Named Class Representatives' Purchases of SRAM**

**1.      Direct Purchaser Plaintiffs: Westell**

---

[7] PSRAM, an acronym for pseudo-SRAM, "is a type of memory that takes the qualities of SRAM and combines them with the advantages of DRAM."  Ex. 4 (Harris Report ¶20).

1   Discovery has made it clear that Westell made no direct purchases of SRAM from

2   Defendants between October 1999 and December 2001.  In response to Defendants' discovery

3   requests, Westell produced a spreadsheet purporting to show all of its purchases of SRAM

4   during the class period.  Ex. 6.  Westell's corporate representative, Mark Skowronski, testified at

5   the company's Rule 30(b)(6) deposition that the spreadsheet showed that Westell's first direct

6   purchase of SRAM was in 2003.  Ex. 7 (Skowronski Dep. 82:10-13("Q: When's the first

7   instance that you purchased a piece of SRAM from a manufacturer that was selling its own

8   SRAM?  A: 6-5-2003.")).  This purchase was from ISSI, a defendant that has settled.

9   Skowronski Dep. 82:14-19.  All of Westell's prior purchases of SRAM shown on the spreadsheet

10  were from distributors such as Arrow or Avnet (*see* Skowronski Dep. at 81:19-21); as to those,

11  Westell was an indirect purchaser from the defendants.  Mr. Skowronski explained that Westell

12  switched from purchasing SRAM through distributors to purchasing it directly from

13  manufacturers "to minimize the cost," and it did not begin to make these direct purchases until

14  "certainly after 2001."  Skowronski Dep. at 71:17-72:4.

15  Counsel for DP Plaintiffs stated at the deposition, however, that Westell had made some

16  additional purchases of SRAM not reflected on the spreadsheet.  *See* Skowronski Dep. 9:17-10:6.

17  In response to a request by Defendants to produce the additional evidence of Westell's purchases

18  of SRAM (Ex. 8 (July 10, 2008 letter from Michael T. Brody to Neil Swartzberg)), Westell

19  produced a second spreadsheet that showed additional purchases of SRAM.  Ex. 9.  This second

20  spreadsheet, like the first one, showed that Westell made no direct purchases of SRAM from any

21  of the defendants named in this litigation during Dr. Levy's damages period of October 1999 to

22  December 2001.  Instead, all such purchases during the damages period were from distributors;

23  the second spreadsheet further showed that the first direct purchase of SRAM from any of the

24  defendants was from ISSI in January 2005.

### 2.   Indirect Purchaser Plaintiffs

26  In Appendix A to their Reply Memorandum in Support of Class Certification (Dkt. 936),

27  IP Plaintiffs summarized the evidence of each named plaintiff's purchases of SRAM-containing

28

7

products.  See Ex. 10 ("Pl. Reply Appendix").  The states can be grouped into several categories.

          **a.**      **Arkansas, District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Dakota, Utah, Wisconsin**

In these 17 states, there is no named plaintiff or plaintiffs who purchased a product containing fast or slow SRAM during the 1998-2001 period, or who purchased a product containing PSRAM during the 2003-2005 time period.  All purchases of SRAM-containing products by the named plaintiffs in these states occurred at times when IP Plaintiffs contend those products were not subject to an overcharge.

As an example, consider Arkansas.  There is one representative plaintiff in that state, Robert Harmon.  According to IP Plaintiffs' submission and the cited evidence, Mr. Harmon purchased routers in 2004 and 2005.  Pl. Reply Appendix; Ex. 11 (Harmon interrogatory answers).  IP Plaintiffs seek damages for routers, however, only during 1998-2001.  Mr. Harmon purchased no other products during the two damage periods.  The evidence is of a similar quality in the remaining states in this category.  *See* Pl. Reply Appendix;  Exs. 11-13, 17, 19, 22, 98-128 (interrogatory answers from named plaintiffs in the 17 states).

