Gary Joseph Bonas II
25794 Covala Court
Valencia, California 91355

September 13, 2010

Judge: Hon. Claudia Wilkin
United States District Court
Northern District of California
Courtroom: 2, 4th Floor
1301 Clay Street
Oakland, California 94612

Carly Fiorina
Calif. Senate Bid
915 L Street, Suite C-378
Sacramento, Calif. 95814
contact@carlyforca.com

Re:    <u>SRAM Indirect Litigation, Case No. M:07-CV-01819-CW</u>
       MDL No. 1819

Greetings Honorable Justice Wilkin and Clerks,



I write in clarify some misstatements and or misunderstandings plaintiffs' counsel ("Counsel) made in their 08-26-10 Memo for Reimbursement of Expenses (at footnote 3, page 4) about the status of Bonas' federal license and disinformation publishing by the State BAR.[1]

First, Counsel are mistaken about the reality that Bonas retained his federal license to practice law <u>by showing cause</u> to, among others, Judge Consuelo Marshall (Central District), Marilyn Patel (Northern District) and Jeffrey T. Miller (Southern District). See attached.

Second, contrary to the State Bar's publishing, Counsel are mistaken about their being a valid state conviction against Bonas, who clarified this reality to the State Bar's new Chief Trial Counsel James Towery in an 08-30-10 briefing. See attached cover, to correct the record.

Third, in 2007 again, like in 2004, Bonas briefed the Bar about some relevant legal matters. See attached. In 2008 he briefed the Bar's Ms. McCormick to further clarify my background. See attached. The State Bar's highly appointed and Ms. McCormick neglected to respond to these legal license related communications, which is <u>a Due Process point</u>.[2]

Fourth, I understand the procedural posture in my unique case is unusual. I do appreciate the chance to provide further record based details (including Article 3 common law jurisdiction) should the court find that necessary.

Fifth, Counsel suggests that <u>the Rosemary</u> Bonas Estate and Mr. Sawyers might not have standing in the instant case. Declarations can be provided should the court desire.

Respectfully,

Gary Joseph Bonas II

---

[1] Counsel chose not to address the merits raised in Bonas' 08-13-10 Objection and Comment relating to correct price protocol, price policy and the temporal and product class definition. Instead, Counsel attempts to take Bonas out procedurally.
[2] <u>Schware v. Board of Bar Examiners</u>, 353 U.S. 232, 238-239 (1957).

## Index

| 08-05-05 | OSC - By Chief Justice Central Dist. C. Marshall | | 2 pages |
|---|---|---|---|
| 08-15-05 | Bonas to Chief Justice Marshall | - showing cause | 1 cover page |
| | 02-10-01    Qui tam to DOJ's Charles A. James | | 4 pages |
| 10-22-07 | Bonas to Judge J. T. Miller | - showing cause | 1 cover page |
| 10-23-07 | Bonas to Judge Marilyn Patel | - showing cause | 1 cover page |
| 08-30-10 | Bonas to Mrrs. Koryn & Towery | | |

07-12-10    Bonas to Mr. Towery – there is no lawful conviction against Bonas
08-10-10    Mr. Towery to Bonas
08-13-10    Bonas to Mr. Towery

| 09-26-07 | State Bar Remke | A - one page |
|---|---|---|
| 10-10-07 | State Bar Remke | B - one page |
| 10-11-07 | State Bar Remke | C - one page |
| 10-12-07 | State Bar Remke | D - one page |
| 10-30-07 | State Bar Remke | E - one page |
| 07-24-08 | State Bar McCormick A – one page | |
| 07-26-08 | State Bar McCormick B – one page | |

## Fact Background

/
/
/
/
/
/
/
/
/
/

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In the Disciplinary Matter of | ) | ORDER TO SHOW CAUSE |
| CASH J. BONAS | ) ) | |
| California State Bar #179837 | ) ) ) | |
| | ) | |

This Court has received notice that the Supreme Court of California has disbarred from the practice of law the above-referenced attorney effective June 18, 2005.

Therefore, the above-referenced attorney is hereby ordered to show cause, in writing within 30 days of the date of this order, why he or she should not be disbarred from the practice of law before this Court, pursuant to Rule 83-3.1.9 of the Local Rules for the Central District of California.

IT IS FURTHER ORDERED, that if the above-referenced attorney does not contest the imposition of disbarment from this Court or does not respond to the order to show cause within the time specified, the Court shall issue an order of disbarment effective 30 days from the date of this order to show cause.

A response to this order to show cause must make the showing required in Local Rule 83-3.1.9. In addition, the above-referenced attorney must produce at the time the

1

response to the order to show cause is filed a certified copy of the entire record from the other jurisdiction or bear the burden of persuading the Court that less than the entire record will suffice.

The response to the order to show cause and other documentation shall be mailed or delivered to: U.S. Courthouse, 312 N. Spring Street, Room G-8, Los Angeles, California 90012, Attn: Clerk of Court. The response to the order to show cause and other documentation shall not be filed with the Court.

Unless stated otherwise by order of the Court, the above-referenced attorney who has been disbarred from the Bar of this Court because of a disbarment by the Supreme Court of California will be reinstated upon proof of reinstatement as an active member in good standing of the State Bar of California.

An attorney registered to use the Court's Electronic Case Filing System (ECF) who is disbarred by this Court will not have access to file documents electronically until the attorney is reinstated by the State Bar of California and reinstated to the Bar of this Court.

This Order to Show Cause is being mailed to the above-referenced attorney's current address as on file with the State Bar of California.


DATE: _8/5/05_                    _____
                                 Consuelo B. Marshall
                                 Chief United States District Judge

Gary Joseph Bonas II
5122 Via Castilla
Oceanside, Calif. 92057

August 15, 2005

Chief Justice Conseulo Marshall
312 North Spring Street, RM #G-8
Los Angeles, Calif. 90012-4793

Re:     My License - Property

This is in response to ORDER TO SHOW CAUSE ("OSC") why you shouldn't prohibit me from practicing, pro bono or otherwise.

First, as matter of procedure, I do not know what basis of standing a Court has to file this suit. No client of mine ever complained about me. About this unusual role for a Court, it seems to me that Adam Smith summed it up when he wrote:

It is a manifest encroachment on workers liberty (9th Ame), & of those who might be disposed to employ me. (The Wealth of Nations, Adam Smith (1776)).

Second, again, no client of mine ever complained about me. Only class action lawyers did. Tellingly, one of them – Dan Mogin - speaking on behalf of all of my pro accusers, including Bill Lerach, said this, verbatim:

For ALL our peace of minds he should not be allowed to be a practicing attorney, especially in San Diego County.[1]

My accusers – "a cadre of brand name law firms" as the 9th Circuit put it in this back to back to back federal, state and now federal again action - are complex economic price litigators. They know the rules about correct and incorrect price protocol. They know that I know the rules and how class attorneys cross them in upping their hourly rates..

Third, in this showing I shall present what has, according to the FTC, "perplexed anti-trust or price right enforcement for decades, indeed for most of the past century."[2] I shall explain the simple facts about the Class field's cartel shell called:

OLIGOPOLY PARALLEL PRICING OR CONCIOUS PARALLELISM

Compare Adam Smith, The Wealth of Nations, Chapter 7, Natural Prices.   (1776).

