JOSEPH W. COTCHETT (#36324)
jcotchett@cpmlegal.com
STEVEN N. WILLIAMS (#175489)
swilliams@cpmlegal.com
NEIL SWARTZBERG (#215133)
nswartzberg@cpmlegal.com
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:  (650) 697-6000
Facsimile:   (650) 697-0577

*Lead Counsel for the Direct Purchaser class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| **IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION** | **Master File No. 4:07-md-01819-CW** |
| | **MDL No. 1819** |
| **This Document Relates to:** | **PLAINTIFFS' OMNIBUS NOTICE OF MOTION AND MOTION IN LIMINE** |
| **ALL DIRECT PURCHASER ACTIONS** | **Date:  December 14, 2010** |
| | **Time:  2:00 p.m.** |
| | **Location:  Courtroom 2, 4th Floor** |
| | **Judge:  The Honorable Claudia Wilken** |

PLAINTIFFS' OMNIBUS NOTICE OF MOTION AND MOTION IN LIMINE;
Case No. 4:07-md-01819-CW, MDL No. 1819

# TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF LAW ...................................................................................................2

I. INTRODUCTION ..................................................................................................2

II. STATEMENT OF ISSUES TO BE DECIDED .....................................................2

III. ARGUMENT ..........................................................................................................2

    A. Irrelevant, Prejudicial and Confusing Evidence Should be Excluded ....................2

        1. MIL No. 1:  Exclude References To Or Evidence Of The Department Of Justice Closing Its SRAM Investigation ............................3

        2. MIL No. 2:  Exclude References To Or Evidence Of Westell Not Being Injured Because Westell Did Not Purchase SRAM During The Period In Which Plaintiffs' Expert Identified SRAM Overcharges ........................................................................................4

        3. MIL No. 3:  Exclude Argument Or Evidence That Plaintiffs Failed To Mitigate Damages............................................................6

        4. MIL No. 4:  Exclude References To And Evidence Of The Ability Of Plaintiffs To Seek Treble Damages And Attorneys' Fees and Costs ..........................................................6

        5. MIL No. 5:  Exclude References To Or Evidence Of Plaintiffs' Ability To "Pass-On" Overcharges, Including The Effect Of Overcharges On Plaintiffs' Businesses ........................................7

        6. MIL No. 6:  Exclude Reference To Or Evidence Of Class Representative's Financial Condition, Fee Arrangements, Other Litigation.................................................................9

        7. MIL No. 7:  Exclude Reference To Or Evidence Of Class Members' Financial Condition......................................................11

        8. MIL No. 8:  Exclude Reference To Or Evidence Of Settlements With Other Defendants ..................................................11

        9. MIL No. 9:  Exclude Reference To Or Evidence Of Class Members Who Opted-Out Or Separately Settled ....................................13

    B. Expert Testimony That Invades Province Of Judge And Jury Should be Excluded.................................................................14

        1. MIL No. 10:  Exclude Expert Opinion That Defendants Did Not Conspire ..........................................................15

IV. CONCLUSION........................................................................................................16

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

*Aguilar v. Int'l Longshoremen's Union,* Local No. 10,
5    966 F .2d 443 (9th Cir. 1992) ......................................................................15

6

*Borunda v. Richmond*,
    885 F.2d 1384 (9th Cir. 1988) ...................................................................3

7

*Brooks v. Cook*,
8    938 F .2d 1048 (9th Cir. 1991) ...................................................................6

9

*Ebenhoech v. Koppers Industries, Inc.*,
    239 F. Supp. 2d 455 (D.N.J. 2002) ...........................................................2

10

*Epstein v. American Reserve Corp.*,
11    1985 WL 2598 (N.D. Ill. Sept. 18, 1985) .................................................10

12

*FIGA v. R.V.M.P. Corp.*,
    874 F.2d 1528 (11th Cir. 1989) ................................................................4

13

*Fisher Bros. v. Cambridge-Lee Industries*, Inc.,
14    585 F.Supp. 69 (D. Pa. 1983) ...................................................................4

15

*Ford Motor Credit Co. v. Hairston*,
    2006 WL 2850615 (W.D. Va. Oct. 2, 2006) ............................................6

16

*Gonzales v. Barrett Business Serv., Inc.*,
17    2006 WL 1582380 (E.D. Wash. Jun. 6, 2006).........................................11

18

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*,
    392 U.S. 481 (1968)...............................................................................7, 8

19

*HBE Leasing Corp. v. Frank*,
20    22 F.3d 41 (2nd Cir. 1994) ........................................................................7

21

*Home Indem. Co. v. Lane Powell Moss & Miller*,
    43 F.3d 1322 (9th Cir. 1995). ....................................................................6

22

*Illinois Brick Co. v. Illinois*,
23    431 U.S. 720 (1977)...................................................................................8

24

*In re Carbon Black Antitrust Litig.*,
    2005 WL 2323184 (D. Mass. Sept. 8, 2005) ............................................4

25

*J. W. v. City of Oxnard*,
26    2008 WL 4810298 (C.D. Cal. October 27, 2008).......................................3

27

*Kassover v. Coeur D'Alene Mines Corp.*,
    1992 WL 509995 (D. Idaho Sept. 2, 1992) ..............................................10

28

*LaDuke v. Nelson*,
  762 F.2d 1318 (9th Cir.1985) ..................................................................................5

*Langer v. Presbyterian Med Ctr. Of Philadelphia*,
  1993 WL 428942 (E.D. Pa. Oct. 19, 1993) ...........................................................13

