SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
GARY L. HALLING, Cal. Bar No. 66087
JAMES L. McGINNIS, Cal. Bar No. 95788
MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
MONA SOLOUKI, Cal. Bar No. 215145
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4109
Telephone:     415-434-9100
Facsimile:      415-434-3947
E-mail:         ghalling@sheppardmullin.com
                jmcginnis@sheppardmullin.com
                mscarborough@sheppardmullin.com
                msolouki@sheppardmullin.com

Attorneys for Defendants
SAMSUNG SEMICONDUCTOR, INC. and
SAMSUNG ELECTRONICS COMPANY, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION | Case No. 4:07-md-1819 CW<br><br>MDL No. 1819 |
| This Document Relates to:<br><br>ALL ACTIONS | **SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on a date and at a time to be determined by the Court, in Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, California, before the Honorable Claudia Wilken, defendants Samsung Electronics Co., Ltd. and Samsung Semiconductor, Inc. (collectively "Samsung") will and hereby do move the Court pursuant to Rules 402, 403, 404, and 609 of the Federal Rules of Evidence for an order *in limine* excluding Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs[1] (collectively "Plaintiffs") from introducing or otherwise making reference to certain forms of evidence at trial.  In addition, and to effect these rulings, Samsung also moves to strike all references in Plaintiffs' complaints to such inadmissible evidence pursuant to Rules 12(f) and 12(c) of the Federal Rules of Civil Procedure.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Declaration of Michael W. Scarborough in support of Samsung's Trial Brief and Motions *in Limine* ("Scarborough Decl.") and exhibits thereto, the complete files and records in these consolidated actions, oral argument of counsel, and such other matters as the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

Motion No. 1: Whether Plaintiffs may introduce or otherwise refer at trial to evidence of plea agreements or leniency agreements entered into in connection with the Department of Justice's ("DOJ") investigation of price-fixing in the DRAM industry.

Motion No. 2: Whether Plaintiffs may introduce or otherwise refer at trial to evidence of Samsung's leniency agreement with the DOJ in connection with the DOJ's antitrust investigation of the SRAM industry, and any other evidence of that investigation.

Motion No. 3: Whether Plaintiffs may introduce or otherwise refer at trial to evidence of any defendant's conduct relating to DRAM.

---

[1]      Samsung has reached a settlement agreement with the Indirect Purchaser Plaintiffs, though that agreement has not yet been approved by the Court.  To the extent the Direct and Indirect Purchaser actions are jointly tried in any respect, Samsung's Motions *in limine* apply equally to both the Direct and Indirect Purchaser Actions, except as otherwise noted.

1    <u>Motion No. 4</u>: Whether Plaintiffs may introduce or otherwise refer at trial to evidence of any

2    defendant's conduct relating to any other non-SRAM products.

3    <u>Motion No. 5</u>: Whether Direct Purchaser Plaintiffs ("DPPs") may introduce or otherwise

4    refer at trial to evidence of alleged impact or damages that is either inconsistent with or expands

5    upon the opinions set forth in the expert reports of Dr. Armando Levy relating to impact and

6    damages.

7    <u>Motion No. 6</u>: Whether Plaintiffs may introduce or otherwise refer at trial to evidence of

8    foreign conduct outside the subject matter jurisdiction of the Court and/or the DPPs' own class

9    definition.

10    <u>Motion No. 7</u>: Whether Plaintiffs may introduce or otherwise refer at trial to evidence

11    related to the compensation, discipline, or employment status of any defendant's employee who pled

12    guilty, was indicted, or cooperated with the government in prior criminal proceedings or

13    investigations.

14    <u>Motion No. 8</u>: Whether the parties may introduce or otherwise refer at trial to uncertified

15    translations of foreign-language documents.

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:FMI\402960976.13
MDL No. 1819

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

1

## <u>TABLE OF CONTENTS</u>

2

**Page(s)**

3

STATEMENT OF ISSUES TO BE DECIDED..................................................................ii

4

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

5

I.      INTRODUCTION.................................................................................................. 1

6

7

II.     ARGUMENT ......................................................................................... 3

8

      A.      Motion No. 1:  The Court Should Exclude All Evidence Of Or References
             To DRAM Guilty Pleas or Leniency Agreements. ................................... 3

9

10

           1.      The DRAM Pleas Are Inadmissible Because They Could Only Be
                  Used As Improper Propensity Evidence. ..................................... 3

11

                a.      The DRAM Pleas Do Not Fall Within the Narrow "Intrinsic
                     Conduct" Exception to the Character Evidence Rule...................... 6

12

13

                b.      Plaintiffs Cannot Avoid the Character Evidence Rule By
                     Baldly Asserting That Certain Samsung Employees Were
                     Involved In Marketing Both SRAM and DRAM............................. 8

14

                c.      The DRAM Pleas Do Not Fall Within the "Intent" Exception
                     to the Character Evidence Rule. ........................................ 9

15

16

                d.      Even If They Were Relevant to An Issue Other than
                     Samsung's Character, the DRAM Pleas Must Still Be
                     Excluded Under FRE 403. ............................................. 11

17

18

           2.      The DRAM Pleas Cannot Be Used To Impeach or Rebut the
                  Testimony of Expert Witnesses..................................... 13

19

20

              3.      The DRAM Pleas Cannot Be Used To Impeach Non-Pleading
                  Percipient Witnesses. ............................................. 13

21

22

      B.      Motion No. 2:  Samsung's Leniency Agreement With DOJ, Along With
              Any Other Evidence of DOJ's Abandoned Investigation of the SRAM
              Industry Are Inadmissible. .......................................... 15

23

24

      C.      Motion No. 3:  The Court Should Exclude All Evidence Of Defendants'
              Conduct Related To DRAM............................................ 17

25

26

      D.      Motion No. 4:  The Court Should Exclude All Evidence Of Defendants'
              Conduct Related To Any Other Non-SRAM Products. ...................... 18

27

28

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

E. Motion No. 5:  The Court Should Exclude All Evidence Of Impact And Damages That Are Contrary To Or Expand Upon The Opinions Expressed By Dr. Armando Levy On Those Issues In His Expert Reports. ............................ 19

F. Motion No. 6:  The Court Should Exclude All Evidence Relating To Foreign Conduct That Is Outside The Court's Subject Matter Jurisdiction Or Plaintiffs' Own Class Definition. .............................................................................. 20

G. Motion No. 7:  The Court Should Exclude All Evidence Related To The Compensation Or Employment Status Of Defendants' Employees Who Pled Guilty, Were Indicted, Or Cooperated With The Government. .............................. 22

H. Motion No. 8:  The Court Should Exclude All Uncertified Translations At Trial. .................................................................................................................... 24

I. All References to Inadmissible Evidence Should Be Stricken From the Complaints. ........................................................................................................... 24

III. CONCLUSION ...................................................................................................... 25

W02-WEST:FMI\402960976.13
MDL No. 1819

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Becker v. Arco Chem. Co.*
    207 F.3d 176 (3rd Cir. 2000).............................................................................. 9

*Blind-Doan v. Sanders*
    291 F.3d 1079 (9th Cir. 2002)............................................................................. 8

*Buckhead Theatre Co. v. Atlanta Enterprises*
    327 F.2d 365 (5th Cir. 1964)............................................................................... 4

*Carofino v. Forester*
    450 F. Supp.2d 257 (S.D.N.Y. 2006)................................................................ 18

*City of New York v. Geodata Plus, LLC*
    537 F.Supp.2d 443 (E.D.N.Y. 2007)................................................................ 24

*Dickenson v. Cardiac and Thoracic Surgery of Eastern Tenn.*
    388 F.3d 976 (6th Cir. 2004)............................................................................. 20

*Duran v. City of Maywood*
    221 F.3d 1127 (9th Cir. 2000)........................................................................... 12

*In re Elevator Antitrust Litig.*
    502 F.3d 47 (2d Cir. 2007).......................................................................... 5, 15

*Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*
    1999 WL 543166 (N.D. Ill. July 21, 1999)...................................................... 14

*Gass v. Marriott Hotel Services, Inc.*
    501 F.Supp.2d 1011 (W.D. Mich. 2007)......................................................... 20

*In re Graphics Processing Units Antitrust Litig. ("GPU")*
    527 F.Supp.2d 1011 (N.D. Cal. 2007) ....................................................... 15, 16

*Henein v. Saudi Arabian Parsons Ltd.*
    818 F.2d 1508 (9th Cir. 1987)........................................................................... 24

*In re High Fructose Corn Syrup Antitrust Litig.*
    295 F.3d 651 (7th Cir. 2002)....................................................................*passim*

*Huddleston v. U.S.*
    485 U.S. 681 (1988) ................................................................................... 10, 18

*International Shoe Machine Corp. v. United Shoe Machinery Corp.*
    315 F.2d 449 (1st Cir. 1963) ............................................................................ 11

W02-WEST:FMI\402960976.13
MDL No. 1819

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

*Manuel v. City of Chicago*
    335 F.3d 592 (7th Cir. 2003) ................................................................. 4, 12

*Minnesota v. United States Steel Corp.*
    44 F.R.D. 559 (D. Minn. 1968) ................................................................... 15

*Monticello Tobacco Co. v. Am. Tobacco Co.*
    197 F.2d 629 (2d Cir. 1952) .......................................................................... 4

*Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*
    493 F.3d 160 (D.C. Cir. 2007) ................................................................... 20

*Old Chief v. U.S.*
    519 U.S. 172 (1997) ............................................................................ 11, 14

*Smith v. Ford Motor Co.*
    626 F.2d 784 (10th Cir. 1980) ................................................................... 20

