LEE H. RUBIN (State Bar #141331)
MAYER BROWN LLP
Two Palo Alto Square
Suite 300
3000 El Camino Real
Palo Alto, CA  94306-2112
 (650) 331-2000
lrubin@mayerbrown.com

ROBERT E. BLOCH (*pro hac vice*)
GARY A. WINTERS (*pro hac vice*)
AIMÉE D. LATIMER-ZAYETS (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006-10001
(202) 263-3000
rbloch@mayerbrown.com
gwinters@mayerbrown.com
alatimer-zayets@mayerbrown.com

*Counsel for Defendant Cypress Semiconductor
Corporation*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| **IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION**<br><br>―――――――――――――――<br><br>**This Document Relates to:**<br><br>**ALL DIRECT AND INDIRECT PURCHASER ACTIONS** | Master File 4:07-md-01819-CW<br><br>MDL NO. 1819<br><br>**DEFENDANT CYPRESS SEMICONDUCTOR CORPORATION'S MOTIONS IN LIMINE** |

1

**TABLE OF CONTENTS**

2

**Page**

3  TABLE OF AUTHORITIES.........................................................................................ii

4  I.  MOTION TO EXCLUDE EVIDENCE OF THE DRAM CONSPIRACY AND
       THE DRAM INDUSTRY ...............................................................................1

5
6        A.    Evidence Of The DRAM Guilty Pleas Is Not Admissible Against Cypress
               Because Cypress Had No Involvement In Those Prior Crimes............................3

7        B.    The DRAM Evidence Is Unfairly Prejudicial To Cypress ....................................8

8        C.    The Court Should Also Exclude Documents And Testimony Relating To
               The DRAM Industry..............................................................................9

9  II.  MOTION TO EXCLUDE INTERROGATORY ANSWERS AND
        ADMISSIONS OF SETTLING CODEFENDANTS, AND FOR A LIMITING
10       INSTRUCTION REGARDING SAMSUNG'S ANSWERS..........................................10

11       A.    Discovery Responses Are Admissible Only Against The Party Submitting
               Them....................................................................................................11

12
         B.    The Settling Codefendants' Responses Should Be Excluded, And The
13             Court Should Issue A Limiting Instruction As To Samsung's Responses..........13

14  III.  MOTION TO PRECLUDE SAMSUNG FROM SUBMITTING QUESTION 5
         ON ITS PROPOSED VERDICT FORM AND ARGUING THE CONTENTS TO
15        THE JURY ...............................................................................................13

16  IV.  MOTION TO EXCLUDE TESTIMONY AND ARGUMENT THAT
         PLAINTIFFS' DAMAGES EXPERTS' ANALYSES SUPPORT AN
17        INFERENCE OF CONSPIRACY...................................................................17

18  V.  MOTION TO EXCLUDE EVIDENCE OF CUSTOMER-VENDOR
        RELATIONSHIPS ...................................................................................21

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Becerra v. Asher,
105 F.3d 1042 (5th Cir. 1997) ................................................................................................9

Beller v. United States,
221 F.R.D. 696 (D.N.M. 2003) ..............................................................................................18

Cortez v. Trans Union LLC,
617 F.3d 688 (3d Cir. 2010) ..................................................................................................13

Fong v. American Airlines, Inc.,
626 F.2d 759 (9th Cir. 1980) .................................................................................................10

In re Citric Acid Antitrust Litig.,
191 F.3d 1090 (9th Cir. 1999) ..............................................................................................8, 9

In re High Fructose Corn Syrup Antitrust Litig.,
293 F. Supp. 2d 854 (C.D. Ill. 2003) ...................................................................................8, 9

In re High Fructose Corn Syrup Antitrust Litig.,
361 F.3d 439 (7th Cir. 2004) ...............................................................................................8, 9

In re High Fructose Corn Syrup Antitrust Litig.,
295 F.3d 651 (7th Cir. 2002) .................................................................................................8

Hirst v. Gertzen,
676 F.2d 1252 (9th Cir. 1982) ...............................................................................................3

Huddleston v. United States,
485 U.S. 681 (1988) ...............................................................................................................2

In re Leonetti,
28 B.R. 1003 (E.D. Pa. 1983) ..............................................................................................12

In re Oracle Corp. Secs. Litig.,
2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009).....................................................17

Paladin Assoc. v. Montana Power Co.,
328 F.3d 1145 (9th Cir. 2003) ..............................................................................................17

Tamez v. City of San Marcos,
118 F.3d 1085 (5th Cir. 1997) ...............................................................................................9

United States v. Andreas,
216 F.3d 645 (7th Cir. 2000) .................................................................................................5

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*United States v. Bibo-Rodriguez,*
922 F.2d 1398 (9th Cir. 1991) ................................................................. 5

*United States v. Bradley,*
5 F.3d 1317 (9th Cir. 1993) ..................................................................... 5

*United States v. Brown,*
880 F.2d 1012 (9th Cir. 1989) ................................................................. 5

*United States v. Briscoe,*
896 F.2d 1477 (7th Cir. 1990) ................................................................. 5

*United States v. Carreno,*
363 F.3d 883 (9th Cir. 2006) ................................................................. 10

*United States v. Conners,*
825 F.2d 1384 (9th Cir. 1987) ................................................................. 3

*United States v. DeRosa,*
670 F.2d 889 (9th Cir. 1982) ................................................................... 7

*United States v. Erickson,*
75 F.3d 470 (9th Cir. 1996) ..................................................................... 2

*United States v. Eubanks,*
591 F.2d 513 (9th Cir. 1979) ................................................................... 9

*United States v. Hay,*
122 F.3d 1233 (9th Cir. 1997) ................................................................. 9

*United States v. Hill,*
953 F.2d 452 (9th Cir. 1991) ................................................................... 3

*United States v. Johnson-Dix,*
54 F.3d 1295 (7th Cir. 1995) ................................................................... 3

*United States v. McCourt,*
925 F.2d 1229 (9th Cir. 1991) ................................................................. 6

*United States v. Payden,*
622 F. Supp. 915 (S.D.N.Y. 1985) .......................................................... 9

*United States v. Pedroza,*
750 F.2d 187 (2d Cir. 1984) ................................................................... 9

*United States v. Sausa-Martinez,*
217 F.3d 754 (9th Cir. 2000) .............................................................. 9, 11

-iii-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*United States v. Valdez-Soto*,
    31 F.3d 1467 (9th Cir. 1994) ............................................................. 10

*Williamson v. United States*,
    512 U.S. 594 (1994) ....................................................................... 10

*Yeti By Molly, Ltd. v. Deckers Outdoor*,
    259 F. 3d 1101 (9th Cir. 2001). *See* ................................................... 17

**STATUTES, RULES AND REGULATIONS**

Fed. R. Civ. P. 21 ............................................................................. 14

Fed. R. Civ. P. 26 ............................................................................. 17

Fed. R. Civ. P. 33(c) ......................................................................... 11

Fed. R. Civ. P. 36 ............................................................................. 9

Fed. R. Civ. P. 37 ............................................................................. 17

Fed. R. Evid. 401 ............................................................................. 20

Fed. R. Evid. 402 ....................................................................... 7, 20, 21

Fed. R. Evid. 403 .................................................................... 1, 2, 6, 7, 8

Fed. R. Evid. 404(b) ....................................................................... *passim*

Fed. R. Evid. 801(d) ........................................................................... 9

Fed. R. Evid. 804(b)(3) ........................................................................ 9

Fed. R. Evid. 807 ............................................................................. 10

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE that at a date and time to be selected by the Court, in the

3    United States District Court for the Northern District of California, Courtroom 2, 1301 Clay

4    Street, Oakland, California, before the Honorable Claudia Wilken, Defendant Cypress

5    Semiconductor Corporation ("Cypress") will move this Court, pursuant to the Federal Rules of

6    Evidence, for an Order *in limine* excluding certain evidence from the trial of this matter and

7    prohibiting Plaintiffs from making reference to any excluded evidence at trial through argument,

8    questioning, or otherwise.

