SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
GARY L. HALLING, Cal. Bar No. 66087
JAMES L. McGINNIS, Cal. Bar No. 95788
MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
Telephone:    415-434-9100
Facsimile:    415-434-3947
E-mail:     ghalling@sheppardmullin.com
         jmcginnis@sheppardmullin.com
         mscarborough@sheppardmullin.com

Attorneys for Defendants
SAMSUNG ELECTRONICS CO., LTD. and
SAMSUNG SEMICONDUCTOR, INC.

**[Additional Parties and Counsel Listed on Signature Pages]**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION | Case No. 4:07-md-1819 CW |
| | MDL No. 1819 |
| This Document Relates to: | **[proposed] JOINT JURY INSTRUCTIONS** |
| ALL ACTIONS | |

1

## TABLE OF CONTENTS

2

Page

3

PRELIMINARY STATEMENT ................................................................................................. 1

4

PRE-TRIAL INSTRUCTIONS .............................................................................................. 1

5

No. 1 – DUTY OF JURY ............................................................................................... 2

6

No. 2 – [DPPs and IPPs' PROPOSAL NO. __] CLAIMS AND DEFENSES *[DISPUTED]* ........... 3

7

No. 3 – [DEFENDANTS' PROPOSAL NO. __]  CLAIMS AND DEFENSES
        *[DISPUTED]* ................................................................................................. 5

8

No. 4 – [DPPs and IPPs' PROPOSAL NO. __]  BACKGROUND *[DISPUTED]* ........................ 10

9

10

No. 5 – [DPPs' PROPOSAL NO. __]  PARTIES AND CLASS ACTION PROCEDURE
        *[DISPUTED]* ................................................................................................. 12

11

No. 6 – [IPPs' PROPOSAL NO. __]  PARTIES AND CLASS ACTION PROCEDURE
        *[DISPUTED]* ................................................................................................. 18

12

13

No. 7 – [IPPs' PROPOSAL NO. __]  GENERAL INSTRUCTION – IP PLAINTIFFS'
        CLAIMS *[DISPUTED]* .................................................................................... 24

14

No. 8 – [DPPs and IPPs' PROPOSAL NO. __]  BURDEN OF PROOF –
        PREPONDERANCE OF THE EVIDENCE  *[DISPUTED]* ............................................ 26

15

16

No. 9 – [DEFENDANTS' PROPOSAL NO. __] BURDEN OF PROOF:
        PREPONDERANCE OF THE EVIDENCE *[DISPUTED]* ............................................. 28

17

18

No. 10 – [DPPs and IPPs' PROPOSAL NO. __]  CIVIL AND CRIMINAL CASES
        DISTINGUISHED *[DISPUTED]* ....................................................................... 32

19

20

No. 11 – [DPPs and IPPs' PROPOSAL NO. __]  TWO OR MORE DEFENDANTS –
        DIFFERENT LEGAL RIGHTS *[DISPUTED]* ......................................................... 34

21

22

No. 12 – [DEFENDANTS' PROPOSAL NO. __] TWO OR MORE PARTIES –
        DIFFERENT LEGAL RIGHTS *[DISPUTED]* ......................................................... 36

23

No. 13 – [DPPs and IPPs' PROPOSAL NO. __]  OTHER ALLEGED PARTICIPANTS IN
        CONSPIRACY *[DISPUTED]* ............................................................................ 38

24

25

No. 14 – WHAT IS EVIDENCE ..................................................................................... 40

26

No. 15 – WHAT IS NOT EVIDENCE .............................................................................. 41

27

No. 16 – EVIDENCE FOR A LIMITED PURPOSE ............................................................. 42

28

[proposed] JURY INSTRUCTIONS

No. 17 – [DPPs and IPPs' PROPOSAL NO. __]  DIRECT AND CIRCUMSTANTIAL
    EVIDENCE *[DISPUTED]* ............................................................. 43

No. 18 – [DEFENDANTS' PROPOSAL NO. __] DIRECT AND CIRCUMSTANTIAL
    EVIDENCE *[DISPUTED]* ............................................................. 45

No. 19 – [DPPs and IPPs' PROPOSAL NO. __]  DEFINITION OF CONSPIRACY
    *[DISPUTED]* ........................................................................... 48

No. 20 – [DPPs' PROPOSAL NO. __]  INJURY AND DAMAGES (NOTE:
    INSTRUCTION FOR PHASE 2/DAMAGES) *[DISPUTED]* ........................... 53

No. 21 – [DPPs and IPPs' PROPOSAL NO. __]  ROLE OF JURY & JUDGE
    *[DISPUTED]* ........................................................................... 57

No. 22 – RULING ON OBJECTIONS ................................................... 59

No. 23 – CREDIBILITY OF WITNESSES ............................................. 60

No. 24 – [DPPs and IPPs' PROPOSAL NO. __]  IMPEACHMENT EVIDENCE –
    WITNESS *[DISPUTED]* ............................................................. 61

No. 25 – Intentionally left Blank ................................................... 63

No. 26 – CONDUCT OF THE JURY .................................................... 63

No. 27 – NO TRANSCRIPT AVAILABLE TO JURY .................................. 65

No. 28 – TAKING NOTES ............................................................... 66

No. 29 – JURY TO BE GUIDED BY OFFICIAL ENGLISH
    TRANSLATION/INTERPRETATION ................................................. 67

No. 30 – USE OF INTERPRETERS IN COURT ...................................... 68

No. 31 – [DPPs and IPPs' PROPOSAL NO. __]  BENCH CONFERENCES AND
    RECESSES  *[DISPUTED]* ............................................................ 69

No. 32 – OUTLINE OF TRIAL .......................................................... 71

INSTRUCTIONS DURING TRIAL ...................................................... 72

No. 33 – [DPPs and IPPs' PROPOSAL NO. __]  STIPULATED TESTIMONY
    *[DISPUTED]* ........................................................................... 73

No. 34 – [DPPs and IPPs' PROPOSAL NO. __]  STIPULATIONS OF FACT
    *[DISPUTED]* ........................................................................... 75

No. 35 – [DPPs and IPPs' PROPOSAL NO. __]  JUDICIAL NOTICE *[DISPUTED]* ........ 77

No. 36 – DEPOSITION IN LIEU OF LIVE TESTIMONY ........................... 79

No. 37 – FOREIGN LANGUAGE TESTIMONY ........................................................ 80

No. 38 – [DPPs and IPPs' PROPOSAL NO. __]  USE OF INTERROGATORIES OF A
        PARTY *[DISPUTED]*........................................................ 81

No. 39 – [DEFENDANTS' PROPOSAL NO. __] USE OF INTERROGATORIES OF A
        PARTY *[DISPUTED]*........................................................ 83

No. 40 – [DPPs and IPPs' PROPOSAL NO. __]  EXPERT OPINION *[DISPUTED]*.................. 85

No. 41 – CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE.............................. 87

No. 42 – [DPPs and IPPs' PROPOSAL NO. __]  CHARTS AND SUMMARIES IN
        EVIDENCE *[DISPUTED]*........................................................ 88

POST-TRIAL INSTRUCTIONS ........................................................ 90

No. 43 – Intentionally left Blank........................................................ 91

No. 44 – DUTY OF JURY ........................................................ 91

No. 45 – [DPPs' PROPOSAL NO. __]  GENERAL INTRODUCTION - CLASS ACTION
        *[DISPUTED]*........................................................ 92

No. 46 – [DPPs' PROPOSAL NO. __]  GENERAL INTRODUCTION – PARTIES
        *[DISPUTED]*........................................................ 95

No. 47 – [IPPs' PROPOSAL NO. __]  GENERAL INTRODUCTION – PARTIES
        *[DISPUTED]*........................................................ 98

No. 48 – [DPPs and IPPs' PROPOSAL NO. __]  GENERAL INTRODUCTION - OTHER
        ALLEGED PARTICIPANTS IN CONSPIRACY *[DISPUTED]* ................................... 101

No. 49 – [DEFENDANTS' PROPOSAL NO. __] TWO OR MORE PARTIES:
        DIFFERENT LEGAL RIGHTS *[DISPUTED]*................................... 103

No. 50 – GENERAL INTRODUCTION - CORPORATE EQUALITY ..................................... 105

No. 51 – Intentionally left Blank........................................................ 106

No. 52 – [DPPs and IPPs' PROPOSAL NO. __]  BURDEN OF PROOF - CRIMINAL
        CASES DISTINGUISHED *[DISPUTED]*........................................................ 106

No. 53 – [DPPs and IPPs' PROPOSAL NO. __]  BURDEN OF PROOF -
        PREPONDERANCE OF THE EVIDENCE *[DISPUTED]*........................................... 108

No. 54 – [DEFENDANTS' PROPOSAL NO. __] BURDEN OF PROOF:
        PREPONDERANCE OF THE EVIDENCE *[DISPUTED]*........................................... 112

No. 55 – Intentionally left Blank........................................................ 116

No. 56 – Intentionally left Blank ................................................................. 116

No. 57 – WHAT IS AND IS NOT EVIDENCE ........................................... 116

No. 58 – [DPPs and IPPs' PROPOSAL NO. __]  GENERAL EVIDENCE INSTRUCTION – INTERROGATORIES/REQUESTS FOR ADMISSION *[DISPUTED]* ...................... 117

No. 59 – [DPPs and IPPs' PROPOSAL NO. __]  GENERAL EVIDENCE INSTRUCTION - ROLE OF THE COURT *[DISPUTED]* ................................................................. 119

No. 60 – [DEFENDANTS' PROPOSAL NO. __] RULING ON OBJECTIONS *[DISPUTED]* ................................................................................................. 121

No. 61 – Intentionally left Blank ................................................................. 123

No. 62 – CHARTS AND SUMMARIES ..................................................... 123

No. 63 – [DPPs and IPPs' PROPOSAL NO. __]  GENERAL EVIDENCE INSTRUCTION – DIRECT AND CIRCUMSTANTIAL *[DISPUTED]* .................................... 124

No. 64 – [DEFENDANTS' PROPOSAL NO. __] DIRECT AND CIRCUMSTANTIAL EVIDENCE *[DISPUTED]* ............................................................................. 127

No. 65 – [DPPs and IPPs' PROPOSAL NO. __]  GENERAL EVIDENCE INSTRUCTION — DIRECT AND CIRCUMSTANTIAL EVIDENCE (EXAMPLES; IN THIS CASE) *[DISPUTED]* ...................................................................................... 131

No. 66 – [DPPs and IPPs' PROPOSAL NO. __]  GENERAL EVIDENCE INSTRUCTION – INFERENCES *[DISPUTED]* ................................................................. 137

No. 67 – [DEFENDANTS' PROPOSAL NO. __] PARTIES NOT BEFORE THE COURT *[DISPUTED]* ................................................................................................. 139

No. 68 – [DPPs and IPPs' PROPOSAL NO. __]  WEIGHING THE EVIDENCE - CREDIBILITY OF WITNESSES *[DISPUTED]* ........................................... 141

No. 69 – [DEFENDANTS' PROPOSAL NO. __] BIAS OF WITNESSES *[DISPUTED]* .......... 144

No. 70 – [DPPs and IPPs' PROPOSAL NO. __]  WEIGHING THE EVIDENCE - NUMBER OF WITNESSES OR EXHIBITS NOT DISPOSITIVE *[DISPUTED]* ......... 146

No. 71 – [DPPs and IPPs' PROPOSAL NO. __]  WEIGHING THE EVIDENCE – DEPOSITION IN LIEU OF LIVE TESTIMONY *[DISPUTED]* ................................... 148

No. 72 – [DPPs and IPPs' PROPOSAL NO. __]  WEIGHING THE EVIDENCE - EXPERT WITNESSES *[DISPUTED]* ............................................................. 150

No. 73 – [DEFENDANTS' PROPOSAL NO. __] EXPERT OPINION *[DISPUTED]* ............... 154

No. 74 – [DPPs and IPPs' PROPOSAL NO. __]  WEIGHING THE EVIDENCE –

WITNESSES AND DOCUMENTS, IMPEACHMENT *[DISPUTED]* ........................... 157

No. 75 – [DPPs and IPPs' PROPOSAL NO. __]  WEIGHING THE EVIDENCE -
EFFECT OF PRIOR SWORN STATEMENTS *[DISPUTED]* ....................................... 160

No. 76 – [DPPs and IPPs' PROPOSAL NO. __]  GENERAL INTRODUCTION –
CLAIMS *[DISPUTED]* ................................................................................................. 163

No. 77 – [DPPs and IPPs' PROPOSAL NO. __]  CORPORATIONS – AGENTS,
ACTUAL AND APPARENT AUTHORITY *[DISPUTED]* ........................................... 165

No. 78 – [DPPs and IPPs' PROPOSAL NO. __]  GENERAL EVIDENCE INSTRUCTION
- ALL AVAILABLE WITNESSES OR EVIDENCE NEED NOT BE PRODUCED
*[DISPUTED]* ................................................................................................................. 168

No. 79 – [DEFENDANTS' PROPOSAL NO. __] THE SHERMAN ANTITRUST ACT
*[DISPUTED]* ................................................................................................................. 170

No. 80 – [DPPs' PROPOSAL NO. __]  SHERMAN ACT – PURPOSE *[DISPUTED]* ............. 172

No. 81 – [DPPs' PROPOSAL NO. __]  SHERMAN ACT – SECTION 1 *[DISPUTED]* ........... 175

No. 82 – [DPPs' PROPOSAL NO. __]  SHERMAN ACT – SECTION 1 – ELEMENTS
*[DISPUTED]* ................................................................................................................. 177

No. 83 – [DEFENDANTS' PROPOSAL NO. __] ELEMENTS OF THE OFFENSE
*[DISPUTED]* ................................................................................................................. 180

No. 84 – [DPPs and IPPs' PROPOSAL NO. __]  CONTRACT, COMBINATION OR
CONSPIRACY *[DISPUTED]* ....................................................................................... 183

No. 85 – [DEFENDANTS' PROPOSAL NO. __] FIRST ELEMENT: EXISTENCE OF
CONSPIRACY *[DISPUTED]* ....................................................................................... 190

No. 86 – [DEFENDANTS' PROPOSAL NO. __] FIRST ELEMENT: CONSPIRING
PARTIES *[DISPUTED]* ................................................................................................ 194

No. 87 – [DPPs and IPPs' PROPOSAL NO. __]  CONSPIRACY - ALLOWABLE
INFERENCES *[DISPUTED]* ....................................................................................... 197

No. 88 – [DEFENDANTS' PROPOSAL NO. __] FIRST ELEMENT: PROOF OF
CONSPIRACY BY CIRCUMSTANTIAL EVIDENCE *[DISPUTED]* ......................... 201

No. 89 – [DEFENDANTS' PROPOSAL NO. __] FIRST ELEMENT: CORPORATIONS
*[DISPUTED]* ................................................................................................................. 204

No. 90 – [DPPs and IPPs' PROPOSAL NO. __]  CONSPIRACY – MEMBERSHIP
*[DISPUTED]* ................................................................................................................. 206

No. 91 – [DEFENDANTS' PROPOSAL NO. __] SECOND ELEMENT:

-v-

PARTICIPATION AND INTENT *[DISPUTED]* ........................................................... 211

No. 92 – [DPPs and IPPs' PROPOSAL NO. __]  CONSPIRACY - TIME OF JOINING
        *[DISPUTED]*................................................................................................. 214

No. 93 – [DPPs and IPPs' PROPOSAL NO. __]  DIRECT EXCHANGES OF
        COMPETITIVE INFORMATION *[DISPUTED]* ................................................ 216

No. 94 – [DEFENDANTS' PROPOSAL NO. __] EXCHANGE OF PRICING
        INFORMATION *[DISPUTED]*......................................................................... 219

No. 95 – [DPPs and IPPs' PROPOSAL NO. __]  COLLUSIVE EFFORTS TO RESTRICT
        OR REDUCE OR LIMIT THE SUPPLY OF SRAM *[DISPUTED]* .............................. 222

No. 96 – [DPPs and IPPs' PROPOSAL NO. __]  CONSPIRACY – OPPORTUNITY TO
        CONSPIRE *[DISPUTED]* ............................................................................. 224

No. 97 – [DEFENDANTS' PROPOSAL NO. __] OPPORTUNITY TO CONSPIRE IS
        INSUFFICIENT *[DISPUTED]* ........................................................................ 228

No. 98 – [DPPs and IPPs' PROPOSAL NO. __]  CONSPIRACY – EVIDENCE OF
        PRICING *[DISPUTED]* ................................................................................ 231

No. 99 – [DEFENDANTS' PROPOSAL NO. __] SIMILARITY OF PRICES
        *[DISPUTED]*................................................................................................. 233

No. 100 – [DPPs and IPPs' PROPOSAL NO. __]  HORIZONTAL PRICE FIXING –
        EVIDENCE OF COMPETITION *[DISPUTED]* ................................................ 235

No. 101 – [DPPs and IPPs' PROPOSAL NO. __]  HORIZONTAL PRICE FIXING –
        GOOD INTENT NOT A DEFENSE *[DISPUTED]*....................................... 238

No. 102 – [DPPs and IPPs' PROPOSAL NO. __]  *PER SE* RESTRAINTS *[DISPUTED]* ......... 240

No. 103 – [DPPs' PROPOSAL NO. __]  INTERSTATE COMMERCE *[DISPUTED]* .............. 244

No. 104 – [DEFENDANTS' PROPOSAL NO. __] THIRD ELEMENT: INTERSTATE
        COMMERCE *[DISPUTED]*............................................................................ 246

No. 105 – [DPPs' PROPOSAL NO. __]  INJURY/IMPACT, DAMAGES (NOTE:
        INSTRUCTION FOR PHASE 2/DAMAGES) *[DISPUTED]* ......................... 248

No. 106 – [DEFENDANTS' PROPOSAL NO. __] FOURTH ELEMENT: INJURY AND
        CAUSATION *[DISPUTED]*........................................................................... 252

No. 107 – [DEFENDANTS' PROPOSAL NO. __] FOURTH ELEMENT: INJURY TO
        THE NAMED PLAINTIFF *[DISPUTED]* ..................................................... 257

No. 108 – [DEFENDANTS' PROPOSAL NO. __] FOURTH ELEMENT: CAUSATION
        AND DISAGGREGATION *[DISPUTED]* .................................................... 260

No. 109A – [DPPs & IPPs' PROPOSAL NO. __] DEFENDANTS' AFFIRMATIVE
DEFENSE: STATUTE OF LIMITATIONS *[DISPUTED]* ............................................ 264

No. 109 – [DEFENDANTS' PROPOSAL NO. __] DEFENDANTS' AFFIRMATIVE
DEFENSES: STATUTE OF LIMITATIONS *[DISPUTED]* ........................................... 266

No. 110A – [DPPs and IPPs' PROPOSAL NO. __] FRAUDULENT CONCEALMENT
*[DISPUTED]* ................................................................................................................ 268

No. 110 – [DEFENDANTS' PROPOSAL NO. __] FRAUDULENT CONCEALMENT
*[DISPUTED]* ................................................................................................................ 272

No. 111 – [DEFENDANTS' PROPOSAL NO. __] DAMAGES: EFFECT OF
INSTRUCTION AS TO DAMAGES *[DISPUTED]* ...................................................... 275

No. 112 – [DEFENDANTS' PROPOSAL NO. __] DAMAGES: INTRODUCTION AND
PURPOSE *[DISPUTED]* .............................................................................................. 277

No. 113 – [DPPs and IPPs' PROPOSAL NO. __]  DAMAGES - NO NEED FOR
CERTAINTY (NOTE: INSTRUCTION FOR PHASE 2/DAMAGES)
*[DISPUTED]* ................................................................................................................ 279

No. 114 – [DEFENDANTS' PROPOSAL NO. __] DAMAGES: SPECULATION NOT
PERMITTED *[DISPUTED]* ......................................................................................... 282

No. 115 – [DPPs and IPPs' PROPOSAL NO. __]  DAMAGES - AMOUNT OF
DAMAGES (NOTE: INSTRUCTION FOR PHASE 2/DAMAGES) *[DISPUTED]* ...... 284

No. 116 – [DEFENDANTS' PROPOSAL NO. __] DAMAGES: OVERCHARGE
*[DISPUTED]* ................................................................................................................ 286

No. 117 – [DPPs' PROPOSAL NO. __]  DAMAGES - EXPERT TESTIMONY ON
IMPACT AND DAMAGES (NOTE: INSTRUCTION FOR PHASE
2/DAMAGES) *[DISPUTED]* ...................................................................................... 289

No. 118 – [DEFENDANTS' PROPOSAL NO. __] DAMAGES: EXPERT TESTIMONY
*[DISPUTED]* ................................................................................................................ 292

No. 119 – [DPPs' PROPOSAL NO. __]  DAMAGES - NO PASS-ON
CONSIDERATIONS (NOTE: INSTRUCTION FOR PHASE 2/DAMAGES)
*[DISPUTED]* ................................................................................................................ 294

No. 120 – [DEFENDANTS' PROPOSAL NO. __] DAMAGES: OVERCHARGE
PASSED ON BY DIRECT PURCHASERS *[DISPUTED]* ........................................... 296

No. 121 – [DPPs and IPPs' PROPOSAL NO. __]  DAMAGES - JOINT AND SEVERAL
LIABILITY (NOTE: INSTRUCTION FOR PHASE 2/DAMAGES) *[DISPUTED]* ...... 298

No. 122 – [DEFENDANTS' PROPOSAL NO. __] DAMAGES: TREBLING
*[DISPUTED]* ................................................................................................................ 301

[proposed] JURY INSTRUCTIONS

No. 123 – [IPPs' PROPOSAL NO. __]  GENERAL INSTRUCTION – STATE
          ANTITRUST CLAIMS *[DISPUTED]* ........................................................... 303

No. 124 – [CYPRESS' PROPOSAL NO. __] INDIRECT PURCHASERS:
          INTRODUCTION TO STATE ANTITRUST CLAIMS *[DISPUTED]* ......................... 307

No. 125 – [IPPs' PROPOSAL NO. __]  SHERMAN ACT SECTION ONE *[DISPUTED]* ........ 311

No. 126 – [CYPRESS' PROPOSAL NO. __] INDIRECT PURCHASERS: ANTITRUST
          CLAIMS *[DISPUTED]*.............................................................................. 313

No. 127 – [IPPs' PROPOSAL NO. __]  CONTRACT, COMBINATION OR
          CONSPIRACY –  DEFINITION, EXISTENCE AND EVIDENCE *[DISPUTED]* ........ 317

No. 128 – [CYPRESS' PROPOSAL NO. __] INDIRECT PURCHASER ANTITRUST
          CLAIMS: FIRST AND SECOND ELEMENTS *[DISPUTED]* ...................................... 320

No. 129 – [IPPs' PROPOSAL NO. __]  EFFECT ON COMMERCE *[DISPUTED]* .................. 322

No. 130 – [IPPs' PROPOSAL NO. __]  GENERAL INSTRUCTION – PHASING OF
          TRIAL *[DISPUTED]* ................................................................................. 324

No. 131 – [IPPs' PROPOSAL NO. __]  INJURY/IMPACT, DAMAGES *[DISPUTED]*............ 326

No. 132 – [CYPRESS' PROPOSAL NO. __] INDIRECT PURCHASERS: INJURY AND
          CAUSATION *[DISPUTED]*........................................................................ 329

No. 133 – [CYPRESS' PROPOSAL NO. __] INDIRECT PURCHASERS: DAMAGES
          *[DISPUTED]* ........................................................................................ 334

No. 134 – [CYPRESS' PROPOSAL NO. __] INDIRECT PURCHASERS: DAMAGES:
          OVERCHARGE AND PASS-THROUGH *[DISPUTED]* ............................................ 337

No. 135 – [IPPs' PROPOSAL NO. __]  DAMAGES – EXPERT TESTIMONY ON
          IMPACT AND DAMAGES *[DISPUTED]* ....................................................... 341

No. 136 – [CYPRESS' PROPOSAL NO. __] INDIRECT PURCHASERS: DAMAGES:
          EXPERT TESTIMONY *[DISPUTED]* ........................................................... 344

No. 137 – DUTY TO DELIBERATE ........................................................................ 347

No. 138 – COMMUNICATION WITH COURT ........................................................ 348

No. 139 – [DPPs and IPPs' PROPOSAL NO. __]  SPECIAL VERDICT FORMS
          *[DISPUTED]*.......................................................................................... 349

No. 140 – [DEFENDANTS' PROPOSAL NO. __] RETURN OF VERDICT AND
          VERDICT FORM *[DISPUTED]* ................................................................. 352

MISCELLANEOUS.............................................................................................. 354

No. 141 – [DPPs and IPPs' PROPOSAL NO. ___]  USE OF REQUESTS FOR
          ADMISSION OF A PARTY *[DISPUTED]* ................................................................... 354

W02-WEST:1ESC1\403121977.4
MDL No. 1819

[proposed] JURY INSTRUCTIONS

## PRELIMINARY STATEMENT

All parties hereby submit their proposed jury instructions regarding the antitrust claims and defenses at issue and reserve the right to amend, supplement, or otherwise revise these instructions as appropriate following the Court's rulings on any pending or pretrial motions, a final determination as to the manner in which these cases will be tried or as is otherwise reasonable and appropriate.

## PRE-TRIAL INSTRUCTIONS

**No. 1 – DUTY OF JURY**

Ladies and gentlemen:  You are now the jury in this case.  It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set throughout the trial to which to refer.  This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**Authority**

Ninth Circuit Manual Of Model Jury Instructions, Civil (2007) ("Ninth Circuit Model Jury Instruction") 1.1A.

[proposed] JURY INSTRUCTIONS

**No. 2 – [DPPs and IPPs' PROPOSAL NO. ___] CLAIMS AND DEFENSES *[DISPUTED]***

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiffs claim that defendants and their alleged coconspirators participated in a combination or conspiracy to fix, raise, maintain, or stabilize the prices of SRAM.  The plaintiffs have the burden of proving these claims.

The defendants deny these claims [and also contend that [*affirmative defenses*]].  The defendants have the burden of proof on these [*affirmative defenses*.]]

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.2, as modified.

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction simply adopts the Model Instruction.  In the appropriate bracket, Plaintiffs insert a basic, non-argumentative statement of plaintiffs' claims.  Plaintiffs have not attempted to use this jury instruction to argue details about SRAM or the SRAM market – matters that will be the subject of dispute at trial.

Plaintiffs' proposed instruction contemplates that defendants would, in the appropriate bracket, insert a basic, non-argumentative statement of any affirmative defense they intend to raise at trial.

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and should be adopted.

**Defendants' Argument Against**

Defendants do not object to the content of the instruction.  However, it is incomplete and therefore potentially misleading.  The text should be included in the context of the instruction on the parties' Claims and Defenses, as Defendants have done.  *See infra* No. 3, Defendants' proposed Instruction (based on Ninth Circuit Model Civil Jury Instruction 1.2).

1   **No. 3 – [DEFENDANTS' PROPOSAL NO. ___] CLAIMS AND DEFENSES** *[DISPUTED]*

2

3      To help you follow the evidence, I will give you a brief summary of the positions of the

4   parties:

5      This is a civil case brought under the antitrust laws, involving allegations of price-fixing

6   for a product called "static random access memory" or SRAM.  SRAM chips are semiconductor

7   memory chips that may be used in a variety of applications, including computers, smartphones,

8   personal digital assistants ("PDAs"), network servers, modems, routers and switches.  There are

9   three major product categories of SRAM at issue in this matter:  slow asynchronous SRAM ("slow

10  async"), fast asynchronous SRAM ("fast async"), synchronous SRAM ("sync").   Another related

11  product, pseudoSRAM ("PSRAM") is also at issue in the indirect case.  SRAM chips are normally

12  differentiated by their architecture and speed.  Each SRAM type or architecture (sync and async)

13  fills a specific application, and is not typically manufactured by all suppliers.  Compared to the

14  async architecture, sync technology improves device performance and consequently tends to be

15  used in performance-sensitive applications.  All sync SRAM operates at a high speed.  Async

16  SRAM operating faster than 30 nanoseconds is considered "fast," and async SRAM operating at

17  30 nanoseconds and slower is considered "slow."

18     First I will explain who the parties to the case are, and then I will briefly describe their

19  claims and defenses.

20     There are two groups of plaintiffs in this case.  The first is a class consisting of those who

21  purchased SRAM directly from SRAM manufacturers.  They are represented by [Westell, a

22  company based in Illinois].  This group will be referred to during the trial as the "direct

23  purchasers."  The second group of plaintiffs are classes made up of residents of 23 states who

24  bought certain finished products containing SRAM.  They are represented by [insert names].  This

25  group will be referred to during the trial as "indirect purchasers" because they bought SRAM

26  indirectly from the SRAM manufacturers.

27     The defendants are Samsung Electronics Company, Samsung Semiconductor,

28  Incorporated, and Cypress Semiconductor Corporation.  Samsung Electronics Company and

-5-

1  Cypress Semiconductor Corporation manufactured SRAM and Samsung Semiconductor,

2  Incorporated sold SRAM.  The direct purchasers have brought their claims against both Samsung

3  and Cypress, while the indirect purchasers have brought their claims only against Cypress.

4       The plaintiffs allege that Cypress and Samsung conspired with each other and with a

5  number of other entities who are alleged co-conspirators.  Those other parties are SRAM

6  manufacturers who are not defendants here, namely:

7            Etron Technology, Inc.

8            Etron Technology America, Inc.

9            Hitachi, Ltd.

10            Hitachi America, Ltd.

11            Hynix Semiconductor Inc.

12            Hynix Semiconductor America Inc.

13            Integrated Silicon Solution, Inc.

14            Micron Technology, Inc.

15            Micron Semiconductor Products, Inc.

16            Mitsubishi Electric Corporation

17            Mitsubishi Electric & Electronics USA, Inc.

18            NEC Electronics Corporation

19            NEC Electronics America, Inc.

20            Renesas Technology Corp.

21            Renesas Technology America, Inc.

22            Toshiba Corporation

23            Toshiba America Electronic Components, Inc.

24       Both groups of plaintiffs allege that Samsung, Cypress, and the other co-conspirators listed

25  above entered into an illegal conspiracy to fix the prices of SRAM from November 1, 1996 to

26  December 31, 2005, and the indirect purchasers further allege that the conspiracy lasted until

27  December 31, 2006.  The plaintiffs allege that the conspiracy was carried out through an exchange

28  of business information.  Both groups of plaintiffs claim that the conspiracy had the effect of

-6-

[proposed] JURY INSTRUCTIONS

artificially inflating the prices of SRAM sold to direct purchasers.  The direct purchaser plaintiffs claim that they suffered injury because they supposedly paid increased prices for SRAM for 27 months out of the 110 months of the alleged conspiracy.  The indirect purchaser plaintiffs claim that they suffered injury because they supposedly paid increased prices for SRAM for four years and PSRAM for three years.  The indirect purchasers allege that those price increases to direct purchasers were passed through the distribution chain so that the prices of certain products containing SRAM were also artificially inflated.

Samsung and Cypress deny the allegation that they entered into a conspiracy, or that they exchanged any information with the purpose of artificially inflating the prices of SRAM. Samsung and Cypress claim that at all times they competed vigorously in the SRAM market, and they deny that the prices of SRAM were artificially inflated to their customers.  In the indirect purchaser case, Cypress further denies that the prices of finished products containing SRAM were artificially inflated by any conspiracy.

Finally, both Samsung and Cypress have raised an affirmative defense of the statute of limitations.  This is a special defense that goes beyond their denials of the plaintiffs' factual assertions.  Samsung and Cypress assert that plaintiffs cannot recover damages for any injuries sustained prior to October 25, 2002 because the law imposes a four year-limit on the plaintiffs' claim.

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.2, as modified to address the claims and defenses in this case.

[proposed] JURY INSTRUCTIONS

1    **Defendants' Argument For**

2         This is Defendants' proposal for a complete and "brief summary of the positions of the

3    parties" in one instruction, as requested by Ninth Circuit Model Civil Jury Instruction 1.2.

4

5    **DPPs and IPPs' Argument Against**

6         Defendants' proposed instruction improperly attempts to use this jury instruction to argue

7    details about SRAM or the SRAM market (e.g. "Each SRAM type or architecture (sync and async)

8    fills a specific application, and is not typically manufactured by all suppliers.") – matters that will

9    be the subject of dispute at trial.  Plaintiffs disagree with most of defendants' descriptions in this

10   regard as inaccurate and/or drafted simply to support defendants' defenses.  Moreover, such detail

11   is too confusing in an opening instruction.

12        To the extent the direct and indirect purchaser cases are tried together, defendants'

13   proposed instruction impermissibly makes reference to "direct purchasers" and "indirect

14   purchasers," rather than simply "plaintiffs," as well as to indirect purchasers' claim of "pass

15   through."  As discussed in at least one of the direct purchaser plaintiffs' proposed instruction

16   below ("DAMAGES - NO PASS-ON CONSIDERATIONS"), as well as direct purchaser

17   plaintiffs' motion *in limine*, in no portion of any direct purchaser case should the jury consider the

18   issue of "pass-on"/"pass through," and the defendants should not be permitted to draw the jury's

19   attention to the issue of "pass-on"/"pass though" or the distinction between direct and indirect

20   purchasers.  *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968).

21        Defendants' proposed instruction draws unnecessary attention to the fact that some of the

22   alleged conspirators are not present (and that the indirect purchasers remaining claims are only

23   against Cypress).  To the extent there are such references, there should be a balancing instruction

24   to the effect that, as a matter of law, the jury need not concern itself with these facts.  *See*

25   plaintiffs' instruction below ("OTHER ALLEGED PARTICIPANTS IN CONSPIRACY") (citing

26   Jury Instruction of Judge Gary L. Lancaster in *In re Indus. Silicon Antitrust Litig.*, No. 95-2104

27   (W.D. Pa.) (as given on May 17, 1999, N.T. 51-52), *available as* Ex. A to Plaintiffs' Appendix of

28   Jury Instructions ("Plaintiffs' Appendix")).

1    Defendants' proposed instruction improperly provides defendants' mischaracterization of

2    plaintiffs' allegations, and selectively presents portions of facts from the direct purchasers' and

3    indirect purchasers' separate damages analyses so as to further defendants' arguments.  These are

4    matters that will be the subject of dispute at trial.  Moreover, such detail is too confusing in an

5    opening instruction.   Additionally, defendants' proposed instruction is pejorative in its description

6    of plaintiffs "supposedly paid increased prices."

7    Consistent with the Model Instruction, defendants need only state their denial.  Defendants'

8    proposed instruction contains unnecessary and improper advocacy insofar as it makes statements

9    such as defendants claiming that they "competed vigorously."  To the extent defendants may be

10   permitted to include their alleged competition defense in an instruction, it should appear in another

11   instruction, not this Model Instruction.

12   Similarly, defendants need only state their affirmative defense.  Defendants' proposed

13   instruction contains unnecessary and improper advocacy insofar as it makes statements such as

14   defendants claiming that the statute of limitations is a "special defense."

15   Defendants' proposed instruction is inappropriate, not supported by their cited authority,

16   and should not be adopted.

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

1    **No. 4 – [DPPs and IPPs' PROPOSAL NO. ___]  BACKGROUND** *[DISPUTED]*

2

3         This case involves Static Random Access Memory or SRAM.  SRAM is a semiconductor

4    memory chip that is used in many devices, including computers, mobile phones, network servers,

5    routers and switches.

6

7    **Authority**

8    Adapted From: Kevin O'Malley, Jay E. Grenig & William C. Lee, *Federal Jury Practice and*

9    *Instructions* § 101.01 (5th Ed. 2000).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DPPs and IPPs' Argument For**

2          Plaintiffs' proposed instruction provides a very basic description of SRAM, the product at

3    issued in this case.  Defendants have agreed to a virtually identical description of SRAM as an

4    undisputed fact in the Joint Pretrial Conference Statement filed on November 30, 2010.  *See id.* at

5    5 ("Static Random Access Memory ("SRAM") chips are semiconductor memory chips that may be

6    used in a variety of applications, including computers, smartphones, personal digital assistants

7    ("PDAs"), network servers, modems, routers and switches.").

8          Plaintiffs have not attempted to use this jury instruction to argue details about SRAM or

9    the SRAM market – matters that will be the subject of dispute at trial.

10          Plaintiffs' proposed instruction is appropriate and should be adopted.

11

12

**Defendants' Argument Against**

13          Defendants would not dispute the instruction if the second sentence were to start: "SRAM

14    is a family of chips that are used …"  However, as stated, it is an incomplete instruction and

15    should be included verbatim in the context of the parties' Claims and Defenses, as Defendants

16    have done.   *See supra* No. 3, Defendants' proposed Instruction (based on Ninth Circuit Model

17    Civil Jury Instruction 1.2).

18

19

20

21

22

23

24

25

26

27

28

1 **No. 5 – [DPPs' PROPOSAL NO.     ]  PARTIES AND CLASS ACTION PROCEDURE**

2     *[DISPUTED]*

3

4     The parties who bring a lawsuit are called plaintiffs.  The parties who are sued in a lawsuit

5 are called defendants.

6     This case is a class action brought on behalf of a class of plaintiffs.  In a class action, many

7 people or companies who have similar claims against the same defendant can bring all of their

8 claims in one case rather than bringing hundreds or thousands of separate cases, thereby avoiding

9 duplication. The Court has already determined that this case may proceed as a class action.

10     The class includes thousands of small, medium and large purchasers who bought SRAM in

11 the United States directly from any defendant or any of their alleged coconspirators at any time

12 during the period from November 1, 1996 through December 31, 2005.  This time period is known

13 as the class period.

14     The named plaintiff, Westell, Inc., purchased SRAM from one or more of the defendants

15 or their alleged coconspirators during the class period.  The fact that other members of the class

16 are not present in the courtroom should not be construed by you in any way as indicating a lack of

17 interest of those other class members in the outcome of this case. It is the purpose of the class

18 action procedure to avoid having to bring large numbers of parties to court. When I refer to

19 "plaintiffs" in these instructions, I will be referring to members of the class.

20     The defendants in this case are:

21          Samsung Electronics Company, Ltd.

22          Samsung Semiconductor, Inc.

23          Cypress Semiconductor, Inc.

24     The defendants' alleged coconspirators are:

25          Etron Technology, Inc.

26          Etron Technology America, Inc.

27          Hitachi, Ltd.

28          Hitachi America, Ltd.

-12-

1    Hynix Semiconductor Inc.

2    Hynix Semiconductor America Inc.

3    Integrated Silicon Solution, Inc.

4    Micron Technology, Inc.

5    Micron Semiconductor Products, Inc.

6    Mitsubishi Electric Corporation

7    Mitsubishi Electric & Electronics USA, Inc.

8    NEC Electronics Corporation

9    NEC Electronics America, Inc.

10    Renesas Technology Corp.

11    Renesas Technology America, Inc.

12    Toshiba Corporation

13    Toshiba America Electronic Components, Inc.

14    Defendants and their alleged coconspirators were all producers and/or sellers of SRAM

15    during the class period.

16    The plaintiffs claim that defendants and their alleged coconspirators conspired to fix, raise,

17    maintain or stabilize prices for SRAM in violation of the federal antitrust laws. Plaintiffs contend

18    that the price-fixing conspiracy alleged herein was effectuated, among other ways, through

19    communications and exchanges between and among the defendants and their alleged

20    coconspirators of competitively sensitive information concerning SRAM prices and production

21    levels. Plaintiffs further contend that the alleged conspiracy was effectuated through concerted

22    action between and among the defendants and their alleged coconspirators which artificially

23    limited, restricted or reduced the market supply of SRAM.  Plaintiffs allege that, as a result of the

24    alleged price-fixing conspiracy, plaintiffs paid prices for SRAM that were higher than they would

25    have in the absence of the violations. Defendants [state position/defenses].

26    It will be your duty to decide from the evidence whether the plaintiffs are entitled to a

27    verdict against any of the defendants.

28

1       This case arises under the Sherman Act, a federal law enacted by the United States

2   Congress in 1890. The Sherman Act is part of the antitrust laws of the United States. The purpose

3   of the Sherman Act is to preserve and advance our free enterprise system.  It does so by

4   encouraging free and open competition in the marketplace by preventing unreasonable restraints

5   and restrictions on business or trade, so that both the public and businesses may receive better

6   goods and services at lower prices. Any conspiracy among competitors to fix, raise, maintain or

7   stabilize prices, including one to limit, restrict or reduce market supply of a product constitutes an

8   unreasonable restraint of trade and is a *per se* (that is, by itself) violation of the Sherman Antitrust

9   Act.

10       You will hear the names of some or all of the alleged coconspirators throughout the trial,

11   and some witnesses who worked for the alleged coconspirators may even testify, so you may

12   wonder why the alleged coconspirators are not present in the Courtroom represented by attorneys

13   sitting at the counsel table. There is no need for the alleged coconspirators to be present in the

14   Courtroom represented by counsel.  Why the alleged coconspirators are not here should not be of

15   concern to you.  However, you should pay close attention and listen to the evidence concerning

16   each coconspirator.

17

18   **Authority**

19   Adapted from: KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY

20   PRACTICE AND INSTRUCTIONS § 101.01 (5th ed. 2000); 9TH CIR. MANUAL MODEL CIV.

21   JURY INSTRUCTIONS 1.2 (2007).

22

23

24

25

26

27

28

1
**DPPs' Argument For**

2
Plaintiffs' proposed instruction, is a supplement to the Model Instruction 1.2 "Claims and

3
Defenses."  *See supra.*  This instruction  further provides a basic, non-argumentative statement of

4
parties in the case, the nature of a class action in general, and the direct purchaser plaintiffs' claims

5
in this case.  The instruction also gives a basic overview of the antitrust law at issue in this case,

6
and explains that jurors need not concern themselves with the absence of alleged coconspirators.

7
*See* plaintiffs' instruction below ("OTHER ALLEGED PARTICIPANTS IN CONSPIRACY")

8
(citing Jury Instruction of Judge Gary L. Lancaster in *In re Indus. Silicon Antitrust Litig.*, No.

9
95-2104 (W.D. Pa.) (as given on May 17, 1999, N.T. 51-52), *available as* Ex. A to Plaintiffs'

10
Appendix).

11
Plaintiffs' proposed instruction contemplates that defendants would, in the appropriate

12
bracket, insert a basic, non-argumentative statement of their denials and any affirmative defense

13
they intend to raise at trial.

14
Plaintiffs' proposed instruction is appropriate and should be adopted.

15

16
**Defendants' Argument Against**

17
The O'Malley instruction does not contain any language explaining class actions.  There is

18
also no reason to discuss the "purpose of the class action procedure."  If plaintiffs can do so, their

19
description is incomplete and the following sentence would at least have to be included:  "Even

20
though certain class members may not be present at trial, every class member still must prove each

21
and every element of its claim against the defendants."  *See, e.g.,* Nos. 106-08, Defendants'

22
proposed post-trial Instructions on Injury and Causation (citing cases).

23
The statement "The Court has already determined that this case may proceed as a class

24
action" references a legal ruling that is unnecessary to convey to the jury, and could be incorrectly

25
interpreted to suggest that the Court has approved of the plaintiffs' claims.  There also is no proof

26
that there was or could be "hundreds or thousands of separate cases" and this statement is not

27
necessary.  The reference to the class consisting of purchasers who bought during the November 1,

28
1996 to December 31, 2005 time period is misleading in that those who purchased outside the

-15-

1   direct purchaser impact period (October 1999-December 2001) could not recover even if there was

2   a verdict favorable to the plaintiffs; thus, the instruction incorrectly suggests that the group of

3   purchasers pursuing claims is larger than it actually is.  The reference to Westell purchasing during

4   the "class period" is similarly misleading in that Westell did not purchase during the impact

5   period, and thus could not recover even if plaintiffs won a favorable verdict.  *See Chuman v.*

6   *Wright*, 76 F.3d 292, 294 (9th Cir. 1996) ("Jury instructions must be formulated so that they fairly

7   and adequately cover the issues presented, correctly state the law, and are not misleading.").

8       The reference to the absence of other class members from the courtroom incorrectly

9   suggests that all class members actually have an interest in the outcome of the case, when there is

10  no evidence to support that contention.  This phrase also needs to be struck or amended from the

11  sixth paragraph of plaintiffs' similar proposed post-trial instruction on class actions.  *See* No. 45.

12      The lengthy description of plaintiffs' claims is unnecessary prior to the trial, and is unfairly

13  prejudicial in several ways.  First, the reference to "competitively sensitive" information reflects

14  plaintiffs' characterization of the information exchanges.  This phrase also needs to be struck from

15  the fourth paragraph of plaintiffs' similar proposed post-trial instruction on parties and first

16  paragraph of post-trial instruction on direct exchanges of information.  *See* Nos. 46 and 93.

17  Second, the reference to plaintiffs' contention that defendants "artificially limited, restricted or

18  reduced the market supply of SRAM" is improper, as plaintiffs have never supplied evidence of

19  any such limitation on supply.  Plaintiffs are entitled to an instruction on a theory of the case only

20  if it is supported by the evidence.  *See Jenkins v. Union Pacific R. Co.*, 22 F.3d 206, 210 (9th Cir.

21  1994).  At the very least, such an instruction is improper before the introduction of any evidence.

22      The reference to the purposes of the Sherman Act (or the year it was enacted) is

23  unnecessary and confusing.  The "purpose of the Sherman Act" is not a required element of

24  plaintiffs' offer of proof and can be used, instead, to take certain evidence out of context.  For

25  example, plaintiffs may choose to take certain trade association meetings between certain of the

26  co-defendants out of context and ask the jury if those meetings between competitors "encourag[e]

27  free and open competition."  That would be prejudicial error to defendants because the antitrust

28  laws do <u>not</u> find that such meetings support an inference of antitrust conspiracy.  *See, e.g.*, Nos. 85

-16-

and 97 Defendants' proposed Instruction relating to Conspiracy (citing cases).  If any instruction on the purposes of the Sherman Act is given, Defendants suggest additional required language in response to plaintiffs' similar, stand alone post-trial instruction.  *See* No. 80.

Similarly, it is confusing to mention the term "per se" at all in any jury instruction, especially pre-trial without further explanation, and every reference to "per se" should be struck. In a *per se* case such as this, the jury's only task with regard to Section 1 is to determine whether a conspiracy existed and whether the defendants or their alleged coconspirators were part of one. Confusing legal concepts that do not help the jury with their task are misleading and should not be provided.  *See* No. 102, Defendants' Argument Against Plaintiffs' proposed Instruction entitled "*Per Se* Restraints."

The final paragraph is duplicative of another instruction regarding other alleged participants and a nearly identical post-trial instructions (*see* Nos. 13 and Nos. 45, 46, 47, 48), and in any event an instruction on the absence of alleged co-conspirators should only be given after trial, as suggested by Defendants.  *See* No. 67.   Also, there is no basis to assert that the jurors "may wonder why the alleged coconspirators are not present" and there is no basis to emphasize that the jurors "should pay close attention and listen to the evidence concerning each coconspirator."

**No. 6 – [IPPs' PROPOSAL NO.    ]  PARTIES AND CLASS ACTION PROCEDURE**

*[DISPUTED]*

The parties who bring a lawsuit are called "plaintiffs." The parties who are sued in a lawsuit are called defendants.

This case is a class action brought on behalf of classes of plaintiffs.  In a class action, many people or companies who have similar claims against the same defendant can bring all of their claims in one case rather than bringing hundreds or thousands of separate cases, thereby avoiding duplication. The Court has already determined that this case may proceed as a class action.

The Indirect Purchaser Plaintiffs and the class members they represent are individuals, businesses and institutions that purchased SRAM or certain products containing SRAM—which SRAM was manufactured by Defendants or an alleged co-conspirator—for their own use and not for resale.  SRAM is a type of memory device that is used in a variety of products including cell phones, Voice Over Internet Protocol ("VOIP") systems, servers, mainframes, high-end computer workstations, personal digital assistants ("PDAs"), smart phones, routers, switches, modems, storage area networks, and firewalls.  Defendants and their alleged co-conspirators sell SRAM to various customers, both large and small scale, which customers in turn sell products containing the SRAM to the indirect-purchaser class members.  Because the class members did not buy SRAM from the Defendants or their alleged conspirators directly, they are called "indirect purchasers."

There are 27 indirect purchaser classes in this case seeking monetary relief and representing residents of Arizona, Arkansas, California, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Washington, West Virginia, Wisconsin, Puerto Rico and the District of Columbia.  I will refer to these classes as the "State Classes".  The State Classes include all individuals, businesses and institutions in those states that purchased SRAM and/or products containing SRAM, for their own use and not for resale, indirectly from one or more of the Defendants or their alleged co-conspirators between November 1, 1996 and December 31, 2006.  This time period is known as

-18-

1   the class period.  As used in the class definition, "Products containing SRAM" are handheld

2   computer devices (also known as PDAs and smart phones), desktop computers (with separate

3   level 2 cache memory), servers, mainframes, Voice-Over Internet Protocol Systems, routers,

4   switches, modems, storage area networks and firewalls.  For residents of Hawaii, Kansas, Maine,

5   Pennsylvania, Rhode Island and the District of Columbia, their purchases of SRAM or products

6   containing SRAM needs to have been made for personal, family or household use.

7           There are 45 named plaintiffs representing the State Classes.  The named plaintiffs are:

8   Lara Sterenberg, United Food & Commercial Workers Local 99, Robert Harmon, Michael Brooks,

9   Lawrence Markey, Roman J. Munoz, Joseph Solo, Stargate Films, United Food & Commercial

10  Workers Local 8, Dona Culver, Ronnie Barnes, Ryan Edwards, John Pharr d/b/a JP Micro, Ramon

11  Oyadomari, Unite Here Local 5, Herbert Harmison, David Sly, nXio, LLC, Penobscot Eye Care,

12  James W. Allen, Matthew Frank, Fairmont Orthopedics & Sports Medicine, P.A., Reclaim Center,

13  Inc., Henry Kornegay, Our Montana, Inc., Culinary Workers Union Local 226, Allen Robert

14  Kelley, Daniel Yohalem, Rodrigo Bazan Gatti, CHP Media, Inc., Curtis Hogue, Jr., Ward Cater,

15  Beth O'Donnell, Carlos R. Carrillo, Javier Oyola-Alemany, Kevin Kicia, Mitch Mudlin, Frank C.

16  Warner, Christopher K. Giauque, Christopher Smith, Donna Hark, David Loomis, Mark and

17  Shannon Schneider, and Christopher J. Stawski.  The fact that all of these named plaintiffs and

18  other members of the classes are not present in the courtroom should not be construed by you in

19  any way as indicating a lack of interest on part of those named plaintiffs or class members in this

20  case.  It is the purpose of the class action procedure to avoid having to bring large numbers of

21  parties to court.  When I refer to "plaintiffs" in these instructions, I will be referring to both the

22  named plaintiff and other members of the class.

23          The defendant in the Indirect Purchaser case is:

24          Cypress Semiconductor Corporation

25          The defendants in the Direct Purchaser case are:

26          Cypress Semiconductor Corporation

27          Samsung Electronics Company, Ltd.

28          Samsung Semiconductor, Inc.

-19-

1    The defendants' alleged coconspirators are:

2    Etron Technology, Inc.

3    Etron Technology America, Inc.

4    Hitachi, Ltd.

5    Hitachi America, Ltd.

6    Hynix Semiconductor Inc.

7    Hynix Semiconductor America Inc.

8    Integrated Silicon Solution, Inc.

9    Micron Technology, Inc.

10    Micron Semiconductor Products, Inc.

11    Mitsubishi Electric Corporation

12    Mitsubishi Electric & Electronics USA, Inc.

13    NEC Electronics Corporation

14    NEC Electronics America, Inc.

15    Renesas Technology Corp.

16    Renesas Technology America, Inc.

17    Toshiba Corporation

18    Toshiba America Electronic Components, Inc.

19    Defendants and their alleged coconspirators were all producers and/or sellers of SRAM

20    during the class period.

21    The plaintiffs claim that defendants and their alleged coconspirators conspired to fix, raise,

22    maintain or stabilize prices for SRAM in violation of state antitrust laws, state consumer

23    protection laws and state unjust enrichment laws.  Plaintiffs contend that the price-fixing

24    conspiracy was accomplished, among other ways, through communications and exchanges

25    between and among the defendants and their alleged coconspirators of competitively sensitive

26    information concerning SRAM prices and production levels.  Plaintiffs further contend that the

27    alleged conspiracy was accomplished through concerted action between and among the defendants

28    and their alleged coconspirators which artificially limited, restricted or reduced the market supply

-20-

1  of SRAM.  Plaintiffs allege that, as a result of the alleged price-fixing conspiracy, plaintiffs paid

2  higher prices for SRAM or products containing SRAM than they would have paid in the absence

3  of the violations.  The defendants deny that they participated in any conspiracy and that the prices

4  for SRAM were higher than they would otherwise have been.

5          It will be your duty to decide from the evidence whether the plaintiffs are entitled to a

6  verdict against any of the defendants.

7          This case arises under state antitrust laws, as well as state consumer protection laws.  Many

8  of the state antitrust laws are guided by the Sherman Act, a federal law enacted by the United

9  States Congress in 1890.  The Sherman Act is part of the antitrust laws of the United States.  The

10  purpose of the antitrust laws is to preserve and advance our free enterprise system.  They do so by

11  encouraging free and open competition in the marketplace by preventing unreasonable restraints

12  and restrictions on business or trade, so that both the public and businesses may receive better

13  goods and services at lower prices.  Any conspiracy among competitors to fix, raise, maintain or

14  stabilize prices, including one to limit, restrict or reduce market supply of a product, constitutes an

15  unreasonable restraint of trade and is a per se (that is, by itself) violation of the Sherman Antitrust

16  Act and of state antitrust laws.

17          You will hear the names of some or all of the alleged coconspirators throughout the trial,

18  and some witnesses who worked for the alleged coconspirators may even testify, so you may

19  wonder why the alleged coconspirators are not present in the Courtroom represented by attorneys

20  sitting at the counsel table.  There is no need for the alleged coconspirators to be present in the

21  Courtroom represented by counsel.  Why the alleged coconspirators are not here should not be of

22  concern to you.  However, you should pay close attention and listen to the evidence concerning

23  each coconspirator.

24

25                                      **Authority**

26  Adapted from: Kevin O'Malley, Jay E. Grenig & William C. Lee, Federal Jury Practice and

27  Instructions § 101.01 (5th Ed. 2000); 9th Cir. Manual Model Civil Jury Instructions 1.2 (2001).

28

1

**IPPs' Argument For**

2       IP Plaintiffs' Proposed Jury Instruction No. 6 should be used because it clearly and

3 concisely and without argument summarizes what a class action is; who are indirect purchasers;

4 the states and class period at issue; the class definition; the definition of "products containing

5 SRAM" as used in the class definition; the named plaintiffs; the defendant and their alleged co-

6 conspirators; plaintiffs' general contentions; and defendants' denial of those contentions.  This is

7 basic information regarding the case that will help enable the jury to understand what the case is

8 about, and facilitate their understanding of the facts and evidence they will soon hear and see.  In

9 addition, because the jurors may not have ever heard of an antitrust case, the short description of

10 antitrust law will help familiarize them with the purpose of the law basic principles they will apply

11 at the end of the case.  IP Plaintiffs' Proposed Jury Instruction No. 6 should be given.  IP Plaintiffs'

12 Proposed Jury Instruction No. 6 is modeled after the DP Plaintiff's Proposed Jury Instruction No. 5

13 and the arguments made in favor of that proposal, if any, are incorporated herein by this reference.

14

15

**DPPs' Position**

16       In principle, the direct purchaser plaintiffs' do not oppose this instruction.  However, they

17 reserve their right to address the propriety of such instruction based upon any Court ruling with

18 respect to the direct purchaser action proceeding jointly to trial with the indirect purchaser action,

19 for reasons including the problem of there being references to indirect purchasers, "pass-on," and

20 similar matters in any portion of the direct purchaser case. *See* direct purchaser plaintiffs' proposed

21 instruction below ("DAMAGES - NO PASS-ON CONSIDERATIONS") (citing *Hanover Shoe,*

22 *Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968)).

23

24

**Cypress' Argument Against**

25       This instruction is objectionable for the same reason as the comparable direct purchaser

26 instruction.  In addition, the statement in the third paragraph that direct purchasers sell SRAM to

27 customers, who in turn sell products containing SRAM to indirect purchasers, does not fairly

28 reflect the evidence.  Many SRAM customers do not sell products to the persons in the indirect

-22-

purchaser classes; rather, they sell to wholesalers or retailers, who may in turn sell to indirect

purchasers or to other intermediate entities in the distribution chain.

-23-

1  **No. 7 – [IPPs' PROPOSAL NO. ___]  GENERAL INSTRUCTION – IP PLAINTIFFS'**

2  **CLAIMS** *[DISPUTED]*

3

4        The Indirect Purchaser Plaintiffs claim that Cypress violated the antitrust laws of various

5  states by agreeing, combining, and conspiring with Samsung or other alleged co-conspirators to

6  fix, raise, maintain or stabilize prices for SRAM.  Specifically, Indirect Purchaser Plaintiffs allege

7  that the Defendants engaged in horizontal price-fixing—an unlawful contract, combination, or

8  conspiracy between two or more competitors to restrain trade by fixing the price of a particular

9  product or component of a product.  The Indirect Purchaser Plaintiffs contend that the Defendants'

10  actions harmed competition by causing the class members to pay higher prices for SRAM and/or

11  products containing SRAM than they otherwise would have paid in a competitive market.

12

13  **Authority**

14  Fifth Consolidated Amended Class Action Complaint for Violations of Federal and State Antitrust

15  Laws, State Consumer Protection Laws and State Common Law of Unjust Enrichment ¶¶ 191-197

16  (Docket Entry 1067).  *See also* Ariz. Rev. Stat. § 44-1402 (2010); D.C. Code § 28-4502 (2010);

17  Haw. Rev. Stat. §§ 480-4(a), 480¬4(b)(1) (2010); Iowa Code § 553.4 (2010); 10 Me. Rev. Stat. §

18  1101 (2010); Mich. Comp. Law Stat. § 445.772 (2010); Minn. Stat. §§ 325D.51, 325D.53(1)

19  (2009); Nev. Rev. Stat. § 598A.060(1); N.M. Stat. Ann. § 57-1-1 (2010); N.Y. Gen. Bus. Law §

20  340(1); N.D. Cent. Code §§ 51.08.1-02; 10 L.P.R.A. § 258 (2009); S.D. Codified Laws § 37-1-3.1

21  (2010); Utah Code Ann. § 76-10-914  (2010); W. Va. Code §§ 47-18-3(a), (b)(1) (2010); Wis.

22  Stat. § 133.03(1) (2010).

23

24

25

26

27

28

1

**IPPs' Argument For**

2       IP Plaintiffs' Proposed Jury Instruction No. 7 should be used because it specifies that IP

3   Plaintiffs' claims are focused on Cypress and that they assert violations of state antitrust laws.

4   This proposed instruction could be merged with IP Plaintiffs' Proposed Jury Instruction No. 6.

5

6

**DPPs' Position**

7       In principle, the direct purchaser plaintiffs' do not oppose this instruction.  However, they

8   reserve their right to address the propriety of such instruction based upon any Court ruling with

9   respect to the direct purchaser action proceeding jointly to trial with the indirect purchaser action,

10  for reasons including the problem of there being references to indirect purchasers, "pass-on," and

11  similar matters in any portion of the direct purchaser case. *See* direct purchaser plaintiffs' proposed

12  instruction below ("DAMAGES - NO PASS-ON CONSIDERATIONS") (citing *Hanover Shoe,*

13  *Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968)).

14

15

**Cypress' Argument Against**

16      This instruction accurately describes the claims, but is unbalanced in that it does not

17  remind the jury that Cypress denies the existence of a conspiracy, its participation in one, or any

18  injury to plaintiffs.

19

20

21

22

23

24

25

26

27

28

**No. 8 – [DPPs and IPPs' PROPOSAL NO.      ]  BURDEN OF PROOF –**

**PREPONDERANCE OF THE EVIDENCE**  *[DISPUTED]*


When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.3.

1

**DPPs and IPPs' Argument For**

2      Plaintiffs' proposed instruction simply adopts the Model Instruction.

3      To the extent there is to be any elaboration on burden of proof, it should be done in a

4  separate, supplemental instruction; the Model Instruction should be given as written.

5      Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

6  should be adopted.

7

8

**Defendants' Argument Against**

9      A more expanded instruction, submitted by Defendants (No. 9, below), is appropriate to

10  fully inform the jury that they may not engage in speculation or conjecture, that they may consider

11  the various types of evidence in determining whether any fact has been proved by a

12  preponderance, the concept that preponderance does not necessarily refer to the number of

13  witnesses or exhibits, and the idea that if the evidence is evenly balanced, the jury must find for

14  the defendants.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-27-

**No. 9 – [DEFENDANTS' PROPOSAL NO. ___] BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE *[DISPUTED]***

In this civil case, the plaintiffs bear the burden of proving each element of their claims by a "preponderance of the evidence."  If plaintiffs fail to prove any element of their claims by a preponderance of the evidence, then you must find for the defendants.

The defendants have the burden of establishing the elements of certain affirmative defenses.  I will explain this further after you have heard all of the evidence.

When I say that the plaintiffs bear the burden of proving their claims by a "preponderance of the evidence," I mean that the plaintiffs must prove that their claims are more likely than not true, according to the evidence, and not simply conjecture, speculation, or possibility.  A preponderance of the evidence means such evidence that, when considered and compared with evidence opposed to it, has more convincing force and leads you to conclude that what is sought to be proved is more likely true than not true.

In determining whether any fact in issue has been proved by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all of the witnesses, regardless of who may have called them, and consider all of the exhibits received in evidence, regardless of who may have produced them, as well as any and all other evidence presented during the course of the trial.

The term "preponderance of the evidence" does not necessarily refer to the number of witnesses or exhibits or even to the quantity of the testimony, but rather to the quality or convincing force of the evidence.

If the evidence is evenly balanced such that you are unable to say that the evidence on either side of an issue predominates, your finding on that issue must be against the plaintiffs since the plaintiffs have the burden of proving every element of their claims in this case.

-28-

[proposed] JURY INSTRUCTIONS

**Authority**

Paragraphs 1-4:  O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 104.01 (5th ed. 2000), as modified; paragraph 5: *id.* § 104.54, as modified; paragraph 6: Fifth Circuit Pattern Jury Instruction (Civil) (2006) § 2.20 and Jury instructions issued in *In re Scrap Metal Antitrust Litig.*, (N.D. Ohio Feb. 09, 2006), *available at* http://www.abanet.org/antitrust/at-committees/at-trial/pdf/jury-instructions/scrap-metal-jury-instructions.pdf, pp.15-16, as modified. *See generally* Ninth Circuit Model Civil Jury Instruction 1.3; O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 101.41 (5th ed. 2000).

[proposed] JURY INSTRUCTIONS

1

**Defendants' Argument For**

2      *See* Authority cited above and Defendants' argument in response to plaintiffs' proposed

3   instruction (No. 8).  As explained in the Comments to the *Modern Federal Jury Instructions*,

4   "preponderance of the evidence [is] a concept that jurors apparently find difficult to grasp."

5   Leonard B. Sand, *Modern Federal Jury Instructions – Civil*, Instr. 72-1 (Matthew Bender, 2001).

6   The Comments note that "because the proper standard of proof is fundamental to a fair trial, a trial

7   court's failure to give an adequate instruction on the burden of proof would be plain error."  *Id.*  In

8   discussing the various approaches in the different Circuits, it notes that "The Ninth Circuit pattern

9   instruction is extremely brief" and "[b]ecause this instruction provides virtually no guidance to the

10  jury, it is not recommended."  *Id.*  Defendants, using mostly just O'Malley §§ 104.01 and 104.54,

11  and relying on other consistent authority cited, attempted to strike the proper balance and provide

12  the jury proper guidance.

13

14            **DPPs and IPPs' Argument Against**

15      Defendants' proposed instruction is an improper elaboration on the Model Instruction,

16  going beyond the straight-forward requirement that a claim (or affirmative defense) must be

17  proved by a preponderance of evidence based on all of the evidence.

18      The instruction is argumentative because, after saying "plaintiffs bear the burden," it

19  unnecessarily goes on to emphasize that point ***at least four more times*** with phrases such as: "if

20  plaintiffs fail," "plaintiffs must prove their claims are more likely than not," "preponderance of

21  evidence means  . .  it, has more convincing force," "if the evidence is evenly balanced . . . your

22  finding . . . must be against plaintiffs."  Such repetition is not intended for clarification, but is an

23  impermissible attempt to persuade the jury that plaintiffs face an uphill battle to win their case.

24  (To the extent plaintiffs' proposed instruction on burden of proof to be given after the close of

25  evidence elaborates on plaintiffs' burden, it does so in an even-handed manner.)

26      Also, the instruction's use of phrases such as "determining whether any fact in issue has

27  been proved" and "if the evidence is evenly balanced . . . on either side of an issue," is an improper

28  attempt to have the jury compartmentalize and decide separately each of the issues in the cases.

-30-

1  This approach is repeated in several of defendants' proposed instructions.  Especially in antitrust

2  conspiracy cases, however, it is well-established that, although the jury must make a determination

3  as to each material issue, the jury's determination should be based on a consideration of all of the

4  evidence and issues together.  "[P]laintiffs should be given the full benefit of their proof without

5  tightly compartmentalizing the various factual components and wiping the slate clean after

6  scrutiny of each. . . . [T]he duty of the jury is to look at the whole picture . . . ."  *Continental Ore*

7  *Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962); *see also Knevelbaard Dairies v.*

8  *Kraft Foods, Inc.*, 232 F.3d 979, 990 (9th Cir. 2000); *In re High Fructose Corn Syrup Antitrust*

9  *Litig. ("HFCS")*, 295 F.3d 651, 655-56 (7th Cir. 2002); *In re Cathode Ray Tube (CRT) Antitrust*

10  *Litigation*, 2010 WL 3632775 at *4 (N.D. Cal. March 30, 2010); *In re TFT-LCD (Flat Panel)*

11  *Antitrust Litigation*, 267 F.R.D. 583, 607 (N.D. Cal. 2010).

12  Finally, it is worth noting that while the authority defendants primarily rely upon is

13  O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 104.01 (5th ed. 2000),

14  defendants omit that source's statement that the preponderance of evidence standard "does not

15  require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in

16  any case."

17  Defendants' proposed instruction is inappropriate, not supported by their cited authority,

18  contrary to Supreme Court and Ninth Circuit precedent, and should not be adopted.

19

20

21

22

23

24

25

26

27

28

**No. 10 – [DPPs and IPPs' PROPOSAL NO. ___]   CIVIL AND CRIMINAL CASES DISTINGUISHED *[DISPUTED]***

There are two kinds of cases that come to court, criminal cases and civil cases. Criminal cases are when the government charges a person or company with a crime. Some of you may have sat on juries in criminal cases before, and others of you may have watched movies or television shows like "Law and Order" where criminal cases brought by the government are shown. This is not a criminal case.

This is a civil case in which the plaintiffs claim that they had to pay more for SRAM than they would have paid if there had been no conspiracy among defendants and their alleged coconspirators. I mention this because there are significant differences between criminal cases and civil cases. One significant difference is that in criminal cases, the burden of proof on the government is to prove its case "beyond a reasonable doubt." That standard – proof beyond a reasonable doubt – does not apply here.  In this civil case, you should put that standard of proof out of your minds.  In this civil case, plaintiffs have the burden of proving their claims by a preponderance of the evidence (which is separately described in other instructions).

**Authority**

Adapted from: KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 104.01 (5th ed. 2000); PATTERN CRIM. JURY INSTRUCTIONS FOR THE 7TH CIR. 2.03 (1998); 8TH CIR. CIVIL JURY INSTRUCTIONS 3.04 (2008).

1

**DPPs and IPPs' Argument For**

2          Plaintiffs' proposed instruction simply provides jurors a framework and context in which to

3    consider the burden of proof that applies in this case as compared to the burden of proof that

4    applies in criminal cases.  Providing that kind of comparison is endorsed by the authorities cited

5    by plaintiffs.  *See, e.g.,* KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL

6    JURY PRACTICE AND INSTRUCTIONS § 104.01 (5th ed. 2000) ("You may have heard of the

7    term 'proof beyond a reasonable doubt.' That is a stricter standard that applies in criminal cases. It

8    does not apply in civil cases such as this. You should, therefore, put it out of your minds.").

9          Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

10   should be adopted.

11

12

**Defendants' Argument Against**

13         This instruction is unnecessary if the Court gives Defendants' proposed instruction on the

14   burden of proof, which fully explains the preponderance standard.  It also creates the risk of

15   diluting the burden of proof standard below what is actually required.  The Seventh Circuit Pattern

16   *Criminal* Instruction is irrelevant to the burden of proof in a civil case.  O'Malley § 104.01 and the

17   Eighth Circuit Pattern Instruction do not support a separate instruction on the burden of proof in a

18   criminal case.  They only suggest short optional language to be included within a fuller

19   "Preponderance of the Evidence" instruction.  There is no reason to give a separate, lengthy,

20   unsupported instruction describing what is *not* at issue.

21         Also, the first sentence of the second paragraph improperly suggests that there was a

22   conspiracy.  If this instruction is given, the sentence should say "This is a civil case in which the

23   plaintiffs seek damages."

24

25

26

27

28

-33-

1    **No. 11 – [DPPs and IPPs' PROPOSAL NO. ___]  TWO OR MORE DEFENDANTS –**

2         **DIFFERENT LEGAL RIGHTS *[DISPUTED]***

3

4         You should decide the case against each defendant separately.  Unless otherwise stated,

5    these instructions apply to the case against each defendant separately.

6

7                                       **Authority**

8    Adapted from:  9TH CIR. MANUAL MODEL CIV. JURY INSTRUCTIONS 1.5 (2007).

9

10   NOTE:  THIS IS A MODIFICATION/REPLACEMENT TO STANDARD INSTRUCTION 1.5.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DPPs and IPPs' Argument For**

2        Plaintiffs' proposed instruction closely tracks the Model Instruction.  This instruction omits

3  reference to plaintiffs because the goal of the Model Instruction appears primarily to protect the

4  interests of different defendants.  Insofar as the Court adopts the proposal to jointly try together

5  the issue of conspiracy for the direct and indirect actions, references to various plaintiff groups

6  would serve only to confuse jurors, and, therefore, such references are omitted.

7        Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

8  should be adopted.

9

10

**Defendants Argument Against**

11        Defendants' proposed Instruction (No. 12, below) is similar, but should be used instead

12  because there are multiple claims and parties, and some claims apply only to one party.  Plaintiffs'

13  instruction is too vague to fully explain that concept.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

**No. 12 – [DEFENDANTS' PROPOSAL NO. ___] TWO OR MORE PARTIES – DIFFERENT LEGAL RIGHTS** *[DISPUTED]*

You must give separate consideration to each claim and each party in this case.  Although there are two defendants, it does not follow that if you find against one defendant, you must also find against the other.  Each defendant is entitled to a fair consideration of the evidence. Neither defendant is to be prejudiced should you find against the other.

Certain of the instructions I will give you will apply to the direct purchasers' claims against Samsung and Cypress, and other instructions will apply only to the indirect purchasers' claims against Cypress.  I will specify when instructions apply only to one set of claims or parties. Otherwise, the instructions I give you apply to all parties.

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.5, as modified to fit the claims in this case; O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, Civil, § 103.14 (5th ed. 2000 & 2003 Supp.).

-36-

**Defendants' Argument For**

*See* Authority cited above and Defendants' argument in response to plaintiffs' proposed instruction above (No. 11).

**DPPs and IPPs' Argument Against**

Defendants' proposed instruction places undue emphasis on the need to separately consider the evidence against each defendant.  The instruction's phrasing about "it does not follow that if you find against one defendant, you must also find against the other" is a veiled argument aimed at injecting doubt into jurors' minds about finding against either defendant.

The instruction's discussion about direct and indirect purchasers is unnecessary and likely confusing to jurors, as well as prejudicial to direct purchasers by emphasizing the two groups of plaintiffs.  *See* direct purchaser plaintiffs' proposed instruction below ("DAMAGES - NO PASS-ON CONSIDERATIONS") (citing *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968)).

Defendants' proposed instruction is inappropriate, not supported by their cited authority, and should not be adopted.

1   **No. 13 – [DPPs and IPPs' PROPOSAL NO. __] OTHER ALLEGED PARTICIPANTS IN**

2        **CONSPIRACY** *[DISPUTED]*

3

4        You are instructed that, as a matter of law, it is not material that all alleged participants in

5   the conspiracy are not in this lawsuit. That some of the alleged participants are not in this lawsuit

6   is legally irrelevant and should not be considered by you for any purpose. That some alleged

7   participants are not in this lawsuit has nothing to do with your duties as jurors in this trial.

8

9                              **Authority**

10  Adapted from: Jury Instruction of Judge Gary L. Lancaster in *In re Indus. Silicon Antitrust*

11  *Litig.*, No. 95-2104 (W.D. Pa.) (as given on May 17, 1999), *available* as Ex. A to Plaintiffs'

12  Appendix of Unpublished Instructions ("Plaintiffs' Appendix").

1

**DPPs and IPPs Argument For**

2      Plaintiffs' proposed instruction simply explains that jurors need not concern themselves

3   with the absence of alleged coconspirators.  Jurors may improperly speculate why only some

4   alleged conspirators are appearing as defendants, including speculation about some settling and

5   their reasons for settling. This instruction is simply an effort to cabin such thoughts by jurors.

6      Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

7   should be adopted.

8

9

**Defendants Argument Against**

10      The statements that the other alleged participants in the conspiracy are not "in this

11   lawsuit," and that their absence "has nothing to do with your duties as jurors," are incorrect and

12   misleading.  Defendants' proposed post-trial Instruction entitled "Parties Not Before the Court" is

13   more accurate.  *See* No. 67.  The other alleged participants are "in this lawsuit" in the sense that

14   the jury will be asked to determine whether or not they were members of the alleged conspiracy.

15   If the jury finds a conspiracy but finds that particular alleged participants in fact did not

16   participate, defendants cannot be liable for damages caused by those non-participants' sales under

17   principles of joint and several liability.  *See* No. 86 (Defendants' proposed Instruction).  Also,

18   Defendants' proposal is to submit this instruction only at the close of the evidence, when the jury

19   will have greater context for this information.

20

21

22

23

24

25

26

27

28

-39-

**No. 14 – WHAT IS EVIDENCE**

      The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits which are received into evidence; and

3.      any facts to which the lawyers have agreed.

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.6.

**No. 15 – WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they will say in their opening statements and closing arguments, and at other times, is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, sometimes testimony and exhibits may be received only for a limited purpose; if I give a limiting instruction, you must follow it.

4. Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.7.

**No. 16 – EVIDENCE FOR A LIMITED PURPOSE**

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.8.

-42-

1    **No. 17 – [DPPs and IPPs' PROPOSAL NO. ___] DIRECT AND CIRCUMSTANTIAL**

2        **EVIDENCE** *[DISPUTED]*

3

4        Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as

5    testimony by a witness about what that witness personally saw or heard or did.  Circumstantial

6    evidence is proof of one or more facts from which you could find another fact.  You should

7    consider both kinds of evidence.  The law makes no distinction between the weight to be given to

8    either direct or circumstantial evidence.  It is for you to decide how much weight to give any

9    evidence.

10

11                                    **Authority**

12   Ninth Circuit Model Civil Jury Instruction 1.9.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:1ESC1\403121977.4
MDL No. 1819                                        [proposed] JURY INSTRUCTIONS

1                **DPPs and IPPs' Argument For**

2       Plaintiffs' proposed instruction simply adopts the Model Instruction.

3       To the extent there is to be any elaboration on direct and circumstantial evidence, it should

4 be done in a separate, supplemental instruction; the Model Instruction should be given as written.

5       Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

6 should be adopted.

7

8                **Defendants' Argument Against**

9       The standard Ninth Circuit instruction may lead to confusion in an antitrust case, where

10 there are special rules governing the consideration of circumstantial evidence.  *See, e.g., City of*

11 *Long Beach v. Standard Oil Co. of California*, 46 F.3d 929, 935 (9th Cir. 1995) (approving

12 instruction on special consideration of circumstantial evidence in an antitrust case).  Accordingly,

13 Defendants' instruction (below, No. 18) removes the sentence stating there is no distinction

14 between the weight to be given to direct and circumstantial evidence, and properly informs the

15 jury that it will later be instructed on the rules governing the consideration of circumstantial

16 evidence.

17

18

19

20

21

22

23

24

25

26

27

28

**No. 18 – [DEFENDANTS' PROPOSAL NO.  ] DIRECT AND CIRCUMSTANTIAL EVIDENCE** *[DISPUTED]*

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw, or heard, or did.  Circumstantial evidence is proof of one or more facts from which you find another fact.  By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence.  It is for you to decide how much weight to give to any evidence.  However, there are some special rules related to the consideration of circumstantial evidence in an antitrust case, and I will instruct you further on those rules after you have heard all the evidence.


**Authority**

Ninth Circuit Model Civil Jury Instruction 1.9, as modified; *City of Long Beach v. Standard Oil Co. of California*, 46 F.3d 929, 935 (9th Cir. 1995) (approving instruction on special consideration of circumstantial evidence in an antitrust case).

1

**Defendants' Argument For**

2      *See* Authority cited above and Defendants' argument in response to plaintiffs' proposed

3  instruction (No. 17).

4

5

**DPPs and IPPs' Argument Against**

6      Defendants' proposed instruction initially tracks the Model Instruction, but then improperly

7  and misleadingly omits the following critical language from the Model Instruction:  "You should

8  consider both kinds of evidence.  The law makes no distinction between the weight to be given to

9  either direct or circumstantial evidence.  It is for you to decide how much weight to give any

10  evidence."  (Defendants' proposed instruction also includes the illustrative example of

11  circumstantial evidence provided in the Model Instruction, which plaintiffs do not object to.)

12      Additionally, defendants' proposed instruction makes unwarranted reference to "special

13  rules" for circumstantial evidence in antitrust cases.  Plaintiffs disagree with that characterization

14  for two reasons.  First, it raises, without further explaining, the idea that jurors must be wary or

15  cautious about considering circumstantial evidence in this case because later on they will be

16  hearing "special rules" about such evidence.  Tellingly, the only case defendants cite, *City of Long*

17  *Beach*, does not even use the phrase "special rules."  Second, as applied to this case, at most, the

18  "special rules" that would apply, per defendants' own proposed instructions, would only require an

19  instruction that jurors must find that the circumstantial evidence shows that the conspirators'

20  conduct was not "just as consistent with permissible competition as with illegal conspiracy."  *See*

21  defendants' proposed instruction ("FIRST ELEMENT: PROOF OF CONSPIRACY BY

22  CIRCUMSTANTIAL EVIDENCE") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

23  475 U.S. 574, 588 (1986)).  In other words, the circumstantial evidence would need only to show,

24  per *City of Long Beach*, that the "conspirators were not acting independently." 46 F.3d at 934.

25      Further instruction on circumstantial evidence may be given in other instructions, but

26  defendants' proposed instruction here seeks to improperly portray the import of such further

27  instruction.

28

1    Defendants' proposed instruction, therefore, is inappropriate, not supported by their cited

2 authority and should not be adopted.  (As noted above, plaintiff do not object to including the

3 example from the Model Instruction.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**No. 19 – [DPPs and IPPs' PROPOSAL NO. ___]  DEFINITION OF CONSPIRACY**

*[DISPUTED]*

A "conspiracy" is some form of concerted action among two or more persons or corporations to accomplish an unlawful purpose, even if by lawful means. A conspiracy involves a unity of purpose or a common design and understanding or a conscious commitment to a common scheme.

The evidence in this case does not have to show defendants entered into a formal, or express or written agreement that directly and specifically stated what the object or purpose was, or the details of it, or the means by which the conspirators would accomplish their purpose. Price fixing is rarely proved by "smoking gun" evidence such as written or express agreements. Conspiracies are often proved not by direct evidence, but by inferences drawn from evidence of facts and circumstances and from what the defendant and its alleged coconspirators said and did or did not do. The agreement itself may be entirely unspoken. You have to look to all the evidence of the conduct at issue and determine when it is taken together, whether the members of the alleged conspiracy in some way reached a unity of purpose or common design or understanding, a meeting of the minds, to accomplish a common purpose. To establish a defendant's membership in the alleged conspiracy the evidence must show that the defendant participated in the alleged conspiracy with at least one other defendant or at least one other alleged coconspirator.

A conspiracy among competitors to fix, raise, maintain or stabilize prices of SRAM, as the plaintiffs allege here, is in and of itself an unreasonable restraint of trade and cannot be justified by defendants under the federal antitrust laws. It is not a defense that some members of the conspiracy may have thought that the conspiracy made good business sense, or seemed legal or reasonable under the circumstances, or may have been based on good intent. Neither is it a defense that prices resulting from the conspiracy may have seemed reasonable or fair. Nor is it a defense that some members of the conspiracy may have cheated on the terms of the conspiracy from time to time. A conscious commitment to a common scheme entered into between two or more competitors to fix, raise, maintain or stabilize prices above what the prices would have been had

-48-

[proposed] JURY INSTRUCTIONS

there been no conspiracy constitutes a unity of purpose or common design and understanding in violation of the federal antitrust laws.

If you find that there was a conspiracy, then you will be asked to determine whether each defendant and alleged coconspirator participated in the conspiracy.

**Authority**

Adapted from: *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159 (3d Cir. 2003); *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 465 (3d Cir. 1998); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., Inc.*, 998 F.2d 1224, 1232 (3d Cir. 1993); *Wallace v. Price,* 265 F.Supp.2d 545, 569 (W.D. Pa. 2003); *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 48-50 (1990); *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961); *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 210-14, 218 (1940); *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 426-27 (5th Cir. 1985); *In re Nissan Antitrust Litig.*, 577 F.2d 910, 917 (5th Cir. 1978), *cert. denied*, 439 U.S. 1072 (1979); *United States v. Palladino*, 203 F. Supp. 35, 37 (D. Mass. 1962); Jury Instructions of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 31) *available* as Ex. C to Plaintiffs' Appendix; Jury Instructions of Judge Singleton in *In re Corrugated Container Antitrust Litig.*, MDL No. 310 (S.D. Tex.) (as given on Sept. 11, 1980, Tr. Vol. 100 at 59-60), *available* as Ex. B to Plaintiffs' Appendix; ABA Antitrust Law Section, Model Jury Instructions in Civil Antitrust Cases B-2 to B-4, B-13 to B-15, B-26 (2005 ed.); *Esco Corp v. United States*, 340 F.2d 1000, 1006-08 (9th Cir. 1965); *United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir. 1992).

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction accurately describes a conspiracy and what evidence is sufficient to establish the existence of a conspiracy as well as membership in a conspiracy. The instruction then proceeds to accurately explain that horizontal price-fixing conspiracies, such as the SRAM conspiracy alleged by plaintiffs, are *per* se violations, and, therefore, defendants' business justifications for participating in such conspiracies are irrelevant as a matter of law. Finally, the instruction appropriately reminds jurors that, if they find a conspiracy, they must identify which defendants and alleged coconspirators were participants.

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including Supreme Court and Ninth Circuit precedent, and should be adopted.

IP Plaintiffs' verdict form does not require the jury to determine the conspiracy participants. While there may be reasons for such a determination to be made in the direct purchaser case, it would not appear to be necessary in the IP case. IP Plaintiffs, however, will consider this issue further once the manner of trial of the DP and IP cases has been determined.

**Defendants' Argument Against**

This instruction is not appropriate at the outset of the case, before the jury has heard the theories of the parties or heard any evidence. Like all substantive instructions, it should only be given at the close of the evidence. Moreover, the instruction is unbalanced and fails to provide a complete explanation of conspiracy law, and therefore is misleading. *See Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996) ("Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading."). Defendants' proposed post-trial instruction (No. 85) on Conspiracy, which is based on ABA Model Instructions, B-2 through B-4, is more appropriate. The Manual of Model Civil Jury Instructions for the Ninth Circuit (2007 Edition), Instruction 14, entitled "ANTITRUST (15 U.S.C. § 1 et seq.)" primarily recommends that the parties use the "American Bar Association Antitrust Section, Sample Jury Instructions in Civil Antitrust Cases (A.B.A., Chicago, Ill., 2005)."

-50-

1       Plaintiffs' second sentence – "A conspiracy involves a unity of purpose or a common

2   design and understanding or a conscious commitment to a common scheme" – and the other very

3   similar cited sentences are incomplete.  These sentences at least need the phrase "designed to

4   achieve an unlawful objective."  *See Monsanto v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763-64

5   (1984) ("[T]he antitrust plaintiff should present direct or circumstantial evidence that reasonably

6   tends to prove that the manufacturer and others had a conscious commitment to a common scheme

7   designed to achieve an unlawful objective.") (internal quotation marks omitted).  Further, plaintiffs

8   second paragraph defines conspiracy in a way that misstates and minimizes their burden of

9   proving the existence of a conspiracy, as articulated by the Ninth Circuit. *See, e.g., The Jeanery,*

10  *Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1160 (9th Cir. 1988) ("[a] plaintiff does not establish

11  concerted action, however, by merely proving that the defendant sought agreement. More is

12  required. 'The concept of 'a meeting of the minds' [or 'a common scheme'] … means as well that

13  evidence must be presented both that [one party] communicated its acquiescence or agreement,

14  and that this was sought by [another alleged coconspirator].'") (*citing Monsanto v. Spray-Rite*

15  *Serv. Corp.*, 465 U.S. 752, 764 n.9(1984)).  This phrase also needs to be struck or amended from

16  the similar references in plaintiffs' other proposed instructions.

17      The statements that price fixing "is rarely proved by 'smoking gun' evidence such as

18  written or express agreements," and that "[c]onspiracies are often proved not by direct evidence,"

19  lack a sufficient factual basis (because plaintiffs offer no direct evidence of antitrust conspiracy),

20  are merely judicial observations, and form no part of the law of conspiracy.  Further, use of an

21  inflammatory phrase like "smoking gun", especially when it is not applicable, also is prejudicial.

22      In paragraph 3, the use of phrase "fix, raise, maintain or stabilize prices" is unnecessary,

23  especially in a pre-trial instruction.  Plaintiffs have already used this phrase in their proposed pre-

24  trial instruction on "Parties and Class Action Procedure" and plaintiffs use the phrase "fix, raise,

25  maintain or stabilize prices" eighteen times in their proposed instructions (including twice in

26  paragraph 3).  In a relevant, post-trial instruction, plaintiffs can explain one time that a "conspiracy

27  to fix" prices can be defined to include, in appropriate cases, a conspiracy to raise or stabilize

28  prices.  Otherwise, all other references should simply state that this is a price fixing case.

-51-

1    The references in paragraph 3 to the absence of justification for a conspiracy are

2    inappropriate, as defendants have not defended on these grounds.  Plaintiffs are entitled to

3    instructions on their theory of the case, *Jenkins v. Union Pacific R. Co.*, 22 F.3d 206, 210 (9th Cir.

4    1994), not to "straw man" instructions inform the jury to disregard defenses that defendants have

5    not raised.

6    The references in paragraph 3 "that some members of the conspiracy may have cheated on

7    the terms of the conspiracy" is false and argumentative.   First, "cheat[ing]" actually obstructs the

8    formation of a conspiracy, so plaintiffs' crafted sentence is contrary to the law.  *See Business*

9    *Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 727 (1988) ("Cartels are neither easy

10   to form nor easy to maintain. Uncertainty over the terms of the cartel, particularly the prices to be

11   charged in the future, obstructs both formation and adherence by making cheating easier.").

12   Further, plaintiffs attempt to use the inflammatory word "cheating" is unduly prejudicial.

13   As explained in Defendants' post trial instructions, plaintiffs' tailored language here is

14   unbalanced and incomplete.  For instance, plaintiffs' instruction omits essential features of a

15   conspiracy in antitrust law. *See, e.g., Monsanto v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768

16   (1984) ("[T]here must he evidence that tends to exclude the possibility of independent action by

17   the [parties]."))  Further, plaintiffs next instruction skips over an essential element they have to

18   prove and jumps to injury.  *See* No. 91, Defendants' proposed post-trial Instruction on the second

19   element of Participation and Intent, based on ABA Model Jury Instruction, B-13 ("Before you can

20   find that a defendant was a member of the conspiracy alleged by plaintiff, the evidence must show

21   that that defendant knowingly joined in the unlawful plan at its inception or at some later time

22   with the intent to advance or further some object or purpose of the conspiracy.")

23

24

25

26

27

28

-52-

**No. 20** – **[DPPs' PROPOSAL NO. ___] INJURY AND DAMAGES (NOTE: INSTRUCTION FOR PHASE 2/DAMAGES)** *[DISPUTED]*

To recover damages, plaintiffs must show that, as a result of a conspiracy, plaintiffs were injured or overcharged – that is, that they purchased SRAM at prices that were higher than they would have been without a conspiracy. This could include showing that defendants and their alleged coconspirators charged prices that were higher than they would have been absent the conspiracy, and it could also include showing that defendants and their alleged coconspirators prevented prices of SRAM from dropping as low as they otherwise would have if there had been no conspiracy.

Plaintiffs also must present evidence to give you a reasonable basis for estimating the difference between the prices they actually paid for SRAM and the prices that plaintiffs would have paid without a conspiracy. This difference between what plaintiffs actually paid and what they would have paid without a conspiracy is the measure of plaintiffs' damages. Calculations of this difference can be based on reasonable estimates but cannot be the product of sheer speculation or guesswork.

When a defendant violates the antitrust laws, it often is hard to determine the precise amount of damages caused by their violations. Plaintiffs' right to recovery should not be affected by any difficulty you may have in determining the precise amount of damages, so long as there is a reasonable basis for estimating the amount of the damages and the estimate is not based on sheer speculation.

In reaching a verdict in this case, it may occur to you that some of the plaintiffs are in the business of reselling SRAM to others, and you may wonder whether some or all of the price overcharges allegedly resulting from the conspiracy were passed on by the plaintiffs' to their own customers.

I instruct you that you may not consider in any way the question of whether any alleged overcharges by defendants or their alleged coconspirators were passed on by the plaintiffs to their customers. The issue of "passing on," as it is called, is legally irrelevant and must not be

-53-

considered by you or allowed to affect your deliberations in any way. Anyone who purchases a product directly from a company engaged in a conspiracy among competitors to fix, raise, maintain or stabilize prices is entitled to recover the full difference between what that person actually paid for the product and what it would have paid had there been no conspiracy. What the direct purchaser does with the product after it is purchased is irrelevant. "Passing on" may not be considered for purposes of determining whether plaintiffs were injured or for purposes of reducing or limiting the damages, if any, sustained by plaintiffs in this case.

**Authority**

Adapted from: *Mid-West Paper Prods. v. Cont'l Group, Inc.*, 596 F.2d 573, 577 (3d Cir. 1979); *Kan. v. UtiliCorp United, Inc.*, 497 U.S. 199, 208, 211-12 (1990); *Ill. Brick Co. v. Ill.*, 431 U.S. 720 (1977); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968); *Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390, 396 (1906); *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 481 (7th Cir. 2001); *Austin v. Blue Cross & Blue Shield of Alabama*, 903 F.2d 1385, 1392 (11th Cir. 1990); *Graphic Prods. Distrib., Inc. v. Itek Corp.*, 717 F.2d 1560, 1579 (11th Cir. 1983); ABA Antitrust Law Section, Model Jury Instructions in Civil Antitrust Cases F-11, F-22 to F-24 (2005 ed.).

**DPPs' Argument For**

Plaintiffs' proposed instruction accurately describes the necessity for plaintiffs to show both existence of injury as the amount of injury in order to recover damages. The instruction correctly explains that the existence of injury in the form of an overcharge can be established either by showing simply higher prices or prices that were not as low as they should have been. The instruction further explains that well-established rule that damages amounts cannot be based on sheer speculation, but need only be based on reasonable estimates. Finally, the instruction correctly explains, under *Hanover Shoe*, what "pass-on" is and why jurors must not consider pass-on in their damages determination.

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including Supreme Court precedent, and should be adopted.

**Defendants' Argument Against**

This instruction is not appropriate at the outset of the case, before the jury has heard the theories of the parties or heard any evidence. Like all substantive instructions, it should only be given at the close of the evidence. Moreover, the instruction is unbalanced and fails to provide a complete explanation of the law on injury and damages, and therefore is misleading. *See Chuman*, 76 F.3d at 294 ("Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading."). For example, the instruction omits any reference to the need to show a causal relationship between the antitrust violation and the alleged injury, as set forth in Defendants' post-trial Instructions. *See* Nos. 106-08 (based on the ABA Model Instructions). Any instructions on Injury and Damages (two very distinct concepts, as plaintiffs have previously stressed) must be separated, and instructions on causation and injury must come before a discussion of damages. Defendants' proposed instructions on injury and damages, which are largely based on the ABA Model Instructions, are more appropriate.

The statement in the second paragraph that "[t]his difference between what plaintiffs actually paid and what they would have paid without a conspiracy is the measure of plaintiffs'

-55-

1   damages" impermissibly suggests that there was a conspiracy and that plaintiffs are entitled to

2   damages, particularly in the absence of a preliminary instruction on the effect of damages

3   instructions.  *See* Nos. 111-12 (based on the ABA Model Instructions).  Further, plaintiffs'

4   proposed instruction does not include any of the essential information regarding how plaintiffs can

5   possibly that their damages model is reliable.

6          Paragraph 3 understates plaintiffs' burden to recover damages.  *See, e.g.,* ABA Model Jury

7   Instruction, F-49 ("Once a particular plaintiff establishes that it is entitled to recover damages, the

8   law permits that plaintiff to recover only for those injuries it has sustained.  Therefore, if you find

9   that two or more of the plaintiffs are entitled to recover damages, caution should be exercised to be

10  sure that each plaintiff is awarded only damages for injuries it sustained.").

11         As stated above, the phrase "fix, raise, maintain or stabilize prices" must be limited to just

12  "fix prices."

13         The instruction to disregard any "passing on" would improperly instruct the jury that

14  defendants may not assert a pass-through defense, which is permissible in the unique

15  circumstances of this case where indirect purchasers before the same court claim that pass-through

16  always was 100%.  *Cf. Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968).

17

18

19

20

21

22

23

24

25

26

27

28

**No. 21 – [DPPs and IPPs' PROPOSAL NO. ___] ROLE OF JURY & JUDGE** *[DISPUTED]*

By your verdict in this case, you will decide disputed questions of fact from the evidence presented in the case. I will decide all questions of law that arise during the trial. Before you retire to deliberate at the close of this case, I will instruct you more fully on the law that you must follow and apply in reaching your verdict.

It is your duty as jurors to follow the law as I shall state it to you and apply that law to the facts as you find them from the evidence presented in the case. You are not to be concerned with the wisdom or soundness of any rule of law stated by me. Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty for you to base a verdict on any view of the law other than that given in my instructions, just as it would also be a violation of your sworn duty, as finders of the facts, to base a verdict on anything other than the evidence in this case.

From time to time during the trial I may be called upon to make rulings on objections or motions made by lawyers. It is the duty of the lawyers on each side of a case to object when the other side offers testimony or other evidence that the lawyer believes is not properly admissible. You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. And, if I should sustain an objection to a question that goes unanswered by a witness, you should not guess or speculate what the answer might have been nor should you draw any inference or conclusion from the question itself or from the fact that someone objected.

**Authority**

Adapted from: KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS §§ 101.01, 101.10, 101.31 (5th ed. 2000); 9TH CIR. MANUAL MODEL CIV. JURY INSTRUCTIONS 1.1(A), 1.10 (2007).

1

**DPPs and IPPs' Argument For**

2    Plaintiffs' proposed instruction includes standard instructions about the role of judge and

3  jury.  Because the second and third paragraphs of this instruction overlap with portions of Model

4  Instructions 1.1A and 1.10, plaintiffs are willing to remove those paragraphs and have the

5  remaining first paragraph given with Model Instruction 1.1A.

6

7

**Defendants' Argument Against**

8    Ninth Circuit Instruction 1.1A is a correct statement of the law, and there is no reason to

9  depart from it.  All parties have agreed to use Ninth Circuit Instruction 1.1A, so plaintiffs'

10  instruction also is duplicative.  In addition, the second paragraph should be provided as a separate

11  instruction, as specified in the Ninth Circuit Instructions.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**No. 22 – RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.10.

-59-

**No. 23 – CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case and any bias or prejudice;

(5)     whether other evidence contradicted the witness's testimony;

(6)     the reasonableness of the witness's testimony in light of all the evidence; and

(7)     any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.11.

**No. 24 – [DPPs and IPPs' PROPOSAL NO. ___] IMPEACHMENT EVIDENCE – WITNESS**
      *[DISPUTED]*

A witness may be discredited or impeached in various ways, including by contradictory evidence or by evidence that at some other time the witness has said or done something (or failed to say or do something) which is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility and weight, if any, you think it deserves. Evidence that impeaches or discredits a witness should be considered along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness.

A witness may also be discredited or impeached by showing that the witness has been convicted of certain crimes or lied under oath on a prior occasion. Evidence that the witness has been convicted of such crimes or lied under oath on a prior occasion should only be considered for purposes of deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility or weight, if any, as you may think it deserves.

**Authority**

Adapted from: KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 105.04 (5th ed. 2000); 9TH CIR. MANUAL MODEL CIV. JURY INSTRUCTIONS 2.8 (2007).

NOTE:  THIS IS A MODIFICATION/REPLACEMENT TO STANDARD INSTRUCTION 2.8.

1

**DPPs and IPPs' Argument For**

2      Plaintiffs' proposed instruction incorporates the Model Instruction on Impeachment, which

3 provide for impeachment by certain convictions and lying under oath.  The instruction also

4 correctly explains other ways in which a witness may be impeached, as well as the ability of jurors

5 to weigh impeachment evidence in connection with other testimony by an impeached witness.

6      Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

7 should be adopted.

8

9

**Defendants' Argument Against**

10      No impeachment instruction is necessary pre-trial, before any witness has been impeached.

11 Moreover, Federal Jury Practice and Instructions, § 105.04, from which this instruction is taken,

12 states that it should be given when a prior inconsistent statement is offered to impeach the witness.

13      Even if any impeachment instruction is requested and warranted during trial, there is no

14 reason to deviate from Ninth Circuit Instruction 2.8 (which plaintiffs have also requested).

15 Further, plaintiffs' repeated references implying "discredited" and "impeached" are synonymous is

16 incorrect and prejudicial.  *See* Ninth Circuit Instruction 2.8 (no reference to "discredited");

17 Modern Federal Jury Instructions ch. 76, ¶ 76-4 ("…You are instructed that evidence of

18 discrepancies may be a basis to disbelieve a witness' testimony. On the other hand, discrepancies

19 in a witness' testimony or between his testimony and that of others do not necessarily mean that

20 the witness' entire testimony should be discredited. …").

21      Paragraph 3 also is inaccurate, inapplicable, and vague.  The reference to "certain crimes"

22 is so vague to be misleading and plaintiffs do not attempt to explain or cite authority regarding

23 what crimes (e.g., a felony) is required.  There also is no evidence that any witness has been

24 "convicted of [a pertinent] certain crimes or lied under oath on a prior occasion" and, thus, any

25 instruction would be manifest error.  If there was such evidence, it would be excluded as improper

26 character evidence or under Fed.R.Evid. 403.

27

28

-62-

1  **No. 25 – Intentionally left Blank**

2

3  **No. 26 – CONDUCT OF THE JURY**

4

5      I will now say a few words about your conduct as jurors.

6      First, keep an open mind throughout the trial, and do not decide what the verdict should be

7  until you and your fellow jurors have completed your deliberations at the end of the case.

8      Second, because you must decide this case based only on the evidence received in the case

9  and on my instructions as to the law that applies, you must not be exposed to any other

10  information about the case or to the issues it involves during the course of your jury duty. Thus,

11  until the end of the case or unless I tell you otherwise:

12      Do not communicate with anyone in any way and do not let anyone else communicate with

13  you in any way about the merits of the case or anything to do with it. This includes discussing the

14  case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any

15  Internet chat room, blog, Web site or other feature. You may not "blog," "tweet," or use Facebook

16  or any other social networking site to communicate anything to do with the case or your jury

17  service.  This applies to communicating with your fellow jurors until I give you the case for

18  deliberation, and it applies to communicating with everyone else including your family members,

19  your employer, and the people involved in the trial, although you may notify your family and your

20  employer that you have been seated as a juror in the case. In the jury room, you are not to use your

21  cellphones at recesses or lunch to call anyone to ask questions about the case.  But, if you are

22  asked or approached in any way about your jury service or anything about this case, you must

23  respond that you have been ordered not to discuss the matter and to report the contact to the court.

24      Because you will receive all the evidence and legal instruction you properly may consider

25  to return a verdict: do not read, watch, or listen to any news or media accounts or commentary

26  about the case or anything to do with it; do not do any research, such as consulting dictionaries,

27  searching the Internet, "Googling" any party or lawyer or court personnel, or using other reference

28

[proposed] JURY INSTRUCTIONS

1  materials; and do not make any investigation or in any other way try to learn about the case on

2  your own.

3          The law requires these restrictions to ensure the parties have a fair trial based on the same

4  evidence that each party has had an opportunity to address. A juror who violates these restrictions

5  jeopardizes the fairness of these proceedings, and a mistrial could result that would require the

6  entire trial process to start over.  If any juror is exposed to any outside information, please notify

7  the court immediately.

8

9                              **Authority**

10  Ninth Circuit Model Civil Jury Instruction 1.12.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:1ESC1\403121977.4
MDL No. 1819                                                [proposed] JURY INSTRUCTIONS

**No. 27 – NO TRANSCRIPT AVAILABLE TO JURY**

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.13.

-65-

**No. 28 – TAKING NOTES**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  Do not let note-taking distract you.  When you leave, your notes should be left in the jury room.  No one will read your notes.  They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.14.

**No. 29 – JURY TO BE GUIDED BY OFFICIAL ENGLISH**
**TRANSLATION/INTERPRETATION**

Languages other than English may be used during this trial, such as Korean or Japanese.

You must consider only that evidence provided to you through the official court interpreters (for testimony) or translators (for documents). Although some of you may know Korean or Japanese or another language other than English used during this trial, it is important that all jurors consider the same evidence.  Therefore, you must accept the court's official English interpretation or translation of all foreign-language evidence.  You must disregard any different meaning.

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.16, as modified to indicate the languages expected to be heard during the trial.

-67-

**No. 30 – USE OF INTERPRETERS IN COURT**

You must not make any assumptions about a witness or a party based solely upon the use of an interpreter to assist that witness or party.

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.17.

**No. 31 – [DPPs and IPPs' PROPOSAL NO. ___] BENCH CONFERENCES AND RECESSES** *[DISPUTED]*

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Authority**

Adapted from: 9TH CIR. MANUAL MODEL CIV. JURY INSTRUCTIONS 1.18 (2007).

1

**DPPs and IPPs' Argument For**

2       Plaintiffs' proposed instruction simply adopts the Model Instruction.

3       Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

4   should be adopted.

5

6

**Defendants' Argument Against**

7       According to the Court's Order for Pretrial Preparation, the Court does not conduct bench

8   conferences.  Further, The Court also indicated that it does not have sidebars at trial.  *See*

9   Transcript, dated Oct. 14, 2010, at 75:4-6.  Therefore, this instruction is inappropriate.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-70-

**No. 32 – OUTLINE OF TRIAL**

Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiffs will then present their evidence, and counsel for the defendants may cross-examine.  Then the defendants may present evidence, and counsel for the plaintiffs may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.19.

1

2

3

4

5

6

7

8

9

10

11

12                    **<u>INSTRUCTIONS DURING TRIAL</u>**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**No. 33 – [DPPs and IPPs' PROPOSAL NO. ___] STIPULATED TESTIMONY *[DISPUTED]***

The parties have agreed what [*witness*]'s testimony would be if called as a witness.  You should consider that testimony in the same way as if it had been given here in court.

**Authority**

Ninth Circuit Model Civil Jury Instruction 2.1.

[proposed] JURY INSTRUCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction simply adopts the Model Instruction.

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and should be adopted.

**Defendants' Argument Against**

At the present time, the parties have not stipulated to what any witness' testimony would be.  This instruction is appropriate only if such a stipulation is reached.

**No. 34 – [DPPs and IPPs' PROPOSAL NO. ___]  STIPULATIONS OF FACT  *[DISPUTED]***

      The parties have agreed to certain facts [to be placed in evidence as Exhibit ____] [that will be read to you].  You should therefore treat these facts as having been proved.

**Authority**

Ninth Circuit Model Civil Jury Instruction 2.2.

1

**DPPs and IPPs' Argument For**

2        Plaintiffs' proposed instruction simply adopts the Model Instruction.

3        Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

4    should be adopted.

5

6

**Defendants' Argument Against**

7        At the present time, the parties have reached agreement on a couple of undisputed facts.

8    *See* Joint Pretrial Conference Statement, II.a (Dkt. 1170.).  However, both of these facts are

9    already incorporated into other instructions in their proper context.  *See* Nos. 3, 4, 89.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**No. 35 – [DPPs and IPPs' PROPOSAL NO. ___]  JUDICIAL NOTICE *[DISPUTED]***

The court has decided to accept as proved the fact that [*state fact*], even though no evidence has been introduced on the subject.  You must accept this fact as true.

**Authority**

Ninth Circuit Model Civil Jury Instruction 2.3.

1

**DPPs and IPPs' Argument For**

2        Plaintiffs' proposed instruction simply adopts the Model Instruction.

3        Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

4  should be adopted.

5

6

**Defendants' Argument Against**

7        At the present time, the Court has not taken judicial notice of any facts.  This instruction is

8  appropriate only if judicial notice is taken.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**No. 36 – DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded, sometimes on videotape as well.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial, either by reading or showing a videotape of the deposition testimony.

The deposition of [*witness*] was taken on [*date*]. You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

[*Add if being read:*  Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

**Authority**

Ninth Circuit Model Civil Jury Instruction 2.4, as modified.

[proposed] JURY INSTRUCTIONS

**No. 37 – FOREIGN LANGUAGE TESTIMONY**

Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter.  Although some of you may know Korean or Japanese or another language other than English used during this trial, it is important that all jurors consider the same evidence.  Therefore, you must accept the interpreter's translation of the witness's testimony.  You must disregard any different meaning.

**Authority**

Ninth Circuit Model Civil Jury Instruction 2.7, as modified to indicate the languages expected to be heard during the trial.

W02-WEST:1ESC1\403121977.4
MDL No. 1819

1    **No. 38 – [DPPs and IPPs' PROPOSAL NO. ___]  USE OF INTERROGATORIES OF A**

2    **PARTY** *[DISPUTED]*

3

4    Evidence [will now be] [was] presented to you in the form of answers of one of the parties

5    to written interrogatories submitted by the other side.  These answers [have been] [were] given in

6    writing and under oath, before the actual trial, in response to questions that were submitted in

7    writing under established court procedures.  You should consider the answers, insofar as possible,

8    in the same way as if they were made from the witness stand.

9

10                                   **Authority**

11   Ninth Circuit Model Civil Jury Instruction 2.10.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                   **DPPs and IPPs' Argument For**

2       Plaintiffs' proposed instruction simply adopts the Model Instruction.

3       Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

4 should be adopted.

5

6                                       **Defendants' Argument Against**

7       The instruction fails to inform the jury that interrogatory answers are admissible only

8 against the party answering them.  Interrogatories are admissible only to the extent permitted by

9 the Federal Rules of Evidence.  *See* Fed. R. Civ. P. 33(c)).  A party's responses to an opponent's

10 interrogatories constitute the admission of a party opponent under Federal Rule of Evidence

11 801(d)(2)(A).  *Tamez v. City of San Marcos*, 118 F.3d 1085, 1098 (5th Cir. 1997).  Admissions

12 may, however, be introduced only against the declarant, and not against other parties.  *See*, *e.g.*,

13 *United States v. Sausa-Martinez*, 217 F.3d 754, 761 (9th Cir. 2000).  Defendants' instruction

14 (below) properly includes this admonition.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-82-

**No. 39 – [DEFENDANTS' PROPOSAL NO.    ] USE OF INTERROGATORIES OF A PARTY** *[DISPUTED]*

Evidence will now be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  The interrogatory answers that you will hear are admissible only against the party answering the interrogatory.  These answers have been given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**Authority**

Adapated from Ninth Circuit Model Civil Jury Instruction 2.10; O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, Civil, § 104.73 (5th ed. 2000 & 2003 Supp.).

1

**Defendants' Argument For**

2   Defendants fully adopt Ninth Circuit Model Civil Jury Instruction 2.10 and just add

3 sentence number two in order to make clear that answers are admissible only against the party

4 answering the interrogatory.  *See* Authority cited above and Defendants' argument in response to

5 plaintiffs' proposed instruction (No. 38).

6

7

**DPPs and IPPs' Argument Against**

8   Defendants' proposed instruction is that same as the Model Instruction, except in that it

9 adds the following language.  "The interrogatory answers that you will hear are admissible only

10 against the party answering the interrogatory."

11   Plaintiffs do not believe that assertion will necessarily be true.  *See, e.g., In re Ethylene*

12 *Propylene Diene Monomer (EPDM) Antitrust Litigation,* 681 F.Supp.2d 141, 149-53 (D. Conn.

13 2009) (admitting interrogatory answers from one defendant for use against other codefendants

14 under F.R.E. 807, residual hearsay exception).  Further, defendants filed on November 30, 2010

15 motions *in limine* on this issue.  Plaintiffs' opposition is to be filed December 7, 2010.  Plaintiffs,

16 therefore, respectfully submit that Defendants' proposed instruction should not be adopted without

17 regard to the specific interrogatory response at issue, and prior to the resolution of the related

18 *motion in limine*.

19

20

21

22

23

24

25

26

27

28

**No. 40 – [DPPs and IPPs' PROPOSAL NO. ___]  EXPERT OPINION** *[DISPUTED]*

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**Authority**

Ninth Circuit Model Civil Jury Instruction 2.11.

1

**DPPs and IPPs' Argument For**

2        Plaintiffs' proposed instruction simply adopts the Model Instruction.

3        Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

4 should be adopted.

5

6

**Defendants' Argument Against**

7        Expert testimony plays a crucial role in an antitrust jury trial.  This instruction does not

8 provide sufficient information on the nature of expert testimony or what use the jury may make of

9 it.  Defendants' post-trial Instruction attempt to more fully capture the role of the experts in order

10 to provide adequate guidance to the jury.  *See* Nos. 73, 118.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**No. 41 – CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**Authority**

Ninth Circuit Model Civil Jury Instruction 2.12.

**No. 42 – [DPPs and IPPs' PROPOSAL NO.  ]  CHARTS AND SUMMARIES IN EVIDENCE** *[DISPUTED]*

Certain charts and summaries [may be] [have been] received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Authority**

Ninth Circuit Model Civil Jury Instruction 2.13.

1

**DPPs and IPPs' Argument For**

2       Plaintiffs' proposed instruction simply adopts the Model Instruction.

3       Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

4 should be adopted.

5

6

**Defendants' Argument Against**

7       This instruction is unnecessary and potentially misleading, as it singles out one type of

8 evidence and suggests that the jury may find it deficient.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-89-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>POST-TRIAL INSTRUCTIONS</u>**

[proposed] JURY INSTRUCTIONS

**No. 43 – Intentionally left Blank**

**No. 44 – DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.  Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.1C.

**No. 45 – [DPPs' PROPOSAL NO. ___]  GENERAL INTRODUCTION - CLASS ACTION**
 *[DISPUTED]*

As I mentioned to you at the outset, this case is proceeding as a class action. The class action procedure allows the filing of one lawsuit by a named plaintiff as a representative on behalf of a whole group of plaintiffs who have similar claims. The procedure is intended to avoid having all of the thousands of class members proceed with their own separate lawsuits all over the country and trying the same case thousands of times before different judges. Thus, the class action avoids duplication of effort and expense. Your verdict here will be binding on all class members.

The Court has already ruled that this case is a proper class action. The class here is defined to include:

All persons and entities who, during the period November 1, 1996 through December 31, 2005, purchased non-custom SRAM in the United States directly from Defendants or any subsidiaries or affiliates thereof.  Excluded from the class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, and all government entities.

SRAM is a semiconductor memory chip that is used in many devices, including computers, mobile phones, network servers, routers and switches.

The class includes thousands of small, medium and large purchasers who bought SRAM in the United States directly from any defendant or any of their alleged coconspirators at any time during the period from November 1, 1996 through December 31, 2005.  This time period is known as the class period.

The fact that members of the class other than the named plaintiff are not present in the courtroom should not be construed by you in any way as indicating a lack of interest of those other class members in the outcome of this case. Their absence from this trial should not be construed against the class in any way.

In addition, the fact that there are numerous plaintiffs, and that this lawsuit is being brought on behalf of a class of direct purchasers of SRAM, should in no way factor into your

1   deliberations or decisions as to what the outcome of this case should be. You are to look to the

2   conduct of the defendants and their alleged coconspirators and decide if they violated the law.

3

4   **Authority**

5   Adapted from: FED. R. CIV. P. 23; Jury Instruction of Judge Gary L. Lancaster in *In re Indus.*

6   *Silicon Antitrust Litig.,* No. 95-2104 (W.D. Pa.) (as given on May 17, 1999, N.T. 51-52) *available*

7   as Ex. A to Plaintiffs' Appendix; Jury Instruction of Chief Judge Thomas F. Hogan in *In re*

8   *Vitamins Antitrust Litig.,* MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11,

9   2003, Instruction No. 2) *available* as Ex. C to Plaintiffs' Appendix.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DPPs' Argument For**

2       Plaintiffs' proposed instruction is essentially a repetition of much of what was included in

3   their preliminary instruction "PARTIES AND CLASS ACTION PROCEDURE," but here with a

4   focus on class action.  The instruction provides a basic, non-argumentative statement of the nature

5   of a class action in general, and the direct purchaser plaintiffs' claims in this case.  The instruction

6   also provides a specific admonition, approved and given in cases such as *In re Vitamins Antitrust*

7   *Litig.,* MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.), in which jurors are told that they

8   should not let the absence of class members in court affect their determinations.

9       Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

10  should be adopted.

11

12

**Defendants' Argument Against**

13      The same objections discussed in plaintiffs' proposed pre-trial instructions on class action

14  and parties apply here.  *See* Nos. 5, 6.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

**No. 46 – [DPPs' PROPOSAL NO.     ]  GENERAL INTRODUCTION – PARTIES**

*[DISPUTED]*

As I mentioned to you at the outset, on one side of this case are the class of direct purchasers of SRAM.  I have used and will use the term "plaintiffs" to refer to members of the class.

On the other side of this case are Samsung Electronics Company, Ltd., Samsung Semiconductor, Inc., and Cypress Semiconductor, Inc., manufacturers and sellers of SRAM.  I have used and will use the term "defendants" to refer to them

Also, I have used and will use the term "alleged coconspirators," which refers to:

Etron Technology, Inc.

Etron Technology America, Inc.

Hitachi, Ltd.

Hitachi America, Ltd.

Hynix Semiconductor Inc.

Hynix Semiconductor America Inc.

Integrated Silicon Solution, Inc.

Micron Technology, Inc.

Micron Semiconductor Products, Inc.

Mitsubishi Electric Corporation

Mitsubishi Electric & Electronics USA, Inc.

NEC Electronics Corporation

NEC Electronics America, Inc.

Renesas Technology Corp.

Renesas Technology America, Inc.

Toshiba Corporation

Toshiba America Electronic Components, Inc.

1    The plaintiffs claim that defendants and their alleged coconspirators conspired to fix, raise,

2  maintain or stabilize prices for SRAM in violation of the federal antitrust laws. Plaintiffs contend

3  that the price-fixing conspiracy alleged herein was effectuated, among other ways, through

4  communications and exchanges between and among the defendants and their alleged

5  coconspirators of competitively sensitive information concerning SRAM prices and production

6  levels. Plaintiffs further contend that the alleged conspiracy was effectuated through concerted

7  action between and among the defendants and their alleged coconspirators which artificially

8  limited, restricted or reduced the market supply of SRAM.  Plaintiffs allege that, as a result of the

9  alleged price-fixing conspiracy, plaintiffs paid prices for SRAM that were higher than they would

10  have in the absence of the violations. Defendants [state position/defenses].

11    You have heard the names of alleged coconspirators throughout the trial, and some

12  witnesses who worked for the alleged coconspirators testified, so you may wonder why the alleged

13  coconspirators are not present in the Courtroom represented by attorneys sitting at the counsel

14  table. There is no need for the alleged coconspirators to be present in the Courtroom represented

15  by counsel.  Why the alleged coconspirators are not here should not be of concern to you.

16  However, you should pay close attention and listen to the evidence concerning each coconspirator.

17

18                                                     **Authority**

19  Adapted from: Jury Instruction of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust*

20  *Litig.*, MDL Docket No. 1285, Misc. No 99-197 (D.D.C.) (as given on June 11, 2003, Instruction

21  No. 3) *available* as Ex. C to Plaintiffs' Appendix.

22

23

24

25

26

27

28

-96-

**DPPs' Argument For**

Plaintiffs' proposed instruction is essentially a repetition of much of what was included in their preliminary instruction "PARTIES AND CLASS ACTION PROCEDURE," but here with a focus on the parties.  The instruction provides a basic, non-argumentative statement about the parties in this case, and the direct purchaser plaintiffs' claims in this case.

Plaintiffs' proposed instruction contemplates that defendants would, in the appropriate bracket, insert a basic, non-argumentative statement of their denials and any affirmative defense they intend to raise at trial.

The instruction also explains that jurors need not concern themselves with the absence of alleged coconspirators.  *See* plaintiffs' instruction herein ("OTHER ALLEGED PARTICIPANTS IN CONSPIRACY") (citing Jury Instruction of Judge Gary L. Lancaster in *In re Indus. Silicon Antitrust Litig.*, No. 95-2104 (W.D. Pa.) (as given on May 17, 1999, N.T. 51-52), *available as* Ex. A to Plaintiffs' Appendix).

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and should be adopted.


**Defendants' Argument Against**

The same objections discussed in plaintiffs' proposed pre-trial instructions on parties and class action apply here.  *See* Nos. 5, 6.  In addition, no instruction outlining the claims of the parties is needed after the jury has heard the evidence and arguments at trial.

1  **No. 47 – [IPPs' PROPOSAL NO. ___]  GENERAL INTRODUCTION – PARTIES**

2  *[DISPUTED]*

3

4  As I mentioned to you at the outset, on one side of this case are the indirect purchasers of

5  SRAM.  I have used and will use the term "plaintiffs" to refer to the indirect purchasers of SRAM,

6  which includes the named plaintiffs and all other members of the State Classes.

7  On the other side of this case is Cypress Semiconductor Corporation, a manufacturer and

8  seller of SRAM.  Samsung Electronics Company, Ltd. and Samsung Semiconductor, Inc. are also

9  defendants in the direct purchaser case being tried with this case.  I have used and will use the

10  term "defendants" to refer to them collectively.

11  Also, I have used and will use the term "alleged coconspirators" to refer to the following

12  entities:

13  Etron Technology, Inc.

14  Etron Technology America, Inc.

15  Hitachi, Ltd.

16  Hitachi America, Ltd.

17  Hynix Semiconductor Inc.

18  Hynix Semiconductor America Inc.

19  Integrated Silicon Solution, Inc.

20  Micron Technology, Inc.

21  Micron Semiconductor Products, Inc.

22  Mitsubishi Electric Corporation

23  Mitsubishi Electric & Electronics USA, Inc.

24  NEC Electronics Corporation

25  NEC Electronics America, Inc.

26  Renesas Technology Corp.

27  Renesas Technology America, Inc.

28  Toshiba Corporation

1        Toshiba America Electronic Components, Inc.

2        The plaintiffs claim that defendants and their alleged coconspirators conspired to fix, raise,

3   maintain or stabilize prices for SRAM in violation of state antitrust laws, state consumer

4   protection laws and state unjust enrichment laws.  Plaintiffs contend that the price-fixing

5   conspiracy was accomplished, among other ways, through communications and exchanges

6   between and among the defendants and their alleged coconspirators of competitively sensitive

7   information concerning SRAM prices and production levels.  Plaintiffs further contend that the

8   alleged conspiracy was accomplished through concerted action between and among the defendants

9   and their alleged coconspirators which artificially limited, restricted or reduced the market supply

10  of SRAM.  Plaintiffs allege that, as a result of the alleged price-fixing conspiracy, plaintiffs paid

11  prices for SRAM and/or products containing SRAM that were higher than they would have in the

12  absence of the violations.  Defendants deny that they participated in any conspiracy and that the

13  prices for SRAM were higher than they would otherwise have been.

14       You have heard the names of alleged coconspirators throughout the trial, and some

15  witnesses who worked for the alleged coconspirators testified, so you may wonder why the alleged

16  coconspirators are not present in the Courtroom represented by attorneys sitting at the counsel

17  table. There is no need for the alleged coconspirators to be present in the Courtroom represented

18  by counsel.  Why the alleged coconspirators are not here should not be of concern to you.

19  However, you should pay close attention and listen to the evidence concerning each coconspirator.

20

21                              **Authority**

22  Adapted from: Jury Instruction of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig*.,

23  MDL Docket No. 1285, Misc. No 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 3)

24  *available* as Ex. C to Plaintiffs' Appendix.

25

26

27

28

1

**IPPs' Argument For**

2        IP Plaintiffs' Proposed Jury Instruction No. 47 should be used because it clearly and

3   concisely and without argument describes the indirect plaintiffs; re-clarifies that Cypress is a

4   defendant in the IP case, and that both Cypress and Samsung are defendants in the direct purchaser

5   case; identifies the alleged co-conspirators; and describes plaintiffs' general contentions and

6   defendants' denial of those contentions.  This is basic information regarding the case that will help

7   reaffirm to the jury who and what the case is about, and facilitate their understanding of the facts

8   and evidence with respect to which they will soon deliberate.  Because jurors will not be told that

9   other defendants have settled, it is important to assuage their potential concerns as to why only

10   two of the SRAM manufacturer co-conspirators are before the Court.  This instruction is supported

11   by the authority cited therein.

12

13

**DPPs' Position**

14        In principle, the direct purchaser plaintiffs' do not oppose this instruction.  However, they

15   reserve their right to address the propriety of such instruction based upon any Court ruling with

16   respect to the direct purchaser action proceeding jointly to trial with the indirect purchaser action,

17   for reasons including the problem of there being references to indirect purchasers, "pass-on," and

18   similar matters in any portion of the direct purchaser case. *See* direct purchaser plaintiffs' proposed

19   instruction below ("DAMAGES - NO PASS-ON CONSIDERATIONS") (citing *Hanover Shoe,*

20   *Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968)).

21

22

**Cypress' Argument Against**

23        The same objections discussed in plaintiffs' proposed pre-trial instructions on parties and

24   class action apply here.  *See* Nos. 5, 6.  In addition, no instruction outlining the claims of the

25   parties is needed after the jury has heard the evidence and arguments at trial.

26

27

28

**No. 48 – [DPPs and IPPs' PROPOSAL NO. ___]  GENERAL INTRODUCTION - OTHER ALLEGED PARTICIPANTS IN CONSPIRACY *[DISPUTED]***

As I mentioned to you at the outset, you are instructed that, as a matter of law, it is not material that all alleged participants in the conspiracy are not in this lawsuit. That some of the alleged participants are not in this lawsuit is legally irrelevant and should not be considered by you for any purpose. That some alleged participants are not in this lawsuit has nothing to do with your duties as jurors in this trial.

**Authority**

Adapted from: Jury Instruction of Judge Gary L. Lancaster in *In re Indus. Silicon Antitrust Litig.*, No. 95–2104 (W.D. Pa.) (as given on May 17, 1999, N.T.) *available* as Ex. A to Plaintiffs' Appendix.

1

**DPPs and IPPs' Argument For**

2          Plaintiffs' proposed instruction is a repeat of their preliminary instruction "OTHER

3   ALLEGED PARTICIPANTS IN CONSPIRACY."  The instruction simply explains that jurors

4   need not concern themselves with the absence of alleged coconspirators.  Jurors may improperly

5   speculate why only some alleged conspirators are appearing as defendants, including speculation

6   about some settling and their reasons for settling. This instruction is simply an effort to cabin such

7   thoughts by jurors.

8          Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

9   should be adopted.

10

11

**Defendants' Argument Against**

12          The same objections discussed in plaintiffs' proposed pre-trial instructions on other alleged

13   participants in conspiracy and similar statements in preceding proposed instructions apply here.

14   *See* Nos. 13, 45, 46, 47.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**No. 49 – [DEFENDANTS' PROPOSAL NO.    ] TWO OR MORE PARTIES: DIFFERENT LEGAL RIGHTS** *[DISPUTED]*

You must give separate consideration to each claim and each party in this case.  Although there are two defendants, it does not follow that if you find against one defendant, you must also find against the other.  Each defendant is entitled to a fair consideration of the evidence.  Neither defendant is to be prejudiced should you find against the other.

**Authority:**

Adapted from Ninth Circuit Model Civil Jury Instruction 1.5; O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, Civil, § 103.14 (5th ed. 2000 & 2003 Supp.).

1

**Defendants' Argument For**

2      The instruction is based upon Ninth Circuit Model Civil Jury Instruction 1.5 and provides

3  slightly more information from O'Malley because there are multiple claims and parties, and some

4  claims apply only to one party.  *See* Authority cited above.

5

6

**DPPs and IPPs' Argument Against**

7      Defendants' proposed instruction is a repeat of their preliminary instruction "TWO OR

8  MORE PARTIES – DIFFERENT LEGAL RIGHTS."  As noted above, Plaintiffs' proposed

9  preliminary instruction closely tracks the Model Instruction, whereas defendants' proposed

10  instruction places undue emphasis on the need to separately consider the evidence against each

11  defendant.  The instruction's phrasing about "it does not follow that if you find against one

12  defendant, you must also find against the other" is a veiled argument aimed at injecting doubt into

13  jurors' minds about finding against either defendant.  By providing this instruction again at the

14  close of evidence only compounds that problem.

15      Defendants' proposed instruction is inappropriate, not supported by their cited authority,

16  and should not be adopted.

17      To the extent the Court feels it is necessary to give an instruction on this issue again at the

18  close of evidence, Plaintiffs' proposed instruction should be use both preliminarily and at the close

19  of evidence.

20

21

22

23

24

25

26

27

28

-104-

## No. 50 – GENERAL INTRODUCTION - CORPORATE EQUALITY

Defendants are corporations as are most of the plaintiffs. A corporation is entitled to the same fair trial at your hands as a private individual. All persons, corporations, partnerships, and other organizations stand equal before the law, and stand equal before this Court.

Therefore, in examining the issues in this case, it does not matter that some of the parties are corporations or that some corporations are larger or smaller than others. You should consider and decide this case as a dispute between those of equal standing. Each party is entitled to the same fair consideration of the evidence and a decision from you based on the law as I explain it to you.

**Authority**

Adapted from: Jury Instruction of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 4) *available* as Ex. C to Plaintiffs' Appendix; KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 103.12 (5th ed. 2000); PATTERN CRIM. JURY INSTRUCTIONS FOR THE 7TH CIR. 1.08 (1998).

1    **No. 51 – Intentionally left Blank**

2

3    **No. 52 – [DPPs and IPPs' PROPOSAL NO.    ]  BURDEN OF PROOF - CRIMINAL**

4        **CASES DISTINGUISHED** *[DISPUTED]*

5

6        I now want to talk with you about the standard of proof that will guide you in your

7    deliberations in this case. As I mentioned to you at the outset, there are two kinds of cases that

8    come to court, criminal cases and civil cases. This is not a criminal case.

9        This is a civil case in which the plaintiffs claim that they had to pay more for SRAM than

10   they would have paid if there had been no conspiracy among defendants and their alleged

11   coconspirators. There is a significant difference between criminal cases and civil cases with

12   respect to burdens of proof.  The burden of proof on the government in a criminal case is to prove

13   its case "beyond a reasonable doubt."  That standard – proof beyond a reasonable doubt – does not

14   apply here.  In this civil case, you should put that standard of proof out of your minds.  In this civil

15   case, plaintiffs have the burden of proving their claims by a preponderance of the evidence (which

16   is separately described in other instructions).

17

18                                **Authority**

19   Adapted from: KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY

20   PRACTICE AND INSTRUCTIONS § 104.01 (5th ed. 2000); PATTERN CRIM. JURY

21   INSTRUCTIONS FOR THE 7TH CIR. 2.03 (1998); 8TH CIR. CIVIL JURY INSTRUCTIONS 3.04

22   (2008).

23

24

25

26

27

28

1

**DPPs and IPPs' Argument For**

2      Plaintiffs' proposed instruction is essentially a repeat of their preliminary instruction

3  "CIVIL AND CRIMINAL CASES DISTINGUISHED."  The instruction simply provides jurors a

4  framework and context in which to consider the burden of proof that applies in this case as

5  compared to the burden of proof that applies in criminal cases.  Providing that kind of comparison

6  is endorsed by the authorities cited by plaintiffs.  *See, e.g.,* KEVIN O'MALLEY, JAY E. GRENIG

7  & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 104.01 (5th ed.

8  2000) ("You may have heard of the term "proof beyond a reasonable doubt." That is a stricter

9  standard that applies in criminal cases. It does not apply in civil cases such as this. You should,

10  therefore, put it out of your minds.").

11      Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

12  should be adopted.

13

14

**Defendants' Argument Against**

15      The same objections discussed in plaintiffs' proposed pre-trial instruction on burden of

16  proof - criminal cases apply here.  *See* No. 10.

17

18

19

20

21

22

23

24

25

26

27

28

-107-

**No. 53 – [DPPs and IPPs' PROPOSAL NO. ___]  BURDEN OF PROOF -**

**PREPONDERANCE OF THE EVIDENCE** *[DISPUTED]*

As I mentioned to you at the outset, in a civil case such as this, the burden is on plaintiffs to prove their claim by a preponderance of the evidence. If the plaintiffs establish the essential elements of their claim against a defendant by a preponderance of the evidence, then you should find for plaintiffs. However, if the plaintiffs fail to establish the essential elements of their claim against a defendant by a preponderance of the evidence, then you should find for the defendant.

To establish something by a preponderance of the evidence means to prove that something is more probably true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact has been proved by a preponderance of the evidence, you should base your decision on all of the evidence, regardless of which party presented it.

You can imagine, if you like, a scale. As you decide each issue, you put all the evidence for the plaintiffs on one side, and all the evidence for a defendant on the other. Then you decide which side has greater weight. And when I say greater weight, I am referring not only to the quantity of evidence, but to the quality of evidence as well. You must decide which evidence is more believable, more credible, and more persuasive.

If you find that the scale tips toward the plaintiffs, by however small an amount, then you must find for the plaintiffs. That is all that is required for the plaintiffs to be entitled to your verdict. If you find that the scale tips towards a defendant, or that the scale is exactly even, then you must find for the defendants.

As we go through the rest of these instructions, I will point out to you what it is that plaintiffs need to prove – that is, the elements plaintiffs need to prove. For all of these elements, the burden of proof is the same – that is, proof must be by the preponderance of the evidence. Whenever I say in these instructions that a party has the burden of proof on any proposition, or whenever I use the expression "if you find," or "if you decide," I mean that you must be

-108-

[proposed] JURY INSTRUCTIONS

1    persuaded, considering all of the evidence, that the proposition simply is more likely true than not

2    true.

3

4                                    **Authority**

5    Adapted from: *Porter v. Am. Export Lines, Inc.*, 387 F.2d 409, 411 (3d Cir. 1968); *Blossom v. CSX*

6    *Transp., Inc.*, 13 F.3d 1477, 1479-80 (11th Cir. 1994); *Cont'l X-Ray Corp. v. XRE Corp.*, 1996 WL

7    131776, at *7 (N.D. Ill. Mar. 15, 1996); Jury Instruction of Chief Judge Thomas F. Hogan in *In re*

8    *Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11,

9    2003, Instruction No. 16) *available* as Ex. C to Plaintiffs' Appendix; KEVIN O'MALLEY, JAY E.

10   GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 104.01

11   (5th ed. 2000); 8TH CIR. CIVIL JURY INSTR. 3.04 (2008); 9TH CIR. MANUAL MODEL CIV.

12   JURY INSTRUCTIONS 1.3 (2007).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction supplements their preliminary instruction "BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE," which is an outright adoption of the Model Instruction.  The instruction here elaborates on that basic instruction in an even-handed manner giving alternate scenarios for both plaintiffs and defendants, e.g. "If the plaintiffs establish the essential elements of their claim . . . then you should find for plaintiffs. However, if the plaintiffs fail to establish the essential elements of their claim . . . then you should find for the defendant."

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and should be adopted.

**Defendants' Argument Against**

While there is some overlap, Defendants' instruction on burden of proof (below) is more comprehensive and more accurate.  For instance, plaintiffs' instruction is mainly from O'Malley § 104.01, but plaintiffs omit a key sentence:

> In other word, a preponderance of the evidence means such evidence as, when considered and compared with evidence opposed to it, has more convincing force, and produces in your minds the belief that what is sought to be proved is more likely true than not true.

O'Malley § 104.01.  The jury instructions issued *In re Vitamins Antitrust Litig.*, also cited by plaintiffs, includes this sentence verbatim.  Defendants' instruction (below, No. 54) captures this.

Moreover, this instruction fails to state that plaintiffs must prove each *element* of their claim by a preponderance of the evidence, and therefore could mislead the jury when consider the individual elements of plaintiffs' claims.

Finally, plaintiffs' long, two paragraph "scale" analogy is improper and confusing and should be struck.  This analogy is not included in any of the Model or Sample jury instructions cited by plaintiffs.  The only authority that references this "scale" analogy is *Blossom v. CSX Transp., Inc.*, 13 F.3d 1477, 1479-80 (11th Cir. 1994).  However, *Blossom* based its holding, in part, on the preponderance instruction from "Ninth Circuit, Civil Instruction 10.08 (1985)", which

-110-

had included one short sentence referencing a "scale."  *Id.* at 1480.  However, current Ninth

Circuit Instruction 1.3 has deleted this sentence.  Even the *Blossom* case stated "[w]e do not mean

to suggest that this 'tipping the scales' language must be a part of civil jury instructions" (*id.*) and

one of plaintiffs' other cited authorities states "[o]ne cannot weigh evidence as on a scale."  *Porter*

*v. Am. Export Lines, Inc.*, 387 F.2d 409, 411 (3d Cir. 1968).  Further, the "tipping the scales"

language can mislead the jury into believing that it should weigh the quantity, rather than the

quality, of the evidence.  Defendants' instruction correctly focuses on the quality of the evidence

and also captures plaintiffs' proposed language that the jury must base its decision on "all of the

evidence, regardless of which party presented it".

[proposed] JURY INSTRUCTIONS

**No. 54 – [DEFENDANTS' PROPOSAL NO. ___] BURDEN OF PROOF:**
**PREPONDERANCE OF THE EVIDENCE** *[DISPUTED]*

As I explained at the beginning of the case, the plaintiffs bear the burden of proving each element of their claims by a "preponderance of the evidence."  If plaintiffs fail to prove any element of their claims by a preponderance of the evidence, then you must find for the defendants.

The defendants have the burden of establishing the elements of certain affirmative defenses.  I will explain this later.

When I say that the plaintiffs bear the burden of proving their claims by a "preponderance of the evidence," I mean that the plaintiffs must prove that their claims are more likely than not true, according to the evidence, and not simply conjecture, speculation, or possibility.  A preponderance of the evidence means such evidence that, when considered and compared with evidence opposed to it, has more convincing force and leads you to conclude that what is sought to be proved is more likely true than not true.

In determining whether any fact in issue has been proved by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all of the witnesses, regardless of who may have called them, and consider all of the exhibits received in evidence, regardless of who may have produced them, as well as any and all other evidence presented during the course of the trial.

The term "preponderance of the evidence" does not necessarily refer to the number of witnesses or exhibits or even to the quantity of the testimony, but rather to the quality or convincing force of the evidence.

If the evidence is evenly balanced such that you are unable to say that the evidence on either side of an issue predominates, your finding on that issue must be against the plaintiffs since the plaintiffs have the burden of proving every element of their claims in this case.

**Authority**

Paragraphs 1-4:  O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 104.01 (5th ed. 2000), as modified; paragraph 5: *id.* § 104.54, as modified; paragraph 6: Fifth Circuit Pattern Jury Instruction (Civil) (2006) § 2.20 and Jury instructions issued in *In re Scrap Metal Antitrust Litig.*, (N.D. Ohio Feb. 09, 2006), *available at* http://www.abanet.org/antitrust/at-committees/at-trial/pdf/jury-instructions/scrap-metal-jury-instructions.pdf, pp.15-16, as modified. *See generally* Ninth Circuit Model Civil Jury Instruction 1.3; O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 101.41 (5th ed. 2000).

1

**Defendants' Argument For**

2          This is the same burden instruction proposed by Defendants pre-trial and the same

3     rationale for using it applies.  *See* No. 9.

4

5

**DPPs and IPPs' Argument Against**

6          Defendants' proposed instruction is essentially a repeat of their preliminary instruction

7     "BURDEN OF PROOF:  PREPONDERANCE OF THE EVIDENCE," which is also not an even-

8     handed presentation of the law.  Unlike plaintiffs' proposed instruction, defendants' proposed

9     instruction does not giving alternate scenarios for both plaintiffs and defendants, e.g. "If plaintiffs

10    fail to prove any element of their claims by a preponderance of the evidence, then you must find

11    for the defendants," with no comparable instruction about plaintiff proving each element.

12         Further, the instruction is argumentative because, after saying "plaintiffs bear the burden,"

13    it unnecessarily goes on to emphasize that point ***at least four more times*** with phrases such as: "if

14    plaintiffs fail," "plaintiffs must prove their claims are more likely than not," "preponderance of

15    evidence means  . .  it, has more convincing force," "if the evidence is evenly balanced . . . your

16    finding . . . must be against plaintiffs."  Such repetition is not intended for clarification, but is an

17    impermissible attempt to persuade the jury that plaintiffs face an uphill battle to win their case.

18         Also, the instruction's use of phrases such as "determining whether any fact in issue has

19    been proved" and "if the evidence is evenly balanced . . . on either side of an issue," is an improper

20    attempt to have the jury compartmentalize and decide separately each of the issues in the cases.

21    This approach is repeated in several of defendants' proposed instructions.  Especially in antitrust

22    conspiracy cases, however, it is well-established that, although the jury must make a determination

23    as to each material issue, the jury's determination should be based on a consideration of all of the

24    evidence and issues together.  "[P]laintiffs should be given the full benefit of their proof without

25    tightly compartmentalizing the various factual components and wiping the slate clean after

26    scrutiny of each. . . . [T]he duty of the jury is to look at the whole picture . . . ."  *Continental Ore*

27    *Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962); *see also Knevelbaard Dairies v.*

28    *Kraft Foods, Inc.*, 232 F.3d 979, 990 (9th Cir. 2000); *In re High Fructose Corn Syrup Antitrust*

-114-

1   *Litig. ("HFCS")*, 295 F.3d 651, 655-56 (7th Cir. 2002); *In re Cathode Ray Tube (CRT) Antitrust*

2   *Litigation*, 2010 WL 3632775 at *4 (N.D. Cal. March 30, 2010); *In re TFT-LCD (Flat Panel)*

3   *Antitrust Litigation*, 267 F.R.D. 583, 607 (N.D. Cal. 2010).

4         Finally, it is worth noting that while the authority defendants primarily rely upon is

5   O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 104.01 (5th ed. 2000),

6   defendants omit that source's statement that the preponderance of evidence standard "does not

7   require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in

8   any case."

9         Defendants' proposed instruction is inappropriate, not supported by their cited authority,

10  contrary to Supreme Court and Ninth Circuit precedent, and should not be adopted.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

**No. 55 – Intentionally left Blank**

**No. 56 – Intentionally left Blank**

**No. 57 – WHAT IS AND IS NOT EVIDENCE**


I will now remind you about what is and is not evidence.  It is your duty to determine the facts, and in so doing you must consider only the evidence I have admitted in the case.

The evidence you are to consider in deciding what the facts are consists of:

1.   the sworn testimony of any witness;

2.   the exhibits which are received into evidence; and

3.   any facts to which the lawyers have agreed.

You may not consider:

1.      Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not itself evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of the facts must control.

2.      Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, sometimes testimony and exhibits were received only for a limited purpose; if I gave a limiting instruction, you must follow it.

4.      Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

**Authority**

Ninth Circuit Model Civil Jury Instructions 1.6, 1.7, as modified.

1  **No. 58 – [DPPs and IPPs' PROPOSAL NO. ___] GENERAL EVIDENCE INSTRUCTION –**

2  **INTERROGATORIES/REQUESTS FOR ADMISSION *[DISPUTED]***

3

4       There have been introduced into evidence certain answers to [interrogatories] [requests for

5  admission] – that is, [questions] [requests], together with answers signed and sworn to by an

6  opposing party. A party is bound by its own sworn answers to [interrogatories] [requests for

7  admission]. In other words, if a party has submitted sworn answers, it cannot now claim those

8  answers are untrue. You can consider these sworn answers as evidence.

9

10                         **Authority**

11  Adapted from: Jury Instruction of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*,

12  MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11,2003, Instruction No. 7)

13  *available* as Ex. C to Plaintiffs' Appendix; KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM

14  C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS §§ 104.70, 104.72, 104.73 (5th

15  ed. 2000).

16

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

1

**DPPs and IPPs' Argument For**

2      Plaintiffs' believe that there should be an instruction to be given after the close of evidence

3 that closely tracks that given during trial with respect to the admission of interrogatory responses

4 (and responses to request for admission).  *Cf. supra* plaintiffs' proposed instruction above ("USE

5 OF INTERROGATORIES OF A PARTY") with defendants' proposed instruction above ("USE

6 OF INTERROGATORIES OF A PARTY").

7

8

**Defendants' Argument Against**

9      The same objections discussed in plaintiffs' proposed in-trial instruction on interrogatories

10 apply here.  *See* Nos. 38-39.  Plaintiffs' authority also states that a party's discovery response is

11 only admissible against that party.  *See* O'Malley § 104.73 ("You will not consider one party's

12 [answers to interrogatories] [written response to request for admission] … as evidence against any

13 other defendant.").

14      Further, plaintiffs own cited authority shows that their proposed instruction is not accurate.

15 In O'Malley § 104.70, the Notes state that "Answers to interrogatories … are merely 'evidentiary'

16 admissions; the party who made such statements is free to contradict them at trial, subject to

17 impeachment."  O'Malley § 104.70 (Notes); *see also* O'Malley § 104.72 (Notes); Ninth Circuit

18 Instruction 2.10, Notes ("The effect of requests for admission under the rule is not the same as the

19 introduction of evidence through interrogatories.").

20

21

22

23

24

25

26

27

28

-118-

[proposed] JURY INSTRUCTIONS

**No. 59 – [DPPs and IPPs' PROPOSAL NO. __] GENERAL EVIDENCE INSTRUCTION - ROLE OF THE COURT *[DISPUTED]***

From time to time you heard me sustain objections to the introduction of particular evidence. You must entirely disregard any evidence as to which an objection was sustained by me, and any evidence that was ordered stricken by me.

You are not to be concerned with the reasons for my decisions regarding the admission or exclusion of evidence nor should you draw any inferences from my decisions. There are many reasons why evidence can be admitted or excluded. My job is to decide what evidence is admissible and may be considered by you as jurors. Your job is to decide what the facts are based upon the admissible evidence.

**Authority**

Adapted from: Jury Instruction of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 8) available as Ex. C to Plaintiffs' Appendix; KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS §§ 102.71, 103.30 (5th ed. 2000); 8TH CIR. CIVIL JURY INSTRUCTIONS 3.02 (2008).

1

**DPPs and IPPs' Argument For**

2       Plaintiffs' proposed instruction is essentially a follow-up to the preliminary Model

3   Instruction 1.10 ("Ruling on Objections").  Plaintiffs' instruction provides an even-handed

4   discussion about objections sometimes being sustained, sometimes being overruled, and the

5   consequences of such rulings.

6       Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

7   should be adopted.

8

9

**Defendants' Argument Against**

10      There is no reason to depart from the Ninth Circuit Instruction 1.10 ("Ruling on

11   Objections"), included in Defendants' proposed instruction below (No. 60).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

**No. 60 – [DEFENDANTS' PROPOSAL NO. \_\_\_] RULING ON OBJECTIONS** *[DISPUTED]*

From time to time during the trial, I ruled on objections.  There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

There also were occasions when I ordered that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**Authority**

Ninth Circuit Model Civil Jury Instruction 1.10, as modified.

-121-

1

**Defendants' Argument For**

2      The Ninth Circuit Model Instruction 1.10 is accurate and balanced.

3

4              **DPPs and IPPs' Argument Against**

5      Defendants' proposed instruction is also a follow-up to the preliminary Model Instruction

6   1.10 ("Ruling on Objections").  Defendants' proposed instruction, however, is imbalanced.  It only

7   provides discussion about objections being sustained and the consequences of such rulings.

8      Defendants' proposed instruction is inappropriate, not supported by their cited authority,

9   and should not be adopted.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

**No. 61 – Intentionally left Blank**


**No. 62 – CHARTS AND SUMMARIES**


Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.


**Authority**

Ninth Circuit Model Civil Jury Instructions 2.12.

[proposed] JURY INSTRUCTIONS

**No. 63 – [DPPs and IPPs' PROPOSAL NO.  ]  GENERAL EVIDENCE INSTRUCTION – DIRECT AND CIRCUMSTANTIAL** *[DISPUTED]*

    As I mentioned to you at the outset, evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give any evidence.

**Authority**

Adapted from: 9TH CIR. MANUAL MODEL CIV. JURY INSTRUCTIONS 1.9 (2007).

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction simply adopts the Model Instruction (as modified to be given after the close of evidence).

To the extent there is to be any elaboration on direct and circumstantial evidence, it should be done in a separate, supplemental instruction; the Model Instruction should be given as written.

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and should be adopted.

**Defendants' Argument Against**

The same objections discussed in the pre-trial instruction on direct and circumstantial evidence apply here. *See* No. 17.

The statement that the law does not make a distinction between direct or circumstantial evidence is not correct in an antitrust case, especially as to one of the key elements plaintiffs must prove – conspiracy. According to the Ninth Circuit, "Direct evidence in a Section 1 conspiracy must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted." *In re Citric Acid Antitrust Litig.*, 191 F.3d 1090, 1093-94 (9th Cir. 1999) (citation omitted). Here, plaintiffs have offered no direct evidence of a SRAM conspiracy and, thus, any detailed discussion of "direct evidence" – especially the language above indicating a low bar for "direct" evidence – is contrary to established antitrust law.

Further, long settled Supreme Court law precedent establishes that the antitrust laws do distinguish between direct and circumstantial evidence of conspiracy by limiting the inferences that may be drawn from circumstantial evidence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case."); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984) (ruling that circumstantial evidence, alone, will not support a finding of conspiracy if that evidence is equally consistent with a finding that defendants did not conspire); *In re Citric Acid Antitrust Litig.*, 191 F.3d 1090, 1098, 1103 (9th Cir. 1999) (rejecting plaintiffs' argument that a trier of fact is entitled to "infer participation in the conspiracy from the opportunity to do so.").

-125-

1    The following is a "correct statement of the law" from a jury instruction affirmed by the

2  Ninth Circuit: ". . . when relying solely on circumstantial evidence, the evidence must demonstrate

3  that an inference of conspiracy is more probable than an inference of independent action.  Conduct

4  as consistent with permissible competition as with illegal conspiracy does not, standing alone,

5  support an inference of antitrust conspiracy."  *City of Long Beach v. Standard Oil Co. of Cal.*, 46

6  F.3d 929, 935 (9th Cir. 1995) (*relying upon Matsushita*, 475 U.S. at 588).  "Instead, an inference

7  of conspiracy is sustainable only if 'reasonable in light of the competing inferences of independent

8  action,' … a plaintiff seeking damages for a violation of § 1 [] present[s] evidence 'that tends to

9  exclude the possibility' that the alleged conspirators acted independently.'"  *In re Citric Acid*, 191

10 F.3d at 1094 (citing *Matsushita*, 475 U.S. at 588 (quoting *Monsanto*, 465 U.S. at 764); *id.* at 1096

11 (describing *Monsanto*'s "tending to exclude the possibility that defendants acted independently"

12 standard as "well-established in both this circuit as well as in our sister circuits," citing five Ninth

13 Circuit cases and others).  *See also City of Vernon v. S. Cal. Edison Co.*, 955 F. 2d 1361, 1371 (9th

14 Cir. 1992) (same); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1156 (9th Cir.

15 2001) (same); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) ("at the summary judgment

16 stage a § 1 plaintiff's offer of conspiracy evidence must tend to rule out the possibility that the

17 defendants were acting independently.").

18    Defendants' proposed instruction (below, No. 46) introduces the meaning of direct and

19 circumstantial evidence in a balanced way and then properly indicates that antitrust law does make

20 a distinction between direct and circumstantial evidence.  Defendants later proposed instruction

21 (No. 88), within the context of explaining plaintiffs' burden to prove a conspiracy, then accurately

22 and briefly explains how antitrust law accounts for direct and circumstantial evidence.

23

24

25

26

27

28

-126-

1   **No. 64 – [DEFENDANTS' PROPOSAL NO.    ] DIRECT AND CIRCUMSTANTIAL**

2        **EVIDENCE** *[DISPUTED]*

3

4        As I explained at the beginning of the trial, evidence may be direct or circumstantial.

5   Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness

6   personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which

7   you could find another fact.  Circumstantial evidence does not itself establish the existence of

8   some fact, but rather asks you to infer the existence of a fact from other facts that may or may not

9   have been established in the case.

10        In deciding this case you must not speculate or engage in conjecture under any

11   circumstances. You are only permitted to draw logical, reasonable and fair inferences from facts

12   which you find to have been established by a preponderance of the evidence.  Inferences are

13   deductions or conclusions that reason and common sense lead you to draw logically from facts

14   established by the evidence in the case.  So, although you may consider circumstantial evidence

15   and draw inferences about the existence of other facts from it, the inferences that you draw cannot

16   be a mere guess.

17        Here, plaintiffs have offered no direct evidence of a conspiracy or any defendant's

18   participation in one.  Rather, they have offered only circumstantial evidence, and you must be

19   careful about what inferences to draw from that evidence as you decide whether plaintiffs have

20   proved the elements of their claim.  There are special rules that govern the consideration of

21   circumstantial evidence in an antitrust case, which I will explain shortly.

22

23                                    **Authority**

24   Adapted from Ninth Circuit Model Civil Jury Instruction 1.9; O'Malley, Grenig & Lee, *Federal*

25   *Jury Practice and Instructions*, §§ 104.05, 104.20 (5th ed. 2000); *see also Matsushita Elec. Indus.*

26   *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("[A]ntitrust law limits the range of

27   permissible inferences from ambiguous evidence in a § 1 case. … [C]onduct as consistent with

28   permissible competition as with illegal conspiracy does not, standing alone, support an inference

-127-

1   of antitrust conspiracy.") (citation omitted); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S.

2   752, 764, 768 (1984); *In re Citric Acid Antitrust Litig.*, 191 F.3d 1090, 1093-94 (9th Cir. 1999)

3   ("Direct evidence in a Section 1 conspiracy must be evidence that is explicit and requires no

4   inferences to establish the proposition or conclusion being asserted.") (*quoting In re Baby Food*

5   *Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999)); *City of Long Beach v. Standard Oil Co. of*

6   *California*, 46 F.3d 929, 935 (9th Cir. 1995) (approving instruction on special consideration of

7   circumstantial evidence in an antitrust case); *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d

8   1148, 1151 (9th Cir. 1988).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

**Defendants' Argument For**

In paragraphs 1 and 3, Defendants' instruction introduces the meaning of direct and circumstantial evidence in a balanced way based on Ninth Circuit Model Civil Jury Instruction 1.9 and then properly indicates that antitrust law does make a distinction between direct and circumstantial evidence.  Paragraph 2 discusses the related concept of "inferences", as defined by O'Malley § 104.20, and that the jury cannot speculate.

**DPPs and IPPs' Argument Against**

Defendants' proposed instruction does not track the Model Instruction.  Instead, defendants' proposed instruction, primarily through repetition, improperly creates the impression that circumstantial evidence is not to be trusted.  It does so even though the Model Instruction expressly provides:  "You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give any evidence."

This is particularly problematic in the this case because it is well-established that in the Ninth Circuit and other Circuits that in the antitrust price-fixing context "most cases are constructed out of a tissue of such [ambiguous] statements and other circumstantial evidence, since an outright confession will ordinarily obviate the need for a trial."  *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002); *see also In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 447 & n.13 (9th Cir. 1990).

Additionally, defendants' proposed instruction makes unwarranted reference to "special rules" for circumstantial evidence in antitrust cases.  Plaintiffs disagree with that characterization for two reasons.  First, it raises, without further explaining, the idea that jurors must be wary or cautious about considering circumstantial evidence in this case because later on they will be hearing "special rules" about such evidence.  The cases defendants cite does not even use the phrase "special rules" in jury instructions.  Second, as applied to this case, at most, the "special rules" that would apply, per defendants' own proposed instructions, would only require an instruction that jurors must find that the circumstantial evidence shows that the conspirators'

-129-

1  conduct was not "just as consistent with permissible competition as with illegal conspiracy."  *See*

2  defendants' proposed instruction ("FIRST ELEMENT: PROOF OF CONSPIRACY BY

3  CIRCUMSTANTIAL EVIDENCE") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

4  475 U.S. 574, 588 (1986)).  In other words, the circumstantial evidence would need only to show,

5  per *City of Long Beach*, that the "conspirators were not acting independently." 46 F.3d at 934.

6       Similarly, the instruction advises, without basis, that jurors need to be "careful" about

7  relying on circumstantial evidence.

8       Further instruction on circumstantial evidence may be given in other instructions, but

9  defendants' proposed instruction here seeks to improperly portray the import of such further

10  instruction.

11       Finally, and perhaps most problematic is the fact that defendants' proposed instruction

12  impermissibly usurps the role of the jury as fact-finder by stating "Here, plaintiffs have offered no

13  direct evidence of a conspiracy or any defendant's participation in one.  Rather, they have offered

14  only circumstantial evidence . . . ."  It is for the jury, after trial, to determine if there was any direct

15  evidence, not defendants in advance of trial.

16       Defendants' proposed instruction, therefore, is inappropriate, not supported by their cited

17  authority and should not be adopted.

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

**No. 65 – [DPPs and IPPs' PROPOSAL NO. ___]  GENERAL EVIDENCE INSTRUCTION — DIRECT AND CIRCUMSTANTIAL EVIDENCE (EXAMPLES; IN THIS CASE)** *[DISPUTED]*

To give you examples of direct evidence and circumstantial evidence, assume for the moment that an important issue for you to decide as a jury is whether or not it was raining yesterday at 3:00 p.m. First, I will give you an example of direct evidence. If the witness testified that he or she actually saw or heard it rain, that would be direct evidence. In other words, the witness has direct knowledge that it rained. The witness personally saw or heard it rain. If you jurors determined that the witness was believable, you could consider the witness's testimony as direct evidence that it rained yesterday at 3:00 p.m.

Now I will give you an example of circumstantial evidence. Suppose a witness testified that yesterday he or she was inside a sound-proof room without windows. The witness further testified that while he or she was in this room, another person entered the room from outside at 3:00 p.m. wearing a wet raincoat. The witness did not actually see it rain or hear it rain. But, if you jurors determine that the witness was believable, you could consider the witness's testimony as circumstantial evidence that it was raining outside at the time. In other words, you could infer or conclude from the circumstance that a person walked in wearing a wet raincoat that it was raining outside.

You should consider both kinds of evidence. Again, the law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

In this case, a central question is whether the defendants and their alleged coconspirators participated in conspiracy to fix, raise, maintain or stabilize prices of SRAM as alleged by plaintiffs. You may consider circumstantial and direct evidence to determine whether a defendant or an alleged coconspirator participated in the alleged conspiracy. You may make reasonable inferences based on the conduct of defendants and the alleged coconspirators to determine if there was such a conspiracy.

-131-

1      You should consider circumstantial and direct evidence to reach your own conclusions

2  about whether a unity of purpose or a common design and understanding was reached. You should

3  consider all the evidence. Plaintiffs should be given the full benefit of their proof. You must

4  consider the evidence as a whole. That means one piece of evidence must be viewed in the light of

5  the other evidence, and as a result of considering all the evidence together, you may make an

6  inference to reach a conclusion. Each piece of evidence is not to be dismembered and viewed

7  separately or in isolation; the evidence is to be viewed in its totality, collectively and as a whole.

8  Indeed, most cases such as this are constructed out of circumstantial evidence since an outright

9  confession of wrongdoing would ordinarily eliminate the need for a trial. For instance, you may

10  consider the probability that, if there were unwritten agreements to break the law, no lawbreaker

11  would admit to the violation in court.

12      As I said before, the law does not distinguish between direct and circumstantial evidence,

13  but simply requires that the jury find the facts in accordance with the preponderance of all the

14  evidence, both direct and circumstantial. You may use both direct and circumstantial evidence to

15  find out the truth as to the facts of the case.

16      In short, as jurors, it is your job to look at and listen to all the evidence and to figure out

17  what it means. In figuring out what the evidence means, and where it leads, you are entitled to

18  make all reasonable inferences.

19

20                                **Authority**

21  Adapted from: *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 368-69 (3d Cir. 2004); *InterVest, Inc.*

22  *v. Bloomberg, L.P.*, 340 F.3d 144, 163-64 (3d Cir. 2003); *Rossi v. Standard Roofing*, 156 F.3d

23  452, 465 (3d Cir. 1998); *Alvord-Polk, Inc. v. F. Schumacher Corp.*, 37 F.3d 996, 1000 (3d Cir.

24  1994); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del., Inc.*, 998 F.2d 1224, 1230 (3d Cir.

25  1993); *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962); *In re High*

26  *Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002); *Norton v. Sam's Club*, 145

27  F.3d 114, 119 (2d Cir. 1998); *United States v. Sureff*, 15 F.3d 225, 228 (2dCir. 1994); *United*

28  *States v. Dove*, 916 F.2d 41, 45-46 (2d Cir. 1990); *Johns Hopkins Univ. v. CellPro*, 894 F. Supp.

-132-

819, 830 (D. Del. 1995); Jury Instruction of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 12) *available* as Ex. C to Plaintiffs' Appendix; Jury Instructions of Judge John V. Singleton in *In re Corrugated Container Antitrust Litig.*, MDL NO. 310 (S.D. Tex.) (as given on Sept. 11, 1980, Tr. Vol. 100 at 54-56) *available* as Ex. B to Plaintiffs' Appendix; KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 104.05 (5th ed. 2000).

[proposed] JURY INSTRUCTIONS

1

**DPPs and IPPs' Argument For**

2          Plaintiffs' proposed instruction provides illustrative examples of direct and circumstantial

3    evidence, and then consistent with well-established law properly states that both direct and

4    circumstantial evidence can be considered with respect to the issue of the existence of conspiracy.

5    "[M]ost [price-fixing] cases are constructed out of a tissue of such [ambiguous] statements and

6    other circumstantial evidence, since an outright confession will ordinarily obviate the need for a

7    trial."  *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002); *see also*

8    *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 447 &

9    n.13 (9th Cir. 1990); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986);

10   *In re Flat Glass Antitrust Litig.,* 385 F. 3d 350, 361, fn. 12 (3d Cir. 2004) ("exchanges of

11   confidential price information, cannot simply be explained as a result of oligopolostic

12   interdependence"); *see also Fleischman v. Albany Medical Center*, 2010 WL 2998304 at *23-26

13   (N.D.N.Y., July 22, 2010) (expressly recognizing that exchanges of information is one of many

14   forms of circumstantial evidence that plaintiffs can use to "exclude the possibility that the alleged

15   conspirators acted independently").

16          Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including

17   Supreme Court and Ninth Circuit precedent, and should be adopted.

18

19

**Defendants' Argument Against**

20          For all of the reasons discussed above concerning plaintiffs' preceding proposed instruction

21   on direct and circumstantial evidence, this instruction should be struck as contrary to the law.

22          This instruction is erroneous in several respects.  First, it is unbalanced in that it repeatedly

23   suggests that the jury may find for plaintiffs if it finds a conspiracy to fix prices, but does not

24   remind the jury that if the circumstantial evidence does *not* support a finding of conspiracy, it must

25   find for the defendants.  Furthermore, it fails to inform the jury that while they may consider

26   circumstantial evidence, they may not engage in speculation.

27          In stating on two occasions that the law makes no distinction between direct and

28   circumstantial evidence, but failing to explain the rule on consideration of circumstantial evidence

-134-

1    in an antitrust case (*see City of Long Beach v. Standard Oil Co. of California*, 46 F.3d 929, 935

2    (9th Cir. 1995)), the instruction also is misleading.  *See Chuman*, 76 F.3d at 294 ("Jury

3    instructions must be formulated so that they fairly and adequately cover the issues presented,

4    correctly state the law, and are not misleading.").

5            In addition, unlike Defendants' discussion above of long settled Supreme Court law

6    precedent which has been adopted in the Ninth Circuit, plaintiffs focus on older cases all outside

7    the Ninth Circuit.  The sole case from the Supreme Court, *Continental Ore*, reflects the

8    unexceptional notion that certain evidence should be viewed as a whole (a concept that Defendants

9    agree and include in their instructions).  Further, Plaintiffs' own authority confirms that "certain

10   inferences may not be drawn from circumstantial evidence in an antitrust case'", which reflects

11   that a "higher threshold [regarding circumstantial evidence] is imposed in antitrust cases." *In re

12   Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004) (quoting *InterVest, Inc. v. Bloomberg,

13   L.P.*, 340 F.3d 144, 160 (3d Cir. 2003).  Plaintiffs' proposed instruction would be misleading.

14           Plaintiffs lengthy example about "direct evidence" is irrelevant because plaintiffs have

15   offered no direct evidence of a SRAM conspiracy.  While a brief example about whether or not it

16   rained is relevant to a general introduction to the concept of direct and circumstantial evidence

17   (and that example is included in No. 18 within Defendants' proposed pre-trial Instruction), it is not

18   relevant to plaintiffs' proposed instruction here attempting to apply the concepts of direct and

19   circumstantial evidence in the antitrust context.  Plaintiffs' own selection of out-of-circuit authority

20   confirms this.  "Direct evidence is 'explicit and requires no inferences to establish the proposition

21   or conclusion being asserted.'" *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159, 163-64 (3d

22   Cir. 2003) (citation omitted) (finding no direct evidence of antitrust conspiracy, which it found

23   was "difficult to come by").  Any detailed discussion of "direct evidence" – especially plaintiffs'

24   proposed language trying to lower the bar for "direct" evidence to prove an antitrust conspiracy –

25   is contrary to established antitrust law described above and there is no evidence to support it.

26   Plaintiffs are entitled to an instruction on a theory of the case only if it is supported by the

27   evidence.  *See Jenkins v. Union Pacific R. Co.*, 22 F.3d 206, 210 (9th Cir. 1994); *United States v.*

28

-135-

1   *Gotlieb Breitling*, 61 U.S. 252, 254- 255 (1857) ("It is clearly error in a court to charge a jury upon

2   a supposed or conjectural state of facts, of which no evidence has been offered.").

3       As stated previously, the phrase "fix, raise, maintain or stabilize prices" must be limited to

4   just "fix prices" and the phrase "unity of purpose or a common design and understanding" must be

5   adjusted to at least include  the phrase "designed to achieve an unlawful objective."

6       In paragraph 5, the concept that "You must consider the evidence as a whole" is correct.

7   However, plaintiffs go on to repeat the concept in different forms for a full paragraph and repeat

8   these sentences and paragraph throughout their instructions.  (As just a small example, plaintiffs

9   have sentences about considering "all the evidence" fifteen times, "all of the evidence" five more

10  times, to treat evidence "collectively" or not to "dismember" evidence three times each, and to

11  consider the evidence as a "whole" seven times.)  The repetition is unnecessary.  Similarly, the

12  statement that "plaintiffs should be given the full benefit of their proof" is not a legal standard that

13  is comprehensible to a jury, and improperly suggests that the evidence favors plaintiffs.

14      Finally, the statements, "most cases such as this are constructed out of circumstantial

15  evidence since an outright confession of wrongdoing would ordinarily eliminate the need for a

16  trial," and "you may consider the probability that, if there were an unwritten agreement to break

17  the law, no lawbreaker would admit to the violation in court," are not based on any factual record,

18  and are misleading and highly prejudicial in that they suggest that plaintiffs were forced to come

19  to court because no defendant would admit to entering into an agreement in violation of the

20  antitrust laws.

21

22

23

24

25

26

27

28

-136-

**No. 66 – [DPPs and IPPs' PROPOSAL NO. ___]  GENERAL EVIDENCE INSTRUCTION –
INFERENCES *[DISPUTED]***

You are to consider only the evidence that you hear and see in this courtroom. You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life. You are permitted to draw such reasonable inferences in light of your experience as seem justified from the facts that you find have been established.

Inferences are deductions or conclusions that your reason and common sense lead you to draw from facts that have been established by the evidence. In our lives, we often look at one fact and conclude from it that another fact exists. For instance, I gave you the example of someone who is in a room without windows when a person enters from outside who is wearing a wet raincoat. The person already in the room can infer that it is raining outside.

Of course, there are many kinds of inferences that can be made. The point is, after hearing and seeing the evidence, you may reach a decision based on what witnesses said, based on what the exhibits say or show, based on any facts agreed to by the lawyers, and based on what you infer from all of the evidence, including all the circumstances considered together – use your reason and your common sense.

**Authority**

Adapted from: *Cont't Ore Co. v. Union Carbide & Carbon*, 370 U.S. 690, 698-99 (1962); Jury Instruction of Judge Gary L. Lancaster in *In re Industrial Silicon Antitrust Litig.*, No. 95-2104 (W.D. Pa.) (as given on May 17, 1999, N.T. 47-48) *available* as Ex. A to Plaintiffs' Appendix; Jury Instruction of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 14) *available* as Ex. C to Plaintiffs' Appendix; KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 104.20 (5th ed. 2000). *See also Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998).

1

**DPPs and IPPs' Argument For**

2        Plaintiffs' proposed instruction provides illustrative examples of inferences, and then

3   consistent with well-established law properly states that inferences can be used to evaluate

4   evidence; in particular, that in price-fixing cases evidence should be view as a whole, not

5   piecemeal.  "[P]laintiffs should be given the full benefit of their proof without tightly

6   compartmentalizing the various factual components and wiping the slate clean after scrutiny of

7   each. . . . [T]he duty of the jury is to look at the whole picture . . . ."  *Continental Ore Co. v. Union*

8   *Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962); *see also Knevelbaard Dairies v. Kraft Foods,*

9   *Inc.*, 232 F.3d 979, 990 (9th Cir. 2000); *In re High Fructose Corn Syrup Antitrust Litig. ("HFCS")*,

10   295 F.3d 651, 655-56 (7th Cir. 2002); *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 2010

11   WL 3632775 at *4 (N.D. Cal. March 30, 2010); *In re TFT-LCD (Flat Panel) Antitrust Litigation*,

12   267 F.R.D. 583, 607 (N.D. Cal. 2010).

13       Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including

14   Supreme Court and Ninth Circuit precedent, and should be adopted.

15

16

**Defendants' Argument Against**

17       Plaintiffs' instruction is duplicative and unnecessary.  Paragraph 2 of Defendants' proposed

18   instruction entitled "Direct and Circumstantial Evidence" (No. 64) provides a balanced and fair

19   introduction to inferences at trial.  Further, plaintiffs repeating the same example about rain from

20   its prior instruction again shows that this instruction is duplicative and unnecessary.

21       To the extent plaintiffs are trying to describe inferences under antitrust law (which is

22   possible because it is placed immediately after plaintiffs' proposed instruction describing the

23   related concept of circumstantial evidence and antitrust law), it is inaccurate.  *See, e.g.,*

24   *Matsushita*, 475 U.S. at 588 ("Antitrust law limits the range of permissible inferences from

25   ambiguous evidence in a § 1 case."); *In re Citric Acid Antitrust Litig.*, 191 F.3d 1090, 1098, 1103

26   (9th Cir. 1999) (rejecting plaintiffs' argument that a trier of fact is entitled to "infer participation in

27   the conspiracy from the opportunity to do so.").

28

**No. 67 – [DEFENDANTS' PROPOSAL NO.      ] PARTIES NOT BEFORE THE COURT**

*[DISPUTED]*

     You have heard evidence about certain other parties, specifically, Micron, Renesas, Hitachi, Mitsubishi, Hynix, NEC, Etron, ISSI, and Toshiba.  You may not infer from the fact that these parties are not before the Court that either Samsung or Cypress is liable or not liable.  Do not speculate about the reasons why these parties are not before the Court.  You must base your verdict concerning each remaining defendant solely on the evidence admitted as to the remaining defendants on trial.

**Authority**

Adapted from ABA Model Jury Instructions in Criminal Antitrust Cases, chpt. 2.B.4 at p.40; Jury instructions issued in *Alakayak, et al. v. All Alaskan Seafoods, Inc., et al.* (Superior Ct. Alaska), available at http://www.abanet.org/antitrust/at-committees/at-trial/pdf/jury-instructions/alakayak.pdf, Instruction No. 11.

1

**Defendants' Argument For**

2        The other alleged participants will be discussed at trial and, in fact, the jury will be asked

3   to determine whether or not they were members of the alleged conspiracy.  If the jury finds a

4   conspiracy but finds that particular alleged participants in fact did not participate, defendants

5   cannot be liable for damages caused by those non-participants' sales under principles of joint and

6   several liability.  *See* No. 86.

7        However, the jury needs to be cautioned that the fact that these alleged participants are not

8   present at trial has no impact on whether the current defendants are liable.

9

10       **DPPs and IPPs' Argument Against**

11       Defendants' proposed instruction, based on a *criminal* model jury instruction, as well as a

12   state law civil case, unnecessarily draws jurors' attention to the issue of the liability of defendants

13   as compared to that of absent alleged coconspirators.  Federal courts in civil antitrust price-fixing

14   cases have properly instructed jurors that they should not concern themselves with the absence of

15   alleged coconspirators.  *See* plaintiffs' instruction herein ("OTHER ALLEGED PARTICIPANTS

16   IN CONSPIRACY") (citing Jury Instruction of Judge Gary L. Lancaster in *In re Indus. Silicon*

17   *Antitrust Litig.*, No. 95-2104 (W.D. Pa.) (as given on May 17, 1999, N.T. 51-52), *available as*

18   Ex. A to Plaintiffs' Appendix).  Such an instruction can and should be given without flagging the

19   issue of what the alleged coconspirators' absence may or may not mean with respect to

20   defendants' liability.

21       Defendants' proposed instruction is inappropriate, not supported by their cited authority,

22   and should not be adopted.

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

**No. 68 – [DPPs and IPPs' PROPOSAL NO. ___] WEIGHING THE EVIDENCE - CREDIBILITY OF WITNESSES** *[DISPUTED]*

As I mentioned to you at the outset, as jurors, you are the sole judges of the credibility of the witnesses, and you decide the weight their testimony deserves. Your determination of the credibility of a witness largely depends on the impression that he or she made on you as to whether or not he or she was giving an accurate version of what occurred.

While you are deliberating, you have with you your common sense, your good judgment, and your experience.  How did the witness impress you? Did the witness' version appear straightforward and candid or did the witness try to hide some of the facts? Is there a motive to testify falsely? In other words, what you try to do is to size a person up, just as you would do in any important matter where you were undertaking to determine whether or not a person is truthful, candid and straightforward.

Consider also any relation each witness may bear to either side of the case; the manner in which the witness, or the witness' employer or former employer, might be affected by the verdict; and the extent to which, if at all, each witness' testimony is either supported or contradicted by other evidence, such as, for example, inconsistent documents or inconsistent prior statements.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves in light of the witness' motive and credibility.

You may, in short, believe everything a witness says, or any part of it or none of it.

**Authority**

Adapted from: Jury Instructions of Judge Gary L. Lancaster in *In re Indus. Silicon Antitrust Litig.*, No. 95-2104 (W.D. Pa.) (as given on May 17, 1999, N.T. 48-49) *available* as Ex. A to Plaintiffs' Appendix; Jury Instructions of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 17) *available* as Ex. C to Plaintiffs' Appendix; KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS §§101.43, 105.01 (5th

-141-

1   ed. 2000); PATTERN CRIM. JURY INSTRUCTIONS FOR THE 7TH CIR. 1.03 (1998); 8TH CIR.

2   CIVIL JURY INSTRUCTIONS 3.03 (2008); 11TH CIR. PATTERN JURY INSTRUCTIONS (CIV.

3   CASES) 3 (2005).

W02-WEST:1ESC1\403121977.4
MDL No. 1819

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction properly instructs jurors as to the various ways in which they can consider and weigh the credibility of a witness.

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and should be adopted.

**Defendants' Argument Against**

The reference in the third paragraph to the manner in which the witness' employer or former employer might be affected by the verdict is prejudicial, in that it suggests that one of the defendants who employs or formerly employs a witness might have improperly influenced a witness' testimony to avoid an adverse verdict.  This language does not appear in the Federal Jury Practice and Instructions.

**No. 69 – [DEFENDANTS' PROPOSAL NO.    ] BIAS OF WITNESSES** *[DISPUTED]*

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection which the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

For instance, you have heard the testimony of [*identify witnesses*] who testified pursuant to cooperation agreements with the plaintiffs. As part of their agreements, those witnesses agreed actively to cooperate with the plaintiffs in exchange for certain benefits, including not being sued or favorable settlements.

For these reasons, in evaluating the testimony of [*name of witness*], you should consider the extent to which or whether [*his*] [*her*] testimony may have been influenced by any of these factors. In addition, you should examine the testimony of [*name of witness*] with greater caution than that of other witnesses.

It is your duty to consider whether the witness has permitted any such bias or interest to color his testimony. In short, if you find that a witness is biased, you should view his testimony with caution, weigh it with care and subject it to close and searching scrutiny.

**Authority:**

Adapted from Leonard B. Sand, *Modern Federal Jury Instructions – Civil*, Instr. 76-2 (Matthew Bender, 2001); Ninth Circuit Model Criminal Jury Instructions 4.9.

1

**Defendants' Argument For**

2          As discussed previously, certain alleged co-conspirators have settled with plaintiffs.  If

3    there is an issue of bias of any of the related witnesses, that would be a proper area of cross

4    examination and a jury instruction.  *See* Authorities cited above.

5

6

**DPPs and IPPs' Argument Against**

7          Defendants' proposed instruction, primarily based on a *criminal* model jury instruction,

8    improperly references settlements with settling defendants as a reason to disbelieve the testimony

9    of a settling defendant witness.

10          Plaintiffs have moved to exclude evidence of settlements as violative of F.R.E. 408 and

11    403, and for the same reasons that the Court should grant that motion, this instruction should not

12    be given. Defendants want the jury to believe that other co-conspirator testimony that implicates

13    them is not truthful simply because that witness's employer may have reached an agreement to

14    settle the case.  Under the logic of these instructions, plaintiffs would be entitled to an instruction

15    that the testimony of Samsung and Cypress witnesses should be viewed with greater caution than

16    other witnesses because of their desire to cooperate with their employer, who will benefit from

17    both price fixing and a defense verdict.  Defendants would surely object to such an instruction for

18    the same reasons, no. 69 should not be given.

19          Moreover, courts routinely reject the argument that admission of settlements should be

20    permitted so that the jury may consider such settlement in assessing the credibility of a settling

21    defendant witness.  *See, e.g., Myers v. Pennzoil Co.*, 889 F.2d 1457, 1460-62 (5th Cir. 1989)

22    (affirming exclusion of evidence of  settlement to prove the bias of a witness who was related to

23    the former defendant); *see also Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1235 (7th Cir. 1983)

24    ("appellants suggest that the settlement agreement was relevant to Irving's credibility. However, if

25    it had any effect at all, it could only have enhanced his credibility, because at the time of his

26    deposition and trial he had no personal interest in the lawsuit.")

27          Defendants' proposed instruction is inappropriate, not supported by their cited authority,

28    and should not be adopted.

**No. 70 – [DPPs and IPPs' PROPOSAL NO. ___]  WEIGHING THE EVIDENCE - NUMBER OF WITNESSES OR EXHIBITS NOT DISPOSITIVE *[DISPUTED]***

The weight of the evidence is not necessarily determined by the number of witnesses who testify to a fact or the number of exhibits presented. The test is not which side brings the greater number of witnesses, or presents the greater quantity of exhibits. Rather, the test is which evidence you believe is most accurate, persuasive, and otherwise trustworthy. In other words, the weight of the evidence is determined by the quality of the evidence presented.

Indeed, you can find a fact is true even if no witness testifies that it is true, and even if all witnesses say that it is false. For example, based on evidence that you trust, such as documents, you may find that certain things happened – even if all of the persons involved currently deny that the things happened. You may even find that certain things happened based solely on inferences from evidence you trust.

**Authority**

Adapted from: *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1952); Jury Instructions of Judge Gary L. Lancaster in *In re Indus. Silicon Antitrust Litig.*, No. 95-2104 (W.D. Pa.) (as given on May 17, 1999, N.T. 49) *available* as Ex. A to Plaintiffs' Appendix; Jury Instructions of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 19) *available* as Ex. C to Plaintiffs' Appendix; KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS §§ 104.54, 105.01 (5th ed. 2000).

-146-

1

**DPPs and IPPs' Argument For**

2      Plaintiffs' proposed instruction properly instructs jurors as to the various ways in which

3 they can consider and weigh evidence, including documentary versus testimonial evidence.  This

4 instruction is important because defense witnesses will often disavow having memory of

5 documents.  Therefore, jurors should be informed that they can weigh the evidence in a now-

6 historical, then-contemporaneous document, even though a witness may not testify as to his or her

7 recollection of the matters in such documents.

8      Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

9 should be adopted.

10

11

**Defendants' Argument Against**

12      The second paragraph is a misstatement of the law.  In *Dyer v. MacDougall*, 201 F.2d 265

13 (2d Cir. 1952), the court considered it "true in strict theory" that a party having the burden of proof

14 might succeed in persuading the jury that his allegations are true despite all witnesses denying

15 them, but went on to hold that in those circumstances, "we think it plain that a verdict would

16 nevertheless have to be directed against him" and affirming summary judgment against the

17 plaintiff.  *Id*. at 269.  This is because in such a case, "there could not be an effective appeal from

18 the judge's disposition of a motion for directed verdict."  *Id*.  Moreover, the concept that plaintiffs

19 can prove their case "even if no witness testifies that it is true, and even if all witnesses say that it

20 is false" does not appear in Federal Jury Practice and Instructions and, in fact, contradict the ones

21 cited by plaintiffs.  *See* O'Malley § 104.54 ("You may find that the testimony of a small number of

22 witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the

23 contrary."); *id.* § 105.01 (same).

24      While Defendants do not dispute the first paragraph, the concept is already reflect in

25 Defendants' balanced instruction on Preponderance of the Evidence.  *See* No. 54.

26

27

28

**No. 71 – [DPPs and IPPs' PROPOSAL NO. ___]  WEIGHING THE EVIDENCE –**
**DEPOSITION IN LIEU OF LIVE TESTIMONY *[DISPUTED]***

During this trial, some testimony was presented to you by deposition.

As I mentioned to you during the trial, a deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial, either by reading or showing a videotape of the deposition testimony.  In either case, you should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify from the witness stand, including as to credibility and weight. As with live testimony during trial, you may reject or accept the deposition testimony of a witness in whole or in part.

**Authority**

Adapted from: Jury Instructions of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 18) *available as* Ex. C to Plaintiffs' Appendix; 5TH JUDICIAL CIR. PATTERN JURY INSTRUCTIONS (CIV. CASES) 2.23 (2006); KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS §§ 102.23, 105.02 (5th ed. 2000); 9TH CIR. MANUAL MODEL CIV. JURY INSTRUCTIONS 2.4 (2007).

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction, to be given after the close of evidence, is essentially just a balanced, follow-up to Model Instruction 2.4 "DEPOSITION IN LIEU OF LIVE TESTIMONY."

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and should be adopted.

**Defendants' Argument Against**

There is no reason to depart from the Ninth Circuit Instruction 2.4. Further, the comment to the Ninth Circuit instruction "recommends that it be given immediately before a deposition is to be read" (not post-trial) and "need not be repeated."

**No. 72 – [DPPs and IPPs' PROPOSAL NO. __] WEIGHING THE EVIDENCE - EXPERT WITNESSES** *[DISPUTED]*

Both plaintiffs and defendants have called expert witnesses in this case. As I mentioned to you at the outset, because of their education and experience, these witnesses were allowed to state their opinions on certain subjects in which they profess to be expert and to state the reasons for their opinions.

The rules of evidence provide that if scientific, technical or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify and state his opinion concerning such matters.

In determining what weight, if any, to give an expert's opinion, you should consider the expert's qualifications and reliability, the reasons given for his opinion, and whether the factual assumptions that underlie his opinion are supported by credible evidence in this case.

You are not bound by an expert's opinion merely because he is an expert. You may accept it or reject it in whole or in part as in the case of any other witness. Give it the weight, if any, that you think it deserves.

In resolving any conflict that may exist in the testimony of expert witnesses, you are entitled to weigh the opinion of one expert against that of another. In doing this, you should consider the relative qualifications and reliability of the expert witnesses, the reasons for each opinion, and the facts and other matters upon which the opinion was based.

In summary, after making your own judgment, you will give the testimony of each expert witness the weight, if any, that you may think it deserves. You may, in short, accept or reject the testimony of any expert witness in whole or in part.

**Authority**

Adapted from: *LePage's Inc. v. 3M*, 324 F.3d 141, 165 (3d Cir. 2003); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 665 (7th Cir. 2002); Jury Instructions of Judge Gary L.

-150-

1   Lancaster in *In re Indus. Silicon Antitrust Litig.*, No. 95-2104 (W.D. Pa.) (as given on May 17,

2   1999, N.T. 50-5 1) *available as* Ex. A to Plaintiffs' Appendix; Jury Instructions of Chief Judge

3   Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197

4   (D.D.C.) (as given on June 11, 2003, Instruction No. 21) *available as* Ex. C to Plaintiffs'

5   Appendix; KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY

6   PRACTICE AND INSTRUCTIONS § 104.40 (5th ed. 2000); Manual for Complex Litigation,

7   Fourth, § 11.51 (2004); ABA Civil Trial Practice Standards, Standard No.6 (Aug. 2007);

8   PATTERN CRIM. JURY INSTRUCTIONS FOR THE 7TH CIR. 3.07 (1998); 11TH CIR.

9   PATTERN JURY INSTRUCTIONS (CIV. CASES) 5.1 (2005).

W02-WEST:1ESC1\403121977.4
MDL No. 1819

[proposed] JURY INSTRUCTIONS

1                                   **DPPs and IPPs' Argument For**

2         Plaintiffs' proposed instruction, to be given after the close of evidence, is essentially just a

3 balanced, follow-up to Model Instruction 2.11 "Expert Opinion."

4         Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

5 should be adopted.

6

7                                     **Defendants' Argument Against**

8         Defendants' instruction on expert witnesses (below, No. 73) provides more comprehensive

9 information about the consideration of expert testimony.  For example, it directs the jury to

10 consider the assumptions and analysis underlying the expert reports and focuses the jury on the

11 specific economic foundations of the expert testimony in this case.

12         Further, plaintiffs proposed sentences regarding the "weight, if any, to give an expert's

13 opinion" is incomplete.  Plaintiffs rely, in part, on O'Malley § 104.40, but plaintiffs omit the very

14 next sentence:

15         If you should decide that the opinion of an expert witness is not based upon
           sufficient education and experience, or if you should conclude that the reasons

16         given in support of the opinion are not sound, or that the opinion is outweighed by
           other evidence, then you may disregard the opinion entirely.

17

18 This is included in Defendants' instruction.

        Also, a Northern District of California opinion, *Stein v. Pacific Bell*, No. C00-2915 SI,

19

20 2007 WL 831750, at *9 (N.D.Cal. Mar 19, 2007), recently distinguished plaintiffs' first cited

authority (*LePage's*) and stressed that expert testimony must disaggregate lawful from unlawful

21

22 causes or else "it cannot support a jury's verdict":

23         *LePage's [Inc. v. 3M*, 324 F.3d 141, 165 (3d Cir. 2003)] is distinguishable because
           there the jury had already determined that the defendant's actions harmed the

24         plaintiff; the only question was to what extent. *LePage's*, 324 F.3d at 166. Here, the
           problem is not that Braunstein has failed to separate out the damages caused by

25         Telco Act violations, but rather that he did not offer any facts or analysis to show
           that there was any causal injury at all. …

26         As the Ninth Circuit has stated, "[t]here is nothing inconsistent between requiring
           proof that damages were caused by illegal acts and the rule that a plaintiff need not

27         disaggregate damages among those acts found to be unlawful." *City of Vernon v. S.*
           *Cal. Edison Co.*, 955 F.2d 1361, 1372 (9th Cir.1992) (summary judgment proper

28         where damages study is speculative and does not separate effects of lawful and

                   [proposed] JURY INSTRUCTIONS

unlawful activity). " 'When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable.'" *Rebel Oil Co. Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1436 (9th Cir. 1995) (*quoting Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993));

*Stein*, 2007 WL 831750, at *9.

Plaintiffs proposed language also does not sufficiently caution about how to weigh the testimony of the expert.  For example, many of the authorities cited by plaintiffs recognize that certain types of experts "may cause the jury to give their opinions undue weight."  *See* Manual for Complex Litigation, Fourth, § 11.51 (2004); *see also* Pattern Crim. Jury Instructions For The 7th Cir. 3.07 (1998), comment ("The term 'expert' has been omitted to avoid the perception that the court credits the testimony of such a witness.  …  [And noting] the danger that an expert's testimony will be given undue weight by the jury does exist.").   Defendants have raised very serious concerns with plaintiffs' expert, Dr. Armando Levy, in their *Daubert* Motion and Motions for Summary Judgment and any instruction regarding the weight of his testimony must sufficiently stress how the jury must properly weigh his testimony.

**No. 73 – [DEFENDANTS' PROPOSAL NO.     ] EXPERT OPINION** *[DISPUTED]*

Expert witnesses are witnesses who, by education and experience, have become expert in some art, science, profession, or calling.  Expert witnesses may state their opinions on relevant and material matters, in which they profess to be an expert, and they may also state their reasons for the opinions.  You should consider each expert's opinion that has been received in evidence in this case and give it such weight as you may think it deserves.

The fact that witnesses have given expert opinions does not mean that their opinions are correct or binding upon you or that you are obligated to accept their opinions as correct or truthful. You are entitled to assess the testimony of an expert witness in the same way that you assess the testimony of any other witness. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness' education, background qualifications, ability and experience, the reasons given for the opinion, the sources of the information upon which the opinion was based, any bias or interests the witness has in the outcome of the case, and all the other evidence in the case.

If you should decide that the opinion of an expert witness is not based upon sufficient education, experience or effort, or if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely.  Thus, if you find that any of the pertinent underlying assumptions made by one of these experts in preparing a damage report are not reasonable or are not proven by a preponderance of the evidence, or if you find that one of these expert's conclusions depend on a comparison of things which have not been proven to be comparable, or if you find that the expert's report did not incorporate all aspects of the economic reality, then you should consider this in determining the weight – if any – you will give to these assumptions and the effect they have on plaintiffs' claim.

Moreover, you are certainly not obligated to accept an expert's characterization of ordinary facts within your own understanding or experience. For example, an expert witness specializing in economics is no more qualified then you to draw inference from noneconomic evidence such as

-154-

1   the meaning of conversations or public speeches. Therefore, you should use your independent

2   judgment in drawing conclusions based on testimony by experts using sources of information

3   outside the specific areas of their expertise.

4        The testimony of experts is intended only to assist you in reaching your ultimate

5   conclusion.  You should not accept opinion testimony merely because I allowed the witness to

6   testify concerning his or her opinion.  It is your responsibility to determine the credibility and

7   weight that should be given to their opinions in the light of all the evidence.  Furthermore, you are

8   instructed that expert opinion cannot form the basis of a verdict unless the facts and assumptions

9   upon which the expert relies afford a reasonably accurate basis for his conclusions as distinguished

10  from mere guesswork.

11

12                                   **Authority**

13  Paragraphs 1-2:  Ninth Circuit Model Civil Jury Instruction 2.11 and O'Malley, Grenig & Lee,

14  *Federal Jury Practice and Instructions*, § 104.40 (5th ed. 2000), as modified; paragraph 3:

15  O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 104.40 (5th ed. 2000) and

16  ABA Model Jury Instructions, F-46, as modified; paragraphs 4-5: Leonard B. Sand, *Modern*

17  *Federal Jury Instructions – Civil*, Instr. 76-9 (Matthew Bender, 2001).  *See also Farley Transp.*

18  *Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1350-52 (9th Cir. 1985), superseded by rule on

19  other grounds as stated in *Patel v. Penman*, 103 F.3d 868 (9th Cir. 1996); *Concord Board Corp.,*

20  *v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000); *R.S.E., Inc. v. Pennsy Supply, Inc.*,

21  523 F.Supp. 954, 966 (M.D.Pa. 1981); Fed.R.Evid. 702 and 703; Jury instructions issued in *In re*

22  *Scrap Metal Antitrust Litig.*, (N.D. Ohio Feb. 09, 2006), *available at*

23  http://www.abanet.org/antitrust/at-committees/at-trial/pdf/jury-instructions/scrap-metal-jury-

24  instructions.pdf, pp.8-9; Jury instructions issued in *Alakayak, et al. v. All Alaskan Seafoods, Inc.*,

25  *et al.* (Superior Ct. Alaska), available at http://www.abanet.org/antitrust/at-committees/at-

26  trial/pdf/jury-instructions/alakayak.pdf, Instruction No. 5.

27

28

**Defendants' Argument For**

*See* Authority cited above and Defendants' argument in response to plaintiffs' proposed instruction (No. 72).


**DPPs and IPPs' Argument Against**

Defendants' proposed instruction is a follow-up to Model Instruction 2.11 "Expert Opinion."  Defendants' proposed instruction, however, is imbalanced and improper for several reasons.  The instruction is misleading and argumentative.  The third paragraph of defendants' proposed instruction is the thinly-veiled argument by defendants' experts' challenging the testimony and analysis of plaintiffs' experts.  Defendants list no less than **nine** reasons to give an experts' report less weight, and **_not a single_** reason why to credit expert opinion.  Such a recitation unfairly inures to defendants' benefit because plaintiffs have the burden of proof.  This instruction seeks to poison the well with regard to expert testimony in the case in general.

Similarly, the fourth paragraph is improper.  It *again* identifies several reasons why the jurors should *disregard* experts' testimony, but the reasons given parallel or mimic the arguments made by Defendants' experts as to why Plaintiffs' experts' testimony should be disregarded.  This is argument, not instructions on the law.  For example, Dr. Kalt claimed that Dr. Noll and Dr. Harris should not have analyzed defendant communications in assessing collusion.  By this proposed instruction defendants are seeking to have that argument presented as law to jurors in the form of a jury instruction with statements such as "an expert witness specializing in economics is no more qualified then [sic] you to draw inference from noneconmic evidence such as the meaning of conversations."  This is simply a blatant statement of Dr. Kalt's opinions and arguments against plaintiffs' experts.  In sum, defendants impermissibly seek to have the Court make their experts' arguments through the instructions.

Defendants' proposed instruction is inappropriate, not supported by their cited authority, and should not be adopted.

-156-

**No. 74 – [DPPs and IPPs' PROPOSAL NO. ___]  WEIGHING THE EVIDENCE –**
**WITNESSES AND DOCUMENTS, IMPEACHMENT** *[DISPUTED]*

Having heard the testimony and read the documents, it is your job to decide whom to believe and what documents or witnesses to trust. To help you in this process, the lawyers were allowed to try to persuade you that some witnesses and some documents are more trustworthy than others. There were many ways the lawyers tried to do this. One example was discrediting a witness.

As I mentioned to you at the outset, a witness may be discredited or impeached in various ways, including by contradictory evidence or by evidence that at some other time the witness has said or done something (or failed to say or do something) which is inconsistent with the witness' present testimony.  A witness may be impeached based on prior sworn testimony taken in depositions in this case. A witness may be impeached by the written deposition transcript or by the video taken of the deposition or both.

If you believe any witness has been impeached and thus discredited, because, for example, the witness's testimony is not believable in light of the documents, you may give the testimony of that witness such credibility and weight, or no credibility or weight, as you think it deserves. Evidence that impeaches or discredits a witness should be considered along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness.

A witness may also be discredited or impeached by showing that the witness has been convicted of certain crimes or lied under oath on a prior occasion.  Evidence that the witness has been convicted of such crimes or lied under oath on a prior occasion should only be considered for purposes of deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject any of the testimony of

1    that witness or give it such credibility or weight, if any, as you may think it deserves.  You may

2    reject all the testimony of any witness whom you disbelieve.

3        Likewise, a document may be discredited if it is contradicted by other documents or

4    testimony, or if it has internal contradictions.

5

6                                **Authority**

7    Adapted from: Jury Instructions of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust*

8    *Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction

9    No. 23) *available as* Ex. C to Plaintiffs' Appendix; KEVIN O'MALLEY, JAY E. GRENIG &

10   WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 105.04 (5th ed.

11   2000); 5TH JUDICIAL CIR. PATTERN JURY INSTRUCTIONS (CIV. CASES) 2.16 (2006); 11TH

12   CIR. PATTERN JURY INSTRUCTIONS (CIV. CASES) 4.1 (2005).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction, to be given after the close of evidence, is essentially just a balanced, follow-up to Model Instruction 2.8 "Impeachment Evidence."

As noted above, in this case it is important for jurors to understand that now-historical, then-contemporaneous documents may be considered in assessing the credibility of current witness testimony.

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and should be adopted.

**Defendants' Argument Against**

The same objections discussed in plaintiffs' proposed pre-trial instruction on impeachment apply here.  *See* No. 24. Moreover, Federal Jury Practice and Instructions, § 105.04, from which this instruction is taken, states that it should be given when a prior inconsistent statement is offered to impeach the witness.  This instruction should be given upon request during trial only if circumstances warrant during the trial.

Moreover, as stated previously, the reference to impeachment through a showing that the witness has been convicted of certain crimes or lied under oath on a prior occasion is unnecessary unless such evidence is actually presented.  Defendants have moved to exclude the guilty pleas of Samsung witnesses in the DRAM investigation.

**No. 75 – [DPPs and IPPs' PROPOSAL NO. ___]  WEIGHING THE EVIDENCE - EFFECT OF PRIOR SWORN STATEMENTS** *[DISPUTED]*

In this case, several witnesses were questioned concerning their sworn deposition testimony. You are instructed that if a witness made a prior inconsistent statement, under oath, subject to the penalty of perjury at a deposition, then, in addition to considering the prior statement for purposes of impeachment or discrediting the witness, you may also treat the substance of the prior statement as evidence in this case.  That is, the witness' prior statement is evidence, and you may treat what the witness said in the prior statement like the testimony that the witness provided during this trial.

**Authority**

Adapted from: FED. R. EVID. 801(d)(1)(A) advisory committee's note; *Lippay v. Christos*, 996 F.2d 1490, 1497 n.7 (3d Cir. 1993); *United States v. Ricketts*, 317 F.3d 540, 544 (6th Cir. 2003), *cert. denied,* 539 U.S. 935 (2003); *Santos v. Murdock*, 243 F.3d 681, 684 (2d Cir. 2001); *United States v. Armijo*, 5 F.3d 1229, 1232 (9th Cir. 1993); *Henson v. City of Dundee*, 682 F.2d 897, 908 n.16 (11th Cir. 1982); Jury Instructions of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 24) *available as* Ex. C to Plaintiffs' Appendix; JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 607.07(1) (2d ed. 1997).

1

**DPPs and IPPs' Argument For**

2      Plaintiffs' proposed instruction, to be given after the close of evidence, is also a balanced,

3 follow-up to Model Instruction 2.8 "Impeachment Evidence."

4      Specifically, the instruction correctly states the law as to the admissibility of prior

5 inconsistent statements.

6      Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

7 should be adopted.

8

9

**Defendants' Argument Against**

10      An instruction on the effect of prior sworn statements should be given only if a witness

11 made a prior inconsistent statement.  To give this instruction in the absence of a witness having

12 been impeached improperly suggests that the jury should look with skepticism on the testimony of

13 any witness who was questioned about prior deposition testimony.

14      And, it is currently not known whether any witness, who has prior relevant testimony

15 under oath, will testify sufficiently "inconsistent" and otherwise satisfy the high threshold of the

16 many particular requirements of Fed. R. Evid. 801(d)(1)(A).  In fact, three of the six cases cited by

17 plaintiffs found that Fed. R. Evid. 801(d)(1)(A) was <u>not</u> met.  *See Lippay v. Christos*, 996 F.2d

18 1490, 1497 n.7 (3d Cir. 1993) ("the district court correctly ruled that [Philbin's alleged statement]

19 was not admissible under [Fed. R. Evid. 801(d)(1)(A)]"); *Santos v. Murdock*, 243 F.3d 681, 684

20 (2d Cir. 2001) ("the circumstances do not constitute an 'other proceeding' within the meaning of

21 Rule 801(d)(1)(A)" and there was no sufficient showing that the witness was "prepared to testify

22 in a manner consistent with the affidavit"); *States v. Armijo*, 5 F.3d 1229, 1232-34 (9th Cir. 1993)

23 (court erred by failing to give a limiting instruction informing the jury that evidence of a "prior

24 inconsistent statement was inadmissible under Rule 801(d)(1)(A)", could be used only to impeach

25 the witness' character for truthfulness, and could not be used as evidence of defendant's guilt).

26 Further, even if a witness, who has prior relevant testimony under oath, is impeached at trial the

27 testimony still may not be admissible for many reasons, including if the declarant is a non-party or

28 under Fed. R. Evid. 403.

-161-

1        Further, the last sentence is confusing.  If this instruction is given, the last sentence should

2  read:  "That is, you may treat what the witness said in that prior statement as evidence like any

3  other evidence in this case."

**No. 76 – [DPPs and IPPs' PROPOSAL NO. __]  GENERAL INTRODUCTION – CLAIMS**
*[DISPUTED]*

You will be reviewing all of the evidence, including economic evidence, to determine whether the defendants and their alleged coconspirators violated the law. The evidence is to be considered collectively. That is, you should review the evidence together and as a whole in light of all the evidence presented. The evidence is not to be judged by dismembering it and viewing each piece in isolation, instead you should consider each single piece of evidence in the context of the other evidence.

**Authority**

Adapted from: *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005); *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 368-369 (3d Cir. 2004); *LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003); *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698-99 (1962); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 661-62 (7th Cir. 2002); *Fontana Aviation Inc. v. Cessna Aircraft Co.*, 617 F.2d 478, 481 (7th Cir. 1980); *Int'l Distrib. Ctrs., Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 793-94 (2d Cir. 1987); Jury Instructions of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 25) *available as* Ex. C to Plaintiffs' Appendix.

1

**DPPs and IPPs' Argument For**

2  Plaintiffs' proposed instruction reflects the well-established law in antitrust conspiracy

3 cases that the jury's determination should be based on a consideration of *all* of the evidence and

4 issues together.  "[P]laintiffs should be given the full benefit of their proof without tightly

5 compartmentalizing the various factual components and wiping the slate clean after scrutiny of

6 each. . . . [T]he duty of the jury is to look at the whole picture . . . ."  *Continental Ore Co. v. Union*

7 *Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962); *see also Knevelbaard Dairies v. Kraft Foods,*

8 *Inc.*, 232 F.3d 979, 990 (9th Cir. 2000); *In re High Fructose Corn Syrup Antitrust Litig. ("HFCS")*,

9 295 F.3d 651, 655-56 (7th Cir. 2002); *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 2010

10 WL 3632775 at *4 (N.D. Cal. March 30, 2010); *In re TFT-LCD (Flat Panel) Antitrust Litigation*,

11 267 F.R.D. 583, 607 (N.D. Cal. 2010).

12  Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including

13 Supreme Court and Ninth Circuit precedent, and should be adopted.

14

15

**Defendants' Argument Against**

16  This instruction is repetitive and unnecessary in light of prior instructions about

17 consideration of direct and circumstantial evidence and the similar statements in agreed-to Ninth

18 Circuit Instructions.  *See* Ninth Circuit Instruction, 3.1 ("Each of you must decide the case for

19 yourself, but you should do so only after you have considered all of the evidence, discussed it fully

20 with the other jurors, and listened to the views of your fellow jurors."); *see also* Ninth Circuit

21 Instruction 1.1(C) ("It is your duty to find the facts from all the evidence in the case.").

22  It also is unbalanced in suggesting that the evidence will be reviewed to determine

23 "whether the defendants and their alleged coconspirators violated the law."  In general, the jury

24 should be instructed to review the evidence to determine whether the plaintiffs have proved every

25 essential element of their claims, in which case they should find for the plaintiffs, or whether

26 instead the plaintiffs have not proved every essential element of their claims, in which case they

27 should find for defendants.

28

-164-

**No. 77 – [DPPs and IPPs' PROPOSAL NO. ___] CORPORATIONS – AGENTS, ACTUAL AND APPARENT AUTHORITY *[DISPUTED]***

Defendants and their alleged coconspirators are all corporations. A corporation acts through its agents. An agent is any person acting on the corporation's behalf, including directors, officers, or employees. Through its directors, officers, employees, or other agents, a corporation is capable of conspiring with other persons or corporations.

A corporation is responsible for all unlawful acts, including statements, of its directors, officers, employees, or other agents, provided that such acts are done or made within the scope of that person's employment or apparent authority.

Acts done within the scope of a person's employment are acts that are done on behalf of a corporation and related to the performance of duties that the person is generally authorized to perform.

Apparent authority is the authority that an outsider would reasonably assume that the agent or employee would have – judging from the person's position, the responsibilities previously entrusted to the person or to the person's office, and the circumstances surrounding the person's past conduct.

To summarize, if you find that a person was acting within the scope of his or her employment for the corporation or apparent authority to act for the corporation, then the corporation is legally responsible for that person's acts, including statements.

**Authority**

Adapted from: *United States v. Am. Radiator & Standard Sanitary Corp.*, 433 F.2d 174, 204-05 (3d Cir. 1970); KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 103.31(5th ed. 2000); ABA Antitrust Law Section, Model Jury Instructions in Civil Antitrust Cases B-10 (2005 ed.); 9TH CIR. MANUAL MODEL CIV. JURY INSTRUCTIONS 4.2 (2007); *see also Am. Soc. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575-76 (1982); *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1009 (3d

-165-

1  Cir. 1994); *Tunis Bros. Co. Inc. v. Ford Motor Co.*, 763 F.2d 1482, 1496 n.21 (3d Cir. 1985),

2  *vacated and remanded,* 475 U.S. 1105 (1986), *reinstated,* 823 F.2d 49 (1987), *cert. denied,* 484

3  U.S. 1060 (1988); Jury Instruction of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust*

4  *Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction

5  No. 26) *available as* Ex. C to Plaintiffs' Appendix; Jury Instructions of Judge John V. Singleton in

6  *In re Corrugated Container Antitrust Litig.*, MDL No. 310 (S.D. Tex.) (as given on Sept. 11,

7  1980, Tr. Vol. 100 at 75-77) *available as* Ex. B to Plaintiffs' Appendix; *United States v. Hilton*

8  *Hotels Corp.*, 467 F.2d 1000, 1004 (9th Cir. 1972), *cert. denied,* 409 U.S. 1125 (1973); *United*

9  *States v. Phelps Dodge Indus., Inc.*, 589 F. Supp 1340, 1356-58 (S.D. N.Y. 1984); *Copperweld*

10  *Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:1ESC1\403121977.4
MDL No. 1819

[proposed] JURY INSTRUCTIONS

1

**DPPs and IPPs' Argument For**

2   Plaintiffs' proposed instruction reflects the well-established law with respect to corporate

3 agency.

4   Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including

5 Supreme Court and Ninth Circuit precedent, and should be adopted.

6

7

**Defendants' Argument Against**

8   Defendants' instruction is more comprehensive because it fully discusses that corporations

9 act through their agents within the relevant context of the elements plaintiffs must prove.  *See* No.

10 89 (based on two Model antitrust instructions, ABA Model Jury Instructions, B-10 and *Modern*

11 *Federal Jury Instructions – Civil*, Instr. 79-5).  If plaintiffs need an instruction on the scope of

12 authority, Ninth Circuit Instruction 4.2 ("a corporation is responsible for the acts of its employees,

13 agents, directors, and officers performed within the scope of authority") is sufficient.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

**No. 78 – [DPPs and IPPs' PROPOSAL NO. ___]  GENERAL EVIDENCE INSTRUCTION - ALL AVAILABLE WITNESSES OR EVIDENCE NEED NOT BE PRODUCED** *[DISPUTED]*

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all documents and things mentioned in the evidence in this case.

**Authority**

Adapted from: *United Auto., Aerospace & Agric. Implement Workers of Am. v. NLRB*, 459 F.2d 1329, 1338 (D.C. Cir. 1972); Jury Instruction of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, N.T. Instruction No. 19) *available as* Ex. C to Plaintiffs' Appendix; KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 105.11 (5th ed. 2000).

1

**DPPs and IPPs' Argument For**

2   Plaintiffs' proposed instruction adopts verbatim the language in O'MALLEY, JAY E.

3 GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 105.11.

4   Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including

5 Supreme Court and Ninth Circuit precedent, and should be adopted.

6

7

**Defendants' Argument Against**

8   This instruction is appropriate only if a party suggests an adverse inference due to the

9 absence of a witness or evidence.  *United Auto., Aerospace & Agric. Implement Workers of Am. v.*

10 *NLRB*, 459 F.2d 1329, 1338 (D.C. Cir. 1972), a case involving an administrative hearing, suggests

11 that this instruction should not routinely be given to a jury.  Similarly, O'Malley § 105.11, cited by

12 plaintiffs, also discusses that this topic is only relevant when the several requirements of an the

13 "adverse inference rule" are shown.  The rule also is inapplicable in many situations, including

14 where the targeted party "has good reason to believe that its opponent has failed to meet its burden

15 of proof."  *Id.*  There is no indication that the "adverse inference rule" will be raised at trial and,

16 thus, this instruction would be misleading.

17

18

19

20

21

22

23

24

25

26

27

28

**No. 79 – [DEFENDANTS' PROPOSAL NO. ___] THE SHERMAN ANTITRUST ACT**

*[DISPUTED]*

As you know, the direct purchaser class has brought claims against Samsung and Cypress, and the indirect purchaser classes have brought claims only against Cypress.  I will now instruct you with respect to the claims of the direct purchasers, and then I will instruct you separately with respect to the claims of the indirect purchasers.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendants' Argument For**

This is simply a transitional instruction.

**DPPs and IPPs' Argument Against**

Defendants' proposed instruction about direct and indirect purchasers is unnecessary and likely to confuse the jury.  To the extent the direct and indirect purchaser cases are tried together, Defendants' proposed instruction impermissibly makes reference to "direct purchasers" and "indirect purchasers," rather than simply "plaintiffs." As discussed in at least one of the direct purchaser plaintiffs' proposed instructions herein ("DAMAGES - NO PASS-ON CONSIDERATIONS"), as well as direct purchaser plaintiffs' motion *in limine*, in no portion of any direct purchaser case should the jury consider the issue of "pass-on"/"pass through," and the defendants should not be permitted to draw the jury's attention to the issue of "pass-on"/"pass though" or the distinction between direct and indirect purchasers.  *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968).

The instruction also unnecessarily emphasizes that Cypress is a defendant in the direct and indirect actions, and Samsung only in the direct action.

Defendants' proposed instruction is inappropriate, not supported by their cited authority, and should not be adopted.

1   **No. 80 – [DPPs' PROPOSAL NO. ___] SHERMAN ACT – PURPOSE** *[DISPUTED]*

2

3          Now I will discuss the federal antitrust laws that apply in this case. One of these laws is

4   referred to as the Sherman Act. The purpose of the Sherman Act is to preserve and advance our

5   system of free competitive enterprise by encouraging free and open competition in the

6   marketplace by preventing unreasonable restraints on trade so that both the public and businesses

7   may receive better goods and services at lower prices.

8

9                                **Authority**

10  Adapted from: *A.D. Bedell Wholesale Co., Inc. v. Philip Morris, Inc.*, 263 F.3d 239 (3d Cir. 2001);

11  Jury Instruction of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket

12  No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 27) *available as*

13  Ex. C to Plaintiffs' Appendix; KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE,

14  FEDERAL JURY PRACTICE AND INSTRUCTIONS § 150.01 (5th ed. 2001); ABA Antitrust

15  Law Section, Model Jury Instructions in Civil Antitrust Cases A-2 (2005 ed.) (citing *Brunswick*

16  *Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977), and *Brown Shoe Co. v. United*

17  *States*, 370 U.S. 294, 320 (1962)); LEONARD SAND, JOHN S. SIFFERT, WALTER P.

18  LOUGHLIN, STEVEN A. REISS & NANCY BATTERMAN, MODERN FEDERAL JURY

19  INSTUCTIONS, Instruction 79-2 (Vol.4 2005).

20

21

22

23

24

25

26

27

28

1

**DPPs' Argument For**

2     Plaintiffs' proposed instruction properly provides jurors with a basic framework and

3   background so that they can understand the context of plaintiffs' claims.  The instruction is a short

4   and accurate description of the Sherman Act's purpose which does that.  *See* KEVIN O'MALLEY,

5   JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS §

6   150.01 (5th ed. 2001) ("The purpose of the Sherman Act is: (1) to preserve and advance our

7   system of free, competitive enterprise; (2) to encourage, to the fullest extent practicable, free and

8   open competition in the marketplace; and (3) to prevent the accomplishment of a monopoly in any

9   business or industry all to the end that the consuming public may receive better goods and services

10  at a lower cost.").

11    Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

12  should be adopted.

13

14

**Defendants' Argument Against**

15    As stated above, there is no need to instruct the jury on the purpose of the Sherman Act, as

16  the purpose of the Act is not for the jury's consideration and plays no role in their consideration of

17  the evidence or their deliberations, particularly in a case governed by the *per se* rule.  *See* No. 5.

18  The only purpose of this instruction would be to blur or undermine the elements plaintiffs are

19  required to prove.  The only questions before the jury are whether a conspiracy existed, whether

20  defendants or alleged coconspirators were part of one, and whether the plaintiffs suffered injury

21  and damages.

22    Plaintiffs' formulation also is inaccurate insofar as it fails to instruct the jury of other

23  purposes of the antitrust laws.  If adopted, it should be revised to include the following (footnotes

24  provide the authority in support and the first two sentences are from the plaintiffs):

25      The purpose of the Sherman Act is to preserve and advance our free enterprise
        system.  It does so by encouraging free and open competition in the marketplace by
26      preventing unreasonable restraints and restrictions on business or trade, so that both
        the public and businesses may receive better goods and services at lower prices.
27      However, it recognizes that in the natural operation of the economic system, some
        competitors are going to lose business while others prosper.

28

-173-

It is sometimes difficult to distinguish robust competition from conduct with long-term anticompetitive effects.[1]  The antitrust laws are not aimed at eliminating an efficient, vigorous, aggressive competitor.[2]  The antitrust laws also do not require the courts to protect small businesses from the loss of profits due to continued competition, but only against the loss of profits from practices forbidden by the antitrust laws.  In fact, it is in the interest of competition to permit dominant firms to engage in vigorous competition, including price competition.[3]

Even an act of pure malice by one business competitor, without more, does not establish a claim under the federal antitrust laws.  The federal antitrust laws do not create a federal law of unfair competition nor do they provide remedies for all injuries committed by or against persons engaged in interstate commerce.  Thus, there are many kinds of unquestionably wrongful conduct which, nevertheless, are not prohibited by the antitrust law because, however bad they may seem, they do not suppress competition in a prohibited way.[4]  Acts become unlawful, therefore, only when they constitute an unreasonable restraint on interstate commerce.

---

[1]  *See Spectrum Sports v. McQuillan*, 506 U.S. 447, 458-59 (1993) ("The purpose of the Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market. The law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself. … It is sometimes difficult to distinguish robust competition from conduct with long-term anticompetitive effects.") (citations omitted).

[2]  *See United States v. Syufy Enters.*, 903 F.2d 659, 668-69 (9th Cir. 1990) ("It can't be said often enough that the antitrust laws protect competition, not competitors.  … We make it clear today, if it was not before, that an efficient, vigorous, aggressive competitor is not the villain antitrust laws are aimed at eliminating.").

[3]  *See Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 116 (1986) ("*Brunswick* holds that the antitrust laws do not require the courts to protect small businesses from the loss of profits due to continued competition, but only against the loss of profits from practices forbidden by the antitrust laws. The kind of competition that Monfort alleges here, competition for increased market share, is not activity forbidden by the antitrust laws. It is simply, as petitioners claim, vigorous competition. To hold that the antitrust laws protect competitors from the loss of profits due to such price competition would, in effect, render illegal any decision by a firm to cut prices in order to increase market share. The antitrust laws require no such perverse result, for '[i]t is in the interest of competition to permit dominant firms to engage in vigorous competition, including price competition.'") (citation omitted).

[4]  *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224-25 (1993) ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair competition or 'purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.'") (citation omitted).

-174-

1   **No. 81 – [DPPs' PROPOSAL NO. ___]   SHERMAN ACT – SECTION 1** *[DISPUTED]*

2

3       Section 1 of the Sherman Act prohibits contracts, combinations or conspiracies that

4   unreasonably restrain trade.

5

6                                          **Authority**

7   Adapted from:  *In re Flat Glass Antitrust Litig.,* 385 F.3d 350, 356 (3d Cir. 2004); *InterVest Inc. v.*

8   *Bloomberg, L.P.*, 340 F.3d 144, 158 (3d Cir. 2003); *Rossi v. Standard Roofing Inc.*, 156 F.3d 452,

9   461 (3dCir. 1998); *Denny's Marina, Inc. v. Renfro Prod., Inc.*, 8 F.3d 1217, 1220 (7th Cir. 1993);

10  Jury Instruction of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket

11  No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 28) *available as*

12  Ex. C to Plaintiffs' Appendix; ABA Antitrust Law Section, Model Jury Instructions in Civil

13  Antitrust Cases A-3 (2005 ed.).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DPPs' Argument For**

2     Plaintiffs' proposed instruction properly and simply instructs jurors as to Sherman Act's

3 prohibitions.  *See Maxim Integrated Products, Inc. v. Analog Devices, Inc.,* 1994 WL 514024 at

4 *2 (N.D. Cal. Sep 07, 1994) *aff'd in part, rev'd in part by Maxim Integrated Products, Inc. v.*

5 *Analog Devices*, Inc., 79 F.3d 1153 (9th Cir. 1996)  ("Section 1 of the Sherman Act prohibits

6 contracts, combinations and conspiracies which unreasonably restrain trade.").

7     Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

8 should be adopted.

9

10

**Defendants' Argument Against**

11     There is no need to instruct the jury on the general provisions of Section 1, and the

12 introduction of the concept of an "unreasonable" restraint of trade may be confusing.  In a *per se*

13 case such as this, the jury's only task with regard to Section 1 is to determine whether a conspiracy

14 existed and whether the defendants or their alleged coconspirators were part of one.  If the jury

15 finds a price-fixing conspiracy as alleged by plaintiffs, such a conspiracy is, as a matter of law, an

16 unreasonable restraint of trade.

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:1ESC1\403121977.4
MDL No. 1819

**No. 82 – [DPPs' PROPOSAL NO.      ]  SHERMAN ACT – SECTION 1 – ELEMENTS**

*[DISPUTED]*

To prove a violation of section 1 of the Sherman Act, plaintiffs must establish: (1) a contract, combination, or conspiracy; and (2) an unreasonable restraint of trade in or affecting interstate commerce.

**Authority**

Adapted from: *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 356 (3d Cir. 2004); *InterVest Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159 (3d Cir. 2003); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., Inc.*, 998 F.2d 1224, 1229 (3d Cir. 1993); 5TH JUDICIAL CIR. PATTERN JURY INSTRUCTIONS (CIV. CASES) 6.1 (2006).

### DPPs' Argument For

Plaintiffs' proposed instruction properly instructs jurors as to the elements plaintiffs must prove to establish a violation of Section 1 of the Sherman Act.  *See, e.g, In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 356 (3d Cir. 2004) ("Section 1 only prohibits contracts, combinations, or conspiracies that unreasonably restrain trade").

Plaintiffs' proposed instruction focuses only on the two elements necessary to show a violation of the Sherman Act.  Other instructions will discuss what plaintiffs must show to demonstrate that the restraint is unfair (e.g. presumed in *per se* price-fixing cases), as well as what plaintiffs must show to recover damages.

Having an instruction solely on the issue of violation makes particular sense here because of the distinct possibility that the jury may first be empanelled solely to render a verdict on the issue of a conspiracy in violation of Section 1 of the Sherman Act, without making any determination with respect to impact or damages.

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and should be adopted.

### Defendants' Argument Against

This instruction is objectionable for the same reasons as the previous one.  Introduction of the concept of an "unreasonable" restraint of trade is unnecessary and potentially confusing in a *per se* case.  *See, e.g., Modern Federal Jury Instructions – Civil*, Instr. 79-3, Notes ("Because horizontal price-fixing conspiracies are *per se* unreasonable, injecting the unreasonableness concept into such a case adds little except the potential for some jury confusion.").   A more accurate instruction, as submitted by Defendants below, instructs the jury on the four distinct elements that plaintiffs must prove to recover for the antitrust violation: existence of a conspiracy, participation by one or more defendants, effect on interstate commerce, and injury to the plaintiffs' business or property.  Plaintiffs' version ignores at least the second element (participation/joinder) and the fourth element (causation and injury).  Despite the fact that plaintiffs' three Third Circuit authorities and the Fifth Circuit Pattern Jury Instructions all recognize that causation and injury

-178-

1   are essential elements of plaintiffs' claim, plaintiffs nowhere have an explicit injury and causation

2   instruction in their instructions.

3        Moreover, reference to a "contract" is potentially confusing, as no contract between the

4   defendants and/or their alleged coconspirators has been alleged.

-179-

**No. 83 – [DEFENDANTS' PROPOSAL NO. ___] ELEMENTS OF THE OFFENSE**
*[DISPUTED]*

To prevail against a defendant on a price-fixing claim, plaintiffs must prove as to that particular defendant each of the following elements by a preponderance or greater weight of the evidence:

**First**, that a conspiracy between or among at least two separate entities to fix the prices of SRAM existed from November 1, 1996 through December 31, 2005;

**Second**, that a defendant knowingly - that is, voluntarily and intentionally - became a party to that conspiracy with the purpose of furthering the goals of that conspiracy;

**Third**, that the conspiracy restrained or affected interstate commerce; and

**Fourth**, that the conspiracy caused the direct purchasers to suffer an injury to their business or property.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular defendant, then you must find for that defendant and against the direct purchasers on the direct purchasers' price-fixing claim. If you find that the evidence is sufficient to prove all four elements as to a particular defendant, then you must find for the direct purchaser plaintiffs and against that particular defendant on the direct purchasers' price-fixing claim.

I will now explain each of these elements in further detail.

**Authority**

Adapted from ABA Model Jury Instructions, B-20 (emphasis original); *see also id.* A-3, B-2, B-13; Leonard B. Sand, *Modern Federal Jury Instructions – Civil*, Instr. 79-3 (Matthew Bender, 2001) ("the plaintiff must prove, by a preponderance or greater weight of the evidence," each of the elements); *Monsanto v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (plaintiff must prove that the "manufacturer and others had a conscious commitment to a common scheme designed to achieve an unlawful objective.").

**Defendants' Argument For**

The ABA Model Jury Instructions, B-20, recommended by the Ninth Circuit to be used for substantive antitrust jury instructions, is an accurate and balanced summary of the elements plaintiffs need to prove.

**DPPs and IPPs' Argument Against**

Defendants' proposed instruction contains unnecessary elements for this case, and is otherwise confusing and improper.

The instruction states at least **four** times that plaintiffs must prevail against "a defendant"/ "particular defendant."  Such repetition is done solely to create the impression that plaintiffs must overcome several hurdles to prevail.

The instruction improperly includes misleading language about plaintiffs being able to prove their claims with a "greater weight of [] evidence" than a preponderance.

The first element in the instruction incorrectly states that plaintiff must show that the conspiracy "existed from November 1,1996 through December 31, 2005."  Plaintiffs can also prevail by having the jury find that a conspiracy existed for a shorter period.

The second element's discussion of "knowingly join" would be better presented in a follow-up instruction.

The third element should be undisputed, and including it here as an element only reinforces the idea that plaintiff must overcome several hurdles to prevail.

The fourth element goes to the issue of damages, and as discussed above, a clearer presentation of instructions would be to not include impact/damages elements together with the violation elements.

Finally, defendants' instruction unduly emphasizes that the evidence may be "insufficient to prove any one or more of these elements."  As with many other instructions proposed by defendants, this instruction gives, at the expense of plaintiffs, unwarranted attention to various outcomes that favor only the defendants.  (The use of bolding in the instruction is also improper.)

1  Defendants' proposed instruction is inappropriate, not supported by their cited authority, and

2  should not be adopted.

3         In addition, IP Plaintiffs hereby incorporate by reference their Arguments and Authority

4  Against Cypress's Proposed Instruction No. 126 on this same topic.

-182-

**No. 84 – [DPPs and IPPs' PROPOSAL NO. ___]  CONTRACT, COMBINATION OR CONSPIRACY *[DISPUTED]***

The first element plaintiffs must prove is the existence of an unlawful contract, combination or conspiracy. A contract, combination or conspiracy is found where there is some form of concerted action. There must be a unity of purpose or a common design and understanding, a meeting of the minds or a conscious commitment to a common scheme to achieve an unlawful objective.

Under the Sherman Act, it is illegal for two or more competitors to agree to fix, raise, maintain or stabilize the prices charged or to be charged for products or services. This prohibition is violated not only if the same price is set by competitors, but also if a range of prices or levels of prices are set, or if there is any tampering with free market pricing.

It is illegal for competitors to conspire to increase prices, to set a specific price or range of prices or to increase the stability of prices, including to stop prices from falling further than they otherwise would fall, or to agree to any course of conduct that effects prices.

It is also illegal for competitors to conspire to restrict or reduce or limit the market supply of a product in order to raise, maintain, or stabilize the prices of the product.

To prove a conspiracy, the evidence does not have to show that the conspirators entered into a formal, express or written agreement; or that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which they would accomplish their purpose. You have to look to all the evidence together and determine whether the defendants and their alleged coconspirators had a unity of purpose or a common design and understanding, a meeting of the minds, to accomplish a common purpose. A "gentleman's agreement" or a "wink" or a "nod" or a tacit understanding may be sufficient.

You may find that the unity of purpose or common design and understanding is proven by circumstantial evidence and by inferences from what the defendants and their alleged coconspirators said and did or did not do.

1   A conspiracy may be formed without all parties coming to an agreement or understanding

2   at the same time. A conspiracy may be formed over a period of time with different parties joining

3   the conspiracy at different points of time. It is not essential that all conspirators act exactly alike.

4   Evidence must be presented tending to exclude the possibility that the alleged conspirators acted

5   independently; some of the facts you may consider in that regard are:  (1) whether the

6   conspirators' actions, if taken independently, would be contrary to their economic self-interest; (2)

7   whether the conspirators have been uniform in their actions; (3) whether the conspirators have

8   exchanged or have had the opportunity to exchange information relative to the alleged conspiracy;

9   and (4) whether the conspirators have a common motive to conspire.

10   In viewing the evidence relating to whether there was a conspiracy and whether defendants

11   and their alleged coconspirators were members, you are to view all the evidence collectively and

12   as a whole. You should examine all the evidence – direct, circumstantial and economic – to

13   determine what inferences can be drawn concerning the alleged conspiracy by looking at the

14   evidence as a whole. You should not view the evidence in segments, compartmentalizing the

15   various factual components. An alleged conspiracy is not to be judged by dismembering it and

16   viewing its separate parts, but only by looking at it as a whole.

17

18   **Authority**

19   Adapted from: *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005); *In re Flat Glass*

20   *Antitrust Litig.*, 385 F.3d 350, 356-57, 362, 368-69 (3d Cir. 2004); *LePage's, Inc. v. 3M*, 324 F.3d

21   141, 162 (3d Cir. 2003); *United States v. Mastrangelo*, 172 F.3d 288, 293-94 (3d Cir. 1999);

22   *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., Inc.*, 998 F.2d 1224, 1232 (3d Cir. 1993);

23   *Nanavati v. Burdette Tomlin Mem'l Hosp.*, 857 F.2d 96, 119 (3d Cir. 1988); *United States v. Cont*

24   *'l Group, Inc.*, 603 F.2d 444, 462 (3d Cir. 1979); *Wallace v. Price*, 265 F.Supp.2d 545, 569 (W.D.

25   Pa. 2003); *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984); *Am.*

26   *Tobacco Co. v. United States*, 328 U.S. 781, 809-11 (1946); *United States v. Socony-Vacuum Oil*

27   *Co.*, 310 U.S. 150, 210-14, 218, 223-24 (1940); *In re High Fructose Corn Syrup Antitrust Litig.*,

28   295 F.3d 651, 655-56, 661-62 (7th Cir. 2002); *City of Tuscaloosa v. Harcros Chems., Inc.*, 158

-184-

1   F.3d 548, 569 (11th Cir. 1998); *Systemcare, Inc. v. Wang Labs. Corp.*, 117 F.3d 1137, 1143, 1145

2   (10th Cir. 1997); *Wallace v. Bank of Bartlett*, 55 F.3d 1166, 1168 (6th Cir. 1995); *ES Dev., Inc. v.*

3   *RWM Enters., Inc.*, 939 F.2d 547, 553-54 (8th Cir. 1991); *Int'l Distrib. Ctrs., Inc. v. Walsh*

4   *Trucking Co.*, 812 F.2d 786, 793-94 (2d Cir. 1987); *Pierce v. Ramsey Winch Co.*, 753 F.2d 416,

5   426-27 (5th Cir. 1985); *Fontana Aviation Inc. v. Cessna Aircraft Co.*, 617 F.2d 478, 481 (7th Cir.

6   1980); *United States v. Consol. Packaging Corp.*, 575 F.2d 117, 125-28 (7th Cir. 1978); *Bowen v.*

7   *Parking Auth. of City of Camden*, No. Civ. 00-5765 (JBS), 2003 WL 22145814, *37 (D. N.J. Sept.

8   18, 2003); *Wagner v. Magellan Health Servs., Inc.*, 121 F.Supp.2d 673, 679 (N.D. Ill. 2000);

9   *Marcolongo v. School Dist. of Phila.*, No. Civ. A. 98–5196, 1999 WL 1011899, *9 (E.D. Pa. Nov.

10  5, 1999); *Smith v. Wambaugh*, 29 F.Supp.2d 222, 228 (M.D. Pa. 1998); *United States v. Palladino*,

11  203 F. Supp. 35, 37 (D. Mass. 1962); Jury Instructions of Judge Gary L. Lancaster in *In re Indus.*

12  *Silicon Antitrust Litig.*, No. 95-2104 (W.D. Pa.)(as given on May 17, 1999, N.T. 52-54, 56)

13  *available as* Ex. A to Plaintiffs' Appendix; Jury Instruction of Chief Judge Thomas F. Hogan in *In*

14  *re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June

15  11, 2003, Instruction No. 29) *available as* Ex. C to Plaintiffs' Appendix; Jury Instructions of Judge

16  Singleton in *In re Corrugated Container Antitrust Litig.*, MDL No. 310 (S.D. Tex.) (as given on

17  Sept. 11, 1980, Tr. Vol. 100 at 59-62) *available as* Ex. B to Plaintiffs' Appendix; KEVIN

18  O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND

19  INSTRUCTIONS §§ 150.41, 150.65 (5th ed. 2001); ABA Antitrust Law Section, Model Jury

20  Instructions in Civil Antitrust Cases B-2 to B-6, B-16, B19 to B-20 (2005 ed.); 11TH CIR.

21  PATTERN JURY INSTRUCTIONS (CIV. CASES) 3.1 (2005); *Esco Corp. v. United States*, 340

22  F.2d 1000, 1006-08 (9th Cir. 1965); *United States v. Andreas*, 216 F.3d 645 (7th Cir. 2000), *reh.*

23  *en banc denied,* 2000 U.S. App LEXIS 18222 (7th Cir., July 27, 2000), *cert. denied* 531 U.S. 1014

24  (2000); *FTC v. Superior Court Trial Lawyers Assoc.*, 493 U.S. 411,423 (1990); *Fleischman v.*

25  *Albany Medical Center*, 2010 WL 2998304 *26 (N.D.N.Y., July 22, 2010).

26

27

28

-185-

1                                **DPPs and IPPs' Argument For**

2          Plaintiffs' proposed instruction properly instructs jurors as to:

3          (1) the need for plaintiffs show that the conspirators reached an agreement.  *See United*

4    *States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 210-14, 218, 223-24 (1940) (discussing informal

5    "gentlemen's agreement"); *United States v. Consol. Packaging Corp.*, 575 F.2d 117, 125-28 (7th

6    Cir. 1978) (late joiner).

7          (2) the various ways there can be a *per se* price-fixing violation – i.e. not just agreeing to

8    increase prices in specific amount.  *See, e.g., In re Linerboard Antitrust Litig.*,  292 F.Supp.2d

9    644, 660 (E.D. Pa. 2003) (restrictions on production); *United States v. Topco Assoc., Inc.*, 405

10   U.S. 596 (1972) (market division).

11         (3) that circumstantial evidence can be sufficient to show conspiracy.  *See In re High*

12   *Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002) ("[M]ost cases are

13   constructed out of a tissue of such [ambiguous] statements and other circumstantial evidence,

14   since an outright confession will ordinarily obviate the need for a trial."); *In re Coordinated*

15   *Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 447 & n.13 (9th Cir.

16   1990).

17         The instruction also properly explains what it means for circumstantial evidence to

18   "exclude the possibility that the alleged conspirators acted independently."  *Monsanto Co. v.*

19   *Spray-Rite Serv. Corp.*, 465 U.S. 752, 764, 768 (1984).  That portion of the instruction is

20   particularly important for this case, because competitors directly meeting or exchanging

21   information with each other is specifically identified as one of the ways to show that the alleged

22   conspirators were not acting independently.  *See In re Flat Glass Antitrust Litig.*, 385 F. 3d 350,

23   361, fn. 12 (3d Cir. 2004) ("exchanges of confidential price information, cannot simply be

24   explained as a result of oligopolostic interdependence"); *Fleischman v. Albany Medical Center*,

25   2010 WL 2998304 at *23-26 (N.D.N.Y., July 22, 2010) ("some of the facts you may consider in

26   that regard are:  . . . whether the conspirators have exchanged or have had the opportunity to

27   exchange information relative to the alleged conspiracy").

28

                                           -186-

1    Finally, the instruction informs the jurors of the need for them to consider all of the

2   evidence together, and to not dismember and evaluate individual facts and issues separately. *See*

3   *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) ("[P]laintiffs

4   should be given the full benefit of their proof without tightly compartmentalizing the various

5   factual components and wiping the slate clean after scrutiny of each. . . . [T]he duty of the jury is

6   to look at the whole picture . . . ."); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 990

7   (9th Cir. 2000).

8    Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including

9   Supreme Court and Ninth Circuit precedent, and should be adopted.

10

11                    **Defendants' Argument Against**

12    To the extent relevant, the same objections discussed in plaintiffs' proposed pre-trial

13   instruction on conspiracy apply here.  *See* No. 19.  As explained below, this instruction is very

14   unbalanced and would be misleading.  *See Chuman*, 76 F.3d at 294 ("Jury instructions must be

15   formulated so that they fairly and adequately cover the issues presented, correctly state the law,

16   and are not misleading.").

17    An instruction on conspiracy should not be given until the jury has been instructed on all

18   the elements of plaintiffs' claim, per the instruction submitted by Defendants.

19    The reference to a "contract" is potentially confusing, as no contract has been alleged.

20    Plaintiffs first line regarding the existence of conspiracy omits "by or among two or more

21   persons."

22    In paragraph 2, the phrase "fix, raise, maintain or stabilize prices" must normally be

23   limited to just "fix prices."  However, if plaintiffs wish to define its price fixing claim to also

24   include "rais[ing], maintain[ing] or stabiliz[ing] prices", this instruction would be the one place to

25   do it.  The repeated references to "fix, raise, maintain or stabilize prices" in all other instructions

26   should be struck.

27    The statement in the second paragraph that the prohibition is violated "not only if the same

28   price is set by competitors, but also if a range of prices or levels of prices are set" is an incorrect

-187-

1  statement of the law, in that it suggests that parallel pricing alone may be a violation of Section 1.

2  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553 (2007) (parallel conduct does not show

3  conspiracy under Section 1); *General Bus. Sys. v. North Am. Philips Corp.*, 699 F.2d 965, 976 (9th

4  Cir. 1983) ("Price parallelism alone generally will not establish price fixing."); *Wallace v. Bank of

5  Bartlett*, 55 F.3d 1166, 1168 (6th Cir. 1995) ("parallel pricing, without more, does not itself

6  establish a violation of the Sherman Act").

7      The reference in the second paragraph to "tampering with free market pricing" or "any

8  course of conduct that effects prices" are vague and misleading.  To establish a violation of

9  Section 1 through price-fixing, plaintiffs must prove an ***agreement***.

10      As stated previously, the statement "unity of purpose or a common design and

11  understanding, a meeting of the minds, to accomplish a common purpose" at least needs the phrase

12  "designed to achieve an unlawful objective."

13      The statement in the fourth paragraph that it is illegal to limit market supply improperly

14  suggests that such evidence exists in this case.  Plaintiffs are entitled to instructions on their theory

15  of the case if it has foundation in the evidence, *Jenkins v. Union Pacific R. Co.*, 22 F.3d 206, 210

16  (9th Cir. 1994), but they are not entitled to instructions that do not fairly reflect the evidence.

17      The reference in the fifth paragraph to "a tacit understanding" being sufficient to prove a

18  conspiracy is an incorrect statement of the law.  It may be possible to show that an *agreement* was

19  tacit rather than express, but the term "tacit understanding" suggests that independent conduct such

20  as conscious parallelism — the lawful practice of firms in a concentrated industry "recognizing

21  their shared economic interests and their interdependence with respect to price and output

22  decisions," *see Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227

23  (1993) — is also unlawful.  Plaintiffs similar phrases regarding a "gentleman's agreement" or a

24  "wink" or a "nod" are improper for the same reasons and also are vague and misleading.

25      Plaintiffs proposed language that a conspiracy can be "proven by circumstantial evidence

26  and by inferences…" is inadequate and misleading as stated in Defendants' response to plaintiffs'

27  proposed separate instructions on these topics.  *See* Nos. 17, 63, 65, 66, 87.  Plaintiffs' version also

28  deletes a very important paragraph from ABA Model Jury Instructions, B-3-4 (cited by plaintiffs):

> Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the persons were acting independently.  If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

Defendants' instruction below (No. 85) includes this language.

The final paragraph merges the required elements of finding a conspiracy, and finding that one or more defendants were members of that conspiracy, and thus is confusing.  The structure of the ABA Model Instructions, which Defendants' instructions follow, separates these separately required elements and thereby provides greater clarity.

The reference to "direct, circumstantial, and economic" evidence in the final paragraph incorrectly suggests that economic evidence should be treated as qualitatively different from other evidence.

The instruction is also repetitive in reminding the jury (yet again) for a full paragraph to view all the evidence together as a whole, and it is unbalanced in that never reminds the jury that if it finds that the evidence does not support the inference of conspiracy sought by plaintiffs, it must find for the defendants.

-189-

**No. 85 – [DEFENDANTS' PROPOSAL NO.    ] FIRST ELEMENT: EXISTENCE OF CONSPIRACY** *[DISPUTED]*

To prove the first element of their claim, the direct purchasers must prove the existence of a conspiracy.  A conspiracy is a kind of "partnership" in which each person found to be a member of the conspiracy is liable for all acts and statements of the other members made during the existence of and in furtherance of the conspiracy.  To create such a relationship, two or more persons must enter into an agreement that they will act together for some unlawful purpose or to achieve a lawful purpose by unlawful means.

To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement.  What the evidence must show to prove that a conspiracy existed is that the alleged members of the conspiracy in some way came to an agreement to accomplish an unlawful objective.  It is the agreement to act together that constitutes the conspiracy.  However, uncertainty over the terms of the alleged conspiracy, particularly the prices to be charged in the future, obstructs the formation of a conspiracy.

A conspiracy may be formed without all parties coming to an agreement at the same time, such as where competitors, without previous agreement, separately accept invitations to participate in a plan to restrain trade.  The conspiracy may be shown if the proof establishes that the parties knowingly worked together to accomplish an unlawful objective.  Concerted action may be inferred from circumstantial evidence of a defendant's conduct and course of dealings.

However, when relying solely on circumstantial evidence, the evidence must demonstrate that an inference of conspiracy is more probable than an inference of independent action. Conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy.

Also, mere similarity of conduct among various persons or companies, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the persons were acting independently.  If they acted similarly

-190-

but independently of one another, without any agreement among them, then there would not be a conspiracy.  Further, evidence that any particular defendant had the "opportunity" to conspire with any other defendant to fix prices without any additional showing is insufficient to demonstrate that a conspiracy existed.

It is not necessary that the evidence show that all the persons alleged to be members of the conspiracy actually were members.  What the evidence must show is that the alleged conspiracy of two or more persons existed, that one or more of the means or methods alleged was used to carry out its purpose, and that each defendant knowingly became a member of the conspiracy.

In determining whether a conspiracy has been proved, you must view the evidence as a whole.  In considering the evidence, you should first determine whether or not the alleged conspiracy existed.  If you conclude the conspiracy did exist, you should next determine whether either Samsung or Cypress or any of the other alleged co-conspirators knowingly became a member of that conspiracy with the intent to further its purpose.

**Authority**

Paragraphs 1-3, 5-7: ABA Model Jury Instructions, B-2 through B-4; paragraph 2: *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 727 (1988) ("Uncertainty over the terms of the cartel, particularly the prices to be charged in the future, obstructs both formation and adherence by making cheating easier."); paragraph 4: *City of Long Beach v. Standard Oil Co. of California*, 46 F.3d 929, 935 (9th Cir. 1995) (the following is a "correct statement of the law" in a jury instruction: "However, when relying solely on circumstantial evidence, the evidence must demonstrate that an inference of conspiracy is more probable than an inference of independent action.  Conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy."); paragraph 5: *In re Citric Acid Litig.*, 191 F.3d 1090, 1093-94, 1103 (9th Cir. 1999) (rejecting plaintiffs' argument to "infer participation in the conspiracy from the opportunity to do so").  *See also Monsanto v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553-54 (2007).

[proposed] JURY INSTRUCTIONS

1

**Defendants' Argument For**

2    The ABA Model Jury Instructions, B-2 through B-4, recommended by the Ninth Circuit to

3  be used for substantive antitrust jury instructions, is a balanced and accurate statement of the law

4  regarding the first element the plaintiffs need to prove – a conspiracy.  As noted in the Authority,

5  Defendants added three consistent and necessary sentences supported by law from the Supreme

6  Court or the Ninth Circuit.

7

8

**DPPs and IPPs' Argument Against**

9    Defendants' proposed instruction is improper because it seeks to mischaracterize the

10  burden plaintiffs must meet in order to prove their case.

11    First, the instruction's discussion of "uncertainty over the terms of the alleged conspiracy,

12  particularly the prices to be charged in the future, obstructs the formation of a conspiracy," is

13  language that can be found in the case law, but such language does not operate as a restriction

14  upon plaintiffs' claims.  Nor does such language qualify any element that plaintiffs must meet.  At

15  bottom, such language is a statement of the arguments that defendants intend to present in their

16  argument as to why a conspiracy was not formed (or was not effective).  Such argument, however,

17  does not belong in a jury instruction.

18    Second, defendants' proposed instruction unduly emphasizes the holdings by courts that

19  plaintiffs relying solely on circumstantial evidence need to also show that their circumstantial

20  evidence excludes the possibility that the alleged conspirators were acting independently.  In order

21  to underscore this point, Defendants' instruction takes ten lines to say what can be said in two.

22    Also, Defendants' instructions fail to include any of the multiple statement of law that

23  courts have enunciated with respect the circumstantial evidence plaintiffs *can* rely upon in order to

24  show that the alleged conspirators were *not* acting independently.  First and foremost, and

25  particularly applicable here, are meetings and exchanges of information with direct competitors.

26  *See In re Flat Glass Antitrust Litig.,* 385 F. 3d 350, 361, fn. 12 (3d Cir. 2004) ("exchanges of

27  confidential price information, cannot simply be explained as a result of oligopolostic

28  interdependence"); *Fleischman v. Albany Medical Center*, 2010 WL 2998304 at *23-26

-192-

1    (N.D.N.Y., July 22, 2010) ("some of the facts you may consider in that regard are: . . . whether

2    the conspirators have exchanged or have had the opportunity to exchange information relative to

3    the alleged conspiracy").  Put simply, competitors who are not conspiring do not regularly meet or

4    exchange competitive information.

5        Additionally, defendants ignore the wealth of cases emphasizing the ability of plaintiffs to

6    use solely circumstantial evidence to prove their case.  *See In re High Fructose Corn Syrup*

7    *Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002) ("[M]ost cases are constructed out of a tissue of

8    such [ambiguous] statements and other circumstantial evidence, since an outright confession will

9    ordinarily obviate the need for a trial."); *Toys "R" Us, Inc. v. F.T.C.*, 221 F.3d 928, 935 (7th Cir.

10   2000) ("The [*Matsushita*] test states only that there must be *some* evidence which, if believed,

11   would support a finding of concerted behavior.") (emphasis in original); *In re Coordinated*

12   *Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 439 (9th Cir. 1990) (no need

13   for plaintiffs to present evidence excluding independent action, even when relying solely on

14   circumstantial evidence)*; but see In re Citric Acid Litigation*, 191 F.3d 1090, 1096 (9th Cir. 1999)

15   (*"Citric Acid"*) (need to present such evidence when relying solely on circumstantial evidence).

16       Defendants' proposed instruction is inappropriate, not supported by their cited authority,

17   and should not be adopted.

18

19

20

21

22

23

24

25

26

27

28

**No. 86 – [DEFENDANTS' PROPOSAL NO.    ] FIRST ELEMENT: CONSPIRING PARTIES** *[DISPUTED]*

The plaintiffs allege that Cypress and Samsung conspired with each other and with a number of other parties who are alleged to be co-conspirators.  Those other parties are:

Etron Technology, Inc.

Etron Technology America, Inc.

Hitachi, Ltd.

Hitachi America, Ltd.

Hynix Semiconductor Inc.

Hynix Semiconductor America Inc.

Integrated Silicon Solution, Inc.

Micron Technology, Inc.

Micron Semiconductor Products, Inc.

Mitsubishi Electric Corporation

Mitsubishi Electric & Electronics USA, Inc.

NEC Electronics Corporation

NEC Electronics America, Inc.

Renesas Technology Corp.

Renesas Technology America, Inc.

Toshiba Corporation

Toshiba America Electronic Components, Inc.

There can be no conspiracy unless more than one person is involved.  The very word "conspiracy" means "together with."  But it may be that not all the persons charged with being conspirators are conspirators.  It may be that none of them is a conspirator.

In order to prove their claims, the plaintiffs have to show that at least one of the named defendants, Cypress and Samsung, conspired with at least one other named defendant or one of the

-194-

1    alleged co-conspirators.  You cannot find a conspiracy to violate the antitrust laws in this case

2    unless you find that one of the defendants is a party to the alleged conspiracy.

3         If you find that the plaintiffs have proved by a preponderance or greater weight of the

4    evidence that there was a conspiracy involving either both defendants, or one defendant and at

5    least one other named co-conspirator, you must determine the identity of the other party or parties

6    that was in the conspiracy.  Specifically, you must separately determine whether Mitsubishi,

7    Hitachi, Renesas, Hynix, Etron, Toshiba, NEC, Micron, or ISSI was a member of the conspiracy.

8    To find that any of these parties was a member of the conspiracy, the plaintiffs must prove that

9    party's membership by a preponderance or greater weight of the evidence.

10

11                                   **Authority**

12   Paragraphs 1-2: O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, §§ 150.41 (5th

13   ed. 2000).  Paragraph 3: In normal circumstances, a determination of the members of the

14   conspiracy is required in order for defendants to be subject to joint and several liability for

15   damages attributable to the sales of any other co-conspirator.  *See Paper Sys. v. Nippon Paper*

16   *Indus. Co.*, 281 F.3d 629, 634 (7th Cir. 2002) (defendant is normally jointly and severally liable

17   for damages attributable to other participants in the conspiracy).

18

19

20

21

22

23

24

25

26

27

28

1

**Defendants' Argument For**

2        Paragraphs 1-2 of Defendants' instruction simply explains who are the alleged co-

3   conspirators and that the plaintiffs must prove that at least two of them conspired together.

4   Paragraph 3 explains that if the jury finds a conspiracy but finds that particular alleged participants

5   in fact did not participate, defendants cannot be liable for damages caused by those non-

6   participants' sales under principles of joint and several liability.

7

8        **DPPs and IPPs' Argument Against**

9        Defendants' proposed instruction is essentially a re-hashing of defendants' immediately

10   preceding proposed instruction about forming and/or joining a conspiracy, only that here the

11   alleged coconspirators are identified by name.  The defendants and alleged coconspirators,

12   however, are clearly identified in other instructions, and virtually every instruction about

13   conspiracy, including membership, makes express reference to both the defendants and the alleged

14   coconspirators.  Therefore, this instruction is not necessary.  Alternately, the instruction could

15   simply state:  "You must separately determine whether Mitsubishi, Hitachi, Renesas, Hynix,

16   Etron, Toshiba, NEC, Micron, or ISSI was a member of the conspiracy."

17        Defendants' proposed instruction is inappropriate, not supported by their cited authority,

18   and should not be adopted.

19

20

21

22

23

24

25

26

27

28

**No. 87 – [DPPs and IPPs' PROPOSAL NO. __]  CONSPIRACY - ALLOWABLE INFERENCES** *[DISPUTED]*

Conspiracies are often established by circumstantial evidence. You may infer that there was a unity of purpose or a common design and understanding and that a defendant was a member of the conspiracy even if no meetings, conversations or documents relating to the defendant are shown. The existence of a unity of purpose or a common design and understanding can be inferred from evidence of facts and circumstances from which it appears as a reasonable and logical inference that the activities of the participants could not have been carried on except as the result of a conscious commitment to a common scheme. When considering whether a unity of purpose or a common design and understanding existed you should consider all the evidence as a whole, including direct, circumstantial and economic evidence.

**Authority**

Adapted from: *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005); *In re Flat Glass Antitrust Litig.*, 385 F.3d350, 357, 361 (3dCir. 2004); *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 465-66 (3d Cir. 1998); *United States v. Cont'l Group, Inc.*, 603 F.2d 444, 455 (3d Cir. 1979); *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 654-55, 661 (7th Cir. 2002); *Fisher v. Borough of Doylestown*, No. Civ. A. 02-4007, 2003 WL 22937781, *2 (E.D. Pa. Dec. 10, 2003); *Bowen v. Parking Auth. of City of Camden*, No. Civ. 00˜5765 (JBS), 2003 WL 22145814, *37 (D. N.J. Sept. 18, 2003); *Smith v. Wambaugh*, 29 F.Supp.2d 222, 228 (M.D. Pa. 1998); *Ganci v. Borough of Jenkintown*, No. Civ. A. 95˜0262, 1998 WL 175881, *2 (E.D. Pa. 1998); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., Inc.*, No. 86-0386, 1992 WL 212230, *5 (M.D. Pa. July 31, 1992), *rev'd in part, aff'd in part,* 988 F.2d 1224 (3d Cir. 1993); *James Julian, Inc. v. Raytheon Co.*, 557 F. Supp. 1058, 1065 (D. Del. 1983); *United States v. Spiezio*, 523 F. Supp. 264, 271 (E.D. Pa. 1981); *Intermar, Inc. v. Atl. Richfield Co.*, 364 F. Supp. 82, 100 (E.D. Pa. 1973).

[proposed] JURY INSTRUCTIONS

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction properly instructs jurors that circumstantial evidence can be sufficient to show conspiracy. *See In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002) ("[M]ost cases are constructed out of a tissue of such [ambiguous] statements and other circumstantial evidence, since an outright confession will ordinarily obviate the need for a trial."); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 447 & n.13 (9th Cir. 1990).

In addition, the instruction informs the jurors of the need for them to consider all of the evidence together, and to not dismember and evaluate individual facts and issues separately. *See Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) ("[P]laintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each. . . . [T]he duty of the jury is to look at the whole picture . . . ."); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 990 (9th Cir. 2000).

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including Supreme Court and Ninth Circuit precedent, and should be adopted.


**Defendants' Argument Against**

The statement that "conspiracies are often established by circumstantial evidence" is prejudicial in that it suggests to the jury that a review of circumstantial evidence frequently leads to the conclusion that there was a conspiracy.

The statement that the jury may infer a defendant's membership in a conspiracy "even if no meetings, conversations or documents relating to the defendant are shown" would improperly permit the jury to find a fact on the basis of insufficient (indeed, no) evidence. Defendants previously explained that plaintiffs' prior attempt to proffer this general evidentiary standard was directly contrary to the statements and holding in plaintiffs' cited authority. *See* No. 70. Plaintiffs apparently are relying on *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002) for this proposition, which immediately clarifies that in an antitrust case "an express,

-198-

1    manifested agreement, and thus an agreement involving actual, verbalized communication, must

2    be proved in order for a price-fixing conspiracy to be actionable under the Sherman Act." *Id.*  The

3    Ninth Circuit clearly does not permit plaintiffs to prove a conspiracy without presenting evidence.

4    *See, e.g., The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1160 (9th Cir. 1988) ("[a]

5    plaintiff does not establish concerted action, however, by merely proving that the defendant sought

6    agreement. More is required. 'The concept of 'a meeting of the minds' [or 'a common scheme']…

7    means as well that evidence must be presented both that [one party] communicated its

8    acquiescence or agreement, and that this was sought by [another alleged coconspirator].'") (*citing

9    Monsanto*, 465 U.S. at 764 n.9)).

10           Further, as explained above related to plaintiffs' earlier instructions regarding

11    circumstantial evidence and inferences, antitrust law has particular (and a much higher threshold)

12    for the use of permissible inferences. *See, e.g., Matsushita*, 475 U.S. at 588 ("Antitrust law limits

13    the range of permissible inferences from ambiguous evidence in a § 1 case.").  The following is a

14    "correct statement of the law" in a jury instruction: "However, when relying solely on

15    circumstantial evidence, the evidence must demonstrate that an inference of conspiracy is more

16    probable than an inference of independent action.  Conduct as consistent with permissible

17    competition as with illegal conspiracy does not, standing alone, support an inference of antitrust

18    conspiracy."  *City of Long Beach v. Standard Oil Co. of Cal.*, 46 F.3d 929, 935 (9th Cir. 1995)

19    (*relying upon Matsushita*, 475 U.S. at 588).  "Instead, an inference of conspiracy is sustainable

20    only if 'reasonable in light of the competing inferences of independent action,' … a plaintiff

21    seeking damages for a violation of § 1 [] present[s] evidence 'that tends to exclude the possibility'

22    that the alleged conspirators acted independently.' *In re Citric Acid*, 191 F.3d at 1094 (citing

23    *Matsushita*, 475 U.S. at 588 (quoting *Monsanto*, 465 U.S. at 764)).  *See also In re Citric Acid*, 191

24    F.3d at 1103 (rejecting plaintiffs' argument that a trier of fact is entitled to "infer participation in

25    the conspiracy from the opportunity to do so.").

26           Again, unlike Samsung's discussion above of long settled Supreme Court law precedent

27    which has been adopted in the Ninth Circuit, plaintiffs focus on older cases outside the Ninth

28    Circuit.  For instance, plaintiffs' primary authority, *United States v. Brodie*, 403 F.3d 123, 134 (3d

-199-

1    Cir. 2005), is an out of Circuit case involving criminal claims under the Trading With the Enemy

2    Act and Cuban Assets Control Regulations, and states that even in this irrelevant non-antitrust

3    context that "[c]onspiracy cannot be proven 'by piling inference upon inference.'"  *Id.*

4         Moreover, the last sentence is repetitive of numerous prior statements in plaintiffs'

5    instructions to the effect that the jury is to consider the evidence as a whole.

-200-

**No. 88 – [DEFENDANTS' PROPOSAL NO. ___] FIRST ELEMENT: PROOF OF CONSPIRACY BY CIRCUMSTANTIAL EVIDENCE *[DISPUTED]***

As I mentioned earlier, there are special rules that apply to the consideration of circumstantial evidence in an antitrust case. When a plaintiffs offers only circumstantial evidence of a conspiracy, as is the case here, the evidence must demonstrate that an inference of conspiracy is more probable than an inference of independent action. Conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy. For example, if circumstantial evidence may be interpreted to show, on the one hand, that defendants reached an unlawful conspiracy between themselves and, at the same time, such evidence may also be interpreted to show that defendants acted independently, you may not find from that circumstantial evidence that defendants entered into an unlawful conspiracy.

**Authority**

Adapted from *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("[A]ntitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case. … [C]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy.") (citation omitted); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764, 768 (1984); *In re Citric Acid Antitrust Litig.*, 191 F.3d 1090, 1093-94 (9th Cir. 1999) ("Direct evidence in a Section 1 conspiracy must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted.") (*quoting In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999)); *City of Long Beach v. Standard Oil Co. of California*, 46 F.3d 929, 935 (9th Cir. 1995) (approving instruction on special consideration of circumstantial evidence in an antitrust case); *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1151 (9th Cir. 1988).

1

**Defendants' Argument For**

2      As explained above, there are special rules that apply to the consideration of circumstantial

3 evidence in an antitrust case.  *See* Nos. 18, 64.  This simple, clear, one paragraph instruction

4 explains these special rules.

5

6

**DPPs and IPPs' Argument Against**

7      Defendants' proposed instruction is improper because it mischaracterizes the need for

8 plaintiffs to show that the alleged coconspirators' conduct was not consistent with independent

9 action.

10      First, the instruction begins with its misleading and prejudicial reference to "special rules"

11 that apply to plaintiffs' use of circumstantial evidence.  *See supra.*

12      Then, defendants' proposed instruction unduly emphasizes the holdings by courts that

13 plaintiffs relying solely on circumstantial evidence need to also show that their circumstantial

14 evidence excludes the possibility that the alleged conspirators were acting independently.  In order

15 to underscore this point, defendants' instruction takes another eight lines to say what can be said in

16 two and has already been said in ten.

17      Also, defendants' instructions fail to include any of the multiple statements of law that

18 courts have enunciated with respect to the circumstantial evidence plaintiffs *can* rely upon in order

19 to show that the alleged conspirators were *not* acting independently.  First and foremost, and

20 particularly applicable here, are meetings and exchanges of information with direct competitors.

21 *See In re Flat Glass Antitrust Litig.,* 385 F. 3d 350, 361, fn. 12 (3d Cir. 2004) ("exchanges of

22 confidential price information, cannot simply be explained as a result of oligopolostic

23 interdependence"); *Fleischman v. Albany Medical Center*, 2010 WL 2998304 at *23-26

24 (N.D.N.Y., July 22, 2010) ("some of the facts you may consider in that regard are:  . . . whether

25 the conspirators have exchanged or have had the opportunity to exchange information relative to

26 the alleged conspiracy").  Put simply, competitors who are not conspiring do not regularly meet or

27 exchange competitive information.

28

1       Additionally, defendants ignore the wealth of cases emphasizing the ability of plaintiffs to

2    use solely circumstantial evidence to prove their case.  *See In re High Fructose Corn Syrup*

3    *Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002) ("[M]ost cases are constructed out of a tissue of

4    such [ambiguous] statements and other circumstantial evidence, since an outright confession will

5    ordinarily obviate the need for a trial."); *Toys "R" Us, Inc. v. F.T.C.*, 221 F.3d 928, 935 (7th Cir.

6    2000) ("The [*Matsushita*] test states only that there must be *some* evidence which, if believed,

7    would support a finding of concerted behavior.") (emphasis in original); *In re Coordinated*

8    *Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 439 (9th Cir. 1990) (no need

9    for plaintiffs to present evidence excluding independent action, even when relying solely on

10   circumstantial evidence)*; but see In re Citric Acid Litigation*, 191 F.3d 1090, 1096 (9th Cir. 1999)

11   (*"Citric Acid"*) (need to present such evidence when relying solely on circumstantial evidence).

12       Defendants' proposed instruction is inappropriate, not supported by their cited authority,

13   and should not be adopted.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **No. 89 – [DEFENDANTS' PROPOSAL NO.      ] FIRST ELEMENT: CORPORATIONS**

2   *[DISPUTED]*

3

4   A corporation is a person, but if acts only through its agents.  A corporation's agents

5   includes its directors, officers, employees, or others acting on its behalf.

6   A corporation cannot conspire with its own officers or employees.  Nor can a corporation's

7   employees conspire among themselves. This is because a corporation, its officers and employees

8   are so closely related that they are deemed to share a common purpose and are considered by the

9   law to be one actor.  And, as I have told you, a single actor cannot violate this part of the Sherman

10  Act.

11  For similar reasons, a corporation cannot conspire with its wholly owned subsidiary.

12  Thus, for example, Samsung Electronics Co., Ltd. is not capable under the law of conspiring with

13  Samsung Semiconductor, Inc.  Like a corporation and its employees, a corporation and its wholly

14  owned subsidiary share the same purpose and are, therefore, one actor under the law.

15

16  **Authority**

17  Paragraph 1:  ABA Model Jury Instructions, B-10, as modified.  Paragraphs 2-3:  Leonard B.

18  Sand, *Modern Federal Jury Instructions – Civil*, Instr. 79-5 (Matthew Bender, 2001), as modified.

19

20

21

22

23

24

25

26

27

28

**Defendants' Argument For**

Paragraph 1 should not be controversial and is stated in ABA Model Jury Instructions, B-10.  Paragraph 2-3 explain the concept that a conspiracy requires at least two parties and how that operates when plaintiffs have alleged that a parent and its wholly owned subsidiary are both supposedly part of the conspiracy.

**DPPs and IPPs' Argument Against**

Defendants' proposed instruction is misleading insofar as it says, without qualification, "a corporation is a person."  A corporation has a legal status as a person, but is not "a person."

The instruction also appears to be aimed at misleading jurors as to the scope of corporate agency and the extent to which corporate employees *can* conspire with other corporation's employees.  If any instruction is given it should simply be:  "A corporation and its employees cannot conspire with each other.  A corporation and its employees can conspire with another corporation and its employees."

Defendants' proposed instruction is inappropriate, not supported by their cited authority, and should not be adopted.

-205-

**No. 90 – [DPPs and IPPs' PROPOSAL NO. \_\_] CONSPIRACY – MEMBERSHIP**

**_[DISPUTED]_**

To find that a defendant or an alleged coconspirator was a member of a conspiracy, the evidence must show that the defendant or alleged coconspirator knowingly joined in the conspiracy, either at its beginning or at some later time.

To act knowingly means to act voluntarily and intentionally, and not because of mistake, accident, or other innocent reason. To act knowingly, however, does not require knowledge of all details of the conspiracy.

A defendant or alleged coconspirator may participate in or become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the functions they play. Knowledge of the essential nature of the plan or common scheme is enough.

A defendant or alleged coconspirator who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall scheme, is just as responsible as if the defendant or alleged coconspirator had been one of those who formed or began the conspiracy and had participated in every part of it.

A defendant's or alleged coconspirator's knowledge of and acquiescence in a conspiracy to unreasonably restrain trade is as much a violation of the law as the creation and promotion of one.

The membership of a defendant or alleged coconspirator in a conspiracy must be based on evidence about its own statements or conduct. You should consider all the evidence about that defendant's or alleged coconspirator's statements and conduct. In determining what a particular defendant or alleged coconspirator said or did, you are not limited to considering only evidence from that defendant or alleged coconspirator. Rather, a defendant's or alleged coconspirator's statements and conduct may be demonstrated by all the evidence before you, including statements and testimony by others.

If you find that a defendant or an alleged coconspirator was a member of a conspiracy, that entity is presumed to remain a member of the conspiracy and is responsible for all actions taken by

-206-

1 all conspirators during and in furtherance of the conspiracy, until and unless it is shown that the

2 conspiracy has been completed.

3       To be deemed a member of or a participant in a conspiracy a defendant or alleged

4 coconspirator need not participate in every facet of, or every act or transaction encompassed by,

5 the conspiracy. Nor need the defendant know all of the conspiracy's details or the identity or

6 functions of all of the conspiracy's participants. You may find that a defendant or alleged

7 coconspirator participated in or joined a conspiracy if a preponderance of the evidence shows that

8 the defendant or alleged coconspirator knowingly made even a single statement or engaged in a

9 single act calculated to further the conspiracy's general objectives. It does not matter that the

10 defendant's or alleged coconspirator's connection to the conspiracy or role in the conspiracy is

11 slight or minor as long as its participation or membership is established by a preponderance of the

12 evidence.

13

14 **Authority**

15 Adapted from: *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005) (quoting *Blumenthal v.*

16 *United States*, 332 U.S. 539, 557 (1947)); *United States v. Consolidated Packaging Corp.*, 575

17 F.2d 117 (7th Cir. 1978); *United States v. Kushner*, 305 F.3d 194, 197 (3d Cir. 2002); *United*

18 *States v. Boone*, 279 F.3d 163, 192–93 (3d Cir. 2002); *Petruzzi's IGA Supermarkets, Inc. v.*

19 *Darling-Del. Co., Inc.*, 998 F.2d 1224, 1232 (3d Cir. 1993); *United States v. Cont'l Group, Inc.*,

20 603 F.2d 444, 462 (3d Cir. 1979); *Inteimar, Inc. v. Atlantic Richfield, Co.*, 364 F. Supp. 82, 100

21 (E.D. Pa. 1973); *Systemcare, Inc. v. Wang Labs. Corp.*, 117 F.3d 1137, 1143 (10th Cir. 1997);

22 *United States v. Consol. Packaging Corp.*, 575 F.2d 117, 125-28 (7th Cir. 1978); *Wagner v.*

23 *Magellan Health Servs., Inc.*, 121 F.Supp.2d 673, 679 (N.D. Ill. 2000); Jury Instruction of Chief

24 Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-

25 197 (D.D.C.) (as given on June 11, 2003, Instruction No. 35) *available as* Ex. C to Plaintiffs'

26 Appendix; ABA Antitrust Law Section, Model Jury Instructions in Civil Antitrust Cases B-13 to

27 B-14 (2005 ed.); *United States v Martinez de Ortiz*, 907 F.2d 629, 634-35 (7th Cir. 1990) (en banc);

28 *United States v. Lyman*, 592 F.2d 496, 504 (9th Cir. 1978); *United States v. Alvarez*, 358 F.3d 1194,

-207-

1201 (9th Cir. 2004); *United States v. Dunn*, 564 F.2d 348, 357 (9th Cir. 1977); *United States v. Jaimes*, 192 Fed. Appx. 690, 692 (9th Cir 2006); *United States v. Esparza*, 876 F.2d 1390, 1392 (9th Cir. 1989); *Chavez v. United States*, 275 F.2d 813, 817 (9th Cir. 1960).

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction properly instructs jurors as to the various ways someone can join a conspiracy and the resulting exposure to liability arising from membership.  *See United States v. Consolidated Packaging Corp.*, 575 F.2d 117, 126 (7th Cir. 1978) ("That same testimony also put [defendant], not deep into the conspiracy, but at least into its outer crust. Once the conspiracy has been established, slight evidence is needed to connect a particular participant.").

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and should be adopted.


**Defendants' Argument Against**

Any instruction on the elements of the claims should indicate that the element must be found by a preponderance of greater weight of the evidence.

The first paragraph tracks ABA Model Jury Instructions, B-13-15 (cited by plaintiffs), but omits the following phrase "with the intent to advance or further some object or purpose of the conspiracy."  This phrase is necessary.  *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (plaintiff must prove defendant's "conscious commitment to a common scheme designed to achieve an unlawful objective"); *United States v. Moss*, 591 F.2d 428, 434 (8th Cir. 1979) ("There must exist some element of affirmative cooperation or agreement to cooperate in the object of the conspiracy.").

The third paragraph is unbalanced in that, as set forth in the ABA Model Instruction, B-13, it improperly adds the sentence "To act knowingly, however, does not require knowledge of all details of the conspiracy", but fails to instruct the jury that "a person who has no knowledge of a conspiracy, but happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator."  It also fails to instruct the jury that, to be found to be a member of a conspiracy, a person must have reason to believe that the person's own benefits were dependent on the success of the entire venture.  *See United States v. Brown*, 912 F.2d 1040, 1043 (9th Cir. 1990) ("It is sufficient to show that each defendant knew or had reason to know of the scope of the conspiracy and that each defendant had reason to believe that [his] own benefits were

-209-

1  dependent upon the success of the entire venture.") (*quoting United States v. Arbelaez*, 719 F.2d

2  1453, 1459 (9th Cir. 1983)).

3        The fifth paragraph is repetitive of the fourth paragraph and unfairly places emphasis on

4  this aspect of conspiracy law.

5        The sixth paragraph is unbalanced in that it fails to instruct the jury, as set forth in the

6  ABA Model Instruction, B-13, that it may consider "any evidence of that defendant's knowledge

7  *or lack of knowledge, status, and participation in the events involved*."  (emphasis added).

8  Plaintiffs yet again add the statement "You should consider all the evidence about that defendant's

9  or alleged coconspirator's statements and conduct."  Plaintiffs cannot have this statement in every

10  instruction.

11        The final paragraph is repetitive of the third paragraph, and thus places undue emphasis on

12  the possibility of finding a defendant or alleged coconspirator to be a member of a conspiracy

13  without participating in every aspect of it or knowing of its full scope.  The original sentence from

14  ABA Model Jury Instruction, B-13-15 reads:

15      In determining whether any defendant was a member of the alleged conspiracy, you
    should consider only the evidence of that particular defendant's statements and
16      conduct, including any evidence of that defendant's knowledge or lack of
    knowledge, status, and participation in the events involved, and any other evidence
17      of participation in the conspiracy alleged.

18  Plaintiffs' statement says the opposite.  In addition, courts have characterized the slight-evidence

19  rule as "a rule of criminal appellate procedure," and one with limited application even in that

20  context.  *In re Citric Acid Litig.*, 996 F. Supp. 951, 955 (N.D. Cal. 1998) (citing *Zenith Radio*

21  *Corp. v. Matsushita Elec. Indus. Co.*, 513 F. Supp. 1100, 1169 (E.D. Pa. 1981), *aff'd in part and*

22  *rev'd in part on other grounds*, 723 F.2d 238 (3d Cir. 1983), *rev'd*, 475 U.S. 574 (1986)).  It is

23  "abundantly clear" that "it is improper for a district court to charge the jury that only slight

24  evidence is necessary to connect a person with a conspiracy and that such an instruction would be

25  erroneous."  *United States v. Nicholson*, 525 F.2d 1233, 1237 (5th Cir. 1978).

26

27

28

**No. 91 – [DEFENDANTS' PROPOSAL NO.      ] SECOND ELEMENT: PARTICIPATION AND INTENT** *[DISPUTED]*

Before you can find that a defendant was a member of the conspiracy alleged by the direct purchasers, the evidence must show by a preponderance or greater weight of the evidence that that defendant knowingly joined in the unlawful plan at its inception or at some later time with the intent to advance or further some object or purpose of the conspiracy.

To act knowingly means to act voluntarily and intentionally, and not because of mistake or accident or any other innocent reason. A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played. A person, however, must have knowledge of the scope of the conspiracy and must have reason to believe that the person's own benefits were dependent on the success of the entire venture, in order to voluntarily and intentionally join the conspiracy. A person who has no knowledge of a conspiracy, but happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator.

A person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he had been one of those who formed or began the conspiracy and participated in every part of it.

The membership of a defendant in a conspiracy must be based only on evidence of its own statements or conduct. In determining whether any defendant was a member of the alleged conspiracy, you should consider the evidence of only that particular defendant's statements and conduct, including any evidence of that defendant's knowledge or lack of knowledge, status, and participation in the events involved, and any other evidence of participation in the conspiracy alleged.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are attributable to all of those whom you find were members of the conspiracy. But actions or statements of any conspirator that were not done or made in furtherance of the

1   conspiracy, or that were done or made before its existence or after its termination, may be

2   considered as evidence only against the person who made them.

3

4                                               **Authority**

5   ABA Model Jury Instructions, B-13 through B-15, as modified.  *See also* Leonard B. Sand,

6   *Modern Federal Jury Instructions – Civil*, Instr. 79-8 (Matthew Bender, 2001); *Monsanto Co. v.*

7   *Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (plaintiff must prove defendant's "*conscious*

8   commitment to a common scheme designed to achieve an unlawful objective") (emphasis added);

9   *United States v. Arbelaez*, 719 F.2d 1453, 1458-59 (9th Cir. 1983); *United States v. Brown*, 912

10  F.2d 1040, 1043 (9th Cir. 1990).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Defendants' Argument For**

2       The ABA Model Jury Instructions, B-13 through B-15, recommended by the Ninth Circuit

3   to be used for substantive antitrust jury instructions, is a balanced and accurate statement of the

4   law regarding the second element the plaintiffs need to prove – participation/joinder in the alleged

5   conspiracy.

6

7

**DPPs and IPPs' Argument Against**

8       Defendants' proposed instruction contains statement of the law that are generally accurate,

9   but many of those statements, such as most of the second paragraph, are phrased in the negative.

10  As a result, jurors are essentially being asked "Did the defendant not join the conspiracy?," and

11  thus are improperly conditioned to find against plaintiffs.

12      Defendants' proposed instruction is inappropriate and should not be adopted.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **No. 92 – [DPPs and IPPs' PROPOSAL NO. ___]  CONSPIRACY - TIME OF JOINING**

2      *[DISPUTED]*

3

4      A conspiracy may be formed all at once with all persons or companies joining at the same

5   time or it may be formed over time, with different persons or companies joining in different ways,

6   or at different times, and in different places. A person or company that knowingly joins an existing

7   or ongoing conspiracy is just as responsible as if the person or company had been one of those

8   who formed or began the conspiracy or had participated throughout the entire conspiracy. This

9   rule of law is designed to discourage persons from joining ongoing conspiracies.

10      Thus, if you find a defendant or an alleged coconspirator knowingly joined a conspiracy or

11   participated in part of a conspiracy with knowledge of the overall scheme, then it is liable for the

12   actions and statements of all of the other coconspirators during the course of and in furtherance of

13   the conspiracy, regardless of when it joined the conspiracy.  This liability extends to actions or

14   harms that occurred even before the defendant or alleged coconspirator joined the conspiracy. The

15   extent of such defendant's or alleged coconspirator's participation in the conspiracy is irrelevant.

16

17      **Authority**

18   Adapted from: *United States v. Stewart*, 104 F.3d 1377, 1382 (D.C. Cir. 1997); *United States v.*

19   *Consolidated Packaging Corp.*, 575 F.2d 117 (7th Cir. 1978); *United States v. Bridgeman*, 523

20   F.2d 1099, 1107-08 (D.C. Cir. 1975); Jury Instruction of Chief Judge Thomas F. Hogan in *In re*

21   *Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11,

22   2003, Instruction No. 36) *available as* Ex. C to Plaintiffs' Appendix; KEVIN O'MALLEY, JAY E.

23   GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 150.43

24   (5th ed. 2001); ABA Antitrust Law Section, Model Jury Instructions in Civil Antitrust Cases B-11

25   to B-15 (2005 ed.); *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 393 (1948); *United States v.*

26   *Dicesare*, 765 F.2d 890, 900 (9th Cir. 1985); *United States v. Traylor*, 656 F2d 1326, 1337 (9th

27   Cir. 1981).

28

[proposed] JURY INSTRUCTIONS

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction properly instructs jurors as to the timing of someone joining a conspiracy, including as a late-joiner, and the resulting exposure to liability arising from membership.  *See United States v. Consolidated Packaging Corp.*, 575 F.2d 117, 126 (7th Cir. 1978) ("That same testimony also put [defendant], not deep into the conspiracy, but at least into its outer crust. Once the conspiracy has been established, slight evidence is needed to connect a particular participant.").

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and should be adopted.

**Defendants' Argument Against**

This instruction is repetitive of material in plaintiffs' prior instruction on participation in a conspiracy, and thus unfairly emphasizes the rule of liability for joining an ongoing conspiracy. All of these concepts are explained in a fair and balanced way in the ABA Model Instruction at B-13 through B-15 (adopted by Defendants' instruction above, No. 91), and Defendants object to the presentation of the instruction in the piecemeal and repetitive fashion offered by plaintiffs.

-215-

**No. 93 – [DPPs and IPPs' PROPOSAL NO. ___] DIRECT EXCHANGES OF COMPETITIVE INFORMATION *[DISPUTED]***

Plaintiffs have alleged and presented evidence that defendants and their alleged coconspirators communicated directly with one another regarding competitively sensitive information concerning SRAM prices and production levels.

Plaintiffs claim that such communications and exchanges are part of the evidence showing that defendants and their alleged coconspirators agreed to fix, raise, maintain or stabilize prices. You may consider such facts and circumstances along with all the other evidence in determining whether there was a conspiracy among defendants and their alleged coconspirators to fix, raise, maintain or stabilize the prices of SRAM.

In addition, Section 1 of the Sherman Act is violated even if competitors do not fix prices directly, but do so by means of an exchange of information. The statute is directed against the setting of prices by agreement between or among competitors, as opposed to each competitor setting its own prices independently, according to its own business judgment. Evidence that defendants and their alleged coconspirators agreed to exchange information and communicate with one or another about pricing and that such communications and exchanges of information were likely to have had an effect on prices charged allows you to decide that a price-fixing conspiracy existed.

**Authority**

Adapted from: *United States v. Container Corp. of Am.*, 393 U.S. 333, 336-37 (1969); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig*., 906 F.2d 432, 446-47 (9th Cir. 1990), *cert. denied,* 500 U.S. 959 (1991); *In re Flat Glass Antitrust Litig.,* 385 F. 3d 350, 361, fn. 12 (3d Cir. 2004). Jury Instructions of Judge Charles L. Brieant in *In re High Pressure Laminates Antitrust Litig.*, MDL Docket No. 1368 (S.D.N.Y.) (as given on May 23, 2006, N.T. 2324-25) *available at* http://www.abanet.org/antitrust/at-committees/at-trial/pdf/jury-instructions/DOC_00000027.pdf.

-216-

1

**DPPs and IPPs' Argument For**

2      Plaintiffs' proposed instruction properly instructs jurors as to how they can consider

3 evidence of the meetings and exchanges of competitive production and pricing information among

4 SRAM suppliers.  As evidence of a price-fixing agreement, including a production agreement,

5 among the SRAM suppliers, or as evidence of an ongoing information exchange among SRAM

6 suppliers with the purpose or effect of such exchange being that the suppliers did not

7 independently set their prices.  *See In re Coordinated Pretrial Proceedings in Petroleum Prods.*

8 *Antitrust Litig.*, 906 F.2d 432, 447 and n.13 (9th Cir. 1990); *In re Static Random Access Memory*

9 *(SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 902 (N.D. Cal. 2008) (recognizing significance of

10 specific economic conditions in SRAM market, and noting "a civil violation can be established by

11 proof of either an unlawful purpose or an anticompetitive effect.") (quoting *United States v.*

12 *United States Gypsum Co.*, 438 U.S. 422, 436 n.13 (1978)).

13      Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including

14 Supreme Court and Ninth Circuit precedent, and should be adopted.

15

16

**Defendants' Argument Against**

17      The term "competitively sensitive" in the first paragraph is prejudicial to defendants, in

18 that it adopts the plaintiffs' theory and characterization about the significance of the information

19 exchanged, and suggests that the exchange of such information is an antitrust violation, despite

20 well-settled law that some such exchanges may be entirely lawful.  *See United States v. United*

21 *States Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978); *United States v. Citizens & Southern Nat'l*

22 *Bank*, 422 U.S. 86, 113 (1975); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118-125 (3d Cir.

23 1999).  Every such reference by plaintiffs should be struck.  Furthermore, this instruction, unlike

24 the ABA Model Instruction at B-32 offered by Defendants (below, No. 94), fails to inform the jury

25 that the fact that Defendants exchange of information does not necessarily establish an agreement

26 to fix prices and fails to inform the jury that there may be legitimate reasons why competitors

27 would exchange information.

28

-217-

[proposed] JURY INSTRUCTIONS

1   As stated previously, the phrase "fix, raise, maintain or stabilize prices" (stated twice here)

2   must be limited to just "fix prices"

3   The first sentence of the final paragraph is confusing and misleading, in that it suggests an

4   additional way in which the Sherman Act can be violated.  Rather, the first sentence of the second

5   paragraph, which is part of the ABA Model Instruction, B-32, adequately explains the necessary

6   point – that plaintiffs' theory of liability includes pointing to information exchanges by defendants

7   as part of the evidence showing that defendants alleged engaged in a price-fixing conspiracy.

8   Moreover, the final sentence is an incorrect statement of the law in that it suggests that the mere

9   finding of an exchange of information between competitors about pricing, together with a finding

10  that such exchanges were likely to have had an effect on prices, suffices for a finding of

11  conspiracy.  However, "the dissemination of price information is not itself a *per se* violation of the

12  Sherman Act."  *United States v. Citizens & Southern Nat'l Bank*, 422 U.S. 86, 113 (1975); *see also*

13  *Todd v. Exxon Corp.*, 275 F.3d 191, 199 (2d Cir. 2001) (Sotomayor, J.) (explaining that the

14  suggestion in *United States v. Container Corp. of America*, 393 U.S. 333 (1969), that an

15  information exchange is by itself constitutes a Section 1 violation, was laid to rest in *Citizens &*

16  *Southern*); *id*. at 198 (when the claim is of a *per se* illegal price-fixing agreement, evidence of

17  information exchange at best may help support an inference of agreement).

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

1 **No. 94 – [DEFENDANTS' PROPOSAL NO.     ] EXCHANGE OF PRICING**
2      **INFORMATION** *[DISPUTED]*

3

4      Evidence has been introduced concerning the exchange of information among defendants
5 about their prices for SRAM.  Plaintiff claims that such exchanges are part of the evidence
6 establishing the alleged conspiracy to fix SRAM prices.

7      The fact that the defendants exchanged price information or publicly announced prices
8 does not necessarily establish a conspiracy to fix prices.  There may be other legitimate reasons
9 that would lead competitors to exchange price information or announce prices, and the law
10 recognizes that exchanges of price information or public announcements of prices may enhance
11 competition and benefit consumers.  The law also does not forbid employees of competitors from
12 talking to each other about their work, the industry in which their companies operate, or the
13 present or expected future conditions in the industry.  In order for exchanges of information to be
14 considered as evidence of a conspiracy, there must be evidence that the exchanges had an impact
15 on pricing decisions.  You may consider the nature of, and any explanations for, the information
16 exchanges in determining whether or not the information was being exchanged as part of a
17 conspiracy to fix prices.

18

19                   **Authority**

20 Adapted from ABA Model Jury Instructions, B-32.  *See also United States v. United States*
21 *Gypsum Co.*, 438 U.S. 422, 441 n.14 (1978) (exchanges of pricing information in some
22 circumstances may make markets more, rather than less, competitive); *In re Citric Acid Litig.*, 191
23 F.3d 1090, 1103, 1005 (9th Cir. 1999); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118-125
24 (3d Cir. 1999) (discussion of industry conditions does not violate Section 1); *Blomkest Fertilizer,*
25 *Inc. v. Potash Corp. of Saskatchewan, Inc.*, 203 F.3d 1028, 1033-37 (8th Cir. 2000) (sporadic
26 price verification communications did not tend to exclude possibility of independent conduct).

27

28

1           **Defendants' Argument For**

2           The ABA Model Jury Instructions, B-32 is a balanced and accurate statement of the law

3    regarding a potentially confusing set of evidence – the exchange of pricing information.  *See also*

4    Authorities cited.

5

6           **DPPs and IPPs' Argument Against**

7           Defendants' proposed instruction mischaracterizes the evidence in an effort to have the jury

8    render decisions favorable to defendants.  Critically, defendants to not refer to direct meetings and

9    exchanges of sensitive information between direct competitors, but instead refer to defendants

10   having "exchanged price information *or publicly announced prices*" (emphasis added), and then

11   go on to say that such conduct "does not necessarily establish a conspiracy to fix prices."

12   Apparently, defendants want jurors to focus on the "public" announcements and find no

13   misconduct.  Of course, the misconduct lies in the exchange of *non-public* sensitive information.

14   *See In re Flat Glass Antitrust Litig.,* 385 F. 3d 350, 361, fn. 12 (3d Cir. 2004) ("exchanges of

15   confidential price information, cannot simply be explained as a result of oligopolostic

16   interdependence"); *see also Fleischman v. Albany Medical Center*, 2010 WL 2998304 at *23-26

17   (N.D.N.Y., July 22, 2010); *cf. Maple Flooring Mfrs. Ass'n v. United States*, 268 U.S. 563, 567

18   (1925).

19          Defendants' proposed instruction proceeds to blur the line between lawful and unlawful

20   conduct and communications saying "There may be other legitimate reasons that would lead

21   competitors to exchange price information *or announce prices.*" (Emphasis added.)  Again it may

22   be lawful to announce prices, but is an entirely different matter with respect to sharing pricing,

23   production and customer information with direct competitors.

24          Finally, even though there is evidence in this case of the information exchanges being used

25   to make pricing *and production* decisions, defendants misstate the law, at least in the Ninth

26   Circuit, that "there must be evidence that the exchanges had an impact on pricing decisions."  In

27   *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 447

28   and n.13 (9th Cir. 1990), the Ninth Circuit explained that such exchanges can be used to establish

                                            -220-

1   the existence of a price-fixing agreement, or an agreement to exchange such information – the

2   latter of which the Ninth Circuit acknowledged was deemed a *per se* violation in *United States v.*

3   *Container Corp. of Am.*, 393 U.S. 333 (1969).  *Accord In re Citric Acid Litig.*, 191 F.3d 1090,

4   1103-05 (9th Cir. 1999); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F.

5   Supp. 2d 896, 902 (N.D. Cal. 2008) (recognizing significance of specific economic conditions in

6   SRAM market, and noting "a civil violation can be established by proof of either an unlawful

7   purpose or an anticompetitive effect.") (quoting *United States v. United States Gypsum Co.*, 438

8   U.S. 422, 436 n.13 (1978)).  (The Ninth Circuit in *In re Citric Acid Litig.*, 191 F.3d 1090, 1103-05

9   (9th Cir. 1999) also held that the competitor information defendant had in that case could be

10  explained as coming from customers. Of course that is not the case here.)

11       In the end, defendants' proposed instruction only comes close to being accurate as a matter

12  of fact or law in the fist and last sentence of the instruction.

13       Defendants' proposed instruction is inappropriate, not supported by their cited authority,

14  and should not be adopted.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

**No. 95 – [DPPs and IPPs' PROPOSAL NO. ___] COLLUSIVE EFFORTS TO RESTRICT OR REDUCE OR LIMIT THE SUPPLY OF SRAM _[DISPUTED]_**

One means of effectuating a price-fixing conspiracy among competitors is through concerted action to restrict, reduce, or limit the market supply of an allegedly price-fixed product. Collusive restrictions on product supply cause demand to exceed product supply and inevitably inflate product prices above competitive levels. An agreement or understanding among competitors to restrict, reduce or limit supply of a product is a, _per se_ (that is, by itself) violation of Section 1 of the Sherman Act. Plaintiffs claim that one of the means and methods by which defendants and their alleged coconspirators effectuated the SRAM price-fixing conspiracy they allege in this case was by restricting, reducing, or limiting the market supply of SRAM. You may consider whether the defendants and their alleged coconspirators engaged in cooperative efforts to reduce, restrict or limit SRAM supply in making your determination as to whether the defendants and their alleged coconspirators participated in or were members of a conspiracy to fix, raise, maintain and stabilize the prices of SRAM.

**Authority**

Adapted from: _FTC v. Superior Court Trial Lawyers Ass'n._, 493 U.S. 411, 423 (1990); _United States v. Socony-Vacuum Oil Co._, 310 U.S. 150, 223 (1940); _United States v. Andreas_, 216 F.3d 645, 667 (7th Cir. 2000); _see also In re Linerboard Antitrust Litig._, 292 F.Supp.2d 644, 660 (E.D. Pa. 2003).

[proposed] JURY INSTRUCTIONS

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction properly instructs jurors that price-fixing can be achieved through agreements to reduce supply, and that such agreements are also *per se* violations. *See In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 644, 660 (E.D. Pa. 2003).

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including Supreme Court precedent, and should be adopted.


**Defendants' Argument Against**

Plaintiffs have not developed any evidence the defendants and alleged coconspirators agreed to restrict the output of SRAM.  Plaintiffs are entitled to an instruction on a theory of the case only if it is supported by the evidence.  *See Jenkins v. Union Pacific R. Co.*, 22 F.3d 206, 210 (9th Cir. 1994).  Further, the instruction is very repetitive, the second sentence is a conclusion not proper for a jury instruction, the reference to "per se" should be struck, and there is no need for an argumentative title (*i.e.,* "collusive efforts").

-223-

[proposed] JURY INSTRUCTIONS

**No. 96 – [DPPs and IPPs' PROPOSAL NO. ___]  CONSPIRACY – OPPORTUNITY TO CONSPIRE** *[DISPUTED]*

Plaintiffs contend there were many occasions where defendants and their alleged coconspirators had the opportunity to meet and discuss prices, such as at trade shows they attended, and other business and social meetings and functions. Attendance at trade shows or functions and other meetings can be for legitimate reasons but also can be to further unlawful purposes. That a defendant had such contacts with another defendant or alleged coconspirator may be considered by you in finding that it had the opportunity to conspire. Although such opportunity to conspire is not sufficient evidence in and of itself to prove a defendant or alleged coconspirator participated in a conspiracy, you may consider these opportunities along with all the other evidence, in deciding whether a conspiracy existed and whether a defendant or alleged coconspirator participated in it.

**Authority**

Adapted from: *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., Inc.*, 998 F.2d 1224, 1242, 1244 n.17 (3d Cir. 1993); *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 823 F.2d 49 (3d Cir. 1987); *Fragale & Sons Beverage Co. v. Dill*, 760 F.2d 469, 473 (3d Cir. 1985); *Robinson v. Magovern*, 521 F. Supp. 842, 892-93 (W.D. Pa. 1981); *United States v. Gen. Elec. Co.*, 82 F. Supp. 753, 881 (D.N.J. 1949); *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1303 n.34 (9th Cir. 1999); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir. 1989); *McCabe's Furniture, Inc. v. La-Z-Boy Chair Co.*, 798 F.2d 323 (8th Cir. 1986); *Weit v. Cont'l. Ill. Nat'l. Bank & Trust Co.*, 641 F.2d 457, 477 (7th Cir. 1981) (Fairchild, C.J., dissenting); *Feminist Women's Health Ctr., Inc. v. Mohammad*, 586 F.2d 530, 548 n.17 (5th Cir. 1978); *Alexander v. Phoenix Bond & Indem. Co.*, 149 F.Supp.2d 989, 1000-01 (N.D. Ill. 2001); *Coleman v. Cannon Oil Co.*, 849 F. Supp. 1458, 1468 (M.D. Ala. 1993); Jury Instructions of Judge Gary L. Lancaster in *In re Indus. Silicon Antitrust Litig.*, No. 95-2104 (W.D. Pa.) (as given on May 17, 1999, N.T. 57) *available as* Ex. A to Plaintiffs' Appendix; Jury Instruction of Chief Judge Thomas F. Hogan

-224-

1   in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on

2   June 11, 2003, Instruction No. 31) *available as* Ex. C to Plaintiffs' Appendix; ABA Antitrust Law

3   Section, Model Jury Instructions in Civil Antitrust Cases B-2 to B-4 (2005 ed.).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:1ESC1\403121977.4
MDL No. 1819

[proposed] JURY INSTRUCTIONS

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction properly instructs jurors that opportunities to conspire can be considered when make a determination as to the existence of the conspiracy. *Fleischman v. Albany Medical Center*, 2010 WL 2998304 at *23-26 (N.D.N.Y., July 22, 2010) ("some of the facts you may consider in that regard are: . . . whether the conspirators have exchanged or have had the opportunity to exchange information relative to the alleged conspiracy").

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including Supreme Court precedent, and should be adopted.

**Defendants' Argument Against**

This instruction improperly would permit the jury to consider evidence of the mere existence of opportunities to conspire as evidence in support of a finding of conspiracy. Even if the jury is instructed that this evidence is not sufficient by itself, but must be considered together with other evidence, it would invite the jury to consider mere attendance at a meeting undertaken for entirely procompetitive purposes (such as a meeting of a standard-setting organization) as part of the evidence from which the jury could find the existence of a conspiracy.

The Ninth Circuit has repeatedly rejected plaintiffs' argument to "infer participation in the conspiracy from the opportunity to do so." *In re Citric Acid Litig.*, 191 F.3d 1090, 1098, 1103 (9th Cir. 1999) ("Gathering information about pricing and competition in the industry is standard fare for trade associations. If we allowed conspiracy to be inferred from such activities alone, we would have to allow an inference of conspiracy whenever a trade association took almost any action. As the Supreme Court has recognized, however, trade associations often serve legitimate functions, such as providing information to industry members, conducting research to further the goals of the industry, and promoting demand for products and services.") (citing *Maple Flooring Mfrs. Ass'n v. United States*, 268 U.S. 563, 567 (1925)); *see McDaniel v. Appraisal Institute*, 117 F.3d 421, 424 (9th Cir. 1997) (explaining that trade associations serve a beneficial and legitimate function); *In re Graphics Processing Units Antitrust Litig.*, 527 F.Supp.2d 1011, 1023 (N.D.Cal. 2007) ("Attendance at industry trade shows and events is presumed legitimate and is not a basis

-226-

from which to infer a conspiracy, without more."); *In re Late Fee and Over-Limit Fee Litig.*, 2007 WL 4106353, at *8 (N.D. Cal. Nov. 16, 2007) ("courts have consistently refused to infer the existence of a conspiracy" from charges that defendants had "membership[s] in industry-wide trade associations, [which supposedly] provided opportunities for them to communicate") (citing cases); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 n.12 (2007) (rejecting that a conspiracy could be inferred "just because [a party] belonged to the same trade guild as one of his competitors when their pins carried the same price tag."); *Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 579 n.30 (S.D.N.Y. 2007) ("it is well settled that 'the mere opportunity to conspire [in a joint venture arrangement] does not by itself support the inference that such an illegal combination actually occurred.'") (citation omitted); *In re Travel Agent Comm'n Antitrust Litig.*, 2007 WL 3171675, at *9 (N.D. Ohio Oct. 29, 2007) (Plaintiffs assertion of an opportunity to conspire "at private meetings; through industry associations; at trade shoes; through jointly formed business ventures; and while playing golf", without more, does not suggest that there was a conspiracy).

In order for plaintiffs to have the jury consider "opportunities to conspire" along with other evidence, there must be some evidence that those opportunities were used to have actual discussions or exchanges of information from which the jury could infer the defendants were conspiring.   *See In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999).  Otherwise, defendants could be penalized merely for participating in an industry that, owing to the need for standardization of products for the benefit of customers, requires  competitors to regularly communicate and meet with one another.

**No. 97 – [DEFENDANTS' PROPOSAL NO. ___] OPPORTUNITY TO CONSPIRE IS INSUFFICIENT** *[DISPUTED]*

Evidence that any particular defendant had the "opportunity" to conspire with any other defendant to fix prices without any additional showing is insufficient to demonstrate that a conspiracy existed.  In other words, the fact that defendants may have associated with one another and may have met or assembled together and discussed common aims and interests, does not establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the defendants were acting independently.  If defendants acted similarly but independent of one another, without any agreement between them, then there would be no conspiracy.

Here, you have heard testimony and seen exhibits concerning negotiations between certain defendants over proposed formations of joint ventures, acquisitions, and cross licensing arrangements.  Evidence that certain defendants participated in joint ventures, acquisitions, or cross licensing arrangements does not, by itself, permit an inference that there was a conspiracy. It is customary for businesses to form joint ventures, to merge or sell businesses, and to enter into cross-licensing arrangements.  In fact, the law recognizes that these business integrations often have positive effects on competition and can provide benefits to consumers.

Similarly, you have heard evidence that certain defendants attended trade associations or were involved in standard setting organizations.  There is nothing particularly wrong in attending industry functions or being a member in industry trade associations.  Indeed, trade associations serve a beneficial and legitimate function.  Evidence that certain defendants attended trade associations does not, by itself, permit an inference that there was a conspiracy.

**Authority**

Adapted from ABA Model Jury Instructions, B-22; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553-54, 567 n.12 (2007); *In re Citric Acid Litig.*, 191 F.3d 1090, 1103, 1103 (9th Cir. 1999) (rejecting plaintiffs' argument to "infer participation in the conspiracy from the opportunity to do so"); *id.* 1098 (citing *Maple Flooring Mfrs. Ass'n v. United States*, 268 U.S. 563, 567 (1925)); *McDaniel v.*

-228-

1   *Appraisal Institute*, 117 F.3d 421, 424 (9th Cir. 1997); *Williamson Oil Co. v. Philip Morris USA*,

2   346 F.3d 1287, 1319 (11th Cir. 2003) (*citing Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438,

3   1456 (11th Cir. 1991)); *Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan, Inc.*, 203 F.3d

4   1028, 1033 (8th Cir. 2000); *Cooper v. Forsyth County Hospital Authority, Inc.*, 789 F.2d 278, 281

5   (4th Cir. 1986); *In re Graphics Processing Units Antitrust Litig.*, 527 F.Supp.2d 1011, 1023 (N.D.

6   Cal. 2007); *In re Late Fee and Over-Limit Fee Litig.*, 2007 WL 4106353, at *8 (N.D. Cal. Nov.

7   16, 2007); *Townshend v. Rockwell Int'l Corp.*, 2000 WL 433505, at *8 (N.D. Cal. 2000); *City of

8   Moundridge v. Exxon Mobil Corp.*, 2009 WL 5385975, at *9-11 (D.D.C., Sept. 30, 2009); *Arista

9   Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 579 n.30 (S.D.N.Y. 2007); *In re Travel

10   Agent Comm'n Antitrust Litig.*, 2007 WL 3171675, at *9 (N.D. Ohio Oct. 29, 2007); *see also

11   Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006); *Copperweld Corp. v. Independence Tube Corp.*,

12   467 U.S. 752, 768 (1984); Fed. Trade Comm'n & U.S. Dep't of Justice, *Antitrust Guidelines for

13   Collaborations Among Competitors* § 2.1 (2000).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Defendants' Argument For**

2          Defendants' instruction, based mostly on authority from the Supreme Court and within the

3   Ninth Circuit (and discussed in brief detail in opposition to plaintiffs' proposed instruction, No.

4   96), accurately captures the governing law on how to consider supposed "opportunities" to

5   conspire in an antitrust case.  This instruction is not only accurate under governing law, but it also

6   helps the jury understand how to consider and how not to misconstrue meetings between alleged

7   co-conspirators.

8

9                                    **DPPs and IPPs' Argument Against**

10          The first sentence of defendants' proposed instruction contains a generally fair statement of

11   the law, but the instruction then proceeds to read as a laundry list of argument about all the

12   legitimate ends that trade shows and business meetings serve.  The instruction also fails to convey

13   an accurate statement of the law to the effect that, when combined with other evidence,

14   opportunities to conspire can support a finding of conspiracy, and should be considered by jurors.

15          Defendants' proposed instruction is inappropriate, not supported by their cited authority,

16   and should not be adopted.

17

18

19

20

21

22

23

24

25

26

27

28

**No. 98 – [DPPs and IPPs' PROPOSAL NO. ___]  CONSPIRACY – EVIDENCE OF PRICING** *[DISPUTED]*

To find a conspiracy existed and that a defendant or alleged coconspirator was a member of the conspiracy, it is sufficient for you to find that the conspirators had a meeting of the minds to affect the prices of SRAM in any way.

**Authority**

Adapted from: *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 361-63 (3d Cir. 2004); *United States v. Mastrangelo*, 172 F.3d 288, 293 (3d Cir. 1999); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., Inc.*, 998 F.2d 1224, 1243 (3d Cir. 1993); *Nanavati v. Burdette Tomlin Mem 'l. Hosp.*, 857 F.2d 96, 119 (3d Cir. 1988) (quoting *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 763 F.2d 1482, 1491 (3d Cir. 1985)); *United States v. Cont'l. Group, Inc.*, 603 F.2d 444, 463 (3d Cir. 1979); *Carpet Group Int'l. v. Oriental Rug Importers Ass'n.*, 256 F.Supp.2d 249, 273-74 (D.N.J. 2003) (citing *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 513 F. Supp. 1100, 1149 (E.D. Pa. 1981), *rev'd on other grounds*, 723 F.2d 238 (3d Cir. 1983), *rev'd*, 475 U.S. 574 (1986)); *United States v. LBS Bank–N.Y., Inc.*, 757 F. Supp. 496, 501 (E.D. Pa. 1990); *James Julian, Inc. v. Raytheon Co.*, 557 F. Supp. 1058, 1065 (D. Del. 1983); *United States v. Spiezio*, 523 F. Supp. 264, 271 (E.D. Pa. 1981); *Intermar, Inc. v. Atlantic Richfield, Co.*, 364 F. Supp. 82, 100 (E.D. Pa. 1973); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 222 (1940); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 654 (7th Cir. 2002); *Wilk v. Am. Med. Ass'n.*, 671 F. Supp. 1465, 1492 (N.D. Ill. 1987); Jury Instructions of Judge Gary L. Lancaster in *In re Indus. Silicon Antitrust Litig.*, No. 95-2104 (W.D. Pa.) (as given on May 17, 1999, N.T. 56) *available as* Ex. A to Plaintiffs' Appendix; Jury Instruction of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 31) *available as* Ex. C to Plaintiffs' Appendix.

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction properly instructs jurors as to the essential element of a conspiracy, a meeting of the minds.

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including Supreme Court and Ninth Circuit precedent, and should be adopted.

**Defendants' Argument Against**

This instruction improperly would permit the jury to find that one defendant or alleged coconspirator was a member of a conspiracy if *other* conspirators had a meeting of the minds. In that respect, it is erroneous and conflicts with the instruction on knowledge and participation in a conspiracy. In addition, the basic description of a conspiracy as a "meeting of the minds" is repetitive of a portion of the basic instruction on conspiracy and should not be given separately.

What plaintiffs possibly meant to say, as they have repeatedly said elsewhere, is that a conspiracy to fix prices – whether by raising, lowering, or stabilizing prices – can support a price fixing claim. *See, e.g., United States v. Socony-Vacuum Oil Co*., 310 U.S. 150, 222 (1940). To this extent, this proposed instruction is duplicative of its instruction on a conspiracy and should be struck. If plaintiffs' vague and confusing reference to "affect the prices of SRAM in any way" is meant to convey additional meaning, it is incorrect and misleading.

**No. 99 – [DEFENDANTS' PROPOSAL NO. ___] SIMILARITY OF PRICES** *[DISPUTED]*

Evidence that the defendants may have charged identical prices for the same products, or engaged in identical or similar business practices, does not alone establish an agreement to fix prices because such practices may be consistent with lawful, ordinary and proper competitive behavior in a free and open market.

The Sherman Act prohibits agreements between two or more competitors to fix prices. It does not prohibit independent behavior even if such behavior is similar or identical to that of competitors. A defendant may lawfully charge prices identical to those charged by its competitors and not violate the Sherman Act. A defendant may even copy the prices of a competitor or follow and conform exactly to the price policies and price changes of its competitors. Likewise, a defendant does not violate the Sherman Act by taking some action in the hope or expectation that its competitors will follow, so long as it has not reached an agreement with its competitors. Parallel conduct, without more, does not violate the law.

Nevertheless, you may consider such facts and circumstances along with all the other evidence, in determining whether any similarity or identity of prices resulted from the independent business judgment of the individual defendants freely competing in the open market, or whether it resulted from an agreement between two or more of them.

**Authority**

ABA Model Jury Instructions, B-30 through B-31.

-233-

1

**Defendants' Argument For**

2      The ABA Model Jury Instructions, B-30 through B-31, adopted by Defendants, is a

3 balanced and accurate statement of the law, which is based upon authority from the Supreme

4 Court and many Circuit Courts of Appeals.

5

6

**DPPs and IPPs' Argument Against**

7      Defendants' instruction goes too far when its states:  "Likewise, a defendant does not

8 violate the Sherman Act by taking some action in the hope or expectation that its competitors will

9 follow, so long as it has not reached an agreement with its competitors"  Such language

10 improperly invites the jury to disregard pricing evidence that, with other evidence, may support

11 finding of a conspiracy.  *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 361-63 (3d Cir. 2004).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-234-

1  **No. 100 – [DPPs and IPPs' PROPOSAL NO. ___] HORIZONTAL PRICE FIXING –**

2  **EVIDENCE OF COMPETITION** *[DISPUTED]*

3

4       If you find that a defendant participated in a conspiracy to fix, raise, maintain or stabilize

5  the prices of SRAM, it is no defense that it nevertheless sometimes competed with other

6  manufacturers or sellers of SRAM products. Moreover, a conspiracy to fix, raise, maintain or

7  stabilize prices is unlawful even if it does not affect each and every transaction with customers of

8  the conspirators.

9

10                  **Authority**

11  Adapted from: *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 362-63 (3d Cir. 2004); *United States*

12  *v. Cont'l. Group, Inc.*, 603 F.2d 444, 467 (3d Cir. 1979); *BCB Anesthesia Care, Ltd. v. Passavant*

13  *Mem'l. Area Hosp. Ass'n.*, 36 F.3d 664, 666 (7th Cir. 1994); *Denny's Marina, Inc. v. Renfro Prods.,*

14  *Inc.,* 8 F.3d 1217, 1221-22 (7th Cir. 1993); Jury Instructions of Judge Gary L. Lancaster in *In re*

15  *Indus. Silicon Antitrust Litig.*, No. 95-2104 (W.D. Pa.) (as given on May 17, 1999, N.T. 60)

16  *available as* Ex. A to Plaintiffs' Appendix; Jury Instruction of Chief Judge Thomas F. Hogan in *In*

17  *re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June

18  11, 2003, Instruction No. 37) *available as* Ex. C to Plaintiffs' Appendix; ABA Antitrust Law

19  Section, Model Jury Instructions in Civil Antitrust Cases B-28 (2005 ed.).

20

21

22

23

24

25

26

27

28

-235-

1  
2  

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction properly instructs jurors as to a well-established and key

3  characteristic of a *per se* price-fixing conspiracy – no business justification. *See In re Flat Glass*

4  *Antitrust Litig.*, 385 F.3d 350, 362-63 (3d Cir. 2004) ("a horizontal agreement to fix prices need

5  not succeed for sellers to be liable under the Sherman Act; it is the attempt that the Sherman Act

6  proscribes) (citing *Socony-Vacuum Oil Co.*, 310 U.S. at 224 n. 59).

7  Plaintiffs' proposed instruction is inappropriate, supported by their cited authority and

8  should be adopted.

9  

10  

**Defendants' Argument Against**

11  This instruction omits the first sentence of the ABA Model Instruction, and in so doing,

12  becomes misleading. *See Chuman*, 76 F.3d at 294 ("Jury instructions must be formulated so that

13  they fairly and adequately cover the issues presented, correctly state the law, and are not

14  misleading."). The omitted sentence states: "Evidence that defendants actually engaged in price

15  competition with each other in some manner has been admitted to assist you in deciding whether

16  they entered into an agreement to fix prices." Evidence of price competition may rebut the

17  plaintiffs' allegation that there was a conspiracy in the first instance; thus, merely to inform the

18  jury that it may not consider evidence of competition as a defense *if it finds a conspiracy* may

19  diminish the jury's consideration of this evidence for a legitimate purpose. The jury must be able

20  to take into account evidence of all forms of competition, including price competition, in

21  determining whether there was a conspiracy to fix prices.

22  This instruction is also misleading in a private damages action because, as the Note to the

23  ABA Model Instruction states, "the effectiveness of a conspiracy may be relevant to a

24  determination of whether the plaintiff suffered antitrust injury and/or the amount of the plaintiff's

25  damages." *See also Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166,

26  1195-96 (N.D. Cal. 2009) (plaintiff in private antitrust action was required to show that admitted

27  conspiracy to raise prices to other customers also caused price increases to it). Defendants are

28  entitled to assert the defense that any conspiracy had limited or no impact on any customers, such

-236-

that plaintiffs are not entitled to damages; yet this instruction suggests to the jury that they may not consider that defense.  This instruction is more appropriate in a criminal Section 1 action, where no issue of damages arises.

And, again, the phrase "fix, raise, maintain or stabilize prices" (stated here twice more) must be limited to just "fix prices."

**No. 101 – [DPPs and IPPs' PROPOSAL NO. ___] HORIZONTAL PRICE FIXING – GOOD INTENT NOT A DEFENSE** *[DISPUTED]*

If you find that a defendant participated in a price-fixing conspiracy, it is not a defense that it acted with good intent or thought that the conduct was reasonable or lawful or might have beneficial results.

**Authority**

Adapted from: *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 363 (3d Cir. 2004); *United States v. Cont'l. Group, Inc.*, 603 F.2d 444, 464 (3d Cir. 1979); Jury Instructions of Judge Gary L. Lancaster in *In re Indus. Silicon Antitrust Litig.*, No. 95-2104 (W.D. Pa.) (as given on May 17, 1999, N.T. 60) *available as* Ex. A to Plaintiffs' Appendix; KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 150.48 (5th ed. 2001); ABA Antitrust Law Section, Model Jury Instructions in Civil Antitrust Cases, B-26 to B-27 (2005 ed.); *United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir. 1992).

1

**DPPs and IPPs' Argument For**

2          Plaintiffs' proposed instruction properly instructs jurors, similar to the preceding

3 instruction, good intent is not a defense to a *per se* price-fixing conspiracy.  *Cf. In re Flat Glass*

4 *Antitrust Litig.*, 385 F.3d 350, 362-63 (3d Cir. 2004) ("PPG does not-it cannot-seriously contend

5 that the flat glass producers increased their list prices with no intention of affecting transaction

6 prices.").

7          Plaintiffs' proposed instruction is inappropriate, supported by their cited authority and

8 should be adopted.

9

10

**Defendants' Argument Against**

11          Defendants are not raising the defense that they thought price-fixing was beneficial.

12 Plaintiffs are entitled to instructions on their theory of the case, *Jenkins v. Union Pacific R. Co.*, 22

13 F.3d 206, 210 (9th Cir. 1994), but not to "straw man" instructions to inform the jury to disregard

14 defenses that defendants have not raised.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

1    **No. 102 – [DPPs and IPPs' PROPOSAL NO. ___]** *PER SE* **RESTRAINTS** *[DISPUTED]*

2

3        The second element the plaintiffs must prove to establish a violation of Section 1 of the

4    Sherman Act is an unreasonable restraint of trade in interstate commerce. Certain types of

5    restraints such as an agreement among competitors to fix, raise, maintain or stabilize prices,

6    including an agreement among competitors to limit, restrict or reduce the supply of a product, are

7    in and of themselves, unreasonable restraints of trade because they are always anticompetitive.

8    These restraints are referred to as *per se* violations of the antitrust laws.

9        Whether the prices agreed to or resulting are reasonable or unreasonable does not matter. It

10   also does not matter whether there is a potential business justification or excuse for the conduct. If

11   you find that a defendant and at least one other defendant or alleged coconspirator conspired to fix

12   or raise or maintain or stabilize prices of SRAM, including to limit or restrict or reduce the supply

13   of SRAM, I instruct you as a matter of law that they have engaged in an unreasonable restraint of

14   trade and have violated Section 1 of the Sherman Act.

15

16   **Authority**

17   Adapted from: *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 356-57 (3d Cir. 2004); *United States*

18   *v. Cont'l. Group*, 603 F.2d 444, 462 (3d Cir. 1979); *FTC v. Superior Court Trial Lawyers Ass'n*, 493

19   U.S. 411, 433-34 (1990); *Ariz. v. Maricopa County Med. Soc'y.*, 457 U.S. 332, 343-45 (1982);

20   *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647 (1980); *Cont'l. Ore Co. v. Union Carbide*

21   *& Carbon Corp.*, 370 U.S. 690, 708 (1962); *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958);

22   *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 210-14, 218, 223 (1940); *All Care Nursing*

23   *Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 746 (11th Cir. 1998); *United States v.*

24   *Cargo Serv. Stations*, 657 F.2d 676, 682-83 n.4 (5th Cir. 1981); *In re Nissan Antitrust Litig.*, 577

25   F.2d 910, 917 n.3 (5th Cir. 1978); KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE,

26   FEDERAL JURY PRACTICE AND INSTRUCTIONS §§ 150.22 & 150.48 (5th ed. 2001); ABA

27   Antitrust Law Section, Model Jury Instructions in Civil Antitrust Cases, B-19 to B-21 (2005 ed.);

28   11TH CIR. PATTERN JURY INSTRUCTIONS (CIV. CASES) 3.1(I) (2005); *United States v.*

1   *Andreas*, 216 F.3d 645, 667 (7th Cir. 2000) (and cases cited therein), *rehearing en banc denied* 2000

2   U.S. App. LEXIS 18222 (7th Cir. July 27, 2000), *cert. denied,* 531 US 1014 (2002).

-241-

1

**DPPs and IPPs' Argument For**

2        Plaintiffs' proposed instruction properly instructs jurors, that horizontal price-fixing

3   conspiracies, including those to restrict production, are *per se* violations, and the consequences of

4   such a violation.  *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 362-63 (3d Cir. 2004) ("Here,

5   plaintiffs allege that PPG engaged in horizontal price-fixing . . .  Since at least *United States v.*

6   *Socony-Vacuum Oil Co.*, 310 U.S. 150, [], the Supreme Court has held that such restraints of trade

7   are per se unreasonable."); *United States v. Container Corp. of Am.*, 393 U.S. 333, 337 (1969); *In*

8   *re Linerboard Antitrust Litig.*, 305 F.3d 145, 151-52 (3d Cir. 2002) (production restrictions).

9        Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including

10  Supreme Court precedent, and should be adopted.

11

12

**Defendants' Argument Against**

13        The instruction is incorrect in referring to an unreasonable restraint of trade as the "second"

14  element of a Section 1 violation.  If the jury finds that a particular defendant joined a price-fixing

15  conspiracy, it is *per se* an unreasonable restraint of trade; therefore, a separate instruction on what

16  constitutes an unreasonable restraint of trade is unnecessary and potentially confusing.  Moreover,

17  an extended instruction on the *per se* rule is inappropriate.  The only questions before the jury are

18  whether a conspiracy existed, whether defendants or alleged coconspirators were part of one, and

19  whether the plaintiffs suffered injury and damages.  The *per se* rule is a legal rule, applied by the

20  court and not the jury, that certain types of conduct are conclusively presumed to be harmful to

21  competition and thus cannot be defended on the ground that they have procompetitive benefits.

22  *See, e.g.*, *National Society of Prof'l Eng'rs v. United States*, 435 U.S. 679, 690 (1978); *Northern*

23  *Pac. Ry. v. United States*, 356 U.S. 1, 5 (1958); *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438,

24  1455 n.28 (11th Cir. 1991) (where the *per se* rule applies, the only is question is whether there was

25  an agreement to restrain trade, because the unreasonableness of the restraint is presumed).  Thus,

26  there is no need to inform the jury of the consequences of a finding of a conspiracy.  Moreover,

27  defendants are not raising a business justification as a defense to price-fixing.  Plaintiffs are

28  entitled to instructions on their theory of the case, *Jenkins v. Union Pacific R. Co.*, 22 F.3d 206,

-242-

[proposed] JURY INSTRUCTIONS

210 (9th Cir. 1994), not to "straw man" instructions to inform the jury to disregard defenses that defendants have not raised.

**No. 103 – [DPPs' PROPOSAL NO. __]  INTERSTATE COMMERCE** *[DISPUTED]*

As I just noted, the second element plaintiffs must prove is an unreasonable restraint of trade in or affecting interstate commerce.  To violate the federal antitrust laws, the conspirators' conduct or their agreement to fix, raise, maintain, or stabilize prices must have been in or had some affect on good or services in the flow of interstate commerce. Interstate commerce refers to transactions across any state lines or between persons or corporations having their residence or businesses in different states. In this case, SRAM was sold in the flow of interstate commerce. Therefore, I hereby instruct you that if there was an SRAM price-fixing conspiracy, it did affect interstate commerce.

**Authority**

Adapted from: *Hospital Bldg. Co v. Trustees of Rex Hosp.*, 425 U.S. 738, 743, 745 (1976); *McLain v. Real Estate Bd. of New Orleans Inc.*, 444 U.S. 232, 242-43, 241 (1980); *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 873 (3d Cir. 1995); Jury Instruction of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 28) *available as* Ex. C to Plaintiffs' Appendix; KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 150.62 (5th ed. 2001).

[proposed] JURY INSTRUCTIONS

1

**DPPs' Argument For**

2  Plaintiffs' proposed instruction properly sets forth the requirement that plaintiffs prove that

3  the conduct at issue sufficiently affects interstate commerce.

4  The instruction includes the final sentence because Plaintiffs are working with defendants

5  to reach a stipulation for this element being satisfied.

6  Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including

7  Supreme Court precedent, and should be adopted.

8

9

**Defendants' Argument Against**

10  This instruction again uses the term "second" element incorrectly.  The second sentence is

11  prejudicial in that it suggests that there was, in fact, an agreement to fix prices, when that is the

12  jury's task.  The last two sentences also are conclusions.  The phrase "fix, raise, maintain or

13  stabilize prices" must be limited to just "fix prices."  Further, *In re Vitamins* Instr. No. 28 does not

14  help because the text is very different and, unlike here, there was no dispute as to this element.

15  Defendants submit that ABA Model Instruction, A-13 on interstate commerce, submitted

16  by Defendants below, is more balanced and should be used instead.

17

18

19

20

21

22

23

24

25

26

27

28

## No. 104 – [DEFENDANTS' PROPOSAL NO. ___] THIRD ELEMENT: INTERSTATE COMMERCE *[DISPUTED]*

The Sherman Act applies only to conduct or restraints that affect interstate commerce.  In this case, the plaintiffs contend that the defendants' conduct affects interstate commerce.  Interstate commerce refers to transactions in goods or services between one or more persons in one state and one or more persons in another state.

To affect interstate commerce, it is not necessary that the defendant's conduct itself occur in multiple states or directly affect transactions that span across multiple states.  It is enough if some activities of the defendant that were affected by the conduct had some effect on interstate commerce.

**Authority**

ABA Model Jury Instructions, A-13.

W02-WEST:1ESC1\403121977.4
MDL No. 1819

**Defendants' Argument For**

*See* Authority cited above and Defendants' argument in response to plaintiffs' proposed instruction (No. 103).

**DPPs and IPPs' Argument Against**

As noted above, Plaintiffs are working with defendants to reach a stipulation for this element being satisfied.

-247-

1     **No. 105 – [DPPs' PROPOSAL NO. \_\_]  INJURY/IMPACT, DAMAGES (NOTE:**

2           **INSTRUCTION FOR PHASE 2/DAMAGES)** *[DISPUTED]*

3

4         An element that plaintiffs must prove in this case is whether plaintiffs were injured and

5 thus entitled to recover damages.  Under federal law, anyone who is injured in its business or

6 property by reason of an antitrust violation, such as a violation of Section 1 of the Sherman Act,

7 may recover damages caused by the violation.

8         Plaintiffs must establish that they have suffered an injury to their "business or property."

9 You are instructed and must find that plaintiffs have been injured in their "business or property" if

10 you find that plaintiffs paid more for SRAM than they would have paid if there had been no

11 antitrust violation.

12         In order to prove the fact of injury or an overcharge, plaintiffs must prove by a

13 preponderance of the evidence that a conspiracy played a material part in bringing about or

14 causing prices to be higher than they otherwise would have been without the conspiracy, and that

15 this overcharge was either a direct result of, or a reasonably probable consequence of, the

16 conspiracy.

17         "Causing prices to be higher" includes not only raising prices to a level higher than prices

18 would have been absent the conspiracy, but also includes preventing prices from dropping as low

19 as they otherwise would have been if there had been no conspiracy.

20         Plaintiffs do not have to prove that the conspiracy was the only cause or the most

21 important cause of the higher prices; plaintiffs need only prove that it was a material contributing

22 cause. Nor do plaintiffs need to prove the exact amount of the injury or overcharge. If you find

23 there was an overcharge caused by a conspiracy, then you will separately consider the proper

24 measure of that overcharge.

25

26                                     **Authority**

27 Adapted from: *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 356 (3d Cir. 2004); *In re*

28 *Linerboard Antitrust Litig.*, 305 F.3d 145, 151-52 (3d Cir. 2002); *Rossi v. Standard Roofing, Inc.*,

        [proposed] JURY INSTRUCTIONS

156 F.3d 452, 483-84 (3d Cir. 1998); *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 114 n.9 (1969); *United States v. Container Corp. of Am.*, 393 U.S. 333, 337 (1969); *Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390, 396 (1906); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339-40 (1979); *Perkins v. Standard Oil Co.*, 395 U.S. 642, 648 (1969); *Nat'l. Farmers' Org. v. Associated Milk Producers Inc.*, 850 F.2d 1286, 1293 (8thCir. 1988); Jury Instructions of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 39) *available as* Ex. C to Plaintiffs' Appendix; Jury Instructions of Judge John V. Singleton in *In re Corrugated Container Antitrust Litig.*, MDL No. 310 (S.D. Tex.) (as given on Sept. 11, 1980, Tr. Vol.100 at 88-89) *available as* Ex. B to Plaintiffs' Appendix; KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS §§ 150.90, 150.92 (5th ed. 2001).

1

**DPPs' Argument For**

2      Plaintiffs' proposed instruction properly instructs jurors that plaintiffs injured by the

3   conspiracy (if established) are entitled to recover for their injuries resulting from SRAM

4   overcharges *provided* plaintiffs prove that the conspiracy was a material factor in causing those

5   SRAM overcharges.

6       Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including

7   Supreme Court precedent, and should be adopted.

8

9

**Defendants' Argument Against**

10      The same objections discussed in plaintiffs' proposed pre-trial instruction on injury/impact

11   and damages apply here (*see* No. 20), especially the fact that the instruction is unbalanced and

12   fails to provide a complete explanation of the law on injury and damages, and therefore is

13   misleading.  *See Chuman*, 76 F.3d at 294 ("Jury instructions must be formulated so that they fairly

14   and adequately cover the issues presented, correctly state the law, and are not misleading.").

15      The instruction should inform the jury that this is the "fourth" element of an antitrust claim,

16   per the ABA Model Instructions.

17      This instruction is unbalanced in that it informs the jury of what facts they must find in

18   order to find injury, but does not state that if they are unable to find these facts, they must find for

19   the defendants.  The ABA Model Instruction, upon which Defendants' instruction (below) is

20   based, provides far greater balance.

21      This instruction also fails to distinguish between the *fact* of injury and the *amount* of

22   damages.  Plaintiffs even stressed this point in their Opposition to Samsung's Motion for Summary

23   Judgment.  *See* DPPs' Opp. to Samsung's Motion for Summary Judgment, dated Aug. 24, 2010, at

24   7:6-7 ("Samsung ignores the critical distinction between the *fact* of injury suffered by Plaintiffs

25   (i.e. impact) and the *amount* of injury suffered by Plaintiffs (i.e. damages).").  Samsung did no

26   such thing, and obviously agrees that the concepts are distinct.  Plaintiffs failure to currently

27   distinguish between the two concepts make their instruction misleading.  Before the jury can

28

consider damages, it also must first consider the separate issues of the fact of injury and causation and then be properly cautioned about damages.

**No. 106 – [DEFENDANTS' PROPOSAL NO. ___] FOURTH ELEMENT: INJURY AND CAUSATION *[DISPUTED]***

If you find by a preponderance or greater weight of the evidence that either defendant has violated the Sherman Act, then you must decide if the direct purchaser plaintiffs are entitled to recover damages.

The direct purchaser plaintiffs are entitled to recover damages for an injury to their business or property if they each can establish two elements of injury and causation:

> **First**, that the named plaintiff and each member of the plaintiff class were in fact injured as a result of the defendant's alleged participation in a conspiracy to fix the prices of SRAM; and

> **Second**, that the defendant's alleged illegal conduct was a material and a substantial cause of the plaintiffs' injury.

The first element is sometimes referred to as "injury in fact" or "fact of damage."  For the direct purchaser plaintiffs to establish that they are entitled to recover damages, they must prove that each class member was injured as a result of the defendants' alleged violation of the antitrust laws.  Proving the fact of damage does not require the plaintiffs to prove the dollar value of their injury.  It requires only that the plaintiffs prove, by a preponderance or greater weight of the evidence, that the class members were in fact injured by the defendants' alleged antitrust violation.

The direct purchasers have submitted evidence common to the class, specifically the expert opinions of Dr. Armando Levy, in an effort to prove injury.  If you find that this evidence does not enable you to determine whether each class member was in fact injured, you must find in favor of the defendants on the element of injury.  But if you find that the evidence does enable you to determine that each class member was in fact injured, then you may consider the amount of class members' damages.  It is important to understand that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that the class members have established, through the evidence they have presented, that they were in fact injured.

-252-

1    The direct purchaser plaintiffs must also offer evidence that establishes as a matter of fact,

2    and with a fair degree of certainty, that the defendants' alleged illegal conduct was a material and a

3    substantial cause of the plaintiffs' injury.  This means that the named plaintiff and each member of

4    the plaintiff class must have proved that some damage occurred to them as a result of the

5    defendants' alleged antitrust violation, and not some other cause, such as an increase in prices due

6    to normal economic factors.  The plaintiffs need not eliminate all other possible causes of injury.

7    Plaintiffs must prove that the alleged antitrust violation was a material and a substantial cause of

8    their injury.  However, if you find that the plaintiffs' injury was caused primarily by something

9    other than the alleged antitrust violation, then you must find that the plaintiffs have failed to prove

10   that they are entitled to recover damages from the defendants.

11       In sum, only if plaintiffs can establish that they were in fact injured by defendants' conduct

12   and that defendants' conduct was a material and a substantial cause of plaintiffs' injury, are

13   plaintiffs are entitled to recover damages for the injury to their business or property.

14

15                                   **Authority**

16   ABA Model Jury Instructions, F-2 through F-5 (emphasis original), modified to remove the

17   element of antitrust injury; *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9

18   (1969); *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 808-09 (9th Cir. 1988); *Dolphin Tours v.*

19   *Pacifico Creative Service*, 773 F. 2d 1506, 1510 (9th Cir. 1985); *Flintkote Co. v. Lysfjord*, 246

20   F.2d 368, 392 (9th Cir. 1957); *Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir.

21   2008) ("to prevail on the merits, every class member must prove at least some antitrust impact

22   resulting from the alleged violation.") (citation omitted); *Bell Atlantic Corp. v. AT&T Corp.*, 339

23   F.3d 294, 302 (5th Cir. 2003) (same); *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005)

24   (same); *Sun Microsystems, Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1995 (N.D.

25   Cal. 2009) (in establishing the fact of injury, the antitrust violation "must be a material and a

26   substantial cause of the injury"); Jury instructions issued in *In re Tableware Antitrust Litigation*,

27   No. C-04-3514 (VRW) (June 29, 2007), *available at* http://www.abanet.org/antitrust/at-

28   committees/at-trial/pdf/jury-instructions/tableware-15.pdf, pp.14-16.

-253-

1

**Defendants' Argument For**

2         The ABA Model Jury Instructions, F-2 through F-55, recommended by the Ninth Circuit to

3    be used for substantive antitrust jury instructions, is a balanced and accurate statement of the law

4    regarding the fourth element the plaintiffs need to prove – injury in fact and causation.

5    Defendants only made slight modifications based upon the parentheticals quoted in the Authority

6    above.  Defendants also removed plaintiffs' burden to prove the element of antitrust injury because

7    Defendants are not raising that issue in their defense.

8

9

**DPPs and IPPs' Argument Against**

10        ***First,*** defendants' proposed instruction seeks to impose upon plaintiffs a requirement of

11   proof that has not been applied in class action trials, and is based on dicta in a case from outside

12   the Ninth Circuit that was addressing a motion for class certification.  Specifically, defendants'

13   proposed instruction improperly states:  "The direct purchaser plaintiffs are entitled to recover

14   damages . . . if they each can establish . . . *that the named plaintiff and each member of the*

15   *plaintiff class were in fact injured*."  (Emphasis added.)  Apparently, defendants are relying upon

16   the following dicta from *Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008): "to

17   prevail on the merits, every class member must prove at least some antitrust impact resulting from

18   the alleged violation."  *Id.* at 311.

19        *Hydrogen Peroxide*, however, was deciding whether to certify a class, not what

20   requirements that class members would need to meet at trial in order to recover damages.

21   Understood in that context, the above quote in *Hydrogen Peroxide* can be understood as making

22   the not surprising assertion that *at the certification stage*, the Court is concerned with certifying a

23   class all of whose members (or predominately all of whose members) would be injured (or whose

24   alleged injuries could be determined with common evidence) if the alleged misconduct were

25   established.  *See In re Static Random Access Memory (SRAM) Antitrust Litigation*, 2008 U.S. Dist.

26   LEXIS 107523 at *43 (N.D. Cal. Sept. 29, 2008) ("*To proceed with a class action*, Plaintiff must

27   be able to establish, predominantly with generalized evidence, that all (or nearly all) members of

28

-254-

1    the class suffered damage as a result of Defendants' alleged anti-competitive conduct.") (emphasis

2    added).

3            As plaintiffs' briefing in opposition to Defendants' Motion for Decertification. explained,

4    there are numerous cases where at trial (or on summary judgment) there is a determination that the

5    class representative and/or other class members have not been injured by the defendants' conduct,

6    but that remaining class members have been injured.  In those cases, the injured class members

7    were not barred from recovery.  *See Lynch v. Dawson*, 820 F. 2d 1014, 1016 (9th Cir. 1987)

8    ("[T]he fact of certification will preserve a class's standing even after the named individual

9    representatives have lost the required 'personal stake.'") *quoting LaDuke v. Nelson*, 762 F.2d 1318,

10   1325 (9th Cir.1985); *Roberts v. Western Airlines*, 425 F.Supp. 416, 432 (N.D. Cal. 1976) ("If the

11   plaintiff were a member of the class at the commencement of the action and his competency as a

12   representative of the class then determined or assumed, the subsequent dismissal or mootness of

13   his individual claim . . . will not operate as a dismissal or render moot the action of the class, *or*

14   *destroy the plaintiff's right to litigate the issues on behalf of the class*.") *quoting Moss v. Lane Co.,*

15   *Inc.*, 471 F.2d 853, 855 (4th Cir. 1973) (emphasis added).

16           Implicit in the *Hydrogen Peroxide* court's statement, and as borne out in the above-

17   referenced cases, only those class members for whom injury is established can recover at trial.

18   But the inability of some class members to recover ought not act as a bar to recovery by others.

19           As Judge Posner recently explained, these kinds of results are inevitable in class actions.

20   "What is true is that a class will often include persons who have not been injured by the

21   defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the

22   members of the class may be un-known, or if they are known still the facts bearing on their claims

23   may be unknown.  Such a possibility or indeed inevitability does not preclude class certification"

24   *Kohen*, 571 F.3d at 677.

25           The result that defendants seem to be advocating would result in the absurd outcome that

26   every time a single member of a class is not harmed, the entire class cannot recover – even if that

27   determination is only reach as the result of a full trial.  *Cf. id.* at 677 ("If the case goes to trial, this

28

-255-

[proposed] JURY INSTRUCTIONS

1   plaintiff may fail to prove injury. But when a plaintiff loses a case because he cannot prove injury

2   the suit is not dismissed for lack of jurisdiction.").

3       To remedy this result, perhaps the class definition could be changed, but it would seem that

4   defendants would want to obtain the full preclusive effect for the entire class – including those for

5   whom no injury was determined.[5]

6       In sum, *Hydrogen Peroxide*'s dicta should not be read as making it possible for every

7   plaintiffs' class action that goes to trial and to result in a defense verdict upon the show that even

8   one class member was not injured.

9       ***Second,*** in paragraph two of the instruction, as they do in other instructions, defendants

10  impermissibly seek to incorporate their arguments against plaintiffs' experts.  Specifically, the

11  instruction is a restatement of argument in their *Daubert and* summary judgment motions, and

12  presumably argument defendants will make again at trial; in particular with respect to Dr. Levy's

13  common proof of damages to class members.

14      ***Third,*** through unnecessary repetition and words of caution the instruction improperly and

15  effectively increases the threshold that plaintiffs must satisfy in order to recover.  For example, the

16  instruction explains at least ***four*** separate times that the conspiracy must be "a material ***and*** a

17  substantial cause of plaintiffs' injury." (emphasis added).

18      Defendants' proposed instruction is inappropriate, not supported by their cited authority,

19  and should not be adopted.

20

21

22

23

24

25

---

[5]     Plaintiffs will not recount here, but incorporate by reference their prior arguments as to
why the class representatives do not need to establish injury in order for class members to
recover.  That issue has already been the subject of much dispute, and Plaintiffs' arguments
are set forth in their briefing related to Defendants' Motion for Decertification, Samsung's
Motion for Summary Judgment, and Plaintiffs' respective Motions *in Limine*.

[proposed] JURY INSTRUCTIONS

**No. 107 – [DEFENDANTS' PROPOSAL NO. ___] FOURTH ELEMENT: INJURY TO THE NAMED PLAINTIFF *[DISPUTED]***

Plaintiff [Westell] has brought this case on behalf of itself and on behalf of a class consisting of direct purchasers of SRAM between November 1, 1996 through December 31, 2005. In order for you to find for the class in this case, you must first find that Plaintiff [Westell] has proven, by a preponderance or greater weight of the evidence, that it has suffered injury to its business and property as a result of conduct by one or more of the defendants that violates the Sherman Act.

If you find that [Westell] has not proven, by a preponderance or greater weight of the evidence, that it suffered injury as a result of conduct by one or more of the defendants, then you must find that the named plaintiff cannot recover for itself and also cannot represent the other members of the class. If you find that [Westell] has not suffered injury to its business or property as a result of conduct by one or more of the defendants, you must return a verdict for that defendant.

If, however, you find that [Westell] did suffer injury as a result of conduct by one or more of the defendants, then you must consider whether the class members also suffered the same type of injury from the same conduct.  Again, the concept of injury here is distinct from the measure of damages, if any, that you may deem appropriate. All plaintiffs must prove is that the named plaintiffs were injured and that the injury they suffered is representative of injury suffered by the other members of the class.  If plaintiffs have not proved those facts by a preponderance or greater weight of the evidence, then you must find that [Westell] cannot represent the other members of the class, and you must return a verdict for the defendants.  If you find that plaintiffs have proven these things as to [Westell], however, you should proceed to consider whether or not some measure of damages should be awarded to the class.

W02-WEST:1ESC1\403121977.4
MDL No. 1819

[proposed] JURY INSTRUCTIONS

1

**Authority**

2  Adapted from Jury instructions issued in *In re Scrap Metal Antitrust Litig.*, (N.D. Ohio Feb. 09,

3  2006), *available at* http://www.abanet.org/antitrust/at-committees/at-trial/pdf/jury-

4  instructions/scrap-metal-jury-instructions.pdf, pp.40-41; Rules Enabling Act, 28 U.S.C. § 2072(b);

5  *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997); *In re Hydrogen Peroxide Antitrust Litig.*,

6  552 F.3d 305, 311 (3d Cir. 2008) ("to prevail on the merits [of Sherman Act Section 1 claim],

7  every class member must prove at least some antitrust impact resulting from the alleged

8  violation.") (citation omitted); *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir.

9  2003) (same); *Foster v. Center Township of LaPorte County*, 798 F.2d 237, 245 (7th Cir. 1986),

10  *cited with approval in Lierboe v. State Farm Mutual Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir.

11  2003); *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class 'must

12  allege and show that they personally have been injured, not that injury has been suffered by other,

13  unidentified members of the class to which they belong and which they purport to represent.'")

14  (internal citation omitted); *see also Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir.

15  1999); *L. Tarango Trucking v. County of Contra Costa*, 181 F.Supp.2d 1017, 1027-28 (N.D. Cal.

16  2001).

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

1

**Defendants' Argument For**

2        As Defendants' authorities make clear, the fact that the named plaintiff represents the class

3   or is in a class action does not alter the fact that it needs to prove all of the essential elements of its

4   claim against the Defendants.  *See, e.g., Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed

5   plaintiffs who represent a class 'must allege and show that they personally have been injured, not

6   that injury has been suffered by other, unidentified members of the class to which they belong and

7   which they purport to represent.'") (internal citation omitted); *In re Hydrogen Peroxide Antitrust*

8   *Litig.*, 552 F.3d 305, 311 (3d Cir. 2008) ("to prevail on the merits [of Sherman Act Section 1

9   claim], every class member must prove at least some antitrust impact resulting from the alleged

10  violation.") (citation omitted).  This instruction also was recently given in *In re Scrap Metal*

11  *Antitrust Litig.*

12

13                              **DPPs and IPPs' Argument Against**

14        Plaintiffs will not recount here, but incorporate by reference their prior arguments as to

15  why the class representatives do not need to establish injury in order for class members to recover.

16  That issue has already been the subject of much dispute, and Plaintiffs' arguments are set forth in

17  their briefing related to Defendants' Motion for Decertification, Samsung's Motion for Summary

18  Judgment, and Plaintiffs' respective Motions *in Limine*.

19

20

21

22

23

24

25

26

27

28

-259-

1    **No. 108 – [DEFENDANTS' PROPOSAL NO. ___] FOURTH ELEMENT: CAUSATION**

2         **AND DISAGGREGATION *[DISPUTED]***

3

4         If you find that either or both of the defendants violated the antitrust laws, the plaintiffs are

5    entitled to recover for such injuries that were the direct and proximate result of the unlawful acts

6    of the defendants.  The plaintiffs are not, however, entitled to recover for injuries that resulted

7    from other causes, such as prices that rose because of an increase in demand for products

8    containing SRAM during the period 1999 through 2001.

9         The direct purchaser plaintiffs claim that, as a result of defendants' alleged antitrust

10   violation, they suffered injury because they paid increased prices for SRAM for 27 months out of

11   the 110 months of the alleged conspiracy.  In the normal course of business activity, prices might

12   rise for a variety of reasons that have nothing to do with price-fixing.  For example, prices may

13   rise because producers' costs rose, demand for a product increased, producers' capacity was

14   constrained, changing technology made a product more valuable to consumers, the sellers engaged

15   in lawful follow-the-leader pricing behavior, or the marketplace otherwise changed to allow

16   producers to raise prices independent of any antitrust violation.  Here, for example, Defendants

17   claim that SRAM prices are explained by market factors, such as a spike in market demand for

18   mobile phone purchases and the related the dot-com boom and the internet bubble.

19        The plaintiffs bear the burden of proving that their injuries were caused by the alleged

20   price-fixing conspiracy, and not any other factors, such as those I have just described to you.

21   Likewise, plaintiffs bear the burden of accounting for changed economic conditions of the relevant

22   SRAM market including any changes to supply or demand in the market like, for example, a boom

23   in market demand.  If you find that the plaintiffs' alleged injuries were caused by factors other than

24   the alleged price-fixing conspiracy, then you must return a verdict for the defendants.  If you find

25   that the plaintiffs' alleged injuries were caused in part by defendants' alleged antitrust violation and

26   in part by other factors, then you may award damages only for that portion of the plaintiffs' alleged

27   injuries that were caused by the defendants' alleged antitrust violation.

28

The plaintiffs bear the burden of proving damages with reasonable certainty, including apportioning damages between lawful and unlawful causes.  If you find that there is no reasonable basis to apportion the plaintiffs' alleged injuries between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all.  If you find that the plaintiffs have proven with reasonable certainty the amount of damage caused by the defendants' alleged antitrust violation, then you must return a verdict for the plaintiffs.

**Authority**

Adapted from ABA Model Jury Instructions, F-18 through F-21; *see also City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1371 (9th Cir. 1992) ("[C]ourts have been consistent in requiring plaintiffs to prove in a reasonable manner the link between the injury suffered and the *illegal* practices of the defendant.") (quoting *MCI Communs. Corp. v. AT&T*, 708 F.2d 1081, 1161-68 (7th Cir. 1983)); *Dolphin Tours v. Pacifico Creative Service*, 773 F. 2d 1506, 1510 (9th Cir. 1985) ("Causation evidence under section 4 must establish that the injury which the plaintiff claims is attributable to the conspiracy, and not to other factors.") (*citing, e.g., R.S.E., Inc. v. Pennsy Supply, Inc.*, 523 F.Supp. 954, 964-66 (M.D.Pa. 1981)).

**Defendants' Argument For**

The ABA Model Jury Instructions, F-18 through F-21, is a balanced and accurate statement of the law regarding the plaintiffs need to "prove in a reasonable manner the link between the injury suffered and the *illegal* practices of the defendant." *City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1371 (9th Cir. 1992) (quoting *MCI Communs. Corp. v. AT&T*, 708 F.2d 1081, 1161-68 (7th Cir. 1983)). In *R.S.E.*, the case relied upon by the Ninth Circuit in *Dolphin Tours* (and labeled a "well-reasoned district court opinion" by the Seventh Circuit in *MCI Communs. Corp.*, 708 F.2d at 1162), stated:

> In private antitrust actions, the burden is placed upon the plaintiff to show that the damage claimed was in fact caused by the unlawful acts of the defendant and did not result from some other factor, such as management problems, a recession in the economy or lawful competition by the defendant. The Court of Appeals of this circuit, as well as others, has specifically held that where a plaintiff's projections fail to consider the probable effects of lawful competition and changed economic conditions, a jury cannot rationally reduce the damage estimate to reflect these changes and therefore any amount they may award would be based upon speculation and guesswork.

*Id.* at 964-65 (*citing, e.g., Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 467 F.Supp. 841 (N.D.Cal. 1979), aff'd, 654 F.2d 1256 (9th Cir. 1981); *ILC Peripherals Leasing Corp. v. IBM Corp.*, 458 F.Supp. 423, 435 (N.D.Cal. 1978), aff'd, *Memorex Corp. v. I.B.M. Corp.*, 636 F.2d 1188 (9th Cir. 1980). The Court held that plaintiff could not establish "*causation* of damages" because "it made no provision for the effects of lawful competition, did not properly allow for the changed economic conditions of the relevant markets [i.e., it made no compensation for a depressed market but was calculated for a 'boom' year], and did not 'assure to a reasonable degree that its (plaintiff's) alleged damages, ... did not result from factors other than the alleged illegal acts of Xerox (defendant).'" *Id.* at 965-66 (emphasis original).

**DPPs and IPPs' Argument Against**

Defendants' proposed instruction essentially duplicates their instruction above "FOURTH ELEMENT: INJURY AND CAUSATION." Thus, it is particularly prejudicial to plaintiff to give yet another instruction that is essentially styled as a caution against awarding damages.

-262-

1   In paragraph two of the instruction, as they do in other instructions, defendants

2 impermissibly seek to incorporate their arguments against plaintiffs' experts.  Specifically, the

3 instruction is a restatement of argument from their *Daubert and* summary judgment motions, and

4 presumably argument defendants will make again at trial; in particular with respect to the "Internet

5 boom/bust" and plaintiffs being injury for only a 27-month period.

6   Also, through unnecessary repetition and words of caution the instruction improperly and

7 effectively increases the threshold that plaintiffs must satisfy in order to recover.  For example, the

8 instruction states at least ***three*** times that plaintiffs cannot be compensated for injury attributable

9 to other "causes/factors."

10   Further, the instruction should not be used because it is riddled with unnecessary, one-

11 sided information designed to confuse a jury, thereby failing to convey the law on a simple and

12 salient point: plaintiffs may  recover for injury that defendants' price-fixing conspiracy played

13 a material part in causing. It is unnecessary for an instruction on causation to summarize the facts

14 of the case or enumerate legal business reasons the price of products may fluctuate.  *See, e.g.,*

15 Final Jury Instructions, *In re Tableware Antitrust Litig.*, no. c-04-3514 vrw, at 19 (N.D. cal. 2007).

16 Rather, recitation of reasons prices may rise that are unrelated to price fixing benefits defendants

17 as plaintiffs have the burden of proof, and also functions as a thinly-veiled argument of

18 defendants' experts' challenges to the testimony of plaintiffs' experts. The majority of the language

19 in the instruction is not only unnecessary, but also redundant.  For example, defendants begin by

20 noting that plaintiffs *may* recover for injury proximately caused by defendants, and then twice

21 more thought the instruction unnecessarily note that plaintiffs *may not* recover for injuries not

22 proximately caused by defendants.  Moreover, as mentioned above, defendants unnecessarily and

23 prejudicially pepper the instruction with examples of reasons unrelated to an antitrust violation

24 which might cause price increases, along with argumentative summaries of defendants position on

25 the issue.

26   Defendants' proposed instruction is inappropriate, not supported by their cited authority,

27 and should not be adopted.

28

          [proposed] JURY INSTRUCTIONS

1   **No. 109A – [DPPs & IPPs' PROPOSAL NO. ___] DEFENDANTS' AFFIRMATIVE**

2   **DEFENSE: STATUTE OF LIMITATIONS *[DISPUTED]***

3

4   Defendants have raised the affirmative defense of the statute of limitations.  In response,

5   plaintiffs have raised the doctrine of fraudulent concealment, which I will discuss further shortly.

6   The antitrust laws impose a four year-limit on plaintiffs' claims, this is known as a statute

7   of limitations.

8   In this case, that means that if you find that the doctrine of fraudulent concealment does

9   not apply, plaintiffs cannot recover damages for injuries sustained before October 25, 2002 – four

10   years from when plaintiffs filed suit.

11   [If you find that the doctrine of fraudulent concealment does not apply and plaintiffs

12   suffered injuries spanning both before and after October 25, 2002, then you must apportion the

13   damages between the two periods and you may award damages only for the portion of the injuries

14   suffered after October 25, 2002.  If you find that you cannot apportion the damages between the

15   two periods without resorting to guesswork or speculation, then you may not award damages at

16   all. – **THIS PORTION OF THE INSTRUCTION IS APPLICABLE ONLY IN THE IPP**

17   **CASE**]

18

19   **Authority**

20   Adapted from:  ABA Antitrust Law Section, Model Jury Instructions in Civil Antitrust Cases G-2

21   (2005 ed.).

22

23

24

25

26

27

28

-264-

1

**DPPs and IPPs' Argument For**

2      Plaintiffs' proposed instruction, per the suggestion of the ABA Model Jury Instruction (G-

3    2-G-3), simultaneously introduces both the idea of statute of limitations and fraudulent

4    concealment.

5      The instruction presents a neutral descript of the doctrines and the consequence that arise

6    when they are applied to this case.

7      Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

8    should be adopted.

9

10

**Defendants' Argument Against**

11      Plaintiffs are improperly blending two separate instructions, which makes this instruction

12    confusing and misleading.  ABA Model Jury Instructions, G-2, relied on by plaintiffs, does not

13    include the term "fraudulent concealment" even though plaintiffs use it three separate times.  This

14    instruction should only concern the Statute of Limitations.  Fraudulent Concealment has its own

15    separate instruction and is described by both parties below.  *See* Nos. 110A, 110.

16

17

18

19

20

21

22

23

24

25

26

27

28

**No. 109 – [DEFENDANTS' PROPOSAL NO. ___] DEFENDANTS' AFFIRMATIVE DEFENSES: STATUTE OF LIMITATIONS** *[DISPUTED]*

Defendants have raised an affirmative defense of the statute of limitations. This is a special defense that goes beyond their denials of the plaintiffs' factual assertions and defendants' right to rely as a total defense on the plaintiffs' failure to bear their burden of proof on every essential element of their claim.  Even if the plaintiffs have proved their claim with sufficient evidence, defendants will nevertheless prevail if their affirmative defense applies. The defendants bear the burden of proof on this affirmative defense by a preponderance of the evidence.

In this case, the law imposes a four year-limit on the plaintiffs' claim.  Thus, the antitrust laws do not permit recovery of damages for any injuries sustained by the plaintiffs prior to October 25, 2002.

If you find that any plaintiff suffered injuries spanning both before and after October 25, 2002, then you must apportion the damages between the two periods and you may award damages only for the portion of the injuries suffered after October 25, 2002.  If you find that you cannot apportion the damages between the two periods, or that such apportionment can only be accomplished through guesswork or speculation, then you may not award damages at all.

**Authority**

Paragraph 1: Jury instructions issued in *In re Scrap Metal Antitrust Litig.*, (N.D. Ohio Feb. 09, 2006), *available at* http://www.abanet.org/antitrust/at-committees/at-trial/pdf/jury-instructions/scrap-metal-jury-instructions.pdf, p.43; paragraphs 2-3: ABA Model Jury Instructions, G-2, modified to insert the date four years prior to when the first Complaints were filed.

1

**Defendants' Argument For**

2        Antitrust actions are subject to a four-year statute of limitations. 15 U.S.C. § 15b (1982).

3  The Direct Purchaser Plaintiffs seek damages from October 1999 through December 2001, but

4  only filed their first Complaint on or about October 25, 2006.  The last paragraph is not applicable

5  to the Direct Purchaser Plaintiffs.

6

7

**DPPs and IPPs' Argument Against**

8        Defendants' proposed instruction does not simultaneously introduce both doctrines of

9  statute of limitations and fraudulent concealment.

10        The instruction unnecessarily refers to the statute of limitations as a "special defense"

11  implying to jurors it should be accorded greater weight than it should.

12        Also, it is well established that the running of the statue of limitations is suspended when a

13  defendant took active steps to prevent a plaintiff from suing.  See, e.g., *In re Copper Antitrust*

14  *Litig*., 436 F.3d 782, 790 (7th Cir. 2006).

15        When a statute of limitations defense is presented without making clear its relationship to

16  the fraudulent concealment doctrine, jury confusion is likely to result.

17        Defendants' proposed instruction is inappropriate and should not be adopted.

18

19

20

21

22

23

24

25

26

27

28

1   **No. 110A – [DPPs and IPPs' PROPOSAL NO.  ] FRAUDULENT CONCEALMENT**

2   ***[DISPUTED]***

3

4       In connection with the statute of limitations defense which I just discussed, you must also

5   consider the competing doctrine of "fraudulent concealment," which, if applicable, alters your

6   consideration of the dates outlined above.

7       Fraudulent concealment is an exception to the statute of limitations that would otherwise

8   be applicable.  Fraudulent concealment is where a defendant has concealed his wrongful act,

9   thereby preventing a plaintiff from discovering that it has been wronged.

10      To establish fraudulent concealment, plaintiffs must prove the following elements by a

11  preponderance of the evidence:

12      First, that the members of the conspiracy actively concealed the alleged conduct that

13  caused plaintiffs' antitrust injuries. It is not enough for plaintiffs to show that the members of the

14  conspiracy failed to disclose the alleged conduct; rather plaintiff must prove that they took

15  affirmative steps to prevent plaintiffs from learning about the alleged conduct, such as by keeping

16  their meetings or agreements secret, or by taking steps to conceal the fact of their non-competition,

17  including by making statements to customers or the pubic about changes in pricing and production

18  being caused by factors other than the alleged misconduct;

19      Second, that plaintiffs failed to discover the fact of the unlawful conspiracy until on or

20  after October 25, 2002; and

21      Third, that plaintiffs exercised reasonable diligence in the circumstances and still did not

22  discover the alleged conduct.

23      In deciding whether plaintiffs have proved fraudulent concealment by the alleged

24  conspirators, you should consider a number of factors.

25      First, the law recognizes that a conspiracy is, by nature, self-concealing. Thus, you may

26  consider the very acts giving rise to the conspiracy when deciding whether it was concealed from

27  the plaintiffs.

28

1    Second, there is no requirement that the affirmative acts of concealment be independent of

2    the conspiracy itself.

3    Third, you may also consider other activities which operate to conceal anti-competitive

4    conduct such as prearranged or phone bids, confining knowledge of any anti-competitive activity

5    to a limited core group of individuals, or engaging in clandestine meetings.

6    All of these are factors you may consider when deciding whether plaintiffs have

7    established that the alleged conspiracy was fraudulently concealed from them.

8    Additionally, as with other acts in a conspiracy, any affirmative acts of concealment by one

9    conspirator are chargeable to all you find to have been members of the conspiracy.

10    Similarly, plaintiffs need not establish concealment on a victim-by-victim basis;

11    affirmative acts of concealment generally are considered to have an industry-wide effect.

12    If you find that plaintiffs have proven each of the elements of fraudulent concealment, then

13    you should find that the doctrine of fraudulent concealment applies to plaintiffs' claims. In that

14    case, plaintiffs are not barred from seeking damages from the date of the their earliest injury, if

15    any.

16

17                **Authority**

18    Adapted from: Jury instructions issued in *In re Scrap Metal Antitrust Litig.*, (N.D. Ohio Feb. 09,

19    2006), *available at* http://www.abanet.org/antitrust/at-committees/at-trial/pdf/jury-

20    instructions/scrap-metal-jury-instructions.pdf, p. 43.

21

22

23

24

25

26

27

28

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction properly ***include the other half*** the instruction that should be given. *See In re Scrap Metal Antitrust Litig.*, (N.D. Ohio Feb. 09, 2006), *available at* http://www.abanet.org/antitrust/at-committees/at-trial/pdf/jury-instructions/scrap-metal-jury-instructions.pdf, p. 43.  Defendants fail to cite the second half of the instruction.

Plaintiff include that portion in their instructions.

The portion Plaintiffs include contains critical aspects of the fraudulent concealment doctrine, in particular that "the law recognizes that a conspiracy is, by nature, self-concealing."

Plaintiffs' proposed instruction is appropriate and should be adopted.


**Defendants' Argument Against**

Defendants' instruction is taken from the ABA Model Jury Instructions, G-3 through G-4, and is much more clear for the jury.  Further, many of the statements in plaintiffs' instruction are misleading, not at issue, and/or not accurate under Ninth Circuit law.  *See Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996) ("Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading.").

In paragraph 1, the statement regarding the "competing doctrine of 'fraudulent concealment'" is not accurate and too argumentative.  Fraudulent concealment is simply an exception to the statute of limitations, as stated in plaintiffs' second paragraph and the ABA Model Jury Instruction.  Also, the reference that fraudulent concealment "alters your consideration of the dates outlined above" is somewhat confusing because the Direct Purchasers stated that the calculation regarding the dates does not apply to them.

In paragraph 4, all of the text starting with "such as" are not in the ABA Model Jury Instruction, are not applicable here, are not supported by evidence, and are confusing.  Similarly, in paragraph 10, there is no evidence related to plaintiffs' list of examples (e.g., supposed "prearranged or phone bids").  Plaintiffs are entitled to instructions on their theory of the case if it has foundation in the evidence, *Jenkins v. Union Pacific R. Co.*, 22 F.3d 206, 210 (9th Cir. 1994), but they are not entitled to instructions that do not fairly reflect the evidence.

-270-

1   Paragraph 8, stating that "the law recognizes that a conspiracy is, by nature, self-

2   concealing", is contrary to Ninth Circuit law.  *See Rutledge v. Boston Woven Hose & Rubber Co.*,

3   576 F.2d 248, 249-50 (9th Cir. 1978) ("Silence or passive conduct of the defendant is not deemed

4   fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make

5   disclosure.").  The errors in paragraphs 8 and 10 make paragraph 11 inaccurate too.

6   The final paragraph, like most final paragraphs by plaintiffs, is again unbalanced.

7   Plaintiffs delete the final sentence from the *In re Scrap Metal* Instruction, which reads:  "If you

8   find that plaintiffs have <u>failed to prove any one of these elements</u>, then you are <u>limited to the post-</u>

9   <u>March 1996 time period</u> outlined in the previous 'affirmative defense' instruction."  (emphasis

10  original).  Because the date calculation is not applicable in to the Direct Purchaser plaintiffs, the

11  very similar final paragraph from the ABA Model Jury Instruction should be included:  "If you

12  find that the plaintiffs have failed to prove any one of the three elements, then you must find that

13  the statute of limitations bars any claim by the plaintiffs relating to any injury that occurred prior

14  to [October 25, 2002]."  Defendants' instruction is balanced and includes this language.

15  Because of all the defects with plaintiffs' instruction, Defendants' instruction (below, No.

16  110) should be given instead.

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

**No. 110 – [DEFENDANTS' PROPOSAL NO. ___] FRAUDULENT CONCEALMENT**
*[DISPUTED]*

In connection with a statute of limitations defense (above), however, you must also consider the competing concept of "fraudulent concealment," which, if applicable, alters your consideration of the dates outlined above.  The burden of proving this rests with the plaintiffs, not the defendants.

The antitrust laws require that a person who believes himself to have been injured by an antitrust violation bring suit within four years after that injury occurred.  An exception to this limitation of time in which to sue is where a defendant has actively concealed its wrongful act; this is called fraudulent concealment.

In this case, plaintiffs cannot recover for any antitrust injury which occurred prior to October 25, 2002, unless the plaintiffs have established that the defendants fraudulently concealed their conspiracy to fix prices.  To establish fraudulent concealment, the plaintiffs must prove each of the following elements by a preponderance of the evidence:

**First**, that the defendants actively concealed the conduct that allegedly caused the plaintiffs' antitrust injuries.  It is not enough for the plaintiffs to show that defendants failed to disclose the alleged conspiracy to fix prices; rather the plaintiffs must prove that defendants took active and affirmative steps to prevent the plaintiffs from learning about the alleged conspiracy; and

**Second**, that the plaintiffs failed to discover the alleged conspiracy until on or after October 25, 2002; and

**Third**, the plaintiffs exercised due diligence to try to discover the alleged conspiracy.

If you find that the plaintiffs have proven each of these elements, then you may find that the doctrine of fraudulent concealment applies to the plaintiffs' claim.  In that event, the length of time for which the plaintiffs may recover damages may be expanded to include the earliest injury that you find was suffered by the plaintiffs.  If you find that the plaintiffs have failed to prove any

one of the three elements, then you must find that the statute of limitations bars any claim by the

plaintiffs relating to any injury that occurred prior to October 25, 2002.

### Authority

ABA Model Jury Instructions, G-3 through G-4 (emphasis original), as modified.

1

**Defendants' Argument For**

2        The ABA Model Jury Instructions, G-3 through G-4, is an accurate statement of the law

3   regarding fraudulent concealment and relies on Ninth Circuit authority.  A leading Ninth Circuit

4   Sherman Act case on fraudulent concealment, has stated the test as follows:

5           [The plaintiff] had the burden of both pleading and ultimately proving fraudulent
            concealment. To carry that burden, he had to plead facts showing that [defendant]
6           actively misled him, that he had neither actual nor constructive knowledge of the
            facts constituting his claim for relief despite his diligence in trying to discover the
7           pertinent facts.

8           ***

9           To avoid the bar of limitation by invoking the concept of fraudulent concealment,
            the plaintiff must allege facts showing affirmative conduct upon the part of the
10          defendant which would, under the circumstances of the case, lead a reasonable
            person to believe that he did not have a claim for relief. Silence or passive conduct
11          of the defendant is not deemed fraudulent, unless the relationship of the parties
            imposes a duty upon the defendant to make disclosure. The affirmative act of
12          denying wrongdoing may constitute fraudulent concealment where the
            circumstances make the plaintiff's reliance upon the denial reasonable, but this is
13          not such a case.

14   *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249-50 (9th Cir. 1978) (plaintiff

15   could not "successfully assert fraudulent concealment to avoid the limitations bar.").

16

17                      **DPPs and IPPs' Argument Against**

18        Defendants' proposed instruction improperly ***omits half*** the instruction that should be

19   given.  Defendants cite verbatim the first half of the instruction given in *In re Scrap Metal*

20   *Antitrust Litig.*, (N.D. Ohio Feb. 09, 2006), *available at* http://www.abanet.org/antitrust/at-

21   committees/at-trial/pdf/jury-instructions/scrap-metal-jury-instructions.pdf, p. 43.  Defendants fail

22   to cite the second half of the instruction.

23        Plaintiffs include that portion in their instructions.

24        The omitted portion contains critical aspects of the fraudulent concealment doctrine, in

25   particular that "the law recognizes that a conspiracy is, by nature, self-concealing."

26        Defendants' proposed instruction is inappropriate and should not be adopted.

27

28

[proposed] JURY INSTRUCTIONS

**No. 111 – [DEFENDANTS' PROPOSAL NO. ___ ] DAMAGES: EFFECT OF INSTRUCTION AS TO DAMAGES** *[DISPUTED]*

I am now going to instruct you on the issue of damages.  The fact that I am giving you instructions concerning the issue of plaintiffs' damages does not mean that I believe the plaintiffs should, or should not, prevail in this case.

If, for any reason, you reach a verdict for the defendants on the issue of whether there was a conspiracy to fix SRAM prices, or whether either defendant knowingly became a member of the alleged conspiracy, or whether the plaintiffs were injured by the alleged conspiracy, or on the defense of the statute of limitations, you should not consider the issue of damages, and you may disregard the damages instructions that I am about to give.  Instructions as to the measure of damages are given for your guidance in the event you should find in favor of the plaintiffs based on a preponderance or greater weight of the evidence in accordance with the other instructions I have given you.  You should only consider calculating damages if you first find that defendants violated the antitrust laws and that this violation caused injury to the named plaintiff and to members of the class.

**Authority**

ABA Model Jury Instructions, F-11, as modified.

-275-

1

**Defendants' Argument For**

2      The ABA Model Jury Instructions, F-11, recommended by the Ninth Circuit to be used for

3 antitrust jury instructions, is a balanced and accurate statement of the law regarding the routine

4 instruction on the effect of an instruction as to damages.

5

6

**DPPs and IPPs' Argument Against**

7      Defendants' Proposed Jury Instruction should not be used because it is redundant,

8 confusing and unnecessarily lengthy.  The sentences in the second paragraph are all iterations of

9 each other; the same thing statement is made three times.  Further, Defendants' enumeration of

10 instances where the jury should not consider damages is in unnecessary and confusing.

11 Defendants instruct the jury that damages should not be considered where there is a finding for the

12 defendants "on the issue of whether there was a SRAM conspiracy to fix prices, or whether the

13 plaintiffs were injured by the alleged conspiracy, or on the defense of the statute of limitations."

14 Specifying the issues that would defeat a finding for the plaintiffs is unnecessary, prejudicial and

15 should not be included here.

16

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

1   **No. 112 – [DEFENDANTS' PROPOSAL NO. ___] DAMAGES: INTRODUCTION AND**

2   **PURPOSE** *[DISPUTED]*

3

4       If you find that defendants violated the antitrust laws and that this violation caused injury

5   to the named plaintiff and members of the class, then you must determine the amount of damages,

6   if any, plaintiffs are entitled to recover.  The law provides that the plaintiffs should be fairly

7   compensated for all damages to their business property that were a direct result or likely

8   consequence of the conduct that you have found to be unlawful.

9       The purpose of awarding damages in an antitrust action is to put an injured plaintiff as near

10  as possible in the position in which it would have been if the alleged antitrust violation had not

11  occurred.  The law does not permit you to award damages to punish a wrongdoer – what we

12  sometimes refer to as punitive damages – or to deter a defendant from particular conduct in the

13  future, or to provide a windfall to someone who has been the victim of an antitrust violation.  You

14  are also not permitted to award to plaintiffs an amount for attorneys fees or the costs of

15  maintaining this lawsuit.  Antitrust damages are compensatory only.  In other words, they are

16  designed to compensate a plaintiff for the particular injuries it suffered as a result of the alleged

17  violation of the law.

18

19  **Authority**

20  ABA Model Jury Instructions, F-12, as modified.

21

22

23

24

25

26

27

28

1

**Defendants' Argument For**

2     The ABA Model Jury Instructions, F-12, recommended by the Ninth Circuit to be used for

3 antitrust jury instructions, is a balanced and accurate statement of the law regarding an

4 introduction and purpose regarding damages.

5

6

**DPPs and IPPs' Argument Against**

7 Defendants' references to regression analysis are redundant, confusing and misleading. Defendants

8 attempts to call into the question the validity of the methods used by Direct Purchaser Plaintiffs'

9 expert when the Court has previously deemed adequate the Direct Purchasers' methods for

10 calculating aggregate damages. *SRAM*, 2008 WL 4447592, **6–7.  *See also NASDAQ*, 169

11 F.R.D. at 520-22 ("yardstick" and "before and after" methods, in conjunction with "analysis of the

12 defendant's costs and profits," constitute "widely accepted means of measuring damages in

13 antitrust cases") (internal citations omitted).  Instead of outlining what overcharge is and how it is

14 to be determined, Defendants attempts to judge of the soundness of regression analysis which is

15 misleading and inappropriate here.  Direct Purchasers Proposed Instruction 105 clearly explains –

16 without argument – how overcharged is proved and should instead be used.

17     Plaintiffs object to this instructions reference insofar as it seeks to impose upon plaintiffs a

18 requirement of proof that has not been applied in class action trials, and is based on dicta in a case

19 from outside the Ninth Circuit that was addressing a motion for class certification.  Specifically,

20 defendants' proposed instruction improperly requires the named plaintiff and each member of the

21 plaintiff class to be injured.  *See* discussion above.

22

23

24

25

26

27

28

1   **No. 113 – [DPPs and IPPs' PROPOSAL NO. ___] DAMAGES - NO NEED FOR**

2   **CERTAINTY (NOTE: INSTRUCTION FOR PHASE 2/DAMAGES)** *[DISPUTED]*

3

4   The antitrust laws contemplate that those who have conspired should not benefit from their

5   wrongdoing. The most elementary concepts of justice and public policy require that a wrongdoer

6   must bear the risk of uncertainty which its own wrong creates. A defendant's violations of the

7   antitrust laws often create a situation in which it is hard to determine the precise amount of

8   damages suffered by the plaintiffs. Plaintiffs' right to be fairly compensated should not be affected

9   by any difficulty you may have in determining the precise amount of damages as long as there is a

10  reasonable basis in the evidence for your damages award. Therefore, a defendant may not be heard

11  to object to plaintiffs' reasonable estimate of the overcharge or approximation of the overcharge or

12  the dollar amount of damages, where the nature of defendant's own misconduct has made

13  precision impossible.

14  In determining the measure of damages, if any, you will have to address what prices

15  plaintiffs would have paid had no conspiracy existed. It is not possible for any plaintiff to prove

16  with mathematical certainty what prices would have been had there been no conspiracy. Because

17  of this, the law does not require that plaintiffs prove with exact precision the measure or actual

18  amount of their damages. The law only requires plaintiffs to show enough evidence to give you,

19  the jurors, a basis for making a reasonable and just estimate or approximation based on relevant

20  data. In this connection you are permitted to base your decision upon probable and inferential, as

21  well as direct and positive proof. Of course, you may not engage in guesswork or sheer

22  speculation. Rather, you are to make a reasonable and just estimate of damages, if any, on the

23  basis of the evidence presented. The mere fact that there is some uncertainty in proving the

24  measure of damages should not however affected your decision.

25

26  **Authority**

27  Adapted from: *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 483-84 (3d Cir. 1998); *In re Lower*

28  *Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1176 (3d Cir. 1993); *Story Parchment Co. v.*

1  *Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931); *Bigelow v. RKO Radio Pictures, Inc.*,

2  327 U.S. 251, 264 (1946); *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 493 (7th Cir. 2002);

3  *Fishman v. Wirtz*, 807 F.2d 520, 551 (7th Cir. 1986); *Pierce v. Ramsey Winch Co.*, 753 F.2d 416,

4  435 (5th Cir. 1985); *Graphic Prods. Distribs. v. ITEK Corp.*, 717 F.2d 1560, 1579 (11th Cir.

5  1983); *Malcolm v. Marathon Oil*, 642 F.2d 845, 858 (5th Cir. 1981); *Servicetrends v. Siemens*

6  *Med. Sys., Inc.*, 870 F. Supp. 1042, 1069 (N.D. Ga. 1994); Jury Instruction of Chief Judge Thomas

7  F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as

8  given on June 11, 2003, Instruction No. 43) *available as* Ex. C to Plaintiffs' Appendix; KEVIN

9  O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND

10  INSTRUCTIONS § 150.90 (5th ed. 2001); ABA Antitrust Law Section, Model Jury Instructions

11  in Civil Antitrust Cases, F-15 to F-17 (2005 ed.).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction properly instructs jurors on damages.

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and should be adopted.


**Defendants' Argument Against**

This instruction is heavily tilted toward the plaintiffs, in that it repeatedly instructs the jury that it need not find damages with precision and only once mentions the prohibition on finding damages through speculation and guesswork. *See, e.g., Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1350-51 (9th Cir. 1985) (no damages awarded where jury required to speculate), superseded by rule on other grounds as stated in *Patel v. Penman*, 103 F.3d 868 (9th Cir. 1996). Plaintiffs must offer evidence that is as precise and concrete as the circumstances of the case permit. *See Wolff v. National Lead Co.*, 225 F.2d 427, 431 (9th Cir. 1955).

Moreover, plaintiffs even qualify this one clear requirement with their addition of the word "sheer" (*i.e.*, "you may not engage in guesswork or sheer speculation") giving the impression that some speculation may be permissible or otherwise trying to lower plaintiffs burden. This is contrary to the actual standard. The ABA Model Jury Instruction explains that there is a high standard and if any guesswork or speculation is used "then you may not award damages":

> Damages may not be based on guesswork or speculation. If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, <u>then you may not award damages</u>. If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, <u>then you may not award damages</u>.

(emphasis added). The ABA Model Instruction at F-15 through F-17, submitted by Defendants (below, No. 114), is far more balanced.

1   **No. 114** **– [DEFENDANTS' PROPOSAL NO. ___ ] DAMAGES: SPECULATION NOT**

2   **PERMITTED** *[DISPUTED]*

3

4         Damages may not be based on guesswork or speculation.  If you find that a damages

5   calculation cannot be based on evidence and reasonable inferences, and instead can only be

6   reached through guesswork or speculation, then you may not award damages.  If the amount of

7   damages attributable to an antitrust violation cannot be separated from the amount of harm caused

8   by factors other than the antitrust violation except through guesswork or speculation, then you

9   may not award damages.

10         You are permitted to make reasonable estimates in calculating damages.  It may be

11   difficult for you to determine the precise amount of damage suffered by the class members.  If you

12   have found that the plaintiffs established with reasonable probability the existence of an injury

13   proximately caused by the defendants' antitrust violation, you are permitted to make a just and

14   reasonable estimate of the damages.  The amount of damages must, however, be based on

15   reasonable, non-speculative assumptions and estimates.  The plaintiffs must prove the

16   reasonableness of each of the assumptions upon which their damages calculations are based.  If

17   you find that the plaintiffs have failed to carry their burden of providing a reasonable basis for

18   determining damages, then your verdict must be for the defendants.  But if you find that the

19   plaintiffs have provided a reasonable basis for determining damages, then you may award

20   damages based on a just and reasonable estimate supported by the evidence.

21

22                        **Authority**

23   Adapted from ABA Model Jury Instructions, F-15 through F-17; *see also McGlinchy v. Shell*

24   *Chemical Co.*, 845 F.2d 802, 808-09 (9th Cir. 1988); Jury instructions issued in *In re Tableware*

25   *Antitrust Litigation*, No. C-04-3514 (VRW) (June 29, 2007), *available at*

26   http://www.abanet.org/antitrust/at-committees/at-trial/pdf/jury-instructions/tableware-15.pdf,

27   pp.17-18.

28

-282-

1

**Defendants' Argument For**

2

The ABA Model Jury Instructions, F-15 through F-17, recommended by the Ninth Circuit

3

to be used for antitrust jury instructions, is a balanced and accurate statement of the law that

4

speculation is not permitted in considering antitrust damages.  *See, e.g., Bigelow v. RKO Radio*

5

*Pictures*, 327 U.S. 251, 264 (1946) (a damage award may not be based on "speculation or

6

guesswork.").  *See also* Authority cited above and Defendants' argument in response to plaintiffs'

7

proposed instruction (No. 113).

8

9

**DPPs and IPPs' Argument Against**

10

Plaintiffs' proposed instruction No. 113 properly instructs jurors as to determining the

11

measure of damages, including on the tenets that there is no need for certainty, and that the jury

12

may not engage in guesswork or sheer speculation in such consideration—the proposition to

13

which Defendants purport to give undue weight in their instruction.

14

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, including

15

Supreme Court precedent, and should be adopted.

16

17

18

19

20

21

22

23

24

25

26

27

28

-283-

[proposed] JURY INSTRUCTIONS

**No. 115 – [DPPs and IPPs' PROPOSAL NO. ___] DAMAGES - AMOUNT OF DAMAGES (NOTE: INSTRUCTION FOR PHASE 2/DAMAGES) *[DISPUTED]***

If you find that there was a violation of the antitrust laws that caused an overcharge to plaintiffs, you must then consider the measure of that overcharge. You should not be concerned with whether the measure of the overcharge is large or small, so long as you have made your determination based on the evidence and the considerations that I will now outline.

The essential measure of overcharge in this case is the amount by which the prices the plaintiffs paid were higher than the prices they would have paid if there had been no antitrust violation. You are being asked at to determine the measure of the overcharge paid by plaintiffs and the dollar amount of damages sustained by plaintiffs.

**Authority**

Adapted from: *Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390, 396 (1906); *Paper Sys., Inc. v. Nippon Paper Indus. Co., Ltd.*, 281 F.3d 629, 633 (7th Cir. 2002); *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 435 (5th Cir. 1985); *Ohio Valley Elec. Co. v. Gen. Elec. Corp.*, 244 F. Supp. 914, 933 (S.D. N.Y. 1965); Jury Instructions of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 42) *available as* Ex. C to Plaintiffs' Appendix; ABA Antitrust Law Section, Model Jury Instructions in Civil Antitrust Cases F-22 (2005 ed.).

**DPPs and IPPs' Argument For**

Plaintiffs' proposed instruction properly instructs jurors as to damages.

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and should be adopted.

**Defendants' Argument Against**

This instruction has some basic points correct, but it is incomplete.  Plaintiffs cite ABA Model Jury Instruction, F-22, but fail to include the remainder of the instruction regarding how plaintiffs can possibly that their damages model is reliable.  Defendants include this in their instruction and provide clear guidance to the jury.

This is important because, as described in Defendants' instruction (below, No. 116), plaintiffs' expert's damages model is very suspect.  Defendants currently have a *Daubert* Motion to Exclude the Expert Opinion of Dr. Armando Levy and a Motion for Summary Judgment and/or Partial Summary in Direct Purchaser Action focused on issues with Dr. Levy's analysis and Samsung has filed a motion *in limine* regarding whether Direct Purchaser Plaintiffs may introduce or otherwise refer at trial to evidence of alleged impact or damages that is either inconsistent with or expands upon the opinions set forth in the expert reports of Dr. Armando Levy relating to impact and damages.

[proposed] JURY INSTRUCTIONS

1   **No. 116 – [DEFENDANTS' PROPOSAL NO. ___] DAMAGES: OVERCHARGE**

2       *[DISPUTED]*

3

4       The plaintiffs claim that they were harmed because they paid higher prices for SRAM than

5   they would have paid in the absence of the alleged price-fixing conspiracy.  If you have

6   determined that there was an unlawful conspiracy among SRAM manufacturers to fix SRAM

7   prices that caused some injury to the named plaintiff and each member of the plaintiff class, you

8   must now consider the extent of the class members' damages.  A proper method of calculating

9   those damages is to award the plaintiffs the difference between the prices they actually paid for

10  SRAM and the prices they would have paid in the absence of a conspiracy to fix prices.

11      The plaintiffs have proposed to show the prices that would have prevailed in the absence of

12  a conspiracy during a subperiod of the time when the alleged conspiracy was in effect, namely,

13  October 1999 through December 2001.  This is referred to as the impact period.  The plaintiffs

14  have offered evidence of a regression analysis that they claim considers prices before and after the

15  impact period, as well as the economic factors that would influence prices during all periods, such

16  as costs and demand for products containing SRAM.  The plaintiffs claim that, using this analysis,

17  they can predict what the prices of SRAM would have been during the impact period, and they

18  further claim that there is a difference between what prices would have been and what they

19  actually were.  This difference is the basis for their damages calculation.

20      If you find that the plaintiffs' evidence provides a reliable basis for estimating what prices

21  would have been during the conspiracy period in the absence of the antitrust violation, then you

22  may find that the plaintiffs have proven damages.  You may base an award of damages only on the

23  damages caused by those defendants or other companies that you have previously determined

24  were members of the conspiracy.  You must make this determination without any speculation and

25  guesswork.  If you find that the regression analysis is not reliable or is not based on accurate data

26  about prices, costs, demand, and other economic factors, or that it fails to accurately take account

27  that prices were impacted by other factors, such as increased demand, changing products or

28

-286-

1  technology, or lawful pricing behavior of suppliers, then you may not award damages to the

2  plaintiffs.

3

4                                    **Authority**

5  ABA Model Jury Instructions, F-22 through F-23, as modified to fit the damages theory

6  propounded by direct purchaser plaintiffs; *see also id.*, F-49 ("caution should be exercised to be

7  sure that each plaintiff is awarded only damages for injuries it sustained"); *Chattanooga Foundry*

8  *& Pipe Works v. Atlanta*, 203 U.S. 390, 396 (1906).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-287-

1

## Defendants' Argument For

2      The ABA Model Jury Instructions, F-22 through F-23, recommended by the Ninth Circuit

3 to be used for antitrust jury instructions, is a balanced and accurate statement of the law regarding

4 damages.  *See also* Authority cited above and Defendants' argument in response to plaintiffs'

5 proposed instruction (No. 115).

6

7

## DPPs and IPPs' Argument Against

8      Plaintiffs object to this instructions reference insofar as it seeks to impose upon plaintiffs a

9 requirement of proof that has not been applied in class action trials, and is based on dicta in a case

10 from outside the Ninth Circuit that was addressing a motion for class certification.  Specifically,

11 defendants' proposed instruction improperly requires the named plaintiff and each member of the

12 plaintiff class to be injured.  *See* discussion above.

13      Plaintiffs object this instruction because the final paragraph seeks to improperly insert

14 argument as to why plaintiffs' damages calculation should be disbelieved – "that it fails to

15 accurately take account that prices were impacted by other factors, such as increased demand,

16 changing products or technology, or lawful pricing behavior of suppliers, then you may not award

17 damages to the plaintiffs."

18      Defendants' proposed instruction is inappropriate, not supported by their cited authority,

19 and should not be adopted.

20

21

22

23

24

25

26

27

28

-288-

1   **No. 117 – [DPPs' PROPOSAL NO. ___] DAMAGES - EXPERT TESTIMONY ON IMPACT**

2        **AND DAMAGES (NOTE: INSTRUCTION FOR PHASE 2/DAMAGES)**

3        *[DISPUTED]*

4

5        I previously instructed you generally on the nature of expert testimony. In this case, expert

6   testimony has been offered to assist you in estimating whether the plaintiffs were overcharged and

7   the amount of damages. Plaintiffs' expert, Dr. Levy, has used an accepted economic method

8   known as a multiple regression analysis to determine whether plaintiffs were overcharged, the

9   measure of the overcharge and the dollar amount of damages. This methodology takes into

10  account relevant economic evidence, including supply and demand factors.

11       According to Dr. Levy's analysis, prices of certain SRAM during the period of October 1,

12  1999 through December 31, 2001, were higher than can be explained by relevant economic

13  evidence, including supply and demand factors. Dr. Levy has opined that this finding is consistent

14  with the existence of a SRAM price-fixing conspiracy during that period. Multiple regression

15  analysis is the type of evidence that is accepted, along with other evidence, to determine the

16  damages caused by a conspiracy to fix, raise, maintain or stabilize prices.

17       If you find plaintiffs' expert's testimony credible, you may rely on it, as it is the type of

18  evidence that is acceptable for purposes of establishing whether plaintiffs were overcharged, the

19  measure of any overcharge and the dollar amount of damages, if any, to plaintiffs.

20

21                        **Authority**

22  Adapted from: *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 486 (W.D. Pa. 1999); *see also*

23  *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., Inc*., 998 F.2d 1224, 1238 (3d Cir. 1993);

24  *Conwood Co., L.P. v. U.S. Tobacco Co*., 290 F.3d 768, 793 (6th Cir. 2002); *City of Tuscaloosa v.*

25  *Harcros Chemicals, Inc*., 158 F.3d 548, 566 (11th Cir. 1998); *In re Indus. Silicon Antitrust Litig.*,

26  1998 WL 1031507, at *3 (W.D. Pa. Oct. 13, 1998).

27

28

1

**DPPs' Argument For**

2      Plaintiffs' proposed instruction properly summarizes Dr. Levy's anticipated testimony, and

3  then instructs jurors the various ways in which they can consider and weigh the credibility of that

4  testimony.

5      Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

6  should be adopted.

7

8

**Defendants' Argument Against**

9      In stating that Dr. Levy has used an "accepted economic method" to determine the

10  existence of an overcharge, and that the method "takes into account relevant economic evidence,"

11  this instruction would constitute an improper opinion about the evidence.  *See Navellier v. Sletten*,

12  262 F.3d 923, 943 (9th Cir. 2001) (trial court's discretion to comment on evidence in instructions

13  does not extend to making "one-sided" comments).  Determination whether Dr. Levy's method is

14  acceptable, and whether he has taken into account all relevant economic evidence, is for the jury

15  alone to decide.   The assertion in the second paragraph that "Multiple regression analysis is the

16  type of evidence that is accepted, along with other evidence, to determine the damages caused by a

17  conspiracy to fix, raise, maintain or stabilize prices", also improperly suggests to the jury that D.r.

18  Levy's method of calculating damages should be accepted.

19      In addition, the instruction erroneously states Dr. Levy's position.  Dr. Levy made it clear

20  that no part of his work involved determining the existence of a conspiracy.  He noted in his report

21  that plaintiffs had alleged a conspiracy, and stated that he "identified any impact *of the*

22  *conspiracy*" by conducting an empirical analysis of prices during and outside the alleged

23  conspiracy period.  Levy Report at 4 (emphasis added).  At deposition, in response to questioning,

24  Dr. Levy testified: "Q. Do you have an opinion in this case as to whether there was a conspiracy

25  among SRAM manufacturers?  A. It's not part of my assignment to have an opinion about that."

26  Levy Tr. 46:2-8.  Indeed, Dr. Levy stated, "I *assume* that, as alleged in the complaint, that there

27  was a price fixing conspiracy."  *Id*. at 46:23-24 (emphasis added).

28

-290-

Finally, the last paragraph of the instruction, like so many of plaintiffs' instructions, is unbalanced because it informs the jury that it may rely on Dr. Levy's testimony if it finds it credible, but does not remind the jury of its other options — that it may disregard the testimony if it finds that it lacks credibility.

**No. 118 – [DEFENDANTS' PROPOSAL NO.  ] DAMAGES: EXPERT TESTIMONY**

*[DISPUTED]*

You have heard testimony from the direct purchaser plaintiffs' expert, Dr. Armando Levy, regarding the amount of damages to which the plaintiffs claim they are entitled.  If you find that any of the pertinent underlying assumptions made by Dr. Levy in conducting a damages analysis are not reasonable or are not proven by a preponderance of the evidence, then you should consider this in determining the weight, if any, you will give to the assumptions and the effect they have on the plaintiffs' damages claim.

**Authority**

ABA Model Jury Instructions, at F-46, as modified.

**Defendants' Argument For**

The ABA Model Jury Instructions, F-46, recommended by the Ninth Circuit to be used for antitrust jury instructions, is a balanced and accurate statement of the law regarding expert testimony.  *See also* Authority cited above and Defendants' argument in response to plaintiffs' proposed instruction (No. 117).

**DPPs and IPPs' Argument Against**

Plaintiffs object this instruction because it seeks to improperly insert argument as to why plaintiffs' damages calculation should be disbelieved – "that it fails to accurately take account that prices were impacted by other factors, such as increased demand, changing products or technology, or lawful pricing behavior of suppliers, then you may not award damages to the plaintiffs."

Defendants' proposed instruction is inappropriate, not supported by their cited authority, and should not be adopted.

-293-

1   **No. 119 – [DPPs' PROPOSAL NO. ___] DAMAGES - NO PASS-ON CONSIDERATIONS**

2   **(NOTE: INSTRUCTION FOR PHASE 2/DAMAGES)** *[DISPUTED]*

3

4   It may occur to you that some of the plaintiffs are in the business of reselling SRAM, or

5   products containing SRAM, and you may wonder whether some or all of the overcharges that

6   plaintiffs contend they paid for SRAM as a result of the alleged conspiracy were passed on by

7   plaintiffs to their customers.

8   As I instructed you several minutes ago, in a case like this alleging price-fixing, a defense

9   of "passing on," as it is called, is legally irrelevant to plaintiffs' claim that plaintiffs were injured

10  and damaged by an alleged price-fixing conspiracy.  Therefore, I instruct you that considerations

11  of "passing on" must not be considered by you for any purpose or allowed to affect your

12  deliberations in any way.

13  Under the federal antitrust laws, a plaintiff who purchases an allegedly price-fixed product

14  directly from one or more participants in a price-fixing conspiracy is entitled to recover the full

15  amount of any overcharge it sustains as a result of the conspiracy. What the direct purchasers do

16  with the product after it is purchased is irrelevant to the issue of injury and damages and may not

17  be considered by you. "Passing on" is not a defense to plaintiffs' injury or damages claims in this

18  case and may not be considered for purposes of reducing plaintiffs' overcharge damages, if any.

19

20                              **Authority**

21  Adapted from: *Mid-West Paper Prods. Co. v. Cont'l. Group*, 596 F.2d 573 (3d Cir. 1979); *Ill. Brick*

22  *Co. v. Ill.*, 431 U.S. 720, 745-46 (1977); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S.

23  481, 488-89 (1968); *Austin v. Blue Cross & Blue Shield of Alabama*, 903 F.2d 1385, 1392 (11th

24  Cir. 1990); Jury Instructions of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig.*,

25  MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No.

26  45) *available as* Ex. C to Plaintiffs' Appendix.

27

28

**DPPs' Argument For**

In no portion of any direct purchaser case, apart from this instruction or other proposed by direct purchaser plaintiffs' for prophylactic or curative purposes, should the jury consider the issue of "pass-on"/"pass through," and the defendants should not be permitted to draw the jury's attention to the issue of "pass-on"/"pass though" or the distinction between direct and indirect purchasers.  *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968).

Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and should be adopted.

**Defendants' Argument Against**

For the reasons stated in its Trial Brief, Cypress is entitled to raise a pass-through defense and is entitled to a pass-through instruction.  The instruction, as worded, also is repetitive, overbroad, and vague.

-295-

1   **No. 120 – [DEFENDANTS' PROPOSAL NO. ___] DAMAGES: OVERCHARGE PASSED**
2        **ON BY DIRECT PURCHASERS** *[DISPUTED]*

3

4        As you heard during the trial, the indirect purchasers, who brought their claims against
5   Cypress, claim that overcharges to direct purchasers were passed through the chain of distribution
6   at approximately a 100% rate, and reflected as overcharges the prices of certain products
7   containing SRAM.  The indirect purchasers are seeking to recover damages from Cypress on
8   behalf of classes in 23 states or territories.

9        If you find that the direct purchasers were overcharged for SRAM, then you must then
10  determine whether any portion of that overcharge was passed through when the direct purchasers
11  sold SRAM-containing products to their purchasers.  If you find that the direct purchasers and
12  others in the chain of distribution passed through all the overcharges at the rate of 100% to the
13  indirect purchaser class, based on the evidence presented by the indirect purchasers' expert Dr.
14  Mark Dwyer, then you may not award any damages to the direct purchasers.  If you find that direct
15  purchasers and others in the chain of distribution passed through some other amount of
16  overcharges, you may not award the direct purchasers any damages that you find they passed
17  through.

18

19                              **Authority**
20  *Hanover Shoe, Inc. v. United Shoe Machinery Co.*, 392 U.S. 481, 494 (1968) ("We recognize that
21  there might be situations – for instance, when an overcharged buyer has a pre-existing 'cost-plus'
22  contract, thus making it easy to prove that he has not been damaged – where the considerations
23  requiring that the passing-on defense not be permitted in this case would not be present."); *cf.*
24  *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 218 (1990) ("we might allow indirect purchasers
25  to sue only when, by hypothesis, the direct purchaser will bear no portion of the overcharge and
26  otherwise suffer no injury"); Expert Report of Mark Dwyer (attached as Exhibit 3 to Defendants'
27  Joint Motion to Exclude the Expert Opinion of Dr. Mark Dwyer (filed July 15, 2010).

28

-296-

1

**Defendants' Argument For**

2       *See* Authority cited above and Defendants' argument in response to plaintiffs' proposed

3   instruction (No. 119).

4

5                          **DPPs and IPPs' Argument Against**

6       As discussed in at least one of the direct purchaser plaintiffs' proposed instruction herein

7   ("DAMAGES - NO PASS-ON CONSIDERATIONS"), as well as direct purchaser plaintiffs'

8   motion *in limine*, in no portion of any direct purchaser case should the jury consider the issue of

9   "pass-on"/"pass through," and the defendants should not be permitted to draw the jury's attention

10  to the issue of "pass-on"/"pass though" or the distinction between direct and indirect purchasers.

11  *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968).

12      For the reasons stated in Plaintiffs' motion *in limine*, this instruction should not be given.

13      Defendants' proposed instruction is inappropriate, not supported by their cited authority,

14  and should not be adopted.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **No. 121 – [DPPs and IPPs' PROPOSAL NO. ___] DAMAGES - JOINT AND SEVERAL**

2  **LIABILITY (NOTE: INSTRUCTION FOR PHASE 2/DAMAGES)** *[DISPUTED]*

3

4  Each participant in a conspiracy that violates the antitrust laws is held to be "jointly and

5  severally" liable for all the damages resulting from the conspiracy of which it was a member. This

6  means that each participant is fully accountable for the damages caused by the acts of any member

7  of the conspiracy undertaken pursuant to, or in furtherance of, the conspiracy. Because of the

8  strong public policy of free competition underlying the antitrust laws, the law has concluded that

9  one of the effective ways of deterring antitrust violations is to assure that a potential violator of the

10  law knows that it alone may be held liable for the full amount of damages arising from the

11  conspiracy in which it participates.

12  Plaintiffs are entitled to recover overcharge damages on all SRAM sales to them by all of

13  the defendants and alleged coconspirators which you found participated in the alleged conspiracy.

14  So, if you found that a defendant participated in the alleged conspiracy, then it is liable for all the

15  overcharges caused by all members of the conspiracy, and not just the overcharges on its own

16  sales alone.  In other words, such a defendant's liability for damages should not be limited to

17  overcharges on its own sales of SRAM.  It is also responsible for all sales of SRAM made by other

18  defendants and alleged coconspirators you found to have been conspirators.

19  Therefore, if you found that a defendant participated in a conspiracy, and you now find that

20  the conspiracy caused plaintiffs to pay more for SRAM than they would have absent the

21  conspiracy, then you will calculate the overcharges and the amount of damages owed to the

22  plaintiffs.  In doing so, you should remember that plaintiffs are entitled to recover damages or

23  overcharges from such a defendant on all sales of SRAM made by the defendant, as well as all

24  sales of SRAM made by other defendants and alleged coconspirators you found to have been

25  conspirators.

26

27

28

**Authority**

Adapted from: *Paper Sys., Inc. v. Nippon Paper Indus. Co., Ltd*., 281 F.3d 629, 632, 634 (7th Cir. 2002); *Wilson P. Abraham Const. Corp. v. Tex. Indus., Inc*., 604 F.2d 897, 904 n.15 (5th Cir. 1979), *aff'd*, 451 U.S. 630 (1981); *Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 212 (9th Cir. 1964); *Chattanooga Foundry & Pipe Works v. City of Atlanta*, 127 F. 23, 25 (6th Cir. 1903), *aff'd.*, 203 U.S. 390 (1906); *In re Uranium Antitrust Litig*., 552 F. Supp. 518, 522 (N.D. Ill. 1982); *In re Ariz. Dairy Prods. Litig*., 627 F. Supp. 233, 236 (D. Ariz. 1985); *Wainwright v. Kraft Co. Corp.*, 58 F.R.D. 9, 11-12 (N.D. Ga. 1973); Jury Instruction of Chief Judge Thomas F. Hogan in *In re Vitamins Antitrust Litig*., MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on June 11, 2003, Instruction No. 41) *available as* Ex. C to Plaintiffs' Appendix; *United States v. Consolidated Packaging Corp.*, 575 F.2d 117 (7th Cir. 1978).

1

**DPPs and IPPs' Argument For**

2          Plaintiffs' proposed instruction properly instructs jurors as the doctrine of joint and several

3    liability.

4          Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

5    should be adopted.

6

7

**Defendants' Argument Against**

8          This instruction does not seem necessary, and, stated previously before, plaintiffs'

9    reference to the "public policy of free competition" is subject to abuse and could be interpreted

10   contrary to elements the plaintiffs must prove.   Paragraphs 2 and 3 mostly just repeat the

11   substance of the first two sentences of paragraph 1.  The repetition is confusing and unnecessary.

12

13         Samsung further contends that this proposed instruction is an inaccurate statement of the

14   law as to the Samsung defendants, who will be invoking ACPERA  to limit their liability to actual

15   damages attributable to Samsung's own sales affected by the alleged conspiracy.  *See also*

16   Samsung's Proposed Special Verdict Question No. 6; Samsung's Trial Brief, Section II.A.

17

18

19

20

21

22

23

24

25

26

27

28

-300-

**No. 122 – [DEFENDANTS' PROPOSAL NO. ___] DAMAGES: TREBLING** *[DISPUTED]*

You may have heard or read that in antitrust cases such as this, damages are trebled, or multiplied by three.  You are not to try to do this yourself.  This is the job of the Court.  In calculating damages, if any, you are only to try to determine actual or single damages.

**Authority**

ABA Model Jury Instructions, F-52.  Defendants submit this instruction for use in the event there is publicity surrounding this trial that informs potential jurors that treble damages may be recovered, or if there is evidence that jurors are actually aware of the availability of treble damages.

1

**Defendants' Argument For**

2      As stated above, Defendants submit this instruction for use in the event there is publicity

3 surrounding this trial that informs potential jurors that treble damages may be recovered, or if

4 there is evidence that jurors are actually aware of the availability of treble damages.

5

6                **DPPs and IPPs' Argument Against**

7      The subject of this instruction is subject to Plaintiffs' Motion in Limine.

8      For the reasons stated in that motion, this instruction should not be given.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **No. 123 – [IPPs' PROPOSAL NO.     ]  GENERAL INSTRUCTION – STATE ANTITRUST**

2       **CLAIMS *[DISPUTED]***

3

4       The Indirect Purchaser Plaintiffs have brought antitrust claims against the Defendants

5   under the laws of 18 states, the District of Columbia, and Puerto Rico.  For purposes of these

6   instructions, I will refer to the District of Columbia and Puerto Rico as states.  The antitrust laws

7   of these  states are modeled on their federal counterpart, the Sherman Act, and similarly declare

8   illegal any contract, combination or conspiracy which restrains trade.  Each of the 20 states'

9   antitrust laws permit indirect purchasers, such as consumers, to bring actions and recover

10  damages.

11      With respect to each of the states, the Indirect Purchaser Plaintiffs have brought antitrust

12  claims for horizontal price-fixing.  Because the antitrust laws of the 20 states are to be interpreted

13  and construed in harmony with the Sherman Act, if you find that the Defendants are liable under

14  the Sherman Act, you should also find that they are liable under the laws of Arizona, California,

15  Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Nevada, New Mexico, New York, North

16  Carolina, North Dakota, South Dakota, Tennessee, Utah, West Virginia, Wisconsin, the District of

17  Columbia, and Puerto Rico.

18      I will now describe what is required to find a violation of the antitrust laws of these states.

19

20                              **Authority**

21  *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 275, 278 (D. Mass. 2004) (finding that "[w]ith

22  respect to substantive matters," the statutes of twelve "Exemplar States"—Arizona, California,

23  Florida, Kansas, Maine, Massachusetts, Michigan, Minnesota, New York, North Carolina,

24  Tennessee, and Vermont—"uniformly parallel their federal counterparts, the Sherman Act and the

25  Federal Trade Commission Act.").  *See also Wedgewood Inv. Corp. v. Int'l Harvester* Co., 126

26  Ariz. 157, 159-160, 1979 Ariz. App. LEXIS697 (Ariz. Ct. App. 1979) ("The Arizona legislature

27  intended for uniformity between federal and state antitrust laws."); D.C. Code § 28-4515  (2010)

28  (harmonization provision); *Island Tobacco Co., Ltd. v. R. J. Reynolds Indus., Inc.*, 513 F. Supp.

                                    -303-

726, 736-37 (D. Haw. 1981) ("[l]egislative history of Hawaii's antitrust law clearly indicates that the state laws are to be interpreted and construed in harmony with analogous federal antitrust laws…."); Iowa Code § 553.2 (harmonization provision; purpose is "to achieve uniform application of the state and federal laws prohibiting restraints of economic activity and monopolistic practices."); *Tri-State Rubbish, Inc. v. Waste Mgmt., Inc.*, 875 F. Supp. 8 (D. Me. 1994) ("Maine antitrust law parallels the Sherman Act."); Mich. Comp. Laws Ann. § 445.784 (harmonization provision) ("It is the intent of the legislature that in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes, including, without limitation, the doctrine of per se violations and the rule of reason."); State *by Humphrey v. Alpine Air Prods., Inc.*, 490 N.W.2d 888, 894 (Minn. Ct. App. 1992), aff'd, 500 N.W.2d 788 (Minn. 1993) ("Minnesota antitrust law should be interpreted consistently with federal court interpretations of the Sherman Act unless state law is clearly in conflict with federal law."); Nev. Rev. Stat. § 598A.050 (harmonization provision); N.M. Stat. Ann. § 57-1-15 (harmonization provision; purpose is "to achieve uniform application of the state and federal laws prohibiting restraints of trade and monopolistic practices."); *Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 335 (N.Y. 1988) ("the Donnelly Act – often called a 'Little Sherman Act' – should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result"); *DKH Corp. v. Rankin-Patterson Oil*, 506 S.E.2d 256, 258 (N.C. Ct. App. 1998) (Chapter 75of the North Carolina General Statutes "was modeled after the Sherman Act and many of Chapter 75's provisions closely resemble it."); 35 Op. N.D. Att'y Gen. 76, 108 (D.N.D. 1981) ("Drawing from the body of knowledge developed in the federal system provides instruction as to what courses of action are permissible, and what courses of action are prohibited...."); *Caribe BMW v. Bayerische Motoren Werke Aktiengesellschaft*, 19 F.3d 745, 754 (1st Cir. 1994) ("[C]ourts interpret Puerto Rico's laws as essentially embodying the jurisprudence relevant to the parallel federal law."); S.D. Codified Laws § 37-1-22 (harmonization provision) ("It is the intent of the Legislature that in construing this chapter, the courts may use as a guide interpretations given by the federal or state courts to comparable antitrust statutes."); Utah Code

-304-

1  Ann. § 76-10-926 (harmonization provision); W.Va. Code § 47-18-16 (harmonization provision)

2  ("This article shall be construed liberally and in harmony with ruling judicial interpretations of

3  comparable federal antitrust statutes."); *Conley Publ'g Group Ltd. v. Journal Commc'ns., Inc*., 665

4  N.W.2d 879, 885-86 (Wisc. 2003) ("Wisconsin courts have followed federal court interpretations

5  of Sections 1 and 2 of the Sherman Act and have construed Wisconsin antitrust statutes in

6  conformity with these federal court interpretations. This is long-standing policy.").  *See, e.g.*, *In re*

7  *Relafen Antitrust Litig*., 221 F.R.D. 260, 269 (D. Mass. 2004) (observing that Arizona, California,

8  Florida, Kansas, Maine, Massachusetts, Michigan, Minnesota, New York, North Carolina,

9  Tennessee, and Vermont permit indirect purchaser actions under their antitrust, consumer

10  protection, or unfair trade practices statutes); Ariz. Rev. Stat. §44-1408(B) (2010); Cal. Bus. &

11  Prof. Code §16750(a) (2010); D.C. Code Ann. §28-4509 (2010); Haw. Rev. Stat. § 480-3 (2010);

12  *Comes v. Microsoft Corp*., 646 N.W. 2d 440 (Iowa 2002); Kan. Stat. Ann. § 50-161(b) (2009);

13  *Bellinder v. Microsoft Corp*., No. 00-C-0855, 2001 WL 1397995 (Kan. Dist. Ct. Sept. 7, 2001);

14  Me. Rev. Stat. tit. 10, §1104(1) (2010); Mich. Comp. Laws Ann. §445.778(2) (2010); Minn. Stat.

15  §325D.57 (2009); Nev. Rev. Stat. §598A.210(2) (2010); *Pooler v. R.J. Reynolds Tobacco Co*.,

16  2001-1 Trade Cas. (CCH) ¶73,232, 2001 WL 403167 (Nev. Dist. Ct. Apr. 4, 2001); N.M. Stat.

17  Ann. §57-1-3(A) (2010); N.Y. Gen. Bus. Law § 340(6) (2010); *Hyde v. Abbott Labs*., 473 S.E.2d

18  680 (N.C. Ct. App. 1996); N.D. Cent. Code §51-08.1-08(3) (2010); 10 L.P.R.A. § 268(a) (2009);

19  S.D. Codified Laws §37-1-33 (2010); *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d

20  512, 519-20 (Tenn. 2005); Utah Code § §76-10-919(1)(a) (2010); W. Va. Code St. R. § 142-9-1;

21  Wis. Stat. Ann. §133.18(1)(a) (2010).

22

23

24

25

26

27

28

      [proposed] JURY INSTRUCTIONS

1

**IPPs' Argument For**

2          Proposed Instruction No. 123 should be used instead of Instruction No. 124 because it

3   more accurately characterizes the law and is shorter and less confusing to a jury.  Unlike

4   Instruction No. 124, it provides a more accurate characterization of the antitrust laws of the twenty

5   states at issue and their relationship with the Sherman Act.  *See* IP Plaintiffs' arguments and

6   authority against Proposed Jury Instruction No. 124 – Cypress' Proposal No. __ (Indirect

7   Purchasers: Introduction to State Antitrust Claims).  Further, Instruction No. 123 is superior

8   because it does not contain confusing and unnecessarily duplicative language regarding the precise

9   products at issue and a listing of each state under the laws of which an antitrust claim is brought.

10  *Id.*  For these reasons, Proposed Instruction No. 123 should be used and No. 124 should not be

11  used.

12

13                             **Cypress' Argument Against**

14          The instruction leaves out Montana.  It also should state that if defendants are not liable

15  under the Sherman Act, they are not liable under state antitrust laws.

16

17

18

19

20

21

22

23

24

25

26

27

28

No. 124 – [CYPRESS' PROPOSAL NO. ___] INDIRECT PURCHASERS: INTRODUCTION TO STATE ANTITRUST CLAIMS *[DISPUTED]*

I will now instruct you on the antitrust claims of the indirect purchasers.

Classes of indirect purchasers in 21 states and territories have brought antitrust claims only against Cypress. These plaintiffs make the same allegation as the direct purchasers, namely, that there was a conspiracy to fix the prices of SRAM, that Cypress was a part of that conspiracy, and that the alleged conspiracy caused injury in the form of overcharges. Cypress denies the allegations of the indirect purchasers, just as it denies the allegations of the direct purchasers. Cypress denies that there was a conspiracy to fix the price of SRAM, that it participated in any such conspiracy, or that the indirect purchaser plaintiffs were injured at any time. As you heard during the trial, indirect purchasers are individuals and entities who did not buy SRAM directly, but bought certain products containing SRAM. The indirect purchasers allege that the conspiracy lasted from November 1, 1996 to December 31, 2006.

The states where indirect purchasers have brought antitrust claims are: Arizona, California, District of Columbia, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Montana, Nevada, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, South Dakota, Tennessee, Utah, West Virginia, and Wisconsin.[6] Each of the classes consist of persons and entities who purchased seven different types of finished products containing SRAM in those states: handheld computer devices (also known as personal digital assistants ("PDAs") and smartphones), desktop computers (with separate level 2 cache memory), servers, mainframes, Voice-Over Internet Protocol Systems, routers, switches, modems, storage area networks and firewalls. In 17 states, the classes consist of all persons and entities who bought these products. In the remaining four

---

[6]     Cypress has a pending motion for summary judgment on the claims under Montana and Puerto Rico law on the ground that indirect purchasers lack standing. *See* Samsung's Motion for Summary Judgment and/or Partial Summary Judgment in Indirect Purchaser Actions (filed July 15, 2010), at 12-13; Cypress' Motion for Summary Judgment at 28-29 (Dkt. 1068) (joining in Samsung's motion on the IP claims).

1   states, the classes consist only of persons and entities who purchased these seven different types of

2   finished products for personal, family, or household use.

3

4                                              **Authority**

5   Fifth Consolidated Amended Class Action Complaint (Dkt. 1067) ¶¶ 223-245.  The Court certified

6   classes in the states listed in the instruction;  Order Granting IP Plaintiffs' Motion for Class

7   Certification (Dkt. 903), at 29-36; Order Amending Order Granting IP Plaintiffs' Motion for Class

8   Certification (Dkt. 981) (defining products containing SRAM).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Cypress' Argument For**

2        *See* Authority cited above.

3

4

**IPPs' Argument Against**

5        IP Plaintiffs object to Proposed Instruction No. 124 because it is inaccurate, confusing, and

6   highly likely to mislead a jury.  First, Cypress' statement that "[c]lasses of indirect purchasers in

7   *21 states and territories* have brought antitrust claims" is incorrect (emphasis added).  In the

8   operative complaint, IP Plaintiffs clearly asserted Defendants' violation of *twenty* states' antitrust

9   laws.[7]  However, Cypress erroneously includes Montana among IP Plaintiffs' state antitrust claims,

10  when IP Plaintiffs clearly assert only Montana's consumer protection and unjust enrichment

11  claims.  *See* Fifth Consolidated Amended Class Action Complaint ("Fifth Amended Complaint")

12  ¶¶ 257, 268-70 (Dkt. No. 1067) (asserting claims for violations of the Montana Unfair Trade

13  Practices Act, Montana Code § 30-14-201 *et seq.* and unjust enrichment under Montana law).

14        Second, Cypress' proposed instruction is unnecessarily duplicative of proposed instructions

15  related to the Sherman Act—without actually mentioning the Sherman Act at all.  Moreover,

16  Cypress' instruction fails to provide the jury with the most pertinent information regarding the

17  relationship between the state antitrust laws and Sherman Act: because the antitrust laws of the

18  twenty states are to be interpreted and construed in harmony with the Sherman Act, if Defendants

19  are found liable under the Sherman Act, they should also be found liable under the state antitrust

20  laws.  *See* Proposed Jury Instruction No. 123 – IP Plaintiffs' Proposal No. __ (General Instructions

21  – State Antitrust Claims).

22        Third, Cypress' inclusion of the "seven different types of finished products containing

23  SRAM" in the class and listing of those products is not necessary to this instruction and

24  duplicative of descriptions of SRAM and the relevant products in the parties' earlier proposed

25  _____

26  [7]        The twenty states for which IP Plaintiffs allege state antitrust claims are: Arizona,
    California, District of Columbia, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota,
27  Nevada, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, South
    Dakota, Tennessee, Utah, West Virginia, and Wisconsin.  *See* Fifth Consolidated Amended
28  Class Action Complaint ¶¶ 222-47 (Dkt. No. 1067).

-309-

1   instructions.  *See* Proposed Jury Instruction No. 3 – Defendants' Proposal No. __ (Claims and

2   Defenses) and No. 6 – IPPs' Proposal No. __ (Parties and Class Action Procedure).  The

3   "information overload" Cypress' proposed instruction would likely work on a jury is highly likely

4   to be prejudicial, particularly given that the information is unnecessary and/or duplicative of

5   earlier instructions.

6          Fourth and finally, Cypress' reference to "17 states" for which there are classes comprising

7   class members purchasing products, and "four states" for which there are classes comprising class

8   members purchasing products for personal, family, or household use is incorrect and highly likely

9   to confuse a jury. IP Plaintiffs have alleged state antitrust claims for a total of only *twenty* states,

10  *see supra*, of which the classes for *six* are limited to purchases "for personal, family or household

11  use."[8]  Further, as with the detailed reference to the seven types of finished products containing

12  SRAM, reference to the limitation of products purchased for this particular type of end use is

13  duplicative of information provided in earlier proposed instructions.  *See* Proposed Jury

14  Instruction No. 6 – IPPs' Proposal No. __ (Parties and Class Action Procedure).  Because it is

15  facially incorrect and contains superfluous information likely to confuse and/or mislead the jury,

16  Cypress' proposed instruction should not be used.

17

18

19

20

21

22

23

24

25

26

---

[8]      The six states for which class definitions are limited to purchases "for personal, family or
household use" are: Hawaii, Kansas, Maine, Pennsylvania, Rhode Island, and the District
of Columbia.  *See* Fifth Amended Complaint ¶ 139.

**No. 125 – [IPPs' PROPOSAL NO. ___] SHERMAN ACT SECTION ONE** *[DISPUTED]*

Pursuant to the laws of the 20 states, the Indirect Purchaser Plaintiffs allege that indirect purchasers of SRAM or products containing SRAM in those states were injured by Defendants' and their alleged co-conspirators' horizontal price-fixing conspiracy.  To establish a violation of the 20 states' laws, Indirect Purchaser Plaintiffs must prove the following elements by a preponderance of the evidence:

**First**, the existence of a contract, combination or conspiracy between or among at least two separate entities;

**Second**, that the contract, combination or conspiracy unreasonably restrains trade;

**Third**, that the restraint affects commerce in the state; and

**Fourth**, that the restraint caused Indirect Purchaser Plaintiffs to suffer an injury to their business or property.

In Phase I of this trial, you are only being asked to decide the first three elements, namely, whether a contract, combination or conspiracy existed between Cypress and Samsung or at least one other alleged co-conspirator in the first place, whether it was an unreasonable restraint of trade, and whether the restraint affected commerce in the states.  You are not to decide or consider element (4).  I will now give you instructions for deciding elements (1), (2) and (3).


**Authority**

Adapted from ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases, A-3 (2005 ed.) (citing Sherman Act §§ 1 and 7, 15 U.S.C. §§ 1 and 7).  *See also* sources cited in General Instruction – State Antitrust Claims, above.

-311-

1

**IPPs' Argument For**

2          IP Plaintiffs' Proposed Jury Instruction No. 125 should be used instead of Cypress'

3   Proposed Instruction No. 126 because it provides a more accurate characterization of the law, is

4   more concise, and will be less confusing to a jury.  Unlike Proposed Instruction No. 126, IP

5   Plaintiffs' proposed instruction references the proper number of states' antitrust laws at issue and

6   does not include unnecessarily duplicative and detailed information regarding the seven types of

7   finished products at issue in this action.  IP Plaintiffs suggest one change to Instruction No. 125,

8   however, which is to change the title to "Indirect Purchaser: State Antirust Claims"; the present

9   title referencing the Sherman Act was inadvertent.  For these reasons, Proposed Instruction No.

10   125 should be used and No. 126 should be disregarded.

11

12

**Cypress' Argument Against**

13          Unlike the ABA Model Instruction, this instruction incorrectly describes the second

14   element as whether the conspiracy restrains trade.  The instruction omits the element that the jury

15   must find the defendant to be a member of the conspiracy, and thereby is misleading.  Cypress

16   submits that, to reduce any jury confusion, the indirect purchaser instructions should mirror the

17   direct purchaser instructions.

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

1  **No. 126 – [CYPRESS' PROPOSAL NO. __] INDIRECT PURCHASERS: ANTITRUST**

2      **CLAIMS** *[DISPUTED]*

3

4      I instruct you that the elements of the state antitrust laws are the same as the Sherman Act

5  on which you were instructed earlier, although there are small differences which I will point out.

6  To prevail against Cypress on their price-fixing claim in any of the 21 states, the indirect

7  purchasers must prove as to Cypress each of the following elements by a preponderance or greater

8  weight of the evidence:

9      1.    First, that a conspiracy between or among at least two separate entities to fix the

10          prices of SRAM existed from November 1, 1996 to December 31, 2006.  Note that

11          this time period is different from the claim of the direct purchasers, who alleged

12          that the conspiracy lasted through December 31, 2005.

13      2.    Second, that Cypress knowingly – that is, voluntarily and intentionally – became a

14          party to that conspiracy with the purpose of furthering the goals of that conspiracy;

15      3.    Third, that the conspiracy restrained or affected state commerce in Arizona,

16          California, District of Columbia, Hawaii, Iowa, Kansas, Maine, Michigan,

17          Minnesota, Montana, Nevada, New Mexico, New York, North Carolina, North

18          Dakota, Puerto Rico, South Dakota, Tennessee, Utah, West Virginia, and

19          Wisconsin; and

20      4.    Fourth, that the conspiracy caused the indirect purchasers to suffer an injury to their

21          business or property.

22

23  If you find that the evidence is insufficient to prove any one or more of these elements as to

24  Cypress, then you must find for Cypress and against the indirect purchasers on the indirect

25  purchasers' price-fixing claim.  If you find that the evidence is sufficient to prove all four elements

26  as to Cypress, then you must find for the indirect purchaser plaintiffs and against Cypress on the

27  indirect purchasers' price-fixing claim.

28

-313-

1

**Authority**

2  In most of the states covered by this instruction, there is either a statute or case law providing that

3  the federal courts' interpretations of the Sherman Act are binding or persuasive authority with

4  regard to the content of the state's antitrust statute.  *See* Ariz. Rev. Stat. §§ 44-1412; D.C. Code

5  Ann. § 28-4515; Haw. Rev. State § 80-2; Iowa Code § 553.2; Mich. Comp. Laws. § 445.784; Nev.

6  Rev. Stat. Ann. § 598A.050; New Mexico Stat. Ann. § 57-1-15; S.D. Cod. Laws Ann. § 37-1-22;

7  Utah Stat. § 76-10-926; West Va. Code § 47-18-16); *Vinci v. Waste Management, Inc.*, 43 Cal.

8  Rptr. 2d 337, 338 n.1 (Cal. App. Ct. 1995); *Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 149

9  (1st Cir. 2000) (Maine); *Howard v. Minn. Timberwolves B'ball Ltd. P'ship*, 636 N.W.2d 551, 556

10  (Minn. App. Ct. 2001); *People v. Rattenni*, 613 N.E.2d 155, 171 (N.Y. 1993); *DKH Corp. v.*

11  *Rankin-Patterson Oil*, 506 S.E.2d 256, 258 (N.C. App. 1998); *Pressure Vessels P.R. v. Empire*

12  *Gas P.R.*, 1994 P.R.-Eng. 909,547 (P.R. 1994); *Conley Pub. Group, Ltd. v. Journal Comm'ns,*

13  *Inc.*, 665 N.W.2d 879, 885–886 (Wisc. 2003).  The relevant portions of the antitrust statutes of

14  Kansas, Montana and Tennessee are modeled on the Sherman Act.  *See Bergstrom v. Noah*, 974

15  P.2d 520, 531 (Kan. 1999); Mont. Code § 30-14-205(1); *Freeman Indus., LLC v. Eastman Chem.*

16  *Co.*, 172 S.W.2d 512, 520-521 (Tenn. 2005).

17

18

19

20

21

22

23

24

25

26

27

28

**Cypress' Argument For**

*See* Authority cited above.

**IPPs' Argument Against**

Proposed Instruction No. 126 submitted by Cypress is inaccurate, misleading and potentially prejudicial to a jury.  Because the instruction would cause unnecessary confusion and potential prejudice to a jury, the Court should approve IP Plaintiffs' equivalent proposed instruction, Proposed Instruction No. 125.

Proposed Instruction No. 126 is inaccurate.  First, Cypress again erroneously refers to IP Plaintiffs' "price-fixing claim[s] in any of the *21 states*" when, as previously explained in IP Plaintiffs' Authority Against Cypress's Proposed Instruction No. 125, IP Plaintiffs have only asserted violations of *20 states'* antitrust laws (emphasis added).  For the same reason, Montana is improperly named as one of the "antitrust states" at issue in the third element of the proposed instruction.  Cypress's instruction is thus facially inaccurate and highly likely to confuse or mislead a jury.

Further, Cypress misstates the law when it instructs that IP Plaintiffs must prove the existence of a price-fixing conspiracy "from November 1, 1996 to December 31, 2006."  Rather, IP Plaintiffs need only prove (1) the existence of the alleged conspiracy and (2) that Cypress knowingly became a member of the conspiracy.  *See, e.g.,* Judicial Council of California Civil Jury Instructions, Series 3400 Cartwright Act (2010) (enumerating necessary elements of price-fixing claim under the Cartwright Act with no reference to temporal duration of the conspiracy).  Moreover, the model jury instructions relied upon by Defendants in their Sherman Act instructions for the direct-purchaser case likewise enumerate the necessary elements of a price-fixing claim under the Sherman Act—with *no reference* to temporal duration of the conspiracy.  *See* Proposed Instruction No. 83 - Defendants' Proposal No. __ (citing ABA Model Jury Instructions in Civ. Antitrust Cases B-19 to B-21 (2005)); *see also* "Sherman Act – Section 1" Jury Instruction of Chief Judge Vaughn R. Walker in *In re Tableware Antitrust Litig.*, No. C-04-3514 VRW (N.D. Cal.) (as given on June 29, 2007) (same); *In re High Pressure Laminates*

-315-

1   *Antitrust Litig.*, 2006 U.S. Dist. LEXIS 29431, at *9 (S.D.N.Y. May 15, 2006).  Indeed, even

2   Defendants' instruction which describes the conspiracy element acknowledges that plaintiffs need

3   only prove "the existence of a conspiracy," and sets forth no temporal requirement.  *See*

4   Defendants' Proposed Instruction No. 85.

5          Given the erroneous statements of fact and law in Proposed Instruction No. 126, the Court

6   should decline to use this instruction and should instead adopt IP Plaintiffs' equivalent instruction

7   on the elements of a horizontal price-fixing conspiracy, Proposed Instruction No. 125.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**No. 127 – [IPPs' PROPOSAL NO. ___] CONTRACT, COMBINATION OR CONSPIRACY – DEFINITION, EXISTENCE AND EVIDENCE *[DISPUTED]***

The Indirect Purchaser Plaintiffs allege that Cypress participated in a conspiracy to restrain trade by agreeing to fix, raise, maintain or stabilize the price of SRAM at artificially high levels. A conspiracy is an agreement or understanding by two or more persons to accomplish some unlawful purpose or to accomplish a lawful purpose by unlawful means. Whenever I speak of "persons" in these instructions, I mean "corporations" or "companies" as well as natural persons.

Indirect Purchaser Plaintiffs must prove both of the following elements by a preponderance of the evidence:

**First**, that there was a conspiracy; and

**Second**, that Cypress knowingly became a member of the conspiracy.

In determining whether an agreement has been proved, you must view the evidence as a whole and not piecemeal. In considering the evidence, you should first determine whether or not the alleged conspiracy existed. If you conclude that the conspiracy did exist, you should next determine whether Cypress knowingly became a member of the conspiracy with the intent to further its purposes.

**Authority**

Adapted from ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases, B-2 to B-4 (2005 ed.) (*citing Monsanto Co. v. Spray-Rite Serv. Co.*, 465 U.S. 752, 761 (1984); ABA Section of Antitrust Law, 1 *Antitrust Law Developments* 3-9 (5th ed. 2002); *United States v. General Motors Corp.*, 384 U.S. 127, 142-43 (1966); *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 222-23 (1939); *Albrecht v. Herald Co.*, 390 U.S. 145, 149-50 (1968), overruled on other grounds by *State Oil Co. v. Khan*, 522 U.S. 3 (1997); *Spectators' Commun. Network, Inc. v. Colonial Country Club*, 253 F.3d 215, 220 (5th Cir. 2001); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *Williamson Oil v. Philip Morris USA*, 346 F.3d 1287

(11th Cir. 2003); *In re Citric Acid Antitrust Litig*., 191 F.3d 1090, 1093 (9th Cir. 1999); *Reserve Supply Corp. v. Owens-Corning Fiberglass Corp*., 971 F.2d 37, 55 (7th Cir. 1992)).

1

**IPPs' Argument For**

2
   IP Plaintiffs' Proposed Jury Instruction No. 127 should be used along with Proposed Jury

3
Instruction No. 125 because together they most accurately and clearly explain the necessary

4
elements of a state-law antitrust claim.  They are fully supported by the case law cited in each, and

5
should be used instead of Cypress' Proposed Jury Instruction No. 126.  In addition to IP Plaintiffs'

6
arguments in support of Instruction No. 125, which IP Plaintiffs incorporate here by reference,

7
Instruction No. 127 is needed to provide the jury information regarding what constitutes a

8
conspiracy.  Such information is vital because proving the existence of a conspiracy will be a key

9
issue at trial.  For these reasons, Proposed Instructions Nos. 125 and 127 should be used and No.

10
126 should be disregarded.

11

12

**Cypress' Argument Against**

13
   This instruction is confusing because the structure of the indirect purchasers' instructions

14
differs from those of the direct purchasers.  This instruction describes the element of conspiracy a

15
second time, and, while it correctly states that the jury must find the defendant to be a member of

16
the conspiracy, it omits the terms "voluntarily and intentionally" that appear in the ABA Model

17
Instruction on participation.  Cypress submits that, to reduce any jury confusion, the indirect

18
purchaser instructions should mirror the direct purchaser instructions.

19

20

21

22

23

24

25

26

27

28

1    **No. 128 – [CYPRESS' PROPOSAL NO. ___] INDIRECT PURCHASER ANTITRUST**

2          **CLAIMS: FIRST AND SECOND ELEMENTS** *[DISPUTED]*

3

4          INSERT INSTRUCTIONS ON CONSPIRACY FROM DIRECT PURCHASER SET.

5

**Cypress' Argument For**

*See* Authority cited above.

**IPPs' Argument Against**

IP Plaintiffs incorporate by reference all arguments supporting the conspiracy instructions jointly submitted by the Direct Purchaser and IP Plaintiffs above, and incorporate by reference all arguments against the conspiracy instructions submitted by Defendants above.

1    **No. 129 – [IPPs' PROPOSAL NO. ___]  EFFECT ON COMMERCE** *[DISPUTED]*

2

3          The third element Plaintiffs must prove is an unreasonable restraint of trade in or affecting

4    state commerce in the states.  To violate the state antitrust laws, the conspirators' conduct or their

5    agreement to fix, raise, maintain, or stabilize prices must have been in or had some effect on goods

6    or services in the flow of state commerce.  State commerce refers to transactions in a state or

7    between persons or corporations having their residence or businesses in the state.  In this case,

8    SRAM was sold in the flow of commerce in each of the states.  Therefore, I hereby instruct you

9    that if there was an SRAM price-fixing conspiracy, it did affect state commerce in all of the states.

10

11                                              **Authority**

12   Adapted from: *Hospital Bldg. Co v. Trustees of Rex Hosp.*, 425 U.S. 738, 743, 745 (1976); *Mclain*

13   *v. Real Estate Bd. of New Orleans Inc.*, 444 U.S. 232, 242-43, 241 (1980); *Brader v. Allegheny*

14   *Gen. Hosp.*, 64 F.3d 869, 873 (3d Cir. 1995); Jury Instruction of Chief Judge Thomas F. Hogan in

15   *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on

16   June 11, 2003, Instruction No. 28) *available as* Ex. C to Plaintiffs' Appendix; Kevin O'Malley, Jay

17   E. Grenig & William C. Lee, Federal Jury Practice and Instructions § 150.62 (5th ed. 2001).

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

1

**IPPs' Argument For**

2      IP Plaintiffs believe that there is no genuine dispute of any material fact regarding this

3   element.  The SRAM manufactured and sold by Cypress entered into the stream of commerce in

4   each of the twenty states for which IP Plaintiffs have alleged state antitrust claims.  IP Plaintiffs

5   also incorporate by reference arguments, if any, submitted in support of Direct Purchaser

6   Plaintiffs' Proposed Jury Instruction No. 103 above, after which this instruction modeled.

7

8

**Cypress' Argument Against**

9      The second sentence is misleading in that it suggests the existence of an agreement.  The

10  last sentence is objectionable because plaintiffs must prove that any conspiracy by defendants had

11  an effect on indirect purchasers.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**No. 130 – [IPPs' PROPOSAL NO. ___]  GENERAL INSTRUCTION – PHASING OF TRIAL**

*[DISPUTED]*

I will now instruct you regarding Phase II of this case.  As you know, Phase I of this trial has already been completed.  In Phase I, the Indirect Purchaser Plaintiffs proved, by a preponderance of the evidence, that a conspiracy existed between Cypress and at least one other alleged co-conspirator, that the conspiracy was an unreasonable restraint of trade, and that the conspiracy affected commerce in each of the states.  It has therefore been established that there was a conspiracy to fix prices of SRAM, and that Defendant Cypress knowingly became a member of that conspiracy.

During this phase of the trial, Phase II, your charge is to decide whether the Indirect Purchaser Plaintiffs have proved, by a preponderance of the evidence, the final elements of their horizontal price-fixing conspiracy claim.  In essence, you will be determining whether the class members were injured as a result of the price-fixing conspiracy and, if you find they were injured, the amount of  damages to which class members residing in each of the states at issue are entitled. I will now describe these final elements of a violation of the state antitrust laws at issue.

**Authority**

*See* Joint Pretrial Statement, Section V.c., Trial Alternatives and Options – Bifurcation.

-324-

1

**IPPs' Argument For**

2      IP Plaintiffs' Proposed Jury Instruction No. 130 should be used in the event that the Court

3   orders bifurcated trials on the conspiracy and injury/damages issues because the instruction clearly

4   explains the bifurcation of the trials into two distinct phases.  The instruction first describes, in

5   simple and unembellished terms, Phase I – namely, the elements which an earlier jury was

6   required to—and presumably did—find regarding the existence of the alleged price-fixing

7   conspiracy.   Next, the instruction lays out the purpose of Phase II and the elements the jury will

8   consider in determining whether IP Plaintiffs were injured and their entitlement to damages, if

9   any.  IP Plaintiffs' Proposed Instructions No. 130 should be used because it clearly and simply

10  instructs the jury on the distinct phases in a bifurcated trial on the issues of conspiracy and

11  injury/damages—an instruction that is necessary to dispel any confusion on the jury's part as to the

12  contemplated structure of trial.

13

14

**Cypress' Argument Against**

15     This instruction is appropriate only if the trial is bifurcated and plaintiffs prevail in Phase I.

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **No. 131 – [IPPs' PROPOSAL NO. ___] INJURY/IMPACT, DAMAGES** *[DISPUTED]*

2

3      Anyone who is injured in his or her business or property by reason of an antitrust violation,

4  such as a violation of Section 1 of the Sherman Act, may recover damages caused by the violation.

5      Plaintiffs must establish that they have suffered an injury to their "business or property."

6  You are instructed and must find that plaintiffs have been injured in their "business or property" if

7  you find that plaintiffs paid more for SRAM or products containing SRAM than they would have

8  paid if there had been no antitrust violation.

9      In order to prove the fact of injury or an overcharge, plaintiffs must prove by a

10  preponderance of the evidence that Defendants' price-fixing conspiracy played a material part in

11  bringing about or causing prices to be higher than they otherwise would have been without the

12  conspiracy, and that this overcharge was either a direct result of, or a reasonably probable

13  consequence of, the conspiracy.

14      "Causing prices to be higher" includes not only raising prices to a level higher than prices

15  would have been absent the conspiracy, but also includes preventing prices from dropping as low

16  as they otherwise would have been if there had been no conspiracy.

17      Plaintiffs do not have to prove that the conspiracy was the only cause or the most

18  important cause of the higher prices; plaintiffs need only prove that it was a material contributing

19  cause.  Nor do plaintiffs need to prove the exact amount of the injury or overcharge.  If you find

20  there was an overcharge caused by a conspiracy, then you will separately consider the proper

21  measure of that overcharge.

22

23                                **Authority**

24  Adapted from: *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 356 (3d Cir. 2004); *In re*

25  *Linerboard Antitrust Litig.*, 305 F.3d 145, 151-52 (3d Cir. 2002); *Rossi v. Standard Roofing, Inc.*,

26  156 F.3d 452, 483-84 (3d Cir. 1998); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 454-55 (3d Cir.

27  1977); *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 114 n. 9 (1969); *United States v.*

28  *Container Corp. of Am.*, 393 U.S. 333, 337 (1969); *Chattanooga Foundry & Pipe Works v. City of*

-326-

1  *Atlanta*, 203 U.S. 390, 396 (1906); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339-40 (1979);

2  *Perkins v. Standard Oil Co.*, 395 U.S. 642, 648 (1969); *Nat'l Farmers' Org. v. Associated Milk*

3  *Producers Inc.*, 850 F.2d 1286, 1293 (8th Cir. 1988); *Greenhaw v. Lubbock County Beverage*

4  *Ass'n*, 721 F.2d 1019, 1027 (5th Cir. 1983); Jury Instructions of Chief Judge Thomas F. Hogan in

5  *In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, Misc. No. 99-197 (D.D.C.) (as given on

6  June 11, 2003, Instruction No. 39-40) *available as* Ex. C to Plaintiffs' Appendix; Jury Instructions

7  of Judge John V. Singleton in *In re Corrugated Container Antitrust Litig.*, MDL No. 310 (S.D.

8  Tex.) (as given on Sept. 11, 1980, Tr. Vol.100 at 88-89) *available as* Ex. B to Plaintiffs'

9  Appendix; Kevin O'Malley, Jay E. Grenig & William C. Lee, Federal Jury Practice and

10  Instructions §§ 150.90, 150.92 (5th ed. 2001).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IPPs' Argument For**

IP Plaintiffs' Proposed Instruction No. 131 should be used instead of Cypress' proposed instructions on injury, causation, and damages (namely, Proposed Instructions No. 132, 133 and 134) because it simply and succinctly outlines the proof required to show injury, impact and damages; it also clearly and concisely states the elements of injury without giving certain elements undue prominence.  IP Plaintiffs' Proposed Instruction No. 131 is also modeled after the Direct Purchaser Plaintiffs' Proposed Instruction No. 105, and IP Plaintiffs incorporate by reference the Direct Purchasers' arguments, if any, submitted in support of that instruction.

**Cypress' Argument Against**

This instruction is objectionable for the same reason as the direct purchaser instruction on damages.

-328-

1  **No. 132 – [CYPRESS' PROPOSAL NO. ___] INDIRECT PURCHASERS: INJURY AND**
2  **CAUSATION** *[DISPUTED]*

3

4      If you find that Cypress has violated the antitrust statutes of Arizona, California, the
5  District of Columbia, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Montana, Nevada,
6  New Mexico, New York, North Carolina, North Dakota, Puerto Rico, South Dakota, Tennessee,
7  Utah, West Virginia, and Wisconsin, as alleged by the indirect purchaser plaintiffs, then you must
8  decide if the plaintiffs are entitled to recover damages.  The same basic instructions on injury and
9  causation that I gave you when I instructed you on the direct purchasers' claims under the Sherman
10  Act apply also to the indirect purchasers' claims.  I will now provide the basic portions of this
11  instruction again.  Keep in mind that, in order to prove this elements of their claim, the indirect
12  purchasers must prove by a preponderance of the evidence that Cypress' alleged violation of state
13  law caused injury to purchasers of seven finished products containing SRAM.  It is not enough for
14  the indirect purchasers to prove an injury to those who purchased SRAM from Cypress; rather,
15  they must prove that some portion of an overcharge that resulted from Cypress' conduct was
16  passed through the chain of distribution and reflected in the prices of the seven finished products
17  sold to the members of the indirect purchaser classes.

18      The indirect purchaser plaintiffs are entitled to recover damages for an injury to their
19  business or property if they each can establish two elements of injury and causation:

20      First, that each member of the plaintiff class in the relevant states was in fact injured as a
21  result of the defendant's alleged violation of the antitrust laws; and

22      Second, that the defendant's alleged illegal conduct was a material and substantial cause of
23  the plaintiffs' injury.

24      The first element is sometimes referred to as "injury in fact" or "fact of damage."  For the
25  indirect purchaser plaintiffs to establish that they are entitled to recover damages, they must prove
26  that each class member was injured as a result of Cypress' alleged violation of the antitrust laws.
27  Proving the fact of damage does not require the plaintiffs to prove the dollar value of their injury.

28

1   It requires only that the plaintiffs prove, by a preponderance of the evidence, that the class

2   members were in fact injured by Cypress' alleged antitrust violation.

3       The indirect purchasers have submitted evidence common to the class, specifically the

4   expert opinions of Dr. Mark Dwyer, in an effort to prove injury.  If you find that this evidence

5   does not enable you to determine whether each class member was in fact injured, you must find in

6   favor of Cypress on the element of injury.  But if you find that the evidence does enable you to

7   determine that each class member was in fact injured, then you may consider the amount of class

8   members' damages.  It is important to understand that injury and amount of damage are different

9   concepts and that you cannot consider the amount of damage unless and until you have concluded

10  that the class members have established, through the evidence they have presented, that they were

11  in fact injured.

12      The indirect purchaser plaintiffs must also offer evidence that establishes as a matter of

13  fact, and with a fair degree of certainty, that Cypress' alleged illegal conduct was a material and

14  substantial cause of the plaintiffs' injury.  This means that the plaintiffs must have proved that

15  some damage occurred to them as a result of Cypress' alleged antitrust violation, and not some

16  other cause, such as an increase in prices due to normal economic factors.  The plaintiffs are not

17  required to prove that Cypress' alleged antitrust violation was the sole cause of their injury; nor

18  need they eliminate all other possible causes of injury.  It is enough if the plaintiffs have proved

19  that the alleged antitrust or consumer protection act violation was a "material or substantial cause"

20  of their injury.  However, if you find that the plaintiffs' injury was caused primarily by something

21  other than the alleged antitrust violation, then you must find that the plaintiffs have failed to prove

22  that they are entitled to recover damages from Cypress.

23

24                              **Authority**

25  Because each of the state antitrust statutes at issue contains a requirement of showing an injury

26  caused by the violation, this instruction is appropriately based on ABA Model Instructions, at F-2,

27  as modified to remove the element of antitrust injury and to apply to the indirect purchaser claims.

28

[proposed] JURY INSTRUCTIONS

1                                         **Cypress' Argument For**

2         *See* Authority cited above.

3

4                                          **IPPs' Argument Against**

5         Cypress' Proposed Jury Instruction No. 132 is inaccurate, redundant, contradictory to its

6 other instructions, prejudicial and likely to confuse and mislead a jury.   IP Plaintiffs' Proposed

7 Instruction No. 131 should be used because it clearly and concisely outlines the burden of proof

8 and requisite elements of injury and impact without inserting unnecessary commentary.

9 Accordingly, IP Plaintiffs object to this proposed instruction for the foregoing four reasons:

10         First, Instruction No. 132 lists Montana among the states under whose laws IP Plaintiffs

11 allege antitrust violations when Plaintiffs only allege Defendant's violation of Montana's *consumer*

12 *protection* statute.  Fifth Amended Complaint ¶¶257, 268-70 (Dkt. No. 1067).  *See also* IP

13 Plaintiffs' arguments and authority against Proposed Jury Instruction No. 124.  Thus, Montana is

14 incorrectly listed as one of the state antitrust laws at issue.

15         Second, liability for antitrust violations is joint and several.  *See In re Ditropan Xl Antitrust*

16 *Litig.*, 2007-2 Trade Cas. at *15 n.4 (N.D. Cal. Oct. 11, 2007) (citing *William Inglis & Sons*

17 *Baking Co. v. ITT Continental Baking Co.*, 668 F.2d. 1014 (9th Cir. 1981)).  *See also* Direct and

18 IP Plaintiffs' joint Proposed Instruction No. 121 (regarding joint and several liability) above.

19 Cypress' instruction purports to require that causation and injury may only be found where injury

20 flowing from Cypress' *exclusive* offensive conduct has been proven.  This is wrong.  Antitrust

21 violations and subsequent harm found to be caused by *any* of the alleged co-conspirators can

22 satisfactorily demonstrate causation and injury.  *See id.*  And while Cypress contends that

23 Proposed Instruction No. 132 is perfectly comparable to Proposed Instruction No. 106 (injury and

24 causation instructions relating to direct purchasers), there is a disjoint between the two sets.  In the

25 latter, Cypress states that Plaintiffs' burden is met by showing injury arising from Cypress' conduct

26 *or that of any co-conspirator*, but here, Cypress makes no mention of the alleged co-conspirators.

27 Cypress' Proposed Instruction No. 132 inexplicably states that the Sherman Act standard is the

28 same for both sets of plaintiffs, and then proceeds to modify the legal requirements applicable to

-331-

1  the IP Plaintiffs. Cypress' instruction wholly neglects the issue of joint and several antitrust

2  liability and impermissibly heightens IP Plaintiffs' requirements of proof.  In contrast, IP Plaintiffs'

3  Proposed Instruction No. 132 plainly and accurately characterizes the law, is properly aligned with

4  Direct Purchasers' instruction, and should instead be used.

5          Third, Proposed Instruction No. 132's reference to the role of expert testimony in proving

6  injury is misleading and will likely confuse the jury.  Cypress unfairly weighs the expert's role and

7  implies that where expert testimony does not enable the jury to determine Plaintiffs' injury, the

8  jury must find in Cypress' favor.  This reference to the expert's function misstates the law as jurors

9  must weigh *all* of the facts when making their determinations.  Cypress' guilt does not hinge on

10  whether or not the jury is convinced by expert testimony alone.  Further, this section is redundant

11  in light of IP Plaintiffs' Proposed Instruction No. 135, which best explains the role of expert

12  testimony.  Thus, any reference to the expert's function need not be introduced here.

13          Fourth, Cypress is mistaken in its contention that Plaintiffs must prove that *each* class

14  member class member or *all* class members were injured by the conspiracy; there is no such

15  requirement under the law.  *See In re Static Random Access Memory (SRAM) Antitrust Litigation*,

16  No. C 07-01819, 2008 U.S. Dist. LEXIS 107523 at *43 (N.D. Cal. Sept. 29, 2008) (stating that

17  plaintiff must show that "all (*or nearly all*)" members of the class suffered damage as a result of

18  defendants' alleged anticompetitive conduct) (emphasis added).  *See also Rosack v. Volvo of Am.*

19  *Corp.*, 131 Cal. App. 3d 741, 754 (1982) ("The courts have rejected the notion that each member

20  of the purported class must prove that he or she absorbed at least some portion of the overcharges

21  in order to establish liability") (*citing Presidio Golf Club v. National Linen Supply Corp.* 1976

22  U.S. Dist. LEXIS 11577 at *11–12 (N.D. Cal. Dec. 30, 1976)); Cal. Bus. & Prof. Code § 16760

23  (where a defendant has agreed to fix prices, damages may be proved in the aggregate "without the

24  necessity of separately proving the individual claim of, or amount of damages to, persons on

25  whose behalf the suit was brought".)  *See also Massachusetts Mutual Life Ins. Co. v. Superior*

26  *Court*, 97 Cal. App. 4th 1282, 1292 (2002) ("common questions predominate even if defendants

27  can defeat the showing of causation as to a few individual class members").  Thus, an

28  individualized showing of injury – or proof that *all* class members were harmed by defendants'

-332-

1   illegalities - is not required to prove class-wide impact.  *See Mass Mutual*, 97 Cal. App. 4th at

2   1292 (citing *Blackie v. Barrack*, 524 F.2d 891, 906 fn. 22 (9th Cir. 1975) ("The fact that a

3   defendant may be able to defeat the showing of causation as to a few individual class members

4   does not transform the common question into a multitude of individual ones; plaintiffs satisfy their

5   burden of causation as to each by showing materiality to all")).  *See also Kohen v. Pac. Inv. Mgmt.*

6   *co. LLC & PIMCO Funds*, 571 F.3d 672, 677 (7th Cir. 2009) ( "a class will often include persons

7   who have not been injured by defendant's conduct; indeed this is almost inevitable").  Unless "it is

8   clear that no plaintiff was injured, the fact that defendant may be able to defeat a showing of

9   causation as to a few individual class members [will] not defeat the inference of antitrust injury."

10  *Law v. NCAA*, 5 F. Supp. 2d 921, 928 (D. Kan. 1999).

11          With regard to whether IP Plaintiffs must prove that each class member or all class

12  members were injured, IP Plaintiffs further incorporate by reference Direct Purchaser Plaintiffs'

13  argument against Defendants' Proposed Jury Instruction Nos. 106 and 107 to the extent that issue

14  is addressed therein.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-333-

1  **No. 133 – [CYPRESS' PROPOSAL NO. ___] INDIRECT PURCHASERS: DAMAGES**

2  *[DISPUTED]*

3

4  I am now going to instruct you on the issue of damages regarding the indirect purchasers.

5  These instructions are largely the same as they were for the claims of the direct purchasers, and I

6  will summarize them now.

7  As I said earlier, the fact that I am giving you instructions concerning the issue of damages

8  does not mean that I believe the indirect purchasers should, or should not, prevail in this case.  If,

9  for any reason, you reach a verdict for Cypress on the issue of whether there was a conspiracy to

10  fix SRAM prices, or whether the plaintiffs were injured by the alleged conspiracy, you should not

11  consider the issue of damages, and you may disregard the damages instructions that I am about to

12  give.  You should only consider calculating damages if you first find that Cypress engaged in a

13  price-fixing conspiracy and that this alleged conspiracy caused injury to the class members.

14  If you find that the defendants engaged in a price-fixing conspiracy and that this caused

15  injury to the class members, then you must determine the amount of damages, if any, the plaintiffs

16  are entitled to recover.  The law provides that the plaintiffs should be fairly compensated for all

17  damages to their business or property that were a direct result or likely consequence of the conduct

18  you have found to be unlawful.

19  The purpose of awarding damages under the state laws, just as under the Sherman Act, is

20  to put an injured plaintiff as near as possible in the position in which it would have been if the

21  alleged antitrust violation had not occurred.  The law does not permit you to award damages to

22  punish a wrongdoer, to deter defendants from particular conduct in the future, or to provide a

23  windfall.  You are also not permitted to award to the plaintiffs an amount for attorneys fees or the

24  costs of maintaining this lawsuit.  Antitrust damages are designed only to compensate a plaintiff

25  for the particular injuries it suffered as a result of the alleged violation of the law.

26  Damages may not be based on guesswork or speculation.  If you find that a damages

27  calculation cannot be based on evidence and reasonable inferences, and instead can only be

28  reached through guesswork or speculation, then you may not award damages.  If the amount of

-334-

1  damages attributable to an antitrust violation cannot be separated from the amount of harm caused

2  by factors other than the antitrust violation except through guesswork or speculation, then you

3  may not award damages.

4      You are permitted to make reasonable estimates in calculating damages.  It may be

5  difficult for you to determine the precise amount of damage suffered by the class members.  If you

6  have found that the plaintiffs established with reasonable probability the existence of an injury

7  proximately caused by the defendants' antitrust violation, you are permitted to make a just and

8  reasonable estimate of the damages.  The amount of damages must, however, be based on

9  reasonable, non-speculative assumptions and estimates.

10     The plaintiffs claim that they suffered injury because they paid increased prices for

11 finished products containing SRAM as a result of Cypress' alleged antitrust violation.  The

12 plaintiffs are not entitled to recover for injuries that resulted from other causes, such as prices that

13 rose because of an increase in demand for products containing SRAM during the period 1998

14 through 2001, or PSRAM during the period 2003 through 2005.  In the normal course of business

15 activity, prices might rise for a variety of reasons that have nothing to do with price-fixing.  The

16 plaintiffs bear the burden of proving that their injuries were caused by the alleged price-fixing

17 conspiracy, and not any other factors.

18

19                    **Authority**

20 Because each of the state antitrust statutes at issue contains a requirement of showing damages,

21 this instruction is appropriately based on ABA Model Instructions, at F-11, F-12, F-15, and F-18,

22 as condensed and modified to apply to the indirect purchaser claims.

23

24

25

26

27

28

1                           **Cypress' Argument For**

2      *See* Authority cited above.

3

4                           **IPPs' Argument Against**

5      Cypress' Proposed Instruction No. 133 is redundant and likely to mislead a jury.  The Court

6 should adopt IP Plaintiffs' damages instructions as they plainly and concisely outline the

7 applicable burden of proof as well as the factors a jury may consider in determining the award and

8 amount of damages.  IP Plaintiffs object to Proposed Instruction No. 133 for the foregoing three

9 reasons:

10      First, the Instruction's second, third, and fourths paragraph are redundant of each other or

11 of other, earlier instructions proposed by the parties.  Cypress's references to the circumstances

12 under which IP Plaintiffs would be entitled to recovery in both paragraphs two and three is

13 duplicative and unnecessary.  In addition, Cypress's instruction in the fourth paragraph to the

14 effect that speculation is not permitted when determining damages simply repeats earlier proposed

15 instructions containing the same statement.

16      Second, Cypress's enumeration of non-recoverable elements of damages and inappropriate

17 functions of damages awards is unnecessary.   Cypress instructs that the law does not permit

18 issuance of a damages award that is, *inter alia*, punitive, meant to deter future wrongdoing, or

19 which provides a windfall.  Where the terms are simple and where the jury has already been told

20 the factors they may consider, there is no purpose in telling them what they may not consider.

21 Cypress's instruction contributes no useful information and is unnecessary.

22      Third, the Instruction's statement that SRAM prices rose because of growing demand is

23 improperly suggestive and reflects Cypress's interpretation of the facts of the case, rather than

24 proper instruction for the jury.   Cypress' rationalization of price increases for SRAM is likely to

25 mislead and potentially prejudice jurors, and is inappropriate to include here.

26

27

28

                         [proposed] JURY INSTRUCTIONS

**No. 134 – [CYPRESS' PROPOSAL NO. ___] INDIRECT PURCHASERS: DAMAGES: OVERCHARGE AND PASS-THROUGH *[DISPUTED]***

The indirect purchaser plaintiffs claim that they were harmed because they paid higher prices for finished products containing SRAM than they would have paid in the absence of the alleged price-fixing conspiracy.  If you have determined that there was a conspiracy among SRAM manufacturers to fix SRAM prices that caused some injury to the indirect purchasers, you must now consider the extent of the class members' damages.  A proper method of calculating those damages is to award the plaintiffs the difference between the prices they actually paid for products containing SRAM and the prices they would have paid in the absence of a conspiracy to fix prices.

The indirect purchasers plaintiffs have proposed to show the prices that would have prevailed to direct purchasers in the absence of a conspiracy during a subperiod of the time when the alleged conspiracy was in effect for SRAM, namely, January 1998 through December 2001, and for PSRAM, namely, January 2003 through December 2005.  These are referred to as the damages periods.  They have further proposed to show that alleged overcharges to direct purchasers were passed through the chain of distribution and reflected as overcharges in the prices of finished products containing SRAM during the damages periods.  The plaintiffs have offered evidence of a regression analysis that they claim considers prices before and after the damages periods, as well as the economic factors that would influence prices during all periods, such as costs and demand for products containing SRAM and PSRAM.  The plaintiffs claim that, using this analysis, they can predict what the prices of SRAM would have been to the direct purchasers during the damages periods, and they further claim that there is a difference between what prices would have been and what they actually were.  The indirect purchasers claim that, through use of a second regression analysis, they can establish the rate at which alleged overcharges to direct purchasers were passed through to class members.  Finally, the indirect purchasers have proposed a method of applying the alleged passed-through overcharges to the value of finished products

1   containing SRAM or PSRAM purchased by class members in the 21 states to arrive at damages

2   figures.

3        If you find that the plaintiffs' evidence provides a reliable basis for estimating what prices

4   would have been during the damages periods in the absence of the antitrust violation, a reliable

5   basis for estimating the rate at which alleged overcharges were passed through the chain of

6   distribution, and a reliable basis for estimating the value of finished products containing SRAM

7   and PSRAM purchased by class members in the 21 states, then you may find that the indirect

8   purchasers have proven damages.  You must make this determination without and speculation and

9   guesswork.  If you find that the regression analyses are not reliable or are not based on accurate

10  data about prices, costs, demand, and other economic factors, then you may not award damages to

11  the plaintiffs.

12

13                          **Authority**

14  Based on ABA Model Instructions, at F-18, as condensed and modified to apply to the damages

15  theory propounded by the indirect purchasers.

16

17

18

19

20

21

22

23

24

25

26

27

28

-338-

1

**Cypress' Argument For**

2 *See* Authority cited above.

3

4

**IPPs' Argument Against**

5 Cypress Proposed Instruction No. 134 is inaccurate, confusing, and highly likely to

6 mislead a jury.  First, Cypress's characterization of IP Plaintiffs' experts' methodologies for

7 calculating the existence and amount of an overcharge—and of the experts' conclusions with

8 regard to pass-through of the overcharge through the chain of distribution and the resulting

9 amount of damages incurred by indirect-purchaser class members—is inaccurate and incomplete,

10 and thus likely to create unnecessary confusion and mislead the jury.  Cypress appears to omit the

11 pass-through analyses of IP Plaintiffs' expert, Dr. Michael J. Harris, entirely—even though Dr.

12 Harris' extensive analyses of end-use products, upstream and downstream markets, and

13 distribution channels for SRAM support both Drs. Harris and Dwyer's findings and conclusions

14 with respect to determining the existence of an overcharge, pass-through of the overcharge, and

15 quantification of IP Plaintiffs' damages.

16 Proposed Instruction No. 134 also mischaracterizes IP Plaintiffs' experts' calculation of

17 damages to indirect-purchaser class members as merely "establish[ing] the rate at which alleged

18 overcharges to direct purchasers were passed through to class members," and then "applying the

19 alleged pass-through overcharges to the value of finished products containing SRAM or PSRAM

20 purchased by class members in the 23 states to arrive at damages figures."  The instruction omits

21 the important fact that Dr. Dwyer weighed the price elasticity of end-use products (as derived from

22 the demand model) against the observed manufacturer market structure (as derived from the

23 supply model) to determine the extent to which changes in unit costs were passed through for a

24 given product, in a given location, sold at a given price.  Cypress's description is also incomplete

25 and misleading as it fails to note, as the Court previously observed, that "the structural model

26 derives a pass-through rate from many economic variables, such as the price elasticity of end-use

27 products, the structure of competition among product suppliers and the degree to which cost

28 changes are common across end-use products."  *SRAM*, 264 F.R.D. at 614.

-339-

1    Finally, Proposed Instruction No. 134 also repeatedly refers to the "21 [antitrust] states" at

2 issue.  As explained in IP Plaintiffs' argument and authority against Cypress's Proposed Jury

3 Instruction No. 124, *see supra*, Cypress' presumed inclusion of Montana among IP Plaintiffs'

4 asserted state antitrust claims is incorrect; the correct number of state antitrust claims at issue is

5 twenty.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:1ESC1\403121977.4
MDL No. 1819

[proposed] JURY INSTRUCTIONS

1   **No. 135 – [IPPs' PROPOSAL NO. \_\_]  DAMAGES – EXPERT TESTIMONY ON IMPACT**

2       **AND DAMAGES** *[DISPUTED]*

3

4       I previously instructed you generally on the nature of expert testimony.  In this case, expert

5   testimony has been offered to assist you in estimating whether the plaintiffs were overcharged and

6   the amount of damages.  Plaintiffs' experts have used an accepted economic method known as a

7   multiple regression analysis to determine whether there was an overcharge, the amount of the

8   overcharge, whether the overcharge was passed-through the chain of distribution to indirect

9   purchaser plaintiffs, and the amount of the overcharge that was passed-through to the indirect

10  purchaser plaintiffs.  This methodology takes into account relevant economic evidence, including

11  supply and demand factors.

12      According to Plaintiffs' experts, prices of certain SRAM during the Class Period were

13  higher than can be explained by relevant economic evidence, including supply and demand

14  factors.  Plaintiffs' experts have opined that this finding is consistent with the existence of a

15  SRAM price-fixing conspiracy during that period.  They have also opined that higher SRAM

16  prices were passed-through to the indirect purchaser plaintiffs.  Multiple regression analysis is the

17  type of evidence that is accepted, along with other evidence, to determine the damages caused by a

18  conspiracy to fix, raise, maintain or stabilize prices, and to determine the amount of the overcharge

19  that was passed-through to the indirect purchaser plaintiffs.

20      If you find plaintiffs' experts' testimony credible, you may rely on it, as it is the type of

21  evidence that is acceptable for purposes of establishing whether plaintiffs were overcharged, the

22  measure of any overcharge and the dollar amount of damages, if any, to the Indirect Purchaser

23  Plaintiffs.

24

25                      **Authority**

26  Adapted from: *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 486 (W.D. Pa. 1999).  *See In re*

27  *Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 616 (N.D. Cal. 2009).

28  *See also Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., Inc.*, 998 F.2d 1224, 1238 (3d Cir.

-341-

1   1993); *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 793 (6th Cir. 2002); *City of*

2   *Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 566 (11th Cir. 1998); *In re Indus. Silicon*

3   *Antitrust Litig.*, 1998 WL 1031507, at *3 (W.D. Pa. Oct. 13, 1998); *In re Polypropylene Carpet*

4   *Antitrust Litig.*, 996 F. Supp. 18, 26 (N.D. Ga. 1997); *In re Bulk (Extruded) Graphite Prods.*

5   *Antitrust Litig*, No. Civ. 02-6030, 2006 WL 891362, at *15 (D.N.J. Apr. 4, 2006).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[proposed] JURY INSTRUCTIONS

1

**IPPs' Argument For**

2       Proposed Jury Instruction No. 135 should be used instead of Proposed Instruction No. 136

3 because it provides a more accurate characterization of the law, is less confusing, and provides the

4 necessary information a jury will need in making its impact and damages conclusion.  Unlike

5 Instruction No. 136, IP Plaintiffs' proposed instruction clearly articulates the proper standard for

6 judging all expert testimony and instructs the jury on the propriety of using multiple-regression

7 analysis to determine antitrust damages.  *See* IP Plaintiffs' Arguments and Authority Against

8 Proposed Jury Instruction No. 136 – Cypress' Proposal No. __ (Indirect Purchasers: Damages:

9 Expert Testimony).

10

11

**Cypress' Argument Against**

12       This instruction is objectionable for the same reason as the direct purchaser instruction on

13 expert testimony on impact and damages.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:1ESC1\403121977.4
MDL No. 1819

[proposed] JURY INSTRUCTIONS

**No. 136** ~~–~~ **[CYPRESS' PROPOSAL NO. ___] INDIRECT PURCHASERS: DAMAGES: EXPERT TESTIMONY** *[DISPUTED]*

You have heard testimony from the indirect purchaser plaintiffs' expert, Dr. Mark Dwyer, regarding the amount of damages to which the indirect purchasers claim they are entitled.  If you find that any of the pertinent underlying assumptions made by Dr. Dwyer in conducting a damages analysis are not reasonable or are not proven by a preponderance of the evidence, then you should consider this in determining the weight, if any, you will give to the assumptions and the effect they have on the indirect purchasers' damages claim.

**Authority**

ABA Model Instruction, at F-46.

1                              **Cypress' Argument For**

2          *See* Authority cited above.

3

4                              **IPPs' Argument Against**

5          IP Plaintiffs object to this proposed instruction for four reasons.  First, Cypress' proposed

6   instruction refers to only the IP Plaintiffs' expert—Dr. Mark Dwyer—by name, and fails to include

7   the names of other testifying experts.  This is misleading because it implies a heightened standard

8   for IP Plaintiffs' expert, when in fact all expert testimony is held to the same standard.  *See* Fed. R.

9   Evid. 720; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  If used, this

10  instruction should omit references to the IP experts by name or otherwise.

11         Second, Cypress' proposed instruction improperly implies that "any of the pertinent

12  underlying assumptions" made by an expert must be "reasonable" and "proven by a preponderance

13  of evidence."  However, it is the *elements* of a claim that must be proven by a preponderance of

14  evidence, whereas expert testimony is judged in the same manner as all other testimony.  Ninth

15  Cir. Manual of Model Jury Instructions Civil 2.11 (2007) (on expert opinion instruction: "Opinion

16  testimony should be judged like any other testimony.  You may accept it or reject it, and give it as

17  much weight as you think it deserves considering the witness's education and experience, the

18  reasons for the opinion, and all the other evidence in the case.")  IP Plaintiffs' instruction on this

19  same topic (*see* Proposed Instruction No. 135) – which permits the jury to "rely" on expert

20  testimony if the jury finds such testimony "credible" – properly captures the standard for assessing

21  expert opinion testimony.

22         Third, Cypress' proposal fails to instruct the jury on the propriety of the statistical

23  methodology that will be used in this case—multiple-regression analysis.  However, it is well-

24  established that multiple-regression analysis is an accepted method for determining damages in

25  antitrust actions.  *See, e.g., Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.,* 998

26  F.2d 1224, 1238 (3d Cir. 1993); *Conwood Co., L.P. v. United States Tobacco Co.,* 290 F.3d 768,

27  793 (6th Cir. 2002); *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 565-66 (11th Cir.

28

[proposed] JURY INSTRUCTIONS

1   1998); *Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 486 (W.D. Pa. 1999).  An instruction

2   explaining multiple-regression analysis and its propriety is therefore proper.

3         Fourth and finally, Cypress' proposal only instructs as to expert testimony regarding

4   amount of damages, thereby omitting instruction regarding whether IP Plaintiffs were

5   overcharged.  *See, e.g., Flat Glass Antitrust Litig.*, 191 F.R.D. at 485–87 (finding that multiple-

6   regression analysis is a viable method for proving impact or fact of damage).  IP Plaintiffs'

7   instruction, which covers "whether the plaintiffs were overcharged and the amount of damages," is

8   a more complete instruction.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-346-

1   **No. 137 – DUTY TO DELIBERATE**

2

3       When you begin your deliberations, you should elect one member of the jury as your

4   presiding juror.  That person will preside over the deliberations and speak for you here in court.

5       You will then discuss the case with your fellow jurors to reach agreement if you can do so.

6   Your verdict must be unanimous.

7       Each of you must decide the case for yourself, but you should do so only after you have

8   considered all of the evidence, discussed it fully with the other jurors, and listened to the views of

9   your fellow jurors.

10      Do not hesitate to change your opinion if the discussion persuades you that you should.

11  Do not come to a decision simply because other jurors think it is right.

12      It is important that you attempt to reach a unanimous verdict but, of course, only if each of

13  you can do so after having made your own conscientious decision.  Do not change an honest belief

14  about the weight and effect of the evidence simply to reach a verdict.

15

16                               **Authority**

17  Ninth Circuit Model Civil Jury Instruction 3.1.

18

19

20

21

22

23

24

25

26

27

28

-347-

**No. 138 – COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

**Authority**

Ninth Circuit Model Civil Jury Instruction 3.2.

1   **No. 139 – [DPPs and IPPs' PROPOSAL NO. ___]  SPECIAL VERDICT FORMS**

2   *[DISPUTED]*

3

4       A form of special verdict has been prepared for your convenience. The lawyers referred to

5   it in their closing arguments. I will review this form with you now, and afterwards you will take it

6   with you to the jury room.

7       **["Phase 1" Special Verdict Form read]**

8       You will note that all but one of the questions call for "Yes" or "No" answers. The

9   answer to every question, whether or not it calls or a "Yes" or "No" answer, must be the

10  unanimous answer of the jury. Your foreperson will write the unanimous answer of the

11  jury in the space provided after each question, and will date and sign the form of special

12  verdict when completed.

13      If your answer to question (1) is "No" as to all defendants it will not be necessary to

14  consider or answer any other question. If you answer to questions (1) is "Yes" as to one or

15  more of the defendants go on to the other questions. If your answer to question (3) is "Yes"

16  you need not answer question (4).

17      **["Phase 2" Special Verdict Form read]**

18      The answer to every question, whether or not it calls or a "Yes" or "No" answer,

19  must be the unanimous answer of the jury. Your foreperson will write the unanimous

20  answer of the jury in the space provided after each question, and will date and sign the

21  form of special verdict when completed.

22      If your answer to question (1) is "No" it will not be necessary to consider or answer

23  any other question.  If you answer "Yes" to question (1), you next must consider question

24  (2), which asks you to determine the dollar amount of damages.

25  Once you have reached your unanimous verdict you will then advise the Court, through my

26  staff, that you are ready to return to the courtroom and deliver the completed form.

27

28

Nothing said in these instructions and nothing in the special verdict form is meant to suggest or convey in any way or manner any suggestion or hint as to what verdict I think you should find. You alone have the duty and responsibility for deciding what the verdict shall be.

**Authority**

Adapted from: KEVIN O'MALLEY, JAY E. GRENIG & WILLIAM C. LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS §§ 106.06, 106.07 (5th ed. 2000). 9TH CIR. MANUAL MODEL CIV. JURY INSTRUCTIONS 3.3 (2007).

NOTE:  THIS IS A MODIFICATION/REPLACEMENT TO STANDARD INSTRUCTION 3.3.

1

**DPPs and IPPs' Argument For**

2          Plaintiffs believe their limited modification to the Model Instruction should be used.

3

4                              **Defendants' Argument Against**

5          The two paragraphs under "["Phase 1" Special Verdict Form read]" and "["Phase 2"

6    Special Verdict Form read]" are unnecessary, leading, and should be included, if at all, in

7    plaintiffs' Special Verdict form.  As stated in Defendants' instruction (below, No. 140), the Court

8    should read the questions contained in the Special Verdict form and the jury should be instructed

9    to follow the form in strict order.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**No. 140** – [DEFENDANTS' PROPOSAL NO. ___] RETURN OF VERDICT AND VERDICT FORM *[DISPUTED]*

In this case, there are a number of issues arising out of plaintiffs' claim.  These issues will be submitted to you in the form of specific questions, which will constitute the form of your verdict.  The answer to each question must be unanimously agreed and signed by all of the jurors. The questions must be answered in sequence.  Do not try to start at the back and work forward, or pick and choose which questions to answer.  Follow the instructions on the form, which may allow you to stop at various points or to skip certain questions, depending upon your answers.

These questions must be completed by you at the conclusion of your deliberations. If you have any question regarding the verdict form during your deliberations, please give the marshal a note, and we will attempt to answer your question as quickly as possible.

A verdict form has been prepared for you.  Now, at this time, I am going to ask the clerk to distribute to you the special verdict form.  I would like you to just go over this very briefly with you.  [Court then reads the Special Verdict form.]

After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the Court that you are ready to return to the courtroom.

**Authority**

Adapted from Ninth Circuit Model Civil Jury Instruction 3.3; O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 103.50 (5th ed. 2000); Jury instructions issued in *In re High Pressure Laminates Antitrust Litig.*, MDL 1368 (S.D.N.Y. May 23, 2006), *available at* http://www.abanet.org/antitrust/at-committees/at-trial/pdf/jury-instructions/DOC_00000027.pdf, 2331:12 - 2335:22.

**Defendants' Argument For**

*See* Authority cited above and Defendants' argument in response to plaintiffs' proposed instruction (No. 139).

**DPPs and IPPs' Argument Against**

Plaintiffs object to this instruction since it unnecessarily elaborates on the Model Instruction.

W02-WEST:1ESC1\403121977.4
MDL No. 1819

[proposed] JURY INSTRUCTIONS

**<u>MISCELLANEOUS</u>**

**No. 141 – [DPPs and IPPs' PROPOSAL NO.     ]  USE OF REQUESTS FOR ADMISSION**

**OF A PARTY** *[DISPUTED]*


Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written requests for admission submitted by the other side.  These answers [have been] [were] given in writing and under oath, before the actual trial, in response to requests that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.


**Authority**

Adapted from: 9TH CIR. MANUAL MODEL CIV. JURY INSTRUCTIONS 2.10 (2007).


NOTE:  THIS IS A PROPOSED COMPANION TO THE STANDARD INSTRUCTION 2.10 (USE OF INTERROGATORIES OF A PARTY)

1

**DPPs and IPPs' Argument For**

2   Plaintiffs' proposed instruction essentially adopts the Model Instruction 2.10.

3   Plaintiffs' proposed instruction is appropriate, supported by their cited authority, and

4 should be adopted.

5

6

**Defendants' Argument Against**

7   At the present time, it is not certain if any Requests for Admission of a party will be

8 offered.

9   Also, the Authority cited by plaintiffs does not support the instruction.  Ninth Circuit

10 Instruction 2.10 concerns the "Use Of Interrogatories Of A Party" and the Notes state:  "Do not

11 use this instruction for requests for admission under Fed. R. Civ. P. 36.   The effect of requests for

12 admission under the rule is not the same as the introduction of evidence through interrogatories."

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:1ESC1\403121977.4
MDL No. 1819

[proposed] JURY INSTRUCTIONS

1  Dated:  December 3, 2010          Respectfully submitted,

2                         **COTCHETT, PITRE & McCARTHY**

3

4                         By_____/s/_____
                                STEVEN N. WILLIAMS

5                         *Attorneys for Direct Purchaser Plaintiffs*

6

7                         **ZELLE HOFMANN VOELBEL**
                         **& MASON LLP**

8                         By_____/s/_____

9                              CHRISTOPHER MICHELETTI

10                     *Attorneys for Indirect Purchaser Plaintiffs*

11                     **SHEPPARD MULLIN RICHTER & HAMPTON**
                     **LLP**

12                       By_____/s/_____

13                           MICHAEL W. SCARBOROUGH

14                     *Attorneys for Samsung Semiconductor, Inc. and*
                     *Samsung Electronics Company, Ltd.*

15

16                     **MAYER BROWN LLP**

17

18                     By _____/s/_____

19                          LEE RUBIN

20                     *Attorneys for Cypress Semiconductor, Inc.*

21

22

23

24

25

26

27

28

1    <u>**ATTESTATION PURSUANT TO GENERAL ORDER 45**</u>

2

3          Pursuant to General Order No. 45 X(B), regarding signatures, I attest under penalty of

4    perjury that the concurrence in the filing of this document has been obtained from its signatories.

5

6    DATED: December 3, 2010                    By: _____/s/_____

7                                                        MICHAEL W. SCARBOROUGH

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-357-