IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION | No. 07-md-01819 CW<br><br>ORDER DENYING PART OF DEFENDANT SAMSUNG'S MOTION FOR SUMMARY JUDGMENT: DIRECT PURCHASER WESTELL'S INDIVIDUAL CLAIMS (Docket No. 1039) |
| _____/ | |

Defendants Samsung Electronics Company, Ltd. (SEC) and Samsung Semiconductor, Inc. (SSI), collectively referred to as Samsung in this order, move for summary judgment or, in the alternative, partial summary judgment on the individual claims of Westell Technologies, Inc., the sole class representative for the Direct Purchaser (DP) Plaintiffs.[1]  Docket No. 1039.  Also included in this motion is Samsung's request for summary adjudication in its favor on DP Plaintiffs' claims to the extent

---

[1] Samsung Electronics America, Inc. (SEA) originally joined SEC and SSI in this motion.  The motion as it relates to DP Plaintiffs' claims against SEA was granted by stipulation, and SEA is no longer a Defendant in this lawsuit.  Docket No. 1131.

they are based on purchases of PSRAM.  That portion of Samsung's motion will be addressed in a separate order.

Some of the issues raised in this motion are also presented by Samsung and Cypress Semiconductor Corporation's joint motions to exclude Plaintiffs' expert evidence and to decertify the DP and IP classes.  The Court's order denying those motions address some of the issues in the present motion.

The Court heard oral argument on this motion on October 14, 2010.  Having reviewed all of the parties' submissions and considered their oral arguments, the Court denies the part of Samsung's motion for summary judgment on Westell's individual claims.

## BACKGROUND

In this antitrust multi-district litigation, Direct and Indirect Purchasers allege that Defendant manufacturers engaged in a price-fixing conspiracy related to a product called Static Random Access Memory (SRAM).  The facts of this case have been described in greater detail in the Court's prior orders.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1289 (9th Cir.

2

1987). The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In this action, DP Plaintiffs must prove that Defendants conspired to fix prices in violation of the antitrust laws, prices were fixed pursuant to that conspiracy, and DP Plaintiffs purchased SRAM at prices that were higher than they would have been absent the conspiracy. In re Citric Acid Antitrust Litig., 1996 WL 655791 at *6 (N.D. Cal.).

## DISCUSSION

Samsung argues that summary judgment should be granted in its favor on Westell's individual claims, due to evidence that Westell purchased SRAM only outside of the damages subperiod. Records indicate that Westell made hundreds of purchases of SRAM beginning in 1999, but began purchasing SRAM directly from Defendant Integrated Silicon Solution, Inc. (ISSI) only beginning in June,

2003.[2]  Declaration of Gary Winters (Winters Dec.), Ex. 6. Samsung asserts that this evidence demonstrates that Westell suffered no injury, cannot prove damages, and thus lacks standing. The Court disagrees.

One of DP Plaintiffs' experts, Dr. Roger G. Noll, analyzed extensive evidence of Defendants' conduct to determine whether their communications would be regarded as collusive by antitrust economists, and evaluated conditions in the SRAM manufacturing industry to assess whether the alleged behavior was likely to cause injury in the form of overcharges.  Dr. Noll concluded that "the exchange of crucial confidential business information among defendants that is revealed in discovery documents is likely to have caused harm to buyers of SRAM by elevating prices." Declaration of Roger G. Noll (Noll Dec., lodged under seal 8/24/10), Ex. A at 4-5.  DP Plaintiffs' second expert, Dr. Armando Levy, calculated damages due to overcharges for SRAM.  Dr. Levy determined that the conspiracy was most effective in the twenty-seven months from October, 1999 to December, 2001.  He calculated damages amounts solely for that subperiod, finding $458 million to $603 million in damages.  Declaration of Armando Levy, Ex. B (Levy Reply Report at ¶ 4).

Samsung cites <u>McGlinchy v. Shell Chemical Co.</u>, 845 F.2d 802, 808-809 (9th Cir. 1988), for the proposition that plaintiffs in

---

[2] ISSI has since reached a settlement agreement with DP Plaintiffs.  Docket No. 1026.

