UNITED STATES DISTRICT COURT   **ORIGINAL**

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CLAUDIA WILKEN, JUDGE

| | |
|---|---|
| IN RE STATIC RANDOM ACCESS ) | NO. MDL 07-01819 CW |
| MEMORY (SRAM) ANTITRUST ) | |
| LITIGATION ) | |
| _____) | PAGES 1 - 95 |
| THIS DOCUMENT RELATES TO: ) | |
| ALL DIRECT AND INDIRECT ) | |
| PURCHASER ACTIONS ) | OAKLAND, CALIFORNIA |
| _____) | THURSDAY, DECEMBER 14, 2010 |


### TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR DIRECT PLAINTIFFS:　　SAVERI & SAVERI, INC
　　　　　　　　　　　　　706 SANSOME STREET
　　　　　　　　　　　　　SAN FRANCISCO, CALIFORNIA  94111
　　　　　　　　BY:  GUIDO SAVERI, ATTORNEY AT LAW

　　　　　　　　　　　　　COTCHETT, PITRE & MCCARTHY
　　　　　　　　　　　　　SAN FRANCISCO AIRPORT OFFICE CENTER
　　　　　　　　　　　　　840 MALCOLM ROAD, STE. 200
　　　　　　　　　　　　　BURLINGAME, CALIFORNIA  94010
　　　　　　　　BY:  JOSEPH W. COTCHETT,
　　　　　　　　　　　NEIL SWARTZBERG,
　　　　　　　　　　　STEVEN N. WILLIAMS, ATTORNEYS AT LAW


FOR SRAM PLAINTIFFS:　　LIEFF, CABRASER, HEIMANN &
　　　　　　　　　　　　　　BERNSTEIN
　　　　　　　　　　　　275 BATTERY STREET, 30TH FL.
　　　　　　　　　　　　SAN FRANCISCO, CALIFORNIA  94111
　　　　　　　　BY:  JORDAN ELIAS,
　　　　　　　　　　　MICHELE C. JACKSON, ATTORNEYS AT LAW


(APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:　　　　RAYNEE H. MERCADO, CSR NO. 8258

# A P P E A R A N C E S (CONT'D.)

```
FOR INDIRECT PLAINTIFFS: ZELLE HOFFMAN
                            44 MONTGOMERY STREET, SUITE 3400
                            SAN FRANCISCO, CALIFORNIA  94104
                     BY:  CHRISTOPHER T. MICHELETTI,
                          JANE N. YI, ATTORNEYS AT LAW


FOR DEFENDANT            SHEPPARD, MULLIN, RICHTER & HAMPTON
SAMSUNG:                 FOUR EMBARCADERO CENTER, 17TH FLOOR
                         SAN FRANCISCO, CALIFORNIA  94111-4109
                     BY:  ERIC O'CONNOR,
                          JAMES L. MCGINNIS,
                          MICHAEL W. SCARBOROUGH,
                          MONA SOLOUKI, ATTORNEYS AT LAW

FOR DEFENDANT            MAYER BROWN LLP
CYPRESS:                 71 SOUTH WACKER DRIVE
                         CHICAGO, ILLINOIS 60606-4637
                     BY:  VINCENT J. CONNELLY,
                          LEE RUBIN,
                          GARY A. WINTERS, ATTORNEYS AT LAW


                         --O0O--
```

```
 1   TUESDAY, DECEMBER 14, 2010                        2:23 P.M.

 2                      P R O C E E D I N G S

 3              THE CLERK:  WE'RE CALLING 07-1819, IN RE: SRAM

 4   ANTITRUST LITIGATION.  PLEASE STEP FORWARD AND STATE YOUR

 5   APPEARANCES FOR THE RECORD, PLEASE.

 6              MR. McGINNIS:  GOOD AFTERNOON, YOUR HONOR.  JIM

 7   MCGINNIS FOR THE SAMSUNG DEFENDANTS OF SHEPPARD MULLIN.  I'M

 8   HERE WITH MR. SCARBOROUGH, WHO I BELIEVE YOU KNOW, AND MONA

 9   SOLOUKI, AND ERIC O'CONNOR, AND DEPENDING UPON THE SUBJECT YOUR

10   HONOR WISHES TO ADDRESS, ONE OF US WILL SPEAK TO YOU.

11              MR. CONNELLY:  GOOD AFTERNOON.  VINCENT CONNELLY ON

12   BEHALF OF DEFENDANT CYPRESS.  I'M HERE WITH MY COLLEAGUES GARY

13   WINTERS AND LEE RUBIN.

14              MR. SAVERI:  GOOD AFTERNOON, YOUR HONOR.  GUIDO

15   SAVERI FOR --

16              THE COURT:  YOU'RE GOING TO NEED TO TAKE THE MIKE

17   THERE, I'M AFRAID.

18              MR. SAVERI:  GOOD AFTERNOON, YOUR HONOR.  GUIDO

19   SAVERI FOR THE DIRECT PLAINTIFFS.

20              THE COURT:  FOR THE WHICH?

21              MR. SAVERI:  DIRECT PLAINTIFFS.

22              THE COURT:  OH, OKAY.

23              MR. COTCHETT:  GOOD AFTERNOON, YOUR HONOR.  JOSEPH

24   COTCHETT, STEVEN WILLIAMS, AND NEIL SWARTZBERG FOR THE DIRECT

25   PLAINTIFFS.
```

1            **MR. MICHELETTI:**  GOOD AFTERNOON, YOUR HONOR.  CHRIS

2   MICHELETTI ON BEHALF OF THE INDIRECT PURCHASER PLAINTIFFS.

3            **THE COURT:**  ALL RIGHT.  GOOD AFTERNOON.

4            SO I GUESS YOU DON'T HAVE ANY BIG NEWS FOR ME.

5            **MR. COTCHETT:**  WELL, WE DO.

6            IT'S NOT BIG BIG, BUT IT'S JUST BIG.  WE ARE TALKING,

7   AND WE ARE HOPEFULLY GETTING CLOSE.  I THINK SOME DECISIONS

8   TODAY SPECIFICALLY ON HOW THE TRIAL IS POSTURED -- THAT'S REALLY

9   THE ONLY BIG ISSUE BEFORE US.  IF WE CAN DETERMINE HOW THE TRIAL

10  IS POSTURED, I THINK WE'LL HAVE SOME RESOLUTIONS.

11           **THE COURT:**  OKAY.

12           **MR. COTCHETT:**  WE WOULD OBVIOUSLY HAVE SOME THOUGHTS

13  ON THAT WHEN YOU'RE READY --

14           **THE COURT:**  WELL, WHY DON'T I JUST GO AHEAD AND TELL

15  YOU EVERYTHING THAT I'VE COME UP WITH SO FAR OR WHERE I'M

16  THINKING ON THESE VARIOUS THINGS, AND THEN YOU CAN TELL ME WHERE

17  YOU DISAGREE.

18           **MR. McGINNIS:**  YOUR HONOR, MAY I JUST ADD ON THE

19  SUBJECT OF NEWS?  THE DISCUSSIONS MUST BE AWFUL QUIET BECAUSE

20  NEITHER MR. HOLING OR I KNOW ABOUT THEM, BUT WE'VE SETTLED WITH

21  THE INDIRECT PLAINTIFFS FOR SAMSUNG.  AND --

22           **THE COURT:**  WELL, THAT WAS A WHILE BACK.

23           **MR. McGINNIS:**  THAT WAS A WHILE BACK, AND THERE HAVE

24  NOT BEEN DISCUSSIONS WITH THE DIRECT PLAINTIFFS, NOR HAS ANY NEW

25  MEDIATION BEEN SCHEDULED.  SO IF THERE ARE DISCUSSIONS INVOLVING

1    US, THEY'RE AWFULLY QUIET BECAUSE I DON'T KNOW ABOUT THEM.

2              **THE COURT:**  WELL, OKAY.  WELL, LET'S REVISIT THAT

3    AGAIN AT THE END OF THE SESSION.  BUT I -- IF YOU HAVEN'T SEEN

4    JUDGE WEINSTEIN LATELY, THEN I'M GOING TO ASK YOU ALL TO GO BACK

5    TO HIM WHEN WE FINISH.  SO IF THAT'S TRUE AND NOBODY'S TALKING

6    TO YOU, THEN YOU'LL NEED TO GO TO JUDGE WEINSTEIN, AND HE'LL

7    MAKE SURE SOMEONE TALKS TO YOU.

8              OKAY.  WELL, I GUESS THE FIRST QUESTION IS THE ONE

9    YOU ASKED LAST TIME, WHICH IS HOW WOULD THE CASES BE TRIED.  AND

10   I'M STILL THINKING THAT THE BEST WAY TO DO IT WOULD BE TO START

11   WITH THE TRIAL THAT INVOLVES BOTH SETS OF PLAINTIFFS AND BOTH

12   DEFENDANTS AND IS ADDRESSED ONLY TO THE EXISTENCE OR NOT OF AN

13   ANTITRUST CONSPIRACY IN FRONT OF ONE JURY.

14             ONCE WE -- NOW, THERE MIGHT BE SOME FINE-TUNING THERE

15   AS FAR AS HOW MUCH IMPACT TESTIMONY COMES IN, DOES IT OR DOESN'T

16   IT, WHERE DO YOU DRAW THE LINE.  BUT THE BASIC QUESTION WOULD BE

17   DID THESE PEOPLE GET TOGETHER AND AGREE ON SOMETHING OR DID THEY

18   NOT.

19             THEN WE WOULD EXCUSE THE INDIRECT PURCHASER

20   PLAINTIFFS AND PROCEED WITH THAT SAME JURY TO DECIDE IMPACT AND

21   DAMAGES FOR THE DIRECT PURCHASER PLAINTIFFS.

22             AFTER THAT, WE WOULD IMPANEL A NEW JURY WHICH WOULD

23   BE INSTRUCTED AS TO THE RESULT OF THE CONSPIRACY TRIAL UNLESS,

24   OF COURSE, THE RESULT WAS A DEFENSE VERDICT, IN WHICH CASE WE

25   WOULD HAVE ALL GONE HOME BY THAT TIME.  BUT ASSUMING THERE'S A

1    VERDICT AGAINST ONE OR BOTH DEFENDANTS, THE SECOND JURY WOULD BE

2    INFORMED OF THAT, AND THEY WOULD THEN HEAR ABOUT IMPACT AND

3    DAMAGES FOR THE INDIRECT PURCHASERS, AT LEAST THEIR ANTITRUST

4    CLAIMS.

5               THIS IS WHERE I GO OFF THE RAILS A LITTLE BIT BECAUSE

6    EVEN AT THAT, I CAN'T SEE TRYING ONE TRIAL EVEN FOR DAMAGES,

7    EVEN JUST FOR INDIRECTS WITH 25 STATES.  I'M JUST NOT GOING TO

8    PICK ONE JURY AND TELL THEM YOU'RE NOW GOING TO DECIDE CLAIMS

9    BASED ON 25 DIFFERENT STATE LAWS, SO WE WOULD HAVE TO DO

10   SOMETHING THERE.  AND I DON'T KNOW WHAT THAT WOULD BE.

11              ONE POSSIBILITY IS REMAND PERHAPS OF THE CASES THAT

12   WERE NOT FILED IN CALIFORNIA IN THE FIRST PLACE.  I THINK

13   THERE'S 12 OF THEM OR 18 OF THEM, SOMETHING LIKE THAT.

14              NOW, ANOTHER POSSIBILITY WOULD BE A BELLWETHER TRIAL,

15   YOU KNOW, PICKING THE MOST GENERIC OR TYPICAL OF THE STATE

16   CLASSES.  WE COULD MAYBE DO FIVE STATES AT A TIME -- MAYBE THAT

17   WOULDN'T BE TOO MUCH -- AND HAVE A SUCCESSION OF TRIALS,

18   HOPEFULLY WHICH WOULD BE -- THE FIRST ONE WOULD BE SORT OF A

19   BELLWETHER, AND ONE MIGHT HOPE THAT THE REMAINING ONES WOULD

20   SETTLE AFTER THAT POINT.

21              ON THAT REMAND POINT, I KNOW CYPRESS THINKS IT HAS A

22   RIGHT TO REMAND.  I DON'T.  I THINK LIKE THE POINT OF U LEXECON

23   IS TO ENSURE THE PLAINTIFFS' CHOICE OF FORUM, BUT AS LONG AS

24   THERE'S PROPER VENUE AND JURISDICTION IN THIS DISTRICT, AS LONG

25   AS THE PLAINTIFFS STIPULATE AND -- AND I DO THINK THE PLAINTIFFS

1    WOULD HAVE TO ACTUALLY STIPULATE AND NOT JUST THE FILING OF THE

2    CONSOLIDATED AMENDED COMPLAINT SORT OF INDICATES THAT THAT'S

3    WHAT YOU WANT, BUT I THINK UNDER ONE OF THE CASES I SAW

4    SOMEWHERE, WE WOULD NEED AN ACTUAL STIPULATION.

5              BUT IF WE GOT ONE, THEN I THINK THAT WE COULD TRY ALL

6    THOSE INDIRECT CASES HERE.  BUT ON THE OTHER HAND, WE COULD SEND

7    SOME OF THEM BACK AND I'M CERTAINLY OPEN TO THAT POSSIBILITY,

8    ESPECIALLY IF WE END UP HAVING TO HAVE A WHOLE BUNCH OF TRIALS

9    IN A ROW.  I'M NOT SURE WHICH OF THE STATES ARE THE ONES THAT

10   WEREN'T FILED HERE.  I SUPPOSE WE COULD EVEN SEND SOME BACK THAT

11   WERE FILED HERE BUT THAT CAME FROM SOME OTHER STATE.  I MEAN,

12   ALL THOSE THINGS WOULD BE SORT OF POSSIBILITIES.  BUT THEY WOULD

13   ALL GO BACK WITH THE VERDICT IN HAND.  I WOULD THINK THE VERDICT

14   ON THE CONSPIRACY WOULD BE RES JUDICATA OR COLLATERAL ESTOPPEL,

15   AND ALL THAT WOULD HAVE TO BE TRIED EITHER HERE OR IN THOSE

16   REMAND JURISDICTIONS TO BE IMPACTS AND DAMAGES FOR INDIRECT

17   PURCHASERS.

18             SO THAT'S WHAT I'M THINKING ABOUT THAT.

19             I HAVE A BIG PROBLEM WITH DAMAGES.  I DON'T REALLY

20   UNDERSTAND HOW -- WELL, I GUESS IF WE DO WHAT I'M SAYING, WE

21   WOULDN'T HAVE THE PROBLEM OF THE PASS-THROUGH VERSUS PASS-ON

22   DILEMMA.  AND THAT'S ONE ADVANTAGE OF NOT TRYING THE DP'S AND

23   THE IP'S TOGETHER.  AT LEAST WE DON'T HAVE TO TRY TO EXPLAIN IT

24   TO A JURY, BUT WE DO HAVE TO RESOLVE IT AT SOME POINT AND I

25   DON'T KNOW WHAT THE ANSWER IS.

```
 1              LET'S SAY THERE'S A BIG VERDICT FOR THE DP'S AND THEN

 2      A VERDICT FOR THE IP'S.  WE HAVE A DOUBLE RECOVERY.  WE CAN'T --

 3      IT SEEMS TO ME THAT WOULDN'T BE ALLOWED.  THERE HAS TO BE SOME

 4      SORT OF METHOD OF ALLOCATING.  I KNOW THE JURY WOULDN'T HEAR

 5      ABOUT IT, AND THE JURY WOULD BE TOLD FOR THE DP'S TO AWARD ALL

 6      THE DAMAGES AND THAT THERE'S NO PASS-ON DEFENSE AND THIS AND

 7      THAT.

 8              BUT IN THE END, WHEN WE COME DOWN TO ACTUALLY WRITING

 9      CHECKS, YOU DON'T GET IT TWICE, I DON'T THINK, OR THE DEFENDANTS

10      DON'T TO HAVE PAY IT TWICE.  SO SOMEHOW THAT WOULD HAVE TO BE

11      ALLOCATED, AND I DON'T QUITE KNOW HOW ONE WOULD DO THAT.  BUT

12      YOU'RE GOING TO HAVE TO COME UP WITH SOMETHING.

13              AND FURTHERMORE, I DON'T UNDERSTAND HOW THE

14      SETTLEMENT AMOUNTS WOULD FIGURE INTO THAT.  NOBODY'S ASKED FOR

15      ONE OF THESE GOOD-FAITH DETERMINATIONS OF DAMAGES FOR MULTIPLE

16      TORTFEASORS.  I DON'T KNOW IF THAT'S THE PROCEDURE OR HOW IT

17      WOULD WORK IF THE DAMAGES FOR THE WHOLE CONSPIRACY WERE FOUND

18      AND THEN SOMEHOW ALLOCATED BETWEEN IP'S AND DP'S, THEN HOW DOES

19      THE SETTLEMENT MONEY PLAY INTO IT?  SO THERE'S ANOTHER ISSUE

20      THAT'S NOT CLEAR TO ME.

21              LET'S SEE.  THIS IS MINOR COMPARED TO THAT, BUT IN

22      TURN -- JUST 'CAUSE IT'S ON MY LIST, WHEN WE'RE DEALING WITH THE

23      JURY AND THESE ISSUES, ARE WE GOING TO NEED TO DIFFERENTIATE

24      BETWEEN TWO SAMSUNG ENTITIES, OR CAN WE SOMEHOW ASSUME THAT

25      THEY'LL WORK IT OUT AMONGST THEMSELVES?  IT'S JUST -- WOULD BE A
```

1   LOT EASIER NOT TO HAVE VERDICT FORMS WITH LISTS THAT INCLUDE

2   SAMSUNG TWICE ALL THE TIME AND JURY INSTRUCTIONS THAT TALK ABOUT

3   THEM TWICE.  MAYBE YOU DON'T KNOW RIGHT NOW, BUT IF YOU DON'T,

4   FIND OUT SOON WHETHER WE --

5            **MR. McGINNIS:**  I THINK THAT COULD BE RESOLVED, YOUR

6   HONOR.  I THINK THAT'S THE LEAST OF OUR PROBLEMS.

7            **THE COURT:**  WELL, I KNOW, BUT IT'S ON MY LIST.

8            AND THE SAME GOES FOR THE OTHER DEFENDANTS.  I SEE IN

9   THE VERDICT FORMS WHERE WE'RE MAKING LONG LISTS OF ALL OF THEM,

10  AND THEY'RE, YOU KNOW, MICRON THIS, MICRON THAT, MICRON THE

11  OTHER; ISSI THIS, ISSI THAT.  IT WOULD BE, AGAIN, MUCH EASIER IF

12  WE COULD AGREE THAT EACH ENTITY INCLUDES ALL OF ITS LITTLE

13  SUB-ENTITIES AND THEY DON'T ALL HAVE TO BE DECIDED SEPARATELY.

14           IN TERMS OF OTHER TRIAL ISSUES, I DON'T LIKE TO HAVE

15  WITNESSES CALLED BY MULTIPLE PARTIES.  I ALWAYS TELL PEOPLE THAT

16  THE PLAINTIFFS SHOULD CALL WHO THEY'RE GOING TO CALL AND TO THE

17  EXTENT THE DEFENDANTS HAVE QUESTIONS OF THOSE WITNESSES, THE

18  DEFENDANTS ASK THEM WHILE THEY'RE THERE ON THE PLAINTIFF'S SIDE.

19  WE EXPLAIN THAT TO THE JURY, HOW MUCH SHORTER IT MAKES THE

20  TRIAL, HOW CONVENIENT IT WILL BE FOR THEM.  THEY'RE FINE WITH

21  IT.

22           IT MAKES MUCH MORE SENSE TO DO THE TESTIMONY IN

23  CHRONOLOGICAL ORDER ALL AT ONE TIME THAN HAVING PEOPLE COME

24  BACK.  THE ONLY EXCEPTION IS OCCASIONALLY A DEFENDANT WILL SAY,

25  OH, I DON'T WANT MY GUY TO BE TALKING IN THE PLAINTIFF'S CASE.

1  I WANT MY GUY TO BE TALKING LATER.

2          IF THAT'S THE CASE, AND IF THE PLAINTIFF NEEDS THE

3  PERSON ONLY FOR SOME SORT OF PRO FORMA OR A FEW LITTLE THINGS OR

4  SOME ELEMENT OF ITS CASE-IN-CHIEF OR SOME ADMISSION OR SOME SUCH

5  THING, THEN YOU COULD TRY TO WORK OUT SOMETHING WHERE THE

6  PLAINTIFF RESTS CONTINGENT UPON GETTING SOME LITTLE PIECE OF

7  EVIDENCE OUT OF THAT DEFENSE WITNESS WHEN THAT DEFENSE WITNESS

8  COMES ON AND DELAYS THE JMOL MOTIONS AND SO ON.

9          BUT REALLY IT WORKS BETTER, I THINK, IF THE WITNESSES

10  ARE JUST CALLED IN THE PLAINTIFF'S CASE AND -- AND THE DEFENSE

11  DOES ITS DIRECT AT THAT TIME.  SAMSUNG PROPOSED A SORT OF

12  VARIANT OF THAT.  THIS WOULD BE A LITTLE MORE MANDATORY THAN THE

13  VARIANT THAT YOU PROPOSE, WHICH IS YOU GET TO DO WHATEVER YOU

14  WANT.  BUT I THINK IN THE END, IT WORKS BEST FOR DEFENDANTS AS

15  WELL.

16          WE WILL HAVE TO HAVE TIME LIMITS.  WE'LL FIGURE OUT

17  HOW LONG THE CASE OUGHT TO TAKE ALL TOGETHER, AND WE'LL DIVIDE

18  IT UP.  MY, I GUESS, DEFAULT WOULD BE HALF TO PLAINTIFFS, HALF

19  TO DEFENDANTS.  TO THE EXTENT THAT PLAINTIFFS AND DEFENDANTS

20  CAN'T AGREE AMONGST THEMSELVES, HALF OF THE PLAINTIFFS' TIME TO

21  EACH HALF, AND HALF OF THE DEFENDANTS' TIME TO EACH DEFENDANT,

22  AND THEN YOU WORK OUT YOUR DEALS AFTER THAT.

23          EVERYBODY HAS TO KEEP TIME AND DOUBLE-CHECK IT WITH

24  EACH OTHER AT THE END OF EACH DAY SO THAT WE KNOW DAY BY DAY HOW

25  MUCH EACH OF YOU HAS USED.  YOUR TIME IS YOUR ARGUMENT, YOUR

1    DIRECT, YOUR CROSS.  IF YOU MAKE LENGTHY OBJECTIONS, THAT

2    COUNTS.

3              ON THE COCONSPIRATOR TESTIMONY, I THOUGHT THAT WHAT

4    YOU DESCRIBED JUDGE HAMILTON DOING MADE A LOT OF SENSE.  THE WAY

5    IT -- WE USED TO DO IT IN CRIMINAL CASES WAS TO SORT OF HAVE THE

6    U.S. ATTORNEY BASICALLY TRY TO PROVE UP AT LEAST A PRIMA FACIE

7    CASE OF CONSPIRACY SORT OF FIRST THING SO THAT I CAN HAVE SOME

8    CONFIDENCE THAT, YES, IT'S LIKELY WE'RE GOING TO HAVE A

9    CONSPIRACY HERE AND IT'S LIKELY THAT MOST OF THESE PEOPLE ARE

10   GOING TO BE IN IT.  AND THEN FROM THERE, WE CAN FEEL A LITTLE

11   MORE COMFORTABLE ADMITTING COCONSPIRATOR TESTIMONY SUBJECT TO

12   STRIKING.

13             BUT THEN TO ADD TO THAT THE NOTION THAT SOME PERIOD

14   OF TIME BEFORE EACH TRIAL DAY, WHETHER IT'S A WEEK BEFORE, A DAY

15   BEFORE, WHATEVER COULD BE WORKED OUT, WE GET FROM THE PLAINTIFFS

16   WHAT SPECIFIC COCONSPIRATOR STATEMENTS THEY THINK THEY OUGHT TO

17   BE ABLE TO BRING IN, WHO THE COCONSPIRATOR WAS, WHEN THEY JOINED

18   THE CONSPIRACY, WHEN THEY LEFT THE CONSPIRACY, HOW THIS

19   STATEMENT WAS IN FURTHERANCE OF THE CONSPIRACY, AND HOW IT WAS

20   DURING THE COURSE OF THE CONSPIRACY AND HAVE THAT RULED ON IN

21   SOME KIND OF WAY BEFORE IT ACTUALLY HITS THE FAN IN COURT.

22             SO THAT WOULD BE THE IDEA.

23             ON THE JURY, WE WILL DO A JURY QUESTIONNAIRE.  LATELY

24   I'VE BEEN -- WELL, YOU CAN GET MY -- THE STANDARD ONE ATTACHED

25   THAT PRETRIAL ORDER, WHICH IS THE ONE I USED TO DO.  BUT LATELY,

```
 1   I'VE BEEN ADDING MUCH MORE SUBSTANTIVE STUFF RIGHT INTO THE JURY

 2   QUESTIONNAIRE, AND IT WORKS QUITE WELL.  SO I DON'T THINK YOU

 3   GAVE ME ANY VOIR DIRE -- OR DID I MISS IT?  DID YOU GIVE ME VOIR

 4   DIRE?

 5             MR. COTCHETT:  NO.

 6             MR. McGINNIS:  NOT YET, YOUR HONOR.

 7             THE COURT:  OKAY.  SO AT A CERTAIN POINT, YOU SHOULD

 8   TALK TO EACH OTHER ABOUT WHAT YOU WOULD LIKE TO SEE IN A

 9   QUESTIONNAIRE IN A CASE OF THIS LENGTH.

10             I ALSO PREQUALIFY THEM FOR HARDSHIP, AND I USUALLY

11   SEND OUT A QUESTIONNAIRE IN ADVANCE AND HAVE THEM WRITE BACK AND

12   TELL ME THEIR HARDSHIPS.

13             THE JURY OFFICE IS TELLING ME NOW THEY FIND IT WORKS

14   BETTER IF WE ACTUALLY HAVE THEM COME IN AND FILL OUT THE FORM

15   AND THEN I GO THROUGH IT AND SEE WHO'S GOT A HARDSHIP.  SO I MAY

16   TRY THAT, BUT THE QUESTIONNAIRE -- IT NEEDS TO BE FAIRLY SHORT,

17   AND I CAN GIVE YOU SOME SAMPLES OF THEM.  THEY'RE NOT ON MY WEB

18   PAGE, BUT I COULD TRY TO REMEMBER TO PUT SOME UP THERE SO YOU

19   COULD TAKE A LOOK AT THEM.

20             I THINK, YOU KNOW, MAYBE FOUR PAGES, FIVE PAGES,

21   SOMETHING LIKE THAT, NOT SOMETHING THAT'S GOING TO TAX THEM.

22   NONE OF THIS WHAT MAGAZINES DO YOU READ, WHAT T.V. SHOWS DO YOU

23   WATCH, BUT, YOU KNOW, ACTUAL STUFF THAT WE NEED.

24             AND THEN I WOULD DO SOME KIND OF FOLLOW-UP, GO

25   THROUGH AND THE PERSON WHO SAYS, YOU KNOW, MY -- MY DOG WAS
```

1    KILLED BY A ANTITRUST VIOLATOR, I CAN'T SERVE, YOU KNOW, THEN I

2    FOLLOW UP ON THAT.

3              **MR. COTCHETT:**  IF WE COULD GET FROM YOUR CLERK A

4    COUPLE OF THOSE SAMPLES, THAT WOULD BE HELPFUL.

5              **THE COURT:**  YEAH, I'LL GET THEM SOMEHOW OR OTHER.

