IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION | No. 07-md-01819 CW |
| | ORDER GRANTING IN PART, DENYING IN PART AND DEFERRING IN PART DEFENDANTS' JOINT MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (Docket No. 1037) |

_____/

Defendants Samsung Electronics Company, Ltd. (SEC) and

Samsung Semiconductor, Inc. (SSI), collectively referred to as

Samsung in this order, and Cypress Semiconductor Corporation

(Cypress) jointly move to dismiss, bringing a factual challenge to

the Court's subject matter jurisdiction over certain claims

brought by the Direct Purchaser (DP) and Indirect Purchaser (IP)

Plaintiffs.  The motion attacks Plaintiffs' claims to the extent

they are based on purchases of Static Random Access Memory (SRAM)

that implicate foreign commerce.[1]  Docket No. 1037.  Defendants

_____

    [1]  Defendant Samsung Electronics America, Inc. (SEA)
initially joined this motion.  However, the Court granted summary
judgment on all claims against it, pursuant to a stipulation by
the parties.  Docket No. 1131.

invoke the Foreign Trade Antitrust Improvements Act (FTAIA), 15 U.S.C. § 6a, as the statutory basis for this motion.

The Court heard oral argument on this motion on October 14, 2010.  Having reviewed all of the parties' submissions, and considered their oral arguments, the Court grants the motion in part, denies it in part, and defers ruling in part.

BACKGROUND

The DP and IP Plaintiff classes allege that Samsung, Cypress, and other manufacturers engaged in a price-fixing conspiracy related to SRAM.  DP Plaintiffs have brought suit for antitrust violations under the Sherman Act, while IP Plaintiffs have sued under various antitrust and consumer protection statutes and the common law of twenty-seven United States jurisdictions.  The facts of this case were described in detail in the Court's prior orders.

Defendants seek to dismiss Plaintiffs' claims to the extent they are based on three categories of transactions: First, DP Plaintiffs' claims for damages based on transactions where the SRAM was billed from or shipped from the United States, but was billed to and shipped to a foreign country; second, DP Plaintiffs' claims for damages based on transactions where the SRAM was billed to the United States, but shipped to a foreign country; and third, IP Plaintiffs' claims for damages based on indirect purchases in the United States of SRAM or finished products containing SRAM where the SRAM was originally sold by Defendants to a customer in a foreign country.

LEGAL STANDARD

Rule 12(b)(1) authorizes a party to move to dismiss a claim for lack of subject matter jurisdiction.  Federal courts are courts of limited jurisdiction.  They possess only the power authorized by the Constitution and statute.  Kokken v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  Thus, the court presumes lack of jurisdiction, and the party seeking to invoke the court's jurisdiction bears the burden of proving that subject matter jurisdiction exists.  Id.  A party challenging the court's jurisdiction under Rule 12(b)(1) may do so by raising either a facial attack or a factual attack.  See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

In that event, "the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction."  Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001) (citing Rosales v. United States, 824 F.2d 799, 803 (9th Cir. 1987) ("A district court may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question

United States District Court
For the Northern District of California

3

prior to trial, if the jurisdictional facts are not intertwined on the merits.").

DISCUSSION

I. Nature of FTAIA Provisions and the Requisite Procedure

The FTAIA amended the Sherman Act to establish a general rule that the Sherman Act "shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations – unless" the domestic effect exception applies. In re DRAM Antitrust Litig., 546 F.3d 981, 985 (9th Cir. 2008). Congress enacted the FTAIA because it believed that American jurisdiction over international commerce should be limited to transactions that affect the American economy.  See Hartford Fire Ins. v. California, 509 U.S. 764, 796 n.23 (1993) (citing H.R. Rep. No. 97-686, ¶¶ 2-3, 9-10 (1982)).  The domestic effect exception of the FTAIA provides that trade with foreign nations is subject to the Sherman Act if

> (1) such conduct has a direct, substantial, and reasonably foreseeable effect--
>
>> (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
>>
>> (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
>
> (2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.

15 U.S.C. § 6a.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Thus, the domestic effect exception involves a two prong test as to whether the alleged antitrust conduct "(1) has a 'direct, substantial, and reasonably foreseeable effect' on domestic commerce, and (2) 'such effect gives rise to a [Sherman Act] claim.'"  In re DRAM Antitrust Litig., 546 F.3d at 985 (quoting F. Hoffmann-La Roche Ltd. v. Empagran S.A. (Empagran I), 542 U.S. 155, 159 (2004)).

