JOSEPH W. COTCHETT (#36324)
jcotchett@cpmlegal.com
STEVEN N. WILLIAMS (#175489)
swilliams@cpmlegal.com
NEIL SWARTZBERG (#215133)
nswartzberg@cpmlegal.com
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Lead Counsel for the Direct Purchaser Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION | Case No. 4:07-md-1819 CW <br><br> MDL No. 1819 <br><br> **DIRECT PURCHASER PLAINTIFFS' RESPONSE TO MOTION FOR SEPARATE TRIAL** |
| This Document Relates to: <br><br> ALL ACTIONS | Hearing Date: January 18, 2011 <br> Time: 2:00 p.m. <br> Courtroom: 2, 4th Floor <br> Judge: Hon. Claudia Wilken |

**TABLE OF CONTENTS**

**Page(s)**

I. ARGUMENT ..................................................................................................................1

II. CONCLUSION ..............................................................................................................4

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
  2007 WL 2669531 (S.D. Cal. Sept. 7, 2007) .................................................................... 4

*In re Brand Name Prescription Drugs Antitrust Litig.*,
  1995 WL 399684 (N.D. Ill. July 7, 1995) .................................................................... 2, 3

*Paxonet Commn'ns, Inc. v. TranSwitch Corp.*,
  303 F. Supp.2d 1027 (N.D. Cal. 2003) ......................................................................... 2

*Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc.*,
  49 F.Supp.2d 709 (D.N.J. 1999) .................................................................................. 3

I.   **ARGUMENT**

The Direct Purchaser ("DP") Plaintiffs agree with Defendant Cypress that there should be separate trials of the DP action and the Indirect Purchaser ("IP") action.  As a result of the settlement that DP Plaintiffs have entered into with Cypress, there are now two entirely separate cases to try – the DP Plaintiffs' case against Samsung, and the Indirect Purchaser Plaintiffs' case against Cypress.  Proceeding in a single trial on any aspect of these two cases will create innumerable problems in case management.  Separating the two cases for trial is the preferable choice.  DP Plaintiffs maintain that the best course for the trial of these cases is for the DP Plaintiffs to proceed with the entire trial of their federal claims, followed by resolution of the Indirect Purchaser Plaintiffs' case.

When DP Plaintiffs had claims against both Cypress and Samsung, the efficiencies to be gained by jointly trying conspiracy issues with the Indirect Purchaser Plaintiffs counterbalanced the difficulties in case management inherent in that proposal.   Even so, the Plaintiffs and the Court further recognized that, in any event, the DP action and the IP actions should not proceed together in any "damages" phase because consideration of "pass-through" is prohibited in the DP action. However, potential spill-over of these issues into the proposed joint conspiracy trial was foreshadowed by defendants in their arguments that their *damages* experts would need to testify during the conspiracy phase of the trial.

Following submission of the Pre-Trial Conference Statement, however, the DP Plaintiffs reached a settlement agreement with Cypress.  This settlement has fundamentally altered the procedural posture of these actions by streamlining the evidence that DP Plaintiffs will present against Samsung in order to present the most compelling case to the jury.  Trying the conspiracy case only with both DP Plaintiffs and the IP Plaintiffs could impede the ability of the DP Plaintiffs to present their most effective case against Samsung.  The same problem is posed in relation to the IP Plaintiffs, who have settled with Samsung but need to establish their case against Cypress.  The efficiencies of joint trial that may have existed before the DP Plaintiffs reached a settlement with Cypress have disappeared and/or are outweighed by the burdens of proceeding in that manner.  In light of the remaining claims, a joint trial of the issue of conspiracy creates the potential for "delay,

confusion, and prejudice" which equals or outweighs the benefits which may be derived through consolidation. *Paxonet Commn'ns, Inc. v. TranSwitch Corp.*, 303 F. Supp.2d 1027, 1028-1029 (N.D. Cal. 2003).

The reasons for not having the DP action against Samsung and the IP actions against Cypress proceed jointly – even on just the issue of conspiracy – include many of those set forth in Cypress' Motion for Separate Trial:

- The IP and DP Plaintiffs each have a liability expert and a damages expert, and Samsung and Cypress together have three liability and damages experts. So, in addition to the need for the Court to determine which evidence may be admissible only in the initial "conspiracy" phase of a joint trial, proceeding with a joint trial would require the unnecessary presentation to a single jury of an abundance of expert opinion evidence (up to seven experts' testimony) regarding complex economic and econometric issues much of which may be admissible in only the DP action or the IP actions. The jury may need to receive instructions requiring it to parse the experts' testimony between common issues, direct issues, and indirect issues. Trying the DP action and IP actions separately would permit the simplified presentation of such expert opinions, with three experts testifying in the DP action, and four experts testifying in the IP actions. Such an approach would minimize juror confusion regarding such expert opinion evidence.

- The DP Plaintiffs and the IP Plaintiffs would be required to elicit testimony and introduce documents, and Samsung and Cypress would be required to cross-examine and otherwise challenge such testimony and documents, that would not be presented (or would be presented in a much more limited form), if the DP action and the IP actions were tried separately. This result applies with respect to both lay witnesses and expert witnesses, but as noted above, it would prove particularly burdensome in a joint trial with respect to expert testimony. Again, juror confusion resulting from instructions to consider only some evidence in a joint trial would be eliminated if the DP action and the IP actions proceed separately, and the parties, including the DP Plaintiffs, would not be prejudiced in their presentation of evidence if the actions proceed separately.

