IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE STATIC RANDOM ACCESS MEMORY
(SRAM) ANTITRUST LITIGATION

No. 07-md-01819 CW

ORDER DENYING
MOTION FOR LEAVE
TO INTERVENE AND
TO MODIFY
PROTECTIVE ORDER
(Docket No. 1343)

_____/

Non-parties Bryar Law Corporation, David Bratton and
Communications Méga-Sat Inc. (collectively, Movants or Canadian
plaintiffs), the plaintiffs in three Canadian putative class
actions, move to intervene in this action, under Federal Rule of
Civil Procedure 24(b)(1)(B), for the limited purpose of accessing
certain evidence.  Docket No. 1343.  In addition, the Canadian
plaintiffs move to modify the protective order governing the
sought-after evidence.

Defendants NEC Electronics America, Inc. (presently known as
Renesas Electronics America, Inc.) and NEC Electronics Corporation
(presently known as Renesas Electronic Corporation), on behalf of
themselves and certain Defendants (collectively, Defendants),[1]
oppose the motion.  Third party witness Kyocera Communications

_____

[1] The opposing parties are Defendants Samsung Electronics
Co., Ltd. and Samsung Semiconductor, Inc., Hynix Semiconductor,
Inc., Hynix Semiconductor America, Inc., Etron Technology, Inc.,
Etron Technology America, Inc., Toshiba Corporation, Toshiba
America Electronic Components, Inc. and Cypress Semiconductor
Corporation.

United States District Court
For the Northern District of California

(formerly known as Kyocera Wireless Corporation) joined Defendants' opposition, while the Indirect Purchaser Plaintiffs submitted a statement of non-opposition to the motions.  Having considered all of the parties' submissions, the Court DENIES the Canadian plaintiffs' motions.

BACKGROUND

The Canadian plaintiffs initiated their lawsuits in British Columbia, Ontario and Quebec in 2007, seeking damages from the manufacturers and producers of static random access memory (SRAM) for alleged anti-competitive conduct in violation of Canadian antitrust law.  Declaration of Reidar Mogerman, Exhibits A, B & C. They assert the same anti-competitive conspiracy alleged in the present action before this Court, except that the Canadian plaintiffs allege economic harm resulting from purchases of price-fixed SRAM in Canada.  Progress in the Canadian SRAM litigation was halted until January 2010, pursuant to several pending appeals, and as of the date this motion was filed the parties had not begun discovery in any of the three actions.  Mogerman Decl., ¶¶ 2, 5.

Canadian plaintiff Bryar Law brought an application before the British Columbia Supreme Court on September 21, 2010, seeking the production of unredacted versions of all materials filed by any party in this action in relation to the motions to certify classes of direct and indirect purchasers, including unredacted expert reports.  Mogerman Decl., Exh. E at 3-4.  On November 25,

2010, the court ruled that limited precertification discovery would be permitted, but the discovery request was overbroad. The court found that the narrower request for unredacted expert reports was within the scope of limited discovery. Nevertheless, the court denied the discovery request, holding instead that the request for disclosure should be brought in the court presiding over the United States SRAM proceedings. The court reasoned that the undersigned and the parties in the United States SRAM proceedings better understood the nature of the information sought, the provisions of the protective order, and the numerous third party interests implicated in the disclosures sought.

On March 21, 2011, the Canadian plaintiffs filed the present motions for permissive intervention and to modify the Court's protective order so that they could access "unredacted versions of the specific expert reports that have been produced by the parties in this action in connection with the motions for class certification." Mot. to Intervene for Limited Purpose at 5. The Canadian plaintiffs do not seek to participate actively on the merits of the present litigation. The parties in both the direct purchaser and indirect purchaser actions here have reached settlements.

Presently, the Court's protective order, to which the parties stipulated, prohibits disclosure of discovery materials designated as Confidential or Highly Confidential, except as permitted by the terms of the order. Docket No. 333. The protective order

3

**United States District Court**
For the Northern District of California

requires a party receiving discovery to notify the party designating information "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" after receiving service of a subpoena or an order issued in other litigation that would compel disclosure of such information.  Furthermore, a party may not file in the public record any protected material without written permission from the designating party, and the party must comply with Civil Local Rule 79-5 in filing any protected material.

