FRANCIS O. SCARPULLA (41059)
CRAIG C. CORBITT (83251)
CHRISTOPHER T. MICHELETTI (136446)
ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:  (415) 693-0700
Facsimile:   (415) 693-0770
fscarpulla@zelle.com
ccorbitt@zelle.com

*Lead and Liaison Counsel for*
*Indirect Purchaser Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION | Case No. 4:07-md-1819 CW |
| | MDL No. 1819 |
| This Document Relates to: | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN ORDER AUTHORIZING DISTRIBUTION OF SETTLEMENT FUND; MEMORANDUM IN SUPPORT THEREOF** |
| ALL INDIRECT PURCHASER ACTIONS | |
| | Date:          September 27, 2012 |
| | Time:         2:00 p.m. |
| | Courtroom: 2, 4th Floor |
| | Judge:        Hon. Claudia Wilken |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

I.   INTRODUCTION ...........................................................................................1

II.  STATEMENT OF ISSUES TO BE DECIDED .............................................3

III. STATEMENT OF FACTS ...............................................................................3

A.  Background of the Settlements ...............................................................3

B.  Final Approval of the Plan of Distribution ...........................................4

    1.  Reseller Plan of Distribution.........................................................5

    2.  End User Plan of Distribution.......................................................6

C.  Notice Provided to the Settlement Class................................................6

D.  The Claims Process and Recommended Reseller Payments ................7

E.  Cy Pres Distribution...............................................................................10

IV. ARGUMENT ...................................................................................................10

V.  CONCLUSION.................................................................................................13

# TABLE OF AUTHORITIES

**Federal Cases**

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................................................ 11

*In re Cendant Corp. Securities Litig.*,
   109 F.Supp.2d 235 (D.N.J. 2000) ................................................................................... 11

*In re Computron Software, Inc.*,
   6 F.Supp.2d 313 (D.N.J. 1998) ................................................................................. 10, 11

*In re Lloyd's Am. Trust Fund Litig.*,
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .............................................................. 11

*In re PaineWebber Ltd. Partnerships Litig.*,
   171 F.R.D.104 (S.D.N.Y. 1997) ..................................................................................... 11

*In re Vitamins Antitrust Litig.*,
   2000 WL 1737867 (D.D.C. Mar. 31, 2000) ................................................................... 11

**Federal Statutes**

15 U.S.C. § 1 ........................................................................................................................ 3

15 U.S.C. § 16 ...................................................................................................................... 3

**Other Authorities**

Newberg on Class Actions, § 11:33 (4th ed. Nov. 2005) .................................................... 11

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN ORDER
AUTHORIZING DISTRIBUTION OF SETTLEMENT FUND; MEMORANDUM IN SUPPORT THEREOF
Case No. 4:07-md-1819 CW  MDL No. 1819

1

**NOTICE OF MOTION AND MOTION**

2  **TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

3          PLEASE TAKE NOTICE that on September 27, 2012, at 2:00 p.m. or at a time subject to the

4  Court's calendar, before the Honorable Claudia Wilken, United States District Court, Northern

5  District of California, 1301 Clay Street, Suite 400S, Oakland, California, Indirect Purchaser ("IP")

6  Plaintiffs will and hereby do move the Court for an Order authorizing distribution of the Settlement

7  Fund to Reseller Settlement Class members who submitted valid claims and to nonprofit entities

8  previously approved by the Court in the plan of distribution, as well as payment to the Claims

9  Administrator for services rendered and expenses incurred in processing class members claims (the

10  "Motion").

11          This Motion is based upon this Notice of Motion and Motion, the following Memorandum of

12  Law, the Declaration of Christopher T. Micheletti in Support of the Motion ("Micheletti Decl."), the

13  Declaration Of Markham Sherwood In Support Of the Motion ("Sherwood Decl."), the Proposed

14  Order Granting the Motion, the complete files and records in this action, and such other written or

15  oral arguments that may be presented to the Court.