          **b.**      **Montana and Washington**

IP Plaintiffs claim that one of the named plaintiffs in Montana, Henry Kornegay, purchased a router "during the class period."  Pl. Reply Appendix at 8; Ex. 12 (Kornegay interrogatory answers).  Similarly, they claim that the named plaintiff in Washington, Christopher Smith, purchased two modems "during [the ] class period."  Pl. Reply Appendix at 12; Ex. 13 (Smith interrogatory answers).  Mr. Kornegay's and Mr. Smith's interrogatory responses, on which these statements are based, are no more specific as to the time period.[8]

          **c.**      **Arizona, California, Hawaii, Nevada, Puerto Rico, Tennessee, West Virginia**

---

[8] The other named plaintiff in Montana, Our Montana, Inc., falls into the category discussed in subsection (a) above, as it did not purchase an SRAM-containing product during the damages periods.  Pl. Reply Appendix at 8 (plaintiff purchased a modem in 2002).

8

1        In these states, IP Plaintiffs have submitted evidence that a named plaintiff bought one or

2   more of the seven SRAM-containing products from 1998 to 2001.  Defendants were not,

3   however, the only manufacturers of SRAM that was incorporated into end use products during

4   this period.  *See* Ex. 14 (Semico Report at 22-30 (showing sales by companies such as Winbond,

5   Sharp, White Electronic Designs, Alliance, Sanyo, Epson, IDT, IBM, and Freescale).  The

6   evidence does not reveal whether the specific brand or model of product purchased by these

7   named plaintiffs contained SRAM manufactured by one of the Defendants.

8        ●   Arizona:  Named plaintiff UFCW Local 99 purchased 3Com switches in March

9            1999 and January 2001.  Pl. Reply Appendix at 1; Ex. 15 (Local 99 testimony).

10           IP Plaintiffs have provided no evidence that these switches contain Defendants'

11           SRAM.[9]

12       ●   California: One named plaintiff, UFCW Local 8, purchased an HP Procurve

13           switch in July 2001.  Pl. Reply Appendix at 3; Ex. 16 (Local 8 testimony).  IP

14           Plaintiffs have provided no evidence that this model of switch contained

15           Defendants' SRAM.[10]

16       ●   Hawaii: One named plaintiff, Ramon Oyadomori, purchased a US Robotics

17           modem in 2000.  Pl. Reply Appendix at 5; Ex. 17 (Oyadomori interrogatory

18           answers).  IP Plaintiffs have provided no evidence that this model of switch

19           contained Defendants' SRAM.[11]

20       ●   Nevada: One named plaintiff, Culinary Workers Union Local 226, purchased a

21           workstation, a router, a switch and a firewall between 1998 and 2001.  Pl. Reply

22   _____

23       [9] The other named plaintiff in Arizona, Lara Sterenberg, falls into the category discussed
     in subsection (a) above, as she purchased modems in 2005 and a smartphone in 2006 — both
24   outside the damage periods for those products.  Pl. Reply Appendix at 1.

25       [10] UFCW Local 8 also purchased a smartphone in May 2005.  That purchase is addressed
     in subsection (d) below.  Several other named plaintiffs in California fall into the category
26   discussed in subsection (a) above, as they purchased SRAM-containing products outside the
     damages periods.  Pl. Reply Appendix at 2-3.

27

     [11] The other named plaintiff in Hawaii, Unite Here Local 5, purchased a server in 2005,
28   outside the damages period for that product.  Pl. Reply Appendix at 5.

1    Appendix at 8; Ex. 18 (Local 226 testimony).  Although IP Plaintiffs submitted

2    evidence that SRAM is used in these products, the evidence does not show that

3    the SRAM in the models purchased by the named plaintiff contained Defendants'

4    SRAM.[12]

5    •    Puerto Rico: One named plaintiff, Javier Oyala-Alemany, purchased a Cnet Tech

6          modem in July 2001.  Pl. Reply Appendix at 11; Ex. 19 (Oyala-Alemany

7          interrogatory answers).  IP Plaintiffs have submitted no evidence that this

8          particular model used Defendants' SRAM.[13]

9    •    Tennessee: The named plaintiff, Frank Warner, purchased a Diamond Multimedia

10         Systems modem in September 1999.  Pl. Reply Appendix at 11; Ex. 20 (Warner

11         testimony).  Although IP Plaintiffs submitted evidence that Diamond considered