This is a brief response to the court's OSC. My detailed presentation will come in short parts as there is an incredibly large amount of information to present.

Thank you for the opportunity to present my legal, fact based position.

Sincerely,

Gary Joseph Bonas II

---

[1] See 03-09-04 P.O. Dennis Powell report, page 5 in Lerach/Mogin California. v. Bonas (San Diego Case).

[2] HORIZONTAL PRICE-FIXING IN CYBERSPACE, by Jonathan Baker (03-07-16).

Cash J. Bonas
639 Roskilde Dr.
Solvang, Ca. 93463
805.688.2059

February 10, 2001

Charles A. James
Antitrust Division
RFK Dept of Justice Bldg
950 Pennsylvania Ave NW
Washington, D.C.

RE: <u>Chain Bar Code Price Fixing/Checkup Exchange</u>

Dear Mr. James (DOJ):

What follows is a qui tam summary about shelf bar code price fixing employed by the dominant chain rival CEOs – to match and hold up prices in lieu of correct price protocol.

<u>First</u>, as you know, the base inquiry between a rig and a non-rig is the difference between an isolated price equals cost study versus a rival based pricing policy, which is accomplished exclusively by reciprocal price checkups. This initial characterization defines the line between a direct or circumstantial (indirect) method of proving up a price fixing action. Direct rival chain testimony follows, to assist.

I. **The Price Check Agreement**
(Price Check Crimes)

A.   [I]f the competitor allows us to price-check or price-survey, we will allow them to price survey our store."[1] "They can price-check any one of them [referring to their many locations] at any given time.[2] Crews of 5-10 people, equipped with electronic equipment, enter to retrieve price data.[3]

A.   Lucky [Albertsons] allows Vons to price-survey their stores, yes.

Q.   And therefore, Vons allows Lucky to price-survey Lucky store – sorry, Vons stores?

A.   That's correct.[4]

---

[1] Woodward deposition, at page 348:¶27.
[2] Golleher, deposition, at page 188:¶3.
[3] Golleher deposition, at page 189:¶3.
[4] Woodard deposition, at page 348-349:27.

1

A.  "We do allow them [CEO Rivals] to -- to use electronic equipment."[5]

A.  All [rival] personnel … in our stores must be **well groomed;** and

A.  All [rival] personnel … in our stores must be … **in acceptable attire** (no shorts, T-shirts, ect.)

A.  Competitors may use **Texlon, Symbol, or MSI type** equipment….

A.  Competitors may [not] use … Wand or Laser devices.[6]

A.  It's a [rival CEO] procedure that's been in place for 25 years.[7]

## II.  **The Agreement Acted On**

A.  [W]hen a price-check crew shows up at a store they introduce themselves to the manager, state **who** they are, **what** they are there for and ask permission to price-check the store.  It is a common courtesy.[8]

A.  We are not [presently] excluding [Albertsons] Lucky from our stores to document prices [to get our current price data].[9]

A.  We have different **lists of items** we need rival prices for, depending on the check type.[10]

Q.  Why are [rival current price check up] surveys … conducted on Mondays, Tuesdays and Thursdays?

A.  We do our surveys when **we know** our competitors have completed pricing activity at [regular and sale dip] retail [for the week].[11]

A.  I ask the … stores being price-checked or price-surveyed by competitors to report to me the day, the time, and who the competitor is, and just a general recap of what was surveyed.[12]

---

[5] Dahlen Deposition, at page 174:18.
[6] See TE 111 and 109.
[7] Romeo Cefalo Depo., 18:10-19.
[8] Golleher VD, 201:16-20.  **Generally, this happens every time, it is a common courtesy.**Golleher, VD 189 at ¶3. Golleher, 21-24.
[9] Dahlen Depo., at page 180.
[10] Heredia trial transcript, at page 1947:27-28.
[11] Dahlen Depo., at page 170.
[12] Woodward deposition page 48:05-15.

A.  They actually capture the data electronically.  So we provide them with an electronic file that lists the [item] type of checks they will be doing in each area.[13]

A.  **S-1 or milk** and egg checks are conducted each week on Wednesdays, Thursdays, and Fridays.[14]

A.  Rival prices are available to me through **the computer system**.[15]

A.  There is a [verification called check] report issued weekly to each Category Manager regarding pricing moves within their area of responsibility.[16]

A.  [I]t's available to me through my computer that -- when they [rival check teams] are completed filling it in, usually that afternoon.[17]

## III.  **The Intent Behind The Agreement**

A.  [I]f we [were to compete and] lower our [regular] prices, competitors would lower their retails in unison.[18]

When rival CEO's agree to post their own prices each other to obtain and use (for pre-set & held up prices to estimate stock forecasts), that is a categorical treble damage price crime.  Big chain CEO rivals do exactly that.  The direct proof lies in understanding simple shelf bar coded price post systems. To assist your staff, I present the double bar code reality:

<u>A</u>
### Scan Bars on packages

The bar code on the package of items is designed for in house customer checkout purposes, by computerized SKU (Stock Keeping Unit) identification, which is a legitimate purpose. This SKU testimony defines the simple acts:

Q.  And by SKU, would you just for the jury's benefit, explain what a stock keeping unit is or an SKU is?

---

[13] Edward Heredia TT, 1896:2-4.
[14] Ken Heredia TT, 1896:14-25.
[15] Ken Hanshaw TT, 3354:21-22.
[16] Hanshaw RT, 217:23-25.
[17] Hanshaw RT, 3354:19-23; Hanshaw RT, 3352:15-3354:26.   (Emphasis).
[18] Heredia TT, 1943:20-21 (**"lower retails in unison"**).

A.    An SKU is the actual number that we attach to an item so that it can be tracked.  As an example, a box of Betty Crocker cake mix will have an individual item by flavor.  So the unique numbers attach to a unique product.[19]

## B
## Scan Bars on shelves

The bar code placed on the shelf for most items is embedded with price data for rivals, who are permitted license to enter and obtain.  The price data is knowingly used by rivals to line up with preset prices, in concert.

The above rival CEO contract or agreement that directly affects price is called a horizontal, per se illegal arrangement.  That means there is no defense because their pricing policies and daily price decisions are based on the price data accessed through their reciprocal arrangement to swap current price data.  The data is used to up and hold up regular retail prices without regard to item cost fluctuations.

## IV.  Conclusion – Direct Reciprocal Proof

In sum, it is established that the "reciprocal exchange" of price information that **A**ffects prices constitutes an anti-competitive combination.  In U.S. v. Container Corp. the Supreme Court held the reciprocal exchange of price information pursuant to an agreement was concerted action sufficient to establish a price-fixing conspiracy.[20]

The above facts seal it!

Respectfully,

Gary "Cash" Bonas II

Document edited on 08-25-10

---

[19] Ed Heredia TT, 1927:17-27.