*Lynch v. Dawson*,
  820 F. 2d 1014 (9th Cir. 1987) .................................................................................5

*McHugh v. United Servo Auto. Ass'n*,
  164 F .3d 451 (9th Cir. 1999) .................................................................................15

*Meijer, Inc. v. Abbott Laboratories*,
  251 F.R.D. 431 (N.D. Cal. 2008).............................................................................8

*Mitchell-Tracey v. United Gen. Title Ins. Co.*,
  2006 WL 149105 (D. Md. Jan. 9, 2006)................................................................10

*Moss v. Lane Co., Inc.*,
  471 F.2d 853 (4th Cir. 1973) ....................................................................................5

*Myers v. Pennzoil Co.*,
  889 F.2d 1457 (5th Cir. 1989) ................................................................................12

*Noble v. McClatchy Newspapers*,
  533 F.2d 1081 (9th Cir. 1975) ..................................................................................7

*Playboy Enters. Inc, v. Chuckleberry Pub., Inc.*,
  486 F. Supp. 414 (S.D.N.Y. 1980) .........................................................................12

*Quad/Graphics, Inc. v. Fass*,
  724 F.2d 1230 (7th Cir. 1983) ................................................................................12

*Re/Max Int'l Inc. v. Realty One, Inc.*,
  173 F.3d 995 (6th Cir. 1999) ..................................................................................15

*Roberts v. Western Airlines*,
  425 F.Supp. 416 (N.D. Cal. 1976) ...........................................................................5

*S. Cal. Housing Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*,
  2005 WL 3954722 (C.D. Cal. Nov. 16, 2005)........................................................10

*Sanderson v. Winner*,
  507 F.2d 477 (10th Cir. 1974) ..................................................................................9

*Tinius v. Carroll County Sheriff Dept.*,
  2004 WL 3103962 (N.D. Iowa Dec. 22, 2004) ......................................................14

*Twin City Sport Serv,. Inc. v. Charles O. Finley & Co. Inc.*,
  676 F.2d 1291 (9th Cir. 1982) ..................................................................................7

*U.S. v. Marrero-Ortiz*,
  160 F.3d 768 (1st Cir.1998).......................................................................................3

*United States ex rel Evergreen Pipeline Constr. Co., Inc. v. Merritt-Meridian Constr. Corp.*,
    1994 WL 577637 (S.D.N.Y. Oct. 19, 1994) ...........................................................................14

*United States Info. Sys. v. Int'l Brotherhood of Electrical Workers*,
    313 F. Supp. 2d 213 (S.D.N.Y. 2004) ....................................................................................15

*United States v. Hilt*,
    981 F .2d 422 (9th Cir. 1992) ................................................................................................10

*United States v. Komisaruk*,
    885 F.2d 490 (9th Cir. 1989) ...................................................................................................2

*United States v. Lawrence*,
    189 F.3d 838 (9th Cir. 1999) ................................................................................................10

*United States v. United States Gypsum Company*,
    438 U.S. 422 (1978).................................................................................................................4

*Van Houten-Maynard v. ANR Pipeline Co.*,
    1995 WL 317056 (N .D. Ill. May 23, 1995) ..........................................................................11

*Young v. Verson Allsteel Press Co.*,
    539 F. Supp. 193 (E.D. Pa. 1982) .........................................................................................12

## <u>STATUTES</u>

15 U.S.C. § 15(a) ...........................................................................................................................6, 7

Federal Rules of Evidence

   Rule 401 ....................................................................................................................................2

   Rule 402 ...........................................................................................................................2, 3, 14

   Rule 403 ..................................................................................................................................3, 14

   Rule 408 ....................................................................................................................................2

   Rule 702 ....................................................................................................................................2

   Rule 703 ....................................................................................................................................2

## <u>OTHER AUTHORITIES</u>

Wright & Graham, Federal Practice and Procedure: Evidence §5164 (1st Ed.) ............................2

**PLAINTIFFS' OMNIBUS NOTICE OF MOTION AND MOTION IN LIMINE;**
**Case No. 4:07-md-01819-CW, MDL No. 1819**                                    iv

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 14, 2010, at 2:30 p.m., before the Honorable Claudia Wilken, United Sates District Court, Northern District of California, 1301 Clay Street, Suite 400S, Oakland, California, plaintiffs will and hereby do move the Court, pursuant to the Federal Rules of Evidence for an Order excluding the following evidence from the jury trial of this action:

## I.   Irrelevant, Prejudicial And Confusing Evidence

***Motion In Limine No. 1:*** Exclude References To Or Evidence Of The Department Of Justice Closing Its SRAM Investigation

***Motion In Limine No. 2:*** Exclude References To Or Evidence Of Westell Not Being Injured Because Westell Did Not Purchase SRAM During The Period In Which Plaintiffs' Expert Identified SRAM Overcharges

***Motion In Limine No. 3:*** Exclude Argument Or Evidence That Plaintiffs Failed To Mitigate Damages

***Motion In Limine No. 4:*** Exclude References To And Evidence Of The Ability Of Plaintiffs To Seek Treble Damages And Attorneys' Fees and Costs

***Motion In Limine No. 5:*** Exclude References To Or Evidence Of Plaintiffs' Ability To "Pass-On" Overcharges, Including The Effect Of Overcharges On Plaintiffs' Businesses

***Motion In Limine No. 6:*** Exclude Reference To Or Evidence Of Class Representative's Financial Condition, Fee Arrangements, Other Litigation

***Motion In Limine No. 7:*** Exclude Reference To Or Evidence Of Class Members' Financial Condition

***Motion In Limine No. 8:*** Exclude Reference To Or Evidence Of Settlements With Other Defendants

***Motion In Limine No. 9:*** Exclude Reference To Or Evidence Of Class Members Who Opted-Out Or Separately Settled

## II.   Expert Testimony That Invades Province Of Judge And Jury

***Motion In Limine No. 10:*** Exclude Expert Opinion That Defendants Did Not Conspire

1    This motion is based on this Notice of Motion and Motion, the following Memorandum

2    of Law, the declaration of Neil Swartzberg and exhibits thereto, the complete files and records

3    in this action, and such other written or oral arguments that may be presented to the Court.