*In re Static Random Access (SRAM) Antitrust Litig.*
    2008 WL 4447592 (N.D. Cal. September 29, 2008) ................................. 8, 21

*In re Static Random Access Memory (SRAM) Antitrust Litig.*
    580 F.Supp.2d 896 (N.D. Cal. 2008) ........................................................ 8, 16

*In re Travel Agent Com'n Antitrust Litig.*
    2007 WL 3171675 (N.D.Ohio Oct. 29, 2007) ............................................. 15

*U.S. Football League v. N.F.L.*
    634 F.Supp.1155 (S.D.N.Y. 1986) ...................................................... 4, 6, 24

*U.S. Football League v. N.F.L.*
    842 F.2d 1335 (2d Cir. 1988) ...................................................................... 11

*U.S. v. A Leasehold Interest*
    743 F.Supp. 505 (E.D.Mich. 1990) ........................................................ 15, 16

*U.S. v. All-Star Industr.*
    962 F.2d 465 (5th Cir. 1992) ...................................................................... 10

*U.S. v. Andreas*
    216 F.3d 645 (7th Cir. 2000) ........................................................................ 7

*U.S. v. Bass*
    121 F.3d 1218 (8th Cir. 1997) ....................................................................... 3

*U.S. v. Bowie*
    232 F.3d 923 (D.C. Cir. 2000) ...................................................................... 7

*U.S. v. Castillo*
    181 F.3d 1129 (9th Cir. 1999) ..................................................................... 13

-vi-

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

*U.S. v. Commanche*
  577 F.3d 1261 (10th Cir. 2009)........................................................................ 10

*U.S. v. Conner*
  583 F.3d 1011 (7th Cir. 2009)............................................................................ 7

*U.S. v. Cross*
  308 F.3d 308 (3d Cir. 2002)............................................................................ 22

*U.S. v. Curtin*
  489 F.3d 935 (9th Cir. 2007) (*en banc*)...................................................... 4, 11

*U.S. v. DeCastris*
  798 F.2d 261 (7th Cir. 1986)........................................................................... 12

*U.S. v. Ferguson*
  2007 WL 4240782 (D.Conn. Nov. 30, 2007.)................................................ 23

*U.S. v. Gilbert*
  57 F.3d 709 (9th Cir. 1995)........................................................................ 17, 24

*U.S. v. Green*
  617 F.3d 233 (3d Cir. 2010)............................................................................. 7

*U.S. v. Gypsum Co.*
  438 U.S. 422 (1978) ...................................................................................... 15

*U.S. v. Hardy*
  228 F.3d 745 (6th Cir. 2000)............................................................................ 7

*U.S. v. Himelwright*
  42 F.3d 777 (3d Cir. 1994)............................................................................. 10

*U.S. v. Johnson*
  27 F.3d 1186 (6th Cir. 1994)............................................................................ 9

*U.S. v. Macey*
  8 F.3d 462 (7th Cir. 1993).............................................................................. 10

*U.S. v. Matthews*
  431 F.3d 1296 (11th Cir. 2005)...................................................................... 11

*U.S. v. McCallum*
  584 F.3d 471 (2d Cir. 2009)............................................................................. 3

*U.S. v. Osazuwa*
  564 F.3d 1169 (9th Cir. 2009)........................................................................ 18

*U.S. v. Payne*
  805 F.2d 1062 (D.C. Cir. 1986)...................................................................... 10

-vii-

*U.S. v. Portrait of Wally, A Painting By Egon Schiele*
    2002 WL 553532 (S.D.N.Y. April 12, 2002)............................................................ 8

*U.S. v. Powell*
    587 F.2d 443 (9th Cir. 1978) ...................................................................................... 9

*U.S. v. Shackleford*
    738 F.2d 776 (7th Cir. 1984) ...................................................................................... 9

*U.S. v. Vance*
    871 F.2d 572 (6th Cir. 1989) .................................................................................... 22

*U.S. v. Vizcarra-Martinez*
    66 F.3d 1006 (9th Cir. 1995) ...................................................................................... 7

*U.S. v. Wilson*
    605 F.3d 985 (D.C. Cir. 2010) .................................................................................. 24

*U.S. v. Youts*
    229 F.3d 1312 (10th Cir. 2000) .................................................................................. 4

*United States v. Rivera-Rosario*
    300 F.3d 1. (1st Cir. 2002) ........................................................................................ 24

*Walden v. Georgia-Pac. Corp.*
    126 F.3d 506 (3d Cir. 1997) ................................................................................ 14, 15

*White & White, Inc. v. Ameri. Hosp. Supply*
    540 F.Supp. 951 (W.D. Mich. 1982).......................................................................... 10

## STATE CASES

*Thompson v. U.S.*
    546 A.2d 414 (D.C. 1988) ........................................................................................ 10

## FEDERAL STATUTE

15 U.S.C. § 6a .................................................................................................................. 21

## FEDERAL RULES

Federal Rules of Civil Procedure
    Rule 12(f) .................................................................................................................. 24
    Rule 26(a) .................................................................................................................. 20
    Rule 26(a)(2)(b) ........................................................................................................ 20

W02-WEST:FMI\402960976.13
MDL No. 1819

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

## FEDERAL RULES (Cont'd)

Federal Rules of Evidence
    Rule 401 ............................................................................................... 21
    Rule 402 ............................................................................................... 21
    Rule 403 ........................................................................................... *passim*
    Rule 404 ......................................................................................... 10, 17
    Rule 404(b) ...................................................................................... *passim*
    Rule 609 ..................................................................................... 14, 15, 18
    Rule 609(a)(1) ....................................................................................... 14
    Rule 609(a)(2) ................................................................................. 14, 15
    Rule 801 ................................................................................................. 3
    Rule 802 ................................................................................................. 3

## OTHER AUTHORITIES

Schwarzer, et al., FEDERAL CIVIL TRIALS & EVIDENCE
    (The Rutter Group 2010) ................................................................... 9, 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This case involves an alleged conspiracy to fix the prices of Static Random Access Memory or "SRAM."  More specifically, Plaintiffs seek to recover damages based on alleged overcharges for certain types of SRAM purchased in the United States.  Nevertheless, Samsung anticipates that Plaintiffs will attempt to introduce or otherwise refer at trial to several forms of irrelevant and extremely prejudicial evidence that is far outside the proper scope of this litigation.

**First**, Samsung anticipates that Plaintiffs will attempt to introduce evidence that Samsung and other manufacturers pled guilty in connection with the DOJ's investigation of price-fixing in the DRAM industry.  ***Keeping the DRAM pleas out of the case is the Court's single most important pretrial evidentiary issue***.  (Motion No. 1).  As Plaintiffs' self-commissioned industry report and purported "industry" expert both concede, the DRAM industry is entirely distinct and independent from the SRAM industry at issue in this litigation.  Accordingly, evidence of DRAM guilty pleas could only be used as improper "character evidence"—*i.e.*, to show that Samsung or its codefendants engaged in antitrust violations in another market, and are thus more likely to have participated in the SRAM conspiracy alleged here.  Moreover, evidence of the DRAM guilty pleas is virtually certain to inflame the passions of the jury against Samsung, confuse or mislead the jury as to the proper scope of the conspiracy alleged ***in this case***, and cause undue delay as the parties are forced to conduct a "mini-trial" regarding a DRAM conspiracy that has nothing to do with Plaintiffs' claims in this litigation.  For these same reasons, Plaintiffs also should be precluded from introducing or making reference to evidence of conduct or any investigation that is related solely to DRAM or any other non-SRAM product.  (Motion Nos. 3 & 4).

**Second**, Samsung also anticipates that Plaintiffs will attempt to introduce evidence of the DOJ's since-abandoned antitrust investigation of the SRAM industry, including evidence of Samsung's leniency agreement with the DOJ in which Samsung agreed to cooperate with that investigation.  As this Court has already held, consistent with a long line of well-established authority, evidence of the DOJ's SRAM investigation is categorically irrelevant to Plaintiffs' civil

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

1    antitrust claims.  (Motion No. 2).  Plaintiffs cannot avoid this bright-line rule by characterizing

2    Samsung's leniency agreement as a purported "admission" of liability for the simple reason that, by

3    the express terms of the agreement and in accordance with the DOJ's then-effective leniency

4    policies, Samsung did not admit to any wrongdoing in exchange for leniency.

5        **Third**, DPPs should also be barred from introducing evidence of impact or damages that

6    runs contrary to, or in any way expands upon, the conclusions expressed by their expert,

7    Dr. Armando Levy, relating to impact and damages.  (Motion No. 5).  Because Dr. Levy's reports

8    must be treated as a "complete statement" of DPPs' theories of impact and damages, DPPs are

9    barred from unfairly surprising Samsung by introducing evidence of impact or damages at trial that

10   are contrary to, or in any way broader than, the conclusions expressed by Dr. Levy.

11       **Fourth**, Plaintiffs should also be barred from introducing evidence related to foreign SRAM

12   transactions that are (1) outside this Court's subject matter jurisdiction under the Foreign Trade

13   Antitrust Improvements Act ("FTAIA"); and/or (2) outside DPPs' own class definition.  (Motion

14   No. 6).  Such evidence is beyond the scope of this litigation and therefore irrelevant.  Introduction

15   of such evidence would also result in undue delay and confusion of issues, as the parties are forced

16   to spend valuable trial time exploring wholly collateral matters.