9    This motion is based upon this Notice of Motion; the Memorandum of Points and

10   Authorities; the Declaration of Gary A. Winters; the complete files in this action; argument of

11   counsel; and such other further matters as the Court may consider.

12   **MEMORANDUM OF POINTS AND AUTHORITIES**

13   **I.    MOTION TO EXCLUDE EVIDENCE OF THE DRAM CONSPIRACY AND THE**

14   **DRAM INDUSTRY**

15   Plaintiffs seek to introduce guilty pleas entered by Samsung and Hynix Semiconductor,

16   as well as various executives of these companies, in the U.S. Department of Justice's DRAM

17   criminal investigation.  In the draft Trial Brief they submitted on November 16, 2010, Plaintiffs

18   contend that this evidence of "other crimes" is relevant and admissible under Federal Rule of

19   Evidence 404(b) for three specific purposes: to show that the same people at Samsung who had

20   responsibility for DRAM had responsibility for SRAM; to show the background and

21   development of the alleged SRAM conspiracy; and to rebut defendants' experts' claims that

22   collusion was not feasible in the SRAM industry, given the purported similarity between the

23   DRAM and SRAM industries.

24   The guilty pleas (and any other evidence referencing the pleas or the existence of the

25   DRAM conspiracy, such as testimony, interrogatory answers, or admissions) should be excluded

26   for several reasons.  *First*, evidence about the existence of the DRAM conspiracy is inadmissible

27   against Cypress because that conspiracy was not the "other wrong" of Cypress, a company that

28

never made DRAM and was never implicated in the conspiracy.  In other words, any theoretical legitimate purpose for this evidence under Rule 404(b) relates to the identity, knowledge or intent of the *perpetrator* of the previous conduct, not a party who had no involvement in the prior bad act.  *Second*, the DRAM conduct is not "inextricably intertwined" with the SRAM evidence, and thus cannot be admitted as part of "res gestae" of the case.  Plaintiffs have not so much as hinted that they would be unable to coherently explain the alleged SRAM conspiracy without reference to the DRAM conspiracy.  Nor could they make such a suggestion, as the evidence shows substantial differences between the two industries and the conduct involved.  *Third*, evidence of the DRAM conspiracy cannot rebut defendants' experts' testimony.  Although Plaintiffs assert that there are "significant similarities" between the DRAM and SRAM industries (Pl. Draft Trial Br. at 7), their own witness proffered as an industry expert testified that they are "extraordinarily different.  *Fourth*, even if the DRAM guilty pleas are admissible for a permitted purpose under Rule 404(b) as to Samsung, they should be excluded under Rule 403 as unfairly prejudicial to Cypress.

Plaintiffs also have placed on their exhibit list scores of documents related to the DRAM industry, such as emails between DRAM suppliers concerning DRAM prices and customers. Presumably Plaintiffs believe that if they can inform the jury of the DRAM conspiracy through the guilty pleas, they also may introduce under Rule 404(b) evidence of conduct in the DRAM industry that purportedly illustrates how the DRAM conspirators operated.  But if evidence of the DRAM guilty pleas is inadmissible, evidence (whether documentary or testimonial) of DRAM information exchanges is surely irrelevant, not to mention confusing and misleading. And even if the Court were to admit the DRAM guilty pleas, the evidence of conduct in the DRAM industry should be excluded under Rule 403 as cumulative and likely to confuse and mislead the jury.

For these reasons, all evidence related to DRAM — both evidence of the admitted conspiracy, and evidence of communications between alleged coconspirators concerning the product — should be excluded from this trial, and Plaintiffs should be precluded from asking

1  questions of lay and expert witnesses, making arguments, or otherwise referencing the DRAM

2  conspiracy or the DRAM industry.

3      **A.**    **Evidence Of The DRAM Conspiracy Is Not Admissible Against Cypress**

4             **Because Cypress Had No Involvement In Those Prior Crimes.**

5        In the first instance, evidence of the DRAM conspiracy, as shown through the guilty

6  pleas or any other evidence, cannot be admissible against Cypress.  It has been undisputed from

7  the beginning of this litigation that Cypress never produced DRAM and was never implicated in

8  the DRAM conspiracy.  Evidence of a prior bad act, if admissible under Rule 404(b) at all, is

9  admissible ***only*** against the defendant who committed the prior act.  *See United States v.*

10  *Erickson*, 75 F.3d 470, 479 (9th Cir. 1996) ("Evidence of a defendant's prior bad acts is

11  admissible only against that defendant[,]" and not against any codefendants) (citing *Huddleston*

12  *v. United States*, 485 U.S. 681, 685 (1988)).  Plaintiffs appear to suggest that because some of

13  the same personnel were involved in both the DRAM and SRAM business, the DRAM guilty

14  pleas and other evidence is admissible as "plan" or "modus operandi" evidence.  While Plaintiffs

15  have not carried their burden of establishing the admissibility of this evidence with respect to

16  Samsung, such a theory of admissibility could never support the admission of this evidence

17  against Cypress.  In evaluating prior bad acts to prove "common plan or scheme" the Third

18  Circuit has explained:

19

20        Ordinarily, when courts speak of common plan or scheme, they are
referring to a situation in which the charged and uncharged [acts] are part of a

21  single series of events.  In this context, evidence that the defendant was in the
uncharged act may tend to show a motive for the charged act, and hence establish

22  the commission of the act, the identity of the actor, or his intention.

23

24  *Becker v. Arco Chem. Co.*, 207 F.3d 176, 189 (3d Cir. 2000) (quoting *J & R Ice Cream Corp., v.*

25  *California Smoothie Licensing Corp.*, 31 F.3d at 1259, 1268 (3d Cir. 1994)).  *See United States*

26  *v. Phillips*, 599 F.2d 134, 136 (6th Cir. 1979) ("Something more than repeated performance of

27  the same class of crimes is required in evidencing a 'design' or 'plan' which, if proved, may

28

1   raise the inference that the accused was the perpetrator of the crime in question."). *See also*

2   *United States v. Robinson*, 161 F.3d 463, 467 (7th Cir. 1998) ("*Modus operandi*" evidence "may

3   be properly admitted pursuant to Rule 404(b) to prove identity."). Thus, consistent with the

4   general principles underlying Rule 404(b), "common scheme" or "plan" evidence may only be

5   admissible under Rule 404(b) against the party who committed the prior act in order to prove that

6   the party was the perpetrator of the alleged conduct (*i.e,* identity) or to help prove the defendant's

7   intent, motive or knowledge. Such evidence can have no conceivable relevance at all as to a

8   party who was not involved in the prior conduct. Accordingly, Rule 404(b) does not support the

9   admission of this evidence against Cypress.