4

all antitrust cases must prove an amount of damages to establish injury and survive summary judgment. The plaintiffs in <u>McGlinchy</u> brought an antitrust action against Shell Chemical and other Shell-related entities after Shell Oil and Shell International Chemical Company terminated their contracts with the plaintiffs. <u>Id.</u> at 804-805.

During the litigation the plaintiffs faltered in producing evidence that they suffered injury, i.e. "lost profits," as a result of the conduct that allegedly violated antitrust law. They presented two expert witnesses, both of whom used unreliable methods to calculate the economic injury, and were unable to draw a causal connection between the defendant's alleged unlawful conduct and the lost profits. The court excluded both expert witnesses. Consequently, the court ruled that the plaintiffs lacked proof of injury and proof of damages, and thus lacked standing. On this basis, the court granted summary judgment in the defendants' favor. <u>Id.</u> at 808-809.

Here, DP Plaintiffs do have proof that Westell was injured. Dr. Noll opined that Defendants' collusive conduct and conditions in the SRAM market created a high probability that DP Plaintiffs suffered injury through overcharges. Through his empirical analysis, Dr. Levy found overcharges and an amount of damages during a part of the class period. Thus, the injury was not speculative, even though the amount of Westell's damages may not be quantified.

5

In <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, the Supreme Court explained, "[Plaintiff's] burden of proving the fact of damage . . . is satisfied by its proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage."  395 U.S. 100, 114 n.9 (1969).  <u>See also</u> <u>In re Catfish Antitrust Litigation</u>, 908 F. Supp. 400, 410 (N.D. Miss. ("An adequate showing of the amount of damages is not necessarily required for the plaintiffs to survive the defendants' motions for summary judgment [in an antitrust action].")

The present case is readily distinguishable from <u>Gerlinger v. Amazon.com, Inc., Borders Group, Inc.</u>, where the plaintiff provided no evidence that he paid inflated prices for books.  526 F.3d 1253, 1254-55 (9th Cir. 2008).  The general academic articles that the plaintiff submitted to the court did not suffice to establish injury.  <u>Id.</u>  Rather, the defendants presented evidence that the plaintiff paid equal or lower prices for his books as a result of the defendants' marketing agreement.  <u>Id.</u> at 1255.  The court granted summary judgment based on the plaintiff's failure to produce any evidence of injury, and resulting lack of standing.  Here, however, DP Plaintiffs provide qualitative and empirical analysis of the SRAM market in which Westell was a direct purchaser.  That Westell lacks a precise amount of damages does not negate the injury nor Westell's standing.

Nor does <u>City of Vernon v. Southern California Edison</u>

6

Company, 955 F.2d 1361 (9th Cir. 1992), persuade the Court that summary judgment is warranted here.  In that case, the plaintiff city instituted an action against an electric utility alleging numerous antitrust violations.  The court found that the "study failed to segregate the losses, if any, caused by acts which were not antitrust violations from those that were." Id. at 1372.  The expert evidence in this case does not provide a similar basis for granting summary judgment.

Samsung cites other cases to support its contention that Westell must prove an amount of damages to establish injury, but these cases are irrelevant to the issue.  In Sloan v. Urban Title Services., Inc., the defendant had moved for summary judgment on the issue of damages based on the plaintiff's claims for breach of contract, breach of fiduciary duty, and negligence; no antitrust claim was implicated in that part of the court's decision.  689 F. Supp. 2d 123, 133-35 (D.D.C. 2010).  In In re Broadcom Corporations Securities Litigation, the shareholder plaintiffs sued the defendants, alleging that they artificially inflated the companies' earnings.  2004 U.S. Dist. LEXIS 28088, at *1-10 (C.D. Cal.).  The court granted partial summary judgment for the defendants to exclude from consideration certain press releases.  The court did not grant summary judgment for the defendants on a claim due to the plaintiff's failure to prove an amount of damages.