6              **MR. COTCHETT:**  THAT WOULD BE GREAT.

7              **THE COURT:**  THEN PROBABLY I WOULD ALLOW SOME ATTORNEY

8    VOIR DIRE AFTER THAT, VERY LITTLE, BUT SOME.  MAYBE A HALF AN

9    HOUR PER ENTITY OR SOMETHING LIKE THAT JUST FOR FOLLOW-UP

10   PURPOSES AND KIND OF EDUCATION AND GETTING-TO-KNOW-YOU PURPOSES.

11   SO YOU SHOULD LOOK AT MY QUESTIONNAIRES AND THEN MAYBE YOU COULD

12   AGREE ON SOMETHING OR AT LEAST SUBMIT PROPOSED ONES.

13             IN TERMS OF THE MOTIONS IN LIMINE, STARTING WITH THE

14   DIRECT PURCHASERS, IN NUMERICAL ORDER, NUMBER ONE IS EXCLUDE THE

15   CLOSING OF THE INVESTIGATION REGARDING SRAM.  I WOULD GO ONE

16   BETTER THAN THAT AND ALSO EXCLUDE THE OPENING OF THE

17   INVESTIGATION REGARDING SRAM.  SO THAT THE SRAM INVESTIGATION

18   WOULD NOT COME IN AT ALL, NEITHER ITS OPENING NOR ITS CLOSING.

19             NO. 2, EXCLUDE EVIDENCE OF WESTELL'S LACK OF DAMAGES.

20   I WOULDN'T EXCLUDE IT.  HE WILL HAVE TO PROVE DAMAGES IF HE CAN,

21   I SUPPOSE.  BUT IT WON'T BE FOR THE JURY TO DECIDE WHETHER HE

22   HAS STANDING OR NOT.  THAT -- I MEAN, IF THAT'S WHAT YOU'RE

23   GETTING AT, THAT'S NOT A JURY ISSUE.  SO IT WOULD NOT BE ARGUED

24   THAT IF HE DOESN'T HAVE ANY DAMAGES, HE DOESN'T HAVE STANDING

25   AND THE WHOLE CASE GOES OUT.  THAT WON'T BE HAPPENING.

```
 1              SO IT'S NOT TABOO OR OFF LIMITS THAT HE DIDN'T BUY

 2    DURING THE DAMAGES SUBPERIOD, BUT NEITHER WILL IT HAVE ANY LEGAL

 3    EFFECT.

 4              MR. COTCHETT:  THAT WAS YOUR RECENT RULING THE OTHER

 5    DAY.

 6              THE COURT:  RIGHT, BUT THAT'S HOW IT WOULD PLAY OUT

 7    AT THE TRIAL AS I SEE IT.

 8              MR. COTCHETT:  YES.

 9              THE COURT:  EXCLUDE EVIDENCE OF FAILURE TO MITIGATE.

10    THAT'S NO. 3.  NO OPPOSITION.  GRANTED.

11              NO. 4, EXCLUDE REFERENCE TO TREBLE DAMAGES AND

12    ATTORNEYS' FEES.  MY INCLINATION WOULD BE TO EXCLUDE IT.  I KIND

13    OF DON'T THINK PEOPLE WOULD REALLY NECESSARILY KNOW ABOUT THAT,

14    BUT IF IT COMES PAST THAT WE HEAR THEM CHITCHATTING AT LUNCH

15    ABOUT TREBLE DAMAGES, THEN WE WOULD GIVE THEM AN INSTRUCTION

16    THAT TREBLE DAMAGES ARE NOT THEIR CONCERN AND THAT THEY

17    SHOULDN'T CONSIDER IT OR SPECULATE ABOUT IT.  BUT WE CAN WORRY

18    ABOUT THAT LATER.

19              NO. 5, EXCLUDE EVIDENCE THAT DP'S PASSED ON EXCESS

20    COSTS.  WELL, WE TALKED ABOUT THIS EARLIER.  YES, IF IT WERE

21    ONLY A DP TRIAL, WE WOULD EXCLUDE EVIDENCE FROM THE JURY THAT

22    THE DP'S MAY HAVE PASSED DOWN THEIR EXCESS COST.  BUT IN THE

23    END, THAT HAS TO BE ACCOUNTED FOR IN SOME KIND OF WAY, NOT BY

24    THE JURY.

25              MR. COTCHETT:  SO THAT'S GRANTED, YOUR HONOR?
```

1          **THE COURT:**  YEAH.  I'M GIVING YOU SORT OF MY

2    INCLINATION HERE.

3                    (SIMULTANEOUS COLLOQUY.)

4          **THE COURT:**  I'M WILLING TO HEAR A SMALL AMOUNT OF

5    ARGUMENT ON SOME OF THESE, BUT THAT'S MY INCLINATION.

6          NO. 6, EXCLUDE REFERENCE TO THE CLASS REPS' FINANCES,

7    FEE DEALS, OTHER LAWSUITS.  GENERALLY, I WOULD GRANT THAT.  IT

8    DOESN'T SEEM RELEVANT TO ME.  IF THERE IS SOMETHING THAT IS

9    RELEVANT, I WOULD WANT A PROFFER BEFORE ANY REFERENCE WAS MADE

10   TO IT.

11         AND THE ONLY THING I CAN IMAGINE THAT MIGHT BE

12   RELEVANT WOULD BE IF THERE WAS SOME SORT OF HYPOTHETICAL DEAL

13   WITH PLAINTIFFS' COUNSEL THAT PROVIDED SOME SORT OF FINANCIAL

14   INCENTIVE.  IF YOU WIN THIS CASE, I'LL GIVE YOU SOME OTHER CASE,

15   OR SOMETHING -- SOMETHING LIKE THAT.

16         IF YOU HAVE EVIDENCE LIKE THAT, I WOULD HEAR IT, AND

17   PERHAPS IF THAT LED TO SOME SORT OF FINANCIAL INTEREST OR BIAS,

18   CONCEIVABLY THAT COULD COME IN.  BUT OTHER THAN THAT, I DON'T

19   SEE THE RELEVANCE OF WESTELL'S FINANCES, ET CETERA.

20         NOW, THE NEXT ONE, NO. 7, IS THE SAME EXCEPT WITH --

21   AS ADDRESSED TO OTHER CLASS MEMBERS.  AND AS ADDRESSED TO

22   INDIRECT PURCHASERS.

23         AND I WOULD SAY THAT WITH RESPECT TO OTHER CLASS

24   MEMBERS AND PERHAPS TO INDIRECT PURCHASERS TO THE EXTENT THEIR

25   SIZE IS RELEVANT TO EXPERT ISSUES, SUCH AS BUYING POWER,

1   NEGOTIATING POWER, THAT SORT OF THING, THEN IT COULD BE RELEVANT

2   FOR THAT PURPOSE.

3          YOU KNOW, WE'RE TALKING INTEL HERE, THEY'RE UMPTY-UMP

4   BIG, AND THEY HAVE THIS AND THAT POWER.  PERHAPS SO.

5          IF IT'S LIKE MR. JONES, YOU KNOW, MAKES $50,000, NO.

6          SO TO THE EXTENT IT'S RELEVANT TO SOME OTHER POINT,

7   IT WOULD PERHAPS COME IN.  BUT OTHERWISE, THE FINANCES OF CLASS

8   MEMBERS WOULDN'T BE RELEVANT.

9          NO. 8, EXCLUDE REFERENCES TO SETTLEMENT.  WE WOULD

10  PROBABLY HAVE TO GIVE SOME SORT OF INSTRUCTION EXPLAINING THAT

11  THERE WERE AT ONE TIME OR THERE ARE OTHER PEOPLE WHO ARE

12  ARGUABLY INVOLVED.  THE JURY SHALL NOT CONCERN ITSELF WITH WHAT

13  MAY OR MAY NOT HAVE HAPPENED WITH RESPECT TO THOSE OTHER

14  PARTICIPANTS.  JUST LISTEN TO THEIR TESTIMONY.

15         SO CERTAINLY NO SETTLEMENT AMOUNTS WOULD COME IN.

16  THE FACT THAT THERE WAS A SETTLEMENT PROBABLY WOULD NOT COME IN.

17  ALL THAT WOULD COME IN WOULD BE THESE PEOPLE ARE NOT BEFORE YOU

18  AND YOU DON'T NEED TO WORRY ABOUT WHY THAT IS OR SPECULATE ABOUT

19  IT.

20         NO. 9, EXCLUDE OPT-OUTS AND SEPARATE SETTLEMENTS.

21  THERE'S NO OPPOSITION TO THAT, SO IT WOULD BE GRANTED.

22         NO. 10, EXCLUDE EXPERTS -- YOU'RE CALLING IT LEGAL

23  CONCLUSIONS.  I'D SAY WHAT YOU'RE REALLY TALKING ABOUT IS

24  EXCLUDE EXPERTS OPINIONS ON THE ULTIMATE ISSUE.  WHAT YOU'RE

25  REALLY SAYING IS THE EXPERTS CAN'T SAY, I THINK THERE WAS A

1    CONSPIRACY.  I THINK THESE PEOPLE DID, IN FACT, CONSPIRE.

2             AND WHAT I'LL SAY THERE IS, ALTHOUGH THIS ISN'T

3    ALWAYS THE CASE, WHAT'S GOOD FOR THE GOOSE IS GOOD FOR THE

4    GANDER.  IF THE PLAINTIFFS' EXPERTS ARE GOING TO SAY SUCH

5    THINGS, THEN, OF COURSE, THE DEFENDANTS' EXPERTS WILL BE ABLE TO

6    AS WELL.  BUT MY PREFERENCE WOULD BE THAT NEITHER DOES, THAT

7    BOTH SIDES' EXPERTS ADDRESS THESE ARE THE FACTORS THAT USUALLY

8    CONTRIBUTE.  I SEE SUCH -- I SEE THESE FACTORS X, Y, AND Z HERE,

9    BUT NOT TAKE THAT NEXT STEP AND SAY, THEREFORE, I THINK THESE

10   PARTICULAR PEOPLE DID, IN FACT, CONSPIRE.

11            BUT IF YOU BOTH WANT TO AGREE THAT EVERYBODY GETS TO

12   HAVE THEIR OPINION ON THAT, I GUESS THAT'S OKAY WITH ME.  BUT

13   IT'S EITHER EVERYBODY OR NOBODY AND PREFERABLY NOBODY.

14            AND SO THE LITTLE EXCERPTS YOU GAVE ME FROM KALT'S

15   TESTIMONY, THE FIRST ONE WOULD BE AN EXAMPLE OF WHAT I WOULD

16   THINK WOULD NOT BE APPROPRIATE, WHICH IS SORT OF LIKE, I THINK

17   THESE PEOPLE DID NOT CONSPIRE.  THE LATER ONES -- OR DID

18   CONSPIRE.  THE LATER ONES WOULD -- ARE MORE LIKE, THESE ARE THE

19   FACTORS, AND THIS IS WHAT USUALLY HAPPENS AND THAT SORT OF

20   THING.

21            IPP'S MIL'S ARE ESSENTIALLY JOINED IN, BUT THEY HAVE

22   TWO OF THEIR OWN.  ONE IS THEIR NO. 3, EXCLUDE REFERENCES TO

23   IP'S NOT PURCHASING ANY PRODUCT.  AGAIN, THAT'S THE SAME AS THE

24   WESTELL RESULT.  THE FACT THAT THEY DIDN'T IS NOT TABOO.  IT

25   MIGHT COME IN FOR SOME REASON, BUT IT DOES NOT MEAN THAT THEY

1   AREN'T CLASS MEMBERS OR CAN'T REPRESENT THEIR CLASS.  IT MAY

2   MEAN THEY DON'T HAVE DAMAGES, I GUESS.

3          NO. 8, EXCLUDE ARGUMENT RE: INADEQUACY OF CLASS REPS.

4   I WOULD SAY THAT'S GENERALLY TRUE.  IT GENERALLY WOULD BE

5   GRANTED.  THAT ISN'T A JURY QUESTION.  THE ONLY EXCEPTION AGAIN

6   WOULD BE IF SOMEHOW THEY HAD SOME SORT OF PECUNIARY RELATIONSHIP

7   WITH PLAINTIFFS' COUNSEL THAT LED THEM TO HAVE SOME KIND OF

8   MOTIVATION TO BE UNTRUTHFUL BECAUSE THEN THEY WOULD GET TO BE

9   PLAINTIFFS AGAIN OR SOMETHING LIKE THAT.  IF YOU HAD SOMETHING

10  LIKE THAT, I WOULD LOOK AT A PROFFER.  BUT FAILING THAT, I

11  WOULDN'T SEE THAT AS RELEVANT.

12         CYPRESS' MOTIONS IN LIMINE NO. 1.  WELL, THIS IS MY

13  THOUGHT ABOUT THE DRAM SITUATION.  I WOULD -- I WOULD ALLOW THE

14  DRAM GUILTY PLEAS AND EVIDENCE ABOUT DRAM.  AND I WOULD ALLOW IT

15  EVEN IN A JOINT TRIAL WITH CYPRESS, AND I WOULD GIVE A LIMITING

16  INSTRUCTION FOR CYPRESS, WHICH I BELIEVE WOULD BE EFFECTIVE.

17         ARGUABLY SOMETIMES IT MIGHT NOT BE, BUT IN THIS CASE

18  IT WOULD BE BECAUSE CYPRESS HAS A GREAT ARGUMENT.  IT WOULD --

19  THE LIMITING INSTRUCTION COULD BE AS STRONG AS YOU CAN WRITE IT,

20  AND IT WOULD INCLUDE SUCH THINGS AS DURING THE TIME OF THIS DRAM

21  CONSPIRACY, CYPRESS DIDN'T EVEN PRODUCE DRAM.

22         SO CYPRESS, I THINK, IS ACTUALLY HELPED BY THE FACT

23  THAT THEIR CODEFENDANT PLED GUILTY AND THEY WEREN'T EVEN IN THE

24  MARKET.  SO I JUST DON'T SEE ANY PREJUDICE TO CYPRESS FROM

25  HAVING THAT IN.  ON THE OTHER HAND, I DO THINK IT'S RELEVANT TO

1    SRAM, GOING TOWARDS STATE OF MIND, INTENT, KNOWLEDGE,

2    UNDERSTANDING, PARTICIPATION, MARKET CONDITIONS, PARTICIPANTS,

3    ALL OF THOSE KINDS OF THINGS.

4              SO THAT'S MY THOUGHT ON THAT ONE.

5              NO. 2, EXCLUDE DISCOVERY FROM SETTLING DEFENDANTS.

6    IN TERMS OF SAMSUNG'S ANSWERS, ADMISSIONS, THAT SORT OF THING,

7    THOSE WOULD BE ADMITTED.  THEY'RE AGAIN A LIMITING INSTRUCTION

8    THAT I THINK WOULD BE EFFECTIVE UNDER THESE CIRCUMSTANCES.

9              THE -- THE DISCOVERY EXCERPTS FROM CODEFENDANTS

10   WOULD, GENERALLY SPEAKING, BE HEARSAY AND WOULDN'T COME IN

11   AGAINST ANYBODY.  THEY'RE -- SINCE THEIR DISCOVERY, THEY'RE

12   UNLIKELY TO BE WITHIN THE SCOPE AND FURTHERANCE OF THE

13   CONSPIRACY SO THEY'RE NOT 803 STATEMENTS.  THEY'RE JUST

14   STATEMENTS THAT WOULD COME IN IF THEY WERE PARTIES.

15             THE ONLY EXCEPTION I WOULD SEE WOULD BE IF THERE ARE

16   ACTUALLY ADMISSIONS AGAINST INTEREST WHICH IS -- HAS SOME TEETH

17   TO IT.

18             ADMISSIONS AGAINST THEIR PECUNIARY OR PENAL INTEREST,

19   PERHAPS THOSE WOULD COME IN; BUT, OTHERWISE, THOSE THINGS

20   WOULDN'T COME IN.

21             NOW, YOU'RE SAYING THAT SOME OF THEM ARE PURELY

22   FACTUAL, JUST, YOU KNOW, HOUSE-CLEANING KINDS OF THINGS, WHO

23   WORKED FOR WHO AT WHAT TIME PERIOD, AND THAT SORT OF THING.  I

24   SHOULD THINK YOU'D BE ABLE TO STIPULATE TO THINGS LIKE THAT.  WE

25   WOULDN'T NEED TO PUT IN A DISCOVERY RESPONSE TO PROVE THAT JOHN

1    DOE WORKED FOR MICRON FROM X DATE TO Y DATE, AND HOPEFULLY YOU

2    COULD WORK THOSE THINGS OUT.

3           NO. 3, DISALLOW SPECIAL VERDICT APPORTIONING

4    SAMSUNG'S LIABILITY.  I MUST SAY I HAVE NEVER HEARD OF THIS

5    NOTION ABOUT COOPERATING, GOING TO TRIAL, AND THEN HAVING A

6    BENEFIT AFTERWARDS.  IT'S NOT HOW THEY DO IT ON THE CRIMINAL

7    SIDE.  IF YOU COOPERATE, YOU DON'T GET TO GO TO TRIAL AND PLEAD

8    NOT GUILTY AND CONTEST THE CASE.  BUT IF THAT'S HOW IT IS,

9    THAT'S HOW IT IS.

10          AND I TEND TO THINK THAT THERE MAY NOT BE A SEVENTH

11   AMENDMENT RIGHT THERE BECAUSE THE -- WHAT YOU HAVE A RIGHT TO

12   UNDER THE SEVENTH AMENDMENT IS ANTITRUST DAMAGES.  IF YOU'RE

13   GETTING A LITTLE BENEFIT ON THE SIDE FROM THAT DEAL THAT YOU'VE

14   MADE WITH THE DEPARTMENT OF JUSTICE, I'M JUST NOT SURE THAT'S

15   THE SUBJECT OF THE SEVENTH AMENDMENT.

16          BUT IN AN ABUNDANCE OF CAUTION AND BECAUSE IT MIGHT

17   BE USEFUL FOR OTHER THINGS, I DON'T HAVE A PROBLEM WITH MAKING

18   THE JURY APPORTION SAMSUNG'S DAMAGE, AND IF THAT, THEN CYPRESS'

19   DAMAGES AS WELL IF ONLY SO IT DOESN'T LOOK ODD.

20          BUT IT MIGHT ALSO BE HELPFUL IN TERMS OF -- YOU KNOW,

21   WE MIGHT WANT TO HAVE THEM APPORTION EVERYBODY'S PARTICIPATION

22   SO THAT WE CAN DEAL WITH THIS APPORTIONMENT PROBLEM AND WITH THE

23   TREATMENT OF SETTLEMENT AMOUNTS PROBLEM.

24          EXCLUDE CUSTOMER/VENDOR RELATIONSHIPS.

25          OH, I'M SORRY.  NO. 4, EXCLUDE EXPERT WITHIN THAT

```
 1    SURPRISE INFLATION EVIDENCE IS CONSPIRACY.  I THINK THAT'S

 2    ADEQUATELY DISCLOSED, AND I THINK IT'S SORT OF COMMON-SENSE

 3    INFERENCE THAT ONE COULD ARGUE.  SO THAT, I WOULD NOT BE

 4    INCLINED TO EXCLUDE.

 5              NO. 5, EXCLUDE CUSTOMER/VENDOR RELATIONSHIPS.  I

 6    WOULD BE INCLINED TO DENY THAT, ALTHOUGH I'M JUST READING MY

 7    NOTES AT THE MOMENT.  I CAN'T REMEMBER WHAT THAT EVEN IS, BUT

 8    WHEN I READ IT, I THOUGHT IT SHOULD BE DENIED.

 9              SAMSUNG'S MOTIONS IN LIMINE, NO. 1 IS TO EXCLUDE THE

10    DRAM GUILTY PLEAS.  AGAIN, I WOULD NOT EXCLUDE THOSE, OR THAT

11    WOULD BE MY INCLINATION.

12              NO. 2, EXCLUDE THE DRAM/SRAM INVESTIGATION.  AND,

13    AGAIN, I'VE SAID THAT I WOULD BE INCLINED TO EXCLUDE THE SRAM

14    INVESTIGATION.  SO THE ONLY UNCERTAINTY THERE IS THE LENIENCY

15    AGREEMENT AND WHETHER THAT IN ITSELF CONTAINS SOME SORT OF

16    IMPEACHMENT OR BIAS INFORMATION.

17              AND I WOULD BE WILLING TO LOOK AT THE LENIENCY

18    AGREEMENT AND SEE WHAT IT SAYS AND CONSIDER WHETHER THAT WOULD

19    BE ADMISSIBLE FOR SOME REASON.

20              NO. 3, EXCLUDE EVIDENCE OF DRAM CONDUCT.  AGAIN, THAT

21    WOULD BE DENIED.  I DON'T WANT WHOLE TRIAL TO BE ABOUT DRAM, BUT

22    TO THE EXTENT IT SHOWS A SIMILAR MO OR IS PROBATIVE OF INTENT OR

23    KNOWLEDGE OR PURPOSE, THEN SOME OF THAT WOULD COME IN.

24              NO. 4, EXCLUDE EVIDENCE OF CONDUCT OF OTHER NON-SRAM

25    PARTIES, I GUESS IT IS.  THAT'S NOT OPPOSED AND WOULD BE
```

```
1    GRANTED.

2           NO. 5, EXCLUDE WHAT -- THE WAY THEY FRAME IT IS

3    EXCLUDE EVIDENCE CONTRARY TO LEVY'S OPINIONS.  I DON'T THINK

4    THAT'S WHAT YOU REALLY MEAN.  BUT PLAINTIFFS DON'T REALLY

5    ADDRESS IT HEAD ON.  WHAT THEY'RE TRYING TO SAY IS TO EXCLUDE

6    EVIDENCE THAT THINGS THAT LEVY SAID DIDN'T HAPPEN, IN FACT, DID

7    HAPPEN.

8           IN OTHER WORDS, THEY DON'T WANT -- IF LEVY SAYS

9    THERE'S NO DAMAGE FROM PSRAM DURING THE DAMAGE PERIOD, THEN YOU

10   CAN'T COME IN WITH EVIDENCE THAT THERE IS, IS WHAT THEY'RE

11   TRYING TO SAY.  AND YOU DIDN'T REALLY TAKE THAT ON HEAD ON, IN

12   MY VIEW, IN YOUR OPPOSITION, WHETHER YOU DIDN'T UNDERSTAND THAT

13   THAT WAS WHAT THEY WERE SAYING OR YOU DIDN'T HAVE A BETTER

14   ANSWER OR WHATEVER.  BUT THAT, I THINK MAYBE I NEED TO HEAR FROM

15   THE PLAINTIFFS AGAIN ON BECAUSE IT WASN'T REALLY ADDRESSED.

16          NO. 6, EXCLUDE FOREIGN TRADE PURCHASES.  WELL, THIS

17   GETS INTO THE FTAIA SUMMARY JUDGMENT MOTION WHICH I APOLOGIZE I

18   HAVE NOT BEEN ABLE TO GET OUT ALONG WITH THE PSRAM PORTION OF

19   ONE OF THE MOTIONS.

20          IF WE HAD TIME, I'M GOING TO TRY TO TELL YOU WHAT I'M

21   THINKING ABOUT THOSE.  I HAVE A FEW QUESTIONS.  I MIGHT EVEN

22   ENTERTAIN LIMITED ARGUMENT ON THOSE.  BUT ALL I CAN SAY AS FAR

23   AS THE MOTION IN LIMINE WOULD BE THAT EVEN IF THOSE TRANSACTIONS

24   WERE NOT SUFFICIENT TO SUPPORT DAMAGE CLAIMS, THAT WOULDN'T

25   NECESSARILY MEAN THAT FOREIGN CONDUCT WAS INADMISSIBLE.  THE
```