The parties dispute whether the FTAIA is a jurisdiction-stripping statute, or whether it simply imposes a requirement on the elements of an antitrust claim.  In addition, the parties disagree as to which type of motion is applicable to this issue. If the FTAIA restricts the jurisdiction of the court, then it is appropriately the basis for a motion to dismiss.  However, if the statute implicates the merits, then a motion for summary judgment is proper.  See Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp., 594 F.2d 730, 735 (9th Cir. 1979).  The type of motion in turn dictates the burden assigned on the motion.

In the Ninth Circuit, the FTAIA has been treated as a jurisdictional statute that may provide grounds for a motion to dismiss for lack of subject matter jurisdiction.  United States v. LSL Biotechnologies, 379 F.3d 672, 677 (9th Cir. 2004).  More recently, the Supreme Court in Arbaugh v. Y & H Corporation, a case interpreting Title VII, expressed concern about "drive-by jurisdictional rulings," and sought to clarify the rule to determine whether a threshold fact required by a statute is

5

United States District Court
For the Northern District of California

jurisdictional or relates to the merits.  546 U.S. 500, 511, 514-15 (2006).  The Court's test provided,

> If the legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue.  But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

Id. at 515-16 (internal citation omitted).  Because the FTAIA does not clearly state that its requirements are jurisdictional, Arbaugh casts some doubt on the Ninth Circuit's rule, but Arbaugh did not directly address the FTAIA.

Subsequently, the Ninth Circuit recognized this development in In re DRAM, 546 F.3d at 984.  The court said,

> It is unclear, however, whether the FTAIA is more appropriately viewed as withdrawing jurisdiction from the federal courts when a plaintiff fails to establish proximate cause or as simply establishing a limited cause of action requiring plaintiffs to prove proximate cause as an element of the claim . . . We decline to resolve the question, because it was not argued by the parties.

Id. at 985 n.3.  Though this footnote raises a question about the appropriate treatment of the FTAIA, the panel did not find that Arbaugh clearly overruled Ninth Circuit precedent.  Indeed, courts in this district continue to apply the statute as jurisdictional.  See e.g., In re TFT-LCD (Flat Panel) Antitrust Litig., 2010 WL 2610641 at *2-3 (N.D. Cal.); Sun Microsystems Inc. v. Hynix Semiconductor Inc. (II), 608 F. Supp. 2d 1166, 1182-83 (N.D. Cal. 2009); In re Rubber Chemicals Antitrust Litig., 504 F. Supp. 2d 777, 781 (N.D. Cal. 2007).  Because Arbaugh did not clearly

overrule the Ninth Circuit's treatment of the FTAIA as a jurisdictional statute, and the Ninth Circuit has not found that it did, the Court is obliged to treat the FTAIA as jurisdictional.

Plaintiffs urge the Court to consider the challenge to its subject matter jurisdiction under Rule 56, requiring only that Plaintiffs raise a dispute of material fact with respect to the transactions Defendants challenge.  However, in multiple cases involving challenges under the FTAIA, courts in this district have ruled under Rule 12(b)(1).  See <u>In re TFT-LCD (Flat Panel) Antitrust Litig.</u>, 2010 WL 2610641 at *2-3; <u>Sun Microsystems II</u>, 608 F. Supp. 2d at 1185; <u>In re Rubber Chemicals</u>, 504 F. Supp. 2d at 781.  The Rule 12(b)(1) standard, rather than a Rule 56 standard, is appropriate when the jurisdictional issues, while factual in nature, are not enmeshed with the substantive issues of the plaintiff's Sherman Act claim.  <u>Sun Microsystems II</u>, 608 F. Supp. 2d at 1185 (applying <u>Thornhill Publishing Co. v. General Telephone & Electronics Corp.</u>, 594 F.2d 730, 735 (9th Cir. 1979), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Hartford Fire Ins. Co. v. California</u>, 509 U.S. 794, 799 (1993).  Here, whether Defendants' conduct satisfied the domestic effect test is sufficiently distinct from the question of whether Defendants participated in a conspiracy to fix prices that the Rule 12(b)(1) standard applies. <u>See</u> <u>id.</u>

Plaintiffs next argue that the complaint must be considered as a whole.  <u>Inter-Plex Technologies, Inc. v. Crest Group, Inc.</u>,

7

499 F.3d 1048, 1052-53 (9th Cir. 2007), is inapposite on this point because the case looked to California law to determine that an insured's action in federal court against a supplier of allegedly defective equipment was an impermissible attempt to split a cause of action barred by res judicata, due to a prior settlement.  Id.  Here, Defendants seek to dismiss certain damages claims from the lawsuit.  While they do not seek dismissal of the complaint as a whole, neither are they seeking to split a cause of action.