*See, e.g., In re Brand Name Prescription Drugs Antitrust Litig.,* 1995 WL 399684, at *2 (N.D. Ill. July 7, 1995) ("[A]lthough Hoffman and BIPI are defendants in the independent pharmacy

cases, they are not defendants in the class action, nor are they named defendants in the chain store cases. Consequently, they have no financial interest in the outcome of the class action and chain store cases, and their strategies at trial will significantly differ from the strategies of the named manufacturer defendants in either the class action or the chain cases. More importantly, [defendants] HLR and BIPI are likely to be prejudiced in the cases to which they are named parties by evidence submitted in the cases to which they are not parties."); *see also In re Brand Name Prescription Drugs Antitrust Litig.*, 1995 WL 654134, at *1 (N.D. Ill. Nov. 3, 1995) ("a nonconsolidated trial will result in the cleanest presentation to a jury").[1]

Additionally, having the DP action proceed separately, before the IP actions, would likely significantly inform the resolution of the IP actions, including through settlement – even in the absence of collateral estoppel. Cypress and the IP Plaintiffs would need to give serious consideration to a jury verdict for or against Samsung in the DP action before going to trial in separate IP actions. *Cf. Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of*

---

[1] The DP Plaintiffs agree that having separate trials will make it easier for the Court to address the use of evidence of the DRAM conspiracy in the IP actions against Cypress. As a corollary, the DP Plaintiffs note that in a separate trial of only the DP action against Samsung there will be no need for the Court to issue any Cypress-specific limiting instruction regarding the jury's consideration of such DRAM evidence. However, the DP Plaintiffs do not agree that, provided an appropriate limiting instruction is given, there is a substantial risk that in a joint trial Cypress would be unfairly tainted by the introduction of DRAM conspiracy evidence (or that such evidence has no bearing on Cypress). As the Court has ruled, such DRAM evidence is relevant, but in any joint trial with Samsung and Cypress, a Cypress-specific limiting instruction would be necessary.

Therefore, the DP Plaintiffs do not join, and specifically oppose, Cypress' Motion for Separate Trial to the extent such motion might be read as (improperly) seeking reconsideration of this Court's orders that: (1) evidence of the guilty pleas to DRAM price-fixing be admitted in any joint trial with Samsung on the issue of conspiracy; and (2) a single-jury be empanelled in any joint trial with Samsung on the issue of conspiracy. *See* Dkt. No. 1206 at 1-2, 8-10 (denying Defendants' requests for exclusion of DRAM evidence and Cypress' request for empanelling two separate juries). In fact, the DP Plaintiffs note that Cypress seems to indicate that its motion is not seeking such relief. *See* Cypress Motion for Separate Trial at 11 ("We recognize that the Court has previously denied Cypress's motion *in limine* to exclude evidence pertaining to the very different DRAM price-fixing conspiracy, including Samsung's guilty plea. . . . Although we respectfully disagree with the Court's balancing, we raise a different point here."). In particular, the DP Plaintiffs believe that Cypress is mistaken in its view that one of the two empanelled juries could simply be excused whenever "evidence and argument pertaining to DRAM" is presented. The segregation of "DRAM evidence and argument" will not be subject to the bright-line classifications that Cypress appears to contemplate. The inability for such clear segregation may, however, support the need for a DP action against Samsung and separate IP actions against Cypress.

*Pennsylvania, Inc.,* 49 F.Supp.2d 709, 721 (D.N.J. 1999) (in bifurcation context, considering whether bifurcation would promote settlement).

Finally, the DP Plaintiffs have a significant concern about delay in the start of trial which may be caused by recent motions relating solely to the IP actions. The DP Plaintiffs have, as set forth in their opposition to Samsung's Section 1292 Motion for Certification (Dkt. No. 1245), been diligently prosecuting their claims for more than four years. Trial is set to begin at the beginning of February. The DP Plaintiffs do not take any position with respect to the effect of motions in the IP actions regarding the addition of Tennessee plaintiffs or the FTAIA, but if such motions would cause delay in the trial-readiness of the IP actions, that would be an additional reason to not have the DP action and the IP actions tried jointly. *See, e.g., Antoninetti v. Chipotle Mexican Grill, Inc.,* 2007 WL 2669531, at *3 (S.D. Cal. Sept. 7, 2007).[2]

## II. CONCLUSION

For the foregoing reasons, Direct Purchaser Plaintiffs agree that there should be separate trials, and respectfully request that the Direct Purchaser Plaintiffs' trial proceed first to its conclusion.

Dated: January 12, 2011                    Respectfully submitted,

**COTCHETT, PITRE & McCARTHY**

By:     */s/ Steven N. Williams*
              Steven N. Williams

*Lead Counsel for the Direct Purchaser Class*

---

[2] The DP Plaintiffs note that even though their claims based upon damages relating to PSRAM have been dismissed, evidence relating to PSRAM may still be used to demonstrate existence of the alleged conspiracy.

DIRECT PURCHASER PLAINTIFFS' RESPONSE TO
MOTION FOR SEPARATE TRIAL
4