The Canadian plaintiffs do not request public disclosure of the unredacted expert reports.  Rather, they seek to access the materials subject to the terms of the governing protective order, with proposed modifications that would permit them to use the materials in their actions in Canada.  Counsel for the Canadian plaintiffs has stated that he and his co-counsel "will seek entry of comparable protective orders by the Canadian courts" and suggest that the relief requested here be contingent on the entry of such orders.  Mogerman Decl., ¶ 8.  Given their proposed course of action, the Canadian plaintiffs assert that they do not challenge this Court's sealing orders pertaining to the requested materials.

DISCUSSION

I. Motion to Intervene

A. Legal Standard

A court may, in its discretion, permit intervention by anyone who "has a claim or defense that shares with the main action a

common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).  A motion for permissive intervention under Rule 24(b) is the proper method for seeking to modify a protective order, <u>Beckman Indus., Inc. v. International Ins. Co.</u>, 966 F.2d 470, 473 (9th Cir. 1992), and such motions have been granted on behalf of collateral litigants involved in lawsuits pending in non-federal jurisdictions.  <u>See e.g.</u> <u>id.</u> (state action); <u>In re Linerboard Antitrust Litigation</u>, 333 F. Supp. 2d 333, 339 (E.D. Pa. 2004) (Canadian litigation); <u>In re Aftermarket Automotive Lighting Prods. Antistrust Litig.</u>, 09 MDL 2007 (C.D. Cal. 2010) (unpublished slip op.) (Canadian litigation).

In exercising its discretion, a court should "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  The requirements for permissive intervention are (1) the applicant must show independent grounds of subject matter jurisdiction; (2) the motion must be timely; and (3) the applicant's claim or defense, and the main action, must have a question of law or a question of fact in common.  <u>San Jose Mercury News, Inc. v. United States Dist. Court-Northern Dist. of Cal.</u>, 187 F.3d 1096, 1100 (9th Cir. 1999) (citing predecessor provision, Federal Rule of Civil Procedure 24(b)(2)).[2]

---

[2] In 2007 the language of Rule 24 was amended as part of general changes to make the Civil Rules more easily understood and to increase the consistency of terminology.  The changes were intended to be stylistic only.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

B. Analysis

The parties do not dispute that the Canadian plaintiffs have satisfied the first and third prongs of the test for a permissive intervention.  Rather, their dispute centers on the timeliness of the motion.

The Ninth Circuit test for the timeliness of a motion to intervene considers "1) the stage of the proceedings at which an applicant seeks to intervene; 2) the prejudice to other parties; and 3) the reason for and length of any delay."  Empire Blue Cross and Blue Shield v. Janet Greeson's A Place for Us, Inc., 62 F.3d 1217, 1219 (9th Cir. 1995).

First, Defendants contend that the Canadian plaintiffs' motion is untimely because this case has settled.  However, the fact that this action is closed as a result of the parties' settlements is not necessarily dispositive.  District courts have permitted intervention for the limited purpose of accessing discovery in cases which have already settled.  In re Linerboard Antitrust Litigation, 333 F. Supp. at 339 (finding non-party's motion to intervene timely when it was filed less than six months after the settlement of the underlying action and the commencement of movant's collateral litigation in Canada); see e.g., Beckman Indus., 966 F.2d 470 (motion to intervene sought and granted two years after settlement, although the Ninth Circuit did not analyze the timeliness of the motion to intervene); Foltz v. State Farm Mutual Automobil Ins. Co., 331 F.3d 1122 (9th Cir. 2003) (district

United States District Court
For the Northern District of California

court permitted third-parties to intervene after case settled, although the propriety of the order granting permissive intervention was not addressed on appeal), compare, In re Vitamins Antitrust Litigation, 2001 U.S. Dist. LEXIS 25068 (D.D.C.) (granting the Canadian plaintiffs' motion to intervene in ongoing antitrust litigation in the United States for the purpose of seeking a modification of the court's protective order).