16              **MEMORANDUM OF POINTS AND AUTHORITIES**

17  **I.      INTRODUCTION**

18          Indirect Purchaser ("IP") Plaintiffs settled this action with all named defendants, resulting in

19  settlement proceeds of $41,322,000 (the "Settlement Fund").[1]  The Court finally approved all of the

20  settlements, dismissed all Defendants with prejudice and entered judgments.  While there were

21  objections to the settlements, they were overruled and no appeals were taken.  All final approval

22  orders and judgments of dismissal are therefore final within the meaning of the Settlement

23  Agreements, and all settlement payments were made by the Defendants.

24  _____

25  [1] The settling defendants are:  Cypress Semiconductor Corporation; Etron Technology, Inc.; Etron
Technology America, Inc.; Hynix Semiconductor Inc.; Hynix Semiconductor America Inc.; Micron
26  Technology, Inc.; Micron Semiconductor Products, Inc.; Mitsubishi Electric Corporation; Mitsubishi
Electric & Electronics USA, Inc.; NEC Electronics Corporation; NEC Electronics America, Inc.;
27  Renesas Technology Corp.; Renesas Technology America, Inc.; Samsung Electronics Company,

28

1

As part of the above final approval process, the Court also approved (1) the distribution plan submitted by the IP Plaintiffs, including the allocation of the settlement proceeds as between Reseller Settlement Class members and End User Settlement Class members; (2) the Reseller claims process proposed by IP Plaintiffs, their counsel and the Reseller representative and Reseller counsel; and (3) the *cy pres* distribution of the End User portion of the Settlement Fund to certain nonprofit entities.  Notice of the settlements and distribution plan was made by publication and mailed notice to Settlement Class members, and Reseller Settlement Class members submitted claims to the court-appointed Claims Administrator, Gilardi & Co.

The Claims Administrator has completed an extensive, fair and reasonable review of each submitted claim.  As of July 31, 2012, the Net Settlement Fund available for distribution is $20,083,595.76.[2]  The Net Settlement Fund comprises the Settlement Fund balance of $20,176,299.19, less outstanding amounts owed to the Claims Administrator ($77,399.93), and funds reserved for the payment of the payment of future escrow account costs and taxes ($2,500.00), and future claims processing costs ($12,803.50).  *See* Micheletti Decl. ¶4.  IP Plaintiffs request that the Court permit distribution of the Net Settlement Fund, reserving sufficient funds for the payment of any escrow fund fees, federal and state taxes (if any), and final claims administration costs.

For the reasons set forth below, IP Plaintiffs respectfully request that the Court enter the Proposed Order submitted herewith, which approves payment of outstanding sums owed to the Claims Administrator, and which approves distribution of the Net Settlement Fund, less funds reserved for escrow account costs, taxes, and claims administration costs, as follows:  A prorated distribution of the Reseller portion of the Net Settlement Fund to all claims approved by the Claims Administrator; and distribution of the End User portion of the Net Settlement Fund *cy pres* to the nonprofit entities in the percentage amounts previously approved by the Court.

---

Ltd.; Samsung Electronics America Inc.; Samsung Semiconductor, Inc.; Toshiba Corporation; Toshiba America Electronic Components, Inc.

[2] This sum is consistent with IP Plaintiffs' predictions last year.  In connection with the settlement approval proceedings, IP Plaintiffs advised the Court in August 2011 that they "estimated that the Net Settlement Fund will comprise approximately $20 million."  DE 1379 at 5 n.1.

## II.     STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should approve payment of claims administration expenses and approve final distribution of the Net Settlement Fund to claimants and to approved nonprofits pursuant to the distribution plan.

## III.    STATEMENT OF FACTS

### A.     Background of the Settlements

In this action, IP Plaintiffs alleged that Defendants conspired to fix the price of SRAM.  IP Plaintiffs are individuals and entities that indirectly purchased SRAM during the period November 1, 1996 through December 31, 2006.  Defendants are domestic and foreign entities that manufactured, sold or distributed SRAM in the United States during the Class Period.  IP Plaintiffs alleged injuries incurred as a result of Defendants' conduct and sought injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 16, for Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1; and damages or restitution under relevant state antitrust, consumer protection and unjust enrichment laws.  The Defendants denied IP Plaintiffs' complaint allegations, asserted many defenses, and denied any legal liability arising out of the conduct alleged in the litigation.