12         purchasing SRAM manufactured by Defendants, that same evidence also shows

13         that Diamond considered purchasing SRAM manufactured by non-defendant

14         Alliance.  Ex. 21.  It is unclear whether the particular model of modem Mr.

15         Warner purchased contained Defendants' SRAM.

16   •    West Virginia: One named plaintiff, Donna Hark, purchased a Linksys router in

17         1999.  Pl. Reply Appendix at 12; Ex. 22 (Hark interrogatory answer).  Although

18         IP Plaintiffs purported to submit evidence that Defendants sold SRAM to Linksys

19         (*see* Exhibits cited in July 2, 2009 Indirect Purchasers' Reply Memorandum in

20         Support of Motion for Class Certification, at 26 n.25 (Dkt. 749)), Linksys'

21         discovery responses state that only three of its products contain standalone

22         SRAM.  Ex. 23.[14]

23

24   _____

25   [12] The other named plaintiff in Nevada, Allen Robert Kelley, purchased a router in 2005,
     outside the damages period for this product.  Pl. Reply Appendix at 9.

26   [13] The other named plaintiff in Puerto Rico, Carlos Carrillo, purchased a router in 2006,
     outside the damages period for this product.  Pl. Reply Appendix at 10.

27

28   [14] The other named plaintiff in West Virginia, David Loomis, purchased a router in 2005,
     outside the damages period.  Pl. Reply Appendix at 12.

10

**d.     California and Pennsylvania**

In California and Pennsylvania, there is a named plaintiff who purchased a Blackberry smartphone between 2003 and September 2005.  Pl. Reply Appendix at 3, 10 (plaintiffs UFCW Local 8 and Beth O'Donnell).  However, it cannot be determined whether those Blackberries contained PSRAM — the only type of SRAM allegedly subject to an overcharge during that period of time — or fast or slow SRAM.  IP Plaintiffs identified evidence produced by RIM, the maker of the Blackberry, showing that Samsung and Micron supplied SRAM for Blackberries sold during the 2003-2005 time period.  Ex. 24 (document produced by RIM).  However, it is apparent from inspection of the document that many of the units RIM sold contained fast or slow SRAM, not PSRAM.  The units containing PSRAM are those on the line showing "utRAM," which is Samsung's name for that product.  *See* Ex. 25 (O.S. Kwon Rule 30(b)(6) Dep., 2/23/10, at 121:5-122:1); Ex. 14 (Semico Report, at 28).  RIM sold Blackberries containing both SRAM and Samsung's utRAM during the period of time when the named plaintiffs in California and Pennsylvania purchased their Blackberries.  There is no way to determine from this or any other evidence in the record whether the named plaintiffs' Blackberries contained PSRAM, as opposed to fast or slow SRAM.

**ARGUMENT**

**I.     WESTELL AND ALL NAMED PLAINTIFFS IN 17 STATES LACK STANDING BECAUSE THEY DID NOT PURCHASE SRAM OR SRAM-CONTAINING PRODUCTS DURING THE DAMAGES PERIODS**

"Article III of the United States Constitution 'requires a litigant to have standing to invoke the power of a federal court.'"  *Williams v. Boeing Co.*, 517 F.3d 1120, 1126-27 (9th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750-51 (1984)).  Standing is a jurisdictional issue that "can be raised at any time, including by the court *sua sponte*."  *United States v. Viltrakis*, 108 F.3d 1159, 1160 (9th Cir. 1997).  The "irreducible constitutional minimum" of standing is an injury-in-fact suffered as result of the defendant's conduct.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized. . . and (b) actual or imminent, not conjectural or hypothetical."

11

1   *Id.* (internal citations and quotation marks omitted).  Moreover, the injury must be "fairly

2   traceable to the challenged action of the defendant," and it must be "likely, as opposed to merely

3   speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc.*

4   *v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 180-81 (2000).  The elements of standing "are not mere

5   pleading requirements but rather an indispensable part of the plaintiff's case," *Lujan*, 504 U.S. at

6   561, and the plaintiff bears the burden of showing that standing is present.  *Bates v. United*

7   *Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc).