[20] The Container court analogized the agreement there with the "sophistication and well-supervised plan for the exchange of price information between competitors" in American Column & Lumber Co. v. United States, U.S. 257 U.S. 377 (1921) and the "elaborate plan for the exchange of price data among competitors" in United States v. American Linseed Oil Co. , 262 U.S. 371 (1923).

Gary Joseph Bonas II
26255 Bungalow Court
Valencia, California 91355

October 22, 2007

Honorable Jeffrey T. Miller
Courtroom 16, 5th Floor
800 Front Street, Suite 4290
San Diego, Calif., 92101 – 8900

Greg Miller, CAPT, USN
Annapolis – Academy
Economics Department
589 McNair Road,
Annapolis, MD 21402-5030

Greetings Honorable Justice Miller:

This is a brief follow-up to my prior complex disclosures. I appreciate you your respect for such 1st Amendment protected petition briefings. As an introduction to the furnished materials, in context, I present 18 U.S.C. Section 1's duty, applied verbatim:

"**Judges** who do not report the criminal activities of other judges [like R. Trentacosta & W. Mud] become principals in the criminal activity…." "[J]ustice must satisfy the appearance of justice." Levine v U.S. 362 U.S. 610 (1960).[1]

Now, in my private 12 step I am making amends to those that I feel I have been less than professional. In that process I came across some papers I filed with your 4th Appellate Panel concerning my lower court proceeding - after a 9th Circuit dismissal with prejudice. In hindsight, those papers were less than professional. I was frustrated with what I view to be a wholesale disrespect for legal procedure & competent assistance, e.g.[2] I know that my petitioning of grievance acts did get verbally out of line at moments, which was unconstructive. The four years that I served between Lerach, Mogin, Noonan & Stone's back to back actions against me gave me four years to study, think & practice. Before, I was upset about little things like my counsel failing to take a single bit of discovery in my cases. I've learned to write and teach about it as a therapy outlet.

Shifting, as part of my personal community service I am modifying a book called the Mason's Manual, which you might have heard of before. I am writing a companion book to it, translating legalese to modern lay language. I think it will be a great CLE handbook to aid in education the public, not just lawyers. Please forgive my mechanical errors. I need to brush up on The Elements Of Style before I publish.

I part with this reminder supreme about all capitalized name non-jurisdiction:

"Without subject-matter jurisdiction, all of the orders and judgments issued by a judge are void under law, and are of no legal force or effect.[3]

God Bless America

Gary (Cash) Joseph Bonas II

---

[1] See details contained on the enclosed CD.

[2] Although the substance is on point, my presentation might have offended some. I have deep concerns with court's classifying people as U.C.C. goods and not service providers by reference to their all capitalized name, e.g.

[3] **In Interest of M.V.,** 288 Ill.App.3d 300, 681 N.E.2d 532 (1st Dist. 1997) ("Every act of the court beyond that power is void").

Gary Joseph Bonas II
26255 Bungalow Court
Valencia, California 91355

October 23, 2007

Vaughn R. Walker, Chief Judge          Updates to:      COL E. Casey Wardynski
Courtroom 15, 18th Floor                                USMA – Economics Dept.
450 Golden Gate Ave.                                    Building 600
San Francisco, Calif. 94102                             West Point, New York 10996

Greetings Honorable Justice Patel & clerks,

      I write in response to your invitation to me to show cause relating to Greg Stone, Don Howarth, Bill Lerach, David Noonan and Dan Mogin's **back to back federal/state actions** against me in the taking of my license. The "show cause order" was triggered by The State Bar in representing the above gentlemen – to lift my license.[1]

      To promote economy, I enclosed a CD with a power law point presentation. It contains some of my personal case background, of which you might have been unaware of prior to ordering that I show cause in '04, like Judge Marshall did on 08-05-05.

      In opening, I direct your attention to three core points:

- My 02-26-04 eight page chain price-check fixing brief to Marc Siegel.[2]
- The Scope of the U.C.C, section 1-102 "commercial transactions."[3]
- U.C.C. 1-103 (b) "contract capacity, principal/agent, mistake," plus."[4]

      Related, I've familiarized myself with some of your outstanding opinions, like the Korematsu v. United States, 323 U.S. 214 (1944) case, which reads:

> The … States [DA] government had deliberately misled the court securing its affirmance of the [non] conviction. … Judge Patel formally vacated the conviction, saying, "[IT] stands as a caution that in times of distress the shield of … necessity and national security must not be used to protect governmental actors from close scrutiny and accountability".

From that & collateral readings, I understand your well deserved 1980 appointment & confirmation by, in my humble opinion, one of our most brilliant Presidents - Jimmy Carter. In my view your tenure has served well to explain the controlling rules of the 9th & 10th Amendments & Article 6's "Supremacy over all state law" clause, e.g.

      Thank you for your guardian role & inviting my semi-formal presentation.

Respectfully,

Gary (Cash) Joseph Bonas II

---

[1] I've already debriefed the Honorable Chief Justice Marshall, Justice Takasugi, Justice Jeffrey T. Miller and others on the controlling procedural posture and factual details, which I incorporate by reference.

[2] "Without prejudice/reservation of all Art-3 Common law controls - Uniform Commercial Code 1-207.4
[3] "The Code is complimentary to the Common Law, which remains in force" because no amendment displaces it. U.C.C. 1-103.6.
[4] The last sentence of UCC 1-103.6 reads, "The Code cannot be read to preclude a Common Law/action."

Gary Joseph Bonas II
25794 Covala Court
Valencia, California 91355

August 30, 2010

Dan Koryn
Koryn & Koryn
5105 Cass Street
San Diego, Calif. 92109

James E. Towery
Hoge Fenton Jones & Appel
60 S Market St.
San Jose, California 95113-2396

Re:    Lerach - Stone Cold Back To Back Bonas (Fed/state) Actions

Dear Mr. Koryn,

This is a brief follow-up to my attorney client communications to you dated 04-24-08, 04-25-08, 06-25-08 and 08-12-08. I've recently been in communication with the State Bar's new Chief Trial Counsel - James E. Towery. I briefed him on basic evidentiary details about my case that were misunderstood, fibbed about and/or simply suppressed. Mr. Towery advised that the appellate venue might be the proper forum to formally revisit some core legal points, including those summarized below. See attached 07-12-10, 08-10-10 and 08-13-10 Towery letters.

Before beginning, I know that some of my work speech to you has been less than diplomatic. That reality is owed to some frustrations on my part. As the FBI testified about me,

"He told Mrs. Bonas [and everyone else] ... that he was working to expose the lies of the attorneys involved in the ... case(s)."[1] "If you believed his premise ... the things he [did] ... to stop [them] ... were rational ...."[2]

This "premise" based briefing highlights five key points: 1) Bar Coded price-check fixing; 2) my legal premise – exposing class price lies; 3) DA suppression of evidence; 4) Misconduct; 5) my 02-27-01 five in one visit to San Diego; & 6) The Price/Cash Conclusion. When you learn about key price rules you will better understand our current MR=MC problems.[3]

## I.    Bar Codes & Price Check Fixing Facts - Suppressed

First, attached is a short 02-10-01 qui tam testimony based memo highlighting retail chain bar code price crimes. This information seals capital crimes. The "check or exchange"

---

[1] California v. Bonas, San Diego Superior Court Case #SCD159416, DA #AAL083, Friday, 10-03-03 Transcript, page 14:4-14. (Hereafter 10-03-03 Transcript, at page __:__).
[2] 10-03-03 Transcript, at page 37:1-4.