4    Plaintiffs reserve the right to amend and/or supplement their motions *in limine,*

5    including as a result of the Court's rulings on defendants' motions submitted on October 14,

6    2010.

7    **MEMORANDUM OF LAW**

8    **I.    INTRODUCTION**

9    Plaintiffs request that this Court exclude 10 categories of evidence from the trial of this

10   action under Federal Rules of Evidence ("F.R.E.") 401-403, 408, and 702-703.  In Section III.

11   A., plaintiffs seek the exclusion of evidence that is irrelevant and/or unfairly prejudicial to

12   plaintiffs.  In Section III.B., plaintiffs request the exclusion of improper expert testimony.

13   **II.    STATEMENT OF ISSUES TO BE DECIDED**

14   1. Whether the 10 categories of evidence set forth in the Notice of Motion and further

15   described herein should be excluded from the jury trial of this action.

16   **III.    ARGUMENT**

17   **A.    Irrelevant, Prejudicial and Confusing Evidence Should be Excluded**

18   Motions *in limine* are appropriate "to exclude, prior to trial, irrelevant or otherwise

19   inadmissible evidence that may prejudice or confuse a jury."  *United States v. Komisaruk*, 885

20   F.2d 490, 492-93 (9th Cir. 1989) (*in limine* order properly precluded irrelevant statements); *see*

21   *also Ebenhoech v. Koppers Industries, Inc.*, 239 F. Supp. 2d 455, 461 (D.N.J. 2002) (*in limine*

22   rulings are appropriate "where the court can shield the jury from unfairly prejudicial or

23   irrelevant evidence").  Federal Rules of Evidence 402 provides that "[e]vidence which is not

24   relevant is not admissible."  F.R.E. 402; *see also* Wright & Graham, Federal Practice and

25   Procedure: Evidence §5164 (1st Ed.) (evidence with no "rational connection" to the

26   determination of the action must be excluded).  Further, Federal Rules of Evidence 403 provides

27   that "evidence may be excluded if its probative value is substantially outweighed by the danger

28

of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  F.R.E. 403.

As detailed below, plaintiffs anticipate that defendants will attempt to introduce evidence that is either irrelevant as a matter of law, or that is unfairly prejudicial, confusing or misleading.  Plaintiffs respectfully request that such evidence be excluded under F.R.E. 402, 403 and/or 408.

1.      **MIL No. 1:  Exclude References To Or Evidence Of The Department Of Justice Closing Its SRAM Investigation**

In October 2006, it was made public that the Department of Justice ("DOJ") was conducting a criminal investigation into price-fixing in the SRAM market, and that a grand jury had issued criminal subpoenas to numerous SRAM manufacturers.  In December 2008, the DOJ informed targets of that investigation, including defendants that the DOJ was closing its investigation.  No criminal charges were filed against SRAM manufacturers in connection with price-fixing of SRAM.

It is well-established that the decision of a criminal enforcement agency to not criminally prosecute, or even an acquittal in a criminal case, should not be admitted as evidence in a civil case related to the same underlying conduct because such evidence is irrelevant and/or unduly prejudicial.  *See, e.g., J.W. v. City of Oxnard*, 2008 WL 4810298 at *22 (C.D. Cal. October 27, 2008) ("The decision not to prosecute is highly discretionary and demonstrates nothing more than the opinion of the prosecutor. . . . All that the decision not to prosecute can accurately show is that the District Attorney was of the opinion that the case should not be prosecuted. This minimal probative value is outweighed by the possibility that jurors unfamiliar with the judicial process might be misled."); *see also Borunda v. Richmond*, 885 F.2d 1384, 1387 (9th Cir. 1988) ("[e]vidence of an acquittal is not generally admissible in a subsequent civil action"); *U.S. v. Marrero-Ortiz*, 160 F.3d 768, 775 (1st Cir.1998) ("such evidence [of acquittal] ordinarily does not prove innocence. After all, cases are dismissed for a variety of reasons, many of which are unrelated to culpability. Because evidence of a dismissal may have served to confuse the jury rather than to assist it, the district court had the authority to exclude

such evidence here"); *Fisher Bros. v. Cambridge-Lee Industries*, Inc., 585 F.Supp. 69, 72 (D. Pa. 1983) ("[T]he fact that the defendant was not indicted by a grand jury was not a proper basis for a Rule 11 motion in a civil suit. There is a long-recognized difference in the standard of proof for civil and criminal antitrust cases.") (denying motion to dismiss and citing *United States v. United States Gypsum Company*, 438 U.S. 422 (1978)).