17       **Fifth**, and finally, Plaintiffs should be barred from introducing evidence that Samsung or its

18   codefendants "rewarded" or failed to "punish" employees who pled guilty, were indicted, or

19   cooperated with the government in connection with prior criminal proceedings or investigations.

20   (Motion No. 7).  Such evidence is extremely prejudicial, and could only be used for the improper

21   purpose of showing, by implication from supposed "tolerance" of past conduct, that Samsung or its

22   codefendants were more likely to have engaged in the unlawful activity alleged by Plaintiffs in this

23   case.

24       **Finally**, all parties should be barred from introducing or otherwise referring at trial to

25   uncertified translations of foreign-language documents.  (Motion No. 8).  Such translations may be

26   rough and incomplete, and are not reliable evidence of the underlying foreign-language document.

27

28

**II.**

**ARGUMENT**

**A.    Motion No. 1:  The Court Should Exclude All Evidence Of Or References To DRAM Guilty Pleas Or Leniency Agreements.**

Samsung moves to exclude at trial all evidence of or references to the guilty pleas of Samsung, certain Samsung employees, and/or certain of Samsung's codefendants (or their respective employees) in connection with the DOJ's criminal investigation of price-fixing in the DRAM industry (collectively the "DRAM guilty pleas").[2]  The DRAM guilty pleas, which concern an industry that even Plaintiffs' own purported "industry" expert concedes is distinct from and independent of the SRAM industry at issue here, are a textbook example of improper character evidence, would be inherently and fatally prejudicial to Samsung, and are almost certain to confuse or mislead the jury.  Indeed, there is a strong risk that a jury would treat the DRAM guilty pleas as *dispositive* evidence in this case, finding against Samsung simply because the jurors view Samsung as a "bad actor" with a propensity to commit antitrust violations.  This is precisely the danger the absolute bar on character evidence was designed to avoid.  Admission of the DRAM pleas would thus make it impossible for Samsung to receive a fair trial.

**1.    The DRAM Pleas Are Inadmissible Because They Could Only Be Used As Improper Propensity Evidence.**

It is "axiomatic" that evidence of a defendant's past conduct cannot be offered to prove that the defendant has a propensity to engage in similar conduct.  *U.S. v. Bass*, 121 F.3d 1218, 1221 (8th Cir. 1997); Fed. R. Evid. 404(b).  This rule applies with special force to evidence of prior criminal convictions.  *U.S. v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009) ("evidence of prior convictions merits particularly searching, conscientious scrutiny" under Rule 404(b)).  The justifications for this absolute

---

[2]    In addition, Samsung moves to exclude any evidence of or reference to the leniency agreement between Micron Technology, Inc. and Micron Semiconductor Products, Inc. (collectively "Micron") and the DOJ in connection with DRAM price-fixing (the "Micron agreement").  Each of the arguments below applies equally to the Micron agreement.  In addition, the Micron agreement is inadmissible hearsay as an out-of-court statement offered to prove the truth of the matter asserted—i.e., that Micron sought and obtained amnesty from the DOJ in connection with its criminal DRAM investigation.  Fed. R. Evid. 801, 802.

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

bar on so-called "character evidence" are threefold. <u>First</u>, such evidence "is of slight probative value and may be very prejudicial." *U.S. v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (*en banc*) (*quoting* Rule 404, Advisory Committee Notes). <u>Second</u>, such evidence "tends to distract the trier of fact from the main question of what actually happened on the particular occasion" and "subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." *Id.* <u>Finally</u>, such evidence has a "potential for confusing or even misleading the jury" by requiring extended "mini-trials" into the defendant's prior conduct. *Manuel v. City of Chicago*, 335 F.3d 592, 596-597 (7th Cir. 2003). Accordingly, evidence of prior convictions is presumptively inadmissible unless the proponents of the evidence, here Plaintiffs, meet their "burden of showing that the proffered evidence is relevant to an issue *other than character*" by articulating "precisely the evidentiary hypothesis by which a fact of consequence may be inferred" from the prior convictions. *U.S. v. Youts*, 229 F.3d 1312, 1317 (10th Cir. 2000) (emphasis added).

Applying these principles, courts have concluded that evidence of prior antitrust violations is inadmissible in a subsequent unrelated antitrust case because such evidence could only be used for the impermissible purpose of showing that the defendant is a serial antitrust violator and thus more likely to have participated in the conspiracy alleged. *See, e.g., In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 664 (7th Cir. 2002) ("Since evidence of past crimes, or of other bad acts committed in the past, is inadmissible to prove that the defendant probably is guilty of whatever he is now being charged with, merely because he has demonstrated a propensity to violate the law," evidence of defendant's prior conviction and misconduct related to lysine products "cannot be used as evidence that it participated in a conspiracy to fix the price of HFCS")*; Buckhead Theatre Co. v. Atlanta Enterprises, Inc.*, 327 F.2d 365, 368-369 (5th Cir. 1964) (unrelated prior antitrust "decrees were simply irrelevant to the issues to be tried" when plaintiff had no evidence that the prior antitrust conspiracy "had an injurious effect upon the plaintiff"); *Monticello Tobacco Co. v. Am. Tobacco Co.*, 197 F.2d 629, 631 (2d Cir. 1952) (past antitrust convictions did not support plaintiff's claimed injury resulting from another conspiracy: "the mere fact of conviction cannot make the major tobacco manufacturers liable for every business casualty in the cigarette field"); *U.S. Football League v. N.F.L.*, 634 F.Supp.1155, 1172-1173 (S.D.N.Y. 1986) (excluding evidence of prior antitrust judgments where their admission "would permit plaintiffs to create

1   an 'aura of guilt' or to 'imply new wrongdoing from past wrongdoing.'"); *see also In re Elevator Antitrust*

2   *Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) ("Allegations of anticompetitive wrongdoing in Europe-absent any

3   evidence of linkage between such foreign conduct and conduct here-is merely to suggest…that 'if it

4   happened there, it could have happened here.'").

5          Similarly, the limited DRAM conspiracy that is the subject of the DRAM pleas is wholly

6   unrelated to the SRAM conspiracy alleged here.  It is *undisputed* that the DRAM market is distinct

7   from and independent of the SRAM market at issue in this litigation.  Indeed, the industry report

8   commissioned by Plaintiffs' own counsel distinguishes at length between DRAM and SRAM products

9   and the "key" features of the markets for these products.  *See* Scarborough Decl., Ex. D (Semico

10  Research Corp., *The SRAM Industry: 1998-2005*, Prepared exclusively for Cotchett, Pitre &

11  McCarthy (Aug. 2007)) at 1-5 ("The memory market is composed of distinct types of memory that

12  address specific application needs that cannot be accomplished with another type of memory" and

13  discussing for several pages the "Key Market Differences" between the DRAM and SRAM markets).

14         In addition, Plaintiffs' own "industry" expert also concedes that SRAM and DRAM are sold in

15  distinct and independent markets, are manufactured using different processes, are acted upon by

16  different market forces, and are generally not substitutes.  *See, e.g.,* Scarborough Decl., Ex. E (Expert

17  Report of Jim Handy) at 8 ("Most SRAMs are manufactured using a process that is similar to logic

18  chips, but unlike the processes used to manufacture DRAM or flash memory"); *id.* ("It is more likely

19  that an SRAM oversupply or undersupply would occur independent of any oversupply or undersupply

20  of DRAM or flash, and that an SRAM manufacturer would have to endure the consequences of such

21  an undersupply or oversupply."); *id.* at 4 ("It is highly unusual for a designer to have the capability to

22  design an SRAM out of a product and replace it with another memory technology like DRAM or

23  NAND or NOR flash.").  Thus, as in the above cases, the DRAM guilty pleas are entirely unrelated to

24  the conspiracy alleged in this case.  As a result, the pleas could only be used for the improper purpose

25  of showing that Samsung or Samsung's codefendants have a propensity to engage in antitrust

26  violations and thus are more likely to have participated in the separate SRAM conspiracy alleged by

27  Plaintiffs—i.e., to show that "if it happened there, it could have happened here."  *In re Elevator*, 502

28  F.3d at 52; *see also In re High Fructose Corn Syrup*, 295 F.3d at 664 (evidence of price-fixing in

-5-

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

lysine market not admissible to show defendant also engaged in price-fixing in the market for high fructose corn syrup); *U.S. Football League*, 634 F.Supp.1155, 1172-1173 (evidence of prior antitrust judgments relating to **intraleague** rules not admissible to prove a conspiracy involving **interleague** conduct).  The DRAM pleas are thus inadmissible character evidence.

Despite the above authority, Samsung anticipates that Plaintiffs will argue that the DRAM pleas fall outside Rule 404(b)'s bar on character evidence.  First, Plaintiffs may contend that the DRAM guilty pleas are not evidence of "other conduct" such as would implicate Rule 404(b), but are instead "intrinsic" to the SRAM conspiracy alleged here, and thus an essential part of the "background" of the alleged conspiracy.  Second, Plaintiffs may argue that the DRAM pleas are admissible based on the Court's prior ruling that Plaintiffs' allegations regarding the DRAM pleas were sufficient to survive a motion to dismiss in light of Plaintiffs' allegations that some employees of certain Defendants were responsible for marketing both SRAM and DRAM.  Finally, Plaintiffs may argue that the pleas are being offered, not to show Samsung's supposed "propensity" for price-fixing, but to show that Samsung had an anticompetitive intent in exchanging business information with its competitors relating to SRAM.  As explained below, however, none of these arguments justifies admission of the DRAM pleas under Rule 404(b).  Moreover, even assuming *arguendo* that the DRAM pleas could avoid the absolute bar on character evidence, they still must be excluded pursuant to Rule 403.

a. The DRAM Pleas Do Not Fall Within the Narrow "Intrinsic Conduct" Exception to the Character Evidence Rule.