10          Plaintiffs further suggest because DRAM is a "related industry with many of the same

11   companies as major players," the DRAM conspiracy is material to showing the "background and

12   development of the SRAM conspiracy." Pl. Draft Trial Br. at 7. To admit other acts evidence

13   under this theory, however, plaintiffs bear the burden of showing that the DRAM evidence is

14   "inextricably intertwined" with the SRAM case. *See United States v. Vizcarra-Martinez*, 66 F.3d

15   1006, 1012-1013 (9th Cir. 1995). They have not done so here, nor could they. Plainly, the

16   DRAM guilty pleas and other evidence of the DRAM conspiracy is not to necessary "offer a

17   coherent and comprehensible story" (*Vizcarra-Martinez*, 66 F.3d at 1012) regarding commission

18   of the alleged conduct in the SRAM industry. Nothing about this evidence suggests that

19   understanding the background of the DRAM conspiracy is essential to understanding the alleged

20   conduct in SRAM. Nor is there any indication that the DRAM conspiracy evolved into, or was a

21   direct predecessor of, the SRAM conspiracy.

22          All plaintiffs have said is that the two products are "related" — a proposition that, even if

23   true in the abstract sense that both are semiconductor chips, has no relevance where the evidence

24   clearly shows that the two markets are significantly different from one another. Indeed, contrary

25   to plaintiffs' glib assertion that there are "significant similarities between the SRAM industry

26   and the DRAM industry" (Pl. Draft Trial Br. at 7), plaintiffs' own industry expert, Jim Handy, in

27   fact said the exact opposite:

28

> "The NAND and DRAM market **are extraordinarily different**
> from the SRAM market . . . And so, you know, I could say that
> SRAM and NOR flash are very similar to each other, but **the other
> markets really had absolutely no bearing on what goes on in
> SRAM.**"

Handy Tr. 172:23-173:5 (emphasis added).  Moreover, witnesses that plaintiffs have deposed in

this case who participated in the DRAM conspiracy testified that DRAM, unlike SRAM,

> "is a highly commoditized product, far more volume in respect to
> the overall revenue generation that it provides to the company,
> [involves] a different set of customers, a different sales process, a
> different . . . designing process.  Where DRAM is a very quick,
> high turn rate process, SRAM takes a long design cycle.  Its
> pricing characteristics are far different.  It's not priced on a twice-
> a-month or monthly basis.  It's priced on a quarterly or yearly
> basis.  **And they are two separate entities altogether**."

McBroom Tr. 33:5-9, 34:11-16 (emphasis added).  Similarly, OS Kwon testified on behalf of

Samsung that "[i]n case of DRAM, they have lots of customer using same part number in the

same period with a similar volumes.  But in the SRAM area, we have lots of different part

numbers, and customer, even customer use in the same period, they use different part number

products[.]"  Kwon 30(b)(6) Tr. 304:23-305:6.

Furthermore, the witnesses who were involved in the DRAM conspiracy have testified

that their conspiratorial actions were limited to DRAM only.  McBroom testified that "in terms

of specific price range discussions it was DRAM only," even though he had some responsibility

for SRAM.  McBroom Tr. 88:22-89:2; *see also* McBroom Tr. 26:7-9 ("And during the '99 to

2000 time frame that you are talking about we also had some contact with our competitors for

DRAM only.").  Kun Chul (KC) Suh, who pled guilty in DRAM and served a prison sentence,

testified that he "never contacted competitors for SRAM issue," was never aware of any

coworkers contacting a competitor to obtain SRAM prices, and did not remember ever seeing

any emails suggesting that a coworker had obtained SRAM prices from a competitor.  Suh Tr.

95:14-98:5.

1    In view of the differences between DRAM and SRAM, plaintiffs' contention that some of

2    the individuals who were responsible for DRAM were also responsible for SRAM, *see* Pl. Draft

3    Trial Br. at 6, adds nothing and certainly does not support the assertion that the DRAM and

4    SRAM are so "inextricably intertwined" that plaintiffs cannot offer a "coherent and

5    comprehensive story" about SRAM without reference to DRAM. *Vizcarra-Martinez*, 66 F.3d at

6    1012. The guilty pleas do not show this fact, as plaintiffs oddly suggest; they are merely pleas in

7    the DRAM case, and make no reference to the individual's responsibilities for SRAM. To the

8    extent plaintiffs mean that a plea of guilty by a person who had responsibility for both DRAM

9    and SRAM suggests the person's participation in an SRAM conspiracy, that is precisely the

10   inference that Rule 404(b) precludes: this is nothing more than a claim that the conduct in

11   DRAM shows a propensity to fix prices, so the jury should infer that the person fixed prices in

12   SRAM. In the absence of any other evidence of similarity between the DRAM and SRAM

13   conduct, there is no basis for admitting this highly inflammatory other acts evidence.[1]

14   Plaintiffs' citation to *United States v. Andreas*, 216 F.3d 645 (7th Cir. 2000), shows how

15   far off the mark they are. In *Andreas*, an appeal from a conviction for fixing lysine prices, the

16   court determined that evidence of the defendant's prior involvement in a conspiracy to fix the

17   prices of citric acid was admissible not because it was offered for a permissible purpose under

18   Rule 404(b), but because the prior acts were "intricately interwoven with the facts of the charged

19   crime that to omit the evidence relating to it would lead to confusion or leave an unexplainable

20

21   [1] While this Court observed in denying the defendants' motion to dismiss that the DRAM guilty
     pleas "support an inference of a conspiracy in the SRAM industry," *In re SRAM Antitrust Litig.*,
22   580 F. Supp. 2d 896, 903 (N.D. Cal. 2008), the Court at the time did not have the benefit of the
     record that exists now. Moreover, for the same reasons that the significant differences between
23   SRAM and DRAM preclude their admission as part of the "res gestae" of the SRAM case, this
     evidence is also inadmissible as "common plan or scheme" evidence against Samsung. *See Hirst*
24   *v. Gertzen*, 676 F.2d 1252, 1262 (9th Cir. 1982) (when prior acts evidence is offered on the
     theory that those acts show a consistent "plan" or "modus operandi," there must be "a very close
25   similarity between the prior acts and the conduct sought to be established."); *United States v.*
     *Hill*, 953 F.2d 452, 457 (9th Cir. 1991) (evidence of prior criminal acts may be relevant to show
26   the background and development of the conspiracy only where "the prior crime and the charged
     crime were identical and involved the same individuals").
27

28

1  gap in the narrative of the crime." *Id*. at 665.  The acts were "part and parcel of the charged

2  crime itself; they simply [were] not 'other'." *Id*.  In *Andreas*, there was evidence that the

3  conspirators *explicitly* discussed using trade associations in the lysine conspiracy in the same

4  way they had in the citric acid conspiracy, and that the defendant's employer had considered the

5  lysine and citric acid conspiracies part of the same "master plan to control prices." *Id*.  Nothing

6  like this even remotely exists here:  there is not a shred of evidence connecting the workings of

7  the DRAM conspiracy to any conduct in the SRAM industry.  Plaintiffs' use of the DRAM

8  conspiracy evidence is for little more than showing that Samsung and other companies that were

9  in both the DRAM and SRAM industries must have fixed prices in SRAM because they did so in

10  DRAM.  That is precisely what Rule 404(b) prohibits.

11         Plaintiffs' last argument, that "the DRAM guilty pleas are relevant to rebut the

12  defendants' experts' claims that, as a matter or [sic] economics, the SRAM industry was not an

13  industry in which collusion was feasible" (Pl. Draft Trial Br. at 7), fails for the same reasons as

14  the others.  Although plaintiffs write in their brief that the "significant similarities" between the

15  DRAM and SRAM industries support the feasibility of price-fixing in the SRAM industry, their

16  own industry expert has said that the SRAM and DRAM markets are "extraordinarily different."