In In re Plastic Additives Antitrust Litigation, the court

found that the expert evidence, lacking in any empirical analysis, was too general to demonstrate class-wide impact due to price increase. 2010 U.S. Dist. LEXIS at *17-55 (E.D. Pa.). The court rejected the expert evidence, because it relied on price listings, rather than transactional data. Dr. Levy's report, in contrast, uses transactional data. Nor does Robinson v. Texas Auto Dealers Association, 387 F.3d 416, 422 (5th Cir. 2004), establish a rule that an amount of damages must be presented in order for a plaintiff to survive summary judgment. Rather, the case explains that generalized proof of purchases at an inflated price is acceptable for purposes of showing the predominance of common issues at class certification. Id. at 422-23. Cal. CNG, Inc. v. S. Cal. Gas. Co., 19 Fed. Appx. 500, 502 (9th Cir. 2001), is similarly unhelpful to Samsung's argument, and furthermore, it is an unpublished decision from before January 1, 2007, which may not be cited pursuant to Ninth Circuit Rule 36-3.

With Dr. Noll and Dr. Levy's expert reports, DP Plaintiffs have evidence of injury and damages due to purchases of overpriced SRAM which supports Westell's standing.

Samsung's reliance on McGlinchy is unavailing for another reason. DP Plaintiffs allege a horizontal price-fixing conspiracy, a per se antitrust violation. No per se violation was alleged in McGlinchy. 845 F.2d at 808-809, 811 n.3. Courts have presumed class-wide injury and impact in horizontal price-fixing cases in the context of class certification motions. In re Citric

8

Acid, 1996 WL 655791 at *7 (recognizing that some courts presume class-wide impact "upon all purchasers of a price-fixed product in a conspiratorially affected market."); accord In re Rubber Chems. Antitrust Litig., 232 F.R.D. 346, 352 (N.D. Cal. 2005).  Samsung cites no authority that proscribes use of the presumption of class-wide injury at the summary judgment stage.

It is true that Westell may be unable to quantify any damages it incurred.  Even if that is the case, however, it would not deprive the company of standing, because it may seek nominal damages.  See Dry Cleaning & Laundry Institute of Detroit, Inc. v. Flom's Corp., 841 F. Supp. 212, 215 (E.D. Mich. 1993).  In that price-fixing case, the court rejected the defendants' argument that they were entitled to summary judgment on the issue of injury due to the plaintiffs' uncertain proof of damages.  The court said, "[E]ven if plaintiff has insufficient proof of amount of damages, the proof of violation and fact of damage is a sufficient basis for an award of nominal damages." Id.  The court cited Sciambra v. Graham News, 892 F.2d 411, 415 (5th Cir. 1990), and U.S. Football League v. National Football League, 842 F.2d 1335, 1376-70 (2d Cir. 1988).  In Sciambra, equating "the fact of damage" with proof of injury, the court explained,

> The fact of damage does not require the antitrust
> plaintiff to prove with particularity the full scope
> of profits that might have been earned in the absence
> of unlawful activity in restraint of trade. It
> requires only that a plaintiff show with some
> particularity an element of actual damage caused by
> the defendant's violation of the antitrust laws . . .

9

> Even if there is insufficient proof of the amount of damages, however, proof of an antitrust violation and the fact of damage is a sufficient basis for an award of nominal damages.

892 F.2d at 415.

Finally, DP Plaintiffs argue that Westell has an additional basis for standing because, in addition to damages, it seeks to enjoin Defendants from engaging in continued price collusion.[3]

The alleged conspiracy by SRAM manufacturers to elevate prices was pervasive, continuing from November 1, 1996 to at least December 31, 2005.  Evidence indicates that Samsung employees at the highest levels operated as ringleaders, orchestrating meetings and communicating globally with fellow conspirators to exchange critical price and business information.  Nowhere in its motion for summary judgment does Samsung dispute that the conspiracy occurred.  The potential scope of impact is far-reaching given that SRAM is a key component in much of the computer and communications technology that is the basis for modern society's functioning.