1  CONDUCT MIGHT WELL BE ADMISSIBLE TO THE EXTENT IT IS RELEVANT TO

2  WHAT HAPPENED OR PEOPLE'S INTENT FOR MOTIVATION OR SO ON.

3          NO. 7, EXCLUDE FAVORABLE TREATMENT BY SAMSUNG OF ITS

4  EMPLOYEES WHO WERE INVOLVED IN DRAM.  I WOULD TEND TO DENY THAT.

5  THE ONLY THING I MIGHT EXCLUDE WOULD BE IF THEY PAID THE

6  ATTORNEYS' FEES OF THEIR EMPLOYEES.  NOW, THAT'S -- SOMETIMES

7  COMES UP IN CASES WITH CORPORATIONS AND AT LEAST IN CALIFORNIA,

8  THERE'S ARGUMENT THAT CAN BE MADE, I BELIEVE, THAT THE

9  CORPORATION HAS TO PAY ITS EMPLOYEES ATTORNEYS' FEES, AND EVEN

10 THOUGH THAT MIGHT SEEM FISHY TO A JURY, IT'S NOT -- IT ISN'T

11 FISHY, AND THEY SHOULDN'T BE ALLOWED TO THINK THAT IT IS.

12         SO I WOULD POSSIBLY EXCLUDE EVIDENCE THAT THEIR

13 ATTORNEY'S FEES WERE PAID, BUT I THINK THAT I WOULD ALLOW

14 EVIDENCE THAT THEIR CONDUCT WAS PERHAPS ARGUABLY RATIFIED OR

15 REWARDED OR SOME SUCH THING IF THERE WAS EVIDENCE TO THAT

16 EFFECT.

17         NO. 8, EXCLUDE UNCERTIFIED TRANSLATIONS.  WELL, ON

18 THE ONE HAND, IF WE'RE RELYING ON A TRANSLATION, WE NEED TO HAVE

19 IT BE RIGHT, SO WE NEED TO HAVE CERTIFIED TRANSLATIONS

20 AVAILABLE.  BUT ON THE OTHER HAND, IF THE FACT OF AN ERRONEOUS

21 TRANSLATION IS ACTUALLY RELEVANT IN SOME WAY, THEN THAT WOULD

22 NOT BE EXCLUDED.

23         FOR EXAMPLE, IF SAMSUNG HAD MADE SOME TRANSLATION

24 WHICH WAS ACTUALLY WRONG BUT HELPED THEM SOMEHOW, AND THEY USED

25 IT, I COULD SEE THAT COMING IN.

```
 1              AND THEN WE HAVE EXCLUDE STRICKEN EVIDENCE FROM

 2    COMPLAINT.  WELL, I'VE NEVER GIVEN A COMPLAINT TO A JURY.  I'VE

 3    NEVER READ A COMPLAINT TO A JURY.  SO I THINK IT'S KIND OF MOOT

 4    UNLESS YOU REALLY WANT TO GIVE THE JURY THE COMPLAINT.

 5              AND IF YOU DID, THEN YES, WE WOULD HAVE A SORT OF

 6    SANITIZED VERSION OF THE COMPLAINT THAT DOESN'T HAVE BIG BLACK

 7    MARKS IN IT.  WE'D MAKE IT LOOK LIKE IT WAS THE COMPLAINT,

 8    BUT -- BUT MY GENERAL SOLUTION WOULD BE WE JUST DON'T GIVE

 9    COMPLAINTS TO JURIES.

10              SO THOSE ARE MY THOUGHTS ON THE MOTIONS IN LIMINE.

11              THE VERDICT FORMS, WE CAN'T -- I MEAN, YOU'RE

12    OBVIOUSLY NOT IN A POSITION TO PROPOSE VERDICT FORMS WITHOUT

13    KNOWING WHAT WILL BE SUBMITTED TO THE JURY, SO I DON'T THINK

14    THERE'S MUCH POINT IN TALKING ABOUT THOSE AT THIS TIME.

15              AND THE SAME GOES TO SOME DEGREE FOR THE

16    INSTRUCTIONS, ALTHOUGH I WILL GIVE YOU SOME GENERAL THOUGHTS

17    THAT I HAVE ABOUT YOUR PROPOSED INSTRUCTIONS.  AND THOSE ARE

18    THAT I'D LIKE FOR YOU TO GO BACK TO THE DRAWING BOARD AND

19    NEGOTIATE THEM.

20              NUMBER ONE, IF THERE'S A NINTH CIRCUIT MODEL

21    INSTRUCTION ON POINT, I WILL GIVE IT.  AND I WILL NOT MODIFY IT

22    UNLESS THERE'S SOME REALLY GOOD REASON TO MODIFY IT, LIKE A

23    SUBSEQUENT CASE HAS SAID IT'S REVERSIBLE ERROR IN THE NINTH

24    CIRCUIT.

25              I GATHER THE NINTH CIRCUIT DOESN'T HAVE ANY ANTITRUST
```

1    INSTRUCTIONS.  AND FROM WHAT I'VE READ, IT SOUNDED TO ME LIKE

2    THE ABA ONES WERE PRETTY GOOD, SO I WOULD SAY IF THERE'S NO

3    NINTH CIRCUIT INSTRUCTION, I WOULD BE INCLINED TO USE THE ABA

4    INSTRUCTION AS IS WITHOUT ANY CHANGES EITHER TO ADD OR TO

5    SUBTRACT UNLESS THERE WAS AN ACTUAL CASE THAT SAID THIS WOULD BE

6    REVERSIBLE ERROR.

7            THE -- I DON'T KNOW ABOUT -- THE NINTH CIRCUIT MIGHT

8    HAVE SOME CONSPIRACY INSTRUCTIONS, BUT MAYBE THOSE AREN'T REALLY

9    FOCUSED ENOUGH ON ANTITRUST CONSPIRACY TO BE USABLE.

10           THE INSTRUCTIONS NEED TO BE AS SHORT AS THEY CAN BE.

11   THEY NEED TO BE IN VERY SIMPLE LANGUAGE.  THINK POSTAL WORKERS,

12   PEOPLE WHOSE ENGLISH IS THEIR SECOND LANGUAGE.  YOU KNOW, NO

13   FIVE-SYLLABLE WORDS, NO TERMS OF ART, NOTHING IN LATIN.

14           IT MAY NOT BE REPETITIVE.  I DON'T WANT TO BE READING

15   THE SAME THING OVER AND OVER AGAIN.  IT MAY NOT ARGUMENTATIVE.

16   YOU NEED TO NEGOTIATE THESE THINGS OUT AND COMPETE WITH EACH

17   OTHER AS TO WHO CAN WRITE THE MOST NEUTRAL STATEMENT OF LAW, NOT

18   WHO CAN SQUEEZE IN THE MOST ARGUMENT FOR THEIR CASE IN THE

19   COURSE OF THE INSTRUCTION, BECAUSE I'M JUST NOT GOING TO GIVE

20   INSTRUCTIONS LIKE THAT.  SO THINK NEUTRALITY AND COME UP WITH

21   THINGS THAT -- THAT SEEM TO BE NEUTRAL STATEMENTS OF THE LAW.

22           JUST BECAUSE SOME CASE SAID IT AND YOU LIKE IT,

23   SOUNDS GOOD, AND IT'S SOMETHING YOU'D WANT TO SAY IN YOUR

24   CLOSING ARGUMENT DOESN'T MEAN IT'S GOING TO BE IN THE JURY

25   INSTRUCTION.  SO DON'T BE SPENDING A LOT OF TIME WRITING LONG

1    BRIEFS ABOUT HOW THIS PHRASE THAT YOU LIKE SHOULD BE IN THERE

2    BECAUSE SOME CASE SAID IT AND --

3            NOW, SOMEBODY SAID I SHOULDN'T BE GIVING ANY

4    SUBSTANTIVE INSTRUCTIONS IN THE PRELIMINARY INSTRUCTIONS.  I

5    ACTUALLY NOWADAYS GIVE ALMOST ALL THE SUBSTANTIVE INSTRUCTIONS

6    AT THE BEGINNING.  I FIND THAT JURIES UNDERSTAND THINGS A LOT

7    MORE THAN TRYING LISTEN TO THE WHOLE CASE NOT EVEN KNOWING WHAT

8    IT IS THEY'RE GOING TO BE DECIDING OR WHY ANY OF THIS STUFF EVEN

9    MATTERS.

10           SO WHAT I DO NOW IS GIVE AS MUCH AS I POSSIBLY CAN AT

11   THE BEGINNING.  IF SOME -- AND I TELL THEM, YOU KNOW, THIS IS A

12   PRELIMINARY VERSION.  THE FINAL VERSION MAY DIFFER.  THROW AWAY

13   THE PRELIMINARY VERSION.  DON'T CONCERN YOURSELF WITH ANY

14   DIFFERENCES.  SO IF IT TURNS OUT WE DO HAVE TO CHANGE SOMETHING

15   LATER, WE JUST CHANGE IT.  BUT THEY UNDERSTAND A LOT MORE WHAT'S

16   GOING ON.  SO WE WILL TRY TO HAVE AS MUCH AS WE CAN IN THE

17   PRELIMINARY INSTRUCTIONS.

18           WE -- I DON'T WANT THE INSTRUCTIONS TO COMMENT ON THE

19   EVIDENCE OR TO SORT OF REHASH THE EVIDENCE.  NUMBER ONE, YOU'LL

20   NEVER BE ABLE TO AGREE ON THOSE.  EVERYBODY WILL WANT TO WRITE

21   IT UP IN THEIR OWN WAY.  AND NUMBER TWO, THAT'S JUST NOT THE

22   ROLE OF INSTRUCTION.  SO YOU MIGHT HAVE TO REFER TO THE EVIDENCE

23   IN ORDER SIMPLY TO SAY WHY YOU'RE TELLING ME THIS.  YOU KNOW,

24   BOTH SIDES CALLED EXPERTS, SO HERE'S HOW YOU JUDGE EXPERT

25   TESTIMONY, THAT SORT OF THING.  BUT WE WOULDN'T BE HAVING

```
 1    LANGUAGE PARAGRAPHS SAYING WHAT ONE EXPERT SAID AND WHAT THE

 2    OTHER EXPERT SAID.

 3           IF YOU ARE -- WELL, WHEN YOU GIVE ME YOUR NEXT

 4    VERSION -- AND ASSUMING YOU ARE USING LARGELY NINTH CIRCUIT AND

 5    ABA INSTRUCTIONS BUT YOU'RE MODIFYING THEM TO SOME DEGREE, WHAT

 6    I'D LIKE IS A REDLINE VERSION THAT TELLS ME EXACTLY WHERE YOU

 7    MODIFIED IT, WHAT WAS TAKEN OUT, WHAT WAS ADDED IN SO I CAN

 8    JUDGE WHETHER I WANT TO DO IT OR NOT.

 9           IN THIS VERSION I GOT, WE WENT THROUGH THE WHOLE

10    CONSPIRACY ABOUT THE DP'S, AND THEN WE WENT AGAIN AND DID IT ALL

11    OVER AGAIN WITH THE IPP'S.  MAYBE YOU DIDN'T MEAN THAT, BUT IN

12    ANY EVENT, WE WOULDN'T DO THAT.  IF WE TRY THE CONSPIRACY

13    TOGETHER WITH BOTH, WE GIVE ONLY ONE SET OF INSTRUCTIONS.

14           AND I WOULDN'T IMAGINE THE JURY WOULD EVEN

15    PARTICULARLY HAVE TO KNOW ANYTHING ABOUT THE DIFFERENCE BETWEEN

16    DP'S AND IP'S OR HAVE ANY -- CONCERN THEMSELVES WITH THAT.

17           THE -- WELL, I WOULDN'T MIND TALKING A LITTLE BIT

18    ABOUT THE PSRAM ISSUE AND THE FOREIGN TRADE ISSUE, BUT MAYBE

19    WHAT I SHOULD DO BEFORE TURNING TO THAT WOULD BE TO ASK ANY OF

20    YOU TO TELL ME WHAT PORTIONS OF WHAT I SAID SO FAR YOU AGREE

21    WITH AND WHAT PORTIONS YOU FEEL COMPELLED TO ARGUE.

22           MR. McGINNIS:  YOUR HONOR, LET ME ADDRESS WHAT I

23    THINK IS PERHAPS MOST PRESSING.  WHICH IS HOW WE'RE GOING TO TRY

24    THIS CASE.  AND I HAVE TO SAY THAT I THINK THE WAY THAT THE

25    COURT IS THINKING ABOUT BIFURCATING THIS IS THE ROAD TO RUIN AND
```

1    THE ROAD TO UNNECESSARY APPELLATE ISSUES.  AND I'LL TELL YOU

2    WHY.

3              THE PLAINTIFFS -- AND I STUDIED THEIR WITNESS LIST --

4    HAVE 32 FACT WITNESSES.  PUTTING ASIDE THOSE THAT HAVE STARS ON

5    THEM THAT ARE CUSTODIANS OR WHATEVER, THEY HAVE 32 WITNESSES.

6    AND I ASSUME THAT THESE ARE PUT IN THERE IN GOOD FAITH AND

7    THAT'S WHAT THEY FEEL THEY NEED TO PROVE THE CASE.

8              WE OURSELVES HAVE ANOTHER DOZEN TO 18, AND I CAN TELL

9    YOU THAT EVERY ONE OF THOSE WITNESSES IS GOING TO TESTIFY IN A

10   PHASE ABOUT LIABILITY.  I HAVE YET TO HEAR THE PLAINTIFFS SAY

11   ANYTHING ABOUT, WELL, THIS MEANS THAT WE CAN CUT DOWN SOME OF

12   OUR WITNESSES.  THIS WITNESS DOESN'T NEED TO TESTIFY, THAT

13   WITNESS DOESN'T NEED TO TESTIFY.

14             **THE COURT:**  WELL, AS FAR AS THE DP'S GO, THEY WOULD

15   BE TRYING THEIR WHOLE CASE AT ONCE.

16             **MR. McGINNIS:**  OKAY.

17             **THE COURT:**  THEY WOULD BE DOING LIABILITY FIRST, THEN

18   IP'S WOULD GO AWAY, AND THE DP'S WOULD FINISH UP THEIR CASE.  SO

19   AS FAR AS THEIR CASE WENT, IT WOULD BE TRIED ALL AT ONCE.

20             **MR. McGINNIS:**  ALL RIGHT.  THEN I MUST HAVE

21   MISUNDERSTOOD YOUR HONOR BECAUSE I THOUGHT YOU WERE TALKING

22   ABOUT PHASING THE VERDICT ABOUT LIABILITY BEFORE A VERDICT --

23   BEFORE CONTINUING WITH IMPACTED DAMAGES.

24             **THE COURT:**  OH, WELL --

25             **MR. McGINNIS:**  BECAUSE IF -- IF -- IF THE JURY IS TO

1   REACH A VERDICT -- A SINGLE VERDICT ABOUT WHETHER THERE IS

2   LIABILITY OR NOT, ALL OF OUR WITNESSES' TESTIMONY BUT FOR A

3   COUPLE HOURS OF DR. RUBINFELD WOULD TESTIFY, AND I BELIEVE ALL

4   OF THEIRS WOULD COME IN, TOO.

5           SO I SEE NO SAVING OF TIME THAT WAY WHATSOEVER.

6           AND --

7           **THE COURT:**  WELL, IT SAVES HAVING TO DO ALL THE

8   DAMAGES FOR DP'S AT THE SAME TIME AS -- FOR THE IP'S AT THE SAME

9   TIME AS THE DP'S.

10          **MR. McGINNIS:**  I SUPPOSE THAT WOULD -- I SUPPOSE IT

11  WOULD SAVE THAT, YOUR HONOR.  BUT UNLESS THE COURT HAS

12  ESSENTIALLY AGREED WITH OUR SECOND PREFERENCE, WHICH WAS WE WILL

13  TRY THE DIRECT PURCHASER CASES FROM START TO FINISH, LIABILITY

14  THROUGH DAMAGES, THE JURY GETS A SPECIAL VERDICT FORM WHICH HAS

15  ALL OF THOSE QUESTIONS ON IT, THEN THERE'S A REAL PROBLEM.

16          BUT IF WHAT THE COURT HAS IN MIND IS -- JUST TO BE

17  REAL SPECIFIC ABOUT THIS, IF THE JURY GETS A SPECIAL VERDICT

18  FORM THAT HAS ALL THE QUESTIONS ABOUT LIABILITY AND IMPACT

19  DAMAGES AND THOSE SORTS OF THINGS, I THINK WE CAN LIVE WITH

20  THAT.

21          WHAT WE CAN'T LIVE WITH IS SIMPLY A PHASE WHERE THE

22  JURY ADDRESSES LIABILITY ONLY.  AND I CAN'T SEE IT SAVES ANY

23  TIME, AND I SEE THAT IT CAUSES CONFUSION.

24          **THE COURT:**  YEAH, I ACTUALLY HADN'T THOUGHT ABOUT

25  WHETHER WE WOULD HAVE THE JURY RETURN THE VERDICT ON LIABILITY

1    BEFORE WE WENT ON TO THE DP'S DAMAGES.  I GUESS WE PROBABLY

2    WOULD BECAUSE THE IP'S WOULD WANT TO LEAVE AT THAT POINT, SO I

3    THINK --

4              **MR. McGINNIS:**  I THINK --

5              **THE COURT:**  -- YOU'RE RIGHT, THAT WE WOULD -- THAT

6    THE JURY WOULD -- AS IN A SORT OF TYPICAL LIABILITY, SLASH,

7    DAMAGES BIFURCATION, THE JURY WOULD RETURN A VERDICT ON

8    LIABILITY, BUT ASSUMING IT WAS NOT A DEFENSE VERDICT, THEY WOULD

9    THEN GO ON TO DO DAMAGES BUT ONLY FOR DP'S.

10             **MR. McGINNIS:**  WELL, ASSUMING ALL OF THAT IS ON --

11   ALL OF THE DIRECT PURCHASERS' QUESTIONS ARE ON THE VERDICT FORM

12   THAT THE JURY IS LOOKING AT, THEN I THINK THAT'S OUR SECOND

13   SUGGESTION, WHICH WOULD BE -- WHICH WOULD PROBABLY BE OKAY,

14   ALTHOUGH IT'S NOT -- WASN'T OUR FIRST CHOICE.

15             BUT OTHERWISE, I THINK THAT IF THERE'S SOME ISSUE

16   ABOUT EVIDENCE COMING IN ON THE ISSUE OF LIABILITY THAT'S NOT

17   RELEVANT TO SOME OTHER THING, THAT'S -- THAT'S A BIG PROBLEM

18   BECAUSE I CAN TELL YOU THAT WE BELIEVE 95 PERCENT OF OUR

19   EVIDENCE SHOULD COME IN ON THE ISSUE OF LIABILITY.  AND I'VE

20   LOOKED AT ALL THE WITNESSES THAT DON'T HAVE STARS ON THEM AND

21   TRIED TO COME UP WITH A -- AN IDEA OF WHAT TRIAL TIME WOULD BE

22   AND I THINK FROM WHAT SAMSUNG NEEDS, WE'RE TALKING ABOUT ROUGHLY

23   15 TRIAL DAYS.

24             SO IF WE'RE GOING FROM START TO FINISH ON SAMSUNG AND

25   ALL THE ISSUES, AND THEN THE INDIRECT PURCHASERS WILL -- WILL

```
 1    WAIT AND SEE WHAT HAPPENS WITH THEM, I'M NOT SURE THAT'S THE

 2    MOST EFFICIENT WAY TO DO IT.  BUT THAT'S -- THAT WAS OUR OPTION

 3    NUMBER TWO, AND I THINK WE COULD LIVE WITH THAT.

 4              THE COURT:  WELL, YOUR OPTION NUMBER TWO HAD NO IP

 5    STUFF IN THE FIRST TRIAL, AS I UNDERSTOOD IT.  THE FIRST TRIAL

 6    WOULD BE ALL DP, AND THEN THE SECOND TRIAL WOULD HAVE TO START

 7    OVER AGAIN WITH CONSPIRACY FOR THE IP'S.  AND THAT SEEMED

 8    WASTEFUL TO ME TO TRY TO PROVE UP THE CONSPIRACY TWICE OR 25

 9    TIMES.

10              MR. McGINNIS:  WELL, I'M NOT SURE IF I CAN SPEAK TO

11    WHAT HAPPENS WITH THE IP'S BECAUSE WE'VE SETTLED WITH THEM.  I

12    CAN ONLY SPEAK TO HOW WE WANT OUR CASE TRIED, AND THAT WOULD BE

13    FROM START TO FINISH, WHICH SOUNDS LIKE WHAT THE COURT HAS IN

14    MIND.

15              THE COURT:  OKAY.  ANYBODY ELSE -- WELL, DO YOU

16    WANT -- WHAT SHALL WE DO?  DO YOU WANT TO LET HIM TALK ABOUT

17    EVERYTHING AND THEN EACH OF YOU TALK ABOUT EVERYTHING OR --

18              MR. COTCHETT:  I THINK WE OUGHT TO DIVIDE IT UP BY

19    SUBJECT MATTER.  IT WOULD BE EASIER JUST TO GET IT RIGHT OUT OF

20    THE WAY.

21              THE COURT:  OKAY.

22              MR. CONNELLY:  IF I MAY, I WON'T STEP ON YOUR LINES,

23    BUT I MEAN, CYPRESS HAS SOMETHING TO SAY JUST ABOUT THIS ISSUE,

24    BUT I'LL BE HAPPY TO FOLLOW YOU --

25              THE COURT:  GO AHEAD ON THE BIFURCATION ISSUE.
```

```
 1              THE REPORTER:  COULD YOU STATE YOUR APPEARANCE,

 2   PLEASE.

 3              MR. CONNELLY:  VINCENT CONNELLY ON BEHALF OF CYPRESS.

 4              JUDGE, LET ME SAY -- AND OVERALL, YOUR GIVING US

 5   THESE TENTATIVE RULINGS IS ENORMOUSLY HELPFUL BECAUSE IT PUTS

 6   THE BURDEN ON THE REST OF US NOW, THE PARTIES OF THE CASE, TO BE

 7   ADULT AND TO BE, YOU KNOW, SENSIBLE ABOUT SEEING WHETHER OR NOT

 8   THERE'S FURTHER MIDDLE GROUND THAT WE CAN BRING TO THE COURT'S

 9   ATTENTION.  SO, OBVIOUSLY, THAT'S A TASK THAT HOPEFULLY WILL

10   MAKE FOR A MORE EFFICIENT TRIAL.

11              THE ONLY MAJOR CONCERN THAT WE HAVE IN WHAT YOU'VE

12   TENTATIVELY TOLD US IS YOUR PREFERENCE IS ON THE QUESTION OF

13   BIFURCATION.  BUT FOR DIFFERENT REASONS, ALTHOUGH I'D HAVE TO GO

14   INTO THE WEEDS OF THE DETAILS AND WHY IT -- IT'S HARMFUL TO

15   CYPRESS'S POINT OF VIEW TO GET TO WHERE THE COURT PRESENTLY HAS

16   THE CASE SET UP.

17              CYPRESS WOULD MUCH PREFER THAT, AS A MATTER OF

18   SIMPLIFYING THE CASE, TO HAVE THE CASE ALL IN WITH THE DIRECT

19   PURCHASERS, BOTH LIABILITY AND DAMAGES ONLY WITH THE DIRECT

20   PURCHASERS.  WE THINK -- MAY NOT BE PERSUASIVE TO THE

21   PLAINTIFFS, BUT WE THINK THAT THAT WOULD START THE CASE OUT IN

22   THE MOST EFFICIENT MANNER AND THE FAIREST MANNER IN TERMS OF

23   AVOIDING SOME OF THE COLLATERAL ISSUES THAT I THINK ARE REALLY

24   GOING TO BE THORNY IF WE ONLY GO TO LIABILITY BECAUSE THERE'S

25   GOING TO BE HUGE DIFFERENCES OF OPINION ABOUT EXACTLY HOW MUCH
```

1    INFORMATION SHOULD BE BROUGHT TO BEAR TO THE JURY IF IT'S ONLY

2    THAT.

3              **THE COURT:**  RIGHT, BUT LET ME JUST INTERRUPT YOU.

4              SO YOU'RE SAYING DO THE ENTIRE IP CASE, INCLUDING ALL

5    25 STATES --

6                        (SIMULTANEOUS COLLOQUY.)

7          **MR. CONNELLY:**  I MAY HAVE MISSPOKEN.  DO THE ENTIRE

8    DIRECT PURCHASER CASE.

9              **THE COURT:**  OH, THAT IS -- THAT'S MY IDEA.

10         **MR. CONNELLY:**  BUT NOT WAY -- WELL, THE WAY -- AS I

11   UNDERSTOOD WHAT THE COURT -- WHERE THE COURT WAS LEANING WAS

12   LET'S DO BOTH DIRECT AND INDIRECT, BUT LET'S JUST DO LIABILITY,

13   AND THEN WE'LL START PARSING IT OUT.

14             **THE COURT:**  WELL, JUST DO CONSPIRACY REALLY, 'CAUSE

15   IMPACT IS PART OF LIABILITY.

16                        (SIMULTANEOUS COLLOQUY.)

17         **MR. CONNELLY:**  MY FAULT FOR -- SOMETIMES I THINK WE

18   TEND TO TOSS THOSE TERMS AROUND SYNONYMOUSLY, AND I APPRECIATE

19   THAT THEY'RE NOT QUITE THE SAME.

20             I'M SUGGESTING, THOUGH, THAT IT WOULD BE, I THINK,

21   MORE EFFICIENT TO DO THE ENTIRE CASE, ONLY THE DIRECT PURCHASER

22   CASE, BOTH LIABILITY AND DAMAGES IN THAT CASE.  AND THEN LET

23   THE -- LET THE INDIRECT PURCHASERS AND THE -- AND WHATEVER

24   REMAINS OF THE CASE SORT IT OUT AFTERWARDS.

25             **THE COURT:**  I'M NOT SURE WE'RE -- I'M NOT SURE WHAT

 1   YOU'RE SAYING.  MY IDEA IS TO DO CONSPIRACY FOR IP'S AND DP'S

 2   FIRST.

 3            **MR. CONNELLY:**  RIGHT.

 4        **THE COURT:**  REACH A VERDICT ON THAT.

 5            **MR. CONNELLY:**  I UNDERSTAND.

 6        **THE COURT:**  SEND THE IP'S HOME.

 7            **MR. CONNELLY:**  YES.

 8        **THE COURT:**  AND THEN GO ON TO IMPACT AND DAMAGES FOR

 9   THE DP'S ONLY.  AND THEN AFTER THAT, BRING THE IP'S BACK AND TRY

10   IMPACT AND DAMAGES AND A SERIES OF TRIALS WITH THE IP'S.

11            WHAT ARE YOU SAYING?

12            **MR. CONNELLY:**  I APPLAUD THE CONCEPT.  I DON'T THINK

13   ANYONE WOULD DEBATE THE CONCEPT.  IT'S VERY IMPORTANT FOR

14   EVERYBODY TO FOCUS ON HOW CAN WE DIVIDE THE CASE INTO A

15   MANAGEABLE, LOGICAL, SEQUENTIAL FASHION THAT YET AT THE SAME

16   TIME, YOU KNOW, MAKES IT MANAGEABLE.

17        **THE COURT:**  SO IS THERE SOME PART OF THAT THAT YOU

18   DISAGREE WITH?

19            **MR. CONNELLY:**  YES.

20        **THE COURT:**  WHICH PART IS IT?

21            **MR. CONNELLY:**  NOT HAVING BOTH OF THE PLAINTIFFS IN

22   THE CASE, IN THE INITIAL CASE.

23        **THE COURT:**  THEY BOTH ARE.

24            **MR. CONNELLY:**  UNDERSTOOD.  I UNDERSTAND, BUT I'M

25   SAYING, BUT A BETTER --

1          **THE COURT:**  OH, YOU --

2                      (SIMULTANEOUS COLLOQUY.)