Plaintiffs cite LSL Biotechnologies for the proposition that "a court should determine subject matter jurisdiction to entertain the entire Complaint."  379 F.3d at 677.  The Ninth Circuit stated,

> Where, as here, a Complaint alleges a restraint on trade on a foreign corporation, that restraint was executed in a foreign nation as a result of litigation in that foreign nation, and the defendants file a Rule 12(b)(1) motion to dismiss the entire Complaint for lack of subject matter jurisdiction, a court should determine its subject matter jurisdiction to entertain the entire Complaint.

Id. at 677.  The court considered the foreign and domestic allegations, and dismissed the case as a whole when it found that, pursuant to the FTAIA, the Sherman Act did not reach the defendants' conduct.  Here, however, Defendants do not seek to dismiss Plaintiffs' entire complaint.

Courts have dismissed claims for damages to the extent based on purchases made in foreign commerce, pursuant to the FTAIA, in

numerous cases.  See e.g., In re Hydrogen Peroxide Antitrust Litigation, 702 F. Supp. 2d 548, 549-50 (E.D. Pa. 2010); In re TFT-LCD (Flat Panel) Antitrust Litig., 2010 WL 2610641 at *2-3; Sun Microsystems II, 608 F. Supp. 2d at 1183-84; In re Rubber Chemicals, 504 F. Supp. 2d at 784.  In In re Rubber Chemicals, the court rejected the plaintiffs' arguments that their single claim could not be split, or analyzed for its separate domestic and foreign components, and explained that "the type of injury involved determines the justiciability of the alleged claims."  If Plaintiffs' arguments were accepted, then non-justiciable claims would become justiciable simply by being combined under the rubric of a single claim.  Plaintiffs' damages claims implicating foreign commerce must be analyzed independently to determine their justiciability and, if necessary, a portion of the claims may be dismissed from the lawsuit.

IP Plaintiffs make the additional threshold argument that the FTAIA does not apply to their state law claims.  This argument, however, is unpersuasive.  At the outset, IP Plaintiffs contend that, because federal antitrust law does not preempt state anti-trust law, the FTAIA cannot withdraw the Court's jurisdiction over their state anti-trust claims.  IP Plaintiffs point to the legislative history of the Sherman Act, a statute enacted in 1890, indicating that Congress intended states to create their own anticompetitive protections.  The legislative history of the Sherman Act does not illuminate congressional intent with respect

9

to the FTAIA, passed in 1982.  Moreover, the United States Constitution vests Congress with the express power to "regulate Commerce with foreign Nations," U.S. Const. Art. I, § 8, cl. 3, and courts have accordingly recognized that foreign commerce is "pre-eminently a matter of national concern" on which the federal government has historically spoke with "one voice."  Japan Line, Ltd. v. County of L.A., 441 U.S. 434, 448, 453-54 (1979).

II. Application of the FTAIA

DP Plaintiffs concede that transactions that were billed from or shipped from the United States, but billed to and shipped to foreign countries, are outside of the class definition.  The class definition includes all persons and entities who during the class period bought "SRAM in the United States directly from Defendants or any subsidiaries or affiliates thereof."  Docket No. 566.  Thus, Defendants' motion with respect to this category of claims is granted.

The second category of claims that Defendants challenge is DP Plaintiffs' claims for damages based on transactions where the SRAM was billed to the United States, but shipped to a foreign country.  Defendants cite McLafferty v. Deutsche Lufthansa, A.G., 2009 WL 3365881 (E.D. Pa.), to argue that a bill sent to the United States is insufficient to satisfy the first prong of the domestic injury exception, which "requires that conduct have a direct, substantial, and reasonably foreseeable effect anticompetitive effect on United States commerce."  Id. at *4

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

(internal quotation marks and citation omitted).  In that case, the plaintiff brought a putative class action on behalf of direct purchasers of Europe-Japan passenger air travel, who alleged price-fixing in the sale of air travel in violation of the Sherman Act.  The named plaintiff was in the United States at the time the defendants sold her the air travel tickets.  The defendants brought a facial attack, challenging the court's subject matter jurisdiction under the FTAIA.