Nevertheless, these cases are not controlling. The Canadian plaintiffs have not pointed to any authority stating that a district court may not deny permissive intervention when it is filed at this late stage. This litigation began in 2007, and the first of the expert reports sought through this motion was filed in this action in May 2008, while the last expert report was filed in August 2009. Three years later the Canadian plaintiffs moved to intervene only after nearly all parties had reached settlements. Although the Canadian litigation is still in its early stages, the present multi-district litigation has ended.

The timeliness of the present motion is determined based on the status of this action and whether allowing a non-party to intervene is prejudicial to the parties in this action. In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation, 255 F.R.D. 308, 316 (D. Conn. 2009). The delay in the Canadian SRAM litigation bears little weight in justifying a delayed motion to intervene in this action. Intervention would burden the parties and non-parties in this action by requiring them to continue

policing access to confidential information disclosed in the present case.  See Empire Blue, 62 F.3d at 1220-21 (affirming denial of a third-party's motion to intervene for the limited purpose of accessing discovery when the moving party failed to provide a reason for delaying its motion to intervene for years, despite knowing of the existence of the litigation).  Such a continuing obligation is contrary to the expectation of parties that have sought to end litigation by settling the claims.  See id. (finding that third party intervention to access discovery threatened to undo a settlement agreement).

In sum, the Canadian plaintiffs' motion to intervene is denied for lack of timeliness.

II. Motion to Modify protective orders

Even if the Court were to grant the present motion to intervene, the Court finds that a modification to the existing protective order is unwarranted.

A. Legal Standard

"It is well established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public." San Jose Mercury News, Inc. v. United States Dist. Ct., 187 F.3d 1096, 1103 (9th Cir. 1999).  However, "Rule 26(c) authorizes a district court to override this presumption where 'good cause' is shown." Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206, 1213 (9th Cir. 2002).  Under Federal Rule of Civil Procedure 26(c), a "court

United States District Court
For the Northern District of California

may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that . . . confidential research, development, or commercial information not be revealed or revealed only in a specified way . . ." Fed. R. Civ. P. 26(c)(1)(G). The Supreme Court has interpreted Federal Rule of Civil Procedure 26(c) as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984) ("[t]he unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.").

B. Analysis

At the outset, the Canadian plaintiffs and Defendants here dispute the standard applicable to the present motion. The Canadian plaintiffs argue that a good cause standard applies to determine whether to restrict their access to the requested materials. Defendants argue that compelling reasons must exist to allow access to the expert reports, which were subject to numerous sealing orders.

Phillips, a case upon which Defendants rely, stated that "when a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted, so that the party seeking disclosure must present sufficiently compelling reasons why the sealed discovery

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

document should be released." 307 F.3d at 1213. However,
Phillips and Foltz, 331 F.3d at 1134-36, applied the compelling
reasons standard where intervenors asserted a federal common law
right of access to material filed with the courts. In Phillips
the Los Angeles Times moved to intervene to gain access to sealed
records, attached to a motion for sanctions arising from purported
discovery abuse, for the purpose of releasing certain information
to the general public. The Ninth Circuit, in considering the
newspaper's contention, determined that the newspaper was required
to provide a compelling justification for the public release of
sealed discovery attached to a non-dispositive motion. Id. at
1212-13. Similarly, in Foltz, the intervenors, who were private
plaintiffs involved in collateral litigation, sought certain
sealed documents filed in connection with motions for summary
judgment and did not make any express commitment to withhold the
information from the public. 331 F.3d at 1136. The court weighed
whether the collateral litigants could access the documents
consistent with the public's federal common law right to judicial
records, and required the demonstration of compelling reasons to
justify allowing disclosure. Id. at 1134-37.