During the litigation, and in exchange for the release of Plaintiffs' claims, eight separate settlement agreements were reached with the Settling Defendants.  The Settlements total $41,322,000.  On October 6, 2010 and October 14, 2011, the court granted final approval of the settlements, finally certified the Settlement Class[3], and entered final judgments of dismissal with

---

[3] The Settlement Class includes all persons and entities residing in the United States who, from November 1, 1996 through December 31, 2006, purchased SRAM in the United States indirectly from the Defendants.  The Settlement Class includes all indirect purchasers of SRAM (not just end-users) and therefore includes (1) persons and entities that indirectly purchased SRAM for their own use and not for resale (e.g., end-user consumers and businesses) ("End Users"); and (2) persons and entities that indirectly purchased SRAM for resale (e.g., retailers and value-added resellers that indirectly purchase SRAM or SRAM-containing products and resell them others) ("Resellers").  The Court previously appointed a separate Settlement Class member and counsel to represent the interests of Resellers in connection with the allocation and distribution of the Settlement.  *See* Order Granting IP Plaintiffs' Motion for Appointment (DE 1340) (appointing Granite Communications, Inc. as the Reseller representative and the Berman DeValerio firm as counsel for Resellers in the Settlement Class).

prejudice as to each of the Settling Defendants.[4]  While objections to the settlements were filed, they were overruled and no appeal was taken.  As such, all settlements were finally determined to be fair, adequate and reasonable.

The Court also found that the notice given to the class regarding the settlements and distribution plan was the best notice practicable under the circumstances, and that such notice provided due and adequate notice of the proceedings and satisfied the requirements of due process. *See supra*, footnote 4.  The judgments entered provide that the Court retains jurisdiction over distribution of the settlement fund.  *Id.*

### B.    Final Approval of the Plan of Distribution

In the Order finally approving the Samsung and Cypress Settlements, the Court also approved IP Plaintiffs' proposed Plan of Distribution.  DE 1408, ¶9.  Given the presence of Resellers and End-Users in the class, the approved Plan of Distribution provided for 36.7% of the Net Settlement Fund to be distributed to qualified Resellers through a Court-approved claims process, and for 63.3% of the Net Settlement Fund to be distributed via a Court-approved *cy pres* plan to non-profit charities for the benefit of End Users.  Any unclaimed funds from the Reseller claims process were to be added to the latter *cy pres* distribution.[5]  The Reseller claims have exceeded the Reseller allocated portion of the Net Settlement Fund, and therefore no portion of the Reseller allocation will be added to the *cy pres* distribution.

---

[4] Order Granting Final Approval of Settlement (Micron, Hynix, Renesas-Hitachi-Mitsubishi, Etron, Toshiba, NEC), DE 1141; Final Judgment of Dismissal with Prejudice as to the Renesas-Hitachi-Mitsubishi Defendants, DE 1143; Final Judgment of Dismissal with Prejudice as to the Toshiba Defendants, DE 1144; Final Judgment of Dismissal with Prejudice as to the NEC Defendants, DE 1145; Final Judgment of Dismissal with Prejudice as to the Micron Defendants, DE 1146; Final Judgment of Dismissal with Prejudice as to the Hynix Defendants, DE 1147; Final Judgment of Dismissal with Prejudice as to the Etron Defendants, DE 1148; Order Granting Final Approval of Samsung and Cypress Settlements and Plan of Distribution, DE 1408; Final Judgment of Dismissal with Prejudice as to Cypress Semiconductor Corporation, DE 1409; Final Judgment of Dismissal with Prejudice as to the Samsung Defendants, DE 1410.

[5] *See* Plan of Distribution (DE 1359-9 - Ex. 1 to Proposed Order Granting Preliminary Approval of Distribution Plan and Notice Plan and Setting Fairness Hearing).

1          1.          Reseller Plan of Distribution.