8        "At least one *named* plaintiff must satisfy the actual injury component of standing in

9   order to seek relief on behalf of a class."  *Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir. 1993)

10  (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494-95 (1974)).  Standing must be present not only at

11  the outset of litigation, but "must continue throughout the proceedings."  *Williams*, 517 F.3d at

12  1128.  In the context of antitrust claims, injury-in-fact sufficient for Article III standing is

13  established when the plaintiff demonstrates that he "has suffered an injury which bears a causal

14  connection to the alleged antitrust violation."  *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir.

15  1996).

16        Westell and all of the named plaintiffs in 17 states[15] have not put forth any "specific

17  facts" demonstrating that they suffered an injury-in-fact in the sense of paying supracompetitive

18  prices for SRAM or SRAM-containing products.  To the contrary, these plaintiffs *could not* have

19  suffered any injury, because they have admitted that they purchased no SRAM directly or

20  indirectly from a Defendant during the periods of time in which Plaintiffs' respective experts

21  claim that the alleged price-fixing conspiracy led to overcharges.[16]  If there is a judgment against

22  the Defendants, these named plaintiffs will walk away with nothing.  They admit that they have

23

24  ───────────────

25  [15] Arkansas, District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Dakota, Utah, and Wisconsin.

26

27  [16] Westell's purchases from distributors during the damages period are irrelevant.  Even if this SRAM was manufactured by one of the alleged price-fixers, Westell is an indirect purchaser with respect to these sales and has no standing to bring claims under the Sherman Act.  *See*

28  *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

12

no injury at all, much less one that can be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561.

Moreover, it is immaterial that these named plaintiffs may have had standing when the complaints were filed or the classes certified. Because "a plaintiff's stake in the litigation must continue throughout the proceedings," *Williams*, 517 F.3d at 1128, the admission before trial that a plaintiff has no injury eliminates standing. *See Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008) (standing found to be lacking, notwithstanding plaintiff's original allegation, when the "defendants' evidence showed this was not the case"). Here, DP and IP Plaintiffs have conceded an absence of injury for the certain named plaintiffs through their experts' narrowing of the damages period. Lacking any injury, these named plaintiffs no longer have standing.

## II.   NAMED PLAINTIFFS IN MONTANA AND WASHINGTON LACK STANDING BECAUSE THEY CANNOT SHOW THAT THEY PURCHASED PRODUCTS CONTAINING DEFENDANTS' SRAM

The named IP Plaintiff in Washington, and one of the named IP Plaintiffs in Montana, stated that they purchased SRAM-containing products "during the class period." Because IP Plaintiffs' expert has determined that injury occurred only during 1998-2001 and 2003-2005, the failure to be more specific as to the time of purchase means that the named plaintiffs' injury is purely speculative. That is especially so in light of the fact, discussed above, that many other named plaintiffs are known not to have purchased during the damages period. Plaintiffs have the burden to show that they possess standing throughout the litigation, and these two named plaintiffs have not met that burden.[17]

## III.  NAMED PLAINTIFFS IN ARIZONA, CALIFORNIA, HAWAII, NEVADA, PUERTO RICO, TENNESSEE, AND WEST VIRGINIA LACK STANDING BECAUSE THEY CANNOT SHOW THAT THEY PURCHASED PRODUCTS WITH THE DEFENDANTS' SRAM

---

[17] The other named plaintiff in Montana lacks standing for the reason described in Part I. Therefore, no named plaintiff in Montana has standing.

13

1    In seven states, named plaintiffs purchased SRAM-containing products during the

2    periods in which IP Plaintiffs' expert claims that overcharges were incurred. However, to show

3    the injury-in-fact required for Article III standing, plaintiffs must have "suffered an injury which

4    bears a causal connection to the alleged antitrust violation." *Amarel*, 102 F.3d at 1507. To make

5    this showing, the product purchased by the named plaintiffs had to have contained the

6    *Defendants'* SRAM — otherwise they would not have experienced an overcharge which could

7    be redressed through a damages award.