[3] I did not have access to some of the information presented here for two main reasons: 1) I was in prison, obviously without access to it; & 2) Robert Brewer refused to return my '00 client files to me on request in '03. Accordingly, new exculpatory evidence is raised, coupled with the hindsight of the Bill Lerach (class field) kickback/perjury development.

1

facts were and remain criminally concealed by the BAR's Class price pros.  At base, the BAR pact was presented in one chain appellate price brief (signed) by three defense firms, verbatim:

> [Plaintiff's] counsel [Howarth] explicitly assured the trial court that [he] … would not be claiming that … price checking practices met the standard for an illegal agreement:
>
>> [N]obody will argue on our side or our economist **or anyone else**, that the fact that they were aware of their prices and that they checked them and have that information *meets the standard* for an agreement or conspiracy. [4]

This in court affirmation is one nut of the "exchange of information to price fix" agreement the Class BAR hides.  It centers on how they set their own prices.  When simple **price exchange or checkup facts** are presented with simple MR=MC prices rules, the guilty conclusion is patent. Doing that does not permit both sides to bill millions upon millions in fee billings.  This "brand name/Ivy" **firm gig to hide** simple price step facts is the common denominator that links all top class price players all big money cases (and to my case specifically).  I was not initially privy to this anti-competitive pact.  To the contrary, my work simply provides basic, lit based price checkup/exchange testimony & corporate documented price facts.  In my briefings all I did was follow Supreme Court instruction:

**"[E]xchanges … must remain subject to close scrutiny …."[5]**

When I confirmed the silent agreement both sides of the Class BAR live in, I withdrew.

If you do not understand the above, I kindly ask that you inquire of a Junior College, collegiate or U.S. Military Academy economist – someone unbiased and not a complex litigator with big case money at stake, Bill Lerach like kickback taints and other Class Bar price secrets.

## II.    "To Expose Complex Case Lies - The FBI Report"

Second, as summarized above, assuming you read and understood my record on appeal, you may recall the FBI's words about me and my complex legal premises, which I was and remain the owed presumption of innocence.  That means the prosecutors owed me a duty to have my side investigated by an unbiased source, which they did not do.  This testimony provides a precision cited reminder:

> Q.    Did Mr. Bonas admit to her [his mom] why she was making the [work speech] calls?
> A.    Yes.
>
> Q.    Why was that?
> A.    May I refer to my report? (FBI Medrano)

---

[4] 01-16-01 Appellate Brief by Stone, Noonan & Arnold & Porter, page 34, McCampbell et al v. Ralphs et al.
[5] U.S. v. U.S. Gypsum, 438 U.S. 421-22 (1978).

Q.    Yes, please.

A.    <u>He told Mrs. Bonas…</u> that he was working <u>**to expose the lies of the attorneys involved in the … case(s).**</u>[6]

...

A.    If you believed his premise … the things he was doing … <u>to stop [them]</u> … were rational ….[7]

My legal premises were previously presented to both prosecutors and defenders, but never raised and perhaps never independently checked. My premises are in part presented in Section I above.

### III.    **Prosecutor (Buck) Suppresses Exculpatory Facts**

Third, the suppression, omissions and reckless prosecutorial moves here are flagrant. Perhaps these problems are in part due to being duped and used by Lerach, Mogin & Noonan, which is unfortunate. For example, DA Carol Buck painted Mel Weiss and Bill Lerach's Mark Solomon as an un-named victim knowing that he told her team, verbatim:

A)      "I do not believe he was physically threatening";
B)      "Mr. Bonas is an extremely kind & gentle person"; &
C)      "There should not have been a conviction".[8]

Worse, as explained by Ms. Lave (P.D.), DA Buck hid the above interview from me/my defense:

A.    I was not told of this fact by the prosecutor [Carol Buck] …, which I think reflects just how political, frankly, this whole thing is ….[9]

A.    And, of course, although I should have been made aware of that [exculpatory] information, I never was made aware of that perspective from the prosecutor in this matter or the former prosecutor in this matter.[10]

On this point, e.g., the prosecutor's office cannot claim that it was "duped" by its client Lerach.

### IV.    <u>**Open Act of Judicial & DA Misconduct - Void Plea Agreement**</u>

Fourth, as summarized in my 07-12-10 letter to the BAR's new Chief Trial Counsel Mr. Towery, there is no plea agreement between the parties in my case. There is only a bad deal between the court and myself, in overt violation of real simple judicial rules:

Rule:    [An] … agreement between a judge & an accused <u>can not be squared</u> with due process requirements.[11]

As Judge Areola reminded at my preliminary hearing, to which none of my accusers showed up:

---

[6] <u>California v. Bonas</u>, San Diego Superior Court Case #SCD159416, DA #AAL083, Friday, 10-03-03 Transcript, page 14:4-14.
[7] <u>**10-03-03 Transcript, page 37:1-4**</u>.
[8] 3-22-04 Hearing Transcript, page 19:6-10 (Emphasis)!
[9] 3-22-04 Hearing Transcript, page 19:12-14 (Emphasis)!
[10] 3-22-04 Hearing Transcript, page 19:20-23 (Emphasis)!
[11] Moore's Federal Practice, Rule 11 et seq, Art 6 Supreme.

3

A.    "[I]t would be for a jury [not a judge] to decide … whether this has **rison to the level** of [a crime] beyond reasonable doubt."[12]

The S.D. court advanced capital misconduct by converting a bail hearing into a "confess & I let you go home tomorrow" hearing. It did so with zero judicial authority. DA backed it knowing my mom was very ill and that I was held a back to back case prisoner for about three years.

## V.    My One Day, Five In One Legal Visit To S.D. Firms

Fifth, about my one day visit to my economic price master accusers, I had entirely legitimate reasons to travel from Santa Barbara to down town San Diego on 02-27-01. It is a fact that I lived down town on 9th Street. I had recently moved out of my apartment, returned keys and wound up some of my storage and P.O. Box business. While there, I made four other business stops at the following law firms: Gray Cary's Danielle Fitzpatrick, McKenna Cuneo & Long (R. Brewer), Mogin's firm & to Milberg **Weiss Bershad … Lerach's**.

### Danielle Fitzpatrick (Piper)
### (About Firm Anti-Trust Crimes)

At core, Danielle Fitzpatrick understands anti-trust, worked on my supermarket case and is a former Milberg associate. That is why I on 02-27-01 brought to her a yellow disk detailing complex fact suppression engaged by the defense and my own partners, including D. Howarth. She declined to accept the yellow disk, claiming that she would "need permission from her partners" to possess it. Perhaps she forgot to report these facts to the DA's FBI in her interview.