In this case, the DOJ could have closed its SRAM investigation for a variety of reasons, including that it did not believe it could establish a violation with proof beyond a reasonable doubt.  Jurors, however, would likely draw improper conclusions based upon a government agency not bringing charges.  Evidence of non-prosecution is irrelevant, highly misleading and prejudicial because it allows the jury to conclude that the defendants did not engage in wrongful conduct.  The higher burden of persuasion in a criminal case alone is a sufficient basis to keep evidence of non-prosecution from the jury.  *See FIGA v. R.V.M.P. Corp.*, 874 F.2d 1528, 1531 (11th Cir. 1989).  As Judge J. Woodlock explained in another price-fixing case:

> The First Circuit has warned in the criminal context that introducing evidence of prior dismissal of a case could impermissibly lead "the jury into thinking that a defendant was innocent of the dismissed charge when no such determination has been made." [Citation.]  That reasoning applies in the civil context as well, *and with even greater force when no case was even brought*.

*In re Carbon Black Antitrust Litig.*, 2005 WL 2323184 at *1-*2 (D. Mass. Sept. 8, 2005) (emphasis added).

This Court, therefore, should preclude defendants from making argument or offering evidence of the DOJ closing its SRAM investigation on the grounds of irrelevance and/or undue prejudice.

### 2.  MIL No. 2:  Exclude References To Or Evidence Of Westell Not Being Injured Because Westell Did Not Purchase SRAM During The Period In Which Plaintiffs' Expert Identified SRAM Overcharges

As fully set forth in plaintiffs' opposition to defendants' motion to decertify the class, Westell can continue to prosecute the claims of the direct purchaser class even though, after extensive discovery and expert analysis, it was determined that Westell's SRAM purchases did not occur during the period where plaintiffs identified defendants' collusive conduct as raising

1    SRAM prices to supracompetitive levels.  *See Lynch v. Dawson*, 820 F. 2d 1014, 1016 (9th Cir.

2    1987) ("[T]he fact of certification will preserve a class's standing even after the named

3    individual representatives have lost the required 'personal stake.'") *quoting LaDuke v. Nelson*,

4    762 F.2d 1318, 1325 (9th Cir.1985); *Roberts v. Western Airlines*, 425 F.Supp. 416, 432 (N.D.

5    Cal. 1976) ("If the plaintiff were a member of the class at the commencement of the action and

6    his competency as a representative of the class then determined or assumed, the subsequent

7    dismissal or mootness of his individual claim . . . will not operate as a dismissal or render moot

8    the action of the class, *or destroy the plaintiff's right to litigate the issues on behalf of the*

9    *class*.") *quoting Moss v. Lane Co., Inc.*, 471 F.2d 853, 855 (4th Cir. 1973) (emphasis added).

10        In particular, such a determination made two years after the direct purchaser class was

11   certified does not operate to deprive direct purchaser class members of their right to have their

12   claims with respect to the conspiracy fully adjudicated by Westell – especially when there is

13   sufficient evidence showing that class members were injured by the conspiracy in amounts up to

14   $603 million, and every indication that Westell will continue to serve the interests of the class.

15   *See Lynch*, 820 F. 2d at 1016; *LaDuke*, 762 F.2d at 1322, fn. 3; *Roberts*, 425 F.Supp. at 432;

16   *Moss*, 471 F.2d at 855-56.

17        Provided that the Court confirms Westell's ability to continuing prosecuting the claims

18   of the direct purchaser class, the main disputed issues in this case that would remain will be: the

19   existence of the conspiracy; and, the extent to which such conspiracy may have harmed *other*

20   direct purchasers.  Plaintiffs will still need to prove the conspiracy, which requires evidence of

21   defendants' conduct, not that of Westell or other direct purchasers.  Plaintiffs will also still need

22   to prove the extent to which SRAM overcharges harmed other direct purchasers.  However,

23   argument about and evidence of Westell not having purchased SRAM during the period in

24   which plaintiffs identified SRAM overcharges would be irrelevant.  Such argument and

25   evidence would serve no purpose other than to improperly persuade jurors that they should not

26   find overcharges and award damages to any class member, and perhaps not find any conspiracy,

27   simply because Westell did not purchase its SRAM during the period where plaintiffs have

28   identified SRAM overcharges.  Such argument and evidence would constitute undue prejudice.

1   This Court, therefore, should preclude defendants from making argument about or

2   offering evidence of Westell not being injured because it did not purchase SRAM during the

3   period in which plaintiffs identified SRAM overcharges.

### 3.   MIL No. 3:  Exclude Argument Or Evidence That Plaintiffs Failed To Mitigate Damages

6   In their answers, defendants set forth the affirmative defense that plaintiffs have failed to

7   mitigate their damages.  However, it is a fundamental principle of law that "the duty to mitigate

8   damages does not arise until the party upon whom the duty is impressed is aware of facts

9   making the duty to mitigate necessary."  *Home Indem. Co. v. Lane Powell Moss & Miller*, 43

10  F.3d 1322, 1329 (9th Cir. 1995).  Here, plaintiffs request damages for the overcharges they

11  incurred between October 1999 and December 2001.  Plaintiffs, however, did not learn of the

12  price-fixing conspiracy until after the damages period, in October 2006, when the DOJ's

13  investigation of the SRAM industry was first publicly revealed.  There is no evidence that

14  plaintiffs had any knowledge of the SRAM price-fixing conspiracy during the period of alleged

15  collusion, at least through 2005.  As courts have held, "it would be an absurd misapplication of

16  the rule for mitigation of damages to expect the plaintiff to minimize injury before discovery of

17  the breach."  *Ford Motor Credit Co. v. Hairston*, 2006 WL 2850615 at *4 (W.D. Va. Oct. 2,

18  2006).  Thus, because plaintiffs had no duty to mitigate damages caused by an illegal

19  conspiracy of which they had no knowledge, defendants should be precluded from referencing

20  or introducing any evidence at trial regarding plaintiffs' supposed failure to mitigate damages.