In their Trial Brief,[3] Plaintiffs contend that the DRAM pleas are admissible to show "the background and development" of the alleged SRAM conspiracy.  This argument sounds in the so-called "intrinsic conduct" exception to the character evidence rule, which courts have narrowly construed to apply in only two situations:  (1) where the defendant's other conduct is "inextricably intertwined" with the conduct alleged, such that they form a "single criminal transaction"; or (2) where

---

[3]      Pursuant to the Court's Order for Pretrial Preparation, Plaintiffs provided a draft of their Trial Brief to Defendants on November 16, 2010, that included arguments regarding the admissibility of the DRAM pleas.  Samsung anticipates that Plaintiffs will maintain these arguments in the filed version of their Trial Brief.

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

1   evidence of the other conduct is "necessary" for the plaintiff to "offer a coherent and comprehensible

2   story" regarding the commission of the conduct alleged.  *U.S. v. Vizcarra-Martinez*, 66 F.3d 1006,

3   1012-1013 (9th Cir. 1995); *see also U.S. v. Green*, 617 F.3d 233, 248 (3d Cir. 2010) (intrinsic conduct

4   exception "prone to abuse" and a threat "to the vitality of Rule 404(b)."); *U.S. v. Hardy*, 228 F.3d 745,

5   748-749 (6th Cir. 2000) (discussing "severe limitations" of exception).  Neither of these situations

6   obtains here.  Plaintiffs do not and cannot contend that the DRAM conspiracy at issue in the DRAM

7   pleas—which occurred in a market that Plaintiffs concede is distinct from and independent of the

8   SRAM market—is part of the "same offense" as the alleged SRAM conspiracy.[4]  *See U.S. v. Bowie*,

9   232 F.3d 923, 928-929 (D.C. Cir. 2000) (defendant's prior possession of counterfeit bills not part of

10  "same crime" as charged possession of counterfeit bills; allowing prosecution to invoke "intrinsic

11  conduct" exception would effectively "override" Rule 404(b)).  Nor do Plaintiffs need to refer to

12  price-fixing in the distinct and independent DRAM market to present a "coherent and comprehensible

13  story" of alleged SRAM price-fixing.  *See U.S. v. Conner*, 583 F.3d 1011, 1019 (7th Cir. 2009)

14  (omitting evidence that defendant had sold drugs on subsequent occasion would not "have made any

15  of the other evidence [regarding the drug sale at issue] unintelligible.").

16          The cases relied upon by Plaintiffs in their Trial Brief are inapposite.  In *U.S. v. Andreas*, 216

17  F.3d 645, 665 (7th Cir. 2000), the court held that evidence of a prior antitrust conspiracy was properly

18  admitted under the "intrinsic conduct" exception because the prosecution had introduced evidence that

19  the prior conspiracy and the conspiracy at issue were "closely related parts of a master plan."[5]  Here, by

20  contrast, Plaintiffs have identified no evidence that DRAM price-fixing and the alleged SRAM price-

21  fixing were part of a "master plan."  The other case relied upon by Plaintiffs, *High Fructose Corn Syrup*,

22  is in fact directly *contrary* to Plaintiffs' argument; there, as noted above, the court observed that the

23

24  _____

25  [4]      Indeed, if Plaintiffs did contend that alleged SRAM price-fixing and DRAM price-fixing
    were part of the same conspiracy, their claims would be barred by the global settlement and
26  release executed in the *DRAM* litigation between Samsung and direct purchasers of DRAM.

    [5]      The *Andreas* court also noted that the key evidence of the alleged conspiracy consisted of
27  recorded conversations referring to the prior conspiracy, and thus held that evidence of the prior
    conspiracy was necessary to make these conversations comprehensible to the jury.  216 F.3d at
28  665.  As noted, Plaintiffs face no such problem here.

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

1    defendant's prior conviction for fixing the price of a distinct product (lysine) was *inadmissible* to show

2    the defendant also participated in the alleged corn syrup conspiracy.  295 F.3d at 664.

3            b.      Plaintiffs Cannot Avoid the Character Evidence Rule By Baldly Asserting

4                    That Certain Samsung Employees Were Involved In Marketing Both

5                    SRAM and DRAM.

6            Plaintiffs also appear to contend that the DRAM pleas are admissible in light of the Court's

7    statement in its ruling on Defendants' motions to dismiss that the DRAM guilty pleas "support an

8    inference of a conspiracy in the SRAM industry" based on Plaintiffs' allegations that "the same

9    actors associated with certain Defendants were responsible for marketing both SRAM and DRAM."

10   *In re Static Random Access Memory (SRAM) Antitrust Litig.,* 580 F.Supp.2d 896, 903 (N.D. Cal.

11   2008).  In particular, Plaintiffs assert in their Trial Brief that Samsung's Dr. I.U. Kim had

12   "responsibility for SRAM," and subsequently was involved in DRAM price-fixing.  Allegations and

13   assertions aside, however, Plaintiffs fail to identify ***any*** evidence suggesting that Dr. Kim had day-

14   to-day "responsibility" for SRAM pricing and production decisions, or is otherwise material to their

15   case.  Indeed, only *three* unique documents out of the *one thousand* documents on Direct Plaintiffs'

16   trial exhibit list evidence SRAM-related communications that in any way involve Dr. Kim, and all

17   of these communications predate the 27-month "impact period"—October 1999 through December

18   2001—during which Direct Plaintiffs' expert Dr. Armando Levy opined that the alleged SRAM

19   conspiracy was effective.  *See, e.g.,* Scarborough Decl., ¶ 7; *id.,* Ex. G (Expert Report of Armando

20   Levy, dated January 25, 2010) ("Levy Report") at 12, 17.  Had Dr. Kim been as prominent a figure

21   in the SRAM industry and the alleged SRAM conspiracy as Plaintiffs posit, one would expect him

22   to be connected to much more, if not the bulk, of Plaintiffs' SRAM-related evidence.

23           Moreover, the Court's rulings at the motion to dismiss stage necessarily did not address the

24   ***admissibility*** of the DRAM guilty pleas as substantive evidence at trial under Rules 404(b) and 403.

25   *See, e.g., U.S. v. Portrait of Wally, A Painting By Egon Schiele*, 2002 WL 553532, at *12 (S.D.N.Y.

26   April 12, 2002) ("On a motion to dismiss, a court does not test the sufficiency of evidence or assess

27   its admissibility."); *see also Blind-Doan v. Sanders*, 291 F.3d 1079, 1082–1083 (9th Cir. 2002) (trial

28   court is required to fully and expressly evaluate evidence under Rules 404(b) and 403 before

-8-

admitting it at trial).  Indeed, even if it were true that certain Samsung employees were "responsible" for both SRAM and DRAM, that would only further underscore the fact that Plaintiffs seek to use the DRAM pleas as improper character evidence.  The inference that, because certain Samsung employees fixed prices in the DRAM market, they are more likely to have fixed prices in the SRAM market at issue here, is precisely the type of "propensity" inference prohibited by Rule 404(b).[6]  *See High Fructose Corn Syrup*, 295 F.3d at 664 (evidence that certain of company's employees had previously been convicted of fixing prices of lysine could not be used as evidence that those same employees (and therefore the company) also conspired to fix prices of high fructose corn syrup).

> c.    The DRAM Pleas Do Not Fall Within the "Intent" Exception to the Character Evidence Rule.

There are at least two reasons the DRAM pleas cannot be introduced to show Samsung's or its codefendants' "intent."  First, the "intent" exception simply does not apply where, as here, *specific* intent is not an issue in the case, either because the offense alleged requires only a showing of *general* intent, or because the defendant simply denies participating in the conduct alleged.  *See, e.g., Powell*, 587 F.2d at 448 (where "a defendant denies participation in the act or acts which constitute the crime, intent is not a material issue for the purpose of applying Rule 404(b)."); *U.S. v. Johnson*, 27 F.3d 1186, 1191-1192 (6th Cir. 1994) ("intent" exception does not "permit admission of evidence of an accused's prior misconduct where the requisite criminal intent would normally be inferred from the criminal act, if proven") (quotations omitted); *U.S. v. Shackleford*, 738 F.2d 776, 781 (7th Cir. 1984) ("intent" exception

---

[6]    Plaintiffs might try to argue that their bare assertion that certain Samsung employees were responsible for marketing both DRAM and SRAM means that the DRAM pleas are offered, not as propensity evidence, but to show Samsung's "common scheme" or "modus operandi."  However, that exception to the character evidence rule applies only where – ***unlike here*** – the identity of the perpetrator of the alleged offense is at issue.  *See, e.g., U.S. v. Powell*, 587 F.2d 443, 448 (9th Cir. 1978) (evidence did not fall within "common scheme" exception because it was not being used to show identity); *Becker v. Arco Chem. Co.*, 207 F.3d 176, 199 (3rd Cir. 2000).  In addition, the exception requires that the other conduct and conduct at issue be "steps toward accomplishment of ***the same final goal***."  Schwarzer, et al., FEDERAL CIVIL TRIALS AND EVIDENCE, § 8:1193.1 (The Rutter Group 2010) (emphasis added).  Here, Plaintiffs do not and cannot contend that DRAM price-fixing was a step toward the same goal as the distinct SRAM conspiracy alleged here.  *See Becker*, 207 F.3d at 197-199 (otherwise unrelated acts do not form a "common scheme" merely because the same defendant was allegedly involved in each act).