17  These differences manifest themselves in a number of ways.  For example, DRAM and SRAM

18  cannot function as substitutes.  Corrected Expert Report of Michael J. Harris (Harris Rep't) ¶ 24

19  (May 6, 2010).  There is a "spot market" for DRAM, which does not exist with SRAM and

20  which makes price-fixing more feasible.  *See* Noll Class Cert. Tr. 174:1-6.  DRAM is sold to "a

21  different set of customers" than SRAM is.  McBroom Tr. 33:5-9.  DRAM is priced on a "twice-

22  a-month or monthly basis," whereas SRAM is priced on a "quarterly or yearly basis."  McBroom

23  Tr. 34:11-16.  DRAM is far more commoditized, with "lots of customer using same part number

24  in the same period with a similar volumes," whereas SRAM has "lots of different part

25  numbers[.]"  Kwon 30(b)(6) Tr. 304:23-305:6.  In sum, the economic factors that characterize

26  DRAM are not the factors that characterize the SRAM market**.** The feasibility of collusion in a

27  market that, as Mr. Handy said, "really had absolutely no bearing on what goes on in SRAM"

28

1  (Handy Tr. 173:3-5), can prove nothing about the feasibility of collusion in the SRAM market.

2        **B.**     **The DRAM Evidence Is Unfairly Prejudicial To Cypress.**

3        Even if other crimes evidence is admissible under Rule 404(b), it may be excluded under

4  Rule 403 if the danger of unfair prejudice substantially outweighs its probative value.  *United*

5  *States v. Montgomery*, 150 F.3d 983, 1001 (9th Cir. 1998); *United States v. Bibo-Rodriguez*, 922

6  F.2d 1398, 1400-01 (9th Cir. 1991).  If the Court were to determine that the DRAM conspiracy

7  evidence is admissible only against Samsung but not Cypress (as was the case in the *HFCS*

8  litigation), or if it were to determine that the evidence is admissible against both defendants, the

9  risk to Cypress of prejudicial spillover supports excluding it altogether to ensure that Cypress

10  obtains a fair trial.  It is difficult to imagine a body of evidence more prejudicial to Cypress in

11  this case charging an antitrust conspiracy than evidence that its co-defendant participated in a

12  prior antitrust conspiracy involving a different semiconductor product.  "[E]ven if Rule 404(b)

13  evidence is properly admitted against one defendant in a joint trial, … the district court must

14  consider whether the evidence may have a 'spillover' effect that could deprive the other

15  defendants to whom the evidence does not apply of their right to a fair trial."  *United States v.*

16  *Johnson-Dix*, 54 F.3d 1295, 1308 (7th Cir. 1995); *See United States v. DeRosa*, 670 F.2d 889,

17  898 (9th Cir. 1982) (courts "must be wary of situations where a jury might impute the guilt of

18  some defendants to other defendants"); *accord, e.g.*, *United States v. Briscoe*, 896 F.2d 1476,

19  1498 (7th Cir. 1990) ("[I]n joint trials the court must consider, and remain particularly sensitive

20  to the possibility that the prejudicial effect of evidence admissible only as to only one or a few

21  defendants may have a 'spillover' effect on the jury's consideration of the government's case

22  against defendants to whom the evidence does not apply.").

23        In *In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854 (C.D. Ill. 2003),

24  the court faced a situation very similar to the one here.  Three defendants, ADM, Cargill and

25  Staley, were charged with participating in a conspiracy to fix HFCS prices.  ADM had

26  participated in prior conspiracies to fix lysine and citric acid prices, but neither Cargill nor Staley

27  had been involved in either conspiracy. *See In re High Fructose Corn Syrup (HFCS) Antitrust*

28  

-8-

1   *Litig.*, 295 F.3d 651, 661 (7th Cir. 2002); *In re Citric Acid Antitrust Litig.*, 191 F.3d 1090 (9th

2   Cir. 1999).  Evidence concerning the prior conspiracies was not admissible to show that ADM

3   probably had fixed HFCS prices, as that would constitute the use of prior crimes evidence for the

4   purpose expressly prohibited under Rule 404(b) (*see HFCS*, 295 F.3d at 664), but the trial court

5   held that some of the evidence was admissible *against ADM only* for the purposes permitted

6   under Rule 404(b).  293 F. Supp. 2d at 862; *see also In re HFCS*, 361 F.3d 439, 440 (7th Cir.

7   2004) ("Very damaging evidence arising from criminal proceedings against ADM would be

8   admissible against ADM but not against the other defendants.").  This created a danger, however,

9   of "significant prejudice to the non-ADM Defendants due to guilt by association or spillover."

10  *Id*.  The court found "far from frivolous" the suggestion that a limiting instruction could not cure

11  the prejudice (*id*.), and expressed a strong preference for seating two juries — one to hear all the

12  evidence, including the evidence admissible only against ADM, and one to hear everything but

13  the 404(b) evidence.  *Id*.  The Seventh Circuit concluded that this was a perfectly permissible

14  method of avoiding the prejudice to the non-ADM defendants.  *HFCS*, 361 F.3d at 441.[2]

15      Moreover, to counter this evidence, Cypress would have to conduct its own "trial within a

16  trial" to demonstrate that it had nothing to do with DRAM and did not participate in the

17  conspiracy — an exercise that is bound to confuse and mislead the jury, and needlessly extend

18  the proceedings.  As the district court recognized in *HFCS*, 293 F. Supp. 2d at 862, a limiting

19  instruction can hardly protect one defendant from the effect of evidence that a co-defendant

20  participated in a prior price-fixing conspiracy.  As the court in *High Fructose Corn Syrup*

21  acknowledged, "[i]n a joint trial, the only possible way to ensure that [Cypress] receive[s] a fair

22  trial is to substantially limit the Plaintiffs' proof in the presentation of their case pursuant to Rule

23  403."  293 F. Supp. 2d at 863.

24      **C.**   **The Court Should Also Exclude Documents And Testimony Relating To The**

25  ────────────────────

[2] The defendants had sought a severance under Rule 21 as a remedy, but the district court
26  believed that a severance was not appropriate under the circumstances.  293 F. Supp. 2d at 863.
    As Cypress explains in its separate Trial Brief, a severance would be warranted in this case in the
    event evidence of the DRAM conspiracy is held to be admissible against Samsung but not
27  Cypress.  In the alternative, Cypress would support the two-jury approach that the Seventh
    Circuit sanctioned in *HFCS*.

28

1    **DRAM Industry.**

2    Plaintiffs have not only marked the DRAM guilty pleas and other evidence directly

3    establishing the DRAM conspiracy as exhibits, they also have listed hundreds of DRAM-related

4    communications on their exhibit list and designated deposition testimony about the DRAM

5    industry.  If the Court excludes evidence of the DRAM conspiracy, all other evidence concerning

6    DRAM, such as documents constituting or referencing information exchanges, would have no

7    relevance and should be excluded.  Fed. R. Evid. 402.  Moreover, if the jury is not to be

8    informed of the DRAM conspiracy, then other evidence concerning the DRAM industry will

9    only confuse and mislead them.  The DRAM-related testimony and documents reflect the fact

10   that there was an admitted conspiracy in that industry.  Without the guilty pleas to inform the

11   background of the DRAM conspiracy, this other evidence might be wrongly interpreted by the

12   jury as reflecting activities in the SRAM industry.  The probative value of this "highly-charged"

13   evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues,

14   or misleading the jury[.]"  Fed. R. Evid. 403.