"[T]he possibility of future injury may be sufficient to confer standing on plaintiffs; threatened injury constitutes 'injury in fact.'"  Central Delta Water Agency v. United States, 306 F.3d 938, 947 (9th Cir. 2002) (citing Ecological Rights Foundation v. Pacific Lumber Co., 230 F.3d 1141, 1151 (9th Cir.

---

[3] In asserting this basis for standing, DP Plaintiffs adopted IP Plaintiffs' arguments in IP Plaintiffs' Opposition to Samsung's Motion for Summary Judgment in Indirect Purchaser Actions.

10

2000)). "The Supreme Court has consistently recognized that threatened rather than actual injury can satisfy Article III standing requirements." Id. (quotations and citations omitted).

The SRAM market remains concentrated, and has continued to consolidate, while barriers to entry for new competitor manufacturers remain high. Declaration of Christopher Micheletti (Micheletti Dec.), Ex. 1 (Harris Report at ¶¶ 62-65, Ex. 4). Evidence suggests that Defendants continue to maintain their relationships. Micheletti Dec., Ex. 16. These factors can contribute to collusion. Harris Report at ¶¶ 62-65. In addition, DP Plaintiffs have produced significant evidence of Defendants' collusive conduct and overcharges. "[W]here the defendants have repeatedly engaged in the injurious acts in the past, there is a sufficient possibility that they will engage in them in the near future to satisfy the 'realistic repetition' requirement." Armstrong v. Davis, 275 F.3d 849, 861 (9th Cir. 2001).

Westell has purchased SRAM extensively in the past, continues to purchase the product for testing and development for possible use in the company's products, and may buy it from one of the manufacturers named in the present lawsuit. Declaration of Mark Skowronski (Skowronski Dec.) at ¶¶ 2-4. Westell made well over two hundred purchases of SRAM from 1999 to 2004. Winters Dec., Ex. 6. From at least June, 2003 to September, 2007, Westell purchased SRAM from ISSI. Id.; Skowronski Dec. at ¶¶ 2-3, Ex. C. From June, 2003 through 2004, Westell made over thirty-five

11

purchases of SRAM from ISSI, with two purchases valued at over $100,000, and seven purchases costing over $40,000. Winters Dec., Ex. 6.

Westell is at a greater risk of future injury than the plaintiffs in O'Shea v. Littleton, 414 U.S. 488 (1974), Nelsen v. King County, 895 F.2d 1248 (9th Cir. 1990), and Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), cases on which Samsung relies. In O'Shea, the Court observed, "Neither the complaint nor respondents' counsel suggested that any of the named plaintiffs at the time the complaint was filed were themselves serving an allegedly illegal sentence or were on trial or awaiting trial before petitioners." 414 U.S. at 496. In Nelson the plaintiffs were no longer in the treatment center where their rights were allegedly violated. 895 F.2d at 1249. The threatened harm to the plaintiffs in Lujan was attenuated, based on past trips to foreign countries to observe endangered species, without present plans to return. 504 U.S. at 558-59.

DP Plaintiffs have shown a threat of future injury. Along with their expert testimony of injury, the presumption of class-wide impact from price-fixing activities, and the availability of nominal damages, this is sufficient to provide Westell with standing to pursue its case on the merits. Accordingly, the Court denies Samsung's motion for summary judgment on the individual claims brought by Westell.

II. Summary Judgment in Event Dr. Levy's Testimony is Excluded

12

Samsung argues that it is entitled to summary judgment if Dr. Levy's expert opinions are excluded. The Court denied the motion to exclude Dr. Levy's opinions in a separate order. Therefore, this argument by Samsung is moot, and the Court does not rule on it.

CONCLUSION

The Court denies Samsung's motion for summary judgment on Westell's individual claims.

The part of Samsung's motion addressing PSRAM will be decided in a separate order. Docket No. 1039. The Court granted Samsung's motion for summary judgment as to claims against SEA in an earlier order by stipulation. Docket No. 1131.

IT IS SO ORDERED.

Dated: 12/13/2010

CLAUDIA WILKEN
United States District Judge

13