3          **THE COURT:**  -- NOT THAT WAY.

4          **MR. CONNELLY:**  CORRECT.

5          **THE COURT:**  YOU WANT THEM NOT TO BE THERE.

6                      (SIMULTANEOUS COLLOQUY.)

7          **THE COURT:**  YOU WANT TO TRY THE WHOLE DP CASE WITHOUT

8   ANY IP'S AT ALL.

9          **MR. CONNELLY:**  THAT'S CORRECT.

10         **THE COURT:**  I CAN'T IMAGINE WHY YOU'D WANT THAT.

11   YOU'D HAVE TO HAVE YOUR CONSPIRACY TRIAL TWICE, AT LEAST TWICE.

12                      (SIMULTANEOUS COLLOQUY.)

13         **MR. CONNELLY:**  I DON'T PRETEND TO HAVE A CRYSTAL BALL

14   THAT'S ANYWHERE CLOSE TO GUARANTEE.  I JUST THINK BY THE NATURE

15   OF, AT LEAST HISTORICALLY, DIRECT PURCHASER/INDIRECT PURCHASER

16   LITIGATION AND WHETHER OR NOT IT'S SENSIBLE TO GO WITH BOTH AS

17   OPPOSED TO ONE, THAT THE INDIRECT PURCHASE CASES TEND TO SORT

18   THEMSELVES OUT ONCE THE WRITING IS ON THE CHALKBOARD, YOU KNOW,

19   FROM THE DIRECT PURCHASER CASE.

20         **THE COURT:**  YOU KNOW, I'VE JUST NEVER TRIED ONE, SO

21   I -- IF YOU PROMISE --

22                      (SIMULTANEOUS COLLOQUY.)

23         **THE COURT:**  THINK ABOUT IT.  BUT --

24                      (SIMULTANEOUS COLLOQUY.)

25         **THE COURT:**  AND I MIGHT HAVE TO TRY THE CONSPIRACY

1    TWICE.  I DON'T WANT TO DO THAT.

2              **MR. CONNELLY:**  WE'RE HAVING A DIFFICULT TIME.  THE

3    OTHER -- THE GENTLEMAN AT THE OTHER TABLE MAY HAVE BEEN ABLE TO

4    FIND IT.  WE CAN'T FIND PRACTICAL EXAMPLES OF BOTH DIRECT AND

5    INDIRECT PURCHASERS GOING INTO THE SAME TRIAL, AND I SUSPECT

6    THERE'S A REASON FOR THAT.

7              **THE COURT:**  MAYBE NOBODY EVER TRIED IT, BUT IT'S A

8    REALLY GREAT IDEA.

9              **MR. CONNELLY:**  WELL, THAT -- AS I SAY, THAT'S OUR

10   STRONG PREFERENCE.  I'LL GIVE THE PLAINTIFFS AN OPPORTUNITY TO

11   LET YOU KNOW WHETHER THEY AGREE OR DISAGREE OR WANT TO PUT A

12   VARIATION ON THAT.

13             **THE COURT:**  OKAY.  IT'S YOUR PREFERENCE, BUT I GATHER

14   YOU DON'T HAVE ANY ACTUAL LEGAL ARGUMENT AGAINST IT OR ANY --

15             **MR. CONNELLY:**  NO, WE'LL GET INTO THE WEEDS OF -- IF

16   WE GO WITH THE JUDGE'S -- WITH YOUR CURRENT PLAN, OUR PROBLEM

17   WILL BE IN TERMS OF HOW MUCH THE EVIDENCE PLAINTIFF THINKS THEY

18   CAN PUT IN IN ANY KIND OF A -- IN A BACK-DOOR WAY ABOUT DAMAGES

19   BECAUSE THEY NEED THAT INFORMATION TO PROP UP THEIR LIABILITY

20   EXPERT.

21             WE SAY THAT'S JUST NOT FAIR.  IF YOU'RE GOING TO PROP

22   UP YOUR LIABILITY EXPERT WITH THE FOUNDATION OF DAMAGE EXPERT

23   INFORMATION, THEN WE'VE GOT TO BRING OUR DAMAGE GUY IN TO

24   CONTEST IT, AND WE MIGHT AS WELL DO THE WHOLE THING AT ONCE.

25             **THE COURT:**  OKAY.

1          **MR. MICHELETTI:**  THANK YOU, YOUR HONOR.  CHRIS

2     MICHELETTI ON BEHALF OF THE INDIRECT PURCHASERS.  WE AGREE WITH

3     AND SUPPORT THE PROPOSAL THAT YOU'VE MADE.  WE THINK IT'S THE

4     MOST EFFICIENT ROUTE TO TAKE.

5          THE SUGGESTION THAT MR. CONNELLY JUST MADE, I

6     BELIEVE, ONE PROBLEM WITH THAT, IF -- IF SAMSUNG AND CYPRESS GO

7     FORWARD TOGETHER WITH JUST THE DIRECT PURCHASERS, IF FOR SOME

8     REASON CYPRESS FALLS OUT OF THAT CASE, THEN WE DO NOT HAVE ANY

9     COLLATERAL ESTOPPEL IN THAT CASE.  SO IT'S VERY IMPORTANT THAT

10    WE BE IN THERE AND TRYING THE CASE AGAINST BOTH OF THEM.

11          AND I DO THINK THAT WITNESS-WISE IT IS THE MOST

12    EFFICIENT APPROACH.  I'VE -- I DON'T KNOW EXACTLY HOW SAMSUNG

13    PLANS ON PRESENTING ITS CASE, BUT IT SEEMS TO ME JUST LOOKING AT

14    THE -- AT THE EXPERTS THAT THE DEFENDANTS HAVE, THAT THERE'S A

15    VERY NEAT DIVIDING LINE BETWEEN CONSPIRACY ON THE ONE HAND AND

16    IMPACT AND DAMAGES ON THE OTHER HAND.

17          THEY HAVE SEPARATE -- CYPRESS HAS SEPARATE EXPERTS.

18    ONE THAT DEALS WITH -- WITH CONSPIRACY AND ANOTHER THAT DEALS

19    WITH IMPACT AND DAMAGES.  SO I THINK THERE'S A VERY NEAT

20    DIVIDING LINE AND THAT WOULD BE THE MOST EFFICIENT.

21          **THE COURT:**  THAT DOES LEAVE OPEN -- AND THIS WOULD BE

22    SOMETHING THAT ONLY CYPRESS WOULD CARE ABOUT -- CYPRESS AND THE

23    IP'S, IS HOW WE WOULD THEN DEAL WITH ALL OF THE IP CASES AFTER

24    THAT, WHETHER WE WOULD SEND SOME BACK, WHETHER WE WOULD HAVE A

25    BELLWETHER, WHETHER WE WOULD DIVIDE THE STATES UP IN GROUPS OF

1    FIVE OR -- OR WHAT WE WOULD DO.  I SUPPOSE WE DON'T NEED TO

2    DECIDE THAT NOW, BUT --

3              **MR. MICHELETTI:**  WE DON'T, BUT I CAN PREVIEW THAT.  I

4    THINK WE HAVE BEEN WORKING WITH CYPRESS IN AN EFFORT TO

5    STREAMLINE THE JURY INSTRUCTIONS IN A WAY THAT WILL SIMPLIFY THE

6    PRESENTATION OF -- AND THE DETERMINATION OF BOTH -- BOTH

7    CONSPIRACY AND IMPACT AND DAMAGES FOR ALL THE STATES.

8              I MEAN, QUITE FRANKLY, I'M JUST NOT SURE THERE'S A

9    WHOLE LOT OF DIFFERENCE BETWEEN THEM, BETWEEN THE STANDARDS OF

10   THE STATES.  AND THEY COULD VERY WELL BE PRESENTED ASSUMING THAT

11   IT'S AGREED TO, AND I THINK IT IS.  I THINK THEY WANT THAT AND

12   HAVE INDICATED THAT IN THEIR PROPOSED JURY INSTRUCTIONS TO

13   DATE -- THAT WE CAN PRESENT PRETTY STREAMLINED, SIMPLIFIED JURY

14   INSTRUCTIONS THAT WOULD COVER THE VAST MAJORITY, IF NOT ALL THE

15   STATES.  TO THE EXTENT IT DOES NOT COVER SOME OF THEM, IT MAY

16   SIMPLY BECAUSE THEY'RE EQUITABLE CLAIMS THAT YOUR HONOR WOULD

17   DECIDE.

18             **THE COURT:**  WHAT DOES CYPRESS THINK JUST BRIEFLY

19   ABOUT HOW -- IF WE DID IT THE WAY I'M SUGGESTING, HOW WE WOULD

20   GO ABOUT DEALING WITH IP IMPACT AND DAMAGE CLAIMS AFTERWARDS?

21             **MR. CONNELLY:**  YEAH, I DON'T THINK, JUDGE -- AND

22   MAYBE I MISUNDERSTAND, BUT I DON'T THINK IT'S PERMISSIBLE UNDER

23   THAT -- UNDER THAT SCHEME TO SEND DAMAGES OFF TO OTHER JURIES

24   IF -- IF THE JURY HERE HAS MADE THE DETERMINATION ON CONSPIRACY.

25             **THE COURT:**  OH, YOU CAN.

```
1              YOU CAN BIFURCATE DAMAGES AND LIABILITY AND HAVE A

2    SEPARATE JURY DO THE DAMAGES.

3              MR. CONNELLY:  AND YOU'D SEND -- THEN YOU'D SEND

4    THOSE CASES OFF ALL DOWNSTREAM TO WHATEVER STATE COURSES ARE

5    NECESSARY AS WELL AS WHATEVER THIS COURT --

6                        (SIMULTANEOUS COLLOQUY.)

7              THE COURT:  WELL, I WOULD -- THAT'S WHAT I'M ASKING.

8              MR. CONNELLY:  OKAY.

9              THE COURT:  I WOULD CONCEIVABLY DO THEM ALL MYSELF OR

10   I MIGHT SEND THEM BACK JUST BECAUSE IT'S TOO MUCH TO DO MYSELF.

11   I DON'T THINK I CAN SEND THEM TO STATE COURT.  I THINK I HAVE TO

12   SEND THEM TO FEDERAL COURT.  BUT I'D SEND -- I'D BE OPEN TO

13   SENDING THEM SOMEWHERE IF I COULD GET ANYWHERE TO TAKE THEM.

14             MR. WINTERS:  GARY WINTERS ON BEHALF OF CYPRESS.  I

15   THINK WHAT WE'RE SAYING IS UNDER THE LEXECON DECISION, WHICH IS

16   THE DECISION --

17             THE COURT:  I'M FAMILIAR WITH LEXECON.

18             MR. WINTERS:  OKAY.  I THINK UNDER LEXECON, YOU'VE

19   GOT TO TAKE THE ENTIRE CASE AND SEND THE ENTIRE CASE BACK.  YOU

20   CAN'T TRY THE CONSPIRACY FOR A KANSAS CLASS OR A MASSACHUSETTS

21   CLASS HERE IN CALIFORNIA AND THEN SEND THE DAMAGES CLAIM BACK.

22   I THINK THAT'S WHAT WE'RE SAYING, IS LEXECON REQUIRES THAT

23   ENTIRE CASE TO GO BACK TO THE ORIGINAL DISTRICT.

24             THE COURT:  I DON'T AGREE THAT IT REQUIRES THE ENTIRE

25   CASE.
```

```
1        IF YOU'RE SAYING THAT LEXECON SOMEHOW AFFECTS

2   BIFURCATION --

3            MR. WINTERS:  NO, I THINK --

4            THE COURT:  -- I'M NOT FAMILIAR WITH THAT, BUT AS I

5   MENTIONED WHEN I FIRST STARTED, LEXECON -- THE POINT OF LEXECON

6   IS TO HONOR THE PLAINTIFF'S CHOICE OF FORUM.

7            MR. WINTERS:  AND --

8            THE COURT:  AND TO -- ONLY IF PERHAPS THERE WAS NO

9   JURISDICTION OR NO VENUE HERE WOULD I HAVE A PROBLEM.  BUT

10  THERE'S CLEARLY JURISDICTION AND VENUE HERE SINCE CYPRESS IS

11  HERE.  SO I DON'T THINK WE HAVE A LEXECON PROBLEM AT ALL, UNLESS

12  YOU'RE SOMEHOW SAYING THAT LEXECON IMPACTS BIFURCATION.

13           MR. WINTERS:  WE UNDERSTAND THE COURT'S VIEW ABOUT

14  THAT.  I THINK WE RESPECTFULLY DISAGREE.  WE THINK THAT LEXECON

15  DOES REQUIRE THAT THE CASE GO BACK IF THERE'S NOT CONSENT BY THE

16  DEFENDANT AS WELL.  BUT WE UNDERSTAND THAT THE COURT HAS A

17  DIFFERENT VIEW ABOUT THAT.

18           I JUST WANT TO PRESERVE OUR POSITION HERE THAT

19  BECAUSE OF LEXECON, THIS IDEA OF SPLITTING THE CONSPIRACY AND

20  THE DAMAGES FOR THE IP'S AND TRYING THE CONSPIRACY HERE AND

21  SENDING THE DAMAGES BACK TO THE STATES WOULD ALSO BE

22  INCONSISTENT WITH LEXECON.

23           WE UNDERSTAND THE COURT HAS A DIFFERENT VIEW ABOUT

24  LEXECON.

25           THE COURT:  WELL, I DON'T HAVE TO DO THAT IF YOU ALL
```

1    CAN AGREE ON SOME EFFICIENT METHOD OF TRYING ALL THE IP CLAIMS

2    HERE ALONG THE LINES OF WHAT COUNSEL WAS SAYING.  THEN I WOULD

3    ONLY BE TEMPTED TO SEND THEM BACK IF I HAD TO DO 25 TRIALS.

4              **MR. WINTERS:**  RIGHT.

5              **THE COURT:**  SO AND DP DISCLAIMS?

6              **MR. COTCHETT:**  YES.  THANK YOU, YOUR HONOR.

7              WE UNDERSTAND THE COURT'S -- THIS IS JOSEPH COTCHETT

8    FOR THE DIRECT PLAINTIFFS.

9              WE UNDERSTAND YOUR NEED FOR EFFICIENCY.  WE CERTAINLY

10   WELCOME IT.  WE ASKED FOR A BIFURCATION UNDER 42B.  WHAT WE

11   REALLY ASKED FOR WAS THIS, AND I THINK THERE'S A PRAGMATIC

12   ANSWER HERE.  I TEND TO AGREE WITH COUNSEL FROM CYPRESS THAT I

13   THINK WE'VE ALL LOOKED TO SEE HAS THIS EVER BEEN DONE BEFORE.

14             THE FACT OF THE MATTER IS WE CAN'T FIND ANY PLACE

15   IT'S EVER BEEN DONE.  IT'S UNIQUE.  CAFA IS INTERESTING.  CAFA

16   HAS NOW SHIFTED ALL THE BURDEN TO YOU FROM ACROSS THE STREET.  I

17   THINK IT MIGHT BE A PRACTICAL WAY.

18             WE DO NOT BELIEVE THAT THE IP SHOULD BE TRIED WITH US

19   FOR MANY DIFFERENT REASONS.  A, THEY ONLY SUED CYPRESS, SO A

20   WITNESS ON THE STAND, YOU'RE GOING TO HAVE TO GIVE A LIMITING

21   INSTRUCTION AS TO WHAT COMES IN AGAINST CYPRESS, WHAT COMES IN

22   AGAINST SAMSUNG.

23             WE HAVE INCONSISTENT TIME PERIODS.  WE'LL GET TO

24   THAT, I ASSUME, DURING THE DAMAGE PHASE, ALTHOUGH THAT WILL COME

25   IN UNDER THE CONSPIRACY PHASE AS WELL 'CAUSE THE JURY WILL HAVE

1    TO DETERMINE WHAT THE PERIOD WAS OF THE CONSPIRACY AS LAID OUT

2    BEFORE THEM.

3              WE GOT DIFFERENT PRODUCTS HERE.  THEY SUED AND

4    BROUGHT IN PSRAM.  WE ONLY HAVE SRAM.

5              **THE COURT:**  OH, REALLY?

6              **MR. COTCHETT:**  THAT'S ALL OUR -- WESTELL

7    UNFORTUNATELY BOUGHT.  I DON'T MEAN TO SAY "UNFORTUNATELY."

8              **THE COURT:**  OH, DOES THAT MEAN I DON'T HAVE DECIDE

9    THE PSRAM MOTION?

10             **MR. COTCHETT:**  WELL, THAT'S A VERY GOOD QUESTION.

11   AND I'M GOING TO DEFER TO MY COUNSEL ON THAT.  IT APPEARS TO ME

12   THAT THE WAY WE'RE SITTING PRESENTLY WITH OUR EXPERTS -- EXCUSE

13   ME -- WITH OUR PLAINTIFF, WE DO NOT HAVE.

14             THE ANSWER IS I DON'T WANT TO GO THERE.  I THINK YOU

15   DO HAVE TO DECIDE THAT BECAUSE IT IS A RELATED PRODUCT BUT A

16   DIFFERENT PRODUCT.  WE'LL COME BACK TO THAT.

17             YOU CAN SEE I'M NOT DANCING.

18             NOW, HAVING SAID THAT, HERE'S THE PRACTICAL ASPECT.

19   I THINK IF THIS CASE IS TRIED JUST BY THE DP'S -- AND I COUNTED

20   WITNESSES, TOO.  WE CAN TAKE THIS FROM A SIX-WEEK TRIAL DOWN TO

21   A FOUR-WEEK TRIAL.  WE CAN REALLY MAKE THIS THING HUM AND WORK.

22             **THE COURT:**  BUT I HAVE TO TRY THE IP CONSPIRACY ALL

23   OVER AGAIN --

24                       (SIMULTANEOUS COLLOQUY.)

25             **MR. COTCHETT:**  AND HERE'S WHERE I'M GOING ON THIS.

1    THERE ARE MANY WAYS THIS COULD BE SOLVED IF, FOR EXAMPLE,

2    COUNSEL FOR IP AND COUNSEL FOR CYPRESS -- THAT'S ALL WE'RE

3    TALKING ABOUT -- WOULD STIPULATE THAT WHATEVER THE JURY DID IN

4    THE FIRST TRIAL WOULD END THE CONSPIRACY PHASE.

5              FOR -- FROM A PRAGMATIC STANDPOINT, I CAN'T IMAGINE

6    THEY'RE GOING TO COME BACK AND TRY 12 DIFFERENT CASES SENT TO 12

7    DIFFERENT COURTS AND A MAJOR CASE HERE.  THAT ISN'T HOW THE

8    WORLD IS WORKING TODAY.

9              **THE COURT:**  NOT USUALLY, BUT THINGS HAPPEN.

10             **MR. COTCHETT:**  THINGS DO HAPPEN, AND THE EASIEST WAY

11   TO MAKE THIS TRIAL MOVE VERY QUICKLY IS THAT IF THE --

12   INDEPENDENT -- IP PEOPLE STIPULATED WITH CYPRESS THAT THE

13   CONSPIRACY CAN BE THE FINDING --

14             **THE COURT:**  IF YOU CAN --

15                  (SIMULTANEOUS COLLOQUY.)

16             **MR. COTCHETT:**  THAT WOULD END THE WHOLE THING.  WE

17   CAN START THIS TRIAL, BOOM, BOOM, BANG, BANG, THE WAY YOU RUN

18   THIS COURT, IT WOULD BE OVER IN THREE OR FOUR WEEKS.

19             **THE COURT:**  IF YOU CAN GET THEM TO AGREE TO THAT, I'D

20   BE HAPPY.

21             **MR. COTCHETT:**  WELL, UNDER 42B, YOU HAVE THE RIGHT TO

22   SEVER THAT, AND AT SOME POINT IN TIME, YOU'RE GOING TO DRIVE

23   THAT MESSAGE HOME.

24             **THE COURT:**  IF -- IF THEY WOULD STIPULATE TO IT, I

25   WOULD DEFINITELY DO IT.  IF ALL IT IS IS, OH, JUST GO AHEAD AND

```
 1    TRY THE SIX-WEEK TRIAL AND PROBABLY YOU WON'T HAVE TO DO IT OVER

 2    AGAIN --

 3              MR. COTCHETT:  IT'S NOT GOING TO BE A SIX-WEEK TRIAL

 4    WITHOUT THE IP'S IN HERE.  IT'S GOING --

 5              THE COURT:  AND IT'S INCONVENIENT.  I MEAN, WE HAVE

 6    ALL THESE KOREAN WITNESSES.  WE HAVE TO BRING ALL THESE PEOPLE

 7    OVER.  IT'S JUST --

 8              MR. COTCHETT:  YEAH.

 9              THE COURT:  I JUST DON'T SEE --

10                   (SIMULTANEOUS COLLOQUY.)

11              MR. COTCHETT:  -- PERSUASION BY THIS COURT AND OTHERS

12    CAN GET THEM TO COME TO SOME SORT OF STIPULATION.  YOU'VE GOT

13    RES JUDICATA TO DEAL WITH, TOO, I THINK.

14              THE COURT:  WELL, THAT'S WHY I WANT TO DO IT THIS

15    WAY.  THAT'S WHY I WANT TO DO IT THIS WAY.

16              MR. McGINNIS:  YOUR HONOR, IF YOU'LL INDULGE ME, I

17    JUST WANT TO MAKE SURE I'M NOT CONFUSED, WHICH IN MY CASE

18    HAPPENS WITH SOME FREQUENCY.  AND THAT IS SIMPLY SPEAKING IN

19    PRACTICAL TERMS, WHEN SAMSUNG SHOWS UP FOR TRIAL, MY

20    UNDERSTANDING OF WHAT THE COURT HAS IN MIND IS ALL OF OUR

21    EVIDENCE COMES IN, ALL OF THE ISSUES ARE BEFORE THE JURY,

22    THERE'S NO EVIDENCE THAT DOESN'T COME IN, AND THE JURY THEN

23    DECIDES ALL OF THE ISSUES, AND SOME POINT PERHAPS THE INDIRECT

24    PURCHASERS GO HOME AND THEY'RE NOT INVOLVED.

25              BUT WHAT WE'RE -- IF THERE'S SOME KIND OF -- IF THERE
```

```
 1   IS A SITUATION WHERE SOME EVIDENCE IS ADMISSIBLE ON ONE PHASE OR

 2   NOT ON ANOTHER, THAT'S WHETHER THE PROBLEM STARTS.  BUT WHAT I'M

 3   HEARING -- I THINK WHAT I HEARD FROM MR. COTCHETT WAS WHAT MAKES

 4   SENSE IS FOR ALL OF THE DIRECT PURCHASER ISSUES TO BE TRIED.  WE

 5   SHOW UP HERE.  WE ARE -- ALL THE OF THE ISSUES, ALL OF THE

 6   EVIDENCE, AND THEN THE COURT HAS -- WHETHER THEY SEND THE

 7   INDIRECT PURCHASERS HOME FOR ANOTHER PHASE, RATHER, FOR DAMAGES,

 8   THAT WOULD MAKE SENSE.

 9           BUT IF I MAKE ONE POINT CLEAR TO THE COURT TODAY,

10   MAYBE TWO, WHAT I'M -- WHAT I'M TRYING IS TO SAY THAT IF THERE'S

11   ANY PHASING THAT THE COURT HAS IN MIND THAT CAUSES EVIDENCE IN

12   THE COURT'S VIEW NOT TO BE ADMISSIBLE IN ONE OF THE PHASES, THAT

13   CAUSES SAMSUNG HUGE PROBLEMS.  AND I THINK IT CAUSES THE COURT

14   PROBLEMS.

15           THE COURT:  WELL, THE ADMISSIBILITY WOULD BE -- THE

16   THINGS THAT MR. COTCHETT WAS ALLUDING TO ARE THAT IT'S POSSIBLE,

17   ALTHOUGH I'M NOT SURE IT WOULD BE, THAT SOME EVIDENCE MIGHT BE

18   ADMISSIBLE AGAINST SAMSUNG BUT NOT AGAINST CYPRESS OR VICE VERSA

19   IN THE CONSPIRACY TRIAL.

20           WELL, THAT'S --

21           MR. McGINNIS:  IF I MAY, YOUR HONOR --

22           THE COURT:  THAT'S TRUE.  THERE WOULD BE -- LIKE

23   SAMSUNG'S ADMISSIONS, FOR EXAMPLE, WOULD BE ADMISSIBLE AGAINST

24   SAMSUNG BUT NOT --

25                   (SIMULTANEOUS COLLOQUY.)
```

1          **MR. McGINNIS:**  THAT'S A DIFFERENT ISSUE.

2          **THE COURT:**  BUT -- AND THEN -- THAT'S ONE ISSUE.  AND

3   THE OTHER ISSUE IS THAT GENERALLY SPEAKING, I WOULD WANT TO HEAR

4   CONSPIRACY EVIDENCE IN THE FIRST PHASE AND NOT IMPACT AND DAMAGE

5   EVIDENCE.  I WOULDN'T BE WILDLY STRICT ABOUT THAT IF THERE WAS

6   AN ARGUMENT THAT COULD BE MADE THAT IT WAS -- ALTHOUGH IT SEEMED

7   TO BE DAMAGES EVIDENCE, IT WAS RELEVANT TO THE CONSPIRACY.  I

8   WOULD PROBABLY ALLOW IT.

9          I WOULDN'T WANT TO -- I'D ERR ON THE SIDE OF ALLOWING

10  IT RATHER THAN SPENDING A LOT OF TIME PARSING IT OUT.  BUT IF IT

11  WAS CLEARLY RELEVANT ONLY TO DAMAGES, THEN, NO, IT WOULDN'T COME

12  IN ON THE LIABILITY --

13                    (SIMULTANEOUS COLLOQUY.)

14         **MR. McGINNIS:**  -- PRECISELY WHERE THE RUBBER MEETS

15  THE ROAD AND WHERE WE HAVE A PROBLEM, BECAUSE I THINK THAT THE

16  LIABILITY -- PARTICULAR -- NOT ONLY A LEGAL PROBLEM, BUT A

17  PRACTICAL PROBLEM ABOUT WITH WHETHER WE'RE ACTUALLY GOING TO

18  SAVE ANY TIME BECAUSE THE ISSUES OF LIABILITY IMPACT AND

19  DAMAGES --

20         **THE COURT:**  YOU AREN'T GOING TO SAVE ANY TIME.