After determining that the claim was subject to the FTAIA because the ticket purchase was not import commerce, the court analyzed whether the domestic effects exception applied.  The court stated, "In determining whether the effect of the conduct is sufficiently direct, '[t]he geographic target of the alleged anticompetitive conduct matters greatly.'  The exception does not include conduct that 'adversely affects only foreign markets.'" Id. at *4 (quoting Turicentro v. American Airlines, 303 F.3d 293, 304 (3d Cir. 2002) and Empagran I, 542 U.S. at 161) (internal citations omitted).  The court found that because the conspiracy targeted passenger air travel between Europe and Japan, there was no direct effect on domestic commerce in the United States.  Id. The fact that supra-competitive prices were paid by persons in the United States did not persuade the court that the conspiracy directly affected United States commerce.  Id.  McLafferty noted the second prong of the domestic effects test --"that conduct

'gives rise' to a Sherman Act claim," but did not reach that portion of the test.  Id.

In contrast, DP Plaintiffs have shown a direct, substantial, and reasonably foreseeable effect of Defendants' conduct on United States domestic commerce when SRAM is billed to the United States. DP Plaintiffs are individuals and entities who purchased SRAM in the United States, a country substantially targeted by SRAM manufacturers for sales of their product.  Samsung alone billed or shipped over $1.7 billion of SRAM to the United States.  The market for SRAM in which DP Plaintiffs were buyers was not a foreign one, like the market for air travel between Europe and Japan in McLafferty.  Further, DP Plaintiffs produced evidence that their named Plaintiff Westell paid for SRAM purchased from Defendants out of its United States based bank account.  Even if some members of the DP Plaintiff class paid their invoices for SRAM purchases from accounts outside of the United States, evidence that the SRAM purchases were billed to the United States, and Defendants' targeting of the United States market for SRAM, taken together, establish a direct, substantial and foreseeable effect on domestic commerce.

DP Plaintiffs are akin to the United States based plaintiff in CSR Limited v. Cigna Corporation, 405 F. Supp. 2d 526, 546, 549-552 (D.N.J. 2005).  The plaintiffs in CSR were an Australian asbestos manufacturer and its American subsidiary.  The plaintiffs alleged that the defendants, insurance companies based in various

United States District Court
For the Northern District of California

countries throughout the world, conspired to refuse to issue new insurance policies and renew longstanding insurance policies to the plaintiffs, unless the plaintiffs withdrew their earlier-submitted asbestos-related claims.  The defendants' alleged conduct restricted the ability of the American plaintiff to purchase insurance in the United States.  While the claims brought by the Australian plaintiff were precluded by the FTAIA, the American plaintiff stood on different footing.  The court found that, for jurisdictional purposes, the American plaintiff had sufficiently supported its contention that it was a target of the defendants' conspiracy, and thus satisfied the domestic injury exception.  Id. at 551.

To qualify for the domestic effect exception to the FTAIA, DP Plaintiffs must also satisfy the second prong of the test.  The domestic effect produced by Defendants' alleged conduct must give rise to DP Plaintiffs' antitrust claims.  In re DRAM Antitrust Litig., 546 F.3d at 985.  In CSR, without detailed analysis, the court found that the American plaintiff's claims arose from the domestic effect of the defendants' alleged conspiracy.  Id. at 552.  The Ninth Circuit's decision in In re DRAM provides a more extensive analysis of this prong of the domestic effects exception.  546 F.3d at 985-990.  In that case, a British manufacturer, Centerprise, was the named plaintiff representing a class of itself and other foreign purchasers, alleging that numerous foreign and American defendants engaged in a global

13

conspiracy to fix prices for DRAM.  Centerprise asserted that the effect of the defendants' conspiracy in the United States domestic market--higher DRAM prices in the United States--gave rise to its injury of paying supra-competitive prices for DRAM abroad.  The district court concluded that Centerprise had sufficiently alleged that the defendants' conspiracy produced a domestic effect in the United States, but found that the domestic effect did not give rise to Centerprise's foreign injury.  Id. at 986.