Here, however, the Canadian plaintiffs do not seek to release
the redacted information to the public. Instead they intend only
to use the information for purposes of litigating their actions in
Canada and have agreed that their access should be contingent on
their securing comparable protective orders in the Canadian

courts.  Thus, the "compelling need" standard associated with the federal common law right of access to judicial records does not apply.  See Beckman, 966 F.2d at 475 (rejecting the requirement that the intervenor show "extraordinary circumstances" or a "compelling need" to secure modification of a protective order, reasoning that "Ninth Circuit precedent strongly favors disclosure to meet the needs of parties in pending litigation.").  The modification of the Court's protective order requires only a demonstration of good cause.

The expert reports and declarations the Canadian plaintiffs seek, filed in connection with the motions for class certification, were redacted pursuant to the Court's sealing orders, not on the basis of the blanket, stipulated protective order.  In issuing its orders to seal, the Court made specific determinations that good cause existed to seal the information. See e.g., January 11, 2011 Order Granting Defendants' Administrative Motion to Seal Documents (finding that certain specified sections of Michelle Burtis' Sur-rebuttal Declaration and Exhibits contained Kyocera's confidential, proprietary, and competitively sensitive information and constituted "sealable" material).  Therefore, the burden is on the Canadian plaintiffs to establish good cause to modify the protective orders to allow access to the unredacted reports for the purposes of Canadian actions.  See Phillips, 307 F.3d at 1211 n.1 ("the burden of proof will remain with the party seeking protection when the protective

11

order was a stipulated order and no party had made a 'good cause' showing").

Turning to the application of the good cause standard, as noted earlier, in the Ninth Circuit, disclosure to meet the needs of parties in pending litigation is strongly favored.  Beckman Indus., 966 F.2d at 475) (citing Olympic Refining Company v. Carter, 332 F.2d 260, 264-65 (9th Cir. 1964); see also Foltz, 331 F.3d at 1131 ("Allowing the fruits of one litigation to facilitate preparation in other cases advances the interest of judicial economy by avoiding the wasteful duplication of discovery."). However, "a court should not grant a collateral litigant's request for such a modification automatically."  Id. at 1132.  To determine whether a modification of a protective order is warranted, courts consider "the relevance of the protected discovery to the collateral proceedings and its general discoverability therein."  Id. at 1132.  In addition, the court must "weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery."  Id. at 1133.

Although the Canadian plaintiffs satisfy the low threshold for demonstrating that they seek relevant information, see Foltz, 331 F.3d at 1133 (stating that a court considering a motion for modification of its order makes only a "rough estimate of relevance"), and their motion does not attempt to circumvent Canadian procedures and discovery limitations, the avoidance of

duplicative discovery does not outweigh the reliance interests of the parties opposing modification of the protective order.  The amount of duplicative discovery avoided will not be substantial because the sought-after unredacted expert reports focus upon and limit analysis to the United States market for SRAM and the impact of the alleged conspiracy on American businesses and consumers.

Furthermore, the reliance interests of Defendants and third-party witness Kyocera are significant.  They relied upon the protective order in releasing sensitive, confidential information, and the order made clear that a party seeking to file certain confidential information with the Court would have to move for a sealing order.  Defendants and Kyocera may not rely on the blanket protective order alone as a guarantee that discovery information they produced would remain confidential.  See id.; Beckman, 966 F.2d at 476.  However, they reasonably expected that discovery information that the Court ultimately ordered filed under seal, such as the expert reports and declarations in this case, would be barred from public access and not subject to use in other litigation outside of the United States.  The need to police dissemination of their confidential information in three different Canadian cases as well as in this Court would prejudice Defendants and third-parties.  "Among the goals furthered by protective orders is reducing conflict over discovery and facilitating the flow of information through discovery. . . [C]hanging the ground rules later is to be avoided because protective orders that cannot

13

be relied upon will not foster cooperation through discovery."
Id. at 1137 (quoting Wright, Miller & Marcus, § 2044.1).

The Canadian plaintiffs have not established good cause to modify the protective order to grant them access to the unredacted expert reports and declarations.

CONCLUSION

The Canadian plaintiffs' motions to intervene and to modify the protective order are DENIED.  Docket No. 1343.

IT IS SO ORDERED.

Dated: 11/1/2011

CLAUDIA WILKEN
United States District Judge