2          As detailed in the Plan of Distribution, Resellers were permitted to make claims against the

3   Settlement Fund based on their indirect purchases of Defendants' SRAM.  Reseller claimants were

4   required to, *inter alia*, execute a sworn statement stating that the Reseller purchased the products

5   described in the claim form; that the Reseller is informed and believes such products contained

6   Defendants' SRAM; that the Reseller purchased the products with the intent to resell them; that to

7   the best of the Reseller's knowledge, information and belief such products were resold; and, that

8   none of the products described in the claim form were purchased by the Reseller for its own use and

9   not for resale.  *See* DE 1359-9 (Plan of Distribution) at 1-2; DE 1359-10 (Reseller Claim Form) at 2-

10  3).

11         Only Resellers that made purchases of Defendants' SRAM in states that obtained class

12  certification for damages claims in this action were eligible for payments.[6]  A Reseller that has its

13  principal place of business in or is incorporated in a Certified State was deemed to have made its

14  purchases of SRAM in that state.

15         Resellers were permitted to make a "Simplified Claim" or a "Detailed Claim".  A

16  "Simplified Claim" is a claim for a payment of $1,000 or less; it required claimants' averments

17  under oath, but did not require any separate, supporting documentation.  A "Detailed Claim" is a

18  claim for more than $1,000 and Resellers seeking such payments were required to submit detailed

19  documentation and other information supporting their claim.  See DE 1359-9 (Plan of Distribution)

20  at 2-4.  The Reseller claim calculation methods were set out in detail in the Plan of Distribution and

21  in the Claim Form.  *See id*; DE 1359-10.

22         As noted above, Reseller claims exceeded their allocated share of the net Settlement Fund.

23  Accordingly, pursuant to the Plan of Distribution, all Reseller allowed claims will be reduced and

24  paid on a prorated basis.  Additionally, the Plan of Distribution provided that no claim which would

25

26  ───────────────
[6] The Certified States are Arizona, Arkansas, California, Florida, Hawaii, Iowa, Kansas, Maine,
27  Massachusetts, Michigan, Minnesota, Montana, Nevada, New Mexico, New York, North Carolina,
    North Dakota, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Washington, West
28  Virginia, Wisconsin, Puerto Rico and the District of Columbia.

1  result in an aggregate payment of less than $25 to any one Reseller claimant will be distributed.  As

2  such, if prorated reduction of a claim amount decreases the claim to less than $25, it will not be paid.

3                  2.       End User Plan of Distribution.

4          All funds allocated to the End User members of the Settlement Class will be distributed *cy*

5  *pres* to Court-approved nonprofit, charitable organizations.  The proposed *cy pres* candidates have

6  been identified and discussed in detail in prior filings (*see* IP Plaintiffs' Memorandum in Support of

7  *Cy* Pres Distribution Plan (DE 1379)), and approved by the Court (*see* DE 1408 ¶9).  In general, they

8  comprise technology-related nonprofit organizations that serve groups that are, as nearly practicable,

9  representative of the End Users in the Settlement Class, as well as other nonprofits that use

10  technology to provide assistance to the needy or disabled.  *See* DE 1379-2 (List of Proposed *Cy Pres*

11  Candidates).  More specifically, the approved *cy pres* candidates include nonprofits that refurbish

12  old or acquire new computers, cell phones and other IT equipment and distribute them to the needy,

13  schools, youths and others; nonprofits that assist small business; nonprofits that assist other

14  nonprofits, schools and others in improving their network systems and related IT infrastructure;

15  other technology assistance-related charities; and nonprofits that have significant technology-related

16  needs and make significant technology equipment purchases.  *See id.*  As noted above, the Court

17  previously assessed, in the context of evaluating the Plan of Distribution, the propriety of making *cy*

18  *pres* distributions to the entities IP Plaintiffs proposed and approved making distributions as a

19  percentage of the End User allocated portion of the Net Settlement Fund to each.  *See* DE 1408 ¶9.