8    It cannot be disputed that non-Defendant companies produced significant amounts of the

9    SRAM sold during the damages periods. According to market share data relied upon by IP

10   Plaintiffs' experts, between 1998 and 2001 at least 10 other companies manufactured slow

11   SRAM and at least four other companies manufactured fast SRAM. Ex. 14 (Semico Report at

12   22-27). Furthermore, IP Plaintiffs' expert's market share data show that non-Defendant

13   companies accounted for between 18 and 33% of the slow SRAM sold during time period, and

14   between 43% and 53% of the fast SRAM. Ex. 4 (Harris Report, Ex. 3, 4). Between 2003 and

15   2005, at least five other companies manufactured PSRAM, accounting for between 16 and 27%

16   of the PSRAM sold during that time. Semico Report at 29. Therefore, the mere fact that a

17   named plaintiff purchased a product that is known to be made with SRAM does not mean that

18   the plaintiff bought a product with *Defendants'* SRAM. IP Plaintiffs' expert Dr. Harris

19   recognizes this, as his damages calculations for each SRAM-containing product in each state are

20   adjusted to account for Defendants' market shares as reflected on Exhibits 3 and 4 to his report.

21   At the class certification stage, in response to Defendants' contention that it would be

22   necessary to conduct individualized inquiries to ascertain whether class members purchased

23   products containing Defendants' SRAM, the Court observed that "IP Plaintiffs will be able to

24   identify all products that contain Defendants' SRAM by analyzing Defendants' documents,

25   testimony from Defendants' personnel, third party transactional data, third party discovery

26   responses that state whether their products contain SRAM, BoMs from OEMs and contract

27   manufacturers, and publicly available information." Order Granting IP Plaintiffs' Motion for

28

1   Class Certification (Dkt. 903), at 7-8.  Now that discovery is complete and the record is closed, it

2   is apparent that IP Plaintiffs cannot make this showing *even with respect to the named plaintiffs*.

3   They must, at a minimum, show that named plaintiffs have standing to sue throughout the

4   litigation.  *Williams*, 517 F.3d at 1128.

5        The evidence to which IP Plaintiffs pointed in their reply brief, which is of the type

6   described by the Court in its class certification order, shows that Defendants sold SRAM to

7   companies such as 3Com, HP, Linksys and US Robotics, which manufactured the end-use

8   products purchased by the named plaintiffs.  But none of it supports a finding that the

9   Defendants' SRAM was in the specific models the named plaintiffs bought.  Nor is there

10  evidence that any these products was made exclusively with Defendants' SRAM.  For example,

11  UFCW Local 99, a named plaintiff in Arizona, purchased 3Com 24-port switches in March 1999

12  and January 2001.  Pl. Reply Appendix at 1.  3Com's purchase data shows that it bought SRAM

13  from both Defendants and non-defendants such as Alliance Semiconductor and IDT.  Ex. 26.

14  Nowhere do the data show that the particular models of switches purchased by UFCW Local 99

15  contain Defendants' SRAM.  Similarly, Donna Hark, a named plaintiff in West Virginia,

16  purchased a Linksys router in 1999.  Pl. Reply Appendix at 12.  But Linksys' discovery

17  responses state that Linksys uses non-embedded SRAM[18] in only three products.  Ex. 23.

18  Therefore, it is uncertain whether Ms. Hark even purchased a product containing the type of

19  SRAM relevant to this case, much less a product containing Defendants' SRAM.

20       In short, the evidence is too vague and speculative to support a finding that the products

21  purchased by the named plaintiffs in these seven states contained the Defendants' SRAM.

22  Whatever latitude there may be for absent class members to wait until later in the proceedings to

23  show that their products contained Defendants' SRAM (such as at the claims process), as an

24  "irreducible constitutional minimum" the named plaintiffs who represent the classes must be able

25  to show that they purchased the Defendants' SRAM in order to show injury.  *See Lujan*, 504

26  _____

27       [18] Non-embedded SRAM refers to SRAM sold as a separate chip, and is the type of
    product at issue in this case.  Embedded SRAM refers to when the SRAM circuitry is included
28  on the microprocessor.  Ex. 27 (Surrette Rule 30(b)(6) Dep., 2/11/10, at 86:2-15).