### Robert Brewer (About Malpractice Plus)

After furnishing Mogin with open and shut retail chain crimes, he referred me to Robert Brewer, a defense antitrust attorney friend of his. See 05-10-10 Brewer/Mogin corr. Brewer told me he had no "price" conflict in representing me in partnership windup. See my Brewer/Hyslop files on enclosed CD. That was untrue. On 02-27-01 I dropped by his office and left a nice settlement offer note. I simply asked him to payback the $5,000 in attorney's fees that I had paid him to date for not representing me, among other things. I guess he forgot to tell FBI/DA this.[13]

### Dan Mogin (Employment Back Pay Plus)

About my single Mogin office visit, I was there to remind him of my employment contract with him. I was there to drop off a letter I wrote about his breach. That letter is dated 07-19-96.

---

[12] 10-3-03 & 10-06-03, at page 109:16-20.

[13] To paint the truth untruthfully, Bob Brewer actively aided Mogin & Lerach-Stone in late 2003 by forwarding attorney client letters from me his office to DA Carol Buck! See 11-24-03 letter! Buck Out!

4

It was the result of Mogin's 1996 financial difficulties, which led him to say he was, "unable to pay me wages owed." It was a friendly collection effort.[14]

Mark Solomon/Eric Issacson
(About The Lerach/Len Simon Problem)

I made one stop at Milberg, to visit my friends Mr. Solomon and/or Eric Issacson <u>about Lerach</u>, not to see Lerach. This FBI testimony confirms it:

A.    <u>I spoke to Eric Isaacson</u> regarding <u>the [one work] visit.</u>
Q.    Perhaps this would be the clearest way of asking it. There was one visit; is that correct?
A.    Yes.
Q.    No more?
A.    Right…Yeah. [15]

The attached 06-06-06 one pager highlights one of Weiss & Lerach's complex fee crimes. It is one of many complex crimes that our government was un-aware of until very recently.

**VI.    <u>Conclusion</u>**

In sum, do not wonder why "a cadre of brand name" complex lit lawyers from both sides of the fence ganged up on <u>me like no one ever before.</u> Facts do not lie, people do. Complex litigators are people, and yes they too lie. They lie in and out of court, like when David Noonan (G. Stone, J. Layden and Mark Spooner, all in concert) said this on the record:

A.    There is no basis … **<u>to suggest</u>** … some obligation-

    A.    … **to have cost … pricing** OR
    A.    … **to base pricing … solely on costs** OR
    A.    … only to charge a certain amount **<u>above costs.</u>** [16]

These words are a sad reality of just one extremely bold economic price lie told with a straight face to a court of honor. Exactly the opposite is universally taught, but concealed from courts:

A.    "[T]he mature **<u>measure</u>** individual item **<u>costs and price accordingly</u>**."
A.    "The green use average-**<u>cost</u>**-line **<u>pricing</u>**…"[17]

I hope you might be interested in "effectively" addressing these points.

I swear by penalty of perjury the law, facts & copies contained here are true and correct.

Sincerely,
**http://bonas.yolasite.com/**
Gary Joseph Bonas II

---

[14] As an intern/associate of Mr. Mogin for many years, if you think both Mogin and Kendrick did not engage in felony Lerach like kickbacks, you are mistaken.
[15] Friday, 10-03-03 Transcript, page 31:10-15.
[16] The firms under oath, 10-15-99 trascript, page 69, LINES 5-9 (69:5-9).
[17] Competitive Strategy, Techniques for Analyzing Industries & Competitors, Michael E. Porter, page 242 (1980 The Free Press).

### Index of Proof Cited

| | |
|---|---|
| 07-12-10 | Me to State Bar Chief Trial Counsel James Towery |
| 08-10-10 | State Bar Chief Trial Counsel James Towery to me |
| 08-13-10 | Me to State Bar Chief Trial Counsel James Towery |
| 02-10-01 | My qui tam Bar Code transcript details addressed to Department of Justice |
| 05-10-10 | Brewer thank you letter to Mogin |
| 07-19-96 | My Mogin breaches employment contract correspondence |
| 06-06-06 | My one page memo highlighting one of Lerach's complex embezzlement crimes |
| 10-15-01 | Defense bar on record misleading the court about universal cost pricing law Moral Turpitude? |

The public records cited to, for independent verification, are available on request. That information everyone was on constructive notice of. On receipt of this document, they are on actual notice.

About complex legerdemain, you, on the formal record said this to the FBI, verbatim:

Q. And how did Mr. Nutley say that he knew Mr. Bonas?
A. From their association with the firm.

Q. Did he have any connection with him in law school as well?
A. Yes, he first met him at the University of San Diego Law School.

Q. And how was Mr. Bonas then employed with this firm?
A. He was originally an intern there, and then he became a partner at Kendrick Bonas & Nutley.

Q. According to Mr. Nutley, was there a case involving … price fixing that Mr. Bonas was involved with?
A. Yes.

Q. Please explain the role that Mr. Bonas had with the case pursuant to Mr. Nutley.
A. Mr. Bonas came up with the original concept of the case, or at least proposed the case to the firm. He did a lot of research and development, and then the firm was one of the firms that represented the plaintiff class.

…

Q. How did Mr. Bonas' employment at the firm end?
A. They dissolved the partnership [because of] … a Bonas party [untrue. I left owing to the gibberish price briefings, malpractice exposure, kickbacks &]….

A Web Of Half & Un-truths
By
Complex Litigators

Gary Joseph Bonas II
25974 Covala Court
Valencia, California 91355

July 12, 2010

James E. Towery
Hoge Fenton Jones & Appel
60 S Market St.
San Jose, California 95113-2396

Re:    <u>Licensed - BAR Misunderstanding & Clarification</u>

Good day Mr. Towery:

Congratulations on your appointment as the State Bar's new Chief Trial Counsel. My name is Gary "Cash" Joseph Bonas II. I write to explain some business matters and to seek your sage advice in connection with a misunderstanding I have with the State Bar over a license issue. What follows is a brief, objective clarification on two key points: business threats mischaracterized as physical threats and the reality that there is no lawful "conviction" contract in my case, contrary to the BAR's publishing about me.

I.    <u>Business Threats</u>

First, in business competition is viewed as a threat. When one commits a crime and is exposed, like Bill Lerach, one is threatened. This nature of legal threats is exactly what my case was and remains about.

Second, to correct some disinformation published by both the D.A. and the State Bar, which seems to have merely copied some of D.A.'s papers in an entirely one-sided publishing, some of my dated, complex legal speech that was suppressed, not understood and wholly mischaracterized is attached to clarify the record:

| | |
|---|---|
| 02-13-01 | Work letter to Elliot Disner, copied to Stone who copied David Noonan |
| 02-26-01 | Work letter to Elliot Disner, copied to Stone who copied David Noonan |
| 03-01 | Work letter to Bob Skirnick, copied to Stone who copied David Noonan |
| 03-01 | Work letter to Stone, Spooner & Noonan |
| 03-17-01 | Work letter to Elliot Disner, copied to Stone who copied David Noonan |

See Exhibit A. These four papers, which are exact copies of some of the legal materials I e-mailed to my accusers (among many others), are legally pointed and contain extremely sensitive factual details about major white collar price crimes. The D.A. may not have understood the contents contained therein, just like it may not have understood the nature of Bill Lerach like plaintiff kickbacks and complex class perjury. Regardless, these papers, which were both suppressed and falsely characterized as physically threatening, entirely disprove the BAR's publishing about the legal speech I engaged during my six week "withdrawal" from complex class crimes in '01.