### 4.   MIL No. 4:  Exclude References To And Evidence Of The Ability Of Plaintiffs To Seek Treble Damages And Attorneys' Fees and Costs

23  Under Section 4 of the Clayton Act, a person injured by a violation of federal antitrust

24  laws is entitled to "recover threefold the damages by him sustained."  15 U.S.C. § 15(a).  It is

25  well settled that reference to an antitrust plaintiff's entitlement to treble damages, which reflects

26  Congress' intent to deter antitrust violations, is inadmissible in a jury trial.  *See, e.g., Brooks v.*

27  *Cook*, 938 F .2d 1048, 1052 (9th Cir. 1991) ("An instruction informing the jury of the trebling

28  provision 'is an invitation to the jury to negate Congress' determination that actual damages

**PLAINTIFFS' OMNIBUS NOTICE OF MOTION AND MOTION IN LIMINE;**
**Case No. 4:07-md-01819-CW, MDL No. 1819**                                    6

1   should be trebled in order to deter antitrust violations and encourage private enforcement of the

2   antitrust laws.'") (citing *Noble v. McClatchy Newspapers*, 533 F.2d 1081, 1091 (9th Cir. 1975),

3   vacated on other grounds, 433 U.S. 904 (1977)).

4       Section 4 of the Clayton Act also provides that "the cost of the suit, including a

5   reasonable attorney's fee" is to be awarded.  15 U.S.C.A. §15(a).  The purpose of this attorney's

6   fees provision is to "insulate treble-damage recovery from expenditures for legal fees, consistent

7   with § 4's purpose to encourage private persons to undertake enforcement of antitrust laws.'"

8   *Twin City Sport Serv,. Inc. v. Charles O. Finley & Co. Inc*., 676 F.2d 1291, 1312 (9th Cir.

9   1982).  The case law makes it clear that just as the treble damages award is an issue outside the

10   province of the jury, so too is the attorneys' fees determination.  *See Brooks*, 938 F.2d at 1048

11   ("In a case where the plaintiff is entitled to compensatory damages, informing the jury of the

12   plaintiff's potential right to receive attorneys' fees might lead the jury to offset the fees by

13   reducing the damage award."); *HBE Leasing Corp. v. Frank*, 22 F.3d 41, 45-46 (2nd Cir. 1994)

14   (collecting "cornucopia" of case law, and stating "In that context [of antitrust violations] as

15   well, courts have uniformly concluded that mentioning treble damages and attorneys fees to the

16   jury is improper.").

17       Plaintiffs, therefore, request that the Court order defendants not to refer during trial to

18   plaintiffs' ability to recover treble damages or attorneys' fees and costs, as well as to not

19   introduce any evidence in those regards.  Any such reference or evidence is irrelevant, would

20   improperly interfere with the jury's fact-finding role under the Clayton Act and would unfairly

21   prejudice plaintiffs.

22        **5.    MIL No. 5:  Exclude References To Or Evidence Of Plaintiffs'**
23                  **Ability To "Pass-On" Overcharges, Including The Effect Of**
               **Overcharges On Plaintiffs' Businesses**

24       Under well-established Supreme Court authority, no "pass-on" defense is available to a

25   defendant in a federal antitrust price-fixing case for damages. Evidence of or reference to any

26   "pass-on" is, therefore, irrelevant and unduly prejudicial, and should be excluded.

27       More than forty years ago, in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392

28   U.S. 481 (1968), the Supreme Court held that a defendant could not defend against an antitrust

action for damages on the ground that the plaintiff avoided "actual" injury by raising prices to its customers, i.e. "passing-on" the overcharge. *See id.* at 494. The Supreme Court reasoned that a "pass-on" defense would cripple antitrust enforcement because it would reduce or eliminate the potential recoveries of those parties with the greatest ability and incentive to prosecute antitrust actions, namely the direct purchasers. *See id.* For these reasons, it has long been established that a direct purchaser may recover the full amount of an illegal overcharge, "[e]ven if it could be shown that the [plaintiff] raised his price in response to, and in the amount of, the overcharge." *See id.* at 493; *see also Meijer, Inc. v. Abbott Laboratories,* 251 F.R.D. 431, 433 (N.D. Cal. 2008) ("[*Hanover Shoe*] held that when a seller overcharges a buyer . . . , the fact that the buyer raises the price for its own product, thereby passing on the overcharge to its customers and avoiding a loss in profit, has no bearing on the issue of whether the buyer has suffered an injury and thus has the right to recover damages from the seller. Rather, damages are appropriate to the extent the buyer was overcharged, and must be measured accordingly.").

Allowing defendants to suggest that plaintiffs suffered no "actual" harm because they "passed-on" the illegal overcharges to their customers would constitute an appeal to the jury to disregard the law, because the jury need only consider evidence of the alleged illegal overcharges – regardless of whether direct purchasers were able to "pass-on" such overcharges. In fact, permitting such argument and evidence would directly contradict the Supreme Court's ruling in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), that the federal antitrust laws would be "more effectively enforced by concentrating the full recovery for the overcharge in the direct purchasers." *Id.* at 735.