-9-

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

does not apply "when intent is only a formal issue, so that proof of the proscribed act gives rise to an inference of intent") (*overruled on other grounds*, *Huddleston v. U.S.*, 485 U.S. 681 (1988)).  Here, Plaintiffs' antitrust claims require a showing of *general* intent; as a result, Samsung's denial of participation in the alleged SRAM conspiracy does not put specific intent at issue, and the "intent" exception does not apply.  *See, e.g.*, *U.S. v. All-Star Indust.*, 962 F.2d 465, 474 n. 18 (5th Cir. 1992) ("A price fixing conspiracy under the Sherman Act is not a crime requiring proof of a 'specific intent' to restrain trade or to violate the law."); *accord White & White, Inc. v. Ameri. Hosp. Supply*, 540 F.Supp. 951, 1017 (W.D. Mich. 1982) (*reversed on other grounds*, 723 F.2d 495 (6th Cir. 1983)) (civil price-fixing claim under Sherman Act does not require showing of specific intent).

Second, the "intent" exception does not apply where, as here, evidence of prior conduct only establishes intent through a "chain of logical inferences," a "link" in which is "the inference that the defendant has the propensity to commit the crime charged."  *U.S. v. Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994).  Evidence of past offenses offered to show that, because the defendant acted with a particular intent in the past, it is more likely to have acted with such an intent with respect to the conduct alleged, is nothing more than improper "propensity" evidence under the guise of "intent."[7] *See, e.g.*, *U.S. v. Macey*, 8 F.3d 462, 466-467 (7th Cir. 1993) (using evidence that defendant intended to commit prior offense to show intent to commit alleged offense was "exactly the type of evidence Rule 404 seeks to preclude"); *U.S. v. Commanche*, 577 F.3d 1261, 1267-1269 (10th Cir. 2009) (evidence of prior battery convictions inadmissible under "intent" exception; evidence involved "precisely what Rule 404(b) prohibits — a chain of inferences dependent upon the conclusion that [defendant] has violent tendencies and acted consistent with those tendencies");*Thompson v. U.S.*, 546 A.2d 414, 427 (D.C. 1988) (applying federal evidentiary law) ("There is no real connection between

---

[7]     By contrast, the "intent" exception *does* apply where, unlike here, evidence of a past offense is probative of the defendant's intent "***without the court first having to resort to any inference of predisposition***."  *Thompson*, 546 A.2d at 421-422 (emphasis added); *accord Macey* 8 F.3d at 466-467; *Himelwright* 42 F.3d at 782.  For example, evidence that a defendant kept guns in his home was "other crimes" evidence relevant to the defendant's intent to sell the drugs he kept in his home, on the theory that dealers in narcotics are more likely to keep guns than people possessing drugs for personal use.  *Id.* at 421-422 (discussing *U.S. v. Payne*, 805 F.2d 1062 (D.C. Cir. 1986).  Such evidence, unlike the DRAM guilty pleas, requires no inference that the defendant is predisposed to intentionally engage in certain conduct.  *Id.*

the two offenses other than the allegation that they both spring from the defendant's predisposition to sell [drugs]….***Here, intent piggy-backs on predisposition***.") (emphasis added); *see also U.S. v. Matthews*, 431 F.3d 1296, 1313 n.1 (11th Cir. 2005) (J. Tjoflat, concurring) (where "other crimes" evidence "demonstrates nothing more than a criminal intent…[e.g.] a prior intention to violate drug laws…it must be excluded as inadmissible propensity evidence").  This is precisely the situation here. Evidence of Samsung's intent to participate in a distinct ***DRAM*** conspiracy does not tend to show its intent to participate in the alleged ***SRAM*** conspiracy, ***unless*** the jury first draws the impermissible inference that, because Samsung intended to engage in similar wrongful behavior before, it is more likely to have intended to engage in such behavior this time.  That is exactly the type of "inferential chain" the character evidence rule forbids.

> d.    <u>Even If They Were Relevant to An Issue Other than Samsung's Character, the DRAM Pleas Must Still Be Excluded Under FRE 403.</u>

The DRAM pleas must be excluded—independently of whether they pass muster under FRE 404(b)—because their probative value is far surpassed by the danger of "unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence."  *Curtin*, 489 F.3d at 944; Fed. R. Evid. 403.

The risk of unfair prejudice is the single "most important factor in determining the admissibility of 'prior bad acts' evidence."  Schwarzer, et al., FEDERAL CIVIL TRIALS AND EVIDENCE, § 8:1172 (The Rutter Group 2010).  In this regard, courts have recognized that evidence of prior convictions has an *inherently* prejudicial effect "that outweighs ordinary relevance."  *Old Chief v. U.S.*, 519 U.S. 172, 180 (1997) (internal quotations omitted).  Here, there is no question that admitting the DRAM guilty pleas would unfairly prejudice Samsung, making it impossible for Samsung to receive a fair trial.  Evidence that Samsung and others previously pled guilty to price-fixing in a distinct market "***cannot help*** but have a great emotive impact on a jury."  *International Shoe Machine Corp. v. United Shoe Machinery Corp.*, 315 F.2d 449, 459 (1st Cir. 1963) (emphasis added) (prior antitrust judgment against defendant regarding price-fixing in distinct market was inherently prejudicial and thus inadmissible); *accord U.S. Football League v. N.F.L.*, 842 F.2d 1335, 1372-1373 (2d Cir. 1988) (evidence of prior antitrust judgments was properly excluded under Rule 403; prior judgments were "at best marginally probative of

an ongoing intent to exclude competitors" and were inherently prejudicial).

Moreover, this inherent prejudicial effect *cannot* be ameliorated by a limiting instruction. *See U.S. v. DeCastris*, 798 F.2d 261, 264 (7th Cir. 1986) (simply telling jury not to consider "prior bad acts" as proof of defendant's bad character "is like telling someone not to think about a hippopotamus.").  Instead, the only way to ensure that the DRAM guilty pleas do not unfairly prejudice Samsung at trial is to ensure that the jury never hears of them.

The certainty of unfair prejudice is only one of the reasons the DRAM guilty pleas must be excluded under Rule 403.  The jury in this action necessarily will be asked to resolve disputes regarding economic theory as applied to a complex market that are far outside the layperson's everyday experience.  Introducing evidence of another antitrust conspiracy, in a distinct market and affecting a different (albeit similar-sounding) memory technology, would pose a strong and needless risk of confusing or misleading the jury as to the proper scope and subject matter of this already-complex litigation.  *See Manuel v. City of Chicago*, 335 F.3d 592, 596-597 (7th Cir. 2003) (superficially similar evidence of past conduct excluded as presenting high risk of confusing or misleading jury); Fed. R. Evid. 403.

Furthermore, admitting evidence of the DRAM guilty pleas would inevitably generate ancillary "mini-trials" regarding the nature and extent of the conduct that was the subject of the DRAM pleas, thereby significantly and unnecessarily prolonging the trial.  *Manuel*, 335 F.3d at 597 (evidence of past conduct would have required extended "mini-trials" into the defendant's prior conduct that "ha[d] no relationship" to the case being tried); *Duran v. City of Maywood*, 221 F.3d 1127, 1133 (9th Cir. 2000) (affirming trial court's exclusion of marginally probative "other crimes" evidence where admission of evidence would have precipitated "full-blown trial within this trial").  Among other things, Samsung would be forced to introduce extensive evidence and witness testimony to show that there was no connection between the limited DRAM conspiracy admitted to in the pleas and the supposed SRAM conspiracy Plaintiffs allege here; that, contrary to Plaintiffs' allegation, different people were responsible for SRAM and DRAM pricing and production decisions within Samsung; and that SRAM and DRAM are different products in distinct markets and are influenced by very different market forces.  There is simply no reason to spend valuable trial time on such collateral issues.

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

2.     **The DRAM Pleas Cannot Be Used To Impeach or Rebut the Testimony of**
       **Expert Witnesses.**

Plaintiffs argue in their Trial Brief that the DRAM pleas are admissible to rebut testimony by defendants' expert witnesses that price-fixing was not feasible in the SRAM industry.  Plaintiffs premise this argument on the bare assertion that there are "significant similarities between the SRAM industry and the DRAM industry," and therefore that evidence that price-fixing was "feasible" in the DRAM market is also relevant to show that price-fixing was "feasible" in the SRAM market.  As explained above, however, Plaintiffs' unsupported assertion is directly refuted by their *own* industry report and industry expert, both of which opine at length about the distinctness, independence, and "Key Market Differences" between the DRAM and SRAM industries.[8]  *See, e.g.,* Scarborough Decl., Ex. D (Semico Research Corp., *The SRAM Industry: 1998-2005*, Prepared exclusively for Cotchett, Pitre & McCarthy (Aug. 2007)) at 1-5; *Id.*, Ex. E (Expert Report of Jim Handy) at 4, 8.  Moreover, even if the DRAM pleas did have some marginal relevance as "rebuttal" evidence (which they do not), as explained above the DRAM pleas must still be excluded under Rule 403 as unfairly prejudicial and likely to confuse and mislead the jury.  *See* discussion at Part II.A.1.d, *supra*; *see also U.S. v. Castillo*, 181 F.3d 1129, 1133 (9th Cir. 1999) (purported "rebuttal" or "impeachment" evidence, just like evidence sought to be admitted in a party's case-in-chief, must be analyzed under Rule 403).  This is especially true where, as here, it is highly unlikely that a limiting instruction would be effective in preventing the jury from treating the DRAM pleas, not merely as "rebuttal" evidence, but as evidence of Samsung's supposed propensity to commit antitrust violations.  *See* Fed.R.Evid. 403, Commentary (1972) (court should consider probable effectiveness of limiting instruction).