15   Finally, even if the Court admits the DRAM guilty pleas, plaintiffs' other DRAM

16   evidence should be severely restricted, if not eliminated altogether, to avoid additional prejudice,

17   the cumulative presentation of evidence, and jury confusion.  The hundreds of DRAM exhibits

18   plaintiffs have marked suggest that plaintiffs are prepared to put on an entirely collateral case

19   about the DRAM industry.  That can only lead to massive confusion as the jury attempts to sort

20   out the DRAM evidence from the SRAM evidence.  It also runs the risk of prejudicing Cypress

21   further by unfairly suggesting that DRAM-related communications among the conspirators in

22   that industry bear some relationship to SRAM-related communications.

23   **II.    MOTION TO EXCLUDE INTERROGATORY ANSWERS AND ADMISSIONS**

24   **OF SETTLING CODEFENDANTS, AND FOR A LIMITING INSTRUCTION**

25   **REGARDING SAMSUNG'S ANSWERS**

26   Plaintiffs have designated certain responses to interrogatories and requests for admission

27   (collectively, "Discovery Responses") submitted by settling codefendants and Samsung.  The

28

1    Discovery Responses of settling codefendants are inadmissible hearsay as to both Cypress and

2    Samsung, and therefore should be excluded from the trial altogether.[3]  The Discovery Responses

3    submitted by Samsung may be admissible against Samsung, but they are inadmissible hearsay

4    against Cypress.  Admitting Samsung's Discovery Responses in a joint trial would be highly

5    prejudicial to Cypress and is a basis for severance of the defendants, as set forth in Cypress's

6    separately filed trial brief.  But if the Court proceeds with a joint trial, it should give a limiting

7    instruction directing the jury not to consider Samsung's Responses as evidence against Cypress.

8           **A.      Discovery Responses Are Admissible Only Against The Party Making Them**

9                  Under Federal Rule of Civil Procedure 33(c), interrogatory answers "may be used to the

10   extent allowed by the Federal Rules of Evidence."  In general, a party's responses to an

11   opponent's interrogatories constitute the admission of a party opponent under Federal Rule of

12   Evidence 801(d)(2)(A).  *Tamez v. City of San Marcos*, 118 F.3d 1085, 1098 (5th Cir. 1997).  The

13   same is true of responses to requests for admission propounded under Federal Rule of Civil

14   Procedure 36.

15                 Statements admissible under Rule 801(d)(2)(A) may, however, be introduced only

16   against the declarant, and not against other parties.  *See*, *e.g.*, *United States v. Sausa-Martinez*,

17   217 F.3d 754, 761 (9th Cir. 2000) (holding that district court was obligated to include limiting

18   instruction that codefendant's statements were hearsay as to defendant and were not admissible

19   against him); *United States v. Hay*, 122 F.3d 1233, 1236-37 (9th Cir. 1997) (statement of

20   defendant admissible against him under Rule 801(d)(2)(A) held not admissible against another

21   defendant); *United States v. Eubanks*, 591 F.2d 513, 519 (9th Cir. 1979) (same); *Becerra v.*

22   *Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) ("[d]eemed admissions by a party opponent cannot

23   be used against a co-party"); *United States v. Pedroza*, 750 F.2d 187, 202 (2d Cir. 1984)

24   (statement by one defendant, which was admissible against him under Rule 801(d)(2)(A), was

25   not admissible against other defendants); *United States v. Payden*, 622 F. Supp. 915, 919

26

27   _____
     [3] Certain of the Discovery Responses also relate to the DRAM conspiracy, and as such are
     inadmissible also on the ground that all evidence relating to that conspiracy has no relevance to
28   the claims against Cypress.  *See* Point I, *supra*.

-11-

1   (S.D.N.Y. 1985) (court must determine admissibility of codefendant's statements as if

2   codefendants were being tried separately); *In re Leonetti*, 28 B.R. 1003, 1009 (E.D. Pa. 1983)

3   ("the admission of one party to an action is not binding upon a co-defendant").

4          The only circumstances in which an admission of one party may be introduced against

5   another party is if the admission falls within another hearsay exception.  *See* 8A Charles A.

6   Wright, et al., Federal Practice and Procedure § 2180, at 340 (2006).  But no other exception

7   applies here.  Plaintiffs cannot avail themselves of Rule 801(d)(2)(B) (statement in which a party

8   manifests adoption or belief in truth) because Cypress has done nothing to manifest an adoption

9   or belief in the truth of the matters set forth in any of the codefendants' Discovery Responses.

10  They cannot use Rule 801(d)(2)(E) (statement of a coconspirator during the course of and in

11  furtherance of the conspiracy) because the Responses were provided in litigation, long after the

12  alleged conspiracy ended.  Rule 804(b)(3) does not apply, as corporations cannot be

13  "unavailable," and the Responses contain no statement that "so far tend[s] to subject the

14  declarant to civil or criminal liability."  *See generally Williamson v. United States*, 512 U.S. 594,

15  599 (1994) (rule applies to statements that are self-inculpatory).

16         Plaintiffs may seek refuge in Rule 807, the "residual" hearsay exception, but the Ninth

17  Circuit has made clear that the rule is "to be used rarely and in exceptional circumstances."

18  *Fong v. American Airlines, Inc.*, 626 F.2d 759, 763 (9th Cir. 1980); *accord United States v.*

19  *Valdez-Soto*, 31 F.3d 1467, 1477 (9th Cir. 1994).  To be admissible under Rule 807, the evidence

20  must be more probative on the point for which it is offered than any other evidence which the

21  proponent can procure through reasonable efforts.  The Discovery Responses come nowhere

22  close to meeting this requirement.  Many of the settling codefendant Responses simply provide

23  basic information about the companies' SRAM businesses — evidence that Plaintiffs did obtain,

24  or could have obtained, from other sources.  *See United States v. Carreno*, 363 F.3d 883, 889

25  (9th Cir. 2006) (evidence not admissible under Rule 807 if it is cumulative of other evidence).

26  As for the Responses, such as Samsung's, that identify meetings and communications among

27  SRAM producers, Plaintiffs deposed many of the individuals whose activities were described

28

1   (such as David Bagby, John Bugee, Oomer Serang, H.K. Jeong, J.B. Ra, and O.S. Kwon), and

2   had the opportunity to depose others during the discovery period.  *See id.*[4]  Plaintiffs are not

3   without the means to prove the matters contained in the Discovery Responses, and to the extent

4   they are, it is a problem of their own making.

5           **B.      The Settling CoDefendants' Responses Should Be Excluded, And The Court**

6                   **Should Issue A Limiting Instruction As To Samsung's Responses**

7           The foregoing analysis leads to the conclusion that the settling codefendants' Discovery

8   Responses are not admissible for any purpose against either Cypress or Samsung, and thus

9   should be excluded from the trial altogether.

10          Samsung's Discovery Responses may be admissible *against Samsung* as admissions of a

11  party-opponent but, for the reasons stated above, they are not admissible against Cypress.