21         **MR. McGINNIS:**  -- ARE ALL --

22         **THE COURT:**  YOU AREN'T GOING TO SAVE ANY TIME.

23         **MR. McGINNIS:**  WELL, THEN I WON'T WORRY ABOUT THAT

24  THEN.

25         **THE COURT:**  NO, I MEAN, YOU HAVE TO TRY THE WHOLE

```
 1    CASE SOMETIME --

 2              MR. McGINNIS:  THAT'S RIGHT.

 3              THE COURT:  -- AGAINST THE DP'S.  SO THIS WILL BE

 4    YOUR TRIAL, AND YOU WILL HAVE TO BE THERE FOR THE WHOLE THING

 5    AND IT'S NOT GOING TO BE ANY SHORTER FOR YOU THAN IT OTHERWISE

 6    WOULD.  IN FACT, IT MIGHT BE A LITTLE LONGER BECAUSE YOU'LL HAVE

 7    CYPRESS IN THERE, BUT IT WILL SAVE ME TIME HOWEVER.

 8                        (SIMULTANEOUS COLLOQUY.)

 9              THE COURT:  -- SAVE WITNESSES TIME, AND IT WILL SAVE

10    THE PLAINTIFFS' ATTORNEYS TIME.

11              MR. McGINNIS:  BUT WHAT CAUSES PROBLEMS, THOUGH, IS

12    TRYING TO PARSE WHAT EVIDENCE IS ADMISSIBLE ON LIABILITY OR

13    IMPACT OR DAMAGES OR WHAT ISN'T AND --

14              THE COURT:  WELL, YOU'LL HAVE TO COME UP WITH SOME

15    COLORABLE THEORY AS TO WHY SOMETHING IS ADMISSIBLE ON THE

16    CONSPIRACY THAT APPEARS TO BE ONLY ADMISSIBLE ON DAMAGES.  IF

17    YOU CAN COME UP WITH SOMETHING COLORABLE, I'LL LET IT IN.  IF

18    YOU CAN'T, THEN NO, IT'S DAMAGES EVIDENCE.

19              MR. McGINNIS:  WELL, THEN I GUESS I HAVE TO SAY I

20    RESPECTFULLY -- OUR RESPECTFUL BUT VEHEMENT VIEW IS THAT THAT

21    CAUSES UNNECESSARY EVIDENTIARY AND APPELLATE PROBLEMS TO TRY TO

22    DO THAT.  AND SINCE WE'RE NOT GOING TO SAVE ANY TIME --

23              THE COURT:  WE WILL --

24                        (SIMULTANEOUS COLLOQUY.)

25              THE COURT:  -- REVERSIBLE ABOUT IT.
```

```
 1                MR. McGINNIS:  WELL, IF THERE IS SOME EVIDENCE THAT

 2   WE THINK WAS ADMISSIBLE ON LIABILITY, SAY FROM AN EXPERT AND

 3   YOUR HONOR DID NOT, THEN THAT'S AN APPELLATE ISSUE.  AND I JUST

 4   DON'T SEE WHY WE NEED TO GO DOWN THAT ROAD.  AND IT -- YOU KNOW,

 5   WE WOULD LIKE TO SIMPLY SHOW UP, SAY HERE WE ARE, WE'RE READY TO

 6   TRY THE CASE, LET'S TRY IT FROM SOUP TO NUTS AND NOT HAVE THE

 7   ADDITIONAL WORRY ABOUT, GEE, IS THIS EVIDENCE GOING TO BE

 8   ADMISSIBLE IN THE FIRST PHASE OR NOT.

 9                THE COURT:  OKAY.

10                SO ARE WE DONE ON BIFURCATION, THEN?

11                MR. MICHELETTI:  WELL, I JUST WANT TO ADDRESS A

12   COUPLE POINTS THAT MR. COTCHETT MADE WITH REGARDS TO THIS GOING

13   FORWARD WITHOUT THE IPP'S.  I MEAN, MR. COTCHETT INDICATED THAT

14   THE TRIAL WOULD BE SHORTER.  I'M NOT NECESSARILY SURE THAT WOULD

15   BE THE CASE.  CYPRESS IS PART OF THE CONSPIRACY, AND THEY WOULD

16   NEED TO PUT ON EVIDENCE OF CYPRESS'S INVOLVEMENT.

17                THE COURT:  YEAH, I REALLY STILL THINK THAT THE WAY

18   I'VE SUGGESTED IS A GOOD WAY, SO IF YOU LIKE IT, THEN YOU DON'T

19   NEED TO --

20                MR. MICHELETTI:  I WILL STOP.

21                      (SIMULTANEOUS COLLOQUY.)

22                I DON'T LIKE IT SO I'M GOING TO --

23                      (OFF-THE-RECORD DISCUSSION.)

24                THE COURT:  I REALLY NEED ONE PERSON PER ARGUMENT,

25   PLEASE.
```

```
1                    (SIMULTANEOUS COLLOQUY.)

2          THE COURT:  I'VE HAD THREE SO FAR.

3          MR. RUBIN:  WE HAD JUST DIVIDED UP SUBSTANCE --

4                    (OFF-THE-RECORD DISCUSSION.)

5          MR. RUBIN:  OKAY.  LEE RUBIN.

6          SO THE -- I BELIEVE YOU MADE A RULING EARLIER WHEN WE

7   WERE GOING THROUGH THE MOTION IN LIMINES IN THIS CASE THAT

8   DR. NOLL COULD TESTIFY THAT THERE WAS A PERIOD OF TIME, 27

9   MONTHS, WHERE PRICES WERE INFLATED.  I THINK YOU SAID THAT WAS A

10  MATTER OF COMMON SENSE THAT --

11         THE COURT:  NOLL?

12         MR. RUBIN:  -- I'M SORRY.  THAT DR. -- THAT LEVY

13  WOULD BE -- THAT -- THAT NOLL WOULD BE ABLE TO REFER TO DR. LEVY

14  AND SAY THAT THERE WAS THIS 27-MONTH PERIOD OF INFLATED PRICES.

15         THE COURT:  THE MOTION WAS TO EXCLUDE AN EXPERT FROM

16  TESTIFYING THAT INFLATED PRICES PROVIDE SUPPORT FOR A

17  CONSPIRACY.  AND YOU SAID THAT CAN'T COME IN BECAUSE IT WASN'T

18  DISCLOSED IN THE EXPERT'S REPORT.

19         I THINK IT WAS, AND I THINK IT CAN COME IN.

20         MR. RUBIN:  RIGHT.  SO I JUST WANT TO BE VERY CLEAR.

21  AS TO THAT, OUR POSITION WOULD BE -- AND IT WOULD REALLY HAVE TO

22  BE, AND I THINK THIS WOULD BE AN APPELLATE ISSUE -- THAT WE

23  WOULD TO HAVE CALL OUR DAMAGES EXPERT -- OUR DAMAGES EXPERT, NOT

24  OUR LIABILITY EXPERT, OUR DAMAGES EXPERT DR. BURTIS TO REBUT

25  THAT NOTION THAT THERE WAS A 27-MONTH PERIOD OF INFLATED PRICES
```

1    BECAUSE, OF COURSE, THE --

2              **THE COURT:**  WELL, YOU KEEP THROWING IN THE 27-MONTH

3    PERIOD.  THAT'S NOT WHAT THE MOTION ADDRESSED.  BUT THAT'S FINE.

4    IF YOU WANT TO BRING YOUR DAMAGES EXPERT IN TO REBUT THAT,

5    THAT'S FINE.

6              **MR. RUBIN:**  OKAY.  I JUST WANT TO BE CLEAR.  I MEAN,

7    WE STILL THINK THAT --

8              **THE COURT:**  THAT'S FINE.

9              **MR. RUBIN:**  -- AS MR. CONNELLY SAID, THERE'S A

10   PRACTICAL ASPECT TO THIS THAT THESE CASES WOULD GO AWAY IF THE

11   DP'S WERE TRIED FIRST.  I AGREE WITH MR. COTCHETT ON THAT.

12             **THE COURT:**  WELL, HIS IDEA IS A GOOD ONE IF CYPRESS

13   AND THE IP'S ARE WILLING TO STIPULATE THAT THE RESULT OF THE --

14   WELL, NO, CYPRESS COULDN'T STIPULATE TO THAT.

15             NO, THEY CAN'T BECAUSE THEY THINK THEY DIDN'T

16   CONSPIRE.  SO THE FACT THAT SAMSUNG CONSPIRED, THEY COULD NEVER

17   STIPULATE THAT THAT MEANT THAT CYPRESS --

18             **MR. RUBIN:**  NO, NO.  WE'RE SAYING WE'RE GOING TO BE

19   IN THE TRIAL WITH THE DIRECT PURCHASERS.  IT'S DIRECT PURCHASERS

20   VERSUS CYPRESS AND SAMSUNG.

21                       (SIMULTANEOUS COLLOQUY.)

22             **THE COURT:**  OH, RIGHT.  THEY WOULD BE THERE ANYWAY.

23             OH, RIGHT.  OKAY.  SO YOU WOULD AGREE, THEN, IF YOU

24   WERE FOUND TO HAVE CONSPIRED VIS-A-VIS THE DIRECTS, THAT YOU

25   WOULD AGREE TO ALLOW THAT RESULT, EITHER WAY I SUPPOSE, TO BE

1    RES JUDICATA WITH RESPECT TO THE IP'S.

2              SO IF THE IP'S AND CYPRESS WOULD AGREE TO THAT, THAT

3    WOULD BE GREAT.

4              **MR. COTCHETT:**  THAT SOLVES THE WHOLE PROBLEM.

5              **THE COURT:**  YOU COULD TALK ABOUT THAT.

6              **MR. RUBIN:**  WELL, WE'LL CONFER ON THAT.  I'M JUST

7    SAYING AS A PRACTICAL MATTER, I THINK THAT ONE WAY OR THE OTHER,

8    THE IP ISSUES, AS MR. CONNELLY SAID, TEND TO RESOLVE THEMSELVES.

9    THE OTHER THING I WOULD SAY IS -- I DON'T WANT TO SPEAK FOR

10   SAMSUNG -- IS, YOU KNOW, IN A JOINT TRIAL, THEY WOULD BE FORCED

11   TO ACTUALLY CROSS-EXAMINE MR. HARRIS WHO'S AN IP EXPERT.

12             SO I KNOW THAT YOUR HONOR IS LOOKING FOR EFFICIENCY,

13   BUT YOU'RE IN A SITUATION THIS -- SAMSUNG'S IN A SITUATION WITH

14   YOU -- THEY WOULD BE -- EVIDENCE WOULD BE COMING IN.  IT'S NOT

15   JUST AN ISSUE OF ADMISSIONS, WHICH I KNOW THE COURT ALWAYS DEALS

16   WITH IN CODEFENDANT CASES.

17             BUT THERE WOULD ACTUALLY BE EXPERTS IN THIS JOINT

18   TRIAL THAT SAMSUNG -- THAT THE JURY COULD BE CONSIDERED IN

19   DECIDING WHETHER SAMSUNG IS LIABILITY TO THE DIRECT PURCHASERS,

20   AND THOSE ARE INDIRECT PURCHASER EXPERTS.  SO I DON'T -- I DON'T

21   KNOW HOW YOU --

22             **THE COURT:**  THE TRUTH IS THE TRUTH.

23             **MR. RUBIN:**  WHAT'S THAT?

24             **THE COURT:**  THE TRUTH IS THE TRUTH, WHATEVER THE JURY

25   BELIEVES FROM THESE EXPERTS.

```
 1                    MR. RUBIN:  I JUST --

 2                    THE COURT:  HOPEFULLY THEY WOULD SAY THE SAME THING

 3   UNDER WHATEVER CIRCUMSTANCES THEY WERE TESTIFYING.

 4                    MR. RUBIN:  WELL, THERE ARE TRUTH ON THE BOTH SIDES.

 5   THERE ARE TWO EXPERTS WHO ARE TELLING TRUTH.

 6                    THE COURT:  RIGHT.  OKAY.  SO CAN WE MOVE ON?

 7                    MR. COTCHETT:  YES.

 8                    THE COURT:  OKAY.

 9                    MR. McGINNIS:  YES, YOUR HONOR.

10                    THE COURT:  MOTIONS IN LIMINE OR -- HOW ABOUT

11   DAMAGES?  I -- I'M AFRAID THAT I HAVE A REALLY DUMB QUESTION TO

12   ASK ABOUT DAMAGES.  DO -- DOES NOBODY EVER HAVE TO PROVE THAT

13   THEY ACTUALLY SUFFERED ANY DAMAGES?  I MEAN, DO YOU JUST ASK FOR

14   $459 MILLION, AND IF YOU GET IT, GREAT.  AND THEN HOW DO YOU

15   DIVIDE IT UP AMONGST ALL THE PLAINTIFFS?  DON'T THE PLAINTIFFS

16   EVER HAVE TO COME IN LIKE YOU DO IN A REGULAR CASE AND SAY I

17   BOUGHT THIS AND I PAID 9.99 AND I SHOULD HAVE PAID 8.99 SO I GET

18   A DOLLAR?

19                    MR. COTCHETT:  THE ANSWER IS THAT'S ALL DONE

20   SUBSEQUENT TO TRIAL IN A CLAIMS PROCESS.

21                    THE COURT:  REALLY.

22                    MR. COTCHETT:  YEAH.

23                    THE COURT:  AND PEOPLE AGREE TO THAT?

24                    MR. McGINNIS:  NOT NECESSARILY.

25                    MR. COTCHETT:  THAT'S THE PROCEDURE THAT'S ADOPTED BY
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 451-7530*

```
 1    THE COURTS, JUST LIKE A SECURITIES CASE.  YOU HAVE ONE SECURITY

 2    PLAINTIFF IN FRONT OF YOU.  AND THEN WHOEVER BOUGHT THAT GOES

 3    THROUGH A CLAIMS PROCESS, SAME WAY IN EVERY ANTITRUST CASE WE'VE

 4    HANDLED, AND THERE'S --

 5              THE COURT:  AND THERE'S NO JURY IN THAT PROCEDURE?

 6              MR. COTCHETT:  THERE IS NOT.

 7              THE COURT:  DOES ONE --

 8              MR. COTCHETT:  IT IS PURSUANT TO RULE AND YOU APPOINT

 9    A SPECIAL MASTER, AND THAT'S HOW DAMAGES ARE DONE.

10              THE COURT:  HMM.

11              MR. McGINNIS:  NOT SURE WE FULLY AGREE WITH ALL THAT,

12    YOUR HONOR.

13              THE COURT:  WELL, YOU BETTER MAKE SURE THAT YOU DO

14    BECAUSE I ONCE HAD A CASE WHERE THAT HAPPENED AND THE PLAINTIFFS

15    SAID, OH, NOW WE HAVE A CLAIMS PROCEDURE, AND THE DEFENDANT SAID

16    I HAVE A SEVENTH AMENDMENT TO A JURY TRIAL ON DAMAGES, AND I

17    CLAIM IT.  IT WAS A HUGE PROBLEM.  SO IF THAT'S YOUR VIEW, I

18    THINK YOU BETTER TALK ABOUT IT AND MAKE SURE THAT'S EVERYBODY'S

19    VIEW.

20              MR. McGINNIS:  WE WILL DO THAT, YOUR HONOR.

21              THE WITNESS:  AND WHAT HAPPENS TO THE REST OF THE

22    $4.58 MILLION?  I MEAN, ASSUMING WE DON'T GET ENOUGH PEOPLE

23    COMING FORWARD TO SAY I PAID --

24              MR. COTCHETT:  THAT ISSUE --

25                   (SIMULTANEOUS COLLOQUY.)
```

```
 1                    THE COURT:  -- AND IT DOESN'T ADD UP TO 458 MILLION,

 2   WHO GETS TO KEEP THE REST?

 3              MR. COTCHETT:  THAT ISSUE HAS BEEN ADDRESSED IN EVERY

 4   SECURITY CASE AND EVERY ANTITRUST CASE THAT'S BEEN TRIED.

 5                    THE COURT:  AND WHAT'S THE ANSWER?

 6              MR. COTCHETT:  THE ANSWER IS --

 7                    THE COURT:  I MEAN, I TOLD YOU THIS WAS A DUMB

 8   QUESTION, SO --

 9              MR. COTCHETT:  NO, YOU DO IT THROUGH A CLAIMS

10   PROCESS.

11                    THE COURT:  I KNOW, BUT WHO GETS THE LEFT-OVER MONEY?

12              MR. COTCHETT:  IT'S GOES CY PRES, IT CAN, MUCH OF IT,

13   IF IT ISN'T COLLECTED.

14                    THE COURT:  IN SETTLEMENT, THAT'S CERTAINLY TRUE, BUT

15   THAT'S WHAT WOULD HAPPEN AFTER A TRIAL?

16              MR. COTCHETT:  THERE'S CASE LAW ON THAT.

17                    THE COURT:  IS THAT RIGHT?

18              MR. McGINNIS:  I HAVE TO CONFESS, YOUR HONOR, I'M NOT

19   SURE.

20                    THE COURT:  WELL, WE BETTER FIND OUT BECAUSE I DON'T

21   WANT SUDDENLY HEAR THAT THERE'S A JURY TRIAL RIGHT TO

22   EVERYBODY'S INDIVIDUAL DAMAGE CLAIM.

23              MR. McGINNIS:  I THINK HE IS CORRECT ABOUT WHAT

24   HAPPENS WITH --

25                    THE COURT:  OKAY.  WELL, LET'S GET THAT NAILED DOWN.
```

1          **MR. WILLIAMS:**  WE'LL GET THAT NAILED DOWN, YOUR

2    HONOR.

3          **MR. McGINNIS:**  PERHAPS WHY I'M DISTRACTED, YOUR

4    HONOR, ON THAT PARTICULAR ISSUE, IS WHAT'S REALLY, REALLY

5    BOTHERING ME AND BOTHERING SAMSUNG IS YOUR INCLINATION ON THE

6    DRAM.  BECAUSE I THINK THAT'S A CRITICAL ISSUE AND ALSO AFFECTS

7    HOW LONG THE TRIAL WILL TAKE.

8          AND --

9          **THE COURT:**  SO WE'RE MOVING ON NOW TO ARGUE THE

10   MOTIONS IN LIMINE?

11         **MR. COTCHETT:**  YES.

12         **MR. McGINNIS:**  IF I -- I THOUGHT THAT'S SORT OF WHERE

13   YOUR HONOR WAS GOING, BUT OBVIOUSLY --

14                    (SIMULTANEOUS COLLOQUY.)

15         **THE COURT:**  NO, GO AHEAD.  THAT'S FINE.  I JUST GOT

16   THIS DISTRACTED BY THE DAMAGE --

17         **MR. McGINNIS:**  I WOULD SUGGEST THAT MY COLLEAGUE MONA

18   SOLOUKI ADDRESS THIS ISSUE BECAUSE I THINK SAMSUNG IS THE ONE

19   THAT IS MOST IN THE CENTER OF THE RADAR SCREEN ON THAT ONE GIVEN

20   THAT WE DID ENTER PLEAS IN THE DRAM CASE.

21         SO IF THE COURT PLEASE, IF MY COLLEAGUE --

22         **THE COURT:**  WELL, THE THING IS WE'VE GOT, LIKE, ABOUT

23   20 MOTIONS IN LIMINE AND WE HAVE MAYBE AN HOUR WORTH OF TIME, SO

24   YOU NEED TO CHOOSE THE WORST THINGS THAT I'VE SAID AND ARGUE

25   THOSE.  YOU'RE NOT --

```
 1                    (SIMULTANEOUS COLLOQUY.)

 2            MR. McGINNIS:  YOUR HONOR, THAT'S PRECISELY WHAT

 3   WE'RE DOING.  AND IN FACT, FOR EXAMPLE, INCLINATION ABOUT

 4   COCONSPIRATOR STATEMENTS BEING DISCLOSED A WEEK BEFORE TRIAL

 5   WILL BE JUST FINE.  OBVIOUSLY, WE'LL DO WHAT THE COURT WANTS ON

 6   BACK TO THE DRAWING BOARD WITH -- WITH JURY INSTRUCTIONS.

 7            THE COURT:  OKAY.

 8            MR. McGINNIS:  BUT YOU'RE EXACTLY RIGHT.  THIS IS THE

 9   WORST THING.

10            THE COURT:  OKAY.

11            MR. McGINNIS:  -- ON THE MOTIONS IN LIMINE --

12            THE COURT:  WORST THING I'VE DONE SO FAR?

13            MR. McGINNIS:  THANK YOU FOR INDULGING ME, YOUR

14   HONOR, BUT I'M NOT GOING TO TOUCH THAT ONE.

15                    (LAUGHTER.)