On appeal, the Ninth Circuit reviewed the second prong of the domestic effect test, holding that "the domestic effect of the defendants' alleged price-fixing conspiracy did not give rise to Centerprise's foreign injury so as to satisfy the second prong of the FTAIA domestic injury exception."  Id. at 988.  The Ninth Circuit reasoned that Centerprise was

> a foreign consumer that made its purchases entirely
> outside of the United States.  It has recourse under
> its own country's antitrust laws.  Centerprise's
> indirectly linked foreign injury is not of the type
> Congress intended to bring within the Act.

Id. at 989.  Here, however, as a result of the alleged conspiracy DP Plaintiffs were overcharged for their purchases in the United States, and the overcharges give rise to their antitrust claims.  Again, DP Plaintiffs are analogous to the American plaintiff in CSR who encountered difficulty securing insurance coverage in the United States as a result of the defendant insurers' purported conspiracy, and whose Sherman Act claim was found to have arisen from that domestic effect.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

DP Plaintiffs' claims based on purchases of SRAM billed to the United States, even where the SRAM was shipped elsewhere, are not precluded by the FTAIA, because DP Plaintiffs have satisfied the requirements of the domestic effect exception.

Finally, Defendants challenge IP Plaintiffs' claims for damages based on indirect purchases in the United States of SRAM or finished products containing SRAM where Defendants originally sold the SRAM to a customer in a foreign country and then third parties imported the products containing Defendants' SRAM into the United States.  This raises a closer question.  IP Plaintiffs argue that such transactions have a domestic effect because Defendants targeted purchasers in the United States.  Another judge of this court has found that a test that would require inquiry into the intent of the seller would be overbroad and difficult to apply.  In re TFT-LCD (Flat Panel) Antitrust Litig., 2010 WL 2610641 at *5.  On the other hand, in the Third Circuit's decision in Turicentro, the "geographic target" mattered greatly in determining whether a defendant's alleged anticompetitive conduct resulted in a direct, substantial and foreseeable effect on domestic commerce in the United States.  303 F.3d at 305; see also CSR, 405 F. Supp. 2d at 551 ("CSR America has met its burden and satisfactorily alleged and supported its contention that Defendants targeted it as part of their alleged boycott.").

Mere argument that Defendants must have harbored an inchoate hope or intention that their SRAM would reach the United States is

15

**United States District Court**
For the Northern District of California

insufficient.  However, IP Plaintiffs have proffered some evidence from which it could be inferred that Defendants produced certain types of SRAM products specifically designed to be sold to a particular manufacturer, to be incorporated into a product in turn specifically designed for the United States market, and actually sold in the United States.  Supra-competitive pricing of that SRAM could have had a domestic effect in the United States which could have given rise to antitrust injury.  IP Plaintiffs' evidence is thus far insufficient to prove that all or any particular subset of SRAM sold abroad and then imported would meet this test. Defendants argue to the contrary but have not proffered contrary evidence.  Rather than convene an evidentiary hearing pre-trial to determine whether IP Plaintiffs can prove these jurisdictional facts, see Rosales, 824 F.2d at 803, the Court will allow them to present their evidence during the course of their damages trial or trials.  To the extent that the necessary evidence is not relevant to jury issues, the Court will hear it outside of the jury's presence in the afternoons of trial days.

If IP Plaintiffs are unable to present sufficient evidence of this nature, and are unable to segregate foreign from domestic transactions, all of their damage claims would fail.  Accordingly, they would be well-advised to be prepared to segregate the claims.

IP Plaintiffs shall meet and confer with Cypress, as suggested in Defendants' motion, and attempt to agree on a method for segregating foreign SRAM sales without domestic effect from

domestic sales.  If the parties are unable to agree, within thirty days, IP Plaintiffs may move for relief, be it for further discovery, further expert reports or the like.

CONCLUSION

Defendants' motion to dismiss DP Plaintiffs' claims for damages based on transactions where the SRAM was billed from or shipped from the United States, but billed and shipped to another country, is GRANTED.  Defendants' motion with respect to DP Plaintiffs' claims for damages based on transactions where the SRAM was billed to the United States, but shipped to a foreign country, is DENIED.  The Court reserves its decision for an evidentiary hearing on subject matter jurisdiction in regards to IP Plaintiffs' claims for damages based on indirect purchases in the United States of SRAM or finished products containing SRAM where the SRAM was originally sold by Defendants to a customer in a foreign country.

IT IS SO ORDERED.

Dated: 12/31/2010

CLAUDIA WILKEN
United States District Judge