20      **C.**    **Notice Provided to the Settlement Class**

21          On June 6, 2011, this Court preliminarily approved the Plan of Distribution and ordered that

22  Class Members be provided notice thereof, and of the October 24, 2011 deadline for submission of

23  claims by Resellers. *See* DE 1361.  IP Plaintiffs' Counsel caused notice to be provided to Class

24  Members as required by the June 6, 2011 order.  *See generally* Gilardi Compliance Decl. (DE 1380-

25  1).  For example, by June 1, 2011, a Long Form Notice substantially in the form attached to the June

26  6 Order as Exhibit B was sent by the Settlement Administrator via first-class U.S. mail, postage

27  prepaid, to 11,535 direct mail recipients; it was also made available on a website entitled

28

www.indirectsramcase.com.  Gilardi Compliance Decl. ¶¶5-8.  The Long Form Notice was also sent to all class members who requested written notice.  *Id.* ¶17.  Additionally, by June 16, 2011, IP Plaintiffs commenced the published notice program through, *inter alia*, publication of the notice on the Internet and through press releases.  By July 25, 2011, IP Plaintiffs published a Summary Notice substantially in the form attached to the June 6 Order in national newspapers and journals, and on the Internet, pursuant to the Notice Plan.  *Id.* ¶¶10-18.  In addition, IP Plaintiffs provided notice on the above-described website and on lead counsel's website.  *See* Notice of Compliance at 1 (DE 1380).

### D.      The Claims Process and Recommended Reseller Payments

As part of the above described notice plan, Gilardi prepared a Claim Form to be used by Reseller Settlement Class members that desired to submit a claim.  The Claim Form was included in the mailed notice describe above that was sent to 11,355 businesses that fit within the profile of members of the Settlement Class; it also was made available on the settlement website, and was mailed to persons and entities that requested hard copies of thereof.  *See* Gilardi Compliance Decl. ¶¶5-8, 17.

The Claims Filing Postmark Deadline was October 24, 2011.  Gilardi received 633 claims postmarked on or before October 24, 2011.  Gilardi also received 35 claims postmarked later than October 24, 2011.  In total, Gilardi received 668 claims.  543 of the claims submitted were "Simplified" Claims (i.e., claims for $1000 or less that did not require detailed documentation), 96 claims were "Detailed" Claims (*i.e.*, claims in excess of $1000 that required supporting documentation), and 29 of the claims did not select either option.  With the exception of one recent late claim, Gilardi contacted the latter claimants to determine whether the claimant intended to submit a simplified or detailed claim.  Sherwood Decl. ¶3.[7]  Of the claims postmarked later than October 24, 2011, Gilardi has determined that 10 of those claims are otherwise eligible to receive a

---

[7] One of the 35 late claims identified above was postmarked on July 31, 2012 and received on August 1, 2012.  This claimant did not complete the claim form or provide any information supporting its claim, indicating instead that the relevant claim information was "To Be Provided." Since receipt of that claim no further information has been provided by the claimant.  On August 15, 2012, a denial letter was sent to the claimant, denying the claim on the grounds that it was late, incomplete and unsubstantiated.  Sherwood Decl. ¶4.

7

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN ORDER
AUTHORIZING DISTRIBUTION OF SETTLEMENT FUND; MEMORANDUM IN SUPPORT THEREOF
Case No. 4:07-md-1819 CW  MDL No. 1819

distribution from the Net Settlement Fund.  At the direction of Class Counsel and Reseller Counsel, Gilardi included the foregoing late claims in the recommended approved claims discussed below. Sherwood Decl. ¶3.[8]

All submitted claims were subject to review and/or audit by Gilardi.  In connection with this process, Gilardi removed duplicate claims, reviewed claims for omissions, errors, and ineligibility and requested and reviewed documentation where necessary. Claimants who submitted claims with omissions or errors were notified in writing of the deficiencies in their claims and given the opportunity to correct such omissions or errors. Claimants who submitted claims which were ineligible for payment were notified in writing of such ineligibility and given the opportunity to dispute Gilardi's determination.  Sherwood Decl. ¶5.