U.S. at 560.  Having failed to do that, the named plaintiffs in these seven states lack standing to sue.[19]

## IV.   NAMED PLAINTIFFS IN CALIFORNIA AND PENNSYLVANIA LACK STANDING BECAUSE THEY CANNOT SHOW THAT THE PRODUCTS THEY PURCHASED CONTAINED PSRAM

In Pennsylvania, the one named plaintiff purchased a Blackberry smartphone in 2004, and in California one of the six named plaintiffs purchased a Blackberry smartphone in 2005. That is the period when IP Plaintiffs' expert claims that the alleged conspiracy caused overcharges only in PSRAM.  Accordingly, to have standing, these named plaintiffs must be able to show that their smartphones contained PSRAM manufactured by the Defendants.  They have failed to do so.

According to documents produced by RIM, the maker of the Blackberry, Samsung and Micron supplied most of the SRAM used in the Blackberry during the relevant period.  *See* Ex. 24 (document produced by RIM).  However, the data show that only a small portion of this was PSRAM — specifically, the material identified as utRAM.  The remainder of the SRAM supplied by Samsung was fast and slow SRAM.  As to those products, plaintiffs do not allege that there was any overcharge in the 2003-2005 time period.  It would be pure speculation to conclude that the named plaintiffs in California and Pennsylvania who purchased Blackberries during the relevant period purchased units with PSRAM.  Accordingly, they do not have standing to sue.

## V.   BECAUSE WESTELL AND THE NAMED IP PLAINTIFFS LACK STANDING, THEY CANNOT SERVE AS CLASS REPRESENTATIVES AND THE CLASSES SHOULD BE DECERTIFIED

It is well-settled that "in class actions, the named representatives 'must allege and show

---

[19] The other named plaintiffs in Arizona, Hawaii, Nevada, Puerto Rico, Tennessee, and West Virginia lack standing for the reasons set forth in Part I above.  Therefore, no named plaintiffs in these states have standing.  Several of the named plaintiffs in California also lack standing for the reasons set forth in Part I, and one lacks standing for reasons discussed in Part IV below.  All told, each of the named plaintiffs in California lacks standing for one reason or another.

that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"  *Pence v. Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *see also, e.g.*, *Williams*, 517 F.2d at 1127 ("At least one *named* plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class.  This requires that the plaintiff demonstrate that he has sustained or is imminently in danger of sustaining a direct injury as a result of the challenged conduct.") (citations and internal quotation marks omitted); *Bates*, 511 F.3d at 985 (at least one named plaintiff in a class must have standing).  "If the litigant fails to establish standing, he may not 'seek relief on behalf of himself or any other member of the class.'"  *Nelsen v. King County*, 895 F.2d 1248, 1250 (9th Cir. 1990) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)); *see also, e.g.*, *East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403-04 (1977) (where evidence showed that class representatives "could have suffered no injury as a result of" the challenged conduct, they were "not eligible to represent a class of persons who did allegedly suffer injury"); *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1268 (11th Cir. 2001) ("a plaintiff cannot serve as a class representative if she lacks standing to advance the class's claim").

In Rule 23 terms, the problem is that "there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class."  *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000).  As one court has explained, "typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large. Without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class."  *Id.*; *see also, e.g.*, *Rector v. City & County of Denver*, 348 F.3d 935, 949-50 (10th Cir. 2003) ("By definition, class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirements of Rule 23.").

Because there is no evidence that Westell and the named plaintiffs in each state suffered an injury-in-fact as a result of Defendants' alleged price-fixing, their claims are not "typical of

1   the claims or defenses of the class," as required by Fed. R. Civ. P. 23(a)(3).  Relatedly, because

2   these plaintiffs were not harmed in the manner that the classes claim to have been harmed, they

3   cannot "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  None

4   of these named plaintiffs can represent a class.