II.    <u>There Is No Conviction Plea Contract</u>

1

Contrary to the State Court and State Bar, the following judicially noticed facts are presented to correct the record about the reality that there is no lawful conviction in my case.

Foremost, there is no conviction contract that was entered into by the parties. See Exhibit B, which contains four pages: a true copy of an un-signed plea contracted dated 12-30-03 and three pages from the transcript that led to that unsigned, un-executed non-deal. Indeed, the D.A., representing my complex class action accusers specifically chose not to enter this plea contract, which the court itself confirmed, verbatim:

The District Attorney's office is not taking part in this negotiation.[1]

The court initiated this negotiation, dangled a big carrot and thereby converted a bail hearing into a plea hearing. It was wholly improper from go. Because the "parties", which the court is not, did not sign off on this plea contract it is not legally binding, aka patently void. Accordingly, there is no conviction. Sadly, the Court, the D.A. and the State Bar have for many years now pretended that a lawful plea was entered. The State Bar has been put on actual notice of its mistake, but has refused to remedy it. It is a deeply disappointing situation, which raises some ethical concerns.

Based on the above non-deal, the State Bar's publishing led the Central District and Northern District of California to invite me to "show cause" as to why I should not be banned from working in federal court. See Exhibit C, which is a true copy of the Order To Show Cause Chief Justice Marshall sent to me based on the disinformation published by the State Bar about their being a lawful conviction in my case. In response to the Federal Court's invitation, I showed detailed cause, a dab of which is attached as Exhibit D. After showing cause, I did not hear back from the honorable Court, which apparently dropped its case against me.

In addition to showing cause to the federal court, I detailed other government agencies, including the FBI's agent Vikki Medrano, on price matters and complex class crimes. Exhibit E is a 12-23-09 and related communications to the FBI summarizing my decisive withdrawal from the class complex in '01.

I've briefed the State Bar's Ms. McCormick in extensive detail about this situation, but she has entirely ignored my showings. In 2004 I briefed the State Bar's Charles Murray on some of the details pertaining to my complex class background, but he too entirely ignored my showings.

Based on this showing, I was hoping to get your input as to the proper course in addressing the BAR's incorrect publishing about me. I suppose we could resolve this issue in federal court, but that I think of a last resort move. Perhaps I should send a copy of this letter to California Supreme Court's chief justice, but I thought I should get your input prior to doing that.

Thank you in advance for your consideration.

Respectfully submitted,
http://cid-576d5bca19921492.office.live.com/documents.aspx
Gary "Cash" Joseph Bonas II

---

[1] 12-30-10 <u>California v. Bonas</u>, Hearing Transcript, page 3 lines 24-25.

Gary Joseph Bonas II
25794 Covala Court
Valencia, California 91355

August 13, 2010

James E. Towery
Hoge Fenton Jones & Appel
60 S Market St.
San Jose, California 95113-2396

Naval Postgraduate School
1 University Circle
Monterey, Calif. 93943

Re:    Your letter date 08-10-10

Dear Mr. Towery:

    I am in receipt of your letter dated 08-10-10, in response to my letter to you dated 07-12-10. Thank you for your response and guidance. This is to clear up some communication gaps.

    First, you correctly noted that I was unclear about the decision to which I was referring. For clarification, I was referring to a few opinions, the fulcrum of which is the United States 9th Circuit Court of Appeals decision in U.S. v. Bonas, 344 F.3d 945 (9th Cir. 2003). It is a 10 page opinion, which slightly modified conclusion reads:

A)    [W]e resolve the case in favor of Bonas ....[1]
B)    We ... remand for dismissal ... with prejudice.[2]
C)    [T]his is not a Harry Potter novel; there is no charm for making a defendant's constitutional rights disappear.[3]
D)    By bypassing the opportunity to [remove & coordinate the twin state Lerach case] ..., the [state D.A.] government forfeited the right to try the defendant again.[4]

It is a double jeopardy case. I trust this fills in some gaps in my 07-12-10 letter to you.[5]

    Second, about venue, I have and shall take your advise by following up with the lower court. It seems to me, however, that the State Bar's Trial Counsel/Court is the proper venue to address 10th Amen licensing, 1st Amen publishing, CLE and fee (price protocol) points.[6] Your input as to the proper approach to these four public matters is appreciated.

    Thank you for your time and invitation for further communications.

Respectfully,
http://bonas.yolasite.com/
Gary "Cash" Joseph Bonas II

---

[1] Bonas, 344 F.3d 945 note 2.
[2] Bonas, 344 F.3d 945 note 18.
[3] Bonas, 344 F.3d 945.
[4] Bonas, 344 F.3d 945.

[5] I understand the complex procedural confusion with my case. I did not engineer the back to back filings against me, G. Stone and his case partner D. Noonan (defense class bar) along with the Don Howarth, Dan Mogin and Bill Lerach (the plaintiffs class bar) did.

[6] Keller v. State Bar of California, 496 U.S. 1 (1990).

Gary Joseph Bonas II
26255 Bungalow Court
Valencia, California 91355

October 10, 2007

President, Sheldon **_Sloan_**
State Bar of California, Inc.
180 Howard Street
San Francisco, CA 94105

Guardian **CC:** National Security Agency
9800 **Savage** Road, Suite 6740
Fort Meade, MD 20755-6740
BAO@nsa.gov [Esq.] Bus. Affairs Org

Re:    Disinformation & Evidence 101

Good day Mr. Sloan,

As a follow up, here I briefly highlight some points of concern.

First, I note some reported facts about one of your clients in your action against me:

A)    (Lerach recently retired.);
B)    Bill Lerach is set to plead guilty to one **count of conspiracy** in the criminal case involving Milberg Weiss; &
C)    The plea deal **does not involve Lerach's cooperating** with the government in its **investigation**.[1]

Second, I have yet to hear back from you in connection with my 09-16-07 one page procedural posture letter.   And I haven't heard back about my 09-26-07 inquiry about the state bar emitting bills of credit (INS).  I say that because by oath I don't think I can associate with any state that does that.  I took that oath on 12-06-95.  I thought you did too.

Third, I was also wondering why your office dipped into classified medical records and published bits of it relating to meth?  And I wondered why your office likened me to someone with a gun - with zero factual basis?  **ABHORRENT?**  See _Keller v. State Bar of California_, 496 U.S. 1 (1990), which instructed:

1.    State Bar's use of ... compulsory dues to finance [anti-United] political and ideological activities with which [American] petitioners disagree [with] violates their First Amendment right of free speech when such expenditures are not necessarily or reasonably incurred for the purpose of regulating the legal profession or improving the quality of legal services.

Now, I mean no disrespect Mr. Sloan, I just want to do this application the right way & clarify things, constructively.  So you know, at Chief Justice Marshall's invitation, I submitted a response for clarification about things like your article about me.