The Court should also preclude evidence of or reference to matters that draw the jurors' attention to the effect of the illegal overcharge on direct purchasers' businesses, even if defendants do not specifically describe such evidence as "pass-on" evidence. Specifically, reference to or evidence of direct purchasers' profitability or the retail prices of SRAM should

1   be precluded, because such evidence would invite the jury to assume that direct purchasers

2   avoided "actual" damages by raising their prices in response to the overcharge.[1]

3          Finally, defendants should be precluded from making references to the indirect

4   purchaser actions. Those actions are premised on the "passing-on" of the overcharge, and

5   references to the indirect purchaser cases would likely tempt direct purchaser jurors, contrary to

6   law, to reduce the direct purchasers' damages award out of sympathy for defendants facing

7   additional exposure under the indirect purchasers' state law claims.[2]

8          **6.      MIL No. 6:  Exclude Reference To Or Evidence Of Class**
           **Representative's Financial Condition, Fee Arrangements, Other**
9          **Litigation**

10         Plaintiffs anticipate that defendants may attempt to introduce unduly prejudicial and

11  irrelevant information about the representative plaintiff, such as its financial condition or prior

12  lawsuits, and may also seek to introduce evidence of plaintiff's fee arrangements.  Defendants

13  should be barred from offering any such evidence, directly or indirectly. Evidence of the named

14  plaintiff's financial condition, fee arrangements and the like has no rational connection to the

15  question whether the defendants unlawfully conspired to fix prices within the SRAM industry,

16  and should be excluded.  *See, e.g., Sanderson v. Winner*, 507 F.2d 477, 479 (10th Cir. 1974)

17  (evidence of financial situation of class plaintiff irrelevant, because courts "generally eschew

18

19

20  [1] Defendants also have not indicated that there is any evidence of direct purchasers buying
    SRAM in a manner that would warrant defendants arguing that *Illinois Brick's* "cost plus"-
21  exception applies, or, for that matter, how that exception would affect the prohibition of a "pass-
    on" defense in this case.  Any reference to that exception, therefore, would only serve to
22  confuse the jury.  Thus, reference to that exception should also be prohibited.

    [2] The direct purchaser plaintiffs and the indirect purchaser plaintiffs have proposed bifurcation
23  such that the direct and indirect actions would initially proceed together.  *See* Joint Pretrial
    Conference Statement, Section V.a., filed concurrently with this motion.  Under the direct and
24  indirect purchaser plaintiffs' bifurcation proposals, the initial, joint phase of trial would be
    limited solely to the issue of the existence of the alleged conspiracy.  Therefore, in that initial,
25  joint phase, there would be no need for the defendants or the indirect purchasers to present
    evidence or argument related to "pass-on."  If the Court adopts one of the direct and indirect
26  purchaser plaintiffs' bifurcation proposals, in that initial, joint phase, jurors need only be told
    that various plaintiffs are bringing claims against defendants and that jurors need only consider
27  the issue of the existence of the alleged conspiracy.  There would be no instruction that two
    types of plaintiffs – direct and indirect purchasers – are bringing claims against the defendants.
28

the question whether litigants are rich or poor. Instead, we address ourselves to the merits of the litigation").

Even if such evidence could be construed as relevant, whatever probative value it may have is substantially outweighed by the danger of unfair prejudice to the plaintiffs. Evidence concerning the named plaintiff's fee arrangements with its lawyers, or that lawyers are advancing the costs of litigation, for example, would likely "infec[t] the jury's ability to make an unbiased assessment" of relevant evidence (*United States v. Lawrence*, 189 F.3d 838, 843 (9th Cir. 1999)), and/or arouse irrational prejudices, causing them to draw "perfectly logical-though mistaken-inferences" (*United States v. Hilt*, 981 F .2d 422, 424 (9th Cir. 1992)). *See Epstein v. American Reserve Corp.*, 1985 WL 2598 at *2 (N.D. Ill. Sept. 18, 1985) ("inquiry into plaintiffs financial resources and estimate of expenses is improper when their attorneys agree to advance all costs of litigation"); *see also Mitchell-Tracey v. United Gen. Title Ins. Co.*, 2006 WL 149105 at *3 (D. Md. Jan. 9, 2006) (explaining that it is for the court to consider any attorney fee arrangements; "the appropriate time for inquiry into fee arrangements is after judgment under Rule 69 of the Federal Rules of Civil Procedure").

Further, evidence of plaintiffs' involvement in unrelated litigation is similarly irrelevant. *See, e.g., S. Cal. Housing Rights Ctr. v. Los Feliz Towers Homemowners Ass'n*, 2005 WL 3954722 at *1 (C.D. Cal. Nov. 16, 2005) (granting plaintiff's motion *in limine* seeking to exclude plaintiff's "litigation history"); *see also Kassover v. Coeur D'Alene Mines Corp.*, 1992 WL 509995 (D. Idaho Sept. 2, 1992) ("[T]he court finds that the plaintiff's involvement in previous suits is irrelevant to the initial question of certification now before the court. The court is persuaded that this is the majority view on this issue").

Defendants, therefore, should be precluded from referencing or introducing any evidence at trial regarding the representative plaintiff's financial condition, prior lawsuits, or fee arrangements with counsel.

/ / /

7.      **MIL No. 7:  Exclude Reference To Or Evidence Of Class Members' Financial Condition**

The class is comprised of individuals and entities of varying financial condition and bargaining strength, including some large companies that purchased quantities of SRAM from defendants and their co-conspirators. Because evidence as to the financial condition and bargaining strength of class members is irrelevant to any issue in this case and would also be unfairly prejudicial, plaintiffs request that defendants be precluded from offering such evidence at trial.