3.     **The DRAM Pleas Cannot Be Used To Impeach Non-Pleading Percipient**
       **Witnesses.**

Under FRE 609, which sets forth the limited situations in which prior guilty pleas may be used for impeachment, "it is axiomatic that it is only the ***testifying witness' own prior convictions***

---

[8]     Accordingly, Samsung's expert witness, Daniel Rubinfeld, neither considered nor relied upon his work in connection with the *DRAM* antitrust litigation in forming his opinions in this case.  *See* Scarborough Decl., Ex. F (Deposition of Daniel Rubinfeld, June 10, 2010) at 32:8-24.

that should be admissible on cross-examination to impeach his credibility."  *Walden v. Georgia-Pac. Corp.*, 126 F.3d 506, 523 (3d Cir. 1997) (emphasis added); *accord Old Chief*, 519 U.S. at 176 n. 2 (where defendant did not testify at trial, "there was no justification for admitting [the defendant's prior conviction] for impeachment purposes").  Accordingly, "Rule 609 does not permit corporate convictions to be used to impeach the credibility of employee witnesses who were not directly connected to the underlying criminal act."  *Walden*, 126 F.3d at 523-524 ("It strains logic to argue that an ***employee's*** credibility is properly brought into question by the mere fact that he or she is presently employed by a corporation that in some unrelated manner was guilty of [a prior crime]") (emphasis added); *accord Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 1999 WL 543166 at *17 (N.D. Ill. July 21, 1999) (corporate defendant's prior price-fixing conviction could not be used to impeach credibility of employee witnesses; the plain language of Rule 609 allows impeachment only by a witness' own prior conviction; none of the witnesses had been convicted of a crime, and the defendant itself, as a corporation, could not have been a witness).  As a result, Plaintiffs are barred from using the DRAM guilty pleas of Samsung or its codefendants to impeach the credibility of employee witnesses who were not *themselves* directly involved in DRAM price-fixing.  *Id.*

Moreover, Rule 609 bars Plaintiffs from using the DRAM guilty pleas to impeach witnesses unconnected to those pleas for the additional reason that, as discussed above, the guilty pleas' slight probative value is dramatically outweighed by their inherently prejudicial effect and the virtual certainty that they would confuse and mislead the jury and cause unnecessary delay.  *See* Fed.R.Evid. 609(a)(1) (use of guilty pleas for purposes of impeachment must pass muster under Rule 403); Fed.R.Evid. 403; discussion at Part II.A.2, *supra*.

Despite the above authority, Samsung anticipates that Plaintiffs will argue the DRAM guilty pleas are admissible under Rule 609's "automatic admission" provision, which allows "evidence that any *witness* has been convicted of a crime" to be admitted for impeachment purposes "if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement *by the witness*."  Fed.R.Evid. 609(a)(2) (emphasis added).  First, as with the other provisions of Rule 609, this "automatic admission" provision expressly allows only a ***witness's own*** prior convictions to be used to impeach that witness, and therefore does ***not*** allow

-14-

1   Plaintiffs to use the DRAM pleas to impeach the credibility of non-pleading employee witnesses.

2   *Walden* 126 F.3d at 523-524.

3          Second, Rule 609's "automatic admission" provision applies only where "establishing the

4   *elements of the crime*" of which the defendant was convicted necessarily required proof of "an act of

5   dishonesty or false statement."  *See* 2006 Amends. to Rule 609, Committee Notes (where elements of

6   crime do not require proof of dishonesty, it is irrelevant under Rule 609(a)(2) that "the witness exhibited

7   dishonesty or made a false statement in the process of the commission of the crime of conviction.").

8   Here, *none* of the elements of a criminal violation of Section 1 of the Sherman Act—i.e., the crime at

9   issue in the DRAM guilty pleas—requires proof that the defendant committed "an act of dishonesty or

10  false statement" as required by Rule 609(a)(2).  *See, e.g., U.S. v. Gypsum Co.*, 438 U.S. 422, 435-443

11  (1978) (enumerating elements of criminal violation of Section 1 none of which requires proof of

12  dishonesty).  Thus, Plaintiffs lack any basis for using the DRAM guilty pleas for impeachment.

13  **B.**     **Motion No. 2:  Samsung's Leniency Agreement With DOJ, Along With Any Other**

14              **Evidence Of DOJ's Abandoned Investigation Of The SRAM Industry Are**

15              **Inadmissible.**

16          Samsung expects that Plaintiffs will attempt to introduce evidence of, or otherwise make

17  reference to, the DOJ's since-abandoned investigation of alleged price-fixing in the SRAM industry.

18  In particular, Samsung expects Plaintiffs to attempt to introduce or refer to the January 2006

19  leniency agreement entered into by Samsung and the DOJ in connection with the DOJ's

20  investigation (the "leniency agreement").  However, this Court, consistent with a long line of cases,[9]

21  has already held that evidence of DOJ's SRAM investigation is irrelevant in this action.  *In re Static*

22  _____

23  [9]       *See also In re Graphics Processing Units Antitrust Litig.*, ("*GPU*") 527 F.Supp.2d 1011,
    1024 (N.D. Cal. 2007) (existence of DOJ investigation "carries no weight in pleading an antitrust

24  claim"; investigation is "a non-factor" in civil antitrust suit); *In re Travel Agent Com'n Antitrust
    Litig.*, 2007 WL 3171675, at *12 (N.D. Ohio Oct. 29, 2007) (references to government

25  investigations regarding purported conspiracies in industry were "completely immaterial"); *In re
    Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) (allegations of investigations by foreign

26  antitrust authorities irrelevant in civil case); *Minnesota v. United States Steel Corp.*, 44 F.R.D.
    559, 583 (D. Minn. 1968) (in antitrust conspiracy case, court struck all allegations relating to

27  government investigation as irrelevant and prejudicial); *U.S. v. A Leasehold Interest*, 743 F.Supp.
    505, 512 (E.D.Mich. 1990) ("The law is clear that allegations of prior criminal investigations in a

28  civil action are immaterial, impertinent and highly prejudicial").

*Random Access Memory (SRAM) Antitrust Litig.*, ("*SRAM*") 580 F.Supp.2d 896, 903 (N.D. Cal. 2008) ("Allegations regarding [DOJ's] SRAM investigation do not support Plaintiffs' antitrust claims."). This well-established bar on evidence of criminal antitrust investigations in civil cases applies squarely to Samsung's leniency agreement. Indeed, this is especially true where, as here, the DOJ terminated its investigation without bringing an indictment. *See GPU*, 527 F.Supp.2d at 1024 (noting that DOJ investigations may "result in indictments or nothing at all.").

Moreover, even if it were somehow relevant that Samsung cooperated with DOJ's investigation, whatever marginal probative value that evidence might have would be dramatically outweighed by its prejudicial effect on Samsung and the likelihood of confusing or misleading the jury. *See, e.g., Leasehold Interest*, 743 F.Supp. at 512 ("The law is clear that allegations of prior criminal investigations in a civil action are…highly prejudicial"); *accord United States Steel Corp.*, 44 F.R.D. at 583. In particular, despite their irrelevance, there is a substantial risk that a jury could improperly treat the mere existence of a prior government investigation as evidence of unlawful activity in the SRAM industry despite the fact that the DOJ dropped its investigation without bringing any charges. Fed. R. Evid. 403.

Samsung nonetheless anticipates that Plaintiffs will attempt to argue that Samsung's leniency agreement is admissible as an "admission" by Samsung to SRAM price-fixing. However, this argument is directly refuted both by the DOJ's antitrust leniency policy in effect at the time Samsung entered into the leniency agreement, as well as the express language of the agreement itself. When Samsung entered into the leniency agreement in January 2006, the DOJ did ***not*** require leniency applicants to admit to criminal wrongdoing in exchange for leniency. Instead, the DOJ only required that a leniency applicant report a "***possible***" violation of the Sherman Act. *See* Scarborough Decl., ¶¶ 2-3, Ex. B ("Frequently Asked Questions Regarding the Antitrust Division's Leniency Program and Model Leniency Letters November 19, 2008") at 6-7 (noting that leniency agreements entered into before November 19, 2008 by their express terms only required applicant to report "possible" antitrust violation, and contained no admission of "criminal wrongdoing").[10]

---

[10]   *Accord id.*, Ex. A (DOJ Antitrust Division Model Leniency Letter effective April 1, 1998) at 1 (providing that leniency recipient "desires to report to the Antitrust Division ***possible*** [e.g. price-fixing] activity or other conduct violative of the Sherman Act") (emphasis added), Ex. C (footnote continued)

-16-

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

1    Accordingly, Samsung's standard leniency agreement is not an admission of any wrongdoing and is

2    thus inadmissible as substantive evidence against Samsung.

3          Plaintiffs should also be precluded from introducing or referring to evidence of Samsung's

4    leniency agreement, or any other aspect of the DOJ's SRAM investigation, under the guise of

5    impeaching the testimony of Samsung's witnesses.  Just as such evidence has no relevance to

6    Plaintiffs' claims in this action, it also has no probative value for impeachment purposes.  Evidence

7    that Samsung or any of its employee witnesses agreed to cooperate with DOJ's since-abandoned

8    investigation is not probative of any witness' character for truthfulness, potential bias, or any other

9    recognized basis for impeachment.  Instead, the only effect of such questioning would be to inform

10   the jury of the irrelevant and unfairly prejudicial fact that DOJ conducted an SRAM investigation.