12  Cypress is entitled to a limiting instruction to ensure that the jury understands the limited

13  purpose for which the Samsung Discovery Responses may be admitted.  *See*, *e.g.*, *Sauza-*

14  *Martinez*, 217 F.3d at 761 (limiting instruction needed to ensure that one party's admissions were

15  not used against another). [5]

16  **III.    MOTION TO PRECLUDE SAMSUNG FROM SUBMITTING QUESTION 5 ON**

17          **ITS PROPOSED VERDICT FORM AND ARGUING THE CONTENTS TO THE**

18          **JURY**

19  _____

20  [4] This readily distinguishes the instant case from *In re EPDM Antitrust Litigation*, 681 F. Supp.
    2d 141 (D. Conn. 2009), where the court admitted one party's interrogatory answers against a co-

21  party.  There, however, the answering party's witnesses had invoked the Fifth Amendment
    privilege, leaving the plaintiffs with no other evidence on the subjects discussed in the answers.

22  *Id*. at 151.  Moreover, the fact that Samsung is a leniency applicant under the Antitrust Criminal
    Penalty Enhancement and Reform Act ("ACPERA"), and seeks limited civil liability upon a

23  post-trial showing of satisfactory cooperation with Plaintiffs, means that the Responses do not
    satisfy Rule 807's requirement that the evidence have "circumstantial guarantees of

24  trustworthiness."  Even as Samsung is defending the case on liability and damages, it in effect is
    also functioning as a cooperating witness that may be motivated by a desire to assist Plaintiffs for

25  its own ends.  *Cf. United States v. Bernal-Obesom*, 989 F. 2d 331, 332 (9th Cir. 1993) ("criminal
    informants are cut from untrustworthy cloth and must be managed and carefully watched by the

26  government and the courts to prevent them from falsely accusing the innocent, from
    manufacturing evidence against those under suspicion of crime, and from lying under oath in the

27  courtroom") (internal quotation omitted).
    [5] As explained in Cypress's Trial Brief, admission of Samsung's answers is another basis for

28  severance.

1   Samsung asserts in its trial brief that, as the recipient of amnesty in connection with the

2   U.S. Department of Justice's now-closed investigation of SRAM, the Antitrust Criminal Penalty

3   Enhancement and Reform Act (ACPERA) will entitle Samsung to reduced liability in the event

4   there is a judgment against it.  Specifically, Samsung asserts that, if it is found to have provided

5   "satisfactory cooperation" under ACPERA, it can be liable only for damages attributable to its

6   own sales (as opposed to the sales of all parties found to be in the conspiracy, as would be the

7   ordinary rule under joint and several liability), and that such damages may not be trebled.

8   Samsung claims that this has two implications: First, it seeks a special verdict form that directs

9   the jury to separately calculate the total direct purchaser class damages (if any) attributable to the

10  entire conspiracy and the portion of damages attributable to Samsung's own sales.  Second, it

11  alerts the Court that if the jury finds liability and damages, the Court must conduct a post-trial

12  hearing at which it must assess the level of Samsung's cooperation in order to determine whether

13  Samsung is eligible for the damages reductions provided by ACPERA.

14  At the outset, there is a substantial question whether Samsung can possibly obtain

15  "cooperator" status under ACPERA after contesting liability at trial and offering evidence

16  denying the existence of a conspiracy.  But putting aside that threshold legal question,

17  Samsung's request for special consideration before the jury — in the form of a special verdict

18  form that asks the jury to calculate damages attributable only to Samsung's sales — is not legally

19  required and would severely prejudice Cypress.

20  Samsung asserts that its special verdict form is compelled by the Seventh Amendment

21  right to a jury trial.  But there is considerable doubt whether the Seventh Amendment requires

22  that the jury reach a verdict on the damages attributable to Samsung in order for the Court to

23  have the power to reduce Samsung's liability to single damages under ACPERA.  The statute

24  merely provides a basis for the Court to eliminate joint and several liability for a cooperating

25  party, following a jury verdict awarding damages, if the Court determines after trial that certain

26  eligibility requirements are satisfied.[6]  So long as (1) the jury verdict identifies which parties

---

[6] As Samsung argues, the Court makes the determination of satisfactory cooperation after the
jury determines liability and damages.  *Accord In re TFT-LCD Antitrust Litig.*, 618 F. Supp. 2d

(cont'd)

1    were in the conspiracy, and (2) there is evidence of each participating member's sales, the Court

2    can simply break out the damages attributable to Samsung's sales alone.  A reduction to single

3    damages on that basis would function like a remittitur, which permits a court to reduce a damage

4    award based upon legal and factual deficiencies in the case.[7]  In addition, ACPERA also may be

5    similar to a court's reduction in a punitive damages award in response to a constitutional

6    challenge that the jury award exceeded due process limitations.   In those circumstances, courts

7    routinely modify the damages award based on factual and legal determinations required under

8    the Due Process Clause.  *See*, *e.g.*, *Cortez v. Trans Union LLC*, 617 F.3d 688, 717 (3d Cir. 2010)

9    (where "a court must reduce a damages award to avoid a denial of due process[,] . . . the award is

10   reduced as a matter of law and there is no interference with the Seventh Amendment right to

11   have a jury make findings of fact").  Accordingly, it may be the case that in the event of a

12   damages award by a jury, the Court may properly determine Samsung's eligibility for limited

13   damages under ACPERA and then, if it finds Samsung satisfies ACPERA's requirements, order

14   a reduction of the damages award imposed by the jury based on submissions reflecting

15   Samsung's total SRAM sales figures for the alleged conspiracy period.

16          But even if Samsung is entitled to a jury determination of ACPERA-limited damages, its

17   proposed special verdict form should be rejected because it would unduly and severely prejudice

18   Cypress in a joint trial.  In essence, Samsung wishes to inform the jury through a special verdict

19   form that, if it considers damages, it must separately consider only those damages attributable to

20   Samsung's sales, while leaving the jury to consider the sales of *all conspirators* when

21   determining whether it should award damages as to Cypress.  This form of verdict — and any

22   argument Samsung might make to the jury to alert them to it — would send a clear signal to the

23   ─────────────────────
     1194, 1196 (N.D. Cal. 2009) ("the language of ACPERA suggests that the Court's assessment of
24   an applicant's cooperation occurs at the time of imposing judgment or otherwise determining
     liability and damages").

25   [7] The ability of the Court to identify the damages attributable to Samsung, so that the reduction
     of joint and several liability is essentially a mechanical exercise, makes this situation somewhat
26   different from a remittitur, and avoids the Seventh Amendment issues associated with that
     procedure.  *See generally Hetzel v. Prince William County*, 523 U.S. 208, 211 (1998) (*per
27   curiam*) (discussing procedure for ensuring that remittitur does not violate Seventh Amendment
     jury trial right).

28

1   jury that Samsung occupies some privileged status as compared to Cypress.  Confronted with the

2   unmistakable message from the special verdict form that Samsung is responsible for paying

3   damages only for its own sales affected by the alleged conspiracy, while Cypress must pay

4   damages for the sales of itself and all other alleged coconspirators (other than Samsung), the jury

5   would be prone to incorrectly and unfairly conclude that Cypress is more culpable than

6   Samsung.  The likelihood of this misimpression is particularly high if the Court were to grant

7   Samsung's motion to exclude all evidence related to Samsung's status as an amnesty applicant

8   and the efforts it has undertaken to limit its exposure to damages pursuant to ACPERA.[8]

9   Moreover, Samsung's verdict form would create a risk of prejudice to Cypress even *before*

10   Samsung knows whether it will qualify under ACPERA for reduced damages.

11        In the event the Court agrees with Samsung that a jury determination of the damages

12   attributable to Samsung alone is required, there are several options.  One possible remedy is to

13   have the jury determine damages attributable to all alleged conspirators, then have the Court

14   make the ACPERA determination, and then, if the Court finds Samsung eligible for reduced

15   damages, have the jury make a separate determination of the damages attributable only to

16   Samsung.  A second possible remedy is to have the special verdict form ask the jury to separately

17   identify the damages allegedly attributable to Cypress as well, as a means of balancing the

18   presentation and not conveying any unintended message that Cypress is some way more culpable

19   or blameworthy.