16            MS. SOLOUKI:  GOOD AFTERNOON, YOUR HONOR, SORRY.

17   MONA SOLOUKI FOR THE SAMSUNG DEFENDANTS.

18            YOUR HONOR, I JUST WANT TO FIRST START WITH WHAT THE

19   DEFENDANT -- WHAT THE PLAINTIFFS HAVE ACTUALLY CONCEDED IN THIS

20   CASE BECAUSE I THINK IT'S IMPORTANT YOUR HONOR'S DECISION AS TO

21   WHETHER THE DRAM PLEA IS ACTUALLY ADMISSIBLE IN THIS CASE FOR

22   OTHER PURPOSES.

23            THE PLAINTIFFS CONCEDE AT THE THRESHOLD THAT THIS

24   EVIDENCE IS NOT ADMISSIBLE, EVIDENCE OF PRIOR CONVICTIONS ARE

25   NOT ADMISSIBLE TO PROVE LIABILITY.
```

1               THAT'S --

2               **THE COURT:**  IT'S NOT ADMISSIBLE FOR PROPENSITY, BUT

3   IT'S ADMISSIBLE FOR MANY OTHER THINGS.

4               **MS. SOLOUKI:**  PROPENSITY, EXACTLY, YOUR HONOR.  IT'S

5   NOT ADMISSIBLE TO SHOW THAT BECAUSE THE DEFENDANTS DID IT THERE,

6   THEY MUST HAVE DONE IT HERE.  THAT GOES TO THE ISSUE OF

7   LIABILITY.

8               **THE COURT:**  IT GOES TO PROPENSITY.  EVERYTHING GOES

9   TO LIABILITY.  WHAT YOU'RE REFERRING TO GOES TO PROPENSITY AND

10  THAT'S THE IMPROPER PURPOSE.  BUT THERE'S MANY OTHER THINGS THAT

11  GO TO LIABILITY, SUCH AS PLAN, SCHEME, DESIGN, MODUS OPERANDI,

12  INTENT, KNOWLEDGE, IDENTITY, AND ALL THOSE THINGS.

13              **MS. SOLOUKI:**  WELL, YOUR HONOR, THAT'S ONE OF THE

14  THINGS.  WHEREVER THIS EVIDENCE -- THIS SORT OF EVIDENCE OF

15  PRIOR BAD ACT, LET'S CALL IT, COMES IN FOR SOME KIND OF OTHER

16  PURPOSE THAN PROPENSITY, IT IS COMING IN FOR A LIMITED PURPOSE.

17              **THE COURT:**  TRUE.

18              **MS. SOLOUKI:**  AND IT IS OFTEN -- OFTEN INSTRUCTIONS

19  ARE GIVEN TO THE JURY --

20              **THE COURT:**  SURE, AND WE WOULD GIVE ONE.  WE WOULD

21  GIVE ONE.

22              **MS. SOLOUKI:**  SO THAT THE JURY DOES NOT CONSIDER THE

23  EVIDENCE AS, WELL, DEFENDANTS --

24              **THE COURT:**  SURE.

25              **MS. SOLOUKI:**  -- MUST HAVE DONE IT.

1              **THE COURT:**  SURE.

2              **MS. SOLOUKI:**  BUT THE QUESTION HERE IS WHAT EXACTLY

3     IS IT THAT THEY'RE GOING TO BE OFFERING IT FOR.

4              YOUR HONOR REFERRED TO THE LITANY OF EXCEPTIONS THAT

5     ARE ENUMERATED IN RULE 404B.  THEY'VE LISTED THOSE SAME

6     EXCEPTIONS IN THE LITANY.  BUT THEY HAVE NOT ARGUED ANY OF THOSE

7     OTHER THAN ONE THING THAT IS NOT ACTUALLY IN THE RULE ITSELF.

8     IT IS THE BACKGROUND -- OR TO PROVIDE, YOU KNOW, EVIDENCE OF THE

9     DEVELOPMENT OF THE SRAM, THE ALLEGED SRAM CONSPIRACY OR THAT

10    THIS EVIDENCE IS SOMEHOW ADMISSIBLE TO SHOW THAT THE SRAM

11    CONSPIRACY WAS MOTIVATED BY THE DRAM CONSPIRACY.

12             IN OTHER WORDS, THIS IS HOW THEIR ARGUMENT GOES, YOUR

13    HONOR.  DEFENDANTS HATCHED OR SAMSUNG HATCHED A SUCCESSFUL DRAM

14    CONSPIRACY AND THEN THEY USED THAT AS A MODEL FOR THEIR SRAM

15    CONSPIRACY.

16             IT WAS WHAT MOTIVATED THE SRAM CONSPIRACY.  IT

17    PROVIDES BACKGROUND FOR THE SRAM CONSPIRACY.

18             BUT, YOUR HONOR, THAT IS NOT EXACTLY WHAT HAPPENED

19    HERE.  IF YOUR HONOR LOOKS AT THEIR ALLEGATIONS, YOU'LL SEE THAT

20    THAT ARGUMENT FALLS APART AT THE THRESHOLD.  THAT IS THE ONLY

21    THING THEY'VE ARGUED REALLY.  OTHER THAN --

22             **THE COURT:**  NO, THEY HAVE A NUMBER OF OTHER ARGUMENTS

23    BUT --

24             **MS. SOLOUKI:**  WELL, THE OTHERS, YOUR HONOR --

25             **THE COURT:**  RULE 609, FOR EXAMPLE.

1          **MS. SOLOUKI:**  EXCUSE ME?

2          **THE COURT:**  RULE 609 IS ANOTHER ONE.

3          **MS. SOLOUKI:**  WELL, LET'S DEAL WITH THE IMPEACHMENT

4    ISSUE IN A SECOND, BUT AS FAR AS ADMISSIBILITY OF THIS ISSUE FOR

5    OTHER PURPOSES UNDER 404(B) IS CONCERNED, EVERYTHING THAT THEY

6    ARGUE THAT, THE FACT THAT DRAM AND SRAM ARE RELATED, THEY SAY;

7    THE FACT THAT THEY SAY THERE ARE SOME OVERLAPS AT THE TOP OF THE

8    ORGANIZATIONAL CHART AND, YOU KNOW, IN SOME -- AT SOME LEVELS.

9    ALL OF THOSE THINGS GO TO THIS ONE -- THIS ONE OVERARCHING

10   ARGUMENT THAT THEY MAKE, THAT THIS EVIDENCE IS ADMISSIBLE TO

11   SHOW BACKGROUND FOR THE SRAM CONSPIRACY.

12          **THE COURT:**  I DON'T READ THEIR ARGUMENT THAT WAY,

13   BUT -- GO AHEAD.

14          **MS. SOLOUKI:**  I CAN POINT, YOUR HONOR, TO THEIR BRIEF

15   WHERE THEY SAY THIS.

16          **THE COURT:**  WELL, THEY DO SAY THAT, BUT THEY SAY A

17   LOT OF OTHER THINGS, TOO.

18          **MS. SOLOUKI:**  WELL, YOUR HONOR, LET'S DEAL WITH THIS

19   ONE FIRST, AND THEN WE GET TO THE INTENT AND EVERYTHING ELSE.

20          **THE COURT:**  OKAY.

21          **MS. SOLOUKI:**  AS FAR AS THIS BACKGROUND, I'M SURE

22   THAT YOUR HONOR HAS SEEN THE ARGUMENT THAT THEY'VE MADE WITH

23   RESPECT TO THE BACKGROUND.  AND AS FAR AS THAT IS CONCERNED, THE

24   DRAM CONSPIRACY IS LIMITED TO THE 1999 THROUGH 2002 TIME PERIOD.

25   THAT'S UNDISPUTED.  THAT WAS THE PERIOD OF THE PLEAS.  IT WAS

1    THE PERIOD OF THE SUBPOENAS, THE CIVIL ACTIONS.

2              THE SRAM CONSPIRACY THAT THEY ALLEGE HERE THEY ALLEGE

3    STARTED SOMETIME IN 1996, THREE YEARS BEFORE THE DRAM CONSPIRACY

4    EVEN STARTED.

5              THERE'S NO WAY THAT THE DRAM CONSPIRACY COULD HAVE

6    SERVED AS THE BACKGROUND OR MOTIVATING FACTOR, AND THOSE ARE THE

7    THINGS THAT THEY SAY IN THEIR BRIEFS FOR A CONSPIRACY THAT THEY

8    ALLEGE STARTED SOMETIME IN '96 AND WAS OFF AND RUNNING,

9    ACCORDING TO THEM, FOR THREE YEARS.  THAT'S THE FIRST POINT.

10             SO MY POINT, YOUR HONOR, IS THAT GIVEN THE FACT THAT

11   THIS EVIDENCE CAN'T BE -- CAN'T BE OFFERED FOR PURPOSE OF

12   SHOWING THAT BECAUSE SAMSUNG DID IT THERE, IT MUST HAVE DONE IT

13   HERE, YOUR HONOR'S VESTED WITH THE DUTY TO ENSURE THAT WHATEVER

14   PURPOSE THEY'RE GOING TO BE USING THIS EVIDENCE FOR IS ACTUALLY

15   GOING TO BE SO PROBATIVE THAT IT'S GOING TO OUTWEIGH THE

16   INHERENTLY PREJUDICIAL IMPACT OF A PRIOR CONVICTION IN A

17   DIFFERENT CASE RELATING TO A DIFFERENT PRODUCT.

18             THIS IS NOT A -- AN SRAM GUILTY PLEA WE'RE TALKING

19   ABOUT.  THIS IS A GUILTY PLEA RELATING TO A DIFFERENT PRODUCT IN

20   A DIFFERENT MARKET THAT THEY'RE TRYING TO USE TO BOLSTER THEIR

21   EVIDENCE.  IF THEY HAVE EVIDENCE THAT THERE WAS A CONSPIRACY IN

22   THIS CASE, YOUR HONOR, THEY CAN USE THAT EVIDENCE.  THEY WANT TO

23   SHOW THAT THERE WERE PEOPLE COMMUNICATING WITH COMPETITORS WITH

24   EVIDENCE IN THIS CASE, THEY'RE FULLY CAPABLE OF DOING THAT.  AND

25   ACCORDING TO THEM, I BELIEVE THEY SAY THEY HAVE SUFFICIENT

1   EVIDENCE.

2          UNDER THOSE CIRCUMSTANCES, IF THEY HAVE SUFFICIENT

3   EVIDENCE TO PROVE THIS CASE -- THEIR CASE, THEN WHY RISK WHAT WE

4   BELIEVE, YOUR HONOR, WOULD BE PREJUDICE -- WOULD BE REVERSIBLE

5   ERROR TO ADMIT A GUILTY PLEA FROM A DIFFERENT CASE HAVING TO DO

6   WITH A DIFFERENT PRODUCT AND A DIFFERENT MARKET IN ORDER TO

7   BOLSTER THEIR EVIDENCE.

8          **THE COURT:**  OKAY.  DID SAMSUNG WANT TO ADDRESS ANY OF

9   THE OTHER MOTIONS IN LIMINE?

10         **MR. SCARBOROUGH:**  YES, VERY BRIEFLY, YOUR HONOR.

11  MIKE SCARBOROUGH ALSO FOR THE SAMSUNG DEFENDANTS.

12         ON SAMSUNG'S MOTION IN LIMINE NO. 2, REGARDING -- WE

13  HAD A GLOBAL MOTION TO EXCLUDE ANY OF THE EVIDENCE OF THE DOJ'S

14  SRAM INVESTIGATION.  WE OBVIOUSLY AGREE WITH YOUR HONOR'S

15  TENTATIVE THERE.  THE ONE PIECE THAT WAS, I GUESS, LEFT HANGING

16  WAS THE ISSUE OF SAMSUNG'S LENIENCY AGREEMENT THAT PLAINTIFFS

17  ACTUALLY SOUGHT PRODUCTION OF THIS LENIENCY AGREEMENT IN THE

18  COURSE OF DISCOVERY.  THAT MOTION WAS DENIED.

19         BUT IF YOUR HONOR FEELS LIKE YOU NEED TO SEE THAT

20  LETTER AGREEMENT IN ORDER TO PROCEED WITH RESPECT TO THE

21  PROCEDURES THAT WE'RE TALKING ABOUT, WE'RE HAPPY TO PROVIDE IT

22  TO YOU FOR AN IN CAMERA INSPECTION.  AND IF YOU DETERMINE THAT

23  IT NEEDS TO BE PRODUCED TO THE PARTIES, THAT'S -- THAT'S FINE AS

24  WELL.  AND WE'D BE COMFORTABLE WITH THAT.  SO WHENEVER YOU WANT

25  US TO DO THAT, WE CAN -- WE CAN GO AHEAD AND DO THAT.

```
 1              THE COURT:  SURE.  WHY DON'T YOU JUST FILE IT UNDER

 2     SEAL.

 3              MR. SCARBOROUGH:  OKAY.  WE'LL BE HAPPY TO DO THAT.

 4              THE COURT:  YOU'LL NEED TO GIVE ME A SEALING ORDER TO

 5     SIGN AND PUT SOME REASONING IN IT 'CAUSE I HAVE TO JUSTIFY ANY

 6     TIME I FILE ANYTHING UNDER SEAL, BUT --

 7              MR. SCARBOROUGH:  OR I COULD ACTUALLY PROVIDE IT TO

 8     YOU TODAY IF YOUR HONOR --

 9              THE COURT:  WELL, IT SHOULD BE PART OF THE RECORD, I

10     THINK, SO YOU SHOULD FILE IT UNDER SEAL.

11              MR. SCARBOROUGH:  THAT'S FINE.  AND IN TERMS OF

12     THE -- CYPRESS HAD A CROSSOVER MOTION IN LIMINE WHERE THEY SAID

13     THE ISSUE OF -- OF SAMSUNG'S LENIENCY AGREEMENT AND ITS ACPERA

14     STATUS WOULD BE SOMETHING THAT WOULD BE POTENTIAL FODDER FOR

15     IMPEACHMENT WITH SAMSUNG'S WITNESSES.

16              AND WE THINK THAT IN ORDER TO PRESERVE THE INTEGRITY

17     OF YOUR LARGER MOTION IN LIMINE RULING THAT ALL EVIDENCE OF THE

18     DOJ'S SRAM INVESTIGATION NEEDS TO STAY OUT, THAT WHATEVER THE

19     VERY MARGINAL PROBATIVE VALUE YOU MIGHT HAVE FROM THAT

20     IMPEACHMENT TESTIMONY, THAT YOU ALSO HAVE TO KEEP OUT THE FACT

21     OF THE ACPERA STATUS AND OUR LENIENCY AGREEMENT WHICH THEN OPENS

22     UP THE DOOR THAT THERE WAS A DOJ INVESTIGATION IN THE FIRST

23     PLACE.

24              THE COURT:  RIGHT.  I WOULD BE INCLINED TO LEAVE ALL

25     THAT OUT AND THE ONLY THING I COULD IMAGINE COMING IN WOULD BE
```

```
 1   IF THE LENIENCY AGREEMENT SAID SOMETHING LIKE YOU MUST SUPPORT

 2   OUR POSITION WHETHER IT'S TRUE OR NOT OR SOMETHING ACTUALLY

 3   IMPEACHMENT.  BUT IF IT SAYS, AS I WOULD IMAGINE, YOU MUST

 4   TESTIFY TRUTHFULLY AT ALL TIMES AND THINGS LIKE THAT, THEN I

 5   WOULDN'T SEE IT AS IMPEACHMENT.

 6           MR. SCARBOROUGH:  IT'S ACTUALLY --

 7           THE COURT:  OR IF IT CONTAINED AN ADMISSION OF GUILT.

 8   YOU SAY IT DOESN'T.

 9           MR. SCARBOROUGH:  IT'S ACTUALLY RIGHT IN THE STATUTE

10   ITSELF IS WHAT ACPERA PROVIDES THAT SAMSUNG NEEDS TO DO IS RIGHT

11   IN THE ACPERA STATUTE ITSELF.  AND IT BASICALLY SAYS YOUR

12   WITNESSES NEED TO --

13           THE COURT:  I KNOW WHAT --

14           MR. SCARBOROUGH:  -- TELL THE TRUTH.

15           THE COURT:  RIGHT.  THEY, I THINK, SUSPECT THAT THERE

16   MIGHT BE SOMETHING ELSE IN THERE.  AND TO MAKE SURE THAT THEY'RE

17   COMFORTABLE, I'LL READ IT TO MAKE SURE THERE ISN'T, BUT I WOULD

18   NOT ANTICIPATE THERE'D BE ANYTHING IN THERE THAT WOULD BE

19   GROUNDS FOR IMPEACHMENT.

20           MR. SCARBOROUGH:  OKAY.  SO WE'LL SUBMIT THAT UNDER

21   SEAL, TOO, TO YOUR HONOR.

22           THE COURT:  OKAY.

23           MR. SCARBOROUGH:  AND ONE LAST THING, ON THE

24   UNCERTIFIED TRANSLATIONS POINT, IT'S A MINOR POINT, BUT WHAT IT

25   IS IS THAT THERE ARE 64 UNCERTIFIED TRANSLATIONS THAT ARE ON
```

```
1    PLAINTIFFS' TRIAL EXHIBIT LIST.  THEY ALSO HAVE CERTIFIED

2    TRANSLATIONS FOR MANY OF THOSE AND WHAT THOSE WERE WERE

3    TRANSLATIONS THAT WERE CREATED AFTER THE FACT.  NONE OF THESE

4    ARE CONTEMPORANEOUS BUSINESS DOCUMENTS THAT YOU WOULD

5    CROSS-EXAMINE A SAMSUNG WITNESS ON AND SAY, WELL, YOU SENT THIS

6    EMAIL THAT WAS IN KOREAN, AND YOU ALSO SENT THIS ENGLISH

7    TRANSLATION TO THE SAME PERSON.  A DAY LATER, YOU SENT IT

8    INTERNALLY.

9              NONE OF IT IS GOING TO BE FODDER FOR

10   CROSS-EXAMINATION WITH ANY OF SAMSUNG WITNESSES.  THESE ARE ALL

11   THINGS THAT WERE CREATED AFTER THE FACT, AFTER THE DOJ'S

12   INVESTIGATION WAS STARTED, AFTER THIS LITIGATION WAS FILED, AND

13   THEY WERE PROVIDED TO THE DOJ.  SO IT'S GOING TO BE NOTHING BUT

14   CONFUSION TO THE JURY TO HAVE THESE ALTERNATE TRANSLATIONS

15   FLOATING AROUND THAT NONE OF THESE WITNESSES ARE GOING TO BE

16   ABLE TO SPEAK TO.  AND WE REALLY OUGHT TO HAVE THE CERTIFIED

17   TRANSLATIONS BE THE GOVERNING DOCUMENTS FOR WHAT DOES THIS

18   DOCUMENT MEAN IN ENGLISH.

19              THE COURT:  RIGHT.  WELL, YEAH, I CAN'T IMAGINE THAT

20   IT WOULD BE A MAJOR POINT OF CROSS-EXAMINATION.  IF THERE IS

21   SOMETHING THERE THAT THE PLAINTIFFS FEEL SHOWS SOMETHING ABOUT

22   THEIR STATE OF MIND OR THEIR CULPABILITY OR WHATEVER, THEN SHOW

23   IT TO THEM AND EXPLAIN WHAT IT IS AND WHY.  BUT CERTAINLY WE'RE

24   NOT GOING TO SPEND THE TRIAL PARSING OUT THE DIFFERENCES IN

25   TRANSLATIONS BETWEEN 64 KOREAN DOCUMENTS.
```

```
 1                  SO I JUST DIDN'T WANT TO RULE IT OUT COMPLETELY.  IF

 2   THERE'S A SOMETHING IN THERE THAT'S MEANINGFUL IN SOME WAY, THEN

 3   THE PLAINTIFFS NEED TO SHOW YOU WHAT IT IS AND IT MIGHT COME IN,

 4   BUT --

 5              MR. SCARBOROUGH:  IF THEY ARE PRESUMPTIVELY OUT, I

 6   THINK THAT WOULD BE --

 7              THE COURT:  THEY'RE NOT PRESUMPTIVELY IN OR OUT.

 8   THEY'RE IN IF IT'S PROBATIVE OF SOMETHING MEANINGFUL.

 9              MR. SCARBOROUGH:  OKAY.  THANK YOU, YOUR HONOR.

10              THE COURT:  AND YOU NEED TO SHOW IT FIRST -- I

11   SUPPOSE TO THAT EXTENT, WE COULD SAY IT'S PRESUMPTIVELY OUT,

12   YES.  YOU NEED TO SHOW IT FIRST BEFORE JUST DROPPING IT ON US.

13              MR. SCARBOROUGH:  FAIR ENOUGH, YOUR HONOR.

14              MR. RUBIN:  YOUR HONOR, I WANT TO ADDRESS A COUPLE

15   POINTS BRIEFLY.  FIRST OF ALL, THE DRAM --

16              THE COURT:  SO YOU'RE DOING ALL OF CYPRESS' ARGUMENTS

17   ON THE MOTIONS IN LIMINE.

18              MR. RUBIN:  CORRECT.

19              THE COURT:  OKAY.

20              MR. RUBIN:  ON THE DRAM EVIDENCE, I UNDERSTAND THE

21   COURT'S POSITION IS THAT THE COURT BELIEVES THAT IT'S

22   INADMISSIBLE AGAINST CYPRESS BUT THAT A LIMITING INSTRUCTION

23   WILL REMEDY ANY PREJUDICE.  AND I WISH THAT WE HAD THE

24   CONFIDENCE THAT YOU DID THAT THE JURY WILL COMPARTMENTALIZE THAT

25   EVIDENCE, BUT WE DON'T.
```

```
 1              WE THINK THAT IN A CONSPIRACY CASE, WHEN EVIDENCE

 2    COMES IN AGAINST THE COCONSPIRATOR, EVEN WITH THE LIMITING

 3    INSTRUCTION THAT WE APPRECIATE YOU'LL VERY ENTHUSIASTICALLY MAKE

 4    ON OUR BEHALF --

 5              THE COURT:  YOU CAN WRITE IT.

 6              MR. RUBIN:  AND WE APPRECIATE IT.  WE WILL TAKE THE

 7    PEN, BUT THAT -- IT'S JUST -- IT'S JUST INEVITABLE SPILLOVER.

 8    AND IT'S UNFAIR SPILLOVER.  WE HAD NOTHING TO DO WITH THAT CASE.

 9    WE WERE NEVER PART OF THAT INDUSTRY.

10              AND SO WHAT YOU'RE ESSENTIALLY ASKING THE JURY TO DO

11    IS THE MENTAL GYMNASTICS OF SAYING, I HEARD ALL THIS VERY

12    INFLAMMATORY EVIDENCE ABOUT THE OTHER COCONSPIRATOR WHO'S AT

13    TRIAL.  I HEARD THEY WERE IN ANOTHER CONSPIRACY.  I

14    UNDERSTAND -- I BEEN TOLD BY THE JUDGE CYPRESS WASN'T IN IT, BUT

15    I BEEN TOLD I SHOULD SEPARATE THAT OUT ENTIRELY IN CONSIDERING

16    WHETHER IN THIS INDUSTRY THAT'S BEING DISCUSSED AT TRIAL, THERE

17    WAS ANOTHER CONSPIRACY.

18              I MEAN -- YOU KNOW, PUTTING IT ANOTHER WAY, IT TAKES

19    TWO TO TANGO.  SO IF YOU LET THE EVIDENCE IN IN A JOINT TRIAL

20    AGAINST OUR COCONSPIRATOR, AND OUR COCONSPIRATOR -- THE JURY IS

21    TOLD THAT OUR COCONSPIRATOR -- THAT ESSENTIALLY THIS IS ITS MO

22    AS THE PLAINTIFFS WANT TO -- WANT TO TAR THEM WITH.  AND WE ARE

23    THEN SITTING THERE EFFECTIVELY UNABLE TO DEFEND OURSELVES OTHER

24    THAN THIS LIMITING INSTRUCTION.  IT'S INEVITABLE.  IT'S

25    INEVITABLE THAT THE JURY WILL CARRY THAT OVER AGAINST US.
```

1              I DON'T THINK THAT THE HUMAN MIND CAN SEPARATE OUT IN

2      THE WAY THAT YOU'RE SUGGESTING.  YOU'RE SUGGESTING THAT WE WOULD

3      GET SOME BENEFIT THAT YOU WEREN'T IN THAT.

4              BUT OF COURSE, WHAT THE PLAINTIFFS WANT THE JURY TO

5      DRAW FROM IT IS SAMSUNG WAS IN CONSPIRACY ONE, AND THEN SAMSUNG

6      RECRUITED CYPRESS TO COME INTO THE CONSPIRACY TWO.

7              THAT'S THE TAINT THAT THEY WANT TO GET FROM IT.  SO

8      IN THIS INADMISSIBLE LIMITING INSTRUCTION, IT DOESN'T WORK.  AND

9      THERE'S SUCH AN EASY SOLUTION, YOUR HONOR, BECAUSE IT'S A CIVIL

10     CASE.  WE DON'T HAVE TO HAVE 28 PEOPLE.  WE CAN GO RIGHT BACK TO

11     WHAT THE SEVENTH CIRCUIT DID IN HIGH FRUCTOSE CORN SYRUP.

12             THEY SAID THERE WAS A SIMILAR KIND OF SPILLOVER

13     EVIDENCE, ALMOST IDENTICAL CIRCUMSTANCES.  ADM, A CEREAL

14     ANTITRUST VIOLATOR IN CONSPIRACY ONE, LYSINE; CONSPIRACY TWO

15     CITRIC ACID; AND THEN THERE WAS THIS HIGH FRUCTOSE CORN SYRUP

16     CASE.

17             AND JUDGE MIHM FROM MY HOMETOWN OF PEORIA, ILLINOIS,

18     SAID, I CAN'T ALLOW ALL OF THIS EVIDENCE TO COME IN AGAINST

19     CARGILL, WHO HAD NOTHING TO DO WITH THOSE OTHER TWO

20     CONSPIRACIES.  WHAT I WOULD LIKE TO DO IS IMPANEL TWO JURIES,

21     AND WHEN THIS DRAM EVIDENCE COMES IN, I'M GOING TO ASK THAT

22     OTHER JURY TO EXCUSE ITSELF.

23             **THE COURT:**  I JUST -- I DON'T HAVE A JURY ROOM

24     THAT -- I DON'T HAVE A COURTROOM OVER HERE THAT HAS TWO JURY

25     BOXES.  I'D HAVE TO TRY IT IN SAN FRANCISCO IN THE CEREMONIAL

```
 1    COURTROOM.  IT WOULD BE HUGE, IT WOULD BE UNWIELDY.

 2            MR. RUBIN:  JUDGE MIHM HAD THE SAME PROBLEM.

 3            THE COURT:  I JUST DON'T THINK IT'S WORTH IT.

 4                  (SIMULTANEOUS COLLOQUY.)

 5            THE COURT:  ONE DEFENDANT WOULD BE HAPPY TO HAVE ALL

 6    THIS BAD STUFF COMING IN ABOUT THE CODEFENDANT.  THEY'D SAY, OH,

 7    IT WAS ALL HIM.  I'M JUST SITTING HERE IN THE CORNER --

 8            MR. RUBIN:  WELL, WITH ALL DUE RESPECT, IT'S WORTH IT

 9    IN TERMS OF OUR RIGHTS TO A FAIR TRIAL.

10            THE COURT:  I THINK IT WILL HELP YOU, BUT IN ANY

11    EVENT, I DON'T THINK IT WILL HURT YOU, AND I THINK A JURY

12    INSTRUCTION WILL CURE IT.

13                  DID YOU WANT TO ADDRESS ANY OF OTHER --

14                  (SIMULTANEOUS COLLOQUY.)

15            THE COURT:  SO --

16            MR. RUBIN:  WE'RE ALTERNATIVELY MAKING OUR MOTION FOR

17    TWO JURIES AND YOU KNOW THAT THAT'S ON THE RECORD, AND WE'VE

18    SOUGHT THAT.

19            THE COURT:  RIGHT.

20            MR. RUBIN:  THE OTHER ISSUE THAT I WANTED TO ADDRESS

21    BRIEFLY IS ON THIS ISSUE OF IMPEACHMENT.  I JUST WANT TO CLARIFY

22    WHAT WE WERE SEEKING IN OUR RESPONSE TO SAMSUNG'S MOTION.  WE

23    ARE NOT ASKING TO IMPEACH ON THE LENIENCY AGREEMENT ITSELF.  ALL

24    WE ARE SAYING IS THERE IS A STATUTE HERE THAT SAMSUNG IS

25    OPERATING UNDER IN WHICH THERE ARE -- THEY ARE ATTEMPTING TO GET
```

1    THE BENEFIT OF COOPERATION WITH THE PLAINTIFFS.  I THINK THE

2    STATUTE ACTUALLY READS IF THE PLAINTIFFS SATISFACTORILY

3    COOPERATE.

4              AND I UNDERSTAND THE COURT'S QUESTION OF WHAT DOES

5    THAT MEAN WHEN YOU GO TO TRIAL AND FIGHT LIABILITY AND FIGHT

6    DAMAGES.  PUTTING THAT TO THE SIDE -- YOU KNOW, THAT'S AN OPEN

7    QUESTION.  ALL WE'RE SAYING IS WE DON'T KNOW WHAT THE

8    CIRCUMSTANCES ARE.  WE DON'T KNOW HOW SAMSUNG WITNESSES WILL

9    PRESENT THEMSELVES, BUT WE BELIEVE WE SHOULD HAVE THE RIGHT --

10   AND WE MAY NOT EXERCISE IT, BUT WE SHOULD NOT BE PRECLUDED AS OF

11   TODAY THAT AS A SAMSUNG WITNESS GETS UP AND TESTIFIES, THAT WE

12   WOULD BE ALLOWED, IN A JUDICIOUS FASHION, TO RAISE THE ISSUE

13   THAT THEY ARE -- HAVE MADE AN EFFORT OVER THE HISTORY OF THIS

14   CASE TO COOPERATE WITH THE PLAINTIFFS IN ORDER TO GET A

15   FINANCIAL BENEFIT.

16             THAT IS CLASSIC IMPEACHMENT.  I MEAN, THAT IS NO

17   DIFFERENT THAN ANY OTHER AGREEMENT OR -- OR COOPERATION

18   AGREEMENT THAT THIS COURT, I'M SURE, OVER THE YEARS HAS HEARD

19   IMPEACHED UPON TIME AND TIME AGAIN.

20             YOU'RE TESTIFYING, YOU AS THE EMPLOYEE FOR THE

21   COMPANY COULD GET SOME FINANCIAL BENEFIT, OR THE COMPANY COULD

22   GET SOME FINANCIAL BENEFIT BY YOUR FAVORABLE TESTIMONY.  WE

23   SHOULD HAVE THE RIGHT TO BRING THAT IN FRONT OF THE JURY.

24             **THE COURT:**  IF YOU FIND SOMETHING THEY DO TO HELP THE

25   PLAINTIFFS, LET ME KNOW AND I'LL CONSIDER IT.

1          **MR. RUBIN:**  WELL, FOR EXAMPLE, THEY'VE BEEN

2    INTERVIEWED.  I MEAN, THEY MADE THEMSELVES AVAILABLE TO THEM.

3          **THE COURT:**  YOU CAN ASK THAT.

4          **MR. RUBIN:**  RIGHT.  SO SPECIFIC QUESTIONS ABOUT

5    SPECIFIC THINGS THEY'VE DONE TO COOPERATE.  AND BRINGING OUT

6    THAT THEY HAVE A FINANCIAL INCENTIVE.

7          **THE COURT:**  NOT -- NOT THE -- NOT THAT AGREEMENT.  I

8    DON'T KNOW WHAT YOUR ACRONYM IS.

9          **MR. RUBIN:**  NOT ACPERA.

10         **THE COURT:**  ACPERA.

11         **MR. RUBIN:**  WELL, THAT'S A STATUTE, BUT WE'RE NOT

12   SAYING WE WANT TO IMPEACH ON THE LENIENCY AGREEMENT.  WE WANT TO

13   HAVE THE RIGHT TO RAISE THE ISSUE THAT THEY ARE -- THAT THEY ARE

14   TESTIFYING AND -- AND THEIR BIAS -- THERE MAY BE A BIAS BECAUSE

15   BY COOPERATING WITH THE PLAINTIFF, BY SAYING THINGS THAT ON THE

16   MARGIN MAY BE FAVORABLE TO PLAINTIFFS, THEY MAY BE FAVORABLE TO

17   PLAINTIFFS BECAUSE IT SHEDS AN UNFAVORABLE LIGHT ON US.  WE

18   SHOULD HAVE A CHANCE TO BRING THAT TO THE JURY'S ATTENTION,

19   BECAUSE OTHERWISE YOU'RE EXCLUDING CLASSIC BIAS EVIDENCE.

20         I MEAN, THAT'S WHERE BIAS GOES.  WHAT FINANCIAL

21   INTEREST DOES SOMEBODY HAVE IN TESTIFYING, SO -- WE CAN DO IT IN

22   A WAY THAT AVOIDS GETTING INTO THE ISSUES OF WHY THE STATUTE IS

23   IN -- IS TRIGGERED, THAT -- YOU KNOW, AMNESTY -- WE DON'T HAVE

24   AN INTEREST NECESSARILY IN BRINGING THE ENTIRE SRAM

25   INVESTIGATION INTO THE CASE.

1              BUT NARROWLY CONFINED, WE CERTAINLY HAVE A RIGHT TO

2     DO THAT.  AND APROPOS OF THAT OR RELATED TO THAT, I THINK, YOU

3     RULED ON SETTLEMENT -- YOU TALKED ABOUT SETTLEMENT AGREEMENTS

4     FOR THIRD PARTIES.  IT'S THE SAME POINT.

5              THEY HAVE COOPERATION PROVISIONS IN ALL THEIR

6     SETTLEMENT AGREEMENTS.  SO IF A HYNIX WITNESS OR A --

7              **THE COURT:**  THEY WHO?

8              **MR. RUBIN:**  PLAINTIFFS DO.

9              **THE COURT:**  OH.

10             **MR. RUBIN:**  WHEN PLAINTIFFS SETTLED WITH THE OTHER

11    SETTLING DEFENDANTS, THEY, YOU KNOW, SETTLED, AND THEY SAID, YOU

12    SHALL COOPERATE WITH PLAINTIFFS.

13             NOW, IF SOMEBODY FROM HYNIX OR SOMEBODY FROM RENESAS

14    SHOWS UP, AND IN OUR TRIAL -- IN OUR STRATEGIC WISDOM, WE THINK

15    THAT THEY SAID SOMETHING DAMAGING THAT WE THINK THAT WE WANT TO

16    RAISE THAT COOPERATION PROVISION, THAT'S CLASSIC IMPEACHMENT.

17             I DON'T KNOW OF ANY COURT WHERE YOU WOULDN'T BE

18    ALLOWED TO SAY, AREN'T YOU TESTIFYING PURSUANT TO COOPERATION

19    AGREEMENT WITH THE PLAINTIFFS.  THAT'S ALL WE'RE SAYING THAT WE

20    HAVE THE RIGHT TO DO.

21             WILL IT EVER COME UP IN THE TRIAL?  DON'T KNOW.  BUT

22    WE CERTAINLY SHOULDN'T BE PRECLUDED TODAY.  THE COURT SHOULD

23    CONSIDER THE CIRCUMSTANCES AT THE TIME.

24             **THE COURT:**  WELL, IF YOU WANT TO MAKE AN OFFER OF

25    PROOF AS TO THE WAYS IN WHICH YOU THINK SAMSUNG HAS COOPERATED