Gilardi, based on its review of the 668 claims submitted, has made the following recommendations:

(a)  21 claims be disregarded as they are duplicate filings;

(b)  One claim be disregarded as the Claimant rescinded the claim;

(c)  264 claims be denied on the basis of ineligibility;[9]

(d)  One claim be denied as late (*see*, *supra*, footnote 7);

(d)  381 claims be approved for payment.

*See* Sherwood Decl. ¶6.

---

[8] Class Counsel and Reseller Counsel were contacted by a number claimants or their representative who submitted claims after the October 24, 2011 claims deadline, who requested that their late claim be allowed on the grounds that they submitted claims within a reasonable time after they learned of the settlement claims process, and prior to the final distribution. After meeting and conferring with one or more of these claimants or their representatives, Class Counsel and Reseller Counsel agreed to recommend that these otherwise valid claims be included in the proposed distribution.  These late claims only amount to .03% of the aggregate Dollar Value of the allowed claims and thus, do not materially impact the pro-rate of allowed claims.  Micheletti Decl. ¶5.

[9] These claimants were notified of the denial of their claim.  The 21 day denial dispute deadline required by the Plan of Distribution passed for all denied claims, and all claim denial disputes have been resolved.  The bases for Gilardi's ineligibility determinations include the claim was filed by an End User; purchases were made in a non-Certified State; documentation submitted demonstrates purchases were not Defendant manufactured SRAM; Claimant did not respond to Gilardi's request for documentation or submitted documentation insufficient to support their claim; or the Claimant did not respond to or dispute Gilardi's notification of deficiencies in their claim.  Sherwood Decl. ¶6.c.

The aggregate Dollar Value of all claims submitted (*i.e.*, the total amount of SRAM claimed to be purchased indirectly by claimants in their claim forms) was in excess of $2.5 billion. After Gilardi's review and audit process, the aggregate Dollar Value of all claims recommended for approval (*i.e.*, the total amount of SRAM claimed to be purchased indirectly by claimants that was used by Gilardi for purposes of determining claim payment amounts) is $949,780,613.32. Sherwood Decl. ¶7. Thus, through its review and audit process, in excess of $1.5 billion in claimed SRAM purchases were determined by Gilardi to be ineligible or unsubstantiated by the claimant's submission. The aggregate recommended approved Claim Amount of claims (*i.e.*, the allowed claim amount after applying the appropriate formula (A or B) to the above Dollar Value of the claim) is $98,698,886.46. *Id.*

As of July 31, 2012, the Settlement Fund balance, which includes the Settlement Fund plus interest through that date, less Court-ordered attorneys' fees, costs and expenses, incentive payments to Class Representatives and escrow account fees, is $20,176,299.19. Micheletti Decl. ¶2, Exhibit 1. The outstanding amount owed to Gilardi for notice-related work and claims administration and processing at this time is $77,399.93. Gilardi estimates that an additional $12,803.50 will be required to complete the claims processing, mail payments to class members and comply with tax reporting and other duties. IP Plaintiffs also estimate that additional escrow account-related costs of $2,500 will be incurred between now and closure of the Settlement Fund escrow account. *Id.* ¶¶2-3.

In light of all of the above, the Net Settlement Fund available for distribution is $20,083,595.76, which is the above Settlement Fund balance of $20,176,299.19, less outstanding amounts owed to Gilardi ($77,399.93) and funds reserved for the payment of the payment of future escrow account costs and taxes ($2,500.00) and Gilardi's future claims processing costs ($12,083.50). *Id.* ¶4.

The Net Settlement Fund allocated to the Resellers and available to distribute to Resellers is therefore $7,370,679.64 (.367 x $20,083,595.76). The Plan of Distribution provides that if the Reseller claims exceed the total amount of the net Settlement Fund allocated to the Resellers, allowed claims will be paid on a prorated basis. Thus, the estimated prorated payment to Resellers is

7.468%.  As a result of this pro-rated reduction, 43 Reseller claims will be reduced to less than $25.  *See* Sherwood Decl. ¶8.  Accordingly, as provided for in the Plan of Distribution, it is recommended that these claims (amounting to $606.12 in total) not be paid.