5          The inability of the named plaintiffs to serve as class representative requires

6   decertification of the Direct Purchaser and Indirect Purchaser Classes.  The typicality of the class

7   representative's claim and the adequacy of representation are prerequisites to class certification

8   under Rule 23.  Where, as here, the absence of these elements does not emerge until after a class

9   is certified, decertification is the appropriate remedy.  As the Ninth Circuit has explained, "a

10  district court retains the flexibility to address problems with a certified class as they arise,

11  including the ability to decertify.  'Even after a certification order is entered, the judge remains

12  free to modify it in the light of subsequent developments in the litigation.'"  *United Steel, Paper*

13  *& Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO, CLC v.*

14  *ConocoPhillips Co.*, 593 F.3d 802, 809-10 (9th Cir. 2010) (quoting *Gen. Tel. Co. v. Falcon*, 457

15  U.S. 147, 160 (1982)); *see also, e.g.*, *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th

16  Cir. 2009) ("A district court may decertify a class at any time."); *Armstrong v. Davis*, 275 F.3d

17  849, 871 n. 28 (9th Cir. 2001) ("Federal Rule of Civil Procedure 23 provides district courts with

18  broad discretion to determine whether a class should be certified, and to revisit that certification

19  throughout the legal proceedings before the court. … Where appropriate, the district court may

20  redefine the class, may excise portions of a plaintiffs class allegations, and may even decertify

21  the class.") (citation omitted).

22         Courts within the Ninth Circuit and elsewhere have consistently decertified classes when

23  it has emerged that the class representative lacks standing.  *See, e.g.*, *Lierboe v. State Farm Mut.*

24  *Auto. Ins. Co.*, 350 F.3d 1018, 1023-24 (9th Cir. 2003) (vacating class certification and

25  remanding with instructions to dismiss where named plaintiff lacked standing); *Williams v.*

26  *Boeing Co.*, 2005 WL 2921960 (W.D. Wash. Nov. 4, 2005) (holding that named plaintiffs lacked

27  standing where they could not demonstrate an injury during the relevant time period, and that

28

lack of standing warranted decertification of the class); *Rector*, 348 F.3d at 950 (remanding to district court for decertification of class where named representative lacked standing); *Johnson*, 263 F.3d at 1268 (affirming district court's decertification of class where named plaintiffs lacked standing).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court decertify the Direct Purchaser and Indirect Purchaser Classes, or, in the alternative, stay the actions pending the identification of appropriate class representatives.

Dated:  July 15, 2010                                  Respectfully submitted,


_____/s/_____
Robert E. Bloch
Gary A. Winters
Aimée Latimer-Zayets
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006-1001
Telephone:  (202) 263-3000
Facsimile:  (202) 263-3300
rbloch@mayerbrown.com
gwinters@mayerbrown.com
alatimer-zayets@mayerbrown.com

Lee H. Rubin (State Bar #141331)
MAYER BROWN LLP
Two Palo Alto Square
Suite 300
Palo Alto, CA 943046-2000
Telephone:  (650) 331-2000
Facsimile:  (650) 331-2060
lrubin@mayerbrown.com


*Counsel for Defendant Cypress*
*Semiconductor Corporation*


_____/s/_____
Michael W. Scarborough

19

1

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP

2

Four Embarcadero Center, 17th Floor

3

San Francisco, CA 94111
Telephone: (415) 434-9100

4

Facsimile: (415) 434-3947

5

*Counsel for Samsung Electronics*

6

*Company, Ltd., Samsung Semiconductor,
Inc., and Samsung Electronics America,*

7

*Inc.*

8

Pursuant to General Order No. 45, § X-B, the filer attests that concurrence in the filing of

9

this document has been obtained from each of the above signatories.

10

11

_____/s/_____

12

Lee H. Rubin (State Bar #141331)
MAYER BROWN LLP
Two Palo Alto Square

13

Suite 300
Palo Alto, CA 943046-2000

14

Telephone:  (650) 331-2000
Facsimile:  (650) 331-2060

15

lrubin@mayerbrown.com

16

*Counsel for Cypress Semiconductor Corporation*

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE DIRECT AND INDIRECT PURCHASER CLASSES OR TO STAY;
MEMORANDUM OF POINTS AND AUTHORITIES (4:07-md-1819 CW)