Respectfully,

Gary Joseph Bonas II

---

[1] September 17, 2007, 7:34 pm, Lerach Set to Plead Guilty, Posted by Nathan Koppel

1

Gary Joseph Bonas II
26255 Bungalow Court
Valencia, California 91355

September 26, 2008

President, Sheldon Sloan
Reserve's State Bar of CA, Inc.
180 Howard Street
San Francisco, Calif. 94105

Guardian **CC:** National Security Agency
9800 **Savage** Road, Suite 6740
Fort Meade, MD 20755-6740
BAO@nsa.gov [Esq.] Bus. Affairs Org

Re:    The State Bar Emitting Bills of Credit

Good day Mr. Sloan,

I have an application packet from your office to re-activate my status, which I am considering. In connection with that, **I have a couple questions** about your progress in Uniting under the supremely binding rules our founders outlined for US.

First, I was wondering why your staff endorses underwriters, contracting with them to emit/sell credit, which insurance is? One BAR ad reads, verbatim:

A)    The State Bar of California endorses several ... Insurance Programs;
B)    NEW JANUARY 2006! Auto/Homeowners Insurance: The State Bar of California has teamed up with Liberty Mutual [and underwriters];
C)    Life Insurance Programs [State people emit Bill of Credit];
D)    Underwritten by American General Life;
E)    Underwritten by American General Life. Contact Raquel Hines at 415-538-2201 for ... information;
F)    State Bar's ... Dismemberment insurance program;
G)    Long Term Care Insurance [State Bill of Credit Emission]; &
H)    The State Bar Endorse[s] ... Insurance Program[s] ... [&] discount-- rates.[1]

I am confused about the BAR sending the message that it is O.K. for a state to emit credit when the rule says it is NOT O.K., Article 1:10. Perhaps I'm missing something, which is why I seek clarification about it.

Second, I agree with your stated aim, "To ensure that lawyers receive quality legal education, [but when you say] the State Bar operators approve MCLE providers and education activities," I wonder:

A)    If you approve **Sugar** case concessions called kickbacks; &
B)    If you educate about states emitting bills of credit for money, e.g.?

Thank you for your time.

Warmest Regards,

Gary Joseph Bonas II

---

[1] http://www.calbar.ca.gov/state/calbar/calbar_extend.jsp?cid=12534&id=1335

Gary Joseph Bonas II
26255 Bungalow Court
Valencia, California 91355

October 30, 2007

Sheldon *Sloan/Nisperos*
State Bar of California, Inc.
180 Howard Street,
San Francisco, Calif. 94105

Guardian **CC:** National Security Agency
9800 Savage Road, Suite 6740
Fort Meade, MD 20755-6740
BAO@nsa.gov[Esq.] Business Affairs Org

Dear Mrs. Sloan, Bliech & Ms. Remke:

Here I show some untruthful statements contained in BAR's publishing about me.

A) Respondent did not appeal his [criminal] criminal [contract] conviction;
B) During February and March 2001, Respondent made between 300 and 1,000 harassing and/or threatening (cite one please!) telephone calls to at least eleven law firms (all rolled up in one!); &
C) He also personally appeared at three of the law firms that were the targets of his threats and harassment, but was either denied access to the buildings or was escorted off the premises (untrue – Mckenna & D. Fitzpatrick).[1]

The briefs, with facts confirming the untruths contained in your article about me have been on file with both the lower & 4th Appellate court in San Diego since '04. The Honorable Judith McConnell wrote to me personally confirming receipt of my appellate issues. She wrote, in key part:

Since … [06-12-06] the court has accepted 34 documents deemed [my] supplemental briefs.[2]

That formal appeal was filed in 2005 after I repeatedly pointed out the invalidity of the non-contract plea you persist in pretending that I entered.

The above letter, coupled with the three key briefed issues – 1st Amen, 10th Amen and double jeopardy – have yet to be ruled on, in breach. The proof of those three big motions are confirmed in PD J. Gilbert's letters & on the formal record. See Ex's A & B.

About my CLE requirements, I am working on a legal/lay Gilbert's like manual to cover some educational points the BAR currently does not teach. This legal intelligence I present and trust shall cover all of my CLE requirements dating back to the late 1990's. The topics presented center on price right law & exactly what government staff may and may not do in compliance with the 10th and other Articles and Amendments.

Last, I would sure appreciate if you'd either correct the incorrect statements contained in your publishing about me or remove that publishing all together.

Respectfully Submitted,

Gary (Cash) Joseph Bonas II

---

[1] http://members.calbar.ca.gov/courtDocs/03-C-03750.pdf
[2] See Attached Ex File, Cover page stamped filed 7-26-06 by Judge McConnell

"Proof a relationship was formed and contributed to <u>affecting price [income down or up] is proof</u> of the completion of a price-fixing conspiracy."[3]

! No preference shall be given by any regulation <u>of [legal] commerce</u>....[4]

! In all Cases affecting Ambassadors [Sloan], other public Ministers [Bliech] and Consuls [Remke], and those in which a State shall be Party, <u>the supreme Court shall have original Jurisdiction</u>.[5]

! The judicial Power of the United States shall be vested in **one supreme Court**, and in such ***inferior Courts*** as the Congress may from time to time ordain and establish. [6]

! No Bill of Attainder **or ex post facto Law shall be passed.**[7]

! **"In questions of power**, then, let no more be heard of confidence in man, but **bind him down from mischief by the *chains*** of the Constitution."[8]

! "Our Constitution has accordingly fixed ***the limits*** to which, and **no further, our confidence may go...** "[9]

! "It would be a dangerous delusion were a confidence in the men of our choice to silence our fears for the safety of [high society] ... rights." [10]

! "May [our Declaration of Independence] be to the world, what I believe it will be, the signal of arousing men and women to burst the chains under which <u>monkish ignorance and superstition</u> had persuaded them to bind themselves, and to assume the blessings and security of self-government... [11]

All eyes are opened, or opening, to the rights of Us."[12]

<u>We shall arrive at this final conclusion:</u>

(1)  the existence of ***an ascertainable*** class and

(2)  a <u>well defined community interest in the</u> ***questions of law and fact involved*** affecting the parties to be represented.

Accordingly, the complaint and each count properly pled will set forth ***sufficient facts to establish*** a class action.[13]

---

[3] <u>Socony</u>, at page 224.
[4] *Article 1:9.*
[5] Article 3 *Section. 2.*
[6] Article III *Section 1.*
[7] Article 1:9.
[8] Thomas Jefferson: Draft, Kentucky Resolutions, 1798.
[9] --Thomas Jefferson: Draft, Kentucky Resolutions, 1798.
[10] --Thomas Jefferson: Draft, Kentucky Resolutions, 1798.
[11] Thomas Jefferson to Roger C. Weightman, 1826.
[12] Thomas Jefferson to Roger C. Weightman, 1826.
[13] <u>Daar v. Yellow Cab Co.</u>, 67 Cal.2d 695, 716-717 (1967).