Courts in this Circuit and around the country consistently hold that evidence of the wealth or economic position of a party is irrelevant and/or unduly prejudicial and should be excluded. *See, e.g., Gonzales v. Barrett Business Serv., Inc.*, 2006 WL 1582380 at *22 (E.D. Wash. Jun. 6, 2006) (excluding evidence of defendant's financial condition as irrelevant); *Sanderson*, 507 F .2d at 489 (evidence of financial situation of class plaintiff irrelevant); *Van Houten-Maynard v. ANR Pipeline Co.*, 1995 WL 317056 at *4 (N .D. Ill. May 23, 1995) ("testimony or reference to the relative wealth, or economic standing of the parties, has no relevance to any of the issues in this case").

In particular, defendants should be precluded from arguing that the class contains large corporations with significant bargaining strength because the evidence in this case indicates that defendants colluded with respect to SRAM sold to even larger purchasers, such as Intel. Apparently defendants did not view the supposed bargaining strength of such OEMs and other large purchasers as a barrier to their price-fixing efforts. Thus, evidence as to the financial condition, in particular the bargaining strength, of class members, should be excluded as irrelevant and/or unfairly prejudicial.

8.      **MIL No. 8:  Exclude Reference To Or Evidence Of Settlements With Other Defendants**

Evidence that plaintiffs have already settled with other defendants has little, if any, probative value, and could lead the jury to a number of improper conclusions unfairly prejudicial to plaintiffs.  It should, therefore, be excluded.

Federal Rule of Evidence 408 generally precludes evidence of conduct or statements made during settlement negotiations. Federal Rule of Evidence 408 plainly extends the exclusion to completed compromises. *See* F.R.E. 408 advisory committee note ("While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto."); *see also Playboy Enters. Inc, v. Chuckleberry Pub., Inc.*, 486 F. Supp. 414, 423 at n. l0 (S.D.N.Y. 1980) ("It is well-established that statements made for purposes of settlement negotiations are inadmissible, and Rule 408 of the Federal Rules of Evidence extends the exclusion to completed compromises when offered against the compromiser.") (citing Weinstein & M. Berger, Weinstein's Evidence, p. 408(04) (1978)).

In particular, exclusion of prior settlements is warranted when their introduction could cause the jury to improperly reduce any damage award against defendants because of the belief that plaintiffs have already been compensated in whole or in part. *See, e.g., Young v. Verson Allsteel Press Co.,* 539 F. Supp. 193, 195 (E.D. Pa. 1982) ("It is difficult to understand how [defendant] is not . . . seeking to introduce such evidence to mitigate the amount of any possible jury award by informing the jurors that plaintiff has already received a measure of compensation for his injuries."). Similarly, if the jury is informed of either the fact or amount of prior settlements, there is a danger that the jury may conclude that the settling defendants were those responsible for the injury, and that non-settling defendants should be exonerated.

Finally, in civil cases, as compared to criminal cases, courts also routinely reject the argument that admission of settlements should be permitted so that the jury may consider such settlement in assessing the credibility of a settling defendant witness. *See, e.g., Myers v. Pennzoil Co.*, 889 F.2d 1457, 1460-62 (5th Cir. 1989) (affirming exclusion of evidence of settlement to prove the bias of a witness who was related to the former defendant); *see also Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1235 (7th Cir. 1983) ("appellants suggest that the settlement agreement was relevant to Irving's credibility. However, if it had any effect at all, it could only have enhanced his credibility, because at the time of his deposition and trial he had no personal interest in the lawsuit."); *see also Langer v. Presbyterian Med. Ctr. Of Philadelphia*,

1993 WL 428942 at *2 (E.D. Pa. Oct. 19, 1993) ("[Defendant] seeks to admit the evidence for three, what it calls, "independently relevant" purposes: (1) to minimize [defendant's] exposure to damages; (2) to support [defendant's] affirmative defenses; and (3) to test the credibility of witnesses. . . .  Rule 408 precludes admission of evidence that relate to the amount of damages. [Citation.]  This rule applies even where, as in this case, a defendant seeks to introduce evidence of a compromise between a plaintiff and a former co-defendant.").  Moreover, in this case, there is nothing about plaintiffs' settlements with the settling defendants to indicate that witnesses from such defendants would not testify truthfully.  Therefore, admission of evidence of such settlements for that ostensible purpose would only serve to confuse jurors.  That, of course, is in addition to other unfair prejudice, including the possibility that jurors may discount any damages award against defendants.

In sum, because evidence of or reference to the amount or fact of plaintiffs' settlements with the settling defendants would violate F.R.E. 408 and prejudice and confuse the jury, it should be excluded.

### 9. MIL No. 9:  Exclude Reference To Or Evidence Of Class Members Who Opted-Out Or Separately Settled

Following dissemination of notice of the pendency of this class action, a number of former class members submitted timely requests for exclusion from the class.  Additionally, defendants have indicated that certain class members who did not opt-out entered into separate settlements with certain defendants.  Because the existence of opt-outs and their impact on the class is irrelevant to any issue in this case, and because reference to opt-outs would be unfairly prejudicial, plaintiffs move that defendants be precluded from introducing evidence of or making any references to opt-outs at trial.  For related reasons, plaintiffs also move that defendants be precluded from introducing evidence of or making any references at trial to any class member's status as a separately-settling class member.