11   *See U.S. v. Gilbert*, 57 F.3d 709 (9th Cir. 1995) (impeachment is improper when employed as guise

12   to present substantive evidence to jury that would be otherwise inadmissible).  Consequently,

13   evidence or references to Samsung's leniency agreement, along with all other evidence of DOJ's

14   SRAM investigation, must be excluded at trial for all purposes.

15   **C.    Motion No. 3:  The Court Should Exclude All Evidence Of Defendants' Conduct**

16          **Related To DRAM.**

17          Evidence of DRAM related conduct (e.g., DRAM-related emails) is inadmissible for the

18   same reasons as the DRAM guilty pleas.  *See* Section II.A, *supra*.  As with the DRAM guilty pleas,

19   evidence of DRAM-related conduct is entirely irrelevant to this litigation except for the

20   impermissible purpose of showing that, because Samsung or its codefendants engaged in unlawful

21   conduct in the DRAM market, it is more likely that they also engaged in the conduct alleged here.

22   *See id*; Fed.R.Evid. 404.  Moreover, even if Plaintiffs could meet their burden of showing that any

23   DRAM-related conduct was somehow relevant to a material issue other than Samsung's supposed

24   propensity to commit antitrust violations, such evidence is inherently prejudicial and almost certain

25   to confuse and mislead the jury and waste time at trial.  *See* Section II.A.1.d, *supra*.

26

27   (DOJ announcement titled "Redacted Leniency Letters") (noting that Model Leniency Letter
     effective April 1, 1998 was used through November 19, 2008)

28

W02-WEST:FMI\402960976.13                                        SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*
MDL No. 1819

1   Nor can evidence of DRAM-related conduct be used to impeach witnesses.  As with the

2   pleas, such evidence must first satisfy Rule 609.  *See U.S. v. Osazuwa*, 564 F.3d 1169, 1173–1175

3   (9th Cir. 2009) (evidence of conduct that relates to or led to a criminal conviction, just like evidence

4   of the conviction itself, is not admissible unless it satisfies the prerequisites of Rule 609).  As

5   explained above, under Rule 609 evidence related to defendants' conduct in the DRAM industry

6   may not be used to impeach the testimony of a ***non-pleading*** witness.  *See* Section II.A.3, *supra*.

7   Moreover, even as to witnesses who *were* personally involved in DRAM-related conduct, any

8   marginal probative value of such evidence for impeachment is outweighed by the virtual certainty

9   that such evidence would unfairly prejudice Samsung, confuse and mislead the jury, and cause

10  undue delay.  *See, e.g., id.*; Fed.R.Evid. 403.

11  **D.      Motion No. 4:  The Court Should Exclude All Evidence Of Defendants' Conduct**

12  **Related To Any Other Non-SRAM Products.**

13  In addition to DRAM-related conduct, Samsung anticipates that Plaintiffs may attempt to

14  introduce or make reference to other current or previous investigations, class actions and unproven

15  conduct related to non-SRAM products, including but not limited to liquid crystal displays (LCDs) and

16  Flash memory products. As with DRAM-related conduct, this evidence could only be used as improper

17  character evidence.  Its admission, therefore, would invite the jury to draw the impermissible inference

18  that Samsung is a serial antitrust violator and thus more likely to have engaged in the conspiracy alleged

19  by Plaintiffs here.  *See* Section II.A.1, *supra*.  And, once more, even assuming that this evidence has

20  relevance to any material issue in this case other than Samsung's character, its admission nonetheless

21  would be unfairly prejudicial to Samsung, would confuse and mislead the jury, and is likely to waste

22  valuable trial time.  *See id.*; Fed.R.Evid. 403.  The latter two risks are underscored in the case of these

23  ***unproven*** alleged conspiracies because Plaintiffs must prove them in this case by a preponderance of the

24  evidence if they are to make use of them under FRE 404(b).  *Huddleston v. U.S.*, 485 U.S. 681, 690

25  (1988) (unproven other acts offered under FRE 404(b) must be proven by preponderance of evidence);

26  *accord Carofino v. Forester*, 450 F. Supp.2d 257, 271-273 (S.D.N.Y. 2006).

27

28

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

1    **E.    Motion No. 5:  The Court Should Exclude All Evidence Of Impact And Damages**

2          **That Are Contrary To Or Expand Upon The Opinions Expressed By Dr. Armando**

3          **Levy On Those Issues In His Expert Reports.**

4          Dr. Armando Levy was retained by DPPs to determine impact (i.e., the existence of any

5    overcharge) and damages  (the amount of any overcharge) to DPPs.  *See, e.g.,* Scarborough Decl.,

6    Ex. G (Levy Report) at 2; Ex. H (4/2/2010 Dep. of Roger Noll) at 23:12-21.  As explained at length

7    in Defendants' pending Motion to Exclude the Expert Opinion of Dr. Armando Levy (*see* Docket

8    No. 1052) and Samsung's pending Motion for Summary Judgment In Direct Purchaser Actions (*see*

9    Docket No. 1039), Dr. Levy has opined in both his initial and reply expert reports that the direct

10   purchaser class suffered ***no impact or damages*** for three discrete categories of SRAM transactions.

11   First, and most glaringly, Dr. Levy has concluded that the direct purchaser class incurred impact and

12   damages only for purchases made within a 27-month slice of the 101-month alleged conspiracy

13   period—from October 1999 through December 2001.  Scarborough Decl., Ex. G (Levy Report) at

14   12, 17; Ex. I (Reply Expert Report of Armando Levy, dated June 24, 2010) ("Levy Reply Report")

15   at 4-5.  He opined that "there is little evidence to indicate an impact on prices" outside this 27-

16   month window.  *Id.*, Ex. G (Levy Report) at 17.  Second, Dr. Levy concluded that direct purchasers

17   of PSRAM suffered no impact or damages ***at all***.  *Id.*, Ex. G (Levy Report) at 16, 18; *id.*, Ex. I

18   (Levy Reply Report) at 24.  Third, Dr. Levy concluded that DPPs suffered no impact or damages

19   based on purchases of slow SRAM products that were manufactured by fewer than three

20   manufacturers.  *Id.*, Ex. I (Levy Reply Report) at 23  ("there is no statistically significant evidence

21   of price elevation for either PSRAM or slow SRAM with fewer than three manufacturers.").  DPPs

22   have no other evidence of impact or damages.  *See* Reply I/S/O Samsung's Motion For Summary

23   Judgment Or Partial Summary Judgment In Direct Purchaser Actions, Docket No. 1115, at 2-9.

24          DPPs are barred from introducing evidence at trial that is contrary to Dr. Levy's express

25   opinions related to impact or damages.  An expert report must contain a "*complete statement of all*

26   *opinions* the [expert] witness will express and the basis and reasons for them." F.R.C.P. 26(a)(2)(B)(i)

27   (emphasis added).  The opinions expressed in pretrial expert reports thus delineate the proper scope of

28   the evidence presented at trial.  The purpose of this bright-line rule "is to eliminate unfair surprise to

-19-

the opposing party" and conserve judicial resources. *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007); F.R.C.P. 26 Advisory Committee Notes, 1993 Amendments, Paragraph (2). Accordingly, exclusion of evidence contrary to an expert report "is ***automatic and mandatory***" unless the nondisclosure of the evidence had a "substantial justification" or was "harmless." *Dickenson v. Cardiac and Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004) (emphasis added) (*quoting Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)); F.R.C.P. 37(c)(1)("If a party fails to provide information…required by Rule 26(a)…the party is not allowed to use that information…at a trial"); *Gass v. Marriott Hotel Services, Inc.*, 501 F.Supp.2d 1011, 1025 n. 1 (W.D. Mich. 2007) (*reversed on other grounds*, 558 F.3d 419 (6th Cir. 2009)) ("because Rule 26(a)(2)(b) requires an expert report to contain a complete statement of all opinions to be expressed, it is proper to exclude opinions not expressed in the expert report.").

There can be no legitimate justification to allow DPPs to amend their theory of impact and damages at trial. Samsung has already significantly relied on Dr. Levy's conclusions in preparing its case for trial. To avoid unfair surprise and prejudice to Samsung, DPPs should be barred from introducing evidence of impact or damages that is contrary to or broader in scope that the opinions Dr. Levy provided. *See Smith v. Ford Motor Co.*, 626 F.2d 784, 798–799 (10th Cir. 1980) (allowing plaintiff to introduce new and inconsistent expert testimony at trial unfairly prejudiced the defendant in preparing for and presenting its case at trial).

**F.** **Motion No. 6:  The Court Should Exclude All Evidence Relating To Foreign Conduct That Is Outside The Court's Subject Matter Jurisdiction Or Plaintiffs' Own Class Definition.**

As explained at length in Defendants' pending Motion Raising Factual Challenge to Subject Matter Jurisdiction Over Foreign Conduct, Direct Plaintiffs impermissibly purport to claim damages based on foreign SRAM transactions that are (1) outside the DPPs' own class definition; and/or (2) excluded from this Court's jurisdiction under the Foreign Trade Antitrust Improvements Act,

-20-

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

15 U.S.C. § 6a, (the "FTAIA").[11]  Because Plaintiffs cannot recover damages based on such foreign transactions as a matter of law, any evidence related to such foreign transactions is irrelevant and inadmissible at trial for any purpose.