20        If the Court were to deem either of these unworkable or inadvisable, the only alternative

21   remedy is severance of the claims against Samsung and Cypress, or the use of separate juries to

---

[8] Cypress anticipates that there may be circumstances in which it would be essential to Cypress's defense to introduce evidence of Samsung's cooperation with Plaintiffs, particularly during cross-examination of Samsung witnesses.  *See, e.g.*, *Giglio v. United States*, 405 U.S. 150, 154-55 (1972) (promise of non-prosecution in exchange for cooperation was "relevant to [witness's] credibility and the jury was entitled to know of it"); *United States v. Schonenberg*, 396 F.3d 1036, 1043 (9th Cir. 2005) ("Because a witness who is a party to a forward-looking cooperation agreement, with truthfulness to be determined by the government, has a motivation to satisfy the government, the defendant is entitled through cross examination to prove to the jury that the witness has this incentive and that there may be reason to question the witness' credibility."). Cypress will address this issue in greater detail in response to Samsung's anticipated motion *in limine* regarding its status as an amnesty applicant.

decide the claims against Samsung and Cypress.  Cypress has argued in its Trial Brief that, if the Court were to allow evidence of the DRAM conspiracy to come in against Samsung, the prejudicial spillover effect against Cypress would be so great that Cypress would be entitled to a severance under Fed. R. Civ. P. 21 or a separate jury as outlined in *In re High Fructose Corn Syrup Antitrust Litigation*, 361 F.3d 439 (7th Cir. 2004).  Plaintiffs are entitled to present their case, but neither they nor Samsung may *unfairly* convey any messages about Cypress that are not based solely on relevant evidence.

Whatever laudable goals ACPERA sought to advance, it cannot have been intended to operate as Samsung would have it here — to allow the amnesty applicant to fight liability to the end, and then obtain a special verdict form that suggests (without explanation) that it occupies a privileged status vis-à-vis another defendant who has just as vigorously defended the case, even before the Court makes any determination of the cooperation that is a prerequisite for reduced damages.  Here, moreover, it would be especially ironic if Samsung could obtain this special treatment when it was Samsung that pled guilty to a DRAM price-fixing conspiracy and then, in an effort to limit its criminal exposure in DRAM, triggered an SRAM investigation which the DOJ ultimately closed.   For these reasons, the Court should adopt one of the three remedies outlined above.

## IV.   MOTION TO EXCLUDE TESTIMONY AND ARGUMENT THAT PLAINTIFFS' DAMAGES EXPERTS' ANALYSES SUPPORT AN INFERENCE OF CONSPIRACY

In their Consolidated Opposition to Cypress' Motion for Summary Judgment (filed Aug. 24, 2010), Plaintiffs hinted that one piece of evidence that they may rely upon to show the existence of a conspiracy was the analyses of their damages experts (Drs. Armando Levy and Mark Dwyer) purportedly showing that all sellers' SRAM prices were systematically inflated above a competitive level during the damages periods.[9]  Plaintiffs asserted that the Levy and

---

[9] The DP and IP Plaintiffs have different damages periods.  The DPs claim the period is October 1999 to December 2001, while the IPs claim the period is January 1998 to December 2001 for SRAM, and January 2003 to December 2005 for PSRAM.

Dwyer reports are "empirical evidence [that] shows that SRAM prices were artificially high during the class period" (*id.* at 21) and they cited this among other evidence that "raises a strong inference of Cypress' participation in the conspiracy" (*id.* at 20).  In their Trial Brief, Plaintiffs make this claim explicitly:  they assert that "the existence of a conspiracy is also supported by evidence that . . . SRAM prices were inflated."  *Id.* at 2.  In other words, Plaintiffs want to ask the jury to make the threshold determination under the Sherman Act and analogous state antitrust and consumer protection laws — that Cypress in fact was part of a conspiracy to fix prices — in part on the basis of the expert testimony of Drs. Levy and Dwyer that SRAM price levels were higher than predicted by market forces.

This testimony is directly contrary to the positions that *all of Plaintiffs' experts took* in their expert reports and depositions.

- ●    DP expert Dr. Levy made it clear that no part of his work involved determining the existence of a conspiracy.  He noted in his report that Plaintiffs had alleged a conspiracy, and stated that he "identified any impact *of the conspiracy*" by conducting an empirical analysis of prices during and outside the alleged conspiracy period.  Levy Report at 4 (emphasis added).  At deposition, Dr. Levy could not have been more clear: "Q. Do you have an opinion in this case as to whether there was a conspiracy among SRAM manufacturers?  A. It's not part of my assignment to have an opinion about that."  Levy Tr. 46:2-8.  Indeed, Dr. Levy stated, "I *assume* that, as alleged in the complaint, that there was a price fixing conspiracy."  *Id.* at 46:23-24 (emphasis added).

- ●    IP expert Dr. Michael Harris nowhere states that the results of the empirical work showed the existence of the conspiracy, and when asked at deposition about regression models, he stated, "I don't think that those sorts of empirical models speak to the existence of conspiracies."  Harris Tr. 176:19-21.

- ●    IP expert Dr. Dwyer stated that his first task was to "measure the size and significance of overcharges to direct SRAM purchasers, arising from the alleged conspiracy. . . ."  Dwyer Report at 1.  At deposition, when asked "Did your assignment in

1    any way include determining whether conspiracy existed in this case?" Dr. Dwyer replied

2    "No, it did not."  Dwyer Tr. 15:12-14.  Later, he explained that "the  starting point for my

3    analysis was to assume the conspiracy. . . ."  *Id*. at 88:20-21.

4         Based on the above, it is clear that the two experts who actually conducted the empirical

5    analysis — Drs. Levy and Dwyer — expressed no opinion that their findings of price inflation

6    showed the existence of a conspiracy, but instead purported only to measure the effects of one if

7    it existed.  Nor did the liability experts, Drs. Noll and Harris, opine anywhere in their reports that

8    the work of their companion experts showed a conspiracy.  These assertions about the relevance

9    of the regressions to Plaintiffs' case are extremely important, as they delineate for Cypress what

10   kind of evidence they can and cannot expect to face on the central issue of the existence of a

11   conspiracy.  A claim that a conspiracy can be shown by evidence of systematic price inflation is

12   fundamentally different from the other proof Plaintiffs offer, such as evidence of information

13   exchanges and expert opinion about the import of those exchanges.  That Plaintiffs' experts did

14   not intend to opine that the regressions showed a conspiracy was critical to Cypress' trial

15   preparation.