```
 1   WITH THE PLAINTIFFS AND SOME WAY IN WHICH YOU COULD EXPLAIN HOW

 2   THAT MIGHT BENEFIT THEM WITHOUT OPENING THE DOOR TO THE WHOLE

 3   SRAM INVESTIGATION, I'LL TAKE A LOOK AT IT.

 4            MR. RUBIN:  OKAY.  WE'LL DO THAT.

 5            THE COURT:  OKAY.

 6            MR. WILLIAMS:  STEVE WILLIAMS FOR THE DIRECT

 7   PLAINTIFFS.  JUST A FEW POINTS.  I'LL BE BRIEF.

 8            FIRST NOT ON THE MOTIONS IN LIMINE REALLY

 9   SPECIFICALLY, BUT I'D LIKE TO ASK THE COURT TO RESERVE JUDGMENT

10   ON ONE ISSUE.  WE TALKED ABOUT THE PASS ON/PASS THROUGH, HOW

11   DOES THAT WORK.

12            CYPRESS HAD THE OPPORTUNITY TO BRIEF THE ISSUE.  WE

13   HAVEN'T.  THAT CAME IN LATE IN THE DAY.  AND I THINK BOTH WE AND

14   THE INDIRECT PLAINTIFFS WOULD LIKE THE OPPORTUNITY BEFORE OUR

15   NEXT TRIAL CONFERENCE TO SUBMIT A BRIEF ON THAT.

16            THE COURT:  WELL, IF WE TRY IT THE WAY I'M THINKING

17   OF, IT WON'T COME UP.

18            MR. WILLIAMS:  IT WON'T COME UP RIGHT AWAY, BUT IT'S

19   GOING TO COME UP.  IT'S A VERY IMPORTANT ISSUE.

20            THE COURT:  IT WILL NEVER BE A JURY ISSUE.  IT WILL

21   BE A BENCH ISSUE.  WE'LL HAVE TO APPORTION IT SOMEHOW, BUT I

22   DON'T SEE IT AS EVER BEING A JURY ISSUE.

23            MR. WILLIAMS:  I THINK THAT MIGHT BE.  I THINK -- OUR

24   VIEW IS SIMPLY THE SUPREME COURT DECISIONS ON THIS, WE THINK,

25   ARE -- ACTUALLY PROVIDE THAT THERE CAN BE DUAL RECOVERIES
```

1   BECAUSE OF THE PURPOSES OF THE ANTITRUST LAWS, AND THERE'S A

2   CASE ON POINT.  WE'D JUST LIKE THE OPPORTUNITY TO GIVE THE COURT

3   SOMETHING TO ADDRESS.

4         **THE COURT:**  WELL, YEAH, YOU ALL BETTER THINK ABOUT

5   THIS APPORTIONMENT ISSUE AND BRIEF THAT BECAUSE IF THERE'S SOME

6   JURY ISSUE FLOATING AROUND IN THERE, I NEED TO KNOW IT.  I'M

7   JUST ASSUMING THAT IT WOULD BE AN ISSUE THE COURT WOULD HAVE TO

8   APPORTION IN SOME FASHION.

9         **MR. WILLIAMS:**  THERE'S AN ISSUE, AND I THINK IT WOULD

10  BE VERY BENEFICIAL FOR EVERYONE FOR US TO BE ABLE TO BRIEF THAT

11  TO YOU.

12        **THE COURT:**  OKAY.  WELL, EVERYBODY SHOULD DO THAT,

13  THEN.  WE SHOULD MAKE A LIST OF EVERYTHING YOU'RE GOING TO DO

14  FOR NEXT TIME.

15        **MR. WILLIAMS:**  OKAY.

16        **THE COURT:**  AND THAT'S ONE OF THEM, IS TO FIGURE --

17  AND THAT TIES IN AS WELL TO THE ISSUE ABOUT THE CLAIMS PROCEDURE

18  AND CY PRES IDEAS AND ALL OF THAT.  ALL OF THAT NEEDS TO BE

19  WRITTEN UP AND TO THE EXTENT IT'S AGREED UPON, HAVE IT ALL

20  SIGNED OFF ON AND STIPULATE TO.

21        TO THE EXTENT IT TURNS OUT THAT THERE ISN'T AGREEMENT

22  OR UNDERSTANDING, THEN I'M GOING TO HAVE TO DECIDE IT.  AND TO

23  THE EXTENT IT'S A JURY ISSUE, I REALLY NEED TO KNOW THAT.

24        **MR. WILLIAMS:**  ON THE ACPERA LETTER, WE HAD AGREED

25  WITH WHAT THE COURT SUGGESTED, WHICH IS TO GIVE THAT TO YOU TO

```
 1   REVIEW.  THE ONLY THING WE'D SAY IN ADDITION WAS THERE'S NO

 2   REASON IT SHOULD BE KEPT FROM US.  THEY'VE DISCLOSED THAT THEY

 3   HAVE THE AGREEMENT.  IT'S NOT PRIVILEGED FOR ANY REASON.

 4   THEY'RE SEEKING BENEFITS IN RELATION TO THE CLASS BY VIRTUE OF

 5   THE AGREEMENT.

 6           WE THINK IT SHOULD BE GIVEN TO US AS WELL.  IT CAN BE

 7   CONFIDENTIAL.  IT CAN BE DESIGNATED PURSUANT TO A PROTECTIVE

 8   ORDER, BUT THERE'S NO RATIONALE FOR IT TO BE KEPT FROM US AT

 9   THIS POINT.

10           THE LAST POINT IS RELATIVELY MINOR, BUT THERE'S A

11   MOTION IN LIMINE THAT RELATED TO OTHER INDUSTRIES, WHICH THE

12   COURT GRANTED.  AS WE UNDERSTOOD THE MOTION WAS TO PRECLUDE

13   EVIDENCE OF INVESTIGATIONS OF OTHER INDUSTRIES.  TO THE EXTENT

14   IT'S JUST EVIDENCE THAT REFERS TO FLASH OR DRAM, I DON'T THINK

15   THAT WAS THE INTENTION.  WE JUST WANT TO MAKE SURE THAT THAT'S

16   THE CASE BECAUSE THAT WOULD BE A NIGHTMARE FOR TRIAL

17   PRESENTATION IN TERMS OF REDACTION OF DOCUMENTS AND INFORMATION.

18           THIS IS SAMSUNG NO. 4.

19           THE COURT:  RIGHT.  YEAH, I'M NOT WORKING FROM THE

20   MOTION.  I'M WORKING FROM --

21                 (SIMULTANEOUS COLLOQUY.)

22           THE COURT:  -- WHAT IT WAS.  AND WHAT I WROTE DOWN

23   WAS EVIDENCE OF CONDUCT OF OTHER NON-SRAM, I GUESS,

24   INVESTIGATIONS.

25           MR. WILLIAMS:  RIGHT.  AND IF IT'S INVESTIGATIONS,
```

1    WE -- WE AGREED THAT WE WEREN'T SEEKING --

2         **MR. SCARBOROUGH:**  AND I APOLOGIZE IF THERE WAS ANY

3    AMBIGUITY.  THE INTENT WAS, YOUR HONOR, THAT IT BE DIRECTED TO

4    BOTH THE FACT OF INVESTIGATIONS IN OTHER CASE, THE FACT THAT

5    THERE ARE CLASS ACTIONS GOING ON WITH RESPECT TO LCD, OR THERE

6    WAS A PRIOR FLASH CLASS ACTION GOING ON, OR ANY OF THE

7    UNDERLYING CONDUCT.

8         IT WAS TO EXCLUDE, YOU KNOW LCD EVIDENCE, CRT

9    EVIDENCE, FLASH EVIDENCE.  NONE OF THAT WOULD COME IN IN ANY

10   WAY, AND WE CAN OBVIOUSLY WORK WITH THE PLAINTIFFS.  DO WE THINK

11   THAT THERE ARE TRIAL EXHIBITS THAT HAVE SIGNIFICANT REFERENCES

12   TO THOSE OTHER PRODUCTS THAT WE NEED TO BE REDACTED?  I DON'T

13   THINK THAT THERE REALLY ARE.

14        I THINK THAT THERE CAN BE STRAY REFERENCES THAT ARE

15   JUST GOING TO GO OVER PEOPLE'S HEADS, AND AS LONG AS THERE'S NOT

16   ARGUMENT THAT, HEY, THERE'S SOME KIND OF MISDEEDS GOING ON IN

17   THESE OTHER INDUSTRIES, THEN I THINK WE CAN PRESERVE THE MOTION

18   IN LIMINE.  AND THAT'S A COMPLETE BAR ON EVIDENCE COMING IN AS

19   TO THOSE OTHER -- OTHER INDUSTRIES.

20        **MR. WILLIAMS:**  I THINK WE'RE IN AGREEMENT ON THIS.

21        **THE COURT:**  OKAY.

22        **MR. WILLIAMS:**  SO I JUST WANTED TO MAKE SURE WE WERE.

23        **THE COURT:**  OKAY.

24        **MR. WILLIAMS:**  THANK YOU.

25        **THE COURT:**  WELL, THE THING THAT I WASN'T CLEAR FROM

```
1    YOU ALL IS WHETHER YOU HAVE SOME OBJECTION TO THEIR NO. 5.

2              MR. WILLIAMS:  WE DID.  AND I APOLOGIZE TO THE COURT

3    IF IT WASN'T CLEAR.  THE ISSUE THERE WAS WE'RE NOT SEEKING TO

4    HAVE LEVY OFFER NEW OPINIONS OR DIFFERENT OPINIONS, BUT THE WAY

5    IT'S DRAFTED SEEMS TO BE SAYING NO OTHER EVIDENCE IN THE COURSE

6    OF THE CASE CAN COME IN THAT IN ANY WAY CONFLICTS WITH WHAT HE'S

7    SAYING.  THAT'S PRETTY BROAD, SO WE'RE NOT GOING TO COME IN

8    AND -- IF LEVY --

9              THE COURT:  WHAT THEY REALLY --

10             MR. WILLIAMS:  -- SAID, I DID NOT FIND FOR THIS

11   PERIOD AN OVERCHARGE FOR SRAM, WE'RE NOT GOING TO COME OUT NOW

12   AND SAY, OKAY, HERE'S SOME NEW EVIDENCE THAT PROVES THERE WAS.

13             THE COURT:  RIGHT.  THAT'S WHAT THEY'RE GETTING AT, I

14   BELIEVE.

15             MR. SCARBOROUGH:  YES.

16                  (SIMULTANEOUS COLLOQUY.)

17             THE COURT:  AND YOU'RE NOT GOING TO DO.

18             MR. WILLIAMS:  WE ARE NOT GOING TO INTRODUCE ANYTHING

19   TO CONTRADICT WHAT LEVY'S OPINED.

20             THE COURT:  OR EVIDENCE TO TRY TO PROVE SOMETHING

21   THAT LEVY SAID DIDN'T HAPPEN.

22             MR. WILLIAMS:  CORRECT.

23             THE COURT:  SO DOES THAT MEAN I DON'T HAVE TO DECIDE

24   THE PSRAM MOTION?

25             MR. WILLIAMS:  THE PSRAM MOTION, YOUR HONOR, IN MY
```

1    EYES IS SIMILAR TO THE ASPECTS THAT YOU'VE RULED ON AS IT

2    RELATES TO THE PERIODS FOR WHICH LEVY DIDN'T SAY THAT CONSPIRACY

3    WAS MOST EFFECTIVE.  MEANING --

4              **THE COURT:**  THAT'S YOUR ARGUMENT, BUT I'M NOT SURE I

5    AGREE WITH YOU.  AND IF I DON'T HAVE TO DECIDE IT, I WON'T AND

6    I'D RATHER NOT.  BUT IT WON'T NECESSARILY COME OUT THE SAME WAY.

7              **MR. WILLIAMS:**  UNDERSTOOD.

8              **THE COURT:**  SO DO I HAVE TO DECIDE IT OR NOT?

9              **MR. WILLIAMS:**  I DON'T THINK YOU NEED TO DECIDE THAT

10   MOTION, YOUR HONOR.

11             **THE COURT:**  OKAY.  GOOD.

12             **MR. WILLIAMS:**  OKAY.

13             **THE COURT:**  IP'S -- OR I GUESS YOU -- DID YOU ALREADY

14   TALK?

15             **MR. MICHELETTI:**  I JUST WOULD WANT TO JOIN IN THE

16   REQUEST TO BRIEF THE ALLEGATION ISSUE.  WE DISAGREE THAT ANY

17   ALLOCATION IS NECESSARY UNDER SUPREME COURT AUTHORITY, AND WE'LL

18   ADDRESS IT IN THE BRIEF THAT WE'VE DISCUSSED, BUT I DID WANT TO

19   STATE FOR THE RECORD THAT WE DISAGREE THAT--

20             **MR. WILLIAMS:**  WE DISAGREE THAT THERE'S ANY

21   REQUIREMENT THAT THE COURT ALLOCATE AS BETWEEN INDIRECT

22   PURCHASERS AND DIRECT PURCHASERS, TWO POTS, ONE POTS, EITHER OF

23   MONEY.

24             **THE COURT:**  SO THEY PAY DOUBLE AND YOU EACH GET A

25   FULL SHARE?

1          **MR. MICHELETTI:**  I THINK THE --

2          **THE COURT:**  AND THEN TRIPLE THAT?

3          **MR. MICHELETTI:**  YES.

4          **THE COURT:**  SO THAT'S SIX TIMES?  SOUNDS GOOD.

5                    (LAUGHTER.)

6          **THE COURT:**  OKAY.  WHAT ELSE?

7          **MR. SCARBOROUGH:**  YOUR HONOR, JUST BACK TO THE PSRAM

8   ISSUE HAVING HEARD WHAT MR. WILLIAMS JUST SAID, I GUESS I DON'T

9   UNDERSTAND WHY WE WOULD NOT JUST GO AHEAD AND OFFICIALLY

10  ELIMINATE PSRAM FROM THE DIRECT PURCHASER CASE WITH A RULING

11  GRANTING SUMMARY JUDGMENT.

12         **THE COURT:**  WE ARE.  THAT'S WHAT I UNDERSTOOD HIM TO

13  SAY.

14         **MR. SCARBOROUGH:**  RIGHT, BUT WHY NOT GO AHEAD AND

15  HAVE AN ORDER ISSUED THAT SAYS SUMMARY JUDGMENT IS GRANTED AS TO

16  PSRAM, WHICH WAS THE INTENT OF OUR SUMMARY JUDGMENT MOTION IN

17  THE FIRST PLACE.

18         **THE COURT:**  OKAY.

19         ON STIPULATION, YES.

20         **MR. SCARBOROUGH:**  OKAY.  AND YOUR HONOR HAD ALSO

21  MENTIONED YOU MIGHT HAVE SOME FOLLOW-UP QUESTIONS WITH RESPECT

22  TO THE FTAIA MOTIONS?

23         **THE COURT:**  YEAH, I DO.  MAYBE WE SHOULD -- WE EITHER

24  HAVE TO TAKE A BREAK OR AGREE TO BE DONE SOON.

25         **MR. COTCHETT:**  I THINK WE'RE DONE UNLESS YOU HAVE

```
 1    ANYTHING.

 2              MR. WILLIAMS:  THE COURT HAD SOME QUESTIONS.

 3              THE COURT:  THE TWO THINGS THAT I THINK I WOULD WANT

 4    TO DEAL WITH -- AND MAYBE IT COULD BE BRIEF -- WOULD BE AN

 5    AGENDA FOR THE NEXT PRETRIAL CONFERENCE, AND DEADLINES, BUT

 6    MAYBE YOU COULD WORK THAT OUT AMONGST YOURSELVES.

 7              WHAT I WOULD LIKE IS TO HAVE NEW JURY INSTRUCTIONS,

 8    NEW VERDICT FORMS, AN ANSWER ON THIS DAMAGES QUESTION, ANYTHING

 9    ELSE YOU CAN THINK OF THAT MIGHT COME UP.

10              MR. COTCHETT:  WE'LL STREAMLINE THIS.

11              THE COURT:  -- MET AND CONFERRED AND THEN BRIEFED IN

12    SOMETIME THAT I WILL HAVE A CHANCE TO READ IT BEFORE THE NEXT

13    PRETRIAL CONFERENCE.

14              MR. COTCHETT:  WHICH I THINK IS ON THE 18TH.

15              THE COURT:  IS IT?

16              MR. COTCHETT:  JANUARY --

17              MR. McGINNIS:  THAT IS, YOUR HONOR.  MY QUESTION IS,

18    YOU HAD ALLUDED EARLIER, YOUR HONOR, TO TIME FOR THE TRIAL AND

19    THAT'S A PRETTY CRITICAL ISSUE --

20              THE COURT:  THAT IS WHAT?

21              MR. McGINNIS:  TIME.  YOU SAID THE TRIAL IS GOING TO

22    BE TIMED.

23              THE COURT:  RIGHT.

24              MR. McGINNIS:  AND SO WE'RE WONDERING HOW MUCH.

25              THE COURT:  WELL, I'M -- SIX WEEKS.
```

```
1              MR. McGINNIS:  -- YOUR HONOR OUGHT TO DISCUSS ON

2     JANUARY 18TH.

3              THE COURT:  OH, IF YOU WANT TO TALK ABOUT AN

4     ALLOCATION --

5              MR. McGINNIS:  'CAUSE I DON'T THINK SIX WEEKS,

6     FRANKLY, IS ENOUGH, YOUR HONOR, GIVEN THE FACT THAT YOUR HONOR

7     HAS INDICATED THAT SOME ASPECT OF DRAM IS GOING TO COME IN.  THE

8     FACT THAT THERE ARE 32 WITNESSES ON THEIR WITNESS LIST AND A

9     THOUSAND DOCUMENTS ON THEIR TRIAL EXHIBIT LIST.

10             THE COURT:  WELL, PEOPLE ALWAYS PUT DOWN WAY MORE

11    THAN THEY REALLY --

12             MR. McGINNIS:  WELL, I HAVE --

13                  (SIMULTANEOUS COLLOQUY.)

14             MR. McGINNIS:  THEY'RE NOT -- I DON'T THINK THEY'RE

15    PLAYING A GAME WITH US, YOUR HONOR.  I THINK THAT THEY IN GOOD

16    FAITH INTEND TO USE LOTS OF THOSE DOCUMENTS.

17             THE COURT:  WELL, THEY'LL ONLY USE AS MANY AS THEY

18    CAN GET IN IN THE TIME ALLOTTED, AND JURIES DON'T LIKE TO HAVE

19    THE READ A LOT OF DOCUMENTS SO WE DON'T WANT A LOT OF DOCUMENTS.

20             OH, ANOTHER THING IS THE DISCOVERY EXCERPTS.  I NEED

21    DISCOVERY EXCERPTS BEFORE THE NEXT PRETRIAL.

22             MR. COTCHETT:  I THINK THEY'RE DUE ON THE 4TH.

23             THE COURT:  ARE THEY OKAY?

24             MR. COTCHETT:  THAT'S WHAT I THOUGHT.

25             MR. SCARBOROUGH:  THAT'S RIGHT, YOUR HONOR.
```

1          **THE COURT:**  -- HOW TO DO THOSE WITH -- WE NEED THE

2    DEPO AND WE NEED PLAINTIFFS' DESIGNATIONS AND DEFENDANTS'

3    DESIGNATION AND OBJECTIONS TO PLAINTIFFS' DESIGNATION, COUNTER

4    DESIGNATIONS, ALL COLOR CODED ON ONE SET SO THAT I CAN READ THEM

5    AND RULE ON THEM IN THE MARGIN.

6          **MR. McGINNIS:**  YES, YOUR HONOR.

7          **THE COURT:**  OKAY.  BUT TRY TO HAVE THIS -- I MEAN,

8    YOU KNOW, THEY HATE.  THE VIDEOS AREN'T SO BAD, THEY ACTUALLY

9    KIND OF LIKE WATCHING INDIVIDUAL, BUT IT'S SORT OF LIKE

10   TELEVISION BY DEPO READ IS HORRIBLE DOCUMENTS AREN'T MUCH BETTER

11   AND DISCOVERY EXCERPTS ARE TERRIBLE.

12          SO TO THE EXTENT YOU HAVE THOSE, YOU SHOULD TRY TO

13   WRITE THEM IN PLAIN ENGLISH AND NOT TRY TO READ ADMISSIONS AND

14   INTERROGATORIES AND THINGS OUT TO THEM.  TRY TO PUT THE

15   STIPULATION AS TO WHAT WAS ACTUALLY SAID THAT CAN BE READ TO

16   THEM IN ENGLISH.

17          **MR. COTCHETT:**  BUT MY NOTES SHOW THAT'S ALL DUE ON

18   THE 4TH, AND WE'RE WILLING TO HAVE A VERY HAPPY HOLIDAY DOING

19   ALL OF THAT IN COLORS.

20          **THE COURT:**  OKAY.  YEAH, THAT WAS WHAT I WAS GOING TO

21   SAY.  ALL OF THESE BRIEFINGS AND THINGS, IF I COULD HAVE

22   EVERYTHING BY THE 4TH, THAT WILL BE GREAT.  THAT WILL GIVE ME

23   TWO WEEKS.  IF NOT --

24          **MR. COTCHETT:**  IT'S DUE THE 4TH.

25          **MR. McGINNIS:**  WE MIGHT BEG FOR MERCY AT LEAST ON THE

```
1    BRIEFING TO, LET'S SAY, THE 11TH?