In accordance with all of the above, IP Plaintiffs request that the Court approve Gilardi's recommendation that pro-rated payments be made to the Reseller claimants as set forth in the Sherwood Declaration Exhibit 1.

### E.    Cy Pres Distribution

As noted above, the End-User portion of the Settlement Class was allocated 63.3% of the Net Settlement Fund.  With a Net Settlement Fund of $20,083,595.76, the End User portion of the Settlement Class will be allocated $12,712,916.12 (*i.e.*, $20,083,595.76 x .633) of the Net Settlement Fund.  IP Plaintiffs therefore recommend that, in accordance with the plan of distribution previously and finally approved by the Court, the approved nonprofit candidates be paid their respective allocated percentages of the End User portion of the Net Settlement Fund at this time.[10]

## IV.    ARGUMENT

Plaintiffs request an order authorizing the distribution of the Net Settlement Fund to the approved valid claims as recommended by the Claims Administrator.  Entry of an order approving a prorated distribution and permitting distribution of the Net Settlement Fund to all approved claimants and cy pres candidates is proper and appropriate at this time.  The prorated distribution to Reseller claimants is determined by multiplying each claimant's approved claim amount times the prorate percentage set forth above.  This calculates each claimant's individual payment from the Net Settlement Fund.  Attached as Exhibit 1 to the Sherwood Declaration is a spreadsheet of each valid claimant's prorated payment amount from that portion of the Net Settlement Fund allocated to the Resellers.

Like final approval of a settlement agreement, a plan of allocation must be "fair, adequate and reasonable" to warrant court approval.  *See In re Computron Software, Inc.*, 6 F.Supp.2d 313,

---

[10] These amounts are set out in IP Plaintiffs' Memorandum in Support of *Cy* Pres Distribution Plan, Ex. B (List of Proposed Cy Pres Candidates with percentages) (DE 1379-2).

1   321 (D.N.J. 1998); *In re Cendant Corp. Securities Litig.*, 109 F.Supp.2d 235, 245 (D.N.J. 2000); *see*

2   *also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992).  A plan of allocation,

3   like the one proposed here, that compensates class members based on the type and extent of their

4   injuries is generally considered to be reasonable.  *Computron Software, Inc.*, 6 F.Supp.2d at 321.

5        Courts have repeatedly found that prorated distributions are "fair, adequate and reasonable."

6   *See e.g., In re Vitamins Antitrust Litig.*, 2000 WL 1737867 at *6 (D.D.C. Mar. 31, 2000)

7   ("Settlement distributions, such as this one, that apportion funds according to the relative amount of

8   damages suffered by class members, have repeatedly been deemed fair and reasonable."); *In re*

9   *Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577 at *19 (S.D.N.Y. Nov. 26, 2002) ("pro rata

10  allocations provided in the Stipulation are not only reasonable and rational, but appear to be the

11  fairest method of allocating the settlement benefits."); *In re PaineWebber Ltd. Partnerships Litig.*,

12  171 F.R.D.104, 135 (S.D.N.Y. 1997) ("pro rata distribution of the Settlement on the basis of

13  Recognized Loss will provide a straightforward and equitable nexus for allocation and will avoid a

14  costly, speculative and bootless comparison of the merits of the Class Members' claims").

15       Distribution of the Reseller allocated portion of the Net Settlement Fund, as set forth in

16  Exhibit 1 of the Sherwood Declaration, is fair, adequate, and reasonable.  The plan of distribution

17  provides for a straight prorated distribution to class members with valid claims at or above the $25

18  payment floor.  Like allocation plans previously approved by courts, this plan compensates class

19  members based on the extent of their injuries.  *See Computron Software, Inc.*, 6 F.Supp.2d at 321.

20  Notice of the plan of distribution details were provided to class members last year, and no objections

21  to this plan were sustained.  Distribution of the Net Settlement Fund is appropriate at this time

22  because final judgments have been entered and the time to appeal the settlement agreements and

23  plan of distribution has long expired.  *See Newberg on Class Actions*, § 11:33 (4th ed. Nov. 2005)

24  ("settlement fund is usually not distributed until a final judgment has been entered and the appeal

25  period has expired").