Gary Joseph Bonas II
26255 Bungalow Court
Valencia, California 91355

October 12, 2007

President, Sheldon Sloan
State Bar of California, Inc.
180 Howard Street,
San Francisco, Calif. 94105

Guardian <u>CC:</u> National Security Agency
9800 <u>Savage</u> Road, Suite 6740
Fort Meade, MD 20755-6740
BAO@nsa.gov[Esq.] Bus. Affairs Org

Re: <u>The Wende Brief – Assistance Of Counsel Denied</u>

Good Day Mr. Sloan:

This is to memorialize that <u>Judge</u> Judy McConnell specifically told me, in writing, that I was not permitted to represent myself in her court. What follows is a summary.

She ordered me to submit to an appointed counsel named **Daniel G. Koryn** to file my papers. He refused to raise a single issue that I asked and filed without even telling me, never mind my approval. This is a running reality in this State Court thing. Tamara Lave, Larry Comeau and Jane Gilbert all did the same thing – filing stuff on my behalf without authorization.

In a declaration, Mr. <u>Koryn actually lied under oath, swearing:</u>

<u>I have thoroughly reviewed the record</u> and a staff attorney at Appellate Defenders, Inc., has also reviewed this [CASH BONAS # DO47928] case.[1]

<u>Mr.</u> Koryn <u>refused to furnish any assistance whatsoever.</u> Without my consent, passed the buck back to Judy McConnell by filing a ""I can't find any appealable issues" called a Wende brief. At paragraph 4 of his brief, Mr. Koryn tried to cover himself, writing:

I have … advised … [Gary Joseph Bonas II] by letter that he may personally file … **raising any points which he chooses** to call to [the court's] … attention. I have forwarded … [part of] the record to [Bonas] … to assist him ….

<u>A whole lot of key</u> where removed from the appellate file, including my June 17, 2005 hearing transcript & the last hearing before W.D. Mud in Dept 40 in late '03, e.g.

Anyway, I accepted that invitation & filed. Upon my partial release, as soon as I was able to access my files, I filed some short supplements, all of which were bounced.

I swear under penalty of perjury the above facts are true.

Warmest Regards,

Gary Joseph Bonas II

---

[1] Page 10, paragraph 2 - D. Koryn Declaration papers, executed June 8, 2006 at San Diego's Ct, attached.



Gary Joseph Bonas II
26255 Bungalow Court
Valencia, California 91355

March 01, 2010

Tracy L. McCormick (State Bar)
Assistant General Counsel
180 Howard Street
San Francisco, Calif. 94105
tracey.mccormick@calbar.ca.gov

VADM Bruce MacDonald
Naval Base Coronado (North Island)
Bldg 318 – Second Deck
San Diego, Calif. 92136-5139
messineo@usna.edu

Re:    Shield Against Injustice

Dear Ms. McCcormick:

Like before, in 2004, you haven't responded to either my 07-24-08 or my 07-26-08 reply to your offices moves against me. I am still waiting for an owed, "process" compliant response to the details about your power and false facts published about me. This is a short follow-up about that and related internal bar affair matters.

To begin, I want to thank your office for addressing some of the capital D.A. crimes sponsored by BENJAMIN THOMAS FIELD (and others). Specifically, your company published this, which I appreciate:

He intentionally withheld a witness' statement that was favorable to the defense ….

[The] Field's investigator found and interviewed the witness[es] but did not notify the defense. [H]e instructed his investigator to prepare a misleading declaration and filed it with the court ….

"Although our system of administering justice is adversarial in nature and prosecutors must be zealous advocates in prosecuting their cases, it cannot be at the cost of justice," wrote Judge Catherine Purcell, joined by Judges JoAnn Remke

"[The] Field lost sight of this goal, … and in doing so, disregarded the foundation from which any … authority flows — 'The … best and most effective shield against injustice for an individual accused … must be found … in the integrity of the prosecutor.'"[1]

Second, if I hear not from you, I conclude you desire a formal counter in court (111 Hill St. Presiding Judge) and with the County Recorder, among others. (10th Amen Privileges)

Third, you've over-charged a "fee of $1,600" since '05, which is ripe for class treatment.[2]

Sincerely,

http://cid-c82bea96c59fd739.skydrive.live.com/browse.aspx/0%200%20Mathew%20T%5E4s%20IT%20File

G. Joseph Bonas II

---

[1]
http://calbar.ca.gov/state/calbar/calbar_cbj.jsp?sCategoryPath=/Home/Attorney%20Resources/California%20Bar%20Journal/March2010&sCatHtmlPath=cbj/2010-03_TH_06_field.html&sCatHtmlTitle=Top%20Headlines
[2] http://calbar.ca.gov/state/calbar/calbar_faq_id.jsp?sCategoryPath=/Home/State%20Bar%20Court&sHeading=FAQs&sOID=73915





## Service List

Fraud on the court occurs when "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter . . . ."[3]  It requires "<u>the most egregious conduct involving a corruption of the judicial process itself</u>."[4]  The courts' power to deal with such fraud is inherent and rooted in equity, for courts "cannot lack the <u>power to defend their integrity against unscrupulous [ESQ] marauders</u> . . . ."[5]

## Counsel for Plaintiff's

Francis O. Scarpulla (By e service plus)
Christopher T. Micheletti
Zelle Hoffman Voelbel and Mason, LLP
44 Montgomery Street, Suite 3400
San Francisco, Calif. 94194

## Counsel for settling defendants (By e service plus)

Joshua Hess
jhess@gibsondunn.com
Gibson Dunn & Crutcher LLP
555 Mission Street
Suite 3000
San Francisco, Calif. 94105-2933
For the Micron Defendants

Vincent van Panhuys
vvanpanhuys@mwe.com
McDermott Will & Emery
600 13th Street, N.W.
Washington, D.C. 20005-3096
For the Renesas-Hitachi-Mitsubishi Defendants

Christopher S. Hales
chales@omm.com
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, Calif. 94111-3823
For the Hynix Defendants

Belinda S. Lee
belinda.lee@lw.com
Latham & Watkins
505 Montgomery Street
Suite 2000
San Francisco Calif. 94111
For the Toshiba Defendants

Douglas M. Jasinski
djasinski@whitecase.com
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
For the Etron Defendants

Jonathan Swartz
jswartz@winston.com
Winston & Straw LLP
101 California Street
San Francisco, Calif. 94111
For the NEC Defendants

## Others Served

MBA Program – <u>U.S. Navy</u>[6] - pjcoughl@nps.edu

---

[3] <u>Aoude v. Mobil Oil Corp.</u>, 892 F.2d 1115, 1118 (1st Cir. 1989); <u>Geo. P. Reintjes Co., Inc. v. Riley Stoker Corp.</u>, 71 F.3d 44, 48 n.5 (1st Cir. 1995).
[4] <u>Roger Edwards, LLC v. Fiddes & Son Ltd.</u>, 427 F.3d 129, 133 (1st Cir. 2005) (quoting 11 Wright, Miller & Kane, Federal Practice & Procedure § 2870 (2d ed. 1995)).
[5] Aoude, 892 F.2d at 1119.
[6] http://www.nps.edu/Academics/Schools/GSBPP/Departments/ManpowerEcon/Manpowerdept.html