That several former class members chose to opt out has no relevance either to the claims of the remaining class members or to any conceivable defense, because plaintiffs' damages expert can account for sales to opt-outs.  On the other hand, separately-settling class members

1    remain part of the class, notwithstanding the fact they may have entered into settlement

2    agreements with certain defendants.  But the fact that those class members have separately

3    settled with certain defendants is irrelevant to the issues of existence of conspiracy and amount

4    of damages to class members.  Besides being irrelevant, evidence of opt-outs and certain class

5    members' status as separately-settling would unfairly prejudice plaintiffs and mislead the jury

6    because it would improperly create the impression that plaintiffs' claims are somehow lacking

7    or diminished in merit because some putative class members voluntarily decided to exclude

8    themselves from the litigation, or to reach separate settlements with certain defendants.

9         Courts routinely grant motions *in limine* precluding any reference to former parties or

10   claims that are no longer part of the litigation.  *See, e.g., Tinius v. Carroll County Sheriff Dept.*,

11   2004 WL 3103962 at *2 (N.D. Iowa Dec. 22, 2004) (ruling that evidence as to former parties

12   was "irrelevant to the issues involved in this case" and that defendants were "precluded from

13   discussing or making any reference to the fact that parties have been dismissed from this case");

14   *United States ex rel Evergreen Pipeline Constr. Co., Inc. v. Merritt-Meridian Constr. Corp.*,

15   1994 WL 577637 at *1 (S.D.N.Y. Oct. 19, 1994) (referring to the court's granting of the motion

16   *in limine* barring "evidence relating to previously dismissed parties or causes of action").

17   Additionally, this Court has recognized that a direct purchaser who may have reached a separate

18   agreement with certain defendants still remains a class member if it does not opt-out.  *See* Dkt.

19   No. 810 (Order Denying Intel's Motion to Opt-Out Late).

20        The opt-outs have excluded themselves from this litigation and their claims are no

21   longer at issue at trial.  Separately-settling class members remain in the case, but the fact that

22   they may have settled with certain defendants has no bearing on the issues to be decided.

23   Reference to the existence of the opt-outs or the status of class members as separately-settling

24   is, thus, appropriately excluded under F.R.E. 402 and 403.

25   **B.    Expert Testimony That Invades Province Of Judge And Jury Should be**
        **Excluded**

26

27        It is well-established that expert witnesses may not offer opinions that embrace or

28   constitute legal conclusions.  *See McHugh v. United Servo Auto. Ass'n*, 164 F .3d 451, 454 (9th

Cir. 1999); *Aguilar v. Int'l Longshoremen's Union,* Local No. 10, 966 F .2d 443, 447 (9th Cir. 1992).

### 1.   MIL No. 10:  Exclude Expert Opinion That Defendants Did Not Conspire

In this case, one of defendants' expert witnesses, Dr. Jospeph Kalt, has in his expert report offered opinions that improperly constitute legal conclusions, including that Cypress did not conspire. (Those improper opinions are set forth below and the relevant portions of Dr. Kalt's report is attached as Exhibit A to the concurrently-filed Declaration of Neil Swartzberg.) This Court should preclude Dr. Kalt from providing those opinions at trial, as well as any similar testimony by Dr. Kalt or other defense experts that constitute legal conclusions.

Dr. Kalt violates the rule against providing conclusions of law by offering conclusions as to the existence of the conspiracy alleged in this case.

In an antitrust case such as this one, a qualified expert witness may offer an opinion that the conditions in a specific market are consistent with conspiratorial activity, or that a defendant's behavior was consistent with collusive activity. *See, e.g., United States Info. Sys. v. Int'l Brotherhood of Electrical Workers,* 313 F. Supp. 2d 213, 240 (S.D.N.Y. 2004); *Re/Max Int'l Inc. v. Realty One, Inc.,* 173 F.3d 995, 1003, 1010-11 (6th Cir. 1999).  What an expert witness may not do, however, is offer an opinion that the evidence cannot support a finding of an illegal conspiracy.  *United States Info. Sys*., 313 F. Supp. at 239. Several of Dr. Kalt's opinions violate these basic precepts.

For example, Dr. Kalt states:

"The evidence does not support the claim that Cypress was a participant in the purported conspiracy."  *See* Swartzberg Decl., Ex. A (Kalt Report, para. 9).

"If others were fixing prices, Cypress' pricing was consistent with that of an outsider to such price-fixing." *See* Swartzberg Decl., Ex. A (Kalt Report, para. 10).

"The aggressive expansion of its product portfolio means that Cypress was competing and disrupting any desires or attempts by competitors to avoid competing" *See* Swartzberg Decl., Ex. A (Kalt Report, para. 11).

"Cypress grew at the expense of competitors. It did this by out-competing them." *See* Swartzberg Decl., Ex. A (Kalt Report, para. 12).

"Plaintiffs' experts' theories and (absence of) evidence on actual marketplace outcomes, therefore, are insufficient to demonstrate an effective SRAM conspiracy, much less participation in such a conspiracy by Cypress" *See* Swartzberg Decl., Ex. A (Kalt Report, para. 14).

In each of these examples, Dr. Kalt has crossed this line of providing expert opinion, and by doing so has invaded the province of the jury. His testimony in this regard, therefore, must be excluded. For example, Dr. Kalt is not the one to determine whether Cypress "participated in the conspiracy." Nor should Dr. Kalt render a conclusion that "Plaintiffs' experts' theories and [] evidence . . . are insufficient." Such testimony from Dr. Kalt, as well as similar testimony by Dr. Kalt or other defense experts, should, therefore, be excluded.

## IV.    CONCLUSION

For all of the foregoing reasons, plaintiffs request that the Court grant Plaintiffs' Omnibus Motion *in Limine.*

Dated: November 30, 2010                    **COTCHETT, PITRE & McCARTHY**


By ____*/s/ Neil Swartzberg*_____
         NEIL SWARTZBERG