DPPs seek to recover damages based on, *inter alia*, foreign SRAM transactions in which either (1) SRAM was billed from and/or shipped from the United States to a foreign country, ***but neither billed to nor shipped to the United States*** ("billed from U.S./shipped from U.S." transactions); or (2) SRAM was billed to the United States ***but shipped to a foreign country*** ("billed to U.S./shipped elsewhere" transactions).  All such transactions are categorically excluded from this Court's subject matter jurisdiction under the FTAIA.  *See generally* Motion Raising Factual Challenge to Subject Matter Jurisdiction.

Moreover, DPPs cannot maintain claims for damages based on "billed from U.S./shipped from U.S." transactions for the additional reason that Plaintiffs' *own class definition* properly excludes such transactions from the scope of this litigation.  Perhaps mindful of the jurisdictional limitations imposed by the FTAIA, DPPs sought and obtained certification of a class consisting only of persons who, *inter alia*, directly purchased SRAM "*in the United States*."  *See In re Static Random Access (SRAM) Antitrust Litig.*, 2008 WL 4447592, at *1 (N.D. Cal. Sept. 29, 2008) (granting Plaintiffs' Motion For Class Certification) (emphasis added).  By definition, the SRAM involved in "billed from/shipped from" transactions ***was neither billed to nor shipped to a direct purchaser in the United States***.  As a result, such transactions are outside the scope of this case as Direct Purchaser Plaintiffs have themselves defined it.

Because Plaintiffs cannot possibly maintain claims for damages based on the foreign transactions described above, the Court should exclude all evidence of such foreign transactions as irrelevant for purposes of showing impact or damages.[12]  *See* Fed. R. Evid. 401 & 402.  In addition, Plaintiffs should be precluded from introducing such evidence through the "back door" by characterizing

---

[11]      *See* Defendants' opening brief at Docket No. 1037 and reply briefs at Docket Nos. 1111 and 1113.

[12]      Such evidence includes, but is not limited to, testimony by Plaintiffs' experts regarding alleged impact or damages based on foreign SRAM transactions.

SAMSUNG DEFENDANTS' MOTIONS *IN LIMINE*

1   it as showing the "existence" or "scope" of the alleged conspiracy.  As noted, such issues are material to

2   this case only insofar as they relate to a conspiracy to fix prices of SRAM sold **in the United States**.

3   Thus, assuming *arguendo* that such a conspiracy existed, Plaintiffs should be required to establish that

4   fact through evidence of U.S. transactions; evidence relating to foreign transactions would be merely

5   cumulative.  *See U.S. v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989) (an "important indication of probative

6   value" is the proponent's "need for the evidence in proving its case"); *see also U.S. v. Cross*, 308 F.3d

7   308, 326 (3d Cir. 2002) ("Evidence is 'cumulative' when…its contribution to the determination of truth

8   would be outweighed by its contribution to the length of trial").  Similarly, whether the alleged

9   conspiracy's "scope" also extended to foreign SRAM transactions is simply irrelevant.

10          Furthermore, even if evidence of foreign transactions was somehow relevant to this case,

11   such evidence would still be inadmissible because its probative value is substantially outweighed by

12   the strong likelihood that the evidence would unfairly prejudice Samsung, confuse and mislead the

13   jury, and cause undue delay and waste of time at trial.  See Fed.R.Evid. 403.  If evidence in support

14   of Plaintiffs' claims for damages based on foreign transactions were allowed to be introduced at

15   trial, the jury might erroneously consider the evidence when evaluating Plaintiffs' allegations of

16   impact and damages, and might mistakenly award damages to Plaintiffs that far exceed both the

17   Court's subject matter jurisdiction and Direct Purchaser Plaintiffs' own class definition.  There is

18   simply no reason to subject Samsung to a risk of hundreds of millions of dollars in excessive

19   liability based on purported foreign restraints of trade that have no place in this litigation.  Nor

20   should the jury be burdened with parsing the evidence presented by Plaintiffs to determine what

21   may properly be considered in assessing Plaintiffs' claims for damages and what may not.  Finally,

22   neither the Court nor the parties should be required to spend valuable time at trial addressing

23   evidence in support of claims that are indisputably outside the scope of this litigation.

24   **G.     Motion No. 7:  The Court Should Exclude All Evidence Related To The**

25          **Compensation Or Employment Status Of Defendants' Employees Who Pled Guilty,**

26          **Were Indicted, Or Cooperated With The Government.**

27          Samsung anticipates that Plaintiffs will attempt to show that Samsung or its codefendants

28   "rewarded" or failed to "punish" employees who pled guilty, were indicted, or cooperated with the

-22-

government (collectively, the "employees") by introducing (1) evidence of certain employees' employment status, salary, or other compensation during and following their incarceration, indictment, or cooperation, or (2) evidence regarding who paid the employees' fines or legal bills.  All such evidence is irrelevant, inherently prejudicial, confusing, and misleading, and could only be used to improperly raise the inference that Samsung or its codefendants have a propensity to commit antitrust violations. Fed.R.Evid. 403, 404(b).

First, evidence relating to retention or compensation of employees during or after indictment or incarceration – particularly in connection with a totally different product – is not relevant to showing whether Samsung participated in the conspiracy alleged here.  *U.S. v. Ferguson*, 2007 WL 4240782, at *1 (D.Conn. Nov. 30, 2007.) (excluding evidence of defendant's salary or bonuses where that information was "irrelevant to the charges against him")  Similarly, because the Court has already held that DOJ's ultimately-abandoned criminal investigation of the SRAM industry is completely irrelevant in this civil action, it is likewise irrelevant how defendants treated any employees who may have cooperated with that investigation.  *See* Section II.B, *supra*.  At most, evidence of defendants' personnel decisions could be used for the wholly improper purpose of inviting the jury to conclude that Samsung or its codefendants were complacent with – or even rewarded – unlawful behavior, and to thereby bias the jury's view of Samsung.  This is improper character evidence.  *See* Section II.A.1, *supra*.

Moreover, even if this evidence were in some marginal way relevant to an issue other than Samsung's or its codefendants' character, such evidence would still be inadmissible under FRE 403. Any arguably probative value such evidence might have is significantly outweighed by the strong likelihood that its admission would invite the jury to view Samsung as a "bad actor," and hold it liable regardless of the evidence in this case.  *See In re High Fructose Corn Syrup*, 295 F.3d at 664 (employee's past criminal conviction for price-fixing in different market was inadmissible character evidence; implications that employer lacked "business ethics" and encouraged "atmosphere of general lawlessness" were inherently prejudicial) (internal quotations omitted); *see also* Section II.A.2, *supra*.  In addition, such evidence is also likely to confuse and mislead the jury as to the proper scope of the alleged conspiracy, and cause undue delay by forcing Samsung to consume valuable trial time rebutting any contention – direct or implied – that it rewards or sanctions

-23-

1   criminal behavior by its employees.  *See* Fed.R.Evid. 403; *U.S. v. Wilson*, 605 F.3d 985, 1005-1006

2   (D.C. Cir. 2010) (cross-examination of witness regarding past criminal investigation disallowed

3   where line of questioning was at best marginally probative of bias, extremely prejudicial, and likely

4   to confuse the jury). [13]

5   **H.      Motion No. 8:  The Court Should Exclude All Uncertified Translations At Trial.**

6          The Court should also exclude the roughly 64 uncertified translations Plaintiffs have

7   identified as potential trial exhibits.  These translations never even identify the translator, much less

8   their qualifications, and most translations explicitly state that they are rough and preliminary.  It is a

9   "well-settled rule that parties are required to translate all foreign language documents into English."

10  *United States v. Rivera-Rosario*, 300 F.3d 1, 7 n. 4. (1st Cir. 2002)  Specifically, "[t]ranslations of

11  foreign-language documents which are not certified as true and accurate translations and which do

12  not even identify the translator are not properly authenticated and are not admissible as evidence."

13  *City of New York v. Geodata Plus, LLC*, 537 F.Supp.2d 443, 449 n. 9 (E.D.N.Y. 2007); *see also*

14  *Henein v. Saudi Arabian Parsons Ltd.*, 818 F.2d 1508, 1512 (9th Cir. 1987) (finding purported

15  translations of documents from Arabic to English filed in connection with motion to be "technically

16  improper" where documents contained neither the signature of the translator nor a statement that the

17  translation was accurate and complete).  To the extent the parties need to introduce foreign-language

18  documents at trial, they can do so in conjunction with properly certified translations.

19  **I.      All References to Inadmissible Evidence Should Be Stricken From the Complaints.**

20         Finally, because the above evidence is inadmissible at trial for any purpose, all references to

21  such evidence should be stricken from Plaintiffs' complaints, especially in light of the possibility

22  that the complaints will be provided to the jury.  *See, e.g., U.S. Football League*, 634 F.Supp. at

23  1175 (striking from complaint references to evidence found inadmissible at trial, including evidence

24  of past, unrelated antitrust conspiracies); Fed.R.Civ.P. 12(f) (authorizing trial court to strike from

25  any pleading any "immaterial" or "impertinent" matter).

26

27  [13]     Nor can Plaintiffs introduce or refer to such evidence under the guise of impeaching the
testimony of any employees.  *See* Section II.A.2, *supra*; *Gilbert*, 57 F.3d at 709 (impeachment

28  may not be used to present substantive evidence to jury that is otherwise inadmissible).

-24-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.**

**CONCLUSION**

For the foregoing reasons, the Court should GRANT Samsung's motions *in limine* and motion to strike as set forth herein.

Dated:  November 30, 2010          Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By          */s/ Michael W. Scarborough*
                    MICHAEL W. SCARBOROUGH

Attorneys for Defendants
SAMSUNG ELECTRONICS CO., LTD. and
SAMSUNG SEMICONDUCTOR, INC.

-25-