16        In light of these expert disclosures, Plaintiffs cannot now offer the testimony of any of

17   their experts for the proposition that the existence of an SRAM conspiracy "is . . . supported by

18   economic evidence that . . . SRAM prices were inflated."  Pl. Trial Brief at 2.  Rule

19   26(a)(2)(B)(i) requires that expert witnesses produce "a complete statement of all opinions the

20   witness will express and the basis and reasons for them."  There is a duty of supplementation

21   under Rule 26(e)(1)(A) if a party "learns that in some material respect the disclosure or response

22   is incomplete or incorrect, and if the additional or corrective information has not otherwise been

23   made known" to other parties.  A party that does not properly disclose part of an expert's opinion

24   testimony under Rule 26(a) is prohibited from "us[ing] that information or witness to supply

25   evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is

26   harmless."  Fed. R. Civ. P. 37(c)(1).  As the Ninth Circuit has put it, "Rule 37(c)(1) gives teeth to

27   these requirements by forbidding the use at trial of any information required to be disclosed by

28

Rule 26(a) that is not properly disclosed." *Yeti By Molly, Ltd. v. Deckers Outdoor*, 259 F. 3d

1101, 1106 (9th Cir. 2001); *see also In re Oracle Corp. Secs. Litig.*, 2009 U.S. Dist. LEXIS

50995, at *84 (N.D. Cal. June 16, 2009) ("The expert report . . . defines the metes and bounds of

an expert's trial testimony.").  Plaintiffs did not reveal that any of their experts intended to testify

that systematic price inflation, as shown through the regression analyses of Drs. Levy and

Dwyer, was an indication that SRAM manufacturers had entered into a conspiracy.  All that the

experts said in their reports was that the empirical analyses *assumed* a conspiracy, and served the

purpose of showing the conspiracy's alleged effects.  The plain text of Rule 37(c) requires that

any contrary opinions by Plaintiffs' experts, as well as argument of counsel, be excluded.

Plaintiffs could not carry their burden of showing that their failure to disclose is either

justified or harmless.  *See Yeti by Molly*, 259 F.3d at 1107 ("Implicit in Rule 37(c)(1) is that the

burden is on the party facing sanctions to prove harmlessness.").  Plaintiffs have known from the

day this lawsuit was filed that the central element of their claim is the existence of a conspiracy

to fix prices.  Their liability experts, Drs. Noll and Harris, wrote lengthy and detailed reports

addressed to that very issue, and their damages experts clearly had thought through the

relationship between their empirical work and the showing of conspiracy when they explained

that they had assumed the existence of a conspiracy.  There is no conceivable justification for

failing to disclose an opinion that price inflation as shown through the regression demonstrates

the existence of a conspiracy.  Nor is it harmless: having received Plaintiffs' expert reports,

Cypress proceeded to depose those experts without any expectation that they would offer the

regressions as evidence of the conspiracy.  "The intent of [Rule 26] is to ensure that deposition

testimony can proceed with parties already armed with the expert's report, so as to be able to

evaluate the opinions to be offered." *Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003)

(excluding supplemental expert report that contained new opinions).  Based on the voluminous

expert reports and reply reports, Cypress has understood for many months now that liability

experts base their opinions on evidence *other than* the alleged price inflation, while the damages

experts assume a conspiracy and then attempt to show that prices in fact were inflated.  For

1    Plaintiffs now to be allowed to assert that the regression results show the existence of a

2    conspiracy would unfairly prejudice Cypress by changing a central piece of Plaintiffs' proof.

3    **V.    MOTION TO EXCLUDE EVIDENCE OF CUSTOMER-VENDOR**

4    **RELATIONSHIPS**

5          Plaintiffs are seeking to introduce as evidence of collusion among SRAM manufacturers

6    three documents that in fact reflect meetings between suppliers and *purchasers* of SRAM—not

7    meetings between suppliers.  These documents are misleading at first glance, because some of

8    the companies purchasing SRAM also have divisions or affiliates that manufacture and sell

9    SRAM.  However, the documents and corresponding deposition testimony make clear that the

10   meetings in question were simply customer–vendor exchanges pertaining to the procurement of

11   SRAM.  Because the probative value of these exchanges is minimal at best, and the potential to

12   confuse and mislead the jury is substantial, the evidence should be excluded under Fed. R. Evid.

13   402 and 403.

14         Plaintiffs' Exhibit No. 214 pertains to Cypress's participation in a meeting at Samsung in

15   Korea.  Plaintiffs questioned Cypress's Pashu Gopalan in his deposition about the purpose of the

16   meeting.  He explained:  "It was a trip to Korea to visit Samsung as well as other OEMs that

17   made mobile handsets, including LG and Pantech.  So the three Korean largest mobile

18   companies are LG, Samsung, and Pantech.  So this was the consortium visiting potential

19   customers and pitching to them about CellularRAM."  Gopalan Dep. 89:1-10.  Similarly, Exhibit

20   No. 215 references a cancelled "customer visit at MITSUBISHI" by Cypress's Tony Alvarez

21   ("ARA"), and then goes on to discuss Mitsubishi's  potential participation in the Cellular RAM

22   consortium—an activity that Plaintiffs' own experts have recognized as procompetitive.  *See,*

23   *e.g.*, Noll Report 9; Harris Report 35 ¶ 92.

24         Plaintiffs' Exhibits 647 and 648 are a translated NEC document referencing monthly

25   "meetings on price-matching with other manufacturers," including Cypress and Samsung.[10]

26   NEC's Makoto Yamanaka testified that these meetings were in fact internal meetings between

27   _____

28   [10] Cypress reserves the right to contest the accuracy of this translation.

1    NEC Corporation's material resources division—the "department that purchases components for

2    NEC set products, such as cell phones or communication devices"—and NEC Electronics' own

3    semiconductor division, which was responsible for "sales production and development of

4    semiconductors."  The semiconductor division was "spun off" from NEC Corporation, and

5    "would then sell to the electronic equipment division of NEC."  The relationship between these

6    divisions "was that of a purchaser to a vendor."  Once NEC's semiconductor division was spun

7    off, that division was added to the list of vendors with which NEC's material resources division

8    held regular procurement meetings.  The "information exchanges" referenced were *internal*

9    exchanges between NEC's purchasing and sales components.  Mr. Yamanaka characterized the

10   suggestion that multiple SRAM vendors would participate together in these meetings as

11   "unthinkable," because "it's common sense that a purchaser would meet with the vendors

12   separately since they want to negotiate the price."  He further testified that NEC's material

13   resources division did not share information obtained from other vendors with anyone at NEC

14   Electronics.  Yamanaka Dep. 199:8 – 207:9.

15        Given that purported information exchanges among competing SRAM manufacturers are

16   the crux of Plaintiffs' case, the potential for these documents to be misconstrued as exchanges

17   among manufacturers—rather than between consumers and vendors—presents a serious risk of

18   confusing and misleading the jury.  Accordingly, Cypress respectfully requests that the Court

19   exclude evidence of these and other customer–vendor exchanges, including but not limited to

20   Plaintiffs' Exhibit Nos. 214, 215, 647, and 648.

21

22   Dated:  November 30, 2010                              Respectfully submitted,

23

24                                                 By:  _____/s/_____

25                                                      Robert E. Bloch
                                                        Gary A. Winters
26                                                      Aimee Latimer-Zayets
                                                        MAYER BROWN LLP
27                                                      1999 K Street, NW
                                                        Washington, DC 20006-1001
28                                                      Telephone:  (202) 263-3000

Facsimile:   (202) 263-3300

Lee H. Rubin (State Bar #141331)
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306-2000
Telephone:   (650) 331-2000
Facsimile:    (650) 331-2060

*Attorneys for Defendant*
*Cypress Semiconductor Corporation*