2              THE COURT:  WELL, FOR WHAT?  EVERYTHING OR --

3              MR. SCARBOROUGH:  THESE ISSUES OF APPORTIONMENT AND,

4    YOU KNOW, WHAT WE NEED TO DO WITH RESPECT TO DAMAGES AND PERHAPS

5    INDIVIDUAL DAMAGES SHOWINGS.  THOSE MAY BE SLIGHTLY MORE COMPLEX

6    ISSUES.  WE'RE ALONG -- WE'RE FAIRLY FAR ALONG WITH THE TRIAL

7    EXHIBITS AND THE DESIGNATIONS.  WE'VE ALREADY EXCHANGED

8    TENTATIVE VERSIONS OF THOSE.  BUT THE BRIEFING MIGHT BE A MORE

9    COMPLEX PROCESS.

10             MR. McGINNIS:  ON THE -- ON A PLUS NOTE, YOUR HONOR,

11   I'M QUITE CERTAIN THAT WE CAN AGREE ON WHAT WOULD BE APPROPRIATE

12   AGENDA FOR THE COURT ON THAT DATE, AND I'M SURE COULD SUBMIT IT

13   AHEAD OF TIME, WHENEVER THE COURT WANTS.

14             THE COURT:  WELL, HOW ABOUT THE 7TH?

15             MR. McGINNIS:  THAT'D BE FINE, YOUR HONOR.

16             THE COURT:  YEAH, SO TRY NOT TO HAVE TOO MANY

17   EXHIBITS.  TRY TO HAVE -- USE THE SET THAT PLAINTIFFS WANT AS

18   THE SET.  I DON'T WANT TWO COPIES OF ANY EXHIBIT, SO IF THEY'RE

19   USING IT, THEN YOU USE THEIRS.  DON'T GIVE ME ANOTHER COPY OF IT

20   UNLESS THERE'S SOME MATERIAL DIFFERENCE.

21             TRY TO REACH A STIPULATION ON THESE CUSTODIANS AND

22   THINGS LIKE THAT.  I CERTAINLY DON'T WANT TO HAVE --

23             MR. COTCHETT:  WE WILL, YOUR HONOR.

24             THE COURT:  -- CUSTODIANS OF RECORD.

25             I THINK WE CAN DO IT IN SIX WEEKS.  IF YOU REALLY
```

```
 1   THINK WE CAN'T, YOU'LL HAVE TO MAKE A MOTION FOR MORE TIME.  BUT

 2   THAT'S MY PLAN AND JUST DIVIDING IT UP AND YOU GET -- YOU GET

 3   WHAT YOU GET.

 4             MR. COTCHETT:  AND THAT'S A FOUR-DAY WEEK.

 5             THE COURT:  FIVE DAY.

 6             MR. COTCHETT:  OH, FIVE DAY.  WE CAN DO IT EASILY

 7   THEN, YOUR HONOR, STANDING ON OUR HEAD.

 8             THE COURT:  WHAT ELSE?

 9             YEAH, SO MAYBE IF YOU COULD SIT DOWN WITH EACH

10   OTHER --

11             MR. COTCHETT:  WE WILL.

12             THE COURT:  -- AND JUST MAKE SURE THAT YOUR AGENDA

13   INCLUDES EVERYTHING THAT NEEDS TO BE DECIDED ALONG WITH A

14   SCHEDULE FOR WHEN IT ALL GETS BRIEFED AND WHEN I GET IT.

15             MR. McGINNIS:  I'M SURE WE CAN DO THAT.

16             THE COURT:  THEN WHAT ARE YOU GOING TO DO ABOUT

17   TRYING TO SETTLE THE CASE?

18             MR. COTCHETT:  WE'RE WORKING ON THAT.

19             THE COURT:  BUT THE SAMSUNG --

20                  (SIMULTANEOUS COLLOQUY.)

21             MR. COTCHETT:  THERE IS A MEDIATOR IN PLACE, AND

22   WE'VE BEEN TALKING TO THE MEDIATOR WHO TELLS US THAT THEY'RE

23   WORKING WITH THE OTHER SIDE.  SO WHEN COUNSEL SAID HE HASN'T

24   HEARD MUCH, WE'LL JUST SAY THAT THE MEDIATOR SPEAKS LOUDLY OR

25   WHAT-HAVE-YOU.  WE'RE DEALING WITH VERY DISTINGUISHED,
```

```
 1   EXPERIENCED COUNSEL, AND I'M SURE WE'RE GOING TO BE ABLE TO WORK

 2   OUT ALL THESE TRIAL PROBLEMS AND HOPEFULLY RESOLVE IT.

 3             THE COURT:  SO --

 4             MR. COTCHETT:  IT'S A HOLIDAY SEASON, I MEAN.  MY

 5   GOSH.

 6             THE COURT:  YOU THINK THEY'LL BE IMBUED WITH THE

 7   SPIRIT OF GENEROSITY?

 8             MR. COTCHETT:  I THINK THEY WILL.  I DO.

 9             THE COURT:  YOU'RE STILL USING JUDGE WEINSTEIN.

10             MR. COTCHETT:  YES, WE ARE.

11             THE COURT:  WELL, I'M CONCERNED BY THE FACT THAT

12   COUNSEL DOESN'T SEEM TO BE AWARE OF THIS.  WHAT SHALL I DO?

13   SHALL I ORDER YOU TO HAVE A JOINT MEETING OR A CONFERENCE CALL

14   WITH JUDGE WEINSTEIN JUST TO MAKE SURE THAT EVERYONE IS AWARE

15   THAT WE'RE TRYING TO SETTLE THE CASE?

16             MR. COTCHETT:  THAT WOULD BE FINE.

17             MR. McGINNIS:  THAT'D BE FINE WITH US, YOUR HONOR.

18             THE COURT:  OKAY.  SO WHY DON'T --

19                  (SIMULTANEOUS COLLOQUY.)

20             THE COURT:  WHY DON'T YOU ALL WITHIN THE NEXT WEEK

21   HAVE A JOINT CONFERENCE CALL AT LEAST WITH JUDGE WEINSTEIN

22   EXPLAINING WHAT THE ANTICIPATED PROCESS OF THE SETTLEMENT TALKS

23   WILL BE AND WHO'S SPEAKING TO WHOM AND WHEN.  IS THAT --

24             MR. COTCHETT:  YES.

25             MR. McGINNIS:  CERTAINLY, YOUR HONOR, WE CAN DO THAT.
```

1          **MR. COTCHETT:**  YES.

2          **THE COURT:**  INCLUDING BOTH SAMSUNG AND CYPRESS AND

3    THE DIRECTS AND THE INDIRECTS AND BE GUIDED BY HIS VIEWS AS TO

4    WHAT SHOULD BE DONE, WHETHER YOU SHOULD HAVE AN IN-PERSON

5    MEETING WITH EVERYBODY COMING, OR WHETHER HE SHOULD SPEAK WITH

6    EVERYONE ON THE PHONE SERIATIM, OR WHATEVER SHOULD BE DONE, DO

7    WHAT HE SAYS.

8          OKAY?

9          **MR. McGINNIS:**  OKAY, YOUR HONOR.  OF COURSE.

10         **THE COURT:**  OKAY.  WELL, THE ONLY OTHER THING IS THIS

11   FTAIA MOTION WHICH I'M HAVING SOME DIFFICULTIES WITH.  WHAT DID

12   PLAINTIFFS HAVE TO SAY ABOUT DEFENDANTS' ARGUMENTS THAT --

13         WELL, LET ME SAY THIS:  I DO THINK THAT THE ACT IS

14   JURISDICTIONAL AT THIS MOMENT.  I THINK THAT MIGHT TURN OUT TO

15   BE WRONG.  IT MIGHT CHANGE, BUT IT'S NOT FOR THIS COURT TO

16   CHANGE IT.  IT MAY BE THAT WHEN THIS NINTH CIRCUIT GETS THIS

17   CASE, IF IT DOES, IT MIGHT TAKE THIS OPPORTUNITY TO -- TO SAY

18   THAT ARBAR (PHONETIC) CHANGED THE LANDSCAPE AND THAT IT'S NOT

19   JURISDICTIONAL.  BUT FOR THE MOMENT, I SEE NO ALTERNATIVE BUT TO

20   TREAT IT AS JURISDICTIONAL.

21         THAT BEING SAID, WE NEED TO THEN FIGURE OUT HOW

22   FACTUAL DISPUTES ARE DECIDED IN A MOTION TO DISMISS, AND I -- I

23   GUESS THIS IS PROBABLY WHAT I SAID BEFORE, BUT I'M STILL

24   THINKING THIS IN LARGE PART, THAT IF THERE'S FACTUAL DISPUTES ON

25   A MOTION TO DISMISS, THE COURT HAS TO RESOLVE THEM.

1    IF THEY'RE -- IF THE PLAINTIFF SAYS SOMETHING AND THE

2 DEFENDANT SAYS NOTHING, I BELIEVE THE PLAINTIFF.  IF THE

3 PLAINTIFF SAYS SOMETHING AND THE DEFENDANT SAYS SOMETHING, I

4 WOULD HAVE TO PERHAPS HAVE AN EVIDENTIARY HEARING ON THE POINT.

5 IF I'M GOING TO HAVE AN EVIDENTIARY HEARING, I MIGHT AS WELL DO

6 IT AT THE SAME TIME AS I'M TRYING THE CASE, AND IF THERE ARE

7 ISSUES THAT NEED TO GO TO ME TO DETERMINE JURISDICTION THAT

8 DON'T GO TO THE JURY, THEN WE'LL TAKE THOSE THINGS IN THE

9 AFTERNOON OR WHATEVER, AND I WILL, BEFORE THE JURY DECIDES OR

10 MAYBE EVEN AFTER THE JURY DECIDES, RESOLVE THOSE FACTUAL

11 DISPUTES AND DETERMINE WHETHER I HAVE JURISDICTION OVER THESE

12 THINGS.

13    THAT APPROACH IS ALSO COUNSELED BY THE LAW THAT SAYS

14 IF JURISDICTIONAL FACTUAL ISSUES ENTWINE WITH THE ISSUES ON THE

15 MERITS, THAT IT CAN BE DEFERRED TO TRIAL.  SO I THINK THAT

16 THAT'S GENERALLY THE APPROACH I WOULD TAKE.

17    NOW, TO THE EXTENT THAT THERE ARE MATTERS OF LAW THAT

18 COULD BE DECIDED WITHOUT ANY FACTUAL DISPUTES, MAYBE I DO HAVE

19 TO DECIDE THOSE, AND I'M TROUBLED BY SOME OF THEM.

20    ONE PROBLEM I HAVE IS THE -- WELL, I TEND TO THINK

21 THAT THE "BILLED TO U.S." IS QUITE LIKELY TO HAVE AN IMPACT ON

22 DOMESTIC PRICES OR WHATEVER.  I HAVE MORE TROUBLE WITH THE

23 "BILLED FROM U.S. AND SHIPPED FROM U.S." AND ONE OF THE BIG

24 PROBLEMS I HAVE WITH THAT IS WHO IS IT BILLED TO AND SHIPPED TO?

25 AND IF IT'S BILLED TO AND SHIPPED TO FOREIGN ENTITIES, ARE THEY

1    CLASS MEMBERS?

2              **MR. SCARBOROUGH:**  (SHAKES HEAD.)

3              NO, YOUR HONOR, THEY'RE NOT.

4              **THE COURT:**  I KNOW THAT'S WHAT YOU THINK.

5              WHAT DO THE PLAINTIFFS HAVE TO SAY ABOUT THAT?

6              **MR. WILLIAMS:**  YOU'RE TALKING ABOUT JUST DIRECT

7    PURCHASERS AT THIS STAGE, I ASSUME?

8              **THE COURT:**  WELL, YES, AND CLEARLY THEY'RE NOT IP

9    CLASS MEMBERS, BUT I'M NOT EVEN SURE THEY'RE DP CLASS MEMBERS,

10   IN WHICH CASE WOULD IT NOT BE EXCLUDED FOR THAT REASON, IF

11   NOTHING ELSE?

12             **MR. WILLIAMS:**  YEAH, I THINK THAT'S A SIMPLER POINT.

13   IF IT'S --

14             **THE COURT:**  THAT IT'S WHAT?

15             **MR. WILLIAMS:**  -- FOREIGN PURCHASER AND IT'S BILLED

16   FROM AND IT'S NOT WITHIN THE EXPERT EXCEPTION, THEN I THINK IT'S

17   NOT WITHIN OUR CLAIMS BECAUSE OUR CLAIMS WERE BOUGHT HERE, SRAM

18   BOUGHT HERE.

19             **THE COURT:**  BUT THAT'S ALL THEY'RE ASKING FOR.

20   THEY'RE SAYING IF ITS -- IF ITS ONLY CONNECTION TO THE U.S. IS

21   THAT IT WAS BILLED FROM THE U.S., WHICH THEN TO ME MEANS IT WAS

22   BILLED TO A FOREIGN ENTITY, SHIPPED TO A FOREIGN ENTITY, THEN

23   IT'S NOT THE SUBJECT OF THIS CLASS.

24             SIMILARLY IF IT'S SHIPPED FROM THE U.S. BUT BILLED TO

25   A NON-U.S. ENTITY, SHIPPED TO A NON-U.S. ENTITY, IT'S NOT THE

```
 1    SUBJECT OF THIS CLASS ACTION.  THAT'S WHAT THEY'RE SAYING, AND

 2    I'M WONDERING IF THAT ISN'T CORRECT.

 3              MR. WILLIAMS:  I THINK FOR THOSE CATEGORIES, IT'S

 4    WITHIN THE PART OF THE EXPORT COMMERCE, AND I THINK CONGRESS

 5    CARVED OUT THAT PART.

 6              THE COURT:  SO IN OTHER WORDS, IT IS CORRECT.

 7              MR. WILLIAMS:  I THINK SO, YOUR HONOR.

 8              THE COURT:  HMM.

 9              MR. MICHELETTI:  WELL, FROM THE INDIRECT PURCHASER'S

10    PERSPECTIVE --

11              THE COURT:  WELL, YOU HAVE A DIFFERENT PROBLEM.  YOUR

12    PROBLEM IS THAT IT WAS BOUGHT OUTSIDE THE U.S., SHIPPED OUTSIDE

13    THE U.S., PAID OUTSIDE THE U.S., BUT IT EVENTUALLY ENDED UP IN

14    THE U.S. BOUGHT BY SOMEONE IN THE U.S.

15              AND THE ARGUMENT THAT YOU WOULD MAKE AND THAT I MIGHT

16    OR MIGHT NOT AGREE WITH -- WELL, THE PART THAT I MIGHT AGREE

17    WITH WOULD BE THAT IF YOU COULD SHOW THAT NOT ONLY WAS IT JUST

18    SORT OF HAPPENSTANCE THAT IT ENDED UP IN THE U.S. -- AUNT ESTHER

19    BOUGHT IT ON HER TRIP TO EUROPE AND BROUGHT IT HOME -- BUT THAT

20    IT WAS CREATED SPECIFICALLY TO BE SOLD TO AN ENTITY WHICH WAS

21    GOING TO USE IT IN THE U.S. AND EVERYONE KNEW IT.

22              IN OTHER WORDS, LET'S SAY IT WAS A CELL PHONE AND IT

23    WAS BEING MANUFACTURED ABROAD, TRUE ENOUGH, BUT IT WAS BEING

24    MANUFACTURED IN A WAY THAT IT COULD ONLY BE USED IN THE U.S.

25    BECAUSE IT WAS -- THAT IT WAS A GSM OR IT WASN'T A GSM OR
```

1    WHATEVER, AND EVERYONE KNEW THAT IT WAS BOUND FOR THE U.S.

2    MARKET, EVERYONE KNEW THAT THIS PARTICULAR TYPE OF SRAM HAD BEEN

3    COMMISSIONED TO BE MADE TO FIT INTO THIS CELL PHONE WHICH WAS

4    BEING DESIGNED TO U.S. STANDARDS AND CLEARLY GOING TO BE SENT TO

5    THE U.S., THEN I WOULD SAY, YES, THAT THAT WOULD SEEM TO ME TO

6    BE -- HAVE A DOMESTIC EFFECT.

7            SHORT OF THAT, IF IT WAS JUST SORT OF LIKE THE U.S.

8    BUYS A LOT OF CELL PHONES.  THIS ONE PROBABLY WAS GOING TO GO

9    THERE, TOO.  THAT MIGHT NOT BE ENOUGH.  YOU KNOW, JUDGE

10   ILLSTON'S COMMENT THAT WE CAN'T JUST BASE THIS ON INTENT AND

11   SORT OF SERENDIPITY.  THAT MIGHT NOT BE ENOUGH.

12           BUT IF YOU HAVE MORE, AND YOU SAY YOU DO, THEN THAT

13   MORE MIGHT MAKE IT ENOUGH.  THAT'S WHAT I'M THINKING, AND THAT'S

14   THE KIND OF FACTUAL STUFF THAT MAYBE WE DON'T REALLY KNOW FOR

15   SURE IS THERE UNTIL IT IS THE SUBJECT OF AN EVIDENTIARY HEARING,

16   SLASH, TRIAL.

17           **MR. SCARBOROUGH:**  WELL, SO, YOUR HONOR, OBVIOUSLY FOR

18   SAMSUNG, WE AGREE WITH YOUR COMMENTS WITH RESPECT TO SHIP FROM

19   AND BILLED FROM.  WE DON'T THINK YOU CAN SQUARE THOSE CATEGORIES

20   OF PURCHASES WITH THE PLAIN LANGUAGE OF THE DIRECT CLASS

21   CERTIFICATION ORDER.

22           THESE ARE SIMPLY NOT PURCHASES MADE DIRECTLY IN THE

23   UNITED STATES, AND I WOULD SUBMIT THAT, YOUR HONOR, AT LEAST AS

24   TO THOSE CATEGORIES, COULD AVOID GETTING TO THE FTAIA ISSUES IF

25   YOU SIMPLY FOUND THESE ARE SIMPLY NOT WITHIN THE -- THE -- THE

1    JURISDICTION OF THIS COURT AFTER HAVING MADE THE CLASS

2    CERTIFICATION DETERMINATION.  YOU DON'T EVEN NEED TO GET TO THE

3    FTAIA ISSUES.

4              WE OBVIOUSLY ALSO AGREE WITH YOUR HONOR ON THE FTAIA

5    BEING JURISDICTIONAL, AT LEAST UNDER THE CURRENT STATE OF THE

6    LAW.  I WOULD SUBMIT THAT THE PARTICULAR MOTION THAT WE MADE TO

7    YOU WAS A MOTION RAISING A FACTUAL CHALLENGE TO SUBJECT MATTER

8    JURISDICTION, WHICH IS BASICALLY HOW THE CASE LAW SAYS THOSE --

9    THIS IS THE WAY THESE MOTIONS ARE BROUGHT AFTER DISCOVERY IS

10   CLOSED.  AND IF PLAINTIFFS HAVE FACTS THEY WANT TO BRING TO

11   BEAR, THAT'S FINE.  THEY CAN PUT THOSE IN AND THE COURT HAS TO

12   RESOLVE ANY FACTUAL DISPUTES.

13             IT'S REALLY SAMSUNG'S POSITION THAT THERE ARE NO

14   PERTINENT FACTUAL DISPUTES THAT MATTER WITH RESPECT TO THE FTAIA

15   MOTIONS IN THE DIRECT CASE AND THAT THE FACTS THAT THEY HAVE

16   PROFERRED DON'T MATTER.  AND SO THAT'S WHY YOU HAVEN'T SEEN

17   FACTS FROM SAMSUNG'S SIDE IN THE DIRECT CASE, IS THAT WE THINK

18   BASED ON THE CASE LAW THAT WE PRESENTED TO YOU, BASED ON THE

19   LEGAL ARGUMENTS, THE DEFINITIONS OF THESE TYPES OF COMMERCE,

20   THAT WE WIN BASED ON THIS LAW.  AND IT'S FINE FOR YOU TO

21   CONSIDER THEIR FACTS, BUT THE FACTS HAVE TO MATTER, AND THE

22   FACTS THEY PROFFER DON'T MATTER.

23             **THE COURT:**  WELL, "BILLED TO U.S." I THINK DOES.  I

24   THINK THERE'S -- I MEAN, I DON'T KNOW IF EVERYTHING THEY SAY IS

25   TRUE, BUT IF EVERYTHING THEY DO SAY IS TRUE, THEN I THINK THAT

1    CERTAINLY ONE COULD INFER THAT SRAM THAT WAS BILLED TO THE U.S.

2    HAD A DOMESTIC EFFECT.

3              **MR. SCARBOROUGH:**  OKAY.  AND, YOUR HONOR --

4              **THE COURT:**  AND YOU SAY NO.

5              **MR. SCARBOROUGH:**  -- WE DISAGREE BASED ON THE --

6    MCCLOFERTY (PHONETIC) CASE IS REALLY THE ONE MOST ON POINT, AND

7    IT WAS THE ONE THAT WAS NEVER DIRECTLY ADDRESSED BY THE

8    PLAINTIFFS.  SO WE THINK -- THAT'S ANOTHER COURSE -- COURT THAT

9    HAS LOOKED PRECISELY AT THOSE ISSUES, THOSE TYPES OF SALES, AND

10   SAID THIS, OF COURSE, DOES NOT HAVE A DIRECT EFFECT ON U.S.

11   COMMERCE.

12              SO WE'RE HAPPY TO STAND ON THE RECORD WE MADE, AND WE

13   THINK THAT YOU SHOULD MAKE THAT RULING NOW RATHER THAN LEAVE

14   THAT FOR THE JURY TO MAKE AT A LATER DATE.

15              **THE COURT:**  I'M NOT SAYING THE JURY WOULD MAKE IT.

16   I'M SAYING I WOULD MAKE IT, BUT I WOULD HEAR EVIDENCE ON IT, AND

17   I WOULD RESOLVE DISPUTED FACTS AND DETERMINE WHETHER INFERENCES

18   SHOULD BE DRAWN FROM FACTS AND I WOULD DO THAT WHILE I'M SITTING

19   LISTENING TO THE TRIAL ANYWAY.

20              **MR. SCARBOROUGH:**  I UNDERSTAND.  AND CYPRESS MAY HAVE

21   A DIFFERENT VIEW WITH RESPECT TO THE INDIRECT MOTION.

22              **MR. WINTERS:**  AGAIN, GARY WINTERS FOR CYPRESS.

23              WE HAVE THE SAME VIEW WITH RESPECT TO THE DIRECT

24   PURCHASERS, BUT JUST THE ADDITIONAL POINT I WANT TO MAKE ON THE

25   INDIRECT PURCHASERS IS THAT THE -- AND I MADE THIS POINT AT THE

```
1    MOTIONS HEARING BACK IN OCTOBER -- IS THAT THE INDIRECT

2    PLAINTIFFS HAVE NOT MADE ANY EFFORT TO SEPARATE THEIR DAMAGES --

3                    (SIMULTANEOUS COLLOQUY.)

4         THE COURT:  YEAH, THAT WAS MY OTHER PROBLEM.  WHAT

5    ARE YOU GOING TO DO -- LET'S SAY I DO DECIDE IT NOW OR DECIDE IT

6    AT TRIAL.  WHAT IF IT TURNS OUT THAT YOU HAVEN'T PROVED A

7    DOMESTIC EFFECT FROM THESE FOREIGN PURCHASES AND YOU HAVE NOT

8    SEGREGATED THEM OUT, YOU LOSE YOUR WHOLE CASE.

9         MR. MICHELETTI:  WELL, FIRST OF ALL, WE DON'T THINK

10   YOU GO THERE INITIALLY.  WE THINK YOU HAVE --

11        THE COURT:  BUT YOU GOT TO --

12                    (SIMULTANEOUS COLLOQUY.)

13        THE COURT:  -- ASSUME THAT THAT MIGHT -- YOU GOT TO

14   HAVE A BACKUP PLAN.

15        MR. MICHELETTI:  OKAY.  AND IN THE DEFENDANT'S

16   MOTION, THEY THEMSELVES SET FORTH A -- THEY PROPOSED A PROCEDURE

17   FOR ADDRESSING IT, AND THAT IS THAT WE GO BACK TO SOME EXTENT TO

18   THE DRAWING BOARD ON THE DAMAGES PORTION.

19        THE COURT:  WELL, NO, THEIR PROCEDURE IS YOUR CASE

20   GETS THROWN OUT.

21        MR. MICHELETTI:  NO, THAT'S NOT WHAT THEY SAID IN

22   THEIR MOTION.  IN THEIR MOTION, THEY SAID WE TAKE 30 DAYS, WE

23   DECIDE HOW TO HANDLE DAMAGES GOING FORWARDS.

24        THE COURT:  REALLY?  I MISSED THAT PART.

25        MR. WINTERS:  WELL, I -- I -- THAT IS WHAT IT SAYS IN
```

```
1   THE MOTION.  I THINK OUR POINT IS THAT THE WAY IT'S CURRENTLY

2   STRUCTURED, THE CURRENT DAMAGES ANALYSIS COULD NOT STAND.  IF

3   THEY CAN COME BACK AND FIND SOME WAY TO SEGREGATE THAT, THEIR

4   EXPERT WOULD NEED TO DO THAT.  WE'D NEED TO DEPOSE HIM.  I MEAN,

5   IT WOULD BE -- IT WOULD BE ANOTHER PROCEDURE ON THAT.

6           BUT I THINK, AGAIN, AS MR. SCARBOROUGH SAID, THESE

7   ARE NOT, IN OUR VIEW, FACTUAL ISSUES THAT REQUIRE RESOLUTION AND

8   REQUIRE EVIDENCE FOR THE COURT TO DETERMINE AT TRIAL.  THIS

9   QUESTION ABOUT WHETHER THE INDIRECT PLAINTIFFS HAVE SUFFICIENTLY

10  SEGREGATED, THAT'S A DECISION THAT CAN BE MADE NOW.  IT'S BASED

11  ON THE LEGAL ANALYSIS LEADS TO WHETHER THEIR DAMAGES CLAIM CAN

12  PROCEED NOW OR WHETHER THEY HAVE TO COME BACK WITH NEWLY

13  COMPLETELY NEW DAMAGES ANALYSIS.

14          THE COURT:  WELL, THAT'S THE BIG -- ANOTHER ADVANTAGE

15  OF MY BIFURCATION SCHEME, IS THAT WE COULD DO THAT AFTER THE --

16          MR. MICHELETTI:  IF NECESSARY.

17          THE COURT:  IF THERE IS A TRIAL.

18          MR. MICHELETTI:  IF NECESSARY.

19          THE COURT:  OKAY.  ALL RIGHT.  WELL, WE'RE GOING TO

20  HAVE TO STOP NOW.  I'VE KEPT MY REPORTER WAY LONGER THAN I

21  SHOULD.

22          SO I'D LIKE FOR YOU ALL TO SIT DOWN AND JUST SPELL

23  OUT EXACTLY EVERYTHING EVERYBODY'S GOING TO FILE WHEN SO THAT WE

24  MAKE SURE WE COVER EVERYTHING THAT NEEDS TO BE DONE.  AND I

25  REALLY WANT YOU TO DO WHAT YOU CAN TO TRY TO SETTLE SOME OF THE
```

1   CASE, IF NOT ALL OF THE CASE, AND SEE IF YOU CAN REACH A LOT OF

2   STIPULATIONS FOR -- FOR VARIOUS THINGS THAT CAN'T BE SETTLED IF

3   THEY CAN'T.

4            AND I'LL SEE YOU, IF YOU HAVEN'T SETTLED, ON THE

5   18TH.

6            **COUNSEL:**  THANK YOU VERY MUCH.

7            **MR. COTCHETT:**  THANK YOU, YOUR HONOR.

8            **MR. SCARBOROUGH:**  THANK YOU.

9            (PROCEEDINGS WERE CONCLUDED AT 4:17 P.M.)

10                        --OOO--

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, RAYNEE H. MERCADO, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN MDL NO. 07-01819CW, IN RE SRAM ANTITRUST LITIGATION, WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE COURT FILE.

_____

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

WEDNESDAY, DECEMBER 22, 2010