26       In addition, the proposed distribution is appropriate because the Claims Administrator has

27  completed a fair, reasonable, and adequate review of the claims.  First, all submitted claims were

28

1  subject to review and/or audit by Gilardi.  In connection with this process, Gilardi removed duplicate
2  claims, reviewed claims for omissions, errors, and ineligibility and requested and reviewed
3  documentation where necessary.  Claimants who submitted claims with omissions or errors were
4  notified in writing of the deficiencies in their claims and given the opportunity to correct such
5  omissions or errors.  Claimants who submitted claims which were ineligible for payment were
6  notified in writing of such ineligibility and given the opportunity to dispute Gilardi's determination.
7  Sherwood Decl. ¶¶5-6.  These quality control measures ensured that each claim was properly tracked
8  and that claimants were notified of any deficiencies, including incomplete claim forms, duplicate
9  claims, unsupported claim amounts, and claims that did not satisfy the class definition.  These
10 measures also ensured that claimants had every opportunity to cure any deficiencies by providing
11 additional information or documentation.

12    The claims process also resulted in significant savings to the Class.  At the start of the claims
13 process, the value for all claims received was in excess of $2.5 billion.  *Id.* ¶7.  After the completion
14 of audits, document review, communications with claimants, and processing late claims, the Claims
15 Administrator determined that total purchases by eligible claimants was $949,780,613.32, over $1.5
16 billion less than the value of the original Claim Forms submitted.  *Id.*

17    In sum, distributing the Reseller portion of the Net Settlement Fund on a prorated basis to all
18 approved Reseller claimants is fair, reasonable, and adequate.

19    Additionally, as noted above, the previously approved plan of distribution of the End User
20 portion of the Net Settlement Fund is fair, reasonable and adequate.  Making distributions to
21 numerous *cy pres* candidates that are representative of the interests of End User members of the
22 Settlement Class supports the *cy pres* plan's propriety.  As noted above, many of the *cy pres*
23 candidates are nonprofits involved in providing personal computers, cellular phones, networking and
24 other information technology equipment to children, schools, the needy, disabled persons, small
25 businesses, other nonprofits that serve the needy, and many others.  *See* IP Plaintiffs' Memo. in
26 Support of *Cy Pres* Distribution Plan (filed Aug. 1, 2011) (DE 1379).  No objections were raised as
27 to any of the *cy pres* candidates proposed by IP Plaintiffs.  The percentages of the End-User
28

1    allocated portion of the Net Settlement Fund to be paid to each nonprofit proposed by IP Plaintiffs

2    should be approved for use in making final distributions because they were determined by IP

3    Plaintiffs based on reasonable geographic, budgetary and other considerations, and were previously

4    approved by the Court.

5          Thus, subject to payment of the outstanding sums owed to the Claims Administrator and

6    reservation of a sufficient amount of funds to cover future claims administration costs, escrow costs

7    and taxes, the Net Settlement Fund should be distributed in its entirety at this time.

8    **V.      CONCLUSION**

9          For all of the foregoing reasons, the Court should approve distribution of the Net Settlement

10   Fund as set forth in the Proposed Order submitted herewith.

11   Dated:  August 16, 2012                    Respectfully submitted,

12                                              By:___*/s/ Christopher T. Micheletti*_____
                                                     Christopher T. Micheletti
13
                                                FRANCIS O. SCARPULLA (41059)
14                                              CRAIG C. CORBITT (83251)
                                                CHRISTOPHER T. MICHELETTI (136446)
15                                              ZELLE HOFMANN VOELBEL & MASON LLP
                                                44 Montgomery Street, Suite 3400
16                                              San Francisco, CA  94104
                                                Telephone:  (415) 693-0700
17                                              Facsimile:   (415) 693-0770
                                                fscarpulla@zelle.com
18                                              ccorbitt@zelle.com

19                                              *Lead and Liaison Counsel for Indirect Purchaser Class*

20

21

22

23

24

25

26